# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 25-3250

_____

## DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., ET AL.,

Appellants-Plaintiffs,

v.

## DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, ET AL.

Appellees-Defendants.

_____

Appeal from a Judgment of the United States District Court
for the District of Delaware (Noreika, J.)
(Dist. Ct. No. 1:25-cv-01341-MN)

_____

## APPELLANTS' EMERGENCY
## MOTION FOR EXPEDITED INJUNCTIVE RELIEF

_____

Francis G.X. Pileggi, Esquire
Alexander D. MacMullan, Esquire
LEWIS BRISBOIS
    BISGAARD & SMITH LLP
500 Delaware Ave., Suite 700
Wilmington, DE 19801
302-985-6000
Francis.Pileggi@LewisBrisbois.com
Alexander.MacMullan@LewisBrisbois.com

Dated: November 17, 2025

## I.    INTRODUCTION

Appellants,[1] referred to as Challengers, seek an expedited schedule for this appeal that challenges the constitutionality of the Permit Bill[2] that Delaware's former Governor signed into law about 18 months ago, and which will have the net effect of a *de facto* ban on the purchase of handguns on November 16, 2025, the first date the State will begin to enforce it. The State's actions are a violation of the fundamental civil right to keep and bear arms under the Second Amendment.

This is so because not only is the requirement for a permit to purchase a handgun under the Permit Bill itself unlawful—in addition, due to the chaotic rollout of the permit scheme, only two non-exempt persons were able to obtain a permit as of the date of the oral argument in the trial court a few days ago on the motion for expedited injunctive relief, compared to an estimated 40,000 or so Delawareans who bought handguns last year. This is a *de facto* ban on the purchase of handguns.

The State created this imbroglio because only at the eleventh hour has the State scrambled to put in place the necessary procedures and infrastructure to implement the Permit Bill before November 16, 2025, the first day of enforcement.

---

[1] Appellants are Thomas S. Neuberger; Jerry L. Martin; William R. Hague, Jr.; Bruce C. Smith; Bridgeville Kenpo Karate, Inc., doing business as BKK Firearms (BKK); Delaware State Sportsmen's Association; and Bridgeville Rifle and Pistol Club, Ltd. (collectively referred to hereafter as "Challengers")

[2] The Permit Bill is available at App. 063 (Exhibit A to Complaint).

166888215

The trial court's denial of injunctive relief did not include an analysis of all the reasons the status quo results in a *de facto* ban, nor did it address the validity of the permit requirement itself, both of which are violations of the Second Amendment.[3]

Since at or about the time this lawsuit was filed on November 3, 2025, App. 001, with a motion seeking expedited injunctive relief, App. 109, the facts have changed almost daily—including after the date of the oral argument to consider our motion for injunctive relief, on November 13, 2025. But unchanged is the fire drill the State has caused the parties and the court to participate in due to the State's mad dash to implement its new permit scheme which it failed to plan for the implementation of—over the last 18 months since legislation requiring permits to purchase handguns was signed into law.

Challengers will suffer imminent actual harm—such as the risk of injury due to an inability to use a handgun in self-defense—without an injunction to prevent enforcement of the Permit Bill.

The enforcement date for the Permit Bill should be extended until the State can demonstrate that eligible Delawareans, such as the Challengers, are allowed a

---

[3] The trial court's discussion of the likely success on the merits was not based on the merits. Instead it was based on incomplete post-oral argument facts the State presented on the challenged Training Guidelines and unhelpful "helpline," but the trial court refused to consider the contrary factual Declarations of the Challengers whom the trial court dismissed from the case. Trial Court Opinion at n.5 and related text. App. 341. This is reversible error as explained below.

reasonable period of time to obtain a permit before the Permit Bill is enforced. The Permit Bill gives the State 30 days to review a permit application—with no penalty to the State, and no recourse to the applicant if the State takes more than 30 days.

The State has so far provided less than 30 days prior to November 16 to obtain a permit. The State should not require permits until the average eligible person has a reasonable time to obtain one.

## II.    JURISDICTION AND BASIS FOR EXPEDITED APPEAL

Appellate jurisdiction is proper under 28 U.S.C. § 1292(a)(1) because the District Court's November 14, 2025 Order denied Challengers' request for injunctive relief to halt the Permit Bill's enforcement.

Challengers respectfully request that this Court enter an expedited schedule in this appeal.

Local Appellate Rule 4.1 provides an avenue for a party to seek an expedited appeal. The *de facto* handgun ban is a sound basis for the Court to enter an expedited schedule, in light of the Permit Bill's enforcement as of Sunday, November 16, 2025.

Challengers filed a Notice of Appeal only hours after receiving the decision appealed from. That same night the Challengers left a voicemail with the emergency appeals number at the Clerk's Office for this Court. The next day, Saturday, November 15, Challengers exchanged emails with the Clerk's Office to confirm that they seek expedition.

3

166888215

Pursuant to Local Appellate Rule 4.1, Challengers respectfully request that the Court enter the following expedited briefing schedule, which has not been consented to by Defendants-Appellees, who oppose an expedited appeal:

- Challengers' Motion for Expedited Appeal: November 17, 2025 by Noon

- Defendants-Appellees' Response: November 19, 2025 by 5:00 p.m.

- Challengers' Reply: November 21, 2025 by 5:00 p.m.

## III.    STANDARD OF REVIEW ON APPEAL

When reviewing a district court's refusal to grant a preliminary injunction, the Court inquires whether the movant has shown "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). In addition, the Court, "in considering whether to grant a[n] . . . injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id*. The movant need only meet the first two factors, after which a court balances all the factors, and the first factor is met where the prospect of success on the merits is "significantly better than negligible." *Id.* at 179 and n.3.

In an appeal from the denial of a preliminary injunction, this Court "review[s] the District Court's factual findings for clear error, the legal conclusions de novo, and the decision whether to grant an injunction for abuse of discretion." *Nichino Am.,*

4

*Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 184 & n.7 (3d Cir. 2022). All the issues related to the denial of the preliminary injunction are legal and are therefore reviewed de novo. The issue of dismissal of Challengers for claim splitting is reviewed under the standard of abuse of discretion.

All the standards for finding reversible error have been satisfied in this appeal.

## IV.    SUMMARY OF ARGUMENT

The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The United States Supreme Court has ruled that the Second Amendment protects the fundamental right to self-defense inside and outside the home. *McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 778 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 10 (2022). As "the quintessential self-defense weapon," the Supreme Court has held that a total ban on handguns "fail[s] constitutional muster" under any standard. *Heller,* 554 U.S. at 628-29.

The Permit Bill at issue also suffers from an internal contradiction that makes it unclear if sellers of firearms must demand a permit from buyers who had previously obtained a separate permit to carry a concealed deadly weapon (CCDW). The statute exempts those persons with a separate CCDW permit from the training requirements—but it does not clearly authorize a seller to sell that person a handgun without a permit-to-purchase, as the quoted section of the statute below reveals:

5

Although the Permit Bill provides that "[a] person who holds a valid license to carry concealed deadly weapons. . .is not required to apply for a handgun qualified purchaser permit under this section before purchasing a handgun," elsewhere it states "[a] transferor may not sell, transfer, or deliver from inventory a handgun to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, unless the buyer or transferee has a valid handgun qualified purchaser permit issued by the State Bureau of Identification under  §1448D of this title"—creating a textual contradiction.

11 *Del. C.* §§ 1448D(d)(1), 1448A(a)(2).

The Permit Bill imposes criminal liability on a seller for non-compliance. The ambiguity described above also causes irreparable injury to firearm sellers, commonly known as FFLs, because the contradiction in the statute prevents the average person from understanding what actions will subject them to criminal liability.

Challenger Smith is the owner of BKK Firearms ("BKK), a FFL. *See* Smith Decl., ¶2. App. 178. Because of the *de facto* handgun ban resulting from the implementation of the Permit Bill as described above, BKK will not be able to sell handguns, which make up 90 percent or more of its sales. *Id.,* ¶¶14-19. App. 179-180.[4]

---

[4] The *de facto* ban presented in this appeal is analogous to a ban presented to the Delaware Supreme Court on a challenge to regulations based on the right to keep and bear arms. In *Bridgeville Rifle & Pistol Club, Inc. v. Small*, 176 A.3d 632 (Del. 2017), the Court considered a ban on all firearms in state parks and forests with the exception of a few days a year for hunting if certain conditions were satisfied. In connection with striking down the ban, Delaware's High Court viewed the minor exception to be the functional equivalent of a total ban. *Id*. at 638 and 658. That reasoning applies to this appeal.

166888215

Due to the Permit Bill's imposition of criminal liability on those that sell or deliver a handgun to a person without a permit upon its implementation, 11 *Del. C.* § 1448A(h), without relief from the implementation of the Permit Bill's enforcement date of November 16th, BKK and Smith will be left with two choices: (i) immediately stop selling handguns and risk going out of business—because about 90% of its sales or transfers are for handguns; or (ii) keep selling handguns and be subject to significant criminal liability. Smith Decl., ¶19. App. 180. Jeff Hague, president of Appellant Delaware State Sportsmen's Association, is also aware of and has spoken with other FFLs facing the same outcome. *See* J. Hague Decl., ¶¶20-21. App. 175-176. Risk of bankruptcy and loss of liberty both constitute irreparable harm.

When the Permit Bill is enforced, Challengers, their members, and other ordinary law-abiding citizens who reside in Delaware, will have their lives and the lives of their loved ones put in unnecessary jeopardy, and be subject to the loss of business, law enforcement action, criminal prosecution, incarceration, and loss of their Second Amendment rights because they wish to obtain a handgun. These harms cannot be compensated through monetary damages, and threaten to moot the case, thereby satisfying the Third Circuit's holding regarding irreparable harm set forth in *Del. State Sportsmen's Ass'n. v. Del. Dep't. of Safety and Homeland Sec.,* 108 F.4th 194, 201 (3rd Cir. 2024) (quoting *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.

166888215

Ct. 2561, 45 L. Ed. 2d 648 (1975)) (holding that irreparable harm may warrant injunctive relief where "… harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable final judgment might well be useless.'").

Thus, the entry of expedited injunctive relief is needed now more than ever.

This court has previously held that the rights of a seller of firearms implicates the Second Amendment. *See United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3rd Cir. 2010) (rev'd on other grounds, *Bruen*, 597 U.S. 1) ("Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment.")

This court in *Marzzarella* provided the following additional instruction on the issue:

> In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it follows that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.

*Id*.

## V. EXPEDITED INJUNCTIVE RELIEF IS NOT MOOT

### A. Challengers have been unable to complete the Permit Bill's application process

The State argues that this issue is moot because it has very recently distributed some permits, largely to law enforcement officers exempt from most requirements.

166888215

However, Challengers still need the injunctive relief they seek—namely, postponement of enforcement of the Permit Bill until they as well as all eligible persons have a reasonable time to apply for one. Indeed, the Challengers have attempted to apply for a Permit, but have not been able to obtain one. The State admits the application process to obtain the Permit did not open until November 1, 2025. Decl. of Jason L. Stevenson D.I. 20 ("Stevenson Decl.") ¶7. App. 213. Since that time, Challenger and attorney Thomas S. Neuberger has attempted to apply for a permit on five separate occasions, with the latest attempt on November 11. Neuberger 2nd Decl. ¶¶ 9, 21, 23, 28, 31. App. 243-248. All of his attempts have been unsuccessful. *Id*. ¶¶ 9, 21, 27, 35, 39. *Id*.

Challenger Jerry L. Martin ("Martin"), had a similar experience. As detailed in his Declaration, he also unsuccessfully attempted to apply for a Permit on November 9. Decl. of Jerry L. Martin submitted herewith ("Martin Decl.") ¶s 12-15. App. 300-302. Accordingly, contrary to the State's contention, Challengers do not "already have what they are seeking," and will be unable to purchase a handgun on the Permit Bill's November 16 enforcement date, thereby depriving them of their constitutional rights and causing them irreparable harm.

### B. The State's own statistics demonstrate there will be a *de facto* handgun ban on November 16th

Deductive reasoning and basic math demonstrate that the Permit Bill's failed rollout will ban handgun sales in Delaware. The State's Stevenson Declaration

9

166888215

acknowledges that he is only aware of two "civilian permits" being approved to date. App. 214 ¶12. A "civilian permit" is one that is not exempt from the Permit Bill's training requirement. *See* Decl. of MacMullan at 18. App. 255.

One major insuperable obstacle to Challengers obtaining a permit by November 16, that the trial court failed to consider in its opinion denying Challengers' request for injunctive relief, was the State's late rollout of the approved firearms training that the Permit Bill requires. To be eligible for permit approval, applicants must attend an 8-hour certified "firearms training course," and fire at least 100 rounds of ammunition. 11 *Del. C.* § 1448D(f)(4). To be eligible to administer the certified "firearms training course" an individual and/or entity "firearms instructors" must separately register with and be approved by the Delaware State Police and SBI. The Delaware State Police have issued so-called "Firearm Training Couse Guidelines" for prospective firearms instructors that contain requirements for acceptance as a firearms instructor that are not found in the Permit Bill.

Despite passing the Permit Bill on May 16, 2024, the State, by its own admission, did not contact Delaware sellers of firearms, Federal Firearm Licensees, or FFLs, to inform them that they could register to be approved training instructors until October 6, 2025. *See* Declaration of Jason L. Stevenson at paragraph 7 at fn. 1. App. 213. The State also admits that approved firearm training instructors were not listed publicly until November 3, 2025. *Id*.

10

On November 8, 2025, counsel for Challengers accessed the "Permit to Purchase Approved List of Firearms Training Instructors, *As of 11/3/2025*" via https://dsp.delaware.gov/permit-to-purchase/>Link of Approved Firearm Instructors ("Training Instructor List") and conducted google searches of each of the training instructors listed on the Training Instructor List. The searches yielded the following results:

- Four posted Permit to Purchase trainings scheduled by four different training instructors offered between November 8, 2025 and the date of implementation of the Permit Bill, November 16, 2025, one of which had "no slots available"

- Twenty-two approved firearms training instructors (of 99 total) with no immediately available website and/or discernible online presence relating to firearms training instruction

- Forty-Eight approved firearms training instructors that had no posted Permit to Purchase trainings offered.

Decl. of Alexander D. MacMullan at 8-9. App. 253-254.

Each training class is expected to accommodate between ten and fifteen trainees total. *Id*. at 11. Simple math suggests then, that by November 16, the cap on non-exempt Delawarean permits is between 50 to 60 individuals, based on the number of classes available. *Id*.

Conversely, 40,686 NICS firearm background checks have been conducted to-date in 2025 in the State of Delaware. 53,370 such checks were conducted in 2024, and 50,080 were conducted in 2023. *Id*. at 20. Given that handguns are the

11

most popular weapon chosen by Americans for self-defense, and are considered the "quintessential self-defense weapon," it is reasonable to assume that the majority of the checks in Delaware relate to handgun purchases.

With a cap of 50 to 60 available permits for non-exempt Delawareans and a demand of thousands of handguns per year, the Permit Bill's failed, incomplete implementation will restrict purchases of handgun in Delaware to a minute fraction of expected sales. The State's failure has amounted to an effective ban on handgun sales in Delaware. This is the Permit Bill's goal.

## V.   THE STATE HAS NOT MOOTED PLAINTIFFS' ADMINISTRATIVE PROCEDURES ACT CHALLENGE

### A. Striking Guidelines' Sections IV.C–E Voluntarily Does Not Obviate Compliance with the APA

The State has created regulations for the Permit Bill that do not comply with the Administrative Procedures Act.

The State lost this argument once before in a decision they did not appeal. *See Del. State Sportsmen's Ass'n v. Garvin*, 2020 Del. Super. LEXIS 2927, *26, 2020 WL 6813997 (Del. Super. Ct. November 18, 2020) (Holding that state agency's so-called "Guidelines" were stricken because they did not comply with the comment and review process of the APA.)

The Permit Bill's current and future APA-subject regulations can be distinguished from the case relied upon by the State, *Free-Flow Packaging Intl, Inc.*

12

*v. Sec'y of the Dep't of Nat. Res. & Envtl. Control*, 861 A.2d 1233, 1236 (Del. 2004). The *Free-Flow* statute in question explicitly provided the specific air pollution standards and specific fee categories the agency used. No such explicit specificity is found in the Permit Bill for the Guidelines at issue.

In response to the District Court's November 13, 2025 Minute Order, after oral argument, the State submitted a letter and changed the key facts again via the second Declaration of Jason Stevenson, App. 323-329, describing supposed "modifications" to the Training Guidelines and P2P [Permit to Purchase] Website, and offering several "clarifications" of the Permit Bill. None of these actions moots the Challengers' arguments under Delaware's Administrative Procedures Act. To the contrary, they underscore the extent of the Agency's noncompliance.

Striking Guidelines' Sections IV.C–E of their Training Guidelines—as volunteered during oral argument—does not remedy the issue; it merely deletes the provisions that attempted, albeit unlawfully, to define instructor qualifications. That removal leaves no standards at all, compounding the original APA violation with new regulatory uncertainty.

**B. The Permit Bill Contains No Instructor-Approval Process; the "Approved List" Is Entirely a State Creation That Requires APA Rulemaking**

The Permit Bill does not contain an instructor-approval regime. The statute merely provides that a permit may not be issued unless, within the past five years,

the applicant has completed a course sponsored by certain enumerated types of entities and course curriculum ("5-Year Training Exception"). That provision regulates applicants, not instructors, and it says nothing about a State-run instructor application, vetting, or instructor licensing process.

Thus, the Permit-to-Purchase Approved List of Training Instructors is a creature of the agency alone—and therefore a substantive rule that must be promulgated through APA rulemaking. The State's attempt to justify its list by claiming it uses only "statutory text" fails for multiple reasons. The record shows SBI has not adhered to the statute. Many of the more than 100 approved instructors do not satisfy the statutory requirements. *E.g.*, Kwasi Asante, Jamar Brison, Sheila Carello, and Edward Heinemann. This alone demonstrates the agency has been applying extra-statutory criteria—precisely the conduct the APA exists to prevent.

## VI. THE PERMIT BILL VIOLATES THE SECOND AMENDMENT AND CHALLENGERS ARE LIKELY TO SUCCEED ON THE MERITS

### A. The Permit Bill Is Not Presumptively Constitutional

The Permit Bill is not consistent with the Nation's tradition of firearm regulation as *Bruen* requires. The State instead relies on dicta in a footnote instead of *Bruen's* holding. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022). The U.S. Court of Appeals for the Tenth Circuit, in connection with its recent holding that the regulation of the sale and purchase of firearms is subject to

14

constitutional analysis, *Ortega v. Grisham* 148 F.4d 1134, 1148 (10th Cir. 2025), also noted that other circuits, including the Third Circuit, do not stop at *Bruen's* first step when examining what *Heller* referred to as presumptively lawful restrictions on firearms, such as conditions on the sale of firearms. *Id*. at n.5.

**B. The State Provides No Evidence that the Permit Bill Fits Within the Nation's Historical Tradition of Firearm Regulation**

The State argues that the United States has "a long history of requiring individuals to acquire *some type of permit to purchase a firearm*." App. 205. (Ans. Br. at 17.) (emphasis added). Not true.

The Permit Bill has no support in the Nation's historical tradition, evidenced by the State's failure to provide any relevant analogues. *Compare Watson v. Stone*, 4 So. 2d 700, 701 (Fla. 1941) (the main purpose of the permitting system created by 1893 Fla. Laws 71, 71-2 was to "disarm[] the negro laborers….[and that] the statute was never intended to be applied to the white population and in practice has never been so applied.") *See, e.g., Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d Cir. 2025) (quoting *Bruen* at 28, 37)(The constitutional right to keep and bear arms should be understood according to its public meaning in 1791, as that meaning is fixed according to the understandings of those who ratified it).

## VI. CHALLENGERS HAVE SHOWN IRREPARABLE HARM

The State argues that the Challengers will not suffer irreparable harm because they now can apply for and get the required Permit. Not so.

15

166888215

The State maintains that this case is analogous to the remand decision in *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024). It is not.  The facts of the instant matter are materially different.

First, plaintiffs in that case were relying on the presumption of irreparable harm and, as a result, only provided what the Court described "scant" evidence of alleged harm. Challengers are not relying on a presumption. Second, Challengers have provided detailed declarations of the harms they will face as a result of an effective *de facto* handgun ban, e.g., possible loss of life as well as a "time-sensitive need" for firearms.  *See, e.g.,* Neuberger 1st Decl. ¶18-22, App. 169, (asserting time-sensitive need to acquire a handgun for self-defense based upon age, criminal statistics, civil unrest and past threats of physical harm); *see also* Decl. of Jeffrey Hague, App. 175, ¶17  (stating that he has spoken to DSSA members who intend to buy a handgun on November 16, because "…[s]ome of these members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones would be attacked.")  As for the Challengers who sell firearms, while economic loss may not always result in irreparable harm, the loss of one's business constitutes irreparable harm. *See, e.g., Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.* 805 F.2d 351, 356 (10 Cir. 1986).

16

## VII. THE STATE'S ARGUMENT THAT AN INJUNCTION WOULD HARM THE PUBLIC SAFETY INTERESTS IS UNFOUNDED

There is no record support for the State's position on this factor.

If the record is insufficient to quantify any harm to the public that would be caused by a preliminary injunction where government restrictions likely violate the Second Amendment, such restrictions should be preliminarily enjoined. *Koons v. Att'y Gen. New Jersey*, 2025 WL 2612055, at *43 (3d Cir. Sept. 10, 2025), as amended (Sept. 17, 2025) (remanding with instruction to preliminarily enjoin certain restrictions). So too here, there is no evidence of harm to the public from an injunction.

## VIII. TRIAL COURT'S DISMISSAL OF CHALLENGERS WAS REVERSIBLE ERROR

The District Court dismissed Challengers Neuberger, Martin, Hague, DSSA and Bridgeville pursuant to *Walton v. Eaton Corp.*, 563 F. 2d 66, 70 (3d Cir. 1977). In so doing the District Court failed to appreciate that Challengers new Complaint included new parties and new facts and legal arguments—namely that the State's failure to create the proper infrastructure for the Permit Bill created a *de facto*, unconstitutional ban on handgun sales in Delaware, and that the State failed to properly follow APA-required procedure in creating regulations necessary for the Permit Bill's implementation.

166888215

The very case that the District Court relied upon to dismiss Challengers held that, "[w]hen a court learns that two possibly duplicative actions are pending on its docket, *consolidation may well be the most administratively efficient procedure*. *Walton* 563 F.2d at 7. (emphasis added). Where, as here, new allegations are made in the second complaint, and, as here, new parties are added, *Walton* articulates a preference for consolidation, because, "… consolidation unlike dismissal of the second complaint without prejudice or staying the second action will avoid two trials on closely related matters." *Id*.

By failing to consolidate Challengers' second complaint containing new facts, new parties, and new legal argument, the District Court avoided reaching the merits of Challengers' motion for injunctive relief, and thus, permitted an unlawful *de facto* handgun ban to be enforced by the State. Electing to avoid the merits of the handgun ban via the inequitable action of dismissal, instead of the preferred efficient act of consolidation, constituted abuse of discretion by the District Court.

## CONCLUSION

This motion demonstrates the irreparable harm Challengers will suffer from violation of fundamental constitutional rights if this Court does not act to maintain the status quo as of November 15, 2025.

166888215

The trial court committed reversible error by relying on post-oral argument facts the State presented, without an opportunity for rebuttal,[5] and by excluding Challengers' contrary Declarations—because the trial court dismissed them from the case. The trial court relied on these one-sided facts for the finding that Challengers were not likely to prevail on the merits—but the merits were not fully considered.

Respectfully submitted,

LEWIS BRISBOIS
    BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (No. 2624)
Alexander D. MacMullan
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Alexander.MacMullan@LewisBrisbois.com

*Counsel for Appellants-Plaintiffs*

OF COUNSEL:
Joseph G.S. Greenlee
National Rifle Association of
  America – Institute for Legislative
  Action
11250 Waples Mill Road
Fairfax, VA  22030

Dated: November 17, 2025

---

[5] The State has changed the facts of this case on a daily basis—even after the date of the oral argument in the trial court, regarding the permitting process and related material facts.

19

166888215