No. 25-3250

---

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.,

*Plaintiffs-Appellants*,

v.

JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police,

*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(No. 1:25-cv-01341)
THE HONORABLE MARYELLEN NOREIKA

---

**DEFENDANTS-APPELLEES'**
**OPPOSITION TO MOTION TO EXPEDITE**

Date: November 19, 2025

*Of Counsel*:

FRESHFIELDS US LLP

Jennifer B. Loeb
Austin R. Evers
Lauren Kaplin
Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com


Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com


*Counsel for Defendants-Appellees*

DELAWARE DEPARTMENT OF JUSTICE

Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ian.liston@delaware.gov
jennifer.aaronson@delaware.gov

## INTRODUCTION

Defendants oppose Plaintiffs' Motion to Expedite this appeal from the District Court's decision, which dismissed the majority of Plaintiffs from the suit for improper claim splitting and denied Plaintiffs' motion for "expedited injunctive relief" for failure to meet even the first element of the preliminary injunction standard. This Court's Rules require a party moving for expedited treatment to show an "exceptional reason" that warrants it. Moreover, this Court cautions against issuing preliminary injunctions "hurriedly and on the basis of very limited evidence" absent a "clear showing" that such "extraordinary" relief is warranted. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (***DSSA***). Plaintiffs fail to articulate *any* reason—let alone an "exceptional" one—as to why expedition is required here (because there is none), nor do they address why the circumstances below are "extraordinary" (because they are not). Indeed, neither word appears in their brief.

## BACKGROUND

### I. THE STATUTE AND PLAINTIFFS' LAWSUITS

The law at issue is a handgun permitting statute (the ***Statute***) that went into effect on November 16, 2025, "[e]ighteen months from the date of the Act's enactment." Compl. Ex. A, Sec. 5(1), App. 071. To apply for a permit, an applicant must show they have completed a firearms safety course, be fingerprinted, and

submit an application. Under this permitting regime, the Director of the State Bureau of Identification (**SBI**), a division within the Delaware State Police (**DSP**), "shall issue" a handgun qualified purchaser permit (**a Permit**) to all applicants not excluded by any of five narrow criteria.

On May 16, 2024, five of the seven Plaintiffs filed suit in the U.S. District Court for the District of Delaware challenging the Statute's constitutionality under the Second, Fourth, and Fourteenth Amendments, and Article I, Section 20 of the Delaware Constitution. *See Neuberger v. Del. Dep't of Safety & Homeland Sec.*, No. 1:24-cv-00590 (D. Del. May 16, 2024) (**Neuberger I**), D.I. 1.[1] Then, in response to Defendants' Motion to Dismiss, Plaintiffs filed a First Amended Complaint. *Id.* D.I. 28. In response to Defendants' second Motion to Dismiss, Plaintiffs (with the negotiated consent of the Defendants) requested permission from the Court to file yet another amended complaint. *Id.* D.I. 34. The Court granted permission but ordered that Plaintiffs may "not seek to further amend their complaint." *Id.* D.I. 40. Defendants' Motion to Dismiss the Second Amended Complaint is pending. *Id.* D.I. 41 (**Defendants' MTD**).

On November 3, 2025, in a maneuver the Court below described as an "end run" around its prior order, Hearing Transcript attached as Exhibit A (**Transcript**) at

---

[1] Plaintiffs in *Neuberger I* are referred to herein as the "Original Plaintiffs." The two others who challenged the Statute for the first time in the instant case, BKK Firearms and its owner, Bruce C. Smith, are referred to as the "New Plaintiffs."

3, 11, the Original Plaintiffs, along with two new Plaintiffs, BKK Firearms and its owner, Bruce C. Smith, filed a second action (*Neuberger II*). This newest Complaint mirrors the three that came before it—purporting to challenge the constitutionality of the Statute under the Second, Fourth, and Fourteenth Amendments—and reiterates text from previous complaints. *Compare* Compl. ¶¶ 142–192, App. 46–59 *with Neuberger I*, D.I. 34-1 ¶¶ 111–158. At the hearing below, the Court noted at the outset that this "backdoor" "end run" was likely to "procedurally bar" the original Plaintiffs from the "expedited treatment" they sought below. Tr. at 11–12.

Plaintiffs also filed a Motion for Expedited Injunctive Relief based solely on particular aspects of their Second Amendment claim, *see* Mot., App. 110, claiming that allowing the Statute to take effect would amount to a "total ban" on the purchase of handguns because Delaware "fail[ed] to have the infrastructure in place to issue the required permits." Br. in Supp. of Mot. for Expedited Injunctive Relief, App. 119, 122. As described below, nothing approaching such a "total ban" has existed or does exist. Nonetheless, acting on that erroneous premise, Plaintiffs sought an order enjoining enforcement of the Statute until (1) the State submitted to the court a "copy of an actual handgun qualified purchaser permit issued by the State to an eligible person," and (2)

> fil[ed] with the Court sworn declarations by each Defendant attesting that all the necessary personnel, systems, and infrastructure has been implemented, in accordance with the Delaware Administrative Procedures Act, to enable any eligible Delaware adult resident to

> readily apply for and obtain the required handgun qualified purchaser permit needed to buy or sell a handgun within the statutory thirty-day period for the State to issue such permits

Pls.' Proposed Ord. Granting Expedited Injunctive Relief, App. 112-13 (***Proposed Order***) ¶ 2.

In reality, Defendants had already implemented the necessary "infrastructure" well before Plaintiffs filed their Complaint and had already issued over 200 permits by the time Defendants filed their response to the Proposed Order, as evidenced by a declaration and copies of redacted issued permits. Decl. of Jason L. Stevenson, App. 211 (***Stevenson Declaration)***; Stevenson Decl. Ex. B., App. 223-25. (As of the date of filing this Opposition, Defendants have now issued over 300 permits.)

## II.   DELAWARE'S PERMIT TO PURCHASE INFRASTRUCTURE

Delawareans have been applying for and obtaining permits under the Statute since at least November 1, 2025, more than two weeks in advance of the Statute's effective date and days before Plaintiffs filed their Proposed Order. Stevenson Decl., App. 213 ¶ 7. Plaintiffs failed to show otherwise, Memorandum Opinion attached as Exhibit B (***Opinion***) at 10,[2] and offer no basis to conclude exceptional circumstances exist today for them to try anew before this Court on an expedited basis.

---

[2] Due to a clerical error, one page was missing from the Memorandum Opinion originally published on the docket and included in the Appendix filed with Plaintiffs' Motion here. Defendants attach a copy of the complete opinion as Exhibit B and cite its pagination.

The evidence before the Court below shows that DSP have published numerous updates and issued a variety of communications about the availability of the permit-to-purchase (*P2P*) tools. Stevenson Decl. Ex. A, App. 220. The DSP P2P website lays out the application process and provides all information needed to apply for a permit, including (1) a step-by-step guide for applicants, (2) the application questionnaire, (3) a link to the Statute, (4) answers to frequently asked questions, (5) a link to schedule a fingerprinting appointment, and (6) a list of nearly 100 certified firearms instructors (among them, Plaintiff BKK Firearms). *Id.* ¶ 14. Additionally, all materials to apply for a permit can be found in hard copy at every DSP Troop Location in the state. *Id.* ¶ 16. The P2P website also provides a telephone number for questions or to request assistance with the application process. *Id.* ¶ 14.

The State has also put in place the infrastructure necessary for applicants to complete the Statute's training requirement. *Id.*, App. 215 ¶ 18. SBI created an online tool through which training providers can show they qualify and that provides Firearms Training Course Guidelines specifying the subjects that the Statute requires be taught. *See* Decl. of Keith Walter, Ex. A, App. 138. On October 6, 2025, DSP contacted Delaware FFLs and informed them they could register to be approved training instructors on the DSP website. Stevenson Decl., App. 213 ¶ 7 n.1. New Plaintiff Bruce C. Smith, owner of BKK Firearms, Compl., App. 10, completed this process and is an approved instructor as of Nov. 3, 2025. Stevenson Decl., App. 213

¶ 7 n.1. Qualified instructors' websites offered at least fourteen training courses between November 7 and November 16, 2025. *Id.*, App. 216 ¶ 21.

## III.    ORAL ARGUMENT, POST-ARGUMENT FILINGS, AND DISTRICT COURT OPINION

On November 13, 2025, the District Court heard oral argument on Plaintiffs' Motion for Expedited Injunctive Relief and issued an Order the following day dismissing the Original Plaintiffs from the case and, as to the New Plaintiffs, denying the Motion for Expedited Injunctive Relief.

The Court wrote that a district court may dismiss a duplicative suit for "claim splitting, "which prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." Opinion at 5 (quoting *Leonard v. Stemtech Int'l, Inc.*, 2012 WL 3655512, at *5 (D. Del. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4591453 (D. Del. Sept. 28, 2012) (cleaned up)). The Court found that the Original Plaintiffs had attempted to "circumvent" the Court's prior order and engaged in "exactly the sort of claim splitting the Third Circuit has long recognized is impermissible." *Id.* at 6. Plaintiffs acknowledged at oral argument that they knew how to move for leave to amend in *Neuberger I*, and the Court acknowledged it would have considered such a motion had it been made. *Id.* at 11–12. As is noted above, during oral argument, the Court admonished that the consequences of Original Plaintiffs' tactics would be

6

to bar them from the expedited treatment they sought.[3]

Turning to the New Plaintiffs, the Court focused on their apparent arguments that (1) three aspects of the SBI's guidelines implementing the law are improper because they should have been promulgated according to Delaware's Administrative Procedures Act, and (2) they had difficulty using aspects of the permitting process—the fingerprinting and the helpline—resulting in a de facto ban on firearm purchases. Opinion at 7–8.[4]

At the hearing, the Court questioned whether aspects of the online Firearms Training Course Guidelines establishing protocols for SBI to pre-approve trainers and training courses could go beyond the Statute's plain language. *See* Tr. at 28–29. And while recognizing that the instant Plaintiffs may not have alleged any harm of confusion arising from those provisions, the Court suggested that removing those provisions would avoid future litigation. *Id.* at 29. At the hearing, Defendants agreed to update the Guidelines and, as directed, submitted a letter and further declaration

---

[3] Notably, the Original Plaintiffs include the only parties who claim associational standing to represent their members. At the oral argument below, Plaintiffs stipulated that "[o]nly the named plaintiffs are in front of you, Your Honor. It's not a class action." Tr. at 43. However, in their Motion for Expedition, Plaintiffs appear to seek relief on behalf of "other ordinary law-abiding citizens who reside in Delaware." Mot. at 7.

[4] Defendants dispute that any Plaintiffs properly raised a claim under the Delaware Administrative Procedures Act or that any deficiency exists with regard to the referenced Guidelines. However, for purposes of this Opposition, Defendants restate the Court's characterization of the issues.

of an SBI official confirming the changes. Defs.' Letter, App. 320; Supp. Decl. of Jason L. Stevenson (***Stevenson Supplemental Declaration***), App. 323. This declaration outlined certain changes that would be made to DSP's P2P website to clarify that CCDW carriers are not required to obtain a permit and that anyone can lawfully sell a handgun to a CCDW holder, that instructors need not be pre-approved to offer qualifying training, and other relevant clarifications. Stevenson Suppl. Decl., App. 325, ¶¶ 9–10. In its Opinion, the Court found that while Plaintiffs' Delaware APA arguments were "not frivolous," the changes to the Guidelines rendered them "moot." Opinion at 9.

As for Plaintiffs' other arguments regarding the permitting "infrastructure," the Court held that none "meaningfully disputes the showing of workability." *Id.* As a result, Plaintiffs could not demonstrate a "clear showing" that the State's infrastructure was insufficient for an eligible Delaware adult to obtain the permit. *Id.* Because the New Plaintiffs failed to meet the first preliminary injunction factor, the Court declined to reach the others. *Id.* at 10.

Plaintiffs filed a notice of appeal and seek an expedited schedule, arguing again, contrary to fact, that Delaware's permitting process does not function. Appellants' Emergency Motion for Expedited Injunctive Relief, D.I. 4-1 (***Plaintiffs'***

*Motion*) at 8–9.[5]

## ARGUMENT

Plaintiffs have not met the high bar required to obtain expedited briefing on their appeal of the district court's denial of their motion for expedited injunctive relief. Under Local Appellate Rule (*L.A.R.*) 4.1, a party requesting expedited briefing bears the burden of "setting forth the exceptional reason that warrants expedition."

Although any discussion of the L.A.R. 4.1 standard is absent from their papers, Plaintiffs appear to invoke constitutional injury—the alleged "total ban" to purchase a firearm—as a basis for expedition. But this Court has held that such an injury alone does not entitle a party to preliminary injunctive relief, *DSSA*, 108 F.4th at 205. Such relief is "extraordinary." *Id.* at 206. *A fortiori*, an appeal from a district court's decision denying a preliminary injunction for such an alleged injury—a decision reviewed for abuse of discretion—does not present an "exceptional" reason for expedition. On top of that, the Original Plaintiffs cannot claim they deserve "exceptional" treatment after engaging in litigation tactics that properly barred them from the relief they sought below.

---

[5] On November 17, 2025, counsel for Defendants contacted the Court by phone and confirmed that the only issue the Court ordered to be briefed was Plaintiffs' Motion to Expedition and should not include merits briefing. Defendants will reserve argument on the merits of Plaintiffs' request for relief, including that they appear to raise arguments that were not preserved below, in their appellate brief.

9

## I.    ORIGINAL PLAINTIFFS' LITIGATION TACTICS BAR THEM FROM THE RELIEF THEY SEEK.

Even if Plaintiffs could show exceptional reason to request expedition—which they cannot—*see infra*, this Court should deny the motion because Plaintiffs engaged in litigation tactics that bar them from the relief they are seeking. *See Coltec Indus. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002) ("[C]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions."); *Powell v. Kemp*, 53 F. App'x 750, 751 (6th Cir. 2002) (upholding dismissal of action filed "in an attempt to get around" discovery order in previous case).

The lack of basis for expedition is obvious for the Original Plaintiffs. As described above, the District Court described their conduct as an "end around," an "end run," and an effort to "circumvent" a stipulated order in *Neuberger I* that they "may 'not seek to further amend their complaint.'" Opinion at 3, 6; Tr. at 11–12. The court below dismissed the Original Plaintiffs from this case, exercising its authority to dismiss parties who have engaged in improper claim splitting. Op. at 6 ("Accordingly, the Court will exercise its discretion to hold that the duplicative Plaintiffs (those also named in Neuberger I) are dismissed from this action for duplicative litigation.") (citing *Walton v. Eaton Corp.*, 563 F. 2d 66, 70 (3d Cir. 1977). Such an exercise of discretionary authority to address claim splitting is in no way an exceptional circumstance that would justify expedition here: the Original

10

Plaintiffs still have their claims in the original lawsuit and could have sought leave to amend and could have moved for a preliminary injunction in that case, but made the strategic decision not to do so. Indeed, Plaintiffs offer no argument that these circumstances are "exceptional." They simply argue that this Court should second guess the District Court's management of its dockets on an expedited basis. Expediting the Original Plaintiffs' appeal under these circumstances would absolve them of the consequences of their improper, and wholly self-selected, litigation tactics.

## II.    PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM UNDER A REGULAR APPELLATE BRIEFING SCHEDULE.

Finally, no matter whether the Original and New Plaintiffs are assessed together or separately, they have not provided any exceptional reason sufficient to support their request for expedited briefing. Plaintiffs' basis for seeking an expedited briefing schedule—that there is a "*de facto* handgun ban" as of November 16—is the same unfounded argument that they presented below. *See* Br. in Supp. of Mot. for Expedited Injunctive Relief, App. 129. But the District Court found that there was no "clear showing" that "the State's infrastructure is not sufficient 'to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit needed to buy or sell a handgun within the statutory thirty-day period for the State to issue such permits.'" Opinion at 9 (quoting Proposed Ord., App. 113). Instead, the evidence below showed that the permitting

11

system is functional and that individuals are applying for and receiving permits. These are not "exceptional" circumstances warranting expedited briefing.

The New Plaintiffs, who engage in selling firearms, cannot claim that their anticipated loss of income constitutes an "exceptional reason" to expedite appellate review: "Economic loss does not constitute irreparable harm," and even where that harm stems from a constitutional violation, it "can be remedied by an award of money damages." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653, 655 (3d Cir. 1994).

Plaintiffs concede that "economic loss may not always result in irreparable harm" but nevertheless assert that "the loss of one's business constitutes irreparable harm." Pls.' Mot. at 16 (citing out-of-circuit case from nearly 40 years ago). But there is no basis to conclude that any Plaintiffs face such a threat. Plaintiffs have presented no financial statements or projections to support this claim, so it should be afforded no weight. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (no irreparable injury where plaintiff's assertion of bankruptcy was "not supported by any financial statements or projections in the record"). Moreover, public data shows the New Plaintiffs retain a broad potential customer base for handguns. For example, there are more than 30,000 Carrying Concealed Deadly Weapon permits authorized in Delaware, which allow holders to purchase handguns without a new permit under the Statute. *See* Concealed Deadly Weapons, CCDW Granted and Denied Filing Statistics, Del. Sup. Ct., available at

https://courts.delaware.gov/forms/download.aspx?ID=125408; *see also* Permit to Purchase, Delaware State Police, https://dsp.delaware.gov/permit-to-purchase/ ("CCDW holders are not required to apply for a handgun purchaser permit."). And the Statute only requires a permit for the purchase of handguns, not other firearms (e.g., shotguns, rifles), firearms accessories, and other weapons that the Seller Plaintiffs may sell. *See generally* 11 Del. C. § 1448D.

As for the Original Plaintiffs who seek to purchase handguns, nothing is preventing them from doing so. The Permit to Purchase system has been, and will continue to be, operational. *See, e.g.*, Stevenson Suppl. Decl., App. 328 ¶¶ 18–20 (describing how an individual not exempt under the Statute recently applied for and received a Permit); *id.* Ex. B, App. 333 (redacted copy of an issued Permit). Plaintiffs can enroll in one of the firearms training courses and apply for their Permits. And the record shows applications are being processed and approved quickly. *See, e.g.*, *id.*, App. 328 ¶¶ 18–20 (reporting that applicant's application for a Permit was approved in three days). To that end, it bears emphasizing that Plaintiffs have not, and do not, request an injunction against the Statute; rather, they seek one on the basis that they believe the Statute is being implemented so poorly as to amount to a "total ban" on handgun purchases. Rather than "exceptional" circumstances warranting expedited appellate review, the record shows that individuals, like before, can purchase handguns.

Even if Plaintiffs could show that the Permit process is so impossible as to amount to a "total ban," this Court can look to its decision in *DSSA* to conclude that no exceptional circumstances exist warranting expedited appellate review. There, the Court upheld the denial of preliminary relief because the plaintiffs had not "allege[d] a time-sensitive need for such guns" and their "generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'" *DSSA*, 108 F.4th at 205–06 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Any alleged constitutional violation "can be cured after final judgment," which "alone suffices to support" denial of preliminary relief. *Id.* at 205. So too here, where the question is expedition.

Plaintiffs here who seek to purchase firearms have not alleged a "time-sensitive need" for handguns. They only assert a general intent to purchase. *See, e.g.*, Decl. of Thomas S. Neuberger, App. 170 ¶ 25 ("I intend to purchase a Sig Sauer P365 on November 28, 2025 . . . ."); Decl. of Jeffrey W. Hague, App. 175 ¶ 17 ("I am aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented. . . ."). This "generalized claim of harm," alleged "hurriedly and on the basis of very limited evidence," *DSSA*, 108 F.4th at 200, is not enough to merit the "extraordinary and drastic remedy" of preliminary relief. *Id.* at 205. Nor does it qualify as an "exceptional reason" warranting expedited appellate review.

14

# **CONCLUSION**

For the foregoing reasons, this Court should deny Appellants' motion for expedited briefing.

Dated:     November 19, 2025       Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

*Of Counsel*:

FRESHFIELDS US LLP          */s/ Ian R.Liston*

Ian R. Liston (DE #5507)

Jennifer B. Loeb           Jennifer K. Aaronson (DE #3478)
Austin R. Evers            Deputy Attorney General
Lauren Kaplin            Carvel State Office Building
Jacob Johnston           820 N. French Street, 6th Floor
700 13th Street, NW, 10th Floor   Wilmington, DE 19801
Washington, DC 20005      (302) 577-8400
(202) 777-4500           ian.liston@delaware.gov
jennifer.loeb@freshfields.com    jennifer.aaronson@delaware.gov
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants-Appellees*

15

## COMBINED CERTIFICATIONS OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3471 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and L.A.R. 32.2 because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font in the body of the brief and 14-point Times New Roman font in the footnotes and is double-spaced except for footnotes.

3.      As required by 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronic brief is identical to the text in the paper copies of the brief. The brief was scanned for viruses using Microsoft Defender and no viruses were detected.

4.      As required by 3d Cir. L.A.R. 28.3(d), I certify that I am admitted to practice before the U.S. Court of Appeals for the Third Circuit and am in good standing.


Dated: November 19, 2025                    */s/ Ian R. Liston*_____
                                            Ian R. Liston

                                            *Counsel for Appellees*

16

**CERTIFICATE OF SERVICE**

I certify that, on November 19, 2025, a true and correct copy of the foregoing Defendants-Appellees' Opposition to Motion to Expedite was filed with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I also certify that seven (7) identical paper copies of the foregoing shall be filed with the Office of the Clerk, United States Court of Appeals for the Third Circuit, within 5 days of the date of electronic filing of the Brief.

Dated: November 19, 2025        */s/ Ian R. Liston*
                                      Ian R. Liston

                                      *Counsel for Appellees*