No. 25-3250

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. D/B/A BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC.; AND BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.,

*Plaintiffs-Appellants*,

v.

JOSHUA BUSHWELLER, IN HIS OFFICIAL CAPACITY AS CABINET SECRETARY, DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY; AND COLONEL WILLIAM CROTTY, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE DELAWARE STATE POLICE,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(No. 1:25-cv-01341)
THE HONORABLE MARYELLEN NOREIKA

## DEFENDANTS-APPELLEES' SUPPLEMENTAL OPPOSITION
## TO APPELLANTS' EMERGENCY MOTION
## <u>FOR EXPEDITED INJUNCTIVE RELIEF</u>

Date: November 24, 2025

DELAWARE DEPARTMENT OF JUSTICE

*Of Counsel*:

FRESHFIELDS US LLP

Jennifer B. Loeb
Austin R. Evers
Lauren Kaplin
Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ian.liston@delaware.gov
jennifer.aaronson@delaware.gov

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................1

STANDARD OF REVIEW ...................................................................................2

ARGUMENT ....................................................................................................4

I.  AN INJUNCTION PENDING APPEAL IS PROCEDURALLY
BARRED ................................................................................................4

II.  THIS COURT SHOULD NOT TAKE UP CLAIMS AND
ARGUMENTS RAISED FOR THE FIRST TIME ON APPEAL ................4

III.  ORIGINAL PLAINTIFFS WERE PROPERLY DISMISSED ....................6

IV.  THE DISTRICT COURT CORRECTLY DENIED THE PRELIMINARY
INJUNCTION................................................................................................7

A.  The District Court Did Not Credit Plaintiffs' Assertions .......................8

B.  The Guidelines Do Not Violate the APA ...........................................10

C.  The Statute Does not Violate the Second Amendment ........................12

1.  New Plaintiffs Do Not Have a Second Amendment Right
to Sell Handguns .......................................................................12

2.  The Statute is Constitutional Under *Bruen* and *Rahimi* ..............13

V.  THE HARM PLAINTIFFS ALLEGE WILL NOT MOOT THIS CASE ....15

VI.  EQUITY AND PUBLIC INTEREST WEIGH IN DEFENDANTS'
FAVOR..................................................................................................16

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

| Case | Page(s) |
|---|---|

*Acierno v. New Castle Cnty.*,
40 F.3d 645 (3d Cir. 1994) ..................................................................16

*Binderup v. Att'y Gen.*,
836 F.3d 336 (3d Cir. 2016) ................................................................14

*Brennan v. William Patterson Coll.*,
492 F.App'x 258 (3d Cir. 2012) ..........................................................10

*Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health &*
*Hum. Servs.*,
2013 WL 1277419 (3d Cir. Feb. 8, 2013) .............................................3

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland*
*Sec.*,
108 F.4th 194 (3d Cir. 2024) ......................... 2, 3, 7, 8, 13, 15, 16, 17

*Del. State Sportsmen's Ass'n v. Garvin*,
2020 WL 6813997 (Del. Super. Nov. 18, 2020) ..................................11

*DeMatteis v. Rise Del. Inc.*,
315 A.3d 499 (Del. 2024) ....................................................................11

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
830 F.App'x 377 (3d Cir. 2020) .........................................................3, 4

*Fabics v. City of New Brunswick*,
629 F.App'x 196 (3d Cir. 2015) .........................................................3, 6

*Folajtar v. Att'y Gen.*,
980 F.3d 897 (3d Cir. 2020) ................................................................14

*Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't*
*Control of State*,
861 A.2d 1233 (Del. 2004) ..................................................................11

*Harris v. City of Phila.*,
35 F.3d 840 (3d Cir. 1994) ....................................................................6

*Hope v. Warden York Cnty. Prison*,
972 F.3d 310 (3d Cir. 2020) ...................................................................16

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) ...................................................................16

*Kamdem-Ouaffo v. Task Mgmt.*,
792 F.App'x 218 (3d Cir. 2019) ...............................................................4

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth
Beach, Del.*,
506 F. Supp. 3d 229 (D. Del. 2020)..........................................................5

*Koons v. Att'y Gen. N.J.*,
156 F.4th 210 (3d Cir. 2025) .................................................13, 14, 15

*McKenna v. City of Phila.*,
304 F.App'x 89 (3d Cir. 2008) .................................................................6

*McRorey v. Garland*,
99 F.4th 831 (5th Cir. 2024) .................................................................14

*Md. Shall Issue, Inc. v. Moore*,
116 F.4th 211 (4th Cir. 2024) .........................................................13, 14

*Nextel W. Corp. v. Unity Twp.*,
282 F.3d 257 (3d Cir. 2002) .................................................................10

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................................16

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2024) ...........................................................................13, 14

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) .................................................................12

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)..................................................................................5

*United States v. Chafin*,
423 F.App'x 342 (4th Cir. 2011)............................................................12

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ....................................................................12

*United States v. Rahimi*,
602 U.S. 680 (2024)...............................................................................14

*United States v. Salerno*,
481 U.S. 739 (1987)...............................................................................16

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) ...............................................................3, 6, 7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...................................................................................16

**Statutes**

11 Del. C. § 1448 ......................................................................................11

11 Del. C. § 1448D ......................................................................................8

28 U.S.C. § 1292 ..........................................................................................4

**Other Authorities**

Fed. R. App. P. 8 ..........................................................................................4

## INTRODUCTION

As directed, Defendants here "assum[e] that the appellants' motion at docket number 4 seeks injunctive relief." ECF 18. But even generously read, Plaintiffs' Emergency Motion for Expedited Injunctive Relief, ECF 4-1 (***Motion***), is ambiguous about what exactly they are seeking beyond an expedited merits briefing schedule—an injunction of what, as to whom, and for how long? Thus, Defendants submit it would be inappropriate to grant Plaintiffs an extraordinary outcome they did not request.[1] At minimum, they should not be allowed to articulate their demand for the first time in their responsive supplemental brief.

Fortunately, no matter what injunctive relief Defendants should assume they are seeking, Plaintiffs cannot meet their burden to show it is warranted. Plaintiffs first fail if their Motion is read as a request for an injunction of the Statute pending

---

[1] As Defendants read it, the only relief Plaintiffs actually sought in their Motion was an expedited briefing schedule to appeal the District Court's decision below on the merits. They only expressly "request[ed] that this Court enter an expedited schedule in this appeal" and only cited the Local Appellate Rule for expedited scheduling. Mot. at 3; *see also id.* at 4 (request for briefing schedule). Plaintiffs do make the following gestures for injunctive relief, but only in the context of seeking to have the full appeal heard on an extremely fast timetable: "an injunction to prevent enforcement of the Permit Bill," *id.* at 2; "The enforcement date for the Permit Bill should be extended until the State can demonstrate that eligible Delawareans, such as Challengers, are allowed a reasonable period of time to obtain a permit before the Permit Bill is enforced," *id.* at 2–3; "maintain the status quo as of November 15, 2025," *id.* at 18.

appeal. They did not ask for that or cite any rule for such relief, but in any event, it is barred by the Federal Rules of Appellate Procedure.

Plaintiffs fare no better if they are read as seeking an injunction of the Statute itself. This Court has cautioned lower courts against issuing preliminary injunctions "hurriedly and on the basis of very limited evidence." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) ("*DSSA*"). A court should thus not grant an injunction absent a "clear showing" such "extraordinary" relief is warranted. *Id.* at 202. To find that here, the Court would need to: (i) find the District Court abused its discretion in multiple ways, (ii) conclude the District Court's factual findings were clear error, (iii) find Plaintiffs have made a "clear showing" under each element of the preliminary injunction standard, and (iv) find the circumstances clearly warrant extraordinary relief. There is no basis for any such finding, especially where the evidence indicates the public is successfully procuring handguns under the very Statute Plaintiffs claim operates as a "total ban."[2]

## <u>STANDARD OF REVIEW</u>

**Claim Splitting**: A district court has the general power to administer its docket and its decision to dismiss a duplicative complaint is reviewed for abuse of

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in Defendants-Appellees' Opposition to Motion to Expedite, ECF 16.

discretion. *See Fabics v. City of New Brunswick*, 629 F.App'x 196, 198 (3d Cir. 2015); *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).

**Denial of a Preliminary Injunction**: When reviewing a district court's decision on a motion for preliminary injunction, this Court "review[s] the [d]istrict [c]ourt's factual findings for clear error, its legal rulings de novo, and its ultimate decision for abuse of discretion." *DSSA*, 108 F.4th at 198 (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)). "At this early stage, [the Third Circuit] review[s] deferentially because the 'denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing that is the responsibility of the district judge.'" *Id.* (quoting *Marxe v. Jackson*, 833 F.2d 1121, 1125 (3d Cir. 1987)).

**Injunction Pending Appeal**: "[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Sec. of U.S. Dep't of Health & Hum. Servs.*, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013); *see also Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F.App'x 377, 389 (3d Cir. 2020) (listing factors and requiring a "strong" showing). The cautions against preliminary injunctions articulated in *DSSA* apply with equal force.

**ARGUMENT**

Plaintiffs' Motion should be denied for multiple reasons, regardless of how it is construed.

**I.     AN INJUNCTION PENDING APPEAL IS PROCEDURALLY BARRED.**

"A party must ordinarily move first in the district court for . . . an order . . . granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Here, even if Plaintiffs' Motion is interpreted as requesting an injunction pending appeal, it is barred because Plaintiffs have "neither requested that from the District Court during the appeal nor showed that [they] could not make that request, as required by Federal Rule of Appellate Procedure 8(a)(2)(A). That failure bars the motion." *Trump*, 830 F.App'x at 389. Notably, Plaintiffs have since filed an unrelated motion before the District Court, foreclosing any argument they "could not" "move first" there.

**II.     THIS COURT SHOULD NOT TAKE UP CLAIMS AND ARGUMENTS RAISED FOR THE FIRST TIME ON APPEAL.**

The Court's jurisdiction here is "limited" and covers "review [of] the District Court's denial of [plaintiffs'] request for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1)." *Kamdem-Ouaffo v. Task Mgmt.*, 792 F.App'x 218, 220 (3d Cir. 2019).

Plaintiffs already have what they asked for below: evidence that the permit process is functioning. Proposed Order, App.112–13 ¶ 2. The District Court agreed that Defendants provided that. Further, Plaintiffs already have what they newly ask for *now*: "a reasonable period of time to obtain a permit." Mot. at 3. They can apply for a permit and receive one, most likely in 3 days or less. Stevenson Decl., App.215 ¶ 19. There is no need to issue an injunction to give Plaintiffs something they already have. *See, e.g.*, *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Del.*, 506 F. Supp. 3d 229, 237 (D. Del. 2020) (motion moot given conforming conduct).[3]

Nonetheless, this Court lacks jurisdiction to grant such relief because Plaintiffs did not request it below. There, Plaintiffs disclaimed seeking relief for any class. Tr. at 43:10–11; *see also Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025) ("injunctions . . . asserting the power to prohibit enforcement of a law or policy against *anyone* . . . likely exceed the equitable authority that Congress has granted to federal courts").

The Court also should not consider the other arguments Plaintiffs bring for the first time. Plaintiffs argue an injunction would be appropriate because the Statute is ambiguous, Mot. at 5–6, and because Defendants have "provide[d] no evidence

---

[3] Indeed, each day that passes is more time Plaintiffs *could* be completing the permitting process, as hundreds of Delawareans have done.

that the permit bill fits within the Nation's historical tradition," *id.* at 15. Plaintiffs never sought an injunction on the basis that the Statute is vague or unconstitutional as drafted. They argued the alleged lack of infrastructure to *implement* it meant it would *operate* as a *de facto* "total ban." *See* Pls.' Opening Br., App.122–123; Opinion at 4. Any arguments not raised below should be disregarded. *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994).[4]

## III.   ORIGINAL PLAINTIFFS WERE PROPERLY DISMISSED.

The District Court properly exercised its discretion in dismissing the Original Plaintiffs for claim splitting. A party "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton*, 563 F.2d at 70. "Parallel complaints need not be completely identical to fall under *Walton*." *McKenna v. City of Phila.*, 304 F.App'x 89, 94 (3d Cir. 2008); *see also Fabics*, 629 F.App'x at 199 (dismissal proper even where parties added).

The District Court correctly determined the Original Plaintiffs engaged "in exactly the sort of claim splitting" barred by this Court. Opinion at 6. The Original Plaintiffs "allege[d] the same counts against the same Defendants" regarding the same subject matter (the Statute) in two cases pending in the same district. *Id.* at 3.

---

[4] There was discussion below of the historical basis for the Statute, however the District Court stated that it was not at issue and could "come up, perhaps, in the future, depending on what happens with the motion to dismiss." Tr. at 34:14–16.

The Original Plaintiffs even "acknowledge[d] the duplicative nature of the [Original] Plaintiffs' presence in this action." *Id.* at 5.

A court must act to "insure[] that the plaintiff does not use the tactic . . . to expand the procedural rights he would have otherwise enjoyed," especially around "the rules pertaining to the amendment of complaints." *Walton*, 563 F.2d at 71. Here, the District Court found Plaintiffs tried to "circumvent" a stipulated order barring further amendments. Opinion at 6.

Plaintiffs argue the Court committed "reversable error" by failing to consolidate the cases. But they never asked for consolidation below. *See* Tr. at 8:24– 9:1. And they offer no case requiring courts to consolidate *sua sponte. See Walton*, 563 F.2d at 70–71 (discussing options available to court).

## IV. THE DISTRICT COURT CORRECTLY DENIED THE PRELIMINARY INJUNCTION.

As this Court has consistently explained, "a preliminary injunction is an extraordinary remedy [that] should be granted in only limited circumstances." *DSSA*, 108 F.4th at 200 (cleaned up). "Injunctions themselves can inflict harm. Thus, a court should not grant an injunction unless the plaintiff's right is clear, his impending injury is great, and only an injunction can avert that injury." *Id.* None of those circumstances are present here. The Court also cautioned that "injunctions raise . . . problems" because, *inter alia*, they are often "granted hurriedly and on the basis of very limited evidence[,]" "[t]ime pressures limit adversarial testing[,]" and when

enjoinment of a new law is at issue, "courts must forecast how the law will work." *Id.* (internal quotation marks and citations omitted). "Unless the need for [a preliminary injunction] in a particular case outweighs these risks, the court should not grant one." *Id.* Plaintiffs make no such showing here.

### A. The District Court Did Not Credit Plaintiffs' Assertions.

Nothing approaching a "ban" of handguns exists in Delaware. Plaintiffs claimed incorrectly that, because "the State has not put in place the infrastructure necessary" for an applicant to receive a permit, "or for the State itself to grant a permit," the Statute serves to operate as "a total ban on handguns" Opinion at 7 (quoting Plaintiffs' Opening Br., App.129). They argue the same here. Mot. at 1.

Delawareans have been applying for and obtaining permits under the Statute since at least November 1, 2025, before Plaintiffs filed their Motion. Stevenson Decl., App.213 ¶ 7. SBI has issued hundreds of Permits. *Id.* ¶ 9. Most applications are granted within 1–3 business days. *Id.*, App.215 ¶ 19; Opinion at 9. Defendants have even created a helpline to guide applicants through the process in the event they have any issues or questions. Opinion at 9. Plaintiffs assert the potential for harm because there is no clear process for instances where a permit is not issued within 30 days. But no Plaintiff has come even close to that speculative moment, and in any event, the Statute requires SBI to issue a decision within 30 days, 11 Del. C. § 1448D(h),

8

(i), and provides an appeal process, *id.* (m), in the event SBI does not act in that time frame.[5]

The infrastructure also exists for applicants to complete the Statute's training requirement. Stevenson Decl., App.215 ¶ 18. In fact, one Plaintiff is qualified to give these trainings and has done so. Smith Decl. App. 292 ¶ 14. Plaintiffs' own "google searches" show "posted Permit to Purchase trainings . . . between November 8, 2025 and . . . November 16, 2025." Mot. at 11. They offer no evidence—and certainly no qualified expert or statistical analysis—to support their assertion that there are insufficient courses to meet demand. *See id.* at 11–12. Further, many Delawareans can purchase handguns without a Permit under the Statute, including holders of Concealed Carry Deadly Weapon licenses, of which there are more than 33,000 in Delaware. *See* CCDW Statistics, Del. Sup. Ct., https://courts.delaware.gov/forms/download.aspx?ID=125408; *see also* Permit to Purchase, Delaware State Police, https://dsp.delaware.gov/permit-to-purchase/ ("CCDW holders are not required to apply for a handgun purchaser permit.").

The District Court found that the evidence below "provides substantial detail calling into question Plaintiffs' assertions." Opinion at 9. There is no basis, let alone "clear error," warranting reversal.

---

[5] *See* https://courts.delaware.gov/JPCourt/hqpp.aspx.

**B.    The Guidelines Do Not Violate the APA.**

Plaintiffs do not assert a claim under the Delaware APA, and have never sought an injunction against any aspect of the referenced Permit to Purchase Firearms Training Course Guidelines (**Guidelines**). Nor have they ever alleged any type of injury arising from their APA argument. Instead, Plaintiffs ask the Court to simply accept that certain Guidelines are invalid and must, *a fortiori*, harm them in some way. *See* Mot. at 12–14. The District Court granted that this argument "is not frivolous," but found it "moot" because of changes to the Guidelines that obviated any APA concern. Opinion at 9.

Plaintiffs make sweeping assertions about the APA, but zero in on sections of the Guidelines related to the approval of firearm trainers. They assert these are regulations that should have gone through an APA process. Pls.' Opening Br., App.129–131. While Defendants did not concede any violation, they committed to removing the portions of the Guidelines describing an approval process. Defs.' Letter, App.320; Tr. at 37:8–11.[6] Therefore, any APA claim Plaintiffs may have had is now moot. Opinion at 9. *See, e.g.*, *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 262 (3d Cir. 2002) (claim mooted by repeal of challenged ordinances); *Brennan v.*

---

[6] Those changes have been made. *Compare* App.106, *with* Firearms Training Course Guidelines, DSP, https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/11/Training-Course-Guidelines.pdf (last visited Nov. 24, 2025).

*William Patterson Coll.*, 492 F.App'x 258, 295 (3d Cir. 2012).

Even if Plaintiffs made an APA claim, and even if it were not moot, Delaware law provides that "when an agency . . . implements a specific and detailed statutory directive, it may operate outside the scope of the APA." *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233, 1236 (Del. 2004). Here, the Statute's plain language provides a clear mandate regarding the requirements of the firearms training courses. *See* 11 Del. C. § 1448(d)(f)(4)(a)–(k); *see also* Opinion at 8 ("Plaintiffs seem to accept that the *content* of firearm training courses flow directly from the language of the statute"). The Guidelines straightforwardly implement the legislature's mandate. *See DeMatteis v. Rise Del. Inc.*, 315 A.3d 499, 515 (Del. 2024) (finding that adoption of healthcare plan authorized by statute was outside APA's scope). The Guidelines are within the scope of SBI's implementation duties based on the explicit and detailed language of the Statute. *See Free-Flow Packaging*, 861 A.2d at 1236 ("level of specificity in statute" allowed implementation without APA review).[7]

---

[7] Plaintiffs' reliance on *Delaware State Sportsmen's Association v. Garvin* is misplaced: the agency action there did not involve implementation of a statute regime. 2020 WL 6813997, at *10 (Del. Super. Nov. 18, 2020).

**C.     The Statute Does Not Violate the Second Amendment.**

While Plaintiffs' argument regarding historical tradition should be disregarded because they bring it for the first time on appeal, such a claim would have no likelihood of success on the merits even if it were properly brought.

**1.     New Plaintiffs Do Not Have a Second Amendment Right to Sell Handguns.**

While the Second Amendment protects an individual's right to keep and bear arms, it does not provide for a right to sell arms. New Plaintiffs, a gun seller and its owner, cannot claim the Statute violates their Second Amendment rights. *See* Tr. at 38:11–13 (noting "the person whose right is being purportedly infringed is the buyer, not the seller"). Put differently, even if the Statute created a system where no firearms could be sold (*à la Heller*)—which it does not—the right at issue would belong to individuals seeking to "keep and bear" firearms by purchasing them, not individuals seeking to sell firearms. *See, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) ("Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons."); *United States v. Chafin*, 423 F.App'x 342, 344 (4th Cir. 2011) (Second Amendment "does not necessarily give rise to a . . . right to sell a firearm").

Plaintiffs cannot make headway with *United States v. Marzzarella*, which analyzed the impact of commercial regulations on individuals' Second Amendment

rights. 614 F.3d 85, 92 n.8 (3rd Cir. 2010). It does not suggest sellers have a Second Amendment right.

### 2.  The Statute is Constitutional Under *Bruen* and *Rahimi*.

Even if Plaintiffs had requested injunctive relief on the grounds that the Statute is unconstitutional, such a request would have to be denied because they fail to show any likelihood of success on the merits. *See Koons v. Att'y Gen. N.J.*, 156 F.4th 210, 249 (3d Cir. 2025) (no likelihood of success where law "fit[] squarely within the principles underlying our Nation's history of firearm regulation"); *DSSA*, 108 F.4th at 217 (Roth, J., concurring).[8]

The Fourth Circuit upheld a nearly identical law last year as a presumptively valid permitting scheme. S*ee Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216 (4th Cir. 2024).[9] Under *Bruen*, shall-issue regimes like the Statute "which often require applicants to undergo a background check or pass a firearms safety course," are constitutionally permissible because they "are designed to ensure only that those bearing arms . . . are, in fact, law-abiding, responsible citizens." 597 U.S. at 38 n.9 (cleaned up). Although the Supreme Court "d[id] not rule out constitutional challenges to shall-issue regimes" that are "put toward abusive ends," no such

---

[8] Defendants briefed this issue in *Neuberger I* and the District Court incorporated those arguments in its assessment below. *See Neuberger I*, ECF 42, at 12–14.

[9] Plaintiffs characterize the Maryland statute as "nearly identical" in their Complaint. *Neuberger I*, ECF 1, ¶ 67.

evidence exists here. *See McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (background check requirement not *de facto* prohibition where plaintiffs made no showing law was "abusive").

No further analysis under the second step of *Bruen* is required. *See Koons*, 156 F.4th at 246. Nonetheless, the Statute is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "[I]mposing similar restrictions for similar reasons" as historical firearm regulations is a "strong indicator" that a contemporary law will "fall within a permissible category of regulations." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Indeed, courts have consistently confirmed "that certain dangerous individuals may be prohibited from possessing firearms at all, not just from carrying them publicly." *Md. Shall Issue*, 116 F.4th at 233 (Rushing, J., concurring)[10] (citing *Rahimi*, 602 U.S. at 682 (historical laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.")); *Folajtar v. Att'y Gen.*, 980 F.3d 897, 913 (3d Cir. 2020) (Bibas, J., dissenting); *Binderup v. Att'y Gen.*, 836 F.3d 336, 369 (3d Cir. 2016) (en banc) (Hardiman, J., concurring).

---

[10] The District Court indicated it found Judge Rushing's historical analysis persuasive. Tr. at 34:8-10.

## V. THE HARM PLAINTIFFS ALLEGE WILL NOT MOOT THIS CASE.

This Court has explained that "the threat of irreparable harm does not automatically trigger a preliminary injunction." *DSSA*, 108 F.4th at 201. "Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Id.* (quoting 11A Wright & Miller § 2948.1, at 129). Thus, "[c]ourts may withhold this extraordinary remedy if a plaintiff's alleged injury does not threaten to moot the case." *Id.* Further, even if a statute violates the Second Amendment rights, that harm "can be cured after final judgment." *Id.* at 205; *see also Koons*, 156 F.4th at 273.

This case mirrors *DSSA*. Like the plaintiffs there, the Original Plaintiffs have not alleged a "time-sensitive need" for handguns. *See, e.g.*, Neuberger Decl., App.170 ¶ 25 (indicating that he "intend[s] to purchase a Sig Sauer P365" no sooner than a month after the date of his declaration); Hague Decl., App.175 ¶ 17 ("I am aware of and spoken directly with several DSSA members who intend to purchase a handgun. . . ."); Martin Decl., App.299 ¶ 9 ("I regularly purchase and collect firearms and will continue to do so."). The Original Plaintiffs "have shown no harms beyond ones that can be cured after final judgment," which "alone suffices to support the District Court's denial of a preliminary injunction." *DSSA*, 108 F.4th at 205.

As for the New Plaintiffs, it has long been held that "[e]conomic loss does not constitute irreparable harm," and even where that harm stems from a constitutional

violation, it "can be remedied by an award of money damages." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653, 655 (3d Cir. 1994). Plaintiff BKK Firearms claims it faces bankruptcy if temporarily unable to sell handguns, Smith Decl., App.180 ¶¶ 17–19, but this assertion is "not supported by any financial statements or projections in the record" and should be afforded no weight. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989).

## VI. EQUITY AND PUBLIC INTEREST WEIGH IN DEFENDANTS' FAVOR.

To balance the equities, the Court weighs the harm the opposing party would suffer from an injunction against harm to the movant absent injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). "[W]hen the Government is the opposing party," factors three and four merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[A court's] consideration of risk to the public's safety before providing preliminary injunctive relief is crucial." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (government has "compelling interests in public safety"). Defendants have a compelling interest in protecting Delawareans' safety by ensuring those who wish to purchase handguns have the proper qualifications and training.

Moreover, "'[t]here is always a public interest in prompt execution' of the laws," especially where a federal court is asked to interfere with enforcement of a state law. *DSSA*, 108 F.4th at 205. While federal courts may strike state laws that go

16

beyond the state's constitutional authority, this power hinges on a complete record. "Without the clarity of a full trial on the merits . . . [federal courts] must err on the side of respecting state sovereignty." *Id.* at 206. Invalidation of the Statute now would constitute an affront to state sovereignty.

Plaintiffs' only argument before this Court is that "[t]here is no record support for the State's position on this factor." Mot. at 17. This is confounding considering it is Plaintiffs' request for injunctive relief, and therefore *their burden of proof. DSSA* at 202 ("the movant bears the burden"). Because there is no "de facto ban" on handguns in Delaware, Plaintiffs have not demonstrated they will suffer a deprivation of constitutional rights and so cannot show they will face *any* significant harm absent injunctive relief. In contrast, any preliminary injunctive relief would harm the State's public safety interests and "threaten[] federalism and the separation of powers[.]" *Id.* at 205.

## CONCLUSION

For the foregoing reasons, even assuming Plaintiffs have asked for injunctive relief, this Court should deny Plaintiffs' request.

Dated:  November 24, 2025

*Of Counsel*:

<span style="font-variant: small-caps">Freshfields</span> US LLP

Jennifer B. Loeb
Austin R. Evers
Lauren Kaplin
Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com


Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com


*Counsel for Defendants-Appellees*

Respectfully submitted,

<span style="font-variant: small-caps">Delaware Department of Justice</span>

 */s/ Ian R. Liston*
Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ian.liston@delaware.gov
jennifer.aaronson@delaware.gov

# COMBINED CERTIFICATIONS OF COMPLIANCE

1.	This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), and this Court's order issued November 20, 2025, because it contains 3999 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.	This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font in the body of the brief and 11-point Times New Roman font in the footnotes and is double-spaced except for footnotes.

3.	As required by 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronic brief is identical to the text in the paper copies of the brief. The brief was scanned for viruses using Microsoft Defender and no viruses were detected.

4.	As required by 3d Cir. L.A.R. 28.3(d), I certify that I am admitted to practice before the U.S. Court of Appeals for the Third Circuit and am in good standing.

Dated: November 24, 2025	*/s/ Ian R. Liston*_____
Ian R. Liston

*Counsel for Defendants-Appellees*

# CERTIFICATE OF SERVICE

I certify that, on November 24, 2025, a true and correct copy of the foregoing Defendants-Appellees' Supplemental Opposition to Appellants' Emergency Motion For Expedited Injunctive Relief was filed with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I also certify that seven (7) identical paper copies of the foregoing shall be filed with the Office of the Clerk, United States Court of Appeals for the Third Circuit, within 5 days of the date of electronic filing of the Brief.

Dated: November 24, 2025                    */s/ Ian R. Liston*_____
                                            Ian R. Liston

                                            *Counsel for Defendants-Appellees*