# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### No. 25-3250

---

## DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., ET AL.,

Plaintiffs-Appellants,

v.

## DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, ET AL.

Defendants-Appellees.

---

Appeal from a Judgment of the United States District Court
for the District of Delaware (Noreika, J.)
(Dist. Ct. No. 1:25-cv-01341-MN)

## VOLUME II

## APPENDIX TO OPENING BRIEF OF APPELLANTS

## App029-App444

---

Alexander MacMullan, Esquire
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
565 E. Swedesford Road, Suite 303
Wayne, PA 19087
Alexander.MacMullan@LewisBrisbois.com

Joseph G.S. Greenlee
National Rifle Association of
America – Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA 22030

Francis G.X. Pileggi, Esquire
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com

Dated: March 25, 2026

173932710

# APPENDIX
# VOLUME II OF II
# <u>TABLE OF CONTENTS</u>

District Court docket ....................................................................................App029

Complaint with Exhibits [D.I. 1]................................................................App051

Plaintiffs' Opening Brief in Support of their Motion for
    Expedited Injunctive Relief [D.I. 4] ...................................................App161

Declaration of Keith A. Walter, Jr. in Support of Plaintiffs' Motion
    For Expedited Injunctive Relief with Exhibits [D.I. 5]....................App183

Declaration of Thomas S. Neuberger in Support of Plaintiffs' Motion
    For Temporary Restraining Order and Preliminary Injunction [D.I. 6].........App213

Declaration of Jeffrey W. Hague, President of Delaware State
    Sportsmen's Association, Inc., in Support of Plaintiffs' Motion
    For Temporary Restraining Order and Preliminary Injunction [D.I. 7].........App219

Declaration of Bruce C. Smith, Owner and Operator of Kenpo Karate,
    Inc., d/b/a BKK Firearms in Support of Plaintiffs' Motion
    For Temporary Restraining Order and Preliminary
    Injunction [D.I. 8] .................................................................................App224

Oral Order of Honorable Maryellen Noreika,
    dated November 5, 2025 [D.I. 16]........................................................App228

Brief in Support of Defendants' Opposition to Plaintiff's Motion
    For Expedited Injunctive Relief with Exhibits [D.I. 20]..................App230

Plaintiffs Reply Brief in Further Support of Their Motion
    For Expedited Injunctive Relief [D.I. 29] ..........................................App273

Second Declaration of Thomas S. Neuberger in Support of Plaintiffs'
    Motion for Expedited Injunctive Relief with Exhibit [D.I. 30] .......App288

Declaration of Alexander D. MacMullan, Esquire in Support of
    Plaintiffs' Motion for Expedited Injunctive Relief [D.I. 31] ...........App299

Second Declaration of Bruce C. Smith, Owner and Operator of
Bridgeville Kenpo Karate, Inc., d/b/a BKK Firearms in Support of
Plaintiffs Motion for Expedited Injunctive Relief
With Exhibit [D.I. 32].......................................................................App335

Declaration of Jerry L. Martin in support of Plaintiffs' Motion for Expedited
Injunctive Relief [D.I. 33] ............................................................App345

Letter with attachment to Judge Noreika from Francis G.X. Pileggi [D.I. 34]...App352

Letter to Judge Noreika from DOJ [D.I. 35] .........................................App367

Supplemental Declaration of Sergeant Jason L. Stevenson [D.I. 36]..................App370

Letter to Judge Noreika from Francis G.X. Pileggi regarding Two Related
Cases [D.I. 12] .............................................................................App381

Official Transcript of Motion Hearing held on 11/13/2025 before
Judge Maryellen Noreika [D.I. 43] ..................................................App383

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:25-cv-01341-MN

Neuberger et al v. Bushweller et al
Assigned to: Judge Maryellen Noreika
Related Case: 1:24-cv-00590-MN
Case in other court: Third Circuit, 25-03250
Cause: 28:1651 Petition for Writ of Coram Nobis

Date Filed: 11/03/2025
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

## Plaintiff

**Thomas S. Neuberger**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, 7th Floor
Wilmington, DE 19801
(302) 985-6002
Email: francis.pileggi@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue
500 Delaware Avenue, Suite 700
Ste 700
Wilmington, DE 19702
302-295-9443
Email: keith.walter@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue
Suite 1410
Wilmington, DE 19801
(302) 467-4265
Fax: (302) 467-4201
Email: Keith.Walter@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
The Neuberger Firm, P.A.
17 Harlech Drive
P.O. Box 4481
Wilmington, DE 19807
(302) 655-0582
Email: SJN@NeubergerLaw.com

**App029**

*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry L. Martin**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William R. Hague, Jr.**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce C. Smith**

represented by **Francis G.X. Pileggi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander MacMullan**

**App030**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Bridgeville Kenpo Karate, Inc.**<br>*doing business as*<br>BKK Firearms | represented by | **Francis G.X. Pileggi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Keith A Walter , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Delaware State Sportsmen's Association, Inc.**<br>*TERMINATED: 11/17/2025* | represented by | **Francis G.X. Pileggi**<br>(See above for address)<br>*TERMINATED: 11/17/2025*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bridgeville Rifle and Pistol Club, Ltd.**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Joshua Bushweller**
*in his official capacity as Cabinet Secretary of the Delaware Department of Safety and Homeland Security*

represented by **Ian Robert Liston**
Delaware Department of Justice
Fraud and Consumer Protection Division,
White Collar Crime U
820 N. French Street
Wilmington, DE 19807
302-683-8899
Email: Ian.Liston@delaware.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer-Kate M. Aaronson**
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8803
Email: kate.aaronson@delaware.gov
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Austin R. Evers**
Email: austin.evers@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Johnston**
Email: jacob.johnston@freshfields.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer B. Loeb**
Email: jennifer.loeb@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Kaplin**
Email: lauren.kaplin@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Kerr**
Email: rebecca.kerr@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

## Defendant

**Col. William Crotty**
*in his official capacity as superintendent of the Delaware State Police*

represented by **Ian Robert Liston**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer-Kate M. Aaronson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Austin R. Evers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Johnston**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer B. Loeb**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Kaplin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Kerr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/03/2025 | 1 | COMPLAINT for Declaratory and Injunctive Relief against Joshua Bushweller, William Crotty (Filing fee $ 405, receipt number ADEDC-4828380) - filed by William R. Hague, Jr, Delaware State Sportsmen's Association, Inc., Bridgeville Rifle and Pistol Club, Ltd., Jerry L. Martin, Thomas S. Neuberger, Bridgeville Kenpo Karate, Inc., Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Civil Cover Sheet)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 3 | MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Letter, # 2 Proposed Order)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 4 | OPENING BRIEF in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. Answering Brief/Response due date per Local Rules is 11/17/2025. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 5 | DECLARATION of Keith A. Walter, Jr. in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 6 | DECLARATION of Thomas S. Neuberger in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 7 | DECLARATION of Jeffrey W. Hague in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 8 | DECLARATION of Bruce C. Smith in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | | DEFICIENCY NOTICE issued by the Court to Plaintiff: Pursuant to Fed. R. Civ. P. 7.1 (b)(1), A party must: (1) file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. Counsel is requested to supplement the docket with an appropriate Rule 7.1 Disclosure Statement. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | | No Summons Issued. (jfm) (Entered: 11/04/2025) |
| 11/04/2025 | | Remark: Exit Electronic Copies to Duty Judge (MN). (jfm) (Entered: 11/04/2025) |
| 11/04/2025 | 9 | Disclosure Statement pursuant to Rule 7.1: identifying Other Affiliate National Rifle Association for Delaware State Sportsmen's Association, Inc. filed by Delaware State Sportsmen's Association, Inc.. (Pileggi, Francis) (Entered: 11/04/2025) |

| | | |
|---|---|---|
| 11/04/2025 | 10 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Bridgeville Rifle and Pistol Club, Ltd.. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 11 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Bridgeville Kenpo Karate, Inc.. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 12 | Letter to Judge Noreika from Francis G.X. Pileggi regarding Two Related Cases. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 13 | ORAL ORDER re 3 Motion for Expedited Injunctive Relief: IT IS HEREBY ORDERED that a hearing on the plaintiffs' motion is set for 11/13/2025 at 02:00 PM in Courtroom 4A before Judge Maryellen Noreika. The defendants shall file a response to the motion by Friday, 11/7/2025, and the plaintiffs shall file a reply by NOON on Monday, 11/10/2025. IT IS FURTHER ORDERED that the plaintiffs shall serve a copy of this Oral Order on the defendants promptly. ORDERED by Judge Maryellen Noreika on 11/4/2025. (mdb) (Entered: 11/04/2025) |
| 11/04/2025 | 14 | NOTICE of Appearance by Ian Robert Liston on behalf of All Defendants (Liston, Ian) (Entered: 11/04/2025) |
| 11/04/2025 | 15 | NOTICE of Appearance by Jennifer-Kate M. Aaronson on behalf of All Defendants (Aaronson, Jennifer-Kate) (Entered: 11/04/2025) |
| 11/05/2025 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (alb) (Entered: 11/05/2025) |
| 11/05/2025 | 16 | ORAL ORDER re 13 Oral Order - Having reviewed again the briefing in related case C.A. No. 24-590 (MN), IT IS HEREBY ORDERED that the Court's 11/4/2025 Oral Order in this case (D.I. 13) is amended as follows: Defendants need not repeat the arguments made in their briefing in C.A. No. 24-590 (MN); rather, Defendants' response should include, to the extent they have a response, argument as to the challenged law's consistency with the principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*. In addition, Defendants shall address Plaintiffs' allegations regarding the absence of an appropriate infrastructure to implement the challenged law as of 11/16/2025. ORDERED by Judge Maryellen Noreika on 11/5/2025. (dlw) (Entered: 11/05/2025) |
| 11/05/2025 | 17 | Summons Issued as to Joshua Bushweller on 11/5/2025; William Crotty on 11/5/2025. (Attachments: # 1 Summons Issued)(mrr) (Entered: 11/05/2025) |
| 11/05/2025 | 18 | Letter to The Honorable Maryellen Noreika from Jennifer Kate Aaronson regarding Plaintiffs' filings and Request for Extension of Deadline to Respond to Motion for Temporary Restraining Order from November 7 to November 10 - re 1 Complaint,, 16 Oral Order,,, 12 Letter, 13 Oral Order,,, Set Briefing Schedule,,, Set Hearings,, 4 Opening Brief in Support, 3 MOTION for Expedited Injunctive Relief. (Liston, Ian) (Entered: 11/05/2025) |
| 11/06/2025 | 19 | ORAL ORDER re 18 Letter: IT IS HEREBY ORDERED that the requests for extensions of time are GRANTED-IN-PART and DENIED-IN-PART as follows: Defendants have until NOON on Monday, 11/10/2025, to file their answering brief, and the plaintiffs have until NOON on Wednesday, 11/12/2025, to file their reply brief. The date and time of the motion hearing remains unchanged. ORDERED by Judge Maryellen Noreika on 11/6/2025. (mdb) (Entered: 11/06/2025) |
| 11/10/2025 | 20 | ANSWERING BRIEF in Opposition re 3 MOTION for Expedited Injunctive Relief filed by Joshua Bushweller, William Crotty.Reply Brief due date per Local Rules is 11/17/2025. (Attachments: # 1 Declaration of Sgt. Jason L. Stevenson, # 2 Exhibit Ex. A. to Stevenson Decl., # 3 Exhibit Ex. B to Stevenson Decl.)(Liston, Ian) (Entered: 11/10/2025) |

**App035**

| | | |
|---|---|---|
| 11/11/2025 | 21 | MOTION for Pro Hac Vice Appearance of Attorney Austin R. Evers - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 22 | MOTION for Pro Hac Vice Appearance of Attorney Jennifer B. Loeb - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 23 | MOTION for Pro Hac Vice Appearance of Attorney Jacob Johnston - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 24 | MOTION for Pro Hac Vice Appearance of Attorney Lauren Kaplin - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 25 | MOTION for Pro Hac Vice Appearance of Attorney Rebecca Curwin Kerr - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 26 | Pro Hac Vice Fee - Credit Card Payment received for Jacob Johnson, Jennifer B. Loeb, Auston R. Evers, Lauren Kaplin, and Rebecca Curwin Kerr. ( re 25 MOTION for Pro Hac Vice Appearance of Attorney Rebecca Curwin Kerr, 22 MOTION for Pro Hac Vice Appearance of Attorney Jennifer B. Loeb, 21 MOTION for Pro Hac Vice Appearance of Attorney Austin R. Evers, 24 MOTION for Pro Hac Vice Appearance of Attorney Lauren Kaplin, 23 MOTION for Pro Hac Vice Appearance of Attorney Jacob Johnston )( Payment of $ 250, receipt number ADEDC-4834512).(Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 27 | MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Walter, Keith) (Entered: 11/11/2025) |
| 11/11/2025 | 28 | Pro Hac Vice Fee - Credit Card Payment received for Alexander D. MacMullan. ( re 27 MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan )( Payment of $ 50, receipt number ADEDC-4834631).(Walter, Keith) (Entered: 11/11/2025) |
| 11/12/2025 | 29 | REPLY BRIEF re 3 MOTION for Expedited Injunctive Relief filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Certificate of Service)(Walter, Keith) Modified on 11/12/2025 (dlw). (Entered: 11/12/2025) |
| 11/12/2025 | 30 | Second DECLARATION of Thomas S. Neuberger in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A)(Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | 31 | DECLARATION of Alexander D. MacMullan, Esquire in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | 32 | Second DECLARATION of Bruce C. Smith, Owner and Operator of Bridgeville Kenpo Karate, Inc. d/b/a BKK Firearms in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A)(Walter, Keith) (Entered: 11/12/2025) |

| | | |
|---|---|---|
| 11/12/2025 | 33 | DECLARATION of Jerry L. Martin in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A) (Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | | SO ORDERED re 25 MOTION for Pro Hac Vice Appearance of Rebecca Curwin Kerr, 22 MOTION for Pro Hac Vice Appearance of Jennifer B. Loeb, 21 MOTION for Pro Hac Vice Appearance of Austin R. Evers, 24 MOTION for Pro Hac Vice Appearance of Lauren Kaplin, 23 MOTION for Pro Hac Vice Appearance of Jacob Johnston filed by Joshua Bushweller, William Crotty. ORDERED by Judge Maryellen Noreika on 11/12/2025. (dlw) (Entered: 11/12/2025) |
| 11/12/2025 | | SO ORDERED re 27 MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr. ORDERED by Judge Maryellen Noreika on 11/12/2025. (dlw) (Entered: 11/12/2025) |
| 11/13/2025 | | Minute Entry for proceedings held before Judge Maryellen Noreika - Motion Hearing held on 11/13/2025 re 3 Motion for Expedited Injunctive Relief. The parties shall submit the filings as ordered by NOON tomorrow; the motion is taken under consideration and a ruling will be issued in due course. (Court Reporter Dale Hawkins.) (mdb) (Entered: 11/13/2025) |
| 11/14/2025 | | Pro Hac Vice Attorney Jacob Johnston, Rebecca Kerr, Lauren Kaplin, Jennifer B. Loeb & Austin R. Evers for Joshua Bushweller & William Crotty added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (slk) (Entered: 11/14/2025) |
| 11/14/2025 | 34 | Letter to The Honorable Maryellen Noreika from Francis G.X. Pileggi, Esquire regarding Replying to Court's request from November 13, 2025 - re Motion Hearing,. (Attachments: # 1 Attachment to Letter)(Walter, Keith) (Entered: 11/14/2025) |
| 11/14/2025 | 35 | Letter to The Honorable Judge Noreika from Jennifer Kate Aaronson regarding Defendants' Supplemental Letter to Brief in Opposition to Plaintiff's Motion for Expedited Relief - re 20 Answering Brief in Opposition,. (Aaronson, Jennifer-Kate) (Entered: 11/14/2025) |
| 11/14/2025 | 36 | DECLARATION of Stevenson re 35 Letter, by Joshua Bushweller, William Crotty. (Attachments: # 1 A - Training Certification, # 2 B - Handgun Permit)(Aaronson, Jennifer-Kate) (Entered: 11/14/2025) |
| 11/14/2025 | 37 | MEMORANDUM OPINION denying 3 MOTION for Expedited Injunctive Relief. Signed by Judge Maryellen Noreika on 11/14/2025. (dlw) (Main Document 37 replaced on 11/17/2025) (dlw). (Entered: 11/14/2025) |
| 11/14/2025 | 38 | ORDER DENYING Motion for Expedited Injunctive Relief 3 . Signed by Judge Maryellen Noreika on 11/14/2025. (dlw) (Entered: 11/14/2025) |
| 11/14/2025 | 39 | NOTICE of Appearance by Stephen J. Neuberger on behalf of All Plaintiffs (Neuberger, Stephen) (Entered: 11/14/2025) |
| 11/14/2025 | 40 | NOTICE OF APPEAL of 37 Order on Motion for Miscellaneous Relief, 38 Order . Appeal filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Neuberger, Stephen) (Entered: 11/14/2025) |

| | | |
|---|---|---|
| 11/14/2025 | | APPEAL - Credit Card Payment received re 40 Notice of Appeal (Third Circuit), filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr.. ( Filing fee $605, receipt number ADEDC-4838454.) (Neuberger, Stephen) (Entered: 11/14/2025) |
| 11/17/2025 | | CORRECTING ENTRY: D.I. 37 has been replaced on the docket. (dlw) (Entered: 11/17/2025) |
| 11/21/2025 | 41 | MOTION for Extension of Time to Amend Plaintiffs' Motion to Extend the Deadline to Amend the Complaint - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Text of Proposed Order, # 2 Statement of Compliance with Local Rule 7.1.1 Regarding Plaintiffs' Motion to Extend the Deadline to Amend the Complaint, # 3 Certificate of Service)(Walter, Keith) Modified on 11/24/2025 (dlw). (Entered: 11/21/2025) |
| 11/25/2025 | 42 | ORAL ORDER GRANTING 41 Plaintiffs' Motion to Extend the Deadline to Amend the Complaint - IT IS HEREBY ORDERED that the motion is GRANTED. The Amended Complaint shall be filed fourteen (14) days after the United States Court of Appeals for the Third Circuit issues its final decision on Appellants' Emergency Motion for Expedited Injunctive Relief. IT IS FURTHER ORDERED that Defendants shall have sixty (60) days to answer, move, or otherwise respond to the Amended Complaint. ORDERED by Judge Maryellen Noreika on 11/25/2025. (dlw) (Entered: 11/25/2025) |
| 11/26/2025 | 43 | Official Transcript of Motion Hearing held on 11/13/2025 before Judge Maryellen Noreika. Court Reporter/Transcriber Dale C. Hawkins, Email: Dale_Hawkins@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/17/2025. Redacted Transcript Deadline set for 12/29/2025. Release of Transcript Restriction set for 2/24/2026. (dh) (Entered: 11/26/2025) |
| 12/03/2025 | | Pro Hac Vice Attorney Alexander MacMullan for Bruce C. Smith added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (jmn) (Entered: 12/03/2025) |
| 12/05/2025 | 44 | Letter to The Honorable Maryellen Noreika from Keith Walter, Esquire regarding Guidance regarding the Court's November 25, 2025 Order - re 42 Order on Motion for Extension of Time to Amend,,. (Attachments: # 1 Attachment - Third Circuit's December 1, 2025 Order)(Walter, Keith) (Entered: 12/05/2025) |
| 12/10/2025 | 45 | ORAL ORDER re 44 Letter - Having considered Plaintiffs' 12/5/2025 letter seeking clarification of the Court's 11/25/2025 Oral Order (D.I. 42), IT IS HEREBY ORDERED that the Amended Complaint shall be filed fourteen (14) days after the United States Court of Appeals for the Third Circuit issues a final decision on the appeal of injunctive relief following merits briefing. Defendants retain the sixty (60) day deadline to answer, move, or otherwise respond once the Amended Complaint is filed. ORDERED by Judge Maryellen Noreika on 12/10/2025. (dlw) (Entered: 12/10/2025) |
| 01/16/2026 | 46 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 40 Notice of Appeal (Third Circuit), filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr.. USCA Case Number 25-3250. USCA Case Manager: Pamela (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (pb, ) (Entered: 01/16/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/23/2026 19:21:57 | | | |
| **PACER Login:** | SCousins3079 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-01341-MN Start date: 1/1/1975 End date: 3/23/2026 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

**App039**

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:25-cv-01341-MN

Neuberger et al v. Bushweller et al
Assigned to: Judge Maryellen Noreika
Related Case: 1:24-cv-00590-MN
Case in other court: Third Circuit, 25-03250
Cause: 28:1651 Petition for Writ of Coram Nobis

Date Filed: 11/03/2025
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Thomas S. Neuberger**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, 7th Floor
Wilmington, DE 19801
(302) 985-6002
Email: francis.pileggi@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue
500 Delaware Avenue, Suite 700
Ste 700
Wilmington, DE 19702
302-295-9443
Email: keith.walter@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue
Suite 1410
Wilmington, DE 19801
(302) 467-4265
Fax: (302) 467-4201
Email: Keith.Walter@lewisbrisbois.com
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
The Neuberger Firm, P.A.
17 Harlech Drive
P.O. Box 4481
Wilmington, DE 19807
(302) 655-0582
Email: SJN@NeubergerLaw.com

**App040**

*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry L. Martin**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William R. Hague, Jr.**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce C. Smith**

represented by **Francis G.X. Pileggi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander MacMullan**

**App041**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bridgeville Kenpo Karate, Inc.**
*doing business as*
BKK Firearms

represented by

**Francis G.X. Pileggi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Delaware State Sportsmen's Association, Inc.**
*TERMINATED: 11/17/2025*

represented by

**Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bridgeville Rifle and Pistol Club, Ltd.**
*TERMINATED: 11/17/2025*

represented by **Francis G.X. Pileggi**
(See above for address)
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Walter , Jr**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Keith A. Walter , Jr.**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

**Stephen J. Neuberger**
(See above for address)
*TERMINATED: 11/17/2025*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Joshua Bushweller**
*in his official capacity as Cabinet Secretary
of the Delaware Department of Safety and
Homeland Security*

represented by **Ian Robert Liston**
Delaware Department of Justice
Fraud and Consumer Protection Division,
White Collar Crime U
820 N. French Street
Wilmington, DE 19807
302-683-8899
Email: Ian.Liston@delaware.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer-Kate M. Aaronson**
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8803
Email: kate.aaronson@delaware.gov
*TERMINATED: 11/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Austin R. Evers**
Email: austin.evers@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Johnston**
Email: jacob.johnston@freshfields.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer B. Loeb**
Email: jennifer.loeb@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Kaplin**
Email: lauren.kaplin@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Kerr**
Email: rebecca.kerr@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Col. William Crotty**
*in his official capacity as superintendent of the Delaware State Police*

represented by **Ian Robert Liston**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer-Kate M. Aaronson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Austin R. Evers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Johnston**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer B. Loeb**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Kaplin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Kerr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/03/2025 | 1 | COMPLAINT for Declaratory and Injunctive Relief against Joshua Bushweller, William Crotty (Filing fee $ 405, receipt number ADEDC-4828380) - filed by William R. Hague, Jr, Delaware State Sportsmen's Association, Inc., Bridgeville Rifle and Pistol Club, Ltd., Jerry L. Martin, Thomas S. Neuberger, Bridgeville Kenpo Karate, Inc., Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Civil Cover Sheet)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 3 | MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Letter, # 2 Proposed Order)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 4 | OPENING BRIEF in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. Answering Brief/Response due date per Local Rules is 11/17/2025. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 5 | DECLARATION of Keith A. Walter, Jr. in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 6 | DECLARATION of Thomas S. Neuberger in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 7 | DECLARATION of Jeffrey W. Hague in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | 8 | DECLARATION of Bruce C. Smith in Support of 3 MOTION for Expedited Injunctive Relief - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | | DEFICIENCY NOTICE issued by the Court to Plaintiff: Pursuant to Fed. R. Civ. P. 7.1 (b)(1), A party must: (1) file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. Counsel is requested to supplement the docket with an appropriate Rule 7.1 Disclosure Statement. (jfm) (Entered: 11/04/2025) |
| 11/03/2025 | | No Summons Issued. (jfm) (Entered: 11/04/2025) |
| 11/04/2025 | | Remark: Exit Electronic Copies to Duty Judge (MN). (jfm) (Entered: 11/04/2025) |
| 11/04/2025 | 9 | Disclosure Statement pursuant to Rule 7.1: identifying Other Affiliate National Rifle Association for Delaware State Sportsmen's Association, Inc. filed by Delaware State Sportsmen's Association, Inc.. (Pileggi, Francis) (Entered: 11/04/2025) |

| | | |
|---|---|---|
| 11/04/2025 | 10 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Bridgeville Rifle and Pistol Club, Ltd.. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 11 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Bridgeville Kenpo Karate, Inc.. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 12 | Letter to Judge Noreika from Francis G.X. Pileggi regarding Two Related Cases. (Pileggi, Francis) (Entered: 11/04/2025) |
| 11/04/2025 | 13 | ORAL ORDER re 3 Motion for Expedited Injunctive Relief: IT IS HEREBY ORDERED that a hearing on the plaintiffs' motion is set for 11/13/2025 at 02:00 PM in Courtroom 4A before Judge Maryellen Noreika. The defendants shall file a response to the motion by Friday, 11/7/2025, and the plaintiffs shall file a reply by NOON on Monday, 11/10/2025. IT IS FURTHER ORDERED that the plaintiffs shall serve a copy of this Oral Order on the defendants promptly. ORDERED by Judge Maryellen Noreika on 11/4/2025. (mdb) (Entered: 11/04/2025) |
| 11/04/2025 | 14 | NOTICE of Appearance by Ian Robert Liston on behalf of All Defendants (Liston, Ian) (Entered: 11/04/2025) |
| 11/04/2025 | 15 | NOTICE of Appearance by Jennifer-Kate M. Aaronson on behalf of All Defendants (Aaronson, Jennifer-Kate) (Entered: 11/04/2025) |
| 11/05/2025 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (alb) (Entered: 11/05/2025) |
| 11/05/2025 | 16 | ORAL ORDER re 13 Oral Order - Having reviewed again the briefing in related case C.A. No. 24-590 (MN), IT IS HEREBY ORDERED that the Court's 11/4/2025 Oral Order in this case (D.I. 13) is amended as follows: Defendants need not repeat the arguments made in their briefing in C.A. No. 24-590 (MN); rather, Defendants' response should include, to the extent they have a response, argument as to the challenged law's consistency with the principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*. In addition, Defendants shall address Plaintiffs' allegations regarding the absence of an appropriate infrastructure to implement the challenged law as of 11/16/2025. ORDERED by Judge Maryellen Noreika on 11/5/2025. (dlw) (Entered: 11/05/2025) |
| 11/05/2025 | 17 | Summons Issued as to Joshua Bushweller on 11/5/2025; William Crotty on 11/5/2025. (Attachments: # 1 Summons Issued)(mrr) (Entered: 11/05/2025) |
| 11/05/2025 | 18 | Letter to The Honorable Maryellen Noreika from Jennifer Kate Aaronson regarding Plaintiffs' filings and Request for Extension of Deadline to Respond to Motion for Temporary Restraining Order from November 7 to November 10 - re 1 Complaint,, 16 Oral Order,,, 12 Letter, 13 Oral Order,,, Set Briefing Schedule,,, Set Hearings,, 4 Opening Brief in Support, 3 MOTION for Expedited Injunctive Relief. (Liston, Ian) (Entered: 11/05/2025) |
| 11/06/2025 | 19 | ORAL ORDER re 18 Letter: IT IS HEREBY ORDERED that the requests for extensions of time are GRANTED-IN-PART and DENIED-IN-PART as follows: Defendants have until NOON on Monday, 11/10/2025, to file their answering brief, and the plaintiffs have until NOON on Wednesday, 11/12/2025, to file their reply brief. The date and time of the motion hearing remains unchanged. ORDERED by Judge Maryellen Noreika on 11/6/2025. (mdb) (Entered: 11/06/2025) |
| 11/10/2025 | 20 | ANSWERING BRIEF in Opposition re 3 MOTION for Expedited Injunctive Relief filed by Joshua Bushweller, William Crotty.Reply Brief due date per Local Rules is 11/17/2025. (Attachments: # 1 Declaration of Sgt. Jason L. Stevenson, # 2 Exhibit Ex. A. to Stevenson Decl., # 3 Exhibit Ex. B to Stevenson Decl.)(Liston, Ian) (Entered: 11/10/2025) |

| 11/11/2025 | 21 | MOTION for Pro Hac Vice Appearance of Attorney Austin R. Evers - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
|---|---|---|
| 11/11/2025 | 22 | MOTION for Pro Hac Vice Appearance of Attorney Jennifer B. Loeb - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 23 | MOTION for Pro Hac Vice Appearance of Attorney Jacob Johnston - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 24 | MOTION for Pro Hac Vice Appearance of Attorney Lauren Kaplin - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 25 | MOTION for Pro Hac Vice Appearance of Attorney Rebecca Curwin Kerr - filed by Joshua Bushweller, William Crotty. (Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 26 | Pro Hac Vice Fee - Credit Card Payment received for Jacob Johnson, Jennifer B. Loeb, Auston R. Evers, Lauren Kaplin, and Rebecca Curwin Kerr. ( re 25 MOTION for Pro Hac Vice Appearance of Attorney Rebecca Curwin Kerr, 22 MOTION for Pro Hac Vice Appearance of Attorney Jennifer B. Loeb, 21 MOTION for Pro Hac Vice Appearance of Attorney Austin R. Evers, 24 MOTION for Pro Hac Vice Appearance of Attorney Lauren Kaplin, 23 MOTION for Pro Hac Vice Appearance of Attorney Jacob Johnston )( Payment of $ 250, receipt number ADEDC-4834512).(Liston, Ian) (Entered: 11/11/2025) |
| 11/11/2025 | 27 | MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Walter, Keith) (Entered: 11/11/2025) |
| 11/11/2025 | 28 | Pro Hac Vice Fee - Credit Card Payment received for Alexander D. MacMullan. ( re 27 MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan )( Payment of $ 50, receipt number ADEDC-4834631).(Walter, Keith) (Entered: 11/11/2025) |
| 11/12/2025 | 29 | REPLY BRIEF re 3 MOTION for Expedited Injunctive Relief filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Certificate of Service)(Walter, Keith) Modified on 11/12/2025 (dlw). (Entered: 11/12/2025) |
| 11/12/2025 | 30 | Second DECLARATION of Thomas S. Neuberger in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A)(Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | 31 | DECLARATION of Alexander D. MacMullan, Esquire in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | 32 | Second DECLARATION of Bruce C. Smith, Owner and Operator of Bridgeville Kenpo Karate, Inc. d/b/a BKK Firearms in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A)(Walter, Keith) (Entered: 11/12/2025) |

**App047**

| | | |
|---|---|---|
| 11/12/2025 | 33 | DECLARATION of Jerry L. Martin in Support of Plaintiffs' Motion for Expedited Injunctive Relief re 29 Reply Brief, by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Exhibit A) (Walter, Keith) (Entered: 11/12/2025) |
| 11/12/2025 | | SO ORDERED re 25 MOTION for Pro Hac Vice Appearance of Rebecca Curwin Kerr, 22 MOTION for Pro Hac Vice Appearance of Jennifer B. Loeb, 21 MOTION for Pro Hac Vice Appearance of Austin R. Evers, 24 MOTION for Pro Hac Vice Appearance of Lauren Kaplin, 23 MOTION for Pro Hac Vice Appearance of Jacob Johnston filed by Joshua Bushweller, William Crotty. ORDERED by Judge Maryellen Noreika on 11/12/2025. (dlw) (Entered: 11/12/2025) |
| 11/12/2025 | | SO ORDERED re 27 MOTION for Pro Hac Vice Appearance of Attorney Alexander D. MacMullan filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr. ORDERED by Judge Maryellen Noreika on 11/12/2025. (dlw) (Entered: 11/12/2025) |
| 11/13/2025 | | Minute Entry for proceedings held before Judge Maryellen Noreika - Motion Hearing held on 11/13/2025 re 3 Motion for Expedited Injunctive Relief. The parties shall submit the filings as ordered by NOON tomorrow; the motion is taken under consideration and a ruling will be issued in due course. (Court Reporter Dale Hawkins.) (mdb) (Entered: 11/13/2025) |
| 11/14/2025 | | Pro Hac Vice Attorney Jacob Johnston, Rebecca Kerr, Lauren Kaplin, Jennifer B. Loeb & Austin R. Evers for Joshua Bushweller & William Crotty added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (slk) (Entered: 11/14/2025) |
| 11/14/2025 | 34 | Letter to The Honorable Maryellen Noreika from Francis G.X. Pileggi, Esquire regarding Replying to Court's request from November 13, 2025 - re Motion Hearing,. (Attachments: # 1 Attachment to Letter)(Walter, Keith) (Entered: 11/14/2025) |
| 11/14/2025 | 35 | Letter to The Honorable Judge Noreika from Jennifer Kate Aaronson regarding Defendants' Supplemental Letter to Brief in Opposition to Plaintiff's Motion for Expedited Relief - re 20 Answering Brief in Opposition,. (Aaronson, Jennifer-Kate) (Entered: 11/14/2025) |
| 11/14/2025 | 36 | DECLARATION of Stevenson re 35 Letter, by Joshua Bushweller, William Crotty. (Attachments: # 1 A - Training Certification, # 2 B - Handgun Permit)(Aaronson, Jennifer-Kate) (Entered: 11/14/2025) |
| 11/14/2025 | 37 | MEMORANDUM OPINION denying 3 MOTION for Expedited Injunctive Relief. Signed by Judge Maryellen Noreika on 11/14/2025. (dlw) (Main Document 37 replaced on 11/17/2025) (dlw). (Entered: 11/14/2025) |
| 11/14/2025 | 38 | ORDER DENYING Motion for Expedited Injunctive Relief 3 . Signed by Judge Maryellen Noreika on 11/14/2025. (dlw) (Entered: 11/14/2025) |
| 11/14/2025 | 39 | NOTICE of Appearance by Stephen J. Neuberger on behalf of All Plaintiffs (Neuberger, Stephen) (Entered: 11/14/2025) |
| 11/14/2025 | 40 | NOTICE OF APPEAL of 37 Order on Motion for Miscellaneous Relief, 38 Order . Appeal filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Neuberger, Stephen) (Entered: 11/14/2025) |

| 11/14/2025 | | APPEAL - Credit Card Payment received re 40 Notice of Appeal (Third Circuit), filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr.. ( Filing fee $605, receipt number ADEDC-4838454.) (Neuberger, Stephen) (Entered: 11/14/2025) |
|---|---|---|
| 11/17/2025 | | CORRECTING ENTRY: D.I. 37 has been replaced on the docket. (dlw) (Entered: 11/17/2025) |
| 11/21/2025 | 41 | MOTION for Extension of Time to Amend Plaintiffs' Motion to Extend the Deadline to Amend the Complaint - filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Delaware State Sportsmen's Association, Inc., William R. Hague, Jr, Jerry L. Martin, Thomas S. Neuberger, Bruce C. Smith. (Attachments: # 1 Text of Proposed Order, # 2 Statement of Compliance with Local Rule 7.1.1 Regarding Plaintiffs' Motion to Extend the Deadline to Amend the Complaint, # 3 Certificate of Service)(Walter, Keith) Modified on 11/24/2025 (dlw). (Entered: 11/21/2025) |
| 11/25/2025 | 42 | ORAL ORDER GRANTING 41 Plaintiffs' Motion to Extend the Deadline to Amend the Complaint - IT IS HEREBY ORDERED that the motion is GRANTED. The Amended Complaint shall be filed fourteen (14) days after the United States Court of Appeals for the Third Circuit issues its final decision on Appellants' Emergency Motion for Expedited Injunctive Relief. IT IS FURTHER ORDERED that Defendants shall have sixty (60) days to answer, move, or otherwise respond to the Amended Complaint. ORDERED by Judge Maryellen Noreika on 11/25/2025. (dlw) (Entered: 11/25/2025) |
| 11/26/2025 | 43 | Official Transcript of Motion Hearing held on 11/13/2025 before Judge Maryellen Noreika. Court Reporter/Transcriber Dale C. Hawkins, Email: Dale_Hawkins@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/17/2025. Redacted Transcript Deadline set for 12/29/2025. Release of Transcript Restriction set for 2/24/2026. (dh) (Entered: 11/26/2025) |
| 12/03/2025 | | Pro Hac Vice Attorney Alexander MacMullan for Bruce C. Smith added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (jmn) (Entered: 12/03/2025) |
| 12/05/2025 | 44 | Letter to The Honorable Maryellen Noreika from Keith Walter, Esquire regarding Guidance regarding the Court's November 25, 2025 Order - re 42 Order on Motion for Extension of Time to Amend,,. (Attachments: # 1 Attachment - Third Circuit's December 1, 2025 Order)(Walter, Keith) (Entered: 12/05/2025) |
| 12/10/2025 | 45 | ORAL ORDER re 44 Letter - Having considered Plaintiffs' 12/5/2025 letter seeking clarification of the Court's 11/25/2025 Oral Order (D.I. 42), IT IS HEREBY ORDERED that the Amended Complaint shall be filed fourteen (14) days after the United States Court of Appeals for the Third Circuit issues a final decision on the appeal of injunctive relief following merits briefing. Defendants retain the sixty (60) day deadline to answer, move, or otherwise respond once the Amended Complaint is filed. ORDERED by Judge Maryellen Noreika on 12/10/2025. (dlw) (Entered: 12/10/2025) |
| 01/16/2026 | 46 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 40 Notice of Appeal (Third Circuit), filed by Bridgeville Kenpo Karate, Inc., Bridgeville Rifle and Pistol Club, Ltd., Bruce C. Smith, Delaware State Sportsmen's Association, Inc., Jerry L. Martin, Thomas S. Neuberger, William R. Hague, Jr.. USCA Case Number 25-3250. USCA Case Manager: Pamela (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (pb, ) (Entered: 01/16/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/23/2026 19:21:57 | | | |
| **PACER Login:** | SCousins3079 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-01341-MN Start date: 1/1/1975 End date: 3/23/2026 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

**App050**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

THOMAS S. NEUBERGER; JERRY L.
MARTIN; WILLIAM R. HAGUE, JR.;
BRUCE C. SMITH; BRIDGEVILLE
KENPO KARATE, INC. d/b/a BKK
FIREARMS; DELAWARE STATE
SPORTSMEN'S ASSOCIATION, INC;
and BRIDGEVILLE RIFLE & PISTOL
CLUB, LTD.,

     Plaintiffs.

     v.

     : Civil Action No. _____

JOSHUA BUSHWELLER, in his
official capacity as Cabinet Secretary,
Delaware Department of Safety and
Homeland Security; and COL. WILLIAM
CROTTY, in his official capacity as
superintendent of the Delaware State Police,

     Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs,[1] by counsel, bring this Complaint against Defendants,[2] all of whom

are Delaware state officials responsible for enforcing and implementing Delaware's

---

[1] Thomas S. Neuberger; Jerry L. Martin; William R. Hague, Jr.; Bruce C. Smith; Bridgeville Kenpo Karate, Inc., doing business as BKK Firearms (BKK); Delaware State Sportsmen's Association (DSSA); and Bridgeville Rifle and Pistol Club, Ltd. (BRPC) (collectively, "Plaintiffs").

[2] Secretary Joshua Bushweller, Cabinet Secretary of the Delaware Department of Safety and Homeland Security; and Col. William Crotty, as the top law enforcement officer at the Delaware State Police.

laws and regulations—including those that infringe the Second Amendment's right of law-abiding citizens to keep and bear commonly possessed firearms for self-defense, and for other lawful purposes, which is the core of this lawsuit. By its Complaint, Plaintiffs seek the Court's assistance in protecting their Second, Fourth, and Fourteenth Amendment rights and their ability to defend themselves, their family, and their homes by declaring Delaware's overreaching "Permit-to-Purchase" handgun regulation unconstitutional, and preliminarily and permanently enjoining its implementation and enforcement. Absent such relief by the Court, Delaware's "Permit to Purchase" regulation will begin to be enforced on November 16, 2025,[3] just days from now, causing an immediate and irreparable deprivation of Plaintiffs' constitutional rights.

## INTRODUCTION

1.    The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST., amend. II. The United

---

[3] Section 5 of the "Permit-to-Purchase" Bill provides that it is to be implemented the earlier of the following: "(1) Eighteen months from the date of the Act's enactment [or] (2) The date of publication in the Register of Regulation of a notice by the Director of the State Bureau of Identification that the necessary processes have been established for implementation of the handgun qualified purchaser permit under Section 1 of this Act. Governor Carney signed the Permit to Purchase statute into law on May 16, 2024, and to Plaintiffs' knowledge, there has been no notice by the Director that the necessary processes have been established for implementation. Accordingly, the Permit to Purchase statute will be implemented on November 16, 2025, 18 months from the date of enactment.

166398698.1

2

App052

States Supreme Court has ruled that the Second Amendment protects the fundamental right to self-defense inside and outside the home. *District of Columbia v. Heller,* 544 U.S. 570, 635 (2008); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022).

2.     In defiance of this established and unassailable authority, the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2" or "Permit-to-Purchase Bill"), which flouts Delawareans' fundamental civil rights by imposing an ahistorical and burdensome permitting scheme for acquisition of a handgun for self-defense and other lawful purposes.[4] SS 1 for SB 2 also criminalizes handgun acquisition without a Permit-to-Purchase. A copy of SS 1 for SB 2 is attached as Exhibit A.

3.     Further, if one's handgun permit is revoked for any reason, the State Police and/or local police shall, according to the Permit-to-Purchase Bill, purportedly have "probable cause" to effect the "surrender" or removal of the handguns from the individuals' home,[5] which is a violation of not only the Second

---

[4] SS 1 for SB 2 requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun, but not other firearms. *See* 11 *Del. C*. § 1448D. SS 1 for SB 2 defines a "handgun" include "a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand." § 1448D(a)(2).

[5] Former Secretary of Delaware Department of Safety and Homeland Security Nathanial McQueen testified on the record before the Legislature during debate on SS 1 for SB 2 that all firearms in the home would be removed even if the permit infraction only applied to one firearm.

166398698.1

**App053**

Amendment, but also the Fourth Amendment protection against unreasonable searches and seizures.

4.      Defendants' enforcement of SS 1 for SB 2 inflicts irreparable harm upon the Plaintiffs, law-abiding citizens or organizations whose members are such citizens, who simply want to purchase (or sell) a handgun for self-defense and other lawful purposes, by unlawfully restricting their fundamental rights, including the right to keep and bear arms to protect them and their families as guaranteed by the Second and Fourteenth Amendments to the United States Constitution.

5.      Additional irreparable harm to Plaintiffs will be inflicted upon Plaintiffs when SS 1 for SB 2 begins to be enforced on November 16, 2025.  This is because of the State's failure to put in place complete procedures for obtaining the required handgun qualified purchaser permit. As a result, Plaintiffs will be unable to obtain the required permit by the date SS 1 for SB 2 is to be enforced, and there is nothing to ensure they will be able to obtain the required permit thereafter. Accordingly, enforcement of SS 1 for SB 2 effectively results in an immediate and unconstitutional handgun ban. Therefore, and concurrently herewith, Plaintiffs are moving for expedited injunctive relief to enjoin the imminent enforcement of SS 1 for SB 2.

166398698.1

4

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over the claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201 and 2202; 42 U.S.C. §§ 1983 and 1988; as well as the U.S. Constitution's Second, Fourth, and Fourteenth Amendments. Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

7.    Plaintiff Thomas S. Neuberger is a natural person and a citizen of the United States and the State of Delaware.

8.    Neuberger is 78 years old, an attorney licensed to practice law in the State of Delaware, a 2023 recipient of the Leonard L. Williams Criminal Justice Reform Award from the Wilmington NAACP, Life Member of the NAACP, and a resident of New Castle County, Delaware, since 1947. He has a history of rifle shooting and won merit badges for shooting while a Boy Scout at St. Anthony of Padua Grade School in Wilmington, Delaware. He is a member of DSSA and BRPC.

9.    Neuberger does not presently own a handgun.

10.    For reasons including his age, area criminal statistics, and general civil unrest in this Country, Neuberger has legitimate, ongoing concerns for his and his family's safety. Neuberger, in the past, also has been threatened with physical harm due to his pro bono civil rights work.  Today, with the social fabric unraveling in the

166398698.1

5

Country, his fears of violence are even greater. He remembers when Dr. Martin Luther King's family and home were first bombed in Alabama in 1956 and Dr. King sought to obtain a handgun to protect his family. But Alabama had a handgun permit law then, and the Governor refused to give him a permit for a handgun.  Neuberger does not want any law–abiding Delawarean to find themselves in a similar situation.

11.    Neuberger has received self-defense and firearms safety training from a retired State Trooper who previously commanded the Delaware State Police firearms range and who trained State Troopers in gun safety. Neuberger considered purchasing a handgun at that time and discussed it with the State Trooper who provided him with recommendations for his self-defense. Based on these recommendations, Neuberger decided that he needs a handgun for self-defense and decided that the Sig Sauer P365 is the best option. Neuberger intends to make such a purchase on November 28, 2025, when he expects prices to be most favorable. Such a purchase, however, will be restricted by SS 1 for SB 2's burdensome handgun permitting scheme that will be enforced no later than November 16, 2025.

12.    Having to endure the burdensome and unconstitutional permitting process, which is lengthy and arduous with 11 elements and is discretionary—before being able to purchase a handgun for his and his family's self-defense, constitutes sufficient harm for Neuberger to bring this lawsuit. Further, although Neuberger believes he should not have to go through the permitting process, even if he were to

166398698.1

6

**App056**

do so, he would be unable to obtain a permit because the necessary infrastructure to do so is not fully in place. Therefore, Neuberger will be effectively prohibited from purchasing a handgun beginning on November 16, 2025.

13.    As a practicing civil rights attorney, Neuberger also cannot risk being prosecuted if he were to violate SS 1 for SB 2, as that would impact his ability to practice law and provide legal services to those underserved individuals he seeks to represent.

14.    Accordingly, Neuberger's immediate deprivation of his constitutional rights on November 16, 2025, regarding his inability to purchase a handgun for self-defense and other lawful purposes as alleged herein, constitutes harm that is both "concrete and particularized" and "imminent, not conjectural or hypothetical," which renders Neuberger an aggrieved party and a proper plaintiff. *See Lujan v. Defenders of Wildlife*, 505 U.S. 555, 564 (1992) (a "description of concrete plans" satisfies the imminency requirement for standing).

15.    Jerry L. Martin is the President of the Bridgeville Rifle and Pistol Club, Ltd. Additionally, he is a member of the DSSA.

16.    Martin competes in Cowboy Action, a competitive shooting sport. He regularly purchases and collects firearms and will continue that practice in the future.

17.    Martin intends to purchase a handgun restricted by SS 1 for SB 2's permit requirement. Specifically, he intends to purchase a Sig Sauer P365 on

166398698.1

7

**App057**

November 28, 2025, when he expects the price to be most favorable. At that time, SS 1 for SB 2 will necessarily be subject to enforcement.

18.    Martin needs a handgun for competition shooting, self-defense and other legitimate activities and will not be able to timely obtain one because of, among other things, SS 1 for SB 2's lengthy and arduous 11-point process and discretionary approval by a government official.

19.    While the harm to Martin described above is sufficient for him to bring this case, there is more. Although Martin, like Neuberger, believes he should not have to go through the permitting process, even if he were to do so, he would be unable to obtain a permit because the necessary infrastructure to do so is not fully in place. Accordingly, Martin will be effectively barred from purchasing a handgun on November 16, 2025.

20.    Accordingly, Martin's immediate deprivation of his constitutional rights on November 16, 2025, regarding his inability to purchase a handgun for self-defense and other legitimate purposes as alleged herein, constitutes harm that is both "concrete and particularized" and "imminent, not conjectural or hypothetical," which makes Martin an aggrieved party and a proper plaintiff.

21.    William R. Hague, Jr., is a 19-year-old Delawarean.

22.    Hague is a member of BRPC and DSSA.

166398698.1

8

**App058**

23.    Delaware's prohibition under on adults between the ages of eighteen and twenty-one from purchasing, or otherwise obtaining, any firearm that falls outside the definition of "shotgun" or "muzzle-loading rifle" has recently been held to violate the Delaware Constitution and is unenforceable. *See Birney v. Del. Dep't of Safety & Homeland Sec.*, 2025 WL 2836751 (Del. Super. Ct. Oct. 2, 2025).

24.    As a result, Hague intends to purchase a handgun for self-defense and other lawful purposes on November 28, 2025, when he too expects the price to be most favorable.

25.    At that time, however, SS 1 for SB 2 will be subject to enforcement and Hague will need to have a handgun qualified purchasing permit to make such a purchase.  As a result, Hague, like Neuberger and Martin, will have to undergo SS 1 for SB 2's unconstitutional lengthy, arduous and discretionary permitting process to be able to purchase a handgun.

26.    And like Neuberger and Martin, the harm to Hague is aggravated because the State has not fully established the necessary infrastructure for implementation of SS 1 for SB 2. As a result, even if Hague engaged in the permit process, something he believes is unconstitutional, he would be unable to obtain the required permit.  Therefore, he will be banned from purchasing a handgun on November 16, 2025.

166398698.1

9

27. In addition to the foregoing, Hague faces yet another insurmountable hurdle. Under SS1 for SB 2, Hague will not be able to obtain the necessary permit to purchase a handgun until he reaches 21 years of age on May 15, 2027. This is because SS 1 for SB 2's unconstitutional framework provides that the required permit may not be issued to "[a] person under the age of 21." *See* 11 *Del. C.* § 1448D(f)(1).

28. Hague's immediate deprivation of his constitutional rights on November 16, 2025, regarding his inability to purchase a handgun for self-defense and other lawful purposes as alleged herein, constitutes harm that is both "concrete and particularized" and "imminent, not conjectural or hypothetical," which makes Hague an aggrieved party and a proper plaintiff.

29. Plaintiff BKK is a business headquartered in the State of Delaware and duly authorized to do business in the State.

30. Plaintiff Bruce Smith is the owner of BKK and a citizen of the United States and of the State of Delaware.

31. Smith is a member of the DSSA and BRPC.

32. BKK is a federally-licensed firearms dealer in good standing and is in the business of lawfully and responsibly selling firearms throughout Delaware.

33. When SS 1 for SB 2 is implemented in only a few days from now, BKK will not be able to lawfully sell handguns to Delaware residents without the required

166398698.1

10

**App060**

permit.  As a result, the constitutional rights of BKK and its owner, Smith, will be violated, in that the Second Amendment includes the right to sell firearms to give effect to the right to own, keep and bear them. Long-settled precedent holds that a state may not suppress fundamental rights by attacking the means by which they are exercised. *See Heller*, 554 U.S. at 617-18 (discussing the implicit right to train with weapons) (citing T. Cooley, General Principles of Constitutional Law 271 (2d ed. 1891); *United States v. Miller*, 307 U.S. 174, 180 (1939) (citing 1 H. Osgood, The American Colonies in the 17th Century 499  (1904) (discussing the implicit right to possess ammunition)); Drummond, 9 F.4th at 227 (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011)) ("This 'implies a corresponding right to acquire and maintain proficiency' with common weapons."); *see also McConnell v. Federal Election Comm'n*, 540 U.S. 93, 252, (2003) (Scalia, J., concurring in part, concurring in judgment in part, and dissenting in part) (The First Amendment "right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise.").

34.    Compounding the harm, because the full permit infrastructure is not in place, no one has been able to obtain the required permit, and, therefore, no one will be able to buy a handgun under the SS 1 for SB 2 scheme on November 16, 2025. It is also unknown when or whether the full infrastructure for SS1 for SB 2 will be

166398698.1

in place. As a result, BKK will suffer a significant reduction in its business and will not be able to stay in business, constituting additional harm to it and its owner, Smith.

35.    Further, SS 1 for SB 2 provides for criminal prosecution of Smith should he violate it by selling or delivering a handgun to a person without a permit. "A transferor who willfully and intentionally sells or delivers a firearm in violation of this section is guilty of a class A misdemeanor." *See* 11 *Del. C.* § 1448A(h).  A second or subsequent offense by an individual is a class G felony." *See id.* A transferor is defined to mean "…a licensed dealer, licensed manufacturer, or licensed importer, or an employee thereof, or any other person who sells, transfers or delivers a firearm." *See* 11 *Del. C.* § 1448A(a)(3)(b).

36.    Accordingly, if the implementation of the Permit Bill is allowed to go forward on November 16th, BKK and Smith will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability.

37.    The resulting harm to BKK and Smith described above is both "concrete and particularized" and "imminent, not conjectural or hypothetical," and therefore BKK and Smith are aggrieved parties and proper plaintiffs.

38.    The Delaware State Sportsmen's Association (DSSA) was founded in 1968 as the official state-level affiliate of the National Rifle Association of America,

166398698.1

12

and its membership currently consists of approximately 4,500 individual members and constituent clubs.

39.     Bridgeville Rifle and Pistol Club, Ltd (BRPC) was formed in the early 1950's by a group of veterans returning from World War II and the Korean Conflict for the purpose of establishing and providing a venue where its members and their guests might lawfully and safely exercise their right to keep and bear arms for lawful purposes. BRPC membership currently stands at approximately 1,600 individual members and their families.BRPC serves as a competitive shooting club that conducts education, training, and competitive shooting events drawing competitors and participants from throughout the United States.

40.     DSSA and BRPC[6] are organizations whose members will be subjected to the Permit-to-Purchase requirement. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in

---

[6] DSSA and BRPC, along with undersigned lead counsel, have successfully vindicated their members' and similarly situated Delawareans' right to keep and bear arms in all four final decisions challenging the governmental attempts in Delaware to restrict those rights. *See Doe v. Wilmington Housing Authority*, 88 A.3d 654 (Del. 2014); *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 642 (Del. 2017); *Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1269 (Del. Super. Ct. 2018); *Del. State Sportsmen's Ass'n v. Garvin,* 2020 LEXIS 2927 (Del. Super. Ct. Nov. 18, 2020). Standing was not defeated in any of those challenges. DSSA and BRPC have prevailed when the final appeals were decided on the merits, or the state did not appeal a win, in every challenge of State law based on the right to keep and bear arms.

166398698.1

their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). The individual members of DSSA and BRPC would have standing to bring suit in their own right as individuals who desire to purchase common arms subjected to SS 1 for SB 2, challenging SS 1 for SB 2 is germane to DSSA and BRPC's respective purposes of promoting the safe and lawful exercise of their members' rights to use common arms, including the handguns subjected to SS 1 for SB 2.

41.   Organizational plaintiffs must "identify members who have suffered requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).  Here, Neuberger, Martin, Hague, and Smith are all members of DSSA and BRPC and subject to the requirements of SS 1 for SB 2.

42.   Other members of DSSA and BRPC have many of the same fears as Neuberger, Martin, Hague, and Smith. Many of their members are like Neuberger, Martin, and Hague, and are subjected to the same lengthy, arduous, and arbitrary 11-point process, age requirement, and the discretionary approval of a government

166398698.1

14

**App064**

official required[7] to purchase and possess a handgun—the "quintessential self-defense weapon *Heller*, 554 U.S. at 629. SS 1 for SB 2 leaves these members vulnerable to attack without the ability to defend themselves and their families.

43.     Other members of DSSA and BRPC are federally-licensed firearms dealers or employees of federally-licensed firearms dealers, the same as BKK and Smith, that are subjected to (a) loss of business due to not being able to sell handguns and (b) criminal liability should they sell a handgun to someone without the permit required under SS 1 for SB 2.

44.     Plaintiffs—Neuberger, Martin, and Hague, and other members of DSSA and BRPC—have concrete plans to purchase a handgun covered by SS 1 for SB 2's permit requirement.

45.     But SS 1 for SB 2 vests unbridled discretion in the Director to deny their permit application and, thus, denies them their fundamental rights codified by the Second Amendment. *See Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) (citing cases establishing "that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny

---

[7] §1448(f)(3) provides the following discretionary and ambiguous standard: "…the Director may not issue a handgun qualified purchaser permit to…a person who poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms."

166398698.1

15

**App065**

expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.").

46.    The harm to DSSA and BRPC, and its members, as described above is both "concrete and particularized" and "imminent, not conjectural or hypothetical," and therefore DSSA and BRPC are aggrieved parties and proper plaintiffs.

47.    Defendant Joshua Bushweller is the Cabinet Secretary of the Delaware Department of Safety and Homeland Security. This suit is brought against Defendant Bushweller in his official capacity as Cabinet Secretary. In such capacity, Defendant Bushweller oversees the Delaware State Police and the Delaware Capitol Police, both of which execute and administer the State's laws, including the Permit-to-Purchase requirement. Defendant Bushweller's enforcement of the Permit-to-Purchase Bill's ban on purchase or possession without a handgun Permit-to-Purchase license places Plaintiffs under imminent threat of arrest and/or prosecution should they violate the Permit-to-Purchase Bill, which leaves them unable to keep constitutionally protected handguns.

48.    Defendant Col. William Crotty is the Superintendent of the Delaware State Police. This suit is brought against Defendant Crotty in his official capacity as Superintendent of the Delaware State Police. In such capacity, Defendant Crotty executes and administers the State's laws, including the Permit-to-Purchase Bill. Defendant Crotty's enforcement of the Permit-to-Purchase Bill's ban on purchase or

166398698.1

16

possession without a handgun Permit-to-Purchase license places Plaintiffs under imminent threat of arrest and/or prosecution should they violate the Permit-to-Purchase Bill, which leaves them unable to keep constitutionally protected handguns.

49.    Plaintiffs, as firearms purchasers and sellers subject to SS 1 for SB 2's requirements, are "object[s] of the action" of the law, in which case "there is ordinarily little question that the action or inaction has caused him injury." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 61–62 (1992)).  Defendants' implementation (or lack thereof) and enforcement of SS 1 for SB 2 inflict harm upon Plaintiffs by unlawfully restricting and outright banning their fundamental right to keep and bear arms in common use for self-defense and other lawful purposes, as guaranteed by the Second and Fourteenth Amendments to the United States Constitution.

<div align="center">

**FACTUAL ALLEGATIONS**

</div>

## I.    DELAWARE'S UNCONSTITUTIONAL SS 1 FOR SB 2

50.    SS 1 for SB 2 was signed into law on May 16, 2024. It bans the purchases of handguns for self-defense and other lawful purposes by law-abiding citizens without a permit. *See* 11 *Del. C.* §1448D (Restricting the sale, purchase, or transfer of handguns only to those who undertake the rigorous licensing

166398698.1

**App067**

requirements to exercise a constitutional right.).[8] Accordingly, SS 1 for SB 2 deprives hundreds of thousands of Delaware residents—including Plaintiffs, their members, and others similarly situated—of their fundamental, individual right to keep and bear common arms through its arduous and discretionary Permit-to-Purchase scheme.

51.     SS 1 for SB 2 also criminalizes constitutionally protected activity. Among other things, SS 1 for SB 2 purports to authorize the Delaware State Police or a local law-enforcement agency to "take action to ensure surrender or removal" of *any* handguns possessed by any law-abiding Delawarean whose permit is revoked, regardless of the reason. *See* 11 *Del. C*. § 1448D(l)(3). SS 1 for SB 2 also provides for criminal prosecution of "transferors" that sell or deliver a handgun to a person without a permit. § 1448A(h).

52.     Accordingly, Plaintiffs will be subjected to enforcement of SS 1 for SB 2 because they either intend to imminently purchase a handgun covered by SS 1 for SB 2 or may sell a handgun to someone without the required permit. Therefore, SS 1 for SB 2 leaves Plaintiffs with a Hobson's choice—(1) subject themselves to a lengthy and arduous 11-point process and the unbridled discretion of the Director in order to exercise their fundamental Second Amendment rights and apply for a

---

[8] As an analogy, consider the constitutionality of a statute that would require a citizen to obtain a permit before exercising her fundamental First Amendment right to exercise freedom of speech or to exercise her freedom of religion.

166398698.1

18

App068

permit; (2) decline to purchase a permit-less handgun out of fear of prosecution, including a warrantless search of their homes to confiscate their lawfully owned common firearms, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.118, 128-29, (2007) ("…where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."); or (3) attempt to purchase a handgun without applying for a permit and subject themselves to prosecution, including a warrantless search of their homes to confiscate their lawfully owned common firearms. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (plaintiff can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder); *Lozano v. City of Hazleton*, 620 F.3d 170, 185 (3d Cir. 2010) (standing existed where plaintiffs were "direct targets of an ordinance they allege to be unconstitutional, complaining of what that ordinance would compel them to do"), *vacated on other grounds*, 563 U.S. 1030 (2011); *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1300 (3d Cir. 1996) (rejecting

166398698.1

19

**App069**

the government's argument that "no harm is imminent because no prosecution is pending").

53.     SS 1 for SB 2 amended the prior version of 11 *Del. C*. § 1448A and B, and added a new § 1448D entitled: "Handgun qualified purchaser permit required to purchase handguns." Among the added definitions was a new definition of handgun, which now states: "(2) 'Handgun' means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand."

54.     All applications must also be processed through one person called the Director: "(1) 'Director' means the Director of the State Bureau of Identification." §1448D(a)(1).

55.     All individuals, excluding those who hold a valid concealed carry deadly weapons (CCDW) license, are required to submit an application for a handgun license. § 1448D(c)(2).

56.     All applications will require approval of one person, the Director of the State Bureau of Identification ("the Director"), giving an unelected agent of the state government discretion over approval and denial of permits,[9] and discretionary power over revocation of previously issued permits to purchase handguns. § 1448D(h)(i)

---

[9] Generally, a statute or ordinance vesting discretion in administrative officials without fixing any adequate standards for their guidance is an unconstitutional delegation of legislative power. *Hindt v. State*, 421 A.2d 1325, 1331 (Del. 1980) (citing *State v. Durham*, 191 A.2d 646, 649 (1963)).

("If the Director determines that a person does not qualify under subsection (b) of this subsection for a handgun qualified purchaser permit, the Director shall deny the application and notify the person in writing…").

57. SS 1 for SB 2, therefore, gives an agent of the government discretion over who to grant and deny a permit to purchase handguns.

58. The Director, at his or her sole discretion, is empowered to deny a permit to any person who "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms." § 1448D(f)(3).

59. The Director, may also revoke a permit, "at any time," on his discretionary finding that a person possessing a permit "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms." §§ 1448D(f)(3), (l)(1).

60. If the Director revokes a license, the State Police and/or local law enforcement—based on that fact alone—have purported "probable cause" to remove the firearms from the individual's "custody, possession, or control," which is an unconstitutional search and seizure, and a perversion of the term probable cause. *See* § 1448D(k)(3).

61. Further, during the floor debate in the Delaware House of Representatives for SS 1 for SB 2, on March 7, 2024, Former Secretary Nathaniel McQueen, stated upon revocation of a permit, "all weapons in the home are to be

166398698.1

removed." That is, he intends to confiscate even those firearms not purchased with the Permit-to-Purchase license.

62. The permit requirement also includes an exhaustive list of information an applicant must provide, including race, ethnicity, national origin, and a physical description including distinguishing characteristics. § 1448D(d)(1). Another requirement is that a person must be at least 21 years of age[10] to be granted a permit, which is unconstitutional on its face.[11]

63. Not only is the amount of information the applicant must provide onerous, but they also must attend a certified "firearms training course" with 11 different parts—one part more than the course required to obtain a CCDW permit in the State of Delaware. Another requirement is to fire at least 100 rounds of ammunition. The individual must also submit to fingerprinting and undergo a state and national background check. All of this at the applicant's expense.

---

[10] "(f) Except as otherwise provided under this chapter, the Director may not issue a handgun qualified purchaser permit to any of the following: (1) A person under the age of 21" § 1448D(f)(1).

[11] This issue of banning firearm purchases by those 18-to-20-years-old is also being litigated in Federal Court at: *Birney v. Delaware Department of Safety and Homeland Security*, C.A. No. 22-1624-RGA (First Amended Complaint filed Oct. 18, 2023). *Cf. Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025), (finding Pennsylvania law unconstitutional that banned possession by 18-20-year-olds of firearms.). The Delaware Superior Court recently held that such a ban violated the Delaware Constitution. *Birney,* WL 2836751 at *1. Cross-appeals of that decision are pending.

166398698.1

64.    Moreover, the state has 30 days to act on the application before a person is able to exercise an enshrined right in the U.S. Constitution.[12] § 1448D(h). However, there is no provision in SS 1 for SB 2 or the procedure outlined on the State's Permit to Purchase website that provides any relief or recourse to Plaintiffs should the State fail to issue the permit within 30 days from the receipt of the application as required. The lack of any such provision alone renders a statute unconstitutional. For example, Neuberger has successfully sued the Delaware State Police many times. What if his application was lost or mislaid?

65.    SS 1 for SB 2 does not explain where the firearm used in these courses will come from if the applicants cannot purchase a handgun. The State appears to have overlooked that applicants would need to possess a handgun in order to complete the training courses SS 1 for SB 2 mandates in order to possess and own a handgun.

66.    Further, the final form of SS 1 for SB 2 that was enacted into law removed a firearms training course voucher program—in effect, leaving those without the financial means to pay for the required training without a way to purchase a handgun for self-defense. Omission of a voucher program is one of

---

[12] SS 1 for SB 2 also requires that a "NICS" check be run by the State.  This is duplicative because everyone purchasing a handgun already must undergo a NICS check initiated by the federal firearms licensee (FFL) under federal law.

166398698.1

23

several ways the State discriminates against economically disadvantaged Delawareans through SS 1 for SB 2.

67.    And SS 1 for SB 2's qualified purchaser permit is only valid for a period of 2 years from the date of issuance, creating a perpetual cycle of costs, delays and other roadblocks in maintaining the ability to purchase a handgun.

68.    Section 5 of the Permit-to-Purchase Bill also leaves uncertainty as to the process and procedures of how to obtain the required permit.  Section 5 provides that Act is to be implemented either "18 months from the date of the Act's enactment," or "[t]he date of publication in the Register of Regulation of a notice by the Director of the State Bureau of Investigation that necessary processes have been established for implementation[.]"

69.    Although it appears at least some funding to implement SS 1 for SB 2 has already been authorized (*see* House Bill 100 (January 10, 2025) and House Bill 101 (January 7, 2025) attached as Exhibit B), the necessary personnel and other infrastructure to apply for and process permit applications is not in place.

70.    On October 17, 2025, the Delaware State Police made an announcement on its website regarding the upcoming launch of SS 1 for SB on November 16, 2025. *See* Exhibit C. While the announcement "encourages Delaware residents planning to buy a handgun to visit the Permit to Purchase website to learn about the training

166398698.1

24

**App074**

and documentation requirements associated with the new law," the announcement notes that the registration link to apply for the required permit is "inactive." *Id.*

71.    The State's "Permit to Purchase" website (https://dsp.delaware.gov/permit-to-purcahse) also demonstrates the lack of infrastructure in place. Although as of at least October 31, 2025, the Delaware State Police "Permit to Purchase" website (https://dsp.delaware.gov/permit-to-purchase) does have an active link to an application, other sections of that website are not fully operational. For example, the "Link to Permit to Purchase regulations" includes a parenthetical that  reads "to be developed."

72.    One "approved" firearms trainer also reported on October 28, 2025, that he cannot offer SS 1 for SB 2's mandatory training course until November 22, 2025, six days after the effective date. *See* Cris Barrish, Ready or not, Delaware law requiring permit to buy handgun takes effect next month, WHYY.ORG (https://whyy.org/articles/delaware-handgun-permit-law-background-check/)    a copy of which is attached hereto at Exhibit D.

73.    In addition, an October 6, 2025, email from Christopher Popp of the Delaware State Police to Federal Firearms Licensees further confirms the necessary infrastructure to implement SS 1 for SB 2 is not in place. *See* Exhibit E.  In that email, Lieutenant Popp notes that the Firearm Transaction Approval Program ("FTAP") "has been delayed for some time…[due to] critical errors that needed to

166398698.1

25

be addressed" and "[w]e don't want to put out a program that is not effective and make sure it's thoroughly tested thoroughly tested for accuracy." Lieutenant Popp also stated that "the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy."

74.    The Permit-to-Purchases Bill requires the State Bureau of Investigation (SBI) to conduct all background checks. But the FTAP is not operational. The FFLs are not authorized to do the SBI's work.

75.    Therefore, although SS 1 for SB 2 will be implemented on November 16, 2025, Delaware citizens, including the Plaintiffs, have been and continue to be unable to apply for the required permit to purchase a handgun under SS 1 for SB 2, and it is unknown when they will be able to do so.

76.    This resulting inability of Plaintiffs to obtain the required permit— when a permit to purchase a handgun remains a necessity—amounts to an unconstitutional handgun ban. *Heller,* 554 U.S. at 635 (holding that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of self-defense.").

77.    An effective handgun ban is consistent with State's purpose behind enacting SS 1 for SB 2. When promoting the legislation, the Governor stated that the intent of the law is to "prevent [people] from picking up a gun in the first place."

166398698.1

26

**App076**

Esteban Parra, *Delaware governor signs 'permit to purchase' gun bill into law,* Delaware Online (May 16, 2024, 3:38 PM). A copy of the article is attached as Exhibit F.

78.    Plaintiffs further contend that the regulations set forth in SS 1 for SB2, including the Firearms Training Course Guidelines and the guidelines the State must follow to issue the permit, are regulations subject to Delaware's Administrative Procedures Act ("APA").

79.    For example, the Firearms Training Course Guidelines (attached as Exhibit G) are for those persons who wish to become "certified" instructors under the SS 1 for SB 2 framework. Nowhere in the statute, however, is authority granted to the State Bureau of Identification to create a list of "certified" instructors.

80.    To implement any of the regulations required by SS 1 for SB 2, those proposed regulations must be first be published to give notice to the public for comments, allow for comments by the public and a hearing, followed by final regulations promulgating the regulations. This process takes a minimum of 90 days to complete. Plaintiffs are unaware of any of the requisite notices being published in the monthly Delaware Register of Regulation.

81.    To the extent guidelines relating to SS 1 for SB 2 have been finalized, the State failed to follow the APA in creating them, which Plaintiffs contend render them unenforceable.

166398698.1

## II.    HANDGUNS ARE PROTECTED ARMS

### A.    The *Bruen* Standard

82.    In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" 597 U.S. at 17 (citing *Kongsberg v. State Bar of Cal.* 366 U.S. 36, 50 n.10 (1961)).

83.    *Bruen* reinforced the approach to assessing a Second Amendment challenge that the Court had established in *Heller*. That approach requires: (1) determining, through textual analysis, that the Second Amendment protected an individual right to be armed; and (2) relying on the historical understanding of the Second Amendment to demark the limits on the exercise of that right.[13]

84.    "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end

---

[13] The Supreme Court did not establish a separate standard for challenges of statutes requiring permits to exercise Second Amendment rights.

166398698.1

28

scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

85.    When reviewing restrictions on firearms, *Bruen* first requires an answer to the question of whether SS 1 for SB 2 regulates conduct protected by the Second Amendment's plain text. *Bruen*, 597 U.S. at 18. Once it is established that the law in question does regulate conduct protected by the Second Amendment's plain text as SS 1 for SB 2 does, the law is presumed invalid, and the burden shifts to the State to provide historical analogues from the time of the Nation's founding that demonstrate that SS 1 for SB 2 is consistent with the Nation's tradition of firearm regulation. *Id.* at 19 ("The government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

86.    Handguns and/or pistols subjected to the rigorous licensing requirement for purchase and/or ownership by SS 1 for SB 2 are "indisputably in 'common use' for self-defense today. They are, in fact, 'the quintessential self-defense weapon.'" *Bruen*, 597 U.S. at 8 (citing *Heller*, 554 U.S. at 629).

87.    The State cannot satisfy its burden to demonstrate, by historical analogue, that SS 1 for SB 2 is consistent with this Nation's historical tradition of firearm regulation.

166398698.1

29

88.     Specifically, the State will not be able to identify laws or regulations from the relevant historical periods that required law-abiding citizens to satisfy a burdensome and time-consuming permitting scheme before purchasing a firearm.

## III.    PRE-*BRUEN* PRECEDENT

89.     In *McDonald*, 561 U.S. at 750, 791, the U.S. Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

90.     The *Heller* Court recognized that the handgun is "the quintessential self-defense weapon" in the United States, and that a ban on handgun possession violated the Second Amendment. *See Heller*, 554 U.S. at 627, 629 (citing, *e.g.*, *Nunn v. State*, 1 Ga. 243, 251 (1846)).

91.     *Bruen* first requires an answer to the question: whether SS 1 for SB 2 regulates conduct protected by the Second Amendment's plain text. *Bruen*, 597 U.S. at 17.

92.     The Second Amendment extends to "all instruments that constitute bearable arms," *id.* at 28, i.e., "anything that a man wears for his defense, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581.

166398698.1

**App080**

93.    *Heller* and *Bruen* establish that the Second Amendment protects possessing and carrying handguns. *Bruen*, 597 U.S. at 32-33 ("[W]e remarked in *Heller* that the need for armed self-defense is perhaps "most acute" in the home […] we did not suggest that the need was insignificant elsewhere."). The exception to this fundamental right is to arms that are both "dangerous and unusual," but if an arm is "in common use" then it is, by definition, not dangerous *and* unusual. *See Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J. concurring) ("[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual.").

94.    *Heller* and *Bruen* held that handguns were in "common use" and protected by the Second Amendment. *Heller*, 554 U.S. at 628; *Bruen*, 597 U.S. at 10.

95.    Further, the right to "keep and bear arms" protected by the Second Amendment "surely implies the right to purchase them." *Reese v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 127 F.4th 583, 590 (5th Cir. 2025) (citing *Luis v. United States*, 570 U.S. 5, 26 (2016) ("Constitutional rights…implicitly protect those closely related acts necessary to their exercise."); (*Teixeira v. Cnty. Of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." (quoting *Ezell v. City of Chicago*, 651 F. 3d 684, 704 (7th Cir. 2011));

166398698.1

31

Antonin Scalia & Bryan A. Garner, *Reading Law; The Interpretation of Legal Texts* 96 (2012)) (When "a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate of that act.").

96.    If the conduct at issue is presumptively protected by the Second Amendment's text, as it is with SS 1 for SB 2, the State has the burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 23.

97.    The State must "identify a well-established and representative historical analogue" to its regulation. *Id*. at 30. This feat is not possible for the State to accomplish in this case.

98.    The Supreme Court has demonstrated that this historical analysis and review of prospective analogues should focus on the time of the Second Amendment's ratification, warning that "postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id*. at 36; *see also United States v. Rahimi*, 602 U.S. 680, 738 (2024) (Barrett, J., concurring) ("evidence of 'tradition' unmoored from original meaning is not binding law.").

99.    *Bruen*, therefore, made the "general [] assum[ption] that the scope of the protection applicable to the Federal Government and States is pegged to…1791." 597 U.S. at 37; *see also id*. at 82–83 (Barrett, J., concurring) ("1791 is the

166398698.1

32

**App082**

benchmark" because "Reconstruction-era history" alone is "simply too late (in addition to too little)," and rejecting "freewheeling reliance on historical practice from the mid-to-late 19th century…"). The Supreme Court recently reinforced this in *Rahimi*, 602 U.S. at 692 (citing *Bruen*, 597 U.S. at 29 & n.7), stating that, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit 'apply[ing] faithfully the balance struck by *the founding generation* to modern circumstances.'" (emphasis added); *see also id*. ("For example, if laws at *the founding* regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.")[14] (emphasis added).[15]

100.   *Bruen* examined New York's proper cause requirement for obtaining a carry permit, which "concern[ed] the same alleged societal problem addressed in

---

[14] *Rahimi*, 602 U.S. at 696, 697, also draws its analogues almost exclusively from the founding era, citing K. Ryan, "The Spirit of Contradiction": Wife Abuse in New England, 1780–1820, 13 Early American Studies 586, 602 (2015); 1795 Mass Acts Ch.2, in Acts and Resolves of Massachusetts, 1794–1795; 1786 Va. Acts ch. 21; 2 Laws of the Commonwealth of Massachusetts from Nov. 28, 1780 to Feb. 28, 1807, pp. 652–53 (1807); Acts and Laws of His Majesty's Province of New-Hampshire in New England 2 (1761); Collection of All of the Public Acts of Assembly of the Province of North-Carolina: Now in Force and Use 131 (1751) (1741 statute).

[15] The Third Circuit followed suit in *Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428 (3d Cir. 2025), a case decided recently after the Supreme Court remanded for further consideration in light of *Rahimi*, but did not reverse.

166398698.1

**App083**

*Heller:* handgun violence, primarily in urban area[s]." 597 U.S. 1 at 27 (quotation omitted).  In striking down New York's proper cause requirement, the Supreme Court deemed it controlling that the law lacked an analogue from "before, during, and even after the founding[.]" *Id.*

### B.   SS1 for SB 1 Facially and As-Applied Violates the *Bruen* Standard

101.   The firearms at issue in this case, handguns, unquestionably fall within the scope of the Second Amendment, as the Supreme Court in *Heller* held that handguns are the most popular weapon chosen by Americans for self-defense. 554 U.S. at 629.  In *Heller,* the District of Columbia law at issue "addressed a perceived societal problem—firearm violence in densely populated communities"—by imposing a licensing regime with the result of effectively banning handgun possession in the home.  *Bruen,* 597 U.S. at 27.

102.   In evaluating the licensing regime challenged in *Heller*, the Supreme Court in *Bruen* stated, "the Founders themselves could have adopted [a similar law] to confront that problem," but they did not. *Id.* When striking down the handgun ban in *Heller*, the Supreme Court found it dispositive that no "Founding-era historical precedent" banned handgun possession in the home. *Id.* (citations omitted).

103.   In this case, there is also no historical regulation relevantly similar to the Permit-to-Purchase requirement.  At the time of the Founding, the preferred means of addressing the threat of violence was to require law-abiding individuals to

166398698.1

34

**App084**

be armed. States "typically required that arms be brought to churches or to all public meetings," and "statutes required arms carrying when traveling or away from home." *See* David Kopel & Joseph Greenlee, *The "Sensitive Places" Doctrine,* 13 CHARLESTON L. REV. 205, 232 (2018) (cited with approval in *Bruen,* 597 U.S. at 30). However, "[u]ntil the early twentieth century, there were no laws that required that individuals receive government permission before purchasing or borrowing a firearm." David Kopel, *Background Checks for Firearms Sales and Loans: Law, History, and Policy* ("Kopel"), 53 HARV. J. ON LEGIS. 303, 336 (2016).[16]

### C. SS 1 for SB 1's Provision for the Denial of a Permit on the Basis of the Director's Sole Determination that an Applicant Poses a Danger of Causing Physical Injury to Self or Others Violates the Second Amendment

104. SS1 for SB 1 also permits the Director, at his or her sole discretion, to deny a permit to any person who "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms." 11 *Del. C.* § 1448D(f)(3).

105. The Director may also revoke a permit, "at any time," on his or her discretionary finding that a person possessing a permit "poses a danger of causing

---

[16] The *Bruen* Court refused to recognize for this analysis laws that were "late-in-time" for establishing a Second Amendment historical analogue. 597 U.S. at 66 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or their amici."). *Bruen* also instructed that "postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen,* 597 U.S. at 36.

166398698.1

**App085**

physical injury to self or others by owning, purchasing or possessing firearms." §§ (f)(3); (*l*)(1).

106.   In *Rahimi*, the Supreme Court upheld a challenge to 18 U.S.C. § 922(g)(8), a materially different law that prohibits an individual subject to a domestic violence restraining order, issued by a court, from possessing a firearm if that order includes a finding that he represents a credible threat to the physical safety of an intimate partner, or a child. *Rahimi*, 602 U.S. at 680.

107.   But the Supreme Court made the limitations of its holding clear, emphasizing that, "we conclude only this: An individual found *by a court* to pose a credible threat to the physical safety of another may be *temporarily* disarmed consistent with the Second Amendment." *Id.* (emphasis added).

108.   The Supreme Court, therefore, sharply distinguished laws that limit individuals *found by a court* to be dangerous, from those, like SS 1 for SB 2, that apply to the public generally, and do so arbitrarily. *Id.* at 698 ("Section 922(g)(8) restricts gun use to mitigate *demonstrated* threats of physical violence, just as the surety and going armed laws do. Unlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally.") (emphasis added).

109.   In addition to basing its decision on the pre-existence of a court order, *Rahimi* rejected the notion that a person "may be disarmed simply because he is not

166398698.1

36

**App086**

'responsible,'" further rejecting broad disarmament of the public on the basis of vague and arbitrary determinations of bureaucrats like the Director. *Id.* at 702–703 ("'Responsible' is a vague term," "[i]t is unclear what such a rule would entail," and such a standard does not "derive from our case law," which "said nothing about the status of citizens who were not 'responsible.'").

110.   Likewise, *Bruen* rejected the idea that a person could be disarmed because of "a perceived lack of …suitability." *Bruen* 597 U.S. at 13; *see also id.* at 14–15 (identifying impermissible "may issue" regimes by the requirement that applicants "demonstrate[] cause or suitability").

111.   SS 1 for SB 2 has no objective criteria for a determination, by a court, of "a credible threat" present in the *Rahimi* matter or a court order containing a finding that Rahimi had committed "family violence," that was "likely to occur again," and that Rahimi posed "a credible threat" to the "physical safety" of his girlfriend and young child. 602 U.S. at 687.

112.   Rather, SS1 for SB 2 merely impermissibly cloaks a vague "may issue" and "suitability" styled statute in the discretion of the Director.

113.   The Permit-to-Purchase legislation challenged in this case, with its discretionary and subjective criteria vested with the Director, is consistent with the history of the repugnant racist licensing laws which *Bruen* refused to consider as relevant. *Bruen*, 597 U.S. at 62.

166398698.1

37

114.   This history of licensing laws for possession of firearms (not just carrying) aligns with the ugly racist history of gun-control laws in general, especially in the 1800s. Delaware law was no exception. *See* 8 LAWS OF THE STATE OF DELAWARE 208 (1841). Delaware charged "twenty-five cents" for "licenses to negroes to keep a gun." 9 LAWS OF THE STATE OF DELAWARE 430 (1843).[17]

115.   It is no coincidence that other firearm licensing statutes with provisions that were either vague and/or targeted at certain minority groups arose in the period around emancipation. *See Dred Scott v. Sandford*, 60 U.S. 393, 417 (1857) (Chief Justice Roger Taney offensively lamenting that were the slaves freed, it "would give to persons of the negro race" the right "to keep and carry arms wherever they went.")

116.   Similarly, in a shameful period of history, states began to restrict the carrying of firearms, with laws generally "passed for the purpose of disarming the negro [and were] never intended to be applied to the white population…generally conceded to be in contravention to the Constitution and non-enforceable if contested." *Watson v. Stone*, 4 So. 2d 700, 703 (Fla. 1941); *see also State ex rel. Russo v. Parker*, 57 Fla. 170 (1909).

---

[17] A few outlier states, such as Oregon and New York, passed laws in the twentieth century requiring a license to purchase pistols or revolvers for the documented purpose of preventing what they viewed as "dangerous classes" such as "freed Blacks" or Italian immigrants from possessing firearms. Robert J. Cottrol & Brannon P. Denning, *To Trust the People with Arms: The Supreme Court and the Second Amendment*, at 57–58 (University Press of Kansas 2023).

166398698.1

117.   As Justice Kavanaugh explained in *Rahimi*, laws with origins in racism are contrary to the Fourteenth Amendment, which sought to "reject the Nation's history of racial discrimination, not backdoor incorporate racially discriminatory and oppressive historical practices and laws into the Constitution." *Rahimi,* 620 U.S. at 723 (Kavanaugh, J., concurring).

118.   Delaware's SS 1 for SB 2 facially violates the Second Amendment and is unconstitutional in its placement of the discretionary power to grant or deny a permit with an unelected bureaucrat, the Director, based upon discretionary and vague criteria.

119.   The conduct SS 1 for SB 2 regulates is protected by the Second Amendment and Defendants cannot establish that the law is consistent with either the Nation's or Delaware's history and tradition of firearms regulation. There is no historical support for a permit-to-purchase requirement for firearms.[18]

---

[18] Many other parts of SS 1 for SB 2 have no justification based on the Nation's historical tradition. For instance, there is no historical tradition of requiring a training course merely to possess a handgun in any of the States during the relevant period. *See* George H. Ryden, DELAWARE–THE FIRST STATE IN THE UNION 117 (1938) (1741 Delaware law requiring that "every Freeholder and taxable Person" possess "[o]ne well-fixed Musket or Firelock."); 3 PROCEEDINGS OF THE COUNCIL OF MARYLAND, 1636–1667, at 345 (1965 Reprint) (A law requiring all people able to carry firearms to carry a firearm); 5 LAWS OF NEW HAMPSHIRE: FIRST CONSTITUTIONAL PERIOD, 1784–1792, at 178–79 (1916) (An act requiring all able bodied men from 16-40 to be prepared with a firearm for military service); 1 Hening, THE STATUTES AT LARGE, at 127 (A 1623 law requiring arms to travel); 1 AMERICA'S FOUNDING CHARTERS:

166398698.1

### D.     Untangling the "May Issue" and "Shall Issue" Distinction in the Context of SS 1 for SB 2

120.   Some outlier states defending permitting schemes across the nation have clung to dicta in *Bruen* on the issue of so-called "shall issue" vs. "may issue" permitting schemes.

121.   Painting with an overly broad brush, those rogue states wrongly suggest that *Bruen* supports the notion that simply prefacing any permitting scheme with the phrase "shall issue" immunizes that scheme (and its requirements, whatever they may be) from a Second Amendment challenge.  This suggestion draws too much from too little.

122.   First, the context of this dicta in *Bruen* must be considered.  In *Bruen*, the Supreme Court examined New York's proper cause requirement for obtaining a carry permit. Under the challenged statute, a New Yorker who sought to carry a firearm outside their home or place of business for self-defense, was required obtain an unrestricted license to "have and carry" a concealed "pistol or revolver."  To secure that license, the applicant was required to prove that "proper cause exists" to issue it. *Id*. at 15.

---

PRIMARY DOCUMENTS OF COLONIAL AND REVOLUTIONARY ERA GOVERNANCE 210–11 (Jon Wakelyn ed., 2006) (Concessions and Agreements, Jan. 11, 1664).

166398698.1

40

App090

123. For purposes of drawing a distinction between New York's particularly oppressive public carry statute and that of many other states, the Supreme Court broadly characterized the New York law as one of a few outlier states with permit statutes, while broadly characterizing 43 other states as having "shall issue" permit statutes. *Id*. at 17.

124. The premise of this distinction was that the text of the "may issue" statutes granted authorities "discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." *Id*. at 14–15.

125. The Supreme Court made this distinction for purposes of demonstrating that either facially, and/or in practice, the New York statute in question represented a relative outlier statute, among the states, as to public carry. *Id*. at 101 (Kavanaugh, J., concurring) ("Applying that test, the Court correctly holds that New York's outlier "may-issue" licensing regime for carrying handguns for self-defense violates the Second Amendment."); *id*. at 102 ("New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials . . .").

126. Those 43 statutes broadly categorized as "shall issue" in *Bruen* were not subject to the *Bruen* test because the validity of those statutes were not before the Supreme Court in that matter.

166398698.1

41

127.    The Supreme Court, in fact, cursorily acknowledged that the 43 statutes (at the time of its decision) were not, themselves, identical to each other. Many were categorized as "shall issue" on the basis that the Supreme Court believed that the language of their statute demonstrated "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id*. at 17.

128.    However, a smaller sub-set, including Delaware's, were categorized as "shall issue," not by the language of the statute itself but by how the Supreme Court perceived they operated in practice in those states. *Id*. at 17, n.1 ("Three States— Connecticut, Delaware, and Rhode Island—have discretionary criteria but appear to operate like "shall issue" jurisdictions. *See* Conn. Gen. Stat. §29-28(b) (2021); Del. Code, Tit. 11, §1441 (2022); R. I. Gen. Laws §11-47-11 (2002).").

129.    *Bruen*, therefore, did not rule on the constitutionality of the 43 statutes broadly categorized as "shall issue." Rather, it required that licensing processes, in the context of public carry, use "narrow, *objective*, and definite" standards, while flatly prohibiting the "appraisal of facts, the exercise of judgment and the formation of an opinion." *Id*. at 38 n.9 (emphasis added).

130.    *Bruen* simply contrasted the features of New York's licensing scheme—which did prevent most people from "exercising their Second Amendment

166398698.1

**App092**

right to public carry"—with other regimes, not part of the Court's ration *decidendi*; which did "not necessarily prevent" the same because they "appear[ed] to contain" certain features. *Id*.

131.    Any suggestion that the Supreme Court endorsed the constitutionality of those 43 public carry statutes broadly characterized as "shall issue" is false.[19] Further, SS 1 for SB 2 requires a permit for purchase and ownership of a handgun rather than for purposes of public carry, the use addressed by those 43 statutes.

132.    The Supreme Court then more directly addressed the necessity of objective, non-discretionary criteria for denying fundamental Second Amendment rights in *Rahimi*.[20]

133.    The restraining order in *Rahimi* included a finding by a court that Rahimi had committed "family violence," that was "likely to occur again," and that Rahimi posed "a credible threat" to the "physical safety" of his girlfriend and young child. *Id*. at 687.

---

[19] *Bruen*, 597 U.S. 1 at 13-*14 (making clear that New York's "proper cause," "may issue" outlier regime was what was before the Court for determination in the matter).
[20] Notably, in *Bruen*, the vast majority of the "43…'shall-issue' licensing regimes" the Court identified do not condition public carry on issuance of a license, with many either being "constitutional carry" jurisdictions, or allowing unlicensed open carry. *Id*. They were not permit-to-purchase schemes. Thus, the constitutionality of these entirely voluntary licensing regimes say nothing about the constitutionality of a licensing scheme encompassing (1) ownership of common arms; (2) which citizens must comply with in order to purchase or possess common arms. *See, e.g*., www.usconcealedcarry.com/blog/constitutional-carry-in-states (29 states now have a state constitutional provision that allows for carrying a firearm without a license.).

166398698.1

43

134.   Rahimi was given an opportunity to contest the testimony his girlfriend provided in support of the order and did not do so. *Id*. at 686.

135.   In upholding 18 U.S.C. § 922(g)(8) in the face of Rahimi's challenge, the Supreme Court made a discreet ruling: "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702.

136.   Contrast the context and substance of the *Rahimi* holding[21] with how the State of Delaware seeks to disarm its citizens through permit denial. SS 1 for SB

---

[21] *Bruen*'s "shall-issue" vs. "may-issue" dicta in the public carry context (which did not refer to a permit-to-purchase scheme), is notable to the extent that the statutes referenced in that dicta contained language defining what objectively constituted a "danger" that is entirely absent from SS 1 for SB 2: Mo. Rev. Stat. § 571.101 (2016) ("[a] concealed carry permit . . . shall be issued . . . if the applicant . . . [h]as not engaged in a pattern of behavior, documented in public or closed records, that causes the sheriff to have a reasonable belie*f* that the applicant presents a danger to himself or others.")  Mont. Code Ann. § 45-8-321 (2021) (a sheriff "may deny an applicant a permit to carry a concealed weapon if the sheriff has reasonable cause to believe that the applicant is mentally ill, mentally disordered, or mentally disabled or otherwise may be a threat to the peace and good order of the community to the extent that the applicant should not be allowed to carry a concealed weapon."); N. D. Cent. Code Ann. § 62.1-04-03 (Supp. 2021) (The bureau of criminal investigation, which grants concealed carry permits, "may deny approval for a license if the bureau has reasonable cause to believe that the applicant . . . has been or is a danger to self or others as demonstrated by evidence, including past pattern of behavior involving unlawful violence or threats of unlawful violence; past participation in incidents involving unlawful violence or threats of unlawful violence; or conviction of a weapons offense.") Wyo. Stat. Ann. § 6-8-104 (2021) (the state shall deny a permit "upon reasonable grounds for denial" which include "facts known to the sheriff which establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state,

2 requires only that the Director at his or her sole discretion, determine that a person who "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms," to deny a permit and disarm that person. 11 *Del. C.* § 1448D(f)(3).

137. The vague, discretionary standard in SS 1 for SB 2 bears no resemblance to the court-ordered restriction involved in *Rahimi's* discreet holding. Rather, it bears similarity to what *Rahimi* rejected—the Government's argument that Rahimi could be disarmed "simply because he is not 'responsible.'" *Rahimi*, 602 U.S. 680 at 701. The Supreme Court found "responsible" to be an impermissibly vague term that represented a line that did not "derive from our case law." *Id*.

138. Regardless of inapposite dicta, it remains undisputed that the Second Amendment's 'plain text' covers the regulated conduct in SS 1 for SB 2, and the government has only one way to carry its burden to defend the regulation—by proving that it is consistent with this Nation's historical tradition of firearm regulation. This they cannot do.

---

as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to criteria listed in this section.")

166398698.1

139.  The State will not be able to "affirmatively prove," based on "historical precedent," that an "enduring" and "comparable tradition of regulation" justifies SS 1 for SB 2. *Bruen*, 597 U.S. at 19, 27, 67.

140.  Therefore, SS 1 for SB 2 violates the Second Amendment and must be stricken.

141.  By its terms, SS1 for SB2 will be implemented no later than November 16, 2025.

## COUNT I

### Claim under 42 U.S.C. § 1983 for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the U.S. Constitution

142.  Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

143.  There is an actual and present controversy between the parties.

144.  The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens their fundamental right to keep and bear arms, both in the home and in public.

145.  The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

166398698.1

**App096**

146.   The right to keep and bear arms includes, but is not limited to, the right of individuals to transport, manufacture, sell, offer to sell, transfer, purchase, own, receive, or possess common firearms for all lawful purposes, including self-defense.

147.   SS 1 for SB 2 impermissibly restricts the right to purchase a handgun for any lawful purpose, including self-defense, without first following a lengthy, arduous process that vests unconstitutional discretion in the hands of the Director as to whether a permit will be granted. This includes a ban on those 18-to-20-year-olds from purchasing and owning "deadly weapons" that are common firearms. 11 *Del. C.* § 1448(a)(5).

148. SS 1 for SB 2's permitting scheme further violates the Second Amendment of the United States Constitution because:

(a)   it denies a constitutional right until a permit to exercise that right is issued;

(b)   the permitting process, both on the face of the statute and as applied, is unconstitutionally burdensome, vague, and arbitrary;

(c)   the permitting process, both on the face of the statute and as applied, was designed to deny constitutional rights and make it more burdensome to exercise them, especially those of limited economic means.

166398698.1

47

**App097**

149.  SS 1 for SB 2's implementation process also violates the Second Amendment of the United States Constitution because it will be implemented by its terms on November 16, 2025—but without the necessary infrastructure being established for its implementation, resulting in a handgun ban because there will be no process in place for law–abiding citizens to obtain the required purchaser permit.

150.  42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under the color of state law.

151.  Defendants, individually and collectively, and under the color of state law at all relevant times, have deprived persons of their fundamental Second and Fourteenth Amendment rights in the State of Delaware, including Plaintiffs, Thomas Neuberger; Jerry Martin; William R. Hague, Jr.; Bruce C. Smith; Bridgeville Kenpo Karate, Inc., doing business as BKK Firearms; DSSA and its members; and BRPC and its members, through Defendants' enforcement and implementation of SS 1 for SB 2.

152.  For all the reasons asserted herein, Defendants have acted in violation of and continue to act in violation of the Second Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

166398698.1

App098

## COUNT II

### Claim under 42 U.S.C. § 1983 for Deprivation of
### Plaintiffs' Rights Under the Fourth Amendment

153.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

154.    There is an actual and present controversy between the parties.

155.    The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

156.    The very core of the Fourth Amendment's guarantee is the right of a person to retreat into his or her home and "there be free from unreasonable governmental intrusion." *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (quoting *Florida v. Jardines*, 569 U. S. 1, 6 (2013)).

157.    Facial challenges under the Fourth Amendment are not categorically barred or especially disfavored. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015).

158.    The Supreme Court has, on numerous occasions, declared statutes facially invalid under the Fourth Amendment. *See, e.g. Chandler v. Miller*, 520 U.S. 305, 308-309 (1997) (striking down a Georgia statute requiring candidates for

166398698.1

certain state offices to take and pass a drug test, concluding that this "requirement . . . . [did] not fit within the closely guarded category of constitutionally permissible suspicionless searches"); *Ferguson v. Charleston*, 532 U.S. 67, 86 (2001) (holding that a hospital policy authorizing "nonconsensual, warrantless, and suspicionless searches" contravened the Fourth Amendment); *Payton v. New York*, 445 U.S. 573, 574, 576 (1980) (holding that a New York statute "authoriz[ing] police officers to enter a private residence without a warrant and with force, if necessary, to make a routine felony arrest" was "not consistent with the Fourth Amendment"); *Torres v. Puerto Rico*, 442 U.S. 465, 466, 471 (1979) (holding that a Puerto Rico statute authorizing "police to search the luggage of any person arriving in Puerto Rico from the United States" was unconstitutional because it failed to require either probable cause or a warrant).

159. While in a facial challenge a plaintiff must establish that a "law is unconstitutional in all of its applications," when the Court assesses whether a statute meets this standard, it considers "only applications of the statute in which it actually authorizes or prohibits conduct." *City of L.A. v. Patel*, 576 U.S. at 418. Such "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is

166398698.1

50

**App100**

irrelevant." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 894 (1992).

160.    Therefore, when addressing a facial challenge to a statute authorizing warrantless searches, "the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *City of L.A. v. Patel*, 576 U.S. at 418.

161.    The Supreme Court has repeatedly held that "'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 228 (2009) (quoting *Katz v. United States*, 389 U. S. 347, 357 (1967)).    This rule "applies to commercial premises as well as to homes." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978).

162.    Search regimes where no warrant is ever required may be reasonable only where "'special needs . . . make the warrant and probable-cause requirement impracticable,'" *Skinner v. Railway Labor Executives Assn'n,* 489 U.S. 602, 619 (1989) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (some internal quotation marks omitted), and where the "primary purpose" of the searches is "[d]istinguishable from the general interest in crime control," *Indianapolis v. Edmond,* 531 U.S. 32, 44 (2000).

166398698.1

**App101**

163.   Further, in a case litigated and won by undersigned counsel against the State, the Delaware Superior Court struck down a law on Fourth Amendment grounds that allowed excessive and untethered search and seizure of firearms. *See Del. State Sportsmen's Ass'n v. Garvin,* 196 A.3d 1254, 1277 (Del. Super. 2018) ("A law enforcement officer with complete discretion to conduct searches 'impinges on ... [the] rights to be free from unreasonable searches under the Fourth Amendment.'") (internal quotations omitted).

164.   SS 1 for SB 2's Permit-to-Purchase scheme has no analogue in the relevant historical tradition of firearms regulation in this Nation and, therefore, violates the Second Amendment. Moreover, SS 1 for SB 2's provisions for effecting the "surrender" and "removal" of firearms from Delawareans whose permits are revoked also violates the Fourth Amendment.

165.   SS 1 for SB 2 grants the Director of the State Bureau of Identification, an unelected bureaucrat, the power to revoke the permit of any Delawarean who, according to the sole discretion of the Director, "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms," and thus the Director would have the discretion to effect the "surrender" or "removal" of firearms from that Delawareans home without a warrant.

166398698.1

52

166. Further, the comments on the House floor by Secretary McQueen indicate that such "surrender" and "removal" would apply to all guns in the home, not just those the State purports to remove pursuant to revocation of a permit.

167. SS 1 for SB 2, therefore, authorizes, in all its relevant applications, the search and seizure of lawfully owned common arms outside the judicial process, without prior approval by a judge or a magistrate judge.

168. SS 1 for SB 2 further authorizes this search and seizure of lawfully owned common arms without any pre-compliance review before a neutral judicial decisionmaker.

169. SS 1 for SB 2's provision for the warrantless removal from the home of firearms based upon the subjective and nebulous "danger of causing physical injury" standard is a per se violation of the Fourth Amendment's protection against unreasonable search and seizure.

170. A recent unanimous Supreme Court opinion in *Caniglia v. Strom*, 141 S. Ct. at 1600 (2021), is on all fours with this matter. There, the Supreme Court held that the warrantless removal of firearms from the home of a man who police determined to be "a risk to himself or others" was a violation of the Fourth Amendment.[22]

---

[22] In *Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1275 (Del. Super. 2018), a case that the State did not appeal to the Delaware Supreme Court, the Superior Court found a regulation unconstitutional under the Fourth Amendment,

166398698.1

171.    In *Caniglia*, the Supreme Court reinforced the principle that the "'very core'" of the Fourth Amendment's guarantee is "'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Caniglia*, 593 U.S. at 198 (quoting *Florida* v. *Jardines*, 569 U. S. 1, 6 (2013)).

172.    SS 1 for SB 2 seeks to codify exactly what the United Supreme Court determined was a Fourth Amendment violation.

173.    Plaintiffs, Neuberger, Martin, Hague, and members of DSSA and BRPC have concrete plans to purchase a handgun covered by SS 1 for SB 2's permit requirement, and SS 1 for SB 2 vests unbridled discretion in the Director to deny their permit application and/or to revoke their permit and effectuate a warrantless search of their homes to confiscate their lawfully owned common arms.

174.    Plaintiffs will be subjected to enforcement of SS 1 for SB 2 because they have concrete plans to purchase a handgun covered by SS 1 for SB 2 or may sell a handgun to someone without the required permit. Thus, SS 1 for SB 2 leaves Plaintiffs with a Hobson's choice—(1) subject themselves to a lengthy and arduous 11-point process and the unbridled discretion of the Director to deny or revoke their permit and effectuate a warrantless search of their homes to confiscate their lawfully

---

where in the course of investigation of gun possession in Delaware State Parks, State officials were given "unfettered discretion to stop State Park and Forest visitors…without requiring a scintilla of evidence of criminal activity."

166398698.1

54

**App104**

owned common arms; (2) decline to purchase a permit-less handgun out of fear of prosecution and warrantless search of their homes to confiscate their lawfully owned common arms, *see MedImmune, Inc. v. Genentech, Inc*., 549 U.S.118, 128-29, (2007); or (3) purchase a handgun without applying for a permit and subject themselves to prosecution and the warrantless search of their homes to confiscated their lawfully owned common arms. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (a plaintiff can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder); *Lozano v. City of Hazleton*, 620 F.3d 170, 185 (3d Cir. 2010) (standing existed where plaintiffs were "direct targets of an ordinance they allege to be unconstitutional, complaining of what that ordinance would compel them to do"), *vacated on other grounds*, 563 U.S. 1030 (2011); *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1300 (3d Cir. 1996) (rejecting the government's argument that "no harm is imminent because no prosecution is pending").

175.  Further, Director McQueen's comments on the House floor stating that his purported authority to enforce the "surrender" and "removal" of lawfully owned common arms would apply to all guns in the home, not just those the State purports to remove pursuant to revocation of a permit. Thus, by virtue of owning a handgun,

whether with or without a permit, Plaintiffs are targets of the State's warrantless and unlawful search and seizure.

176. Defendant's enforcement of SS 1 for SB 2, including their intended actions to effectuate the "surrender" and "removal" of lawfully owned common arms, including those arms not subject to the permit requirement, has created a reasonable fear in Plaintiffs that any purchase of a firearm, whether with or without a permit, will result in its warrantless removal by the State, through the Director. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (continuous and pervasive conduct creating a reasonable fear in Plaintiffs created standing to bring challenge).

177. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under the color of state law.

178. Defendants, individually and collectively, and under the color of state law at all relevant times, have deprived persons of their fundamental Fourth Amendment rights in the State of Delaware, including Plaintiffs, Thomas Neuberger; Jerry L. Martin; William R. Hague, Jr.; DSSA and its members; and BRPC and its members, through Defendants' enforcement and implementation of SS 1 for SB 2

179. For all the reasons asserted herein, Defendants have acted in violation of and continue to act in violation of the Fourth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

166398698.1

56

## COUNT III

### Void for Vagueness

180.   Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

181.   There is an actual and present controversy between the parties.

182.   Statutes that are vague and arbitrary violate the Due Process Clause of the Fourteenth Amendment. *See, e.g., Springfield Armory, v. City of Columbus,* 29 F.3d. 250, 251 (6th Cir. 1994).

183.   The Supreme Court's void for vagueness doctrine's primary objective is to guard against "arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (underscoring the threat that vague laws pose to legislative policymaking primacy).

184.   A more "stringent" vagueness test applies for statutes that "threaten to inhibit the exercise of constitutionally protected rights" of *any* kind, as well as for statutes that impose "quasi-criminal" penalties. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

185.   Further, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for

166398698.1

resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Id*. at 498.

186.   SS 1 for SB 2 infringes upon the fundamental constitutional rights of Plaintiffs, namely their Second Amendment right to bear arms. *See Bruen*, 597 U.S. 1,  at 70 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 789 (2010)) ("The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.').

187.   SS 1 for SB 2 is impermissibly vague, in that it grants the Director of the State Bureau of Identification, an unelected bureaucrat, the power to deny or revoke the permit of any Delawarean who, according to the sole discretion of the Director, "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms."

188.   SS 1 for SB 2, therefore, fails to provide a reasonable opportunity to know, by what standards a permit applicant, including Plaintiffs, will be judged.

189.   Persons of common intelligence must necessarily guess at the meaning, scope and application of SS 1 for SB 2's "danger" standard for denying and/or revoking a permit.

App108

190.  The unbridled discretion that SS 1 for SB 2's impermissibly vague standards vest in the Director impermissibly delegates policy matters to the Director, and undoubtedly invites arbitrary and discriminatory application.

191.  This vagueness also has a chilling effect on Plaintiffs' constitutionally protected conduct.

192.  For all the reasons asserted herein, Defendants have acted in violation of and continue to act in violation of the Second Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for the following relief:

193.  A judgment that SS 1 for SB 2 and all related regulations, policies, and/or customs designed to enforce or implement the same, are a violation of Plaintiffs' fundamental right to keep and bear arms, including purchasing handguns for any lawful purpose without a state issued permit or license, as guaranteed under the Second and Fourteenth Amendments, as well as a violation of their rights under the Fourth Amendment to the United States Constitution. Declaratory judgment is proper in this matter, as there is a real controversy between the parties, an interest is adversely affected, and the issue is ripe for resolution;

194.  Relief pursuant to 42 U.S.C. § 1983 for deprivation by Defendants of Plaintiffs' federal constitutional rights under color of state law;

166398698.1

**App109**

195.  Attorney's fees pursuant to 42 U.S.C. § 1988(b);

196.  Both preliminary and permanent injunctive relief to enjoin Defendants from implementing and enforcing SS 1 for SS 2.

166398698.1

**App110**

197.   Any and all other and further relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper, including attorney's fees and costs.

Respectfully submitted,

LEWIS BRISBOIS
   BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (No. 2624)
OF COUNSEL:              Keith A. Walter (No. 4157)
Joseph G.S. Greenlee       500 Delaware Ave., Suite 700
National Rifle Association of   Wilmington, DE 19801
  America – Institute for Legislative  (302) 985-6000
  Action                  Francis.Pileggi@LewisBrisbois.com
11250 Waples Mill Road     Keith.Walter@LewisBrisbois.com
Fairfax, VA  22030

*Counsel for Plaintiffs*

Dated:  November 3, 2025

**App111**

## Index of Exhibits

SB 1 for SB 2 ...................................................................................................... A

HB 100 and 101 Authorizing Funding for SS 1 for SB 2 in FY 2025 ..................... B

Delaware State Police October 17, 2025 Permit to Purchase Announcement ......... C

Cris Barrish October 28, 2025 Article ................................................................... D

October 6, 2025 Email from Christopher Popp re Permit to Purchase Update ........ E

Esteban Parra May 16, 2024 Article ....................................................................... F

Permit to Purchase Firearms Training Course Guidelines ...................................... G

166398698.1

**App112**

# EXHIBIT A



SPONSOR: Sen. Lockman & Sen. Townsend & Sen. Sturgeon & Rep. Minor-Brown & Rep. Baumbach & Rep. Griffith & Rep. Romer & Rep. Morrison
Sens. Gay, S. McBride, Pinkney, Sokola; Reps. Bolden, Chukwuocha, Harris, Heffernan, K. Johnson, Longhurst, Lynn, Neal, Phillips

DELAWARE STATE SENATE
152nd GENERAL ASSEMBLY

SENATE SUBSTITUTE NO. 1
FOR
SENATE BILL NO. 2
AS AMENDED BY
HOUSE AMENDMENT NO. 2
AND
HOUSE AMENDMENT NO. 6
AND
HOUSE AMENDMENT NO. 10
AND
HOUSE AMENDMENT NO. 11

AN ACT TO AMEND TITLE 11, TITLE 24, AND TITLE 29 OF THE DELAWARE CODE RELATING TO DEADLY WEAPONS.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. Amend Subchapter VII, Chapter 5, Title 11 of the Delaware Code by making deletions as shown by strike through and insertions as shown by underline as follows:

§ 1448D. Handgun qualified purchaser permit required to purchase handguns.

(a) For purposes of this section:

(1) "Director" means the Director of the State Bureau of Identification.

(2) "Handgun" means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand.

(3) "Qualified law-enforcement officer" means as defined under § 1441A(c) of this title.

(4) "Qualified retired law-enforcement officer" means as defined under § 1441B(c) of this title.

(5) "SBI" means the State Bureau of Identification within the Division of State Police.

(b) The SBI shall, on application, issue a handgun qualified purchaser permit to all of the following:

(1) A person not disqualified under subsection (f) of this section.

(2) A person who the Director determines to be one of the following:

a. A qualified law-enforcement officer.

b. A qualified retired law-enforcement officer.

LC : MJC : CM : 4801520083                                    Released: 03/14/2024  05:56 PM
LC : HVW : CBM : 5081520151

**App114**

(c)(1) A person applying for a handgun qualified purchaser permit as a qualified law-enforcement officer or a qualified retired law-enforcement officer is not subject to paragraphs (f)(1) or (4) or subsection (g) of this section.

(2) A person who holds a valid license to carry concealed deadly weapons issued by the Superior Court under § 1441 of this title is not required to apply for a handgun qualified purchaser permit under this section before purchasing a handgun.

(d)(1) A person's application for a handgun qualified purchaser permit must be in the form prescribed by the SBI and include all of the following information about the person:

a. Name.

b. Residence.

c. Employer.

d. Date of birth.

e. Sex.

f. Gender.

g. Physical description, including distinguishing physical characteristics.

h. Race.

i. Ethnicity.

j. National origin.

k. English language proficiency.

(2) An application must include a sworn, written affirmation that the person is not prohibited from possessing a firearm under § 1448 of this title or any other provision of state or federal law.

(e) Applications must be made available by the SBI and licensed dealers.

(f) Except as otherwise provided under this chapter, the Director may not issue a handgun qualified purchaser permit to any of the following:

(1) A person under the age of 21.

(2) A person who is prohibited from purchasing, owning, possessing, or controlling a deadly weapon under § 1448 of this title.

(3) If supported by probable cause, a person who poses a danger of causing physical injury to self or others by owning, purchasing, or possessing firearms.

(4) A person who, in the 5 years before the date of application, has not completed a firearms training course that is sponsored by a federal, state, county, or municipal law-enforcement agency; a college; a nationally recognized

LC : MJC : CM : 4801520083
LC : HVW : CBM : 5081520151

Released: 03/14/2024  05:56 PM

**App115**

organization that customarily offers firearms training; or a firearms training school with instructors certified by a nationally recognized organization that customarily offers firearms training. The firearms training course must consist of at least all of the following:

a. Instruction regarding knowledge and safe handling of firearms.

b. Instruction regarding safe storage of firearms and child safety.

c. Instruction regarding knowledge and safe handling of ammunition.

d. Instruction regarding safe storage of ammunition and child safety.

e. Instruction regarding safe firearms shooting fundamentals.

f. Live fire shooting exercises conducted on a range, including the expenditure of a minimum of 100 rounds of ammunition.

g. Identification of ways to develop and maintain firearm shooting skills.

h. Instruction regarding federal and state laws pertaining to the lawful purchase, ownership, transportation, use, and possession of firearms.

i. Instruction regarding the laws of this State pertaining to the use of deadly force.

j. Instruction regarding techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution.

k. Instruction regarding suicide prevention.

(5) A person who is otherwise prohibited from purchasing or possessing firearms under the law of this State or federal law.

(g) The following persons are exempt from the training requirements of this section:

(1) Qualified law enforcement officers;

(2) Qualified retired law enforcement officers;

(3) Sheriffs and deputy sheriffs if otherwise qualified under this subsection;

(4) Persons licensed to carry a concealed deadly weapon under § 1441 of this title;

(5) Federal Firearms Licensees and Delaware Deadly Weapons Dealers licensed and regulated under Chapter 9 of Title 24;

(6) Armored car guards and security personnel licensed and regulated under Chapter 13 of Title 24;

(7) Constables commissioned and regulated under Chapter 56 of Title 24;

(8) Delaware Correctional Officers;

LC : MJC : CM : 4801520083                                                                                       Released: 03/14/2024  05:56 PM
LC : HVW : CBM : 5081520151

**App116**

(9) Members of the United States Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard and the Reserve elements thereof, including members of the Delaware National Guard;

(10) Instructors certified by the National Rifle Association of America;

(11) Persons holding a valid Delaware Hunter Safety certification card;

(12) Competitive shooters holding competitor classification cards issued by the National Rifle Association of America, the International Defensive Pistol Association, the International Practical Shooting Confederation, or the United States Practical Shooting Association.

(h) A person must submit an application for a handgun qualified purchaser permit to the SBI, who shall investigate the application and, unless grounds exist for the denial thereof, grant the handgun qualified purchaser permit within 30 days from the date of receipt of the application.

(1) The SBI shall take the fingerprints of each person who applies for a handgun qualified purchaser permit and compare the fingerprints with any records of fingerprints in this State. The SBI shall conduct a search of the Delaware Criminal Justice Information System to determine if the applicant is prohibited under the law of this State or federal law from purchasing or possessing a firearm. The SBI shall submit the person's fingerprints to the Federal Bureau of Investigation with a request that a search of the National Instant Criminal Background Check System be conducted.

(2)a. In investigating the application, the SBI shall contact the local law-enforcement agencies of the county or municipality in which the person resides and inquire as to any facts and circumstances relevant to the person's qualification for a handgun qualified purchaser permit.

b. If an applicant has resided in the applicant's county or municipality of residence for less than 5 years, the SBI shall contact the local law enforcement agency of each county or municipality in which the applicant has resided for the previous 5 years and inquire as to any facts and circumstances relevant to the person's qualification for a handgun qualified purchaser permit.

(i) If the Director determines that a person does not qualify under subsection (b) of this section for a handgun qualified purchaser permit, the Director shall deny the application and notify the person, in writing, setting forth the specific reasons for the denial.

(j)(1) A handgun qualified purchaser permit is valid for a period of 2 years from the date of issuance.

(2) A handgun qualified purchaser permit must consist of a unique permit number that corresponds to information retained by the SBI and including, at minimum, the following:

a. The full name and address of the person issued the handgun qualified purchaser permit.

Page 4 of 8

**App117**

b. The date on which the handgun qualified purchaser permit expires.

c. Any other information required by state law.

(3) A person issued a handgun qualified purchaser permit may purchase handguns using the handgun qualified purchaser permit while the handgun qualified purchaser permit is valid.

(k) A handgun qualified purchaser permit is void if, at any time following the issuance of a handgun qualified purchaser permit, any of the following apply to a person issued the handgun qualified purchaser permit:

(1) The person becomes disqualified for any reason under subsection (f) of this section.

(2) The person is no longer a qualified law-enforcement officer or a qualified retired law-enforcement officer.

(*l*)(1) The Director may revoke a handgun qualified purchaser permit at any time on a finding that any of the following apply to a person issued the handgun qualified purchaser permit:

a. The person is disqualified for any reason under subsection (f) of this section.

b. The person is no longer a qualified law-enforcement officer or a qualified retired law-enforcement officer.

(2) The Director shall give written notice of revocation without unnecessary delay to the person issued the handgun qualified purchaser permit, the State Police, and local law-enforcement agencies of the county or municipality in which the person resides.

(3) If the Director has given written notice of revocation and there is probable cause to believe that the person issued the handgun qualified purchaser permit has handguns purchased with the handgun qualified purchaser permit in the person's custody, possession, or control, the State Police or a local law-enforcement agency shall take action to ensure surrender or removal of the handguns.

(m)(1) A person aggrieved by the denial or revocation of a handgun qualified purchaser permit may request a hearing in the Justice of the Peace Court for the county in which the person resides.

a. The request for a hearing must be made in writing within 30 days of the denial of the application for the handgun qualified purchase permit or the revocation of the handgun qualified purchase permit.

b. The person shall deliver a copy of the person's request for a hearing to the Director and any chief of police of the county or municipality in which the person resides.

c. The hearing must be held and a record made thereof within 21 days of the receipt of the application for a hearing by a Justice of the Peace.

d. A filing fee is not required to obtain a hearing.

e. The Justice of the Peace Court shall designate a simple form to initiate an appeal.

LC : MJC : CM : 4801520083                                                                 Released: 03/14/2024  05:56 PM
LC : HVW : CBM : 5081520151

**App118**

(2) The Justice of the Peace Court's decision may be appealed to the Superior Court for a hearing de novo. The appeal must be filed within 15 days. The Superior Court shall schedule the de novo hearing within 15 days of the filing of the appeal.

(n) Not later than [1 year after the implementation date of § 1448D of Title 11 within Section 1 of this Act] and annually thereafter, the Director shall submit to the House and Senate committees on the Judiciary a report that includes all of the following, with respect to the preceding year:

(1) The number of applications submitted for a handgun qualified purchaser permit, the number of handgun qualified purchase permits issued, and the number of applications denied.

(2) The number of hearings requested by applicants aggrieved by a denial or revocation of a handgun qualified purchaser permit and the disposition of those hearings.

(3) The number of handgun qualified purchaser permits revoked by the Director.

(4) The number of cases in which the State Police or a local law-enforcement agency has taken action to remove handguns purchased with a handgun qualified purchase permit that was subsequently revoked and the number of handguns recovered.

(5) Demographic data on applicants seeking a handgun qualified purchaser permit, including race, ethnicity, national origin, sex, gender, age, disability, and English language proficiency.

(6) Demographic data on applicants aggrieved by a denial or revocation for a handgun qualified purchaser permit, including race, ethnicity, national origin, sex, gender, age, disability, and English language proficiency.

(o) (1) After a permit has been issued or a denial has become final, SBI may not retain any records relating to the application or permit other than the name and date of birth of the applicant, the date the permit was issued or the denial became final, and the date of the firearms training course completed by the applicant.

(2) Applications and any other information gathered under this section are not "public records" for purposes of the Freedom of Information Act, Chapter 100 of Title 29.

(p) An individual identified under subsection (g) of this section is exempt from the training requirement only if the firearm training undertaken pursuant to their employment meets all the requirements of paragraph (f)(4) of this section.

(q) The SBI may adopt regulations to administer, implement, and enforce this section.

Section 2. Amend § 1448A, Title 11 of the Delaware Code by making deletions as shown by strike through and insertions as shown by underline as follows:

§ 1448A. Background checks and handgun qualified purchaser permit required for sales of firearms.

LC : MJC : CM : 4801520083
LC : HVW : CBM : 5081520151

Released: 03/14/2024  05:56 PM

**App119**

(a)(1) A licensed importer, licensed manufacturer, or licensed dealer may not sell, transfer, or deliver from inventory any firearm, as defined in § 8571 of this title, to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, without conducting a background check by the State Bureau of Identification, through the Firearm Transaction Approval Program under subchapter VI of Chapter 85 of this title, to determine whether the transfer of a firearm to any person who is not licensed under 18 U.S.C. § 923 would be in violation of federal or state law.

(2) A transferor may not sell, transfer, or deliver from inventory a handgun to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, unless the buyer or transferee has a valid handgun qualified purchaser permit issued by the State Bureau of Identification under § 1448D of this title.

(3) For the purposes of this section:

a. "Handgun" means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand.

b. "Transferor" means a licensed dealer, licensed manufacturer, or licensed importer, or employee thereof, or any other person who sells, transfers or delivers a firearm.

(f) ~~Any licensed dealer, licensed manufacturer, licensed importer, or employee thereof~~ A transferor who wilfully and intentionally requests a background check from the State Bureau of Identification, through the Firearm Transaction Approval Program under subchapter VI of Chapter 85 of this title, for any purpose other than compliance with subsection (a) of this section, or § 1441(a)(1) or § 1448B(a) of this title, or wilfully and intentionally disseminates any information from the background check to any person other than the subject of such information or discloses to any person the unique identification number is guilty of a class A misdemeanor. The Superior Court has exclusive jurisdiction for all offenses under this subsection.

(h) ~~Any licensed dealer, licensed manufacturer, licensed importer or employee thereof~~ A transferor who wilfully and intentionally sells or delivers a firearm in violation of this section is guilty of a class A misdemeanor. A second or subsequent offense by an individual is a class G felony. The Superior Court has exclusive jurisdiction for all offenses under this subsection.

Section 3. Amend § 1448B, Title 11 of the Delaware Code by making deletions as shown by strike through and insertions as shown by underline as follows and redesignating accordingly:

§ 1448B. Background checks and handgun qualified purchaser permit required for sales of firearms — Unlicensed persons.

LC : MJC : CM : 4801520083
LC : HVW : CBM : 5081520151

Released: 03/14/2024 05:56 PM

**App120**

(a)(1) An unlicensed person may not sell or transfer any firearm to any other unlicensed person without having conducted a background check through a licensed firearms dealer in accordance with § 1448A of this title and § 904A of Title 24 to determine whether the sale or transfer would be in violation of federal or state law, and until the licensed firearms dealer has been informed that the sale or transfer of the firearm may "proceed" by the State Bureau of Identification, through the Firearm Transaction Approval Program under subchapter VI of Chapter 85 of this title or 25 days have elapsed from the date of the request for a background check and a denial has not occurred.

(2) An unlicensed person may not sell or transfer a handgun to any other unlicensed person unless the potential purchaser or transferee has a valid handgun qualified purchaser permit issued by the State Bureau of Identification under § 1448D of this title.

(b) For purposes of this section:

(1) "Handgun" means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand.

(6)(7) "Unlicensed person" means any person who is not a licensed importer, licensed manufacturer manufacturer, or licensed dealer.

Section 5. Section 1 of this Act is effective immediately and is to be implemented the earlier of the following:

(1) Eighteen months from the date of the Act's enactment.

(2) The date of publication in the Register of Regulation of a notice by the Director of the State Bureau of Identification that the necessary processes have been established for implementation of the handgun qualified purchaser permit under Section 1 of this Act.

Section 6. Sections 2 through 4 of this Act take effect on the implementation date of Section 1 of this Act.

Section 7. If a provision of this Act or the application of this Act to a person or circumstance is held invalid, the provisions of this Act are severable if the invalidity does not affect the other provisions of this Act that can be given effect without the invalid provision or the application of this Act that can be given effect without the invalid application.

LC : MJC : CM : 4801520083
LC : HVW : CBM : 5081520151                                    Released: 03/14/2024  05:56 PM

**App121**

# EXHIBIT B

App122



SPONSOR: Rep. Minor-Brown & Sen. Sokola
Harris                Townsend
Osienski              Lockman
Williams              Paradee

HOUSE OF REPRESENTATIVES
153rd GENERAL ASSEMBLY

HOUSE BILL NO. 100

JANUARY 10, 2025

AN ACT MAKING APPROPRIATIONS FOR THE EXPENSE OF THE STATE GOVERNMENT FOR THE FISCAL YEAR ENDING JUNE 30, 2026; SPECIFYING CERTAIN PROCEDURES, CONDITIONS AND LIMITATIONS FOR THE EXPENDITURE OF SUCH FUNDS; AND AMENDING CERTAIN PERTINENT STATUTORY PROVISIONS.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

**Section 1.** The several amounts named in this Act, or such part thereof as may be necessary and essential to the proper conduct of the business of the agencies named herein, during the fiscal year ending June 30, ~~2025~~ 2026, are hereby appropriated and authorized to be paid out of the Treasury of the State by the respective departments and divisions of State Government, and other specified spending agencies, subject to the limitations of this Act and to the provisions of Title 29, Part VI, Delaware Code, as amended or qualified by this Act, all other provisions of the Delaware Code notwithstanding. All parts or portions of the several sums appropriated by this Act which, on the last day of June ~~2025~~ 2026, shall not have been paid out of the State Treasury, shall revert to the General Fund; provided, however, that no funds shall revert which are encumbered pursuant to 29 Del. C. § 6521.

The several amounts hereby appropriated are as follows:

**App123**

Year ending June 30, 2026

# (45-00-00) DEPARTMENT OF SAFETY AND HOMELAND SECURITY

| Personnel | | | | $ Program | | $ Line Item | |
|---|---|---|---|---|---|---|---|
| NSF | ASF | GF | | ASF | GF | ASF | GF |
| | | | **(45-01-00) Office of the Secretary** | | | | |
| 43.0 | 10.5 | 121.7 | Personnel Costs | | | 3,239.3 | 13,977.2 |
| | | | Travel | | | 39.0 | 22.7 |
| | | | Contractual Services | | | 355.3 | 3,782.8 |
| | | | Energy | | | 18.7 | 477.4 |
| | | | Supplies and Materials | | | 42.0 | 826.7 |
| | | | Capital Outlay | | | 5.0 | 52.6 |
| | | | Other Items: | | | | |
| | | | Police Training Council | | | | 11.8 |
| | | 0.8 | Local Emergency Planning Councils | | | | 62.4 |
| | | 2.0 | School Safety Plans | | | | 346.7 |
| | | | ITC Funds | | | | 15.0 |
| | | | Brain Injury Trust Fund | | | | 50.0 |
| | | | Body Camera Program | | | | 500.3 |
| | | | Fund to Combat Violent Crimes - State Police | | | 2,125.0 | |
| | | | Fund to Combat Violent Crimes - Local Law Enforcement | | | 2,125.0 | |
| | | | System Support | | | 888.2 | |
| | | | Hazardous Waste Cleanup | | | 100.0 | |
| | | | Resale - Communication Parts | | | 336.0 | |
| | | | Vehicles | | | 170.4 | |
| | | | Other Items | | | 0.7 | |
| | | | Retired Canines | | | | 36.0 |
| | | | POST/DEPAC | | | | 69.1 |
| 43.0 | 10.5 | 124.5 | **TOTAL — Office of the Secretary** | | | 9,444.6 | 20,230.7 |
| | | | | | | | |
| 2.0 | | 20.0 | (-01) Administration | 4,350.0 | 3,607.9 | | |
| | 3.5 | 23.5 | (-20) Communication | 1,635.6 | 4,640.4 | | |
| 30.0 | | 14.0 | (-30) Delaware Emergency Management Agency | | 1,521.6 | | |
| 8.0 | | 2.0 | (-40) Highway Safety | | 219.4 | | |
| 3.0 | | 1.0 | (-50) Developmental Disabilities Council | | 127.0 | | |
| | | 2.0 | (-60) State Council for Persons with Disabilities | | 367.5 | | |
| | 7.0 | | (-70) Division of Gaming Enforcement | 3,459.0 | | | |
| | | 62.0 | (-80) Division of Forensic Science | | 9,746.9 | | |
| 43.0 | 10.5 | 124.5 | TOTAL — Internal Program Units | 9,444.6 | 20,230.7 | | |

42

**App124**

Year ending June 30, 2026

# (45-00-00) DEPARTMENT OF SAFETY AND HOMELAND SECURITY

| Personnel | | | | $ Program | | $ Line Item | |
|---|---|---|---|---|---|---|---|
| NSF | ASF | GF | | ASF | GF | ASF | GF |
| | | | **(45-02-00) Capitol Police** | | | | |
| | 1.0 | 114.0 | Personnel Costs | | | 135.4 | 13,027.8 |
| | | | Travel | | | | 5.5 |
| | | | Contractual Services | | | | 514.1 |
| | | | Supplies and Materials | | | | 138.6 |
| | | | Other Item: | | | | |
| | | |   Special Duty | | | 271.9 | |
| | 1.0 | 114.0 | **TOTAL — Capitol Police** | | | 407.3 | 13,686.0 |
| | | | | | | | |
| | 1.0 | 114.0 | (-10) Capitol Police | 407.3 | 13,686.0 | | |
| | 1.0 | 114.0 | TOTAL -- Internal Program Unit | 407.3 | 13,686.0 | | |
| | | | | | | | |
| | | | **(45-04-00) Division of Alcohol** | | | | |
| | | |     **and Tobacco Enforcement** | | | | |
| 1.5 | 2.0 | 11.5 | Personnel Costs | | | 43.1 | 1,832.8 |
| | | | Travel | | | 2.8 | 0.5 |
| | | | Contractual Services | | | 36.6 | 304.5 |
| | | | Supplies and Materials | | | 10.0 | 25.2 |
| | | | Capital Outlay | | | 1.0 | 1.1 |
| | | | Tobacco Fund: | | | | |
| | 4.0 | |   Personnel Costs | | | 482.3 | |
| | | |   Contractual Services | | | 101.1 | |
| | | |   Supplies and Materials | | | 24.1 | |
| | | | Other Items | | | 110.0 | |
| | 13.0 | | Marijuana Control Act | | | 2,458.8 | |
| 1.5 | 19.0 | 11.5 | **TOTAL — Division of Alcohol** | | | 3,269.8 | 2,164.1 |
| | | |     **and Tobacco Enforcement** | | | | |
| | | | | | | | |
| 1.5 | 19.0 | 11.5 | (-10) Division of Alcohol | 3,269.8 | 2,164.1 | | |
| | | |   and Tobacco Enforcement | | | | |
| 1.5 | 19.0 | 11.5 | TOTAL -- Internal Program Unit | 3,269.8 | 2,164.1 | | |
| | | | | | | | |
| | | | **(45-05-00)  Office of the Marijuana** | | | | |
| | | |     **Commissioner** | | | | |
| | | 3.0 | Personnel Costs | | | | 414.0 |
| | | | Contractual Services | | | | 6.3 |
| | 4.0 | | Marijuana Control Act | | | 877.1 | |
| | 2.0 | | Medical Marijuana | | | 480.1 | |
| | 6.0 | 3.0 | **TOTAL — Office of the Marijuana** | | | 1,357.2 | 420.3 |
| | | |     **Commissioner** | | | | |
| | | | | | | | |
| | 6.0 | 3.0 | (-10) Office of the Marijuana | 1,357.2 | 420.3 | | |
| | | |   Commissioner | | | | |
| | 6.0 | 3.0 | TOTAL — Internal Program Unit | 1,357.2 | 420.3 | | |

43

**App125**

Year ending June 30, 2026

# (45-00-00) DEPARTMENT OF SAFETY AND HOMELAND SECURITY

| Personnel | | | | $ Program | | $ Line Item | |
| NSF | ASF | GF | | ASF | GF | ASF | GF |
|---|---|---|---|---|---|---|---|
| | | | **(45-06-00) State Police** | | | | |
| 51.8 | 70.0 | 880.2 | Personnel Costs | | | 6,428.4 | 168,416.7 |
| | | | Travel | | | 136.8 | |
| | | | Contractual Services | | | 1,570.4 | 8,673.0 |
| | | | Energy | | | | 145.7 |
| | | | Supplies and Materials | | | 1,391.1 | 7,497.0 |
| | | | Capital Outlay | | | 1,046.0 | 146.0 |
| | | | Other Items: | | | | |
| | | | Vehicles | | | 79.8 | 3,609.6 |
| | | | Real Time Crime Reporting | | | 48.1 | |
| | | | Other Items | | | 112.5 | |
| | | | Crime Reduction Fund | | | | 110.0 |
| | | | Special Duty Fund | | | 7,069.2 | |
| | 20.0 | | Fund to Combat Violent Crimes - State Police | | | | |
| | | 15.0 | Body Camera Program | | | | 2,500.7 |
| | | 15.0 | Expungement Acts | | | | 1,278.1 |
| | | 19.0 | Firearm Transaction Approval Program | | | | 2,485.2 |
| | | 5.0 | Lethal Firearms Safety Program | | | | 586.4 |
| | | 10.0 | Permit to Purchase | | | | 4,101.9 |
| 51.8 | 90.0 | 944.2 | **TOTAL – State Police** | | | 17,882.3 | 199,550.3 |

| Personnel | | | | $ Program | | $ Line Item | |
| NSF | ASF | GF | | ASF | GF | ASF | GF |
|---|---|---|---|---|---|---|---|
| | | 60.0 | (-01) Executive | 226.7 | 11,076.3 | | |
| | | 5.0 | (-02) Building Maintenance and Construction | | 710.4 | | |
| | 32.0 | 384.0 | (-03) Patrol | 4,183.6 | 81,735.2 | | |
| 35.5 | 12.0 | 155.5 | (-04) Criminal Investigation | 6,426.3 | 37,961.3 | | |
| | 10.0 | 63.0 | (-05) Special Investigation | 588.7 | 15,942.2 | | |
| | | 28.0 | (-06) Aviation | | 8,659.7 | | |
| 13.3 | 16.0 | 2.7 | (-07) Traffic | 3,165.4 | 1,908.1 | | |
| | 17.0 | 117.0 | (-08) State Bureau of Identification | 1,455.2 | 14,376.1 | | |
| | | 11.0 | (-09) Training | 340.7 | 3,564.4 | | |
| 1.0 | 3.0 | 95.0 | (-10) Communications | 212.1 | 11,104.1 | | |
| | | 13.0 | (-11) Transportation | 1,283.6 | 10,130.6 | | |
| 2.0 | | 10.0 | (-12) Community Relations | | 2,381.9 | | |
| 51.8 | 90.0 | 944.2 | TOTAL – Internal Program Units | 17,882.3 | 199,550.3 | | |

| Personnel | | | | | | $ Line Item | |
| NSF | ASF | GF | | | | ASF | GF |
|---|---|---|---|---|---|---|---|
| 96.3 | 126.5 | 1,197.2 | **TOTAL -- DEPARTMENT OF SAFETY AND HOMELAND SECURITY** | | | 32,361.2 | 236,051.4 |

**App126**



SPONSOR: Rep. Minor-Brown & Sen. Sokola
                  Harris                  Townsend
                  Osienski               Lockman
                  Williams               Paradee

HOUSE OF REPRESENTATIVES
153rd GENERAL ASSEMBLY

HOUSE BILL NO. 101

JANUARY 10, 2025

AN ACT MAKING A ONE-TIME SUPPLEMENTAL APPROPRIATION FOR THE FISCAL YEAR ENDING JUNE 30, 2026 TO THE OFFICE OF MANAGEMENT AND BUDGET.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

**Section 1.** There is hereby appropriated $17,561,900 (Seventeen Million, Five Hundred Sixty-One Thousand, Nine Hundred Dollars) in General Funds to Executive, Office of Management and Budget, Contingencies and One-Time Items (10-02-11) for the following purposes:

| | | |
|---|---|---|
| (02-08-10) | Equipment | $34,100 |
| (02-13-10) | Permit to Purchase | $13,300 |
| (10-07-01) | Permit to Purchase | $6,700 |
| (10-02-11) | ERP Cloud Migration | $2,000,000 |
| (10-02-11) | Technology | $432,200 |
| (10-02-11) | Health Care Services Contingency | $3,500,000 |
| (10-02-11) | Trauma Informed Services Contingency | $1,700,000 |
| (10-02-11) | Department of Justice Lease | $3,000,000 |
| (12-03-02) | Insurance Revenue Shortfall | $3,000,000 |
| (12-05-06) | Delaware EARNS | $403,700 |
| (15-02-02) | Equipment | $23,800 |
| (20-03-01) | Delaware Heritage Commission | $250,000 |
| (35-01-10) | Hospital Provider Contingency | $1,500,000 |
| (38-01-03) | Prison Research Innovation Network | $52,700 |

**App127**

# EXHIBIT C

**App128**

**DSP Menu**

(https://delaware.gov)

# Delaware State Police

# Permit to Purchase



◀) Listen  ▶

# Permit to Purchase Firearms

The Delaware State Police Permit to Purchase Section is responsible for the investigation of applications for, and the issuance of, handgun qualified purchaser permits.  To purchase a handgun in Delaware, the purchaser must be a Delaware resident and have a valid handgun qualified purchaser permit.  To obtain a handgun qualified purchaser permit, applicants must: (1) complete a firearms safety course by an approved instructor, (2) obtain fingerprints by appointment with IdentoGO, (3) pass a background check.  Select the appropriate link below to review the specific requirements for obtaining a permit.  A person who holds a valid license to carry a concealed deadly weapon (CCDW) issued by the Superior Court of Delaware under 11 Del. C. § 1441 is not required to apply for a handgun qualified purchaser permit before purchasing a handgun.

CCDW - Carrying a Concealed Deadly Weapon

Applicant

Active Law-Enforcement

Retired Law-Enforcement

Certified Firearms Training Instructors

1. The Delaware State Police Permit to Purchase section only certifies instructors who provide firearms training to individuals applying for a handgun qualified purchaser permit (permit to purchase). This does not include individuals applying for a professional license through the Delaware State Police Professional Licensing section (i.e. Armed Security Guards, Armored Car Employees, Bail Enforcement Agents, or Constables).  This also does not include individuals applying for a concealed carry permit.  For further information regarding those training certifications, see the below links.
    1. DSP Professional Licensing (https://dsp.delaware.gov/professional-licensing/)
    2. Concealed carry information – De Attorney General (https://attorneygeneral.delaware.gov/criminal/concealed-carry-deadly-weapons-ccdw/)
2. For certification as a Permit to Purchase Firearms Training Instructor complete the following steps:
    1. Review the Training Course Guidelines (https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/09/Training-Course-Guidelines.pdf) 📄https://docreader.readspeaker.com/docreader/?cid=buwew&lang=en_us&url=https%3A%2F%2Fdsp.delaware.gov%2Fwp-content%2Fuploads%2Fsites%2F118%2F2025%2F09%2FTraining-Course-Guidelines.pdf)
    2. Complete the Instructor application in the Firearms Instructor Portal
    3. Submit the required documents with the instructor application
3. Permit to Purchase Instructor Portal https://dsp.delaware.gov/p2p-instructor-portal/ (https://dsp.delaware.gov/p2p-instructor-portal/)
4. Firearms Training Course Certification (https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/04/P2P-Firearms-Certification-.pdf) 📄https://docreader.readspeaker.com/docreader/?cid=buwew&lang=en_us&url=https%3A%2F%2Fdsp.delaware.gov%2Fwp-content%2Fuploads%2Fsites%2F118%2F2025%2F04%2FP2P-Firearms-Certification-.pdf)     (form to be used by instructors only) The Firearms Training Course Certification form should be completed and signed by the instructor upon the applicant's successful completion of the firearms training safety course.  The applicant will submit this signed certification form along with his or her application for a handgun qualified purchaser permit.

Frequently Asked Questions

**App130**

Link of Approved Firearms Instructors

Link to Handgun Qualified Purchaser Permit law 11 Del C. § 1448D

Link to Permit to Purchase regulations (to be developed)

Permit to Purchase section contact info (email, telephone, address)



(/)
- Units & Sections  (https://dsp.delaware.gov/units/)
- Troop Locations   (https://dsp.delaware.gov/locations/)
- Reports & Statistics (https://dsp.delaware.gov/reports/)

**App131**

- Newsroom (https://dsp.delaware.gov/newsroom/)
- Public Announcements (https://dsp.delaware.gov/public-service-announcements/)
- Victim Services (https://dsp.delaware.gov/victim-services/)
- Become a Trooper (https://dsp.delaware.gov/become-a-trooper/)
- Fingerprints & Backgrounds (https://dsp.delaware.gov/obtaining-a-certified-criminal-history/)

- Contact Us (https://dsp.delaware.gov/contact/)
- FOIA (https://dsp.delaware.gov/foia/)

- Facebook Page🟦 (https://www.facebook.com/DSPNewsroom/) Twitter Page🟦 (https://twitter.com/DEStatePolice?ref_src=twsrc%5Etfw&ref_url=http%3A%2F%2Fdsp.delaware.gov%2Findex.shtml) YouTube Page▶ (https://www.youtube.com/channel/UCtzcQwVA4sad8bm4c31kIgg)

+

# Delaware's Government

Delaware's Governor (https://governor.delaware.gov)
State Directory (https://de.gov/state-directory)
Elected Officials (https://delaware.gov/guides/your-government/)
General Assembly (https://legis.delaware.gov/)
Delaware Courts (https://courts.delaware.gov/)
State Employees (https://dhr.delaware.gov/talent-management/employee-resources.shtml)
Cities & Towns (https://delaware.gov/guides/municipalities/)
Delaware State Code (http://delcode.delaware.gov/)
State Regulations (http://regulations.delaware.gov/)
Business First Steps (https://firststeps.delaware.gov/)

Phone Directory (https://delaware.gov/phonedirectory/)
Locations Directory (https://delaware.gov/locationsdirectory/)
Public Meetings (https://publicmeetings.delaware.gov/)
Voting & Elections (https://elections.delaware.gov)
Transparency (https://delaware.gov/guides/transparency-resources/)
Choose Health DE (https://www.choosehealthde.com/Health-Insurance-Marketplace)
Tax Center (https://delaware.gov/guides/tax-center/)
Personal Income Tax (https://revenue.delaware.gov/online-filing/)
Privacy Policy (https://delaware.gov/privacy-policy/)
Weather & Travel (https://news.delaware.gov/emergency-weather-information/)

Contact Us (https://delaware.gov/contact/)
Corporations (https://corp.delaware.gov/)
Franchise Tax (https://corp.delaware.gov/paytaxes/)
Gross Receipts Tax (https://tax.delaware.gov/)
Withholding Tax (https://dorweb.revenue.delaware.gov/info/edionline.html)
Guides to Services (https://delaware.gov/guides/)
Help Center (https://delaware.gov/contact/)
Mobile Apps (https://delaware.gov/guides/mobile-apps/)
E-mail / Text Alerts (https://delaware.gov/guides/subscribe/)
Social Media (https://delaware.gov/guides/social-media/)

State of Delaware Facebook Page (https://www.facebook.com/delaware.gov)

State of Delaware Twitter Feed (https://twitter.com/delaware_gov/)

State of Delaware Flickr Photos (https://www.flickr.com/groups/delaware_gov/)

**App132**

State of Delaware YouTube Account (https://www.youtube.com/user/DelawareGovernment)

State of Delaware Instagram Photos (https://www.instagram.com/delaware_gov/)

| Make Text Size Smaler— | Reset Text Size**A** | Make Text Size Bigger**+** |
| --- | --- | --- |



Built by the Government Information Center (https://gic.delaware.gov)
©MMXXV Delaware.gov (https://delaware.gov)

**App133**

# EXHIBIT D

  Listen Live • Sports in America • brought to you by P

♥ **DONATE**

| COURTS & LAW | DELAWARE | GUN VIOLENCE | LAW |

**FIRST STATE FOCUS**

# Ready or not, Delaware law requiring permit to buy handgun takes effect next month

The state's application, which officials have up to 30 days to process, still isn't available, leading one foe to predict a temporary ban on buying guns.

 By Cris Barrish · Updated Oct. 28, 2025 12:29 pm

▶ Listen 1:54





Bill Walters is offering one of the firearm safety courses needed to qualify for a permit. (Courtesy of Bill Walters)

*What are journalists missing from the state of Delaware? What would you most like WHYY News to cover?* <u>*Let us know.*</u>

Bill Walters of 302 Tactical Operations Group will be teaching a firearms safety course to prospective handgun buyers next month at Delaware's Mill Creek fire hall.

No one has signed up yet, but Walters says he's certain that dozens will register.

That's because on Nov. 16 — six days before the class — <u>Delaware's law that requires a state-issued permit to buy or transfer a handgun</u> takes effect.

**App136**

WHYY thanks our sponsors — become a WHYY sponsor



A permit to buy a handgun in Delaware will be required starting on Nov. 16. (State of Delaware)

Walters attributed the failure of anyone to sign up yet to a federal lawsuit challenging the provision's constitutionality that was filed four hours after then-Gov. John Carney signed it into law in May 2024.

"They're all hoping at this point that some miracle stops the process from happening, but I don't think it's going to," Walters said of prospective gun buyers.

The lawsuit is still working its way through U.S. District Court in Wilmington and won't be decided anytime soon.

So in 20 days, permits will be required.

Lawmakers gave state police 18 months to put a permitting process into place, but as of Friday, the critical application needed to get the permit was not yet available. Police are directing the public to their website for information about getting a permit, and Lt. India Sturgis said authorities "anticipate the application process will open" sometime this week.

Sturgis said the process of setting up the permitting system was stymied by "an approximate six-

**App137**

month delay in the federal government granting us permission to run background investigations."

So while Walters has no students yet for his Nov. 22 training class, he expects a flood of signups once applications are available online or at state police barracks.

He expects his classes and others to be filled with people who either thought the law would never take effect, didn't realize the deadline was approaching, or recently decided they want a pistol or revolver but found out they couldn't simply walk into a gun shop, submit to an instant background check, and walk out with their weapon.

"It'll be knee-jerk afterwards," Walters predicted.

## Safety course, fingerprinting and background check required

Delaware is among about a dozen states, including New Jersey and Maryland but not Pennsylvania, that have so-called permit-to-purchase laws for all firearms or just for handguns.

Under the law, everyone who wants to buy a handgun in Delaware — except those with a permit to carry concealed weapons — must first obtain a permit.

But before buyers can get a permit, they must take several proactive steps.

The first is to take a safety training course from one of the state's more than 50 certified instructors.

The course must cover safe handling and storage of guns and ammunition, child safety, fundamentals of safe shooting, applicable laws, information on how to manage a violent confrontation and suicide prevention, and live firing of at least 100 bullets.

Not everybody who needs a permit must take the course. The law exempts active and retired law enforcement officers, firearms dealers, licensed security guards, constables, correctional officers, members of the military, certified firearm instructors, competitive shooters and hunters with a state safety certification.

Walters said 302 Tac Ops offers an eight-hour class that takes one day, followed by a two-hour session on a later date, perhaps the next day, at his company's firing range near Clayton. The total cost, including renting a gun and ammunition at the range near Clayton, is about $250, he said.

The second step for would-be buyers is to get fingerprinted, a process the state is facilitating through the vendor IdentoGO. The cost is $85. Appointments can be made online, using the service code 27S8N2. A search by WHYY News found that hundreds of slots are available.

Prospective buyers must also fill out an application with the State Bureau of Identification, an arm of the state police. Applications won't be processed until the training course and fingerprinting are completed, Sturgis said.

Once an application is accepted, SBI will conduct a background investigation that includes checks of the state criminal justice database to see if someone is prohibited from buying or having a firearm in Delaware.

The fingerprints will be sent to the Federal Bureau of Investigation to run an instant background check.

SBI can also contact local law enforcement authorities in counties or towns where the applicant has lived for the last five years to ask if "any facts and circumstances" might be grounds for a rejection, according to the law.

The background check can't be an open-ended probe, however.

The law requires that unless the application is rejected, SBI must grant the permit within 30 days of receiving the completed paperwork.

Once approved, the applicant must visit SBI's headquarters in Dover to pick up an official permit, which is good for two years. There is no cost for the actual permit, which will contain the person's name and address, and the permit's expiration date. Sturgis said the "laminated card" will also include the person's photo.

## 'The state has fumbled the ball in the 18 months'

Wilmington lawyer Thomas Neuberger, one of the plaintiffs in the pending lawsuit — said the fact that no application is yet available, coupled with the 30-day turnaround period — has set the stage for a period of time when no one except those with a concealed carry permit can buy a handgun in Delaware.

**App139**



Wilmington attorney Thomas Neuberger is a plaintiff in the lawsuit challenging the law's constitutionality. (Courtesy of Thomas Neuberger)

"I think the state has fumbled the ball in the 18 months" since Carney signed the legislation, Neuberger said. "Now, in the last two minutes of the game, they're trying to get their act together."

"It's too late now and I think there's going to be a total gun ban on the 16th [of November] because dealers will not want to subject themselves to criminal liability. They're not going to give you a handgun and sell it to you if you haven't got the permit."

Sturgis said training courses have already been available to the public, and state police are "committed to a secure, fair, and efficient implementation of the law."

## Related Content



🎧 **COMMUNITY**

**Delaware summit highlights progress in Wilmington and Laurel as state and national leaders unite to end community violence**

Leaders in Dover reviewed new research and data, explored solutions to violence and highlighted Laurel's positive approach to prevention.

*2 weeks ago*



**App140**

▶ Listen  ᵢⱼⱼ₆

WHYY News asked Sturgis about Neuberger's assertion that there could be several days when someone who fills out the application as soon as it becomes available won't be able to exercise his or her constitutional right to buy a handgun come Nov. 16.

"We don't operate under hypotheticals," Sturgis said. "SBI will begin processing applications as soon as the portal is live. By law, the review of a complete application can take up to 30 days. Timing depends on when a complete application is submitted and the results of required state and federal checks."

## Sensible law to save lives, or infringement on rights

While state officials prepare to accept and review applications then issue permits, advocates for gun rights and for gun control continue debating whether the law is constitutional and if it will help reduce the gun violence that has plagued Wilmington, Dover and other parts of Delaware.

Traci Murphy of Coalition for a Safer Delaware, which was formerly called the Delaware Coalition Against Gun Violence, predicts positive results.

"Handguns are most often used in homicide and suicide," Murphy said. "The idea is to put a lot more rigor behind who can purchase these weapons legally. And we know that there's an underground market, but we also know that by cutting down on legal buyers, we will cut down on illegal sellers."

WHYY thanks our sponsors — become a WHYY sponsor

**App141**



Traci Murphy of Coalition for a Safer Delaware says requiring permits will reduce homicides and suicides. (Courtesy of Traci Murphy)

Murphy foresees fewer so-called straw purchases, where someone illegally buys a weapon for someone who is prohibited from having one.

"If someone has to go through a permitting process, they have to undergo a comprehensive criminal background check and then they have to pay and undergo rigorous training, including safety training, and then they have to do an in-person appearance before law enforcement," Murphy said.

"We believe that they are far less likely to look a law enforcement officer in the eye, tell them that

**App142**

they're using the weapon for home security and then go and sell it on the underground market."

Murphy said New Jersey, Massachusetts, New York and other states with low rates of gun violence, as reported by Johns Hopkins University's Center for Gun Violence Solutions, have similar laws.

Although courts have not overturned permit-to-purchase laws, Neuberger predicted that the Supreme Court will ultimately find they violate the Second Amendment's provisions granting Americans the right to bear arms. He pointed to a 2022 high court decision that said gun laws must be "consistent with this nation's historical tradition of firearm regulation" to survive legal challenges.

"In colonial days you brought your rifle, your handgun to church," Neuberger said. "Everybody went everywhere with guns. Under this, I've got to go through a several-month process to get a handgun to protect my family."

While instructor Walters looks forward to teaching the safety course so people can get permitted, he doesn't think the permit-to-purchase law is constitutional or will reduce violence.

"For people that have never bought before, having some type of fundamental basic safety course is a great idea," he said. "I think to make it mandatory for purchase is unconstitutional. But we have other states around us that have been doing very similar things for a long time."

Nor does Walters think fewer guns will make their way into the hands of people intent on engaging in violence.

"Anybody that is on the criminality side is going to find a way to get it. Period. Full stop," Walters said. "You're not going to stop that."

State Sen. Majority Whip Tizzy Lockman, the Wilmington Democrat who was lead sponsor of legislation that took five years and underwent multiple changes before lawmakers passed the bill, said she understands the continued opposition but disagrees with it.

"There's always going to be the detractors and folks who don't want to see any policy such as this," Lockman said. She expressed confidence that the law will withstand the constitutional challenge. "But I also see a good cross-section of folks who see the value in this kind of gun-sense policy."

As for any possible reduction in shootings across the state in the future, Lockman said, "It's a little

**App143**

early to do any victory dances of that kind. But I'm just glad that it's getting off the ground."



State Sen. Majority Whip Tizzy Lockman sponsored the permit to purchase legislation that took five years to pass. (WHYY News file)

## Get in touch

> What are journalists missing from the state of Delaware? What would you most like WHYY News to cover? Let us know!

0/200

### Your contact info

We'll be in touch if we look into your question.

| Name | Email address | ZIP code |

☑ Get daily updates from WHYY News!

☐ Please don't publish my name

**App144**

# EXHIBIT E

**From:** Popp, Christopher W (DSP) <christopher.popp@delaware.gov>

**Sent:** Monday, October 6, 2025 at 07:36:11 AM EDT

**Subject:** FTAP/P2P Update

Good morning,

Since my last communication, things have continued to progress, and DELJIS is developing the FTAP program. This has been delayed for some time but during our initial testing, we found some critical errors that needed to be addressed. We don't want to put out a program that is not effective and make sure it's thoroughly tested for accuracy. We've been advised by DELJIS we can begin testing the program again this week. I believe the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy. If the testing phase is successful, we're going to move into the training phase for all its users. This includes putting dates back on the schedule for you, the FFL's, to attend and show you the program as well as getting everyone registered to use the program. We encourage you to bring all your employees to the seminars so we can get everyone registered. As soon as we confirm the dates and times a follow up email will be sent out.

As we prepare for the launch of Permit to Purchase, we want to make sure we have everything in place. State law mandates that a handgun qualified purchaser permit is required to purchase handguns. To make sure we can do this we need to first register instructors for the Firearms Training Course giving them the ability to provide this required training to the citizens of Delaware. "Firearms Training Course" means a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and Regulations established by SBI. To obtain a handgun qualified purchaser permit, an applicant must complete a firearms training course within the 5 years prior to application or meet one of the exemptions. The website for Permit to Purchase has been developed and can be accessed utilizing www.dsp.delaware.gov. Starting today, October 6, 2025 the website can be accessed for registration and approval for those wanting to provide instruction for the required training and safety course. DSP will be releasing numerous public announcements reference this but please spread the word, anything we can do to avoid delays in issuing permits helps. Again, instructors can register by accessing the State of Delaware website at www.dsp.delaware.gov click on the Public Info tab, and then select the link to Firearms. This website provides them further information on the requirements to be an instructor for Permit to Purchase. You can advise them the course of instruction is the same as the CCDW program but legally requires a block of instruction on suicide prevention.

Permit to Purchase has the following phone number and email address assigned to it:

Phone Number: 302-741-2800

Email: DSP_SBIP2PMail@delaware.gov

We have a responsibility to educate Delawareans about the process. DSP is going to do some of this through public announcements and providing information brochures to law enforcement for the public to obtain. We also hope you can educate them as well and direct them to the website for more information. As important details become available, we will keep everyone informed. It's important to me that we, DSP, continue to maintain a professional working relationship with our FFL's effected by these changes to state law. One of the best ways to do this is keeping everyone informed as we move towards the release of these programs. Thank you.

Chris

**Lt. Christopher Popp #274 | Delaware State Police FTAP**

**Firearms Transaction Approval Program**

600 S. Bay Rd, Dover, DE 19901

**App146**

Phone: Office: 302.741.2878 Cell: 302.222.4705

Email: christopher.popp@delaware.gov

# EXHIBIT F

# delaware online

NEWS

# Delaware governor signs 'permit to purchase' gun bill into law, already facing legal challenge



**Esteban Parra**
Delaware News Journal

May 16, 2024 · Updated May 17, 2024, 11:28 a.m. ET

Gov. John Carney signed a "permit to purchase" handgun bill into law Thursday afternoon, which advocates of the legislation say will reduce gun violence across Delaware.

The law, which already faces a lawsuit less than four hours after it was signed, will require people to receive a permit and complete gun safety training before purchasing a handgun in Delaware.

"It's beyond my comprehension somebody could pick up a gun and shoot somebody with it, but it happens — oftentimes for no apparent reason," said Carney, who was flanked by lawmakers who sponsored the bill, gun violence survivors and gun safety advocates. "It's sad, but if you can prevent them from picking up a gun in the first place then we've got a chance."

The new law won't take effect for 18 months, giving departments time to prepare for implementation and legislators the opportunity for additional enhancements.

"Moms Demand Action volunteers like me have been advocating for our lawmakers to enact permit-to-purchase into law for years, and we're grateful to Governor Carney and our House and Senate gun sense champions who made it happen today," Luann D'Agostino Manley, a volunteer with the Delaware chapter of Moms Demand Action, said in a statement following the signing. "With Delaware's gun

**App149**

homicide rate still higher than the national average, we need to use every tool available to reduce gun violence and keep our communities safe – including this life-saving measure."

The lawsuit, filed Thursday by five plaintiffs including Delaware attorney Thomas S. Neuberger, the Delaware State Sportsmen's Association Inc. and the Bridgeville Rifle and Pistol Club, challenges the constitutionality of the new law and is focused on "vindicating fundamental civil rights being trampled on by overbearing legislation that defies controlling legal authority."

**More:** Lawsuit challenging Delaware's permit to purchase law says new rule is racist, unsafe

## What does the new law entail?

Once the law is in place, applicants will have to pay for fingerprinting and the required training. There will be no fee to obtain the permit, according to Senate Substitute 1 for Senate Bill 2.

The permits will be valid for two years and the training course for five years. The State Bureau of Identification has up to 30 days to issue a permit and the law creates a registry of all lawful handgun transfers.

Carney said his understanding is there is a registration process, but that it's not permanent.

"There are reasons to have some level of permanency so that you can check when somebody is a suspect for some kind of crime," Carney said. "I do hear that complaint and I know for those who are serious gun advocates, that's one of their biggest complaints."

Those who supported the legislation argued the measure would cut down on straw purchases of guns, as well as homicides and suicides. Lawmakers who opposed the bill argued the regulations violate the Second Amendment right to keep and bear

arms and warned that constitutional challenges would be brought against the legislation if passed.

State lawmakers have worked on the bill since 2019, and its sponsors and supporters have reminded opponents that they've had years to work across the aisle to make the bill more palatable.

**More:** Delaware Senate passes 'permit to purchase' handgun bill along party lines

## Expect legal challenge

Delaware Republicans have come out in opposition to the bill, mirroring resistance by gun rights advocates to place restrictions on gun ownership.

The National Rifle Association, on its website earlier this week, called the legislation "extreme" and said it would impose "a Maryland-style 'handgun qualified purchase card' and a handgun transfer registry, creating a perpetual cycle of costs and delays to maintain your ability to purchase a handgun."

The U.S. Court of Appeals for the 4th Circuit in Virginia overturned Maryland's 11-year-old law in November, claiming the handgun licensing statute violated the Second Amendment — like Delaware's law, Maryland's required fingerprinting and firearms training.

The ruling is one of the first to overturn state gun laws following the U.S. Supreme Court's 2022 decision that gun regulations must be "consistent with this nation's historical tradition of firearm regulation" to survive court challenges.

**More:** Supreme Court's Second Amendment decision demands courts look to history, tradition

That same appeals court agreed in January to reconsider the case. That matter is pending.

"I welcome those challenges," Delaware Attorney General Kathy Jennings said after the bill was signed, but before the filing of the lawsuit challenging the state's new

**App151**

permit to purchase law. "We haven't lost one of them yet."

While watching what the 4th Circuit does, Jennings said that court's rulings have not had "the final say on constitutionality within their jurisdiction."

*Send tips or story ideas to Esteban Parra at (302) 324-2299 or eparra@delawareonline.com.*

App152

# EXHIBIT G



# Delaware State Police

# <u>Permit to Purchase</u>

## Firearms Training Course Guidelines

**I.    Purpose**

    A.    To establish and maintain firearms training course guidelines compliant with 11 Del. C. § 1448D.

**II.    Definitions**

    A.    "Firearms Training Course" means a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and Regulations established by SBI.

    B.    "Handgun" means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand.

    C.    "POST" means the Police Officer Standards and Training Commission.

    D.    "SBI" means the State Bureau of Identification within the Division of State Police.

**III.    Authority**

    A.    11 Del. C. § 1448D mandates that a handgun qualified purchaser permit is required to purchase handguns.  To obtain a handgun qualified purchaser permit, an applicant must complete a firearms training course within the 5 years prior to application or meet one of the exemptions listed in 11 Del. C. § 1448D (g). Delaware Code mandates that SBI must investigate all applications for handgun

**App154**

qualified purchaser permits and may adopt regulations to administer, implement and enforce this statute.

**IV.    Course Requirements**

    A.    Approved training courses must be sponsored by one of the following entities:

        1.    a federal, state, county, or municipal law-enforcement agency

        2.    a college

        3.    a nationally recognized organization that customarily offers firearms training

        4.    a school with instructors certified by a nationally recognized organization that customarily offers firearms training

    B.    Approved training courses must provide instruction on the following topics:

        1.    knowledge and safe handling of firearms

        2.    safe storage of firearms and child safety

        3.    knowledge and safe handling of ammunition

        4.    safe storage of ammunition and child safety

        5.    safe firearms shooting fundamentals

        6.    live fire shooting exercises conducted on a firearms range with a minimum expenditure of 100 rounds of ammunition

        7.    identification of ways to develop and maintain firearm shooting skills

        8.    federal and state laws regarding the lawful purchase, ownership, transportation, use, and possession of firearms

        9.    Delaware law regarding the use of deadly force

**App155**

      10.    techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution

      11.    suicide prevention

C.    Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.

D.    Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.

E.    Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor.  The following supporting documents must also be submitted:

      1.    A copy of a valid firearms instructor certificate showing the expiration date.

      2.    The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.

      3.    An instructor identification card

      4.    Training course syllabus

**App156**

JS 44  (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., el al.

## DEFENDANTS

JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security, et al.

**(b)** County of Residence of First Listed Plaintiff    NEW CASTLE COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    NEW CASTLE COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Francis G.X. Pileggi, Esq.(No. 2624); Keith A. Walter, Esq. (No. 4157) Lewis Brisbois Bisgaard & Smith LLP, 500 Delaware Ave., Suite 700 Wilmington, DE 19801; Tel: (302) 985-6000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☒ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed From State Court
- ☐ 3 Remanded From Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation – Transfer
- ☐ 8 Multidistrict Litigation – Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1651, 2201, 2202; 42 U.S.C. § 1983 and 1988

Brief description of cause:
Challenge constitutionality of state statute

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   MaryEllen Norieka
DOCKET NUMBER   1:24-cv-00590-MN

DATE
11/03/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Francis G.X. Pileggi (Bar No. 2624)

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**App157**

JS 44 Reverse (Rev. 05/18)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

App158

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., el al.

## DEFENDANTS

JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security, et al.

**(b)** County of Residence of First Listed Plaintiff    NEW CASTLE COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    NEW CASTLE COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Francis G.X. Pileggi, Esq.(No. 2624); Keith A. Walter, Esq. (No. 4157)
Lewis Brisbois Bisgaard & Smith LLP, 500 Delaware Ave., Suite 700
Wilmington, DE 19801; Tel: (302) 985-6000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/Exchange |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☒ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed From State Court
☐ 3 Remanded From Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation – Transfer
☐ 8 Multidistrict Litigation – Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1651, 2201, 2202; 42 U.S.C. § 1983 and 1988

Brief description of cause:
Challenge constitutionality of state statute

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE    MaryEllen Norieka    DOCKET NUMBER    1:24-cv-00590-MN

DATE
11/03/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Francis G.X. Pileggi (Bar No. 2624)

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

**App159**

JS 44 Reverse (Rev. 09/19)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**App160**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., | : : : : : : : : : : |
| Plaintiffs. | : : |
| v. | : Civil Action No. _____ : |
| JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, | : : : : : : : |
| Defendants. | : : |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR
<u>EXPEDITED INJUNCTIVE RELIEF</u>**

|  |  |
|---|---|
| | Francis G.X. Pileggi (No. 2624) |
| | Keith A. Walter (No. 4157) |
| OF COUNSEL: | LEWIS BRISBOIS BISGAARD & SMITH LLP |
| Joseph G.S. Greenlee | 500 Delaware Ave., Suite 700 |
| National Rifle Association of | Wilmington, DE 19801 |
| America – Institute for Legislative | (302) 985-6000 |
| Action | Francis.Pileggi@LewisBrisbois.com |
| 11250 Waples Mill Road | Keith.Walter@LewisBrisbois.com |
| Fairfax, VA  22030 | |
| | *Counsel for Plaintiffs* |

Dated:  November 3, 2025

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   SUMMARY OF ARGUMENT .................................................................................. 4

III.  STATEMENT OF FACTS ....................................................................................... 6

IV.   LEGAL STANDARD ............................................................................................. 10

V.    ARGUMENT ......................................................................................................... 11

    A.  Plaintiffs are Likely to Succeed on the Merits Because Absent the Infrastructure, the Permit Bill Operates as a Total Handgun Ban ................................................ 11

    B.  Plaintiffs Will Suffer Irreparable Harm that Threatens to Moot the Case Without an Injunction ...................................................................................................... 14

    C.  Public Interest and Balance of Hardships Strongly Favor Plaintiffs .................... 17

VI.   CONCLUSION ....................................................................................................... 17

166395300.1

i

**App162**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) .......................................................................................2, 10, 16

*Del. State Sportsmen's Ass'n v. Garvin*,
  2020 WL 6813997 (Del. Super. Nov. 18, 2020)...................................................................13

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)......................................................................................2, 4, 11, 12, 14

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ..........................................................................................................4

*Hope v. Warden York Cnty. Prison*,
  972 F.3d 310 (3d Cir. 2020)....................................................................................................10

*K.A. v. Pocono Mt. Sch. Dist.*,
  710 F.3d 99 (3d. Cir. 2013) .....................................................................................................17

*Lara v. Comm'r Pa. State Police*,
  125 F.4th 428 (3d Cir. 2025) ...................................................................................................11

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010)....................................................................................................................4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022)...................................................................................................................4, 11

*Range v. AG United States*,
  124 F.4th 218 (3d Cir. 2024) ...................................................................................................11

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017)..................................................................................................2, 10

*Rigby v. Jennings*,
  630 F. Supp. 3d 602 (D. Del. 2022).........................................................................................14

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010).........................................................................................................4

**Constitution and Statutes**

U.S. Const. amend. II.................................................................................................................1, 4

11 *Del. C.* § 1448 ........................................................................................................................*passim*

11 *Del. C.* § 1448A ......................................................................................................................*passim*

11 *Del. C.* § 1448D ......................................................................................................................*passim*

Del. Code Ann. tit. 29, § 10115(a).............................................................................................. 12

Del. Code Ann. tit. 29, § 10102 .................................................................................................. 12

**Other Authorities**

Fed. R. Civ. P. 65 .......................................................................................................................... 1

**App164**

## I.    INTRODUCTION

The State enacted a law eighteen months ago prohibiting the purchase and sale of handguns without a permit and imposing criminal penalties for noncompliance. Yet it has failed to establish the infrastructure necessary to issue  permits by the date the law is to be enforced. Plaintiffs seek expedited injunctive relief pursuant to Federal Rule of Civil Procedure 65 to enjoin Defendants from enforcing the statute.

Senate Substitute 1 for Senate Bill 2 ("the Permit Bill") was enacted on May 16, 2024.[1] The Permit Bill requires Delaware citizens, including Plaintiffs, to obtain a permit to purchase commonly used handguns and imposes criminal penalties for noncompliance. This violates the Second Amendment.[2] The State has also failed to put the necessary infrastructure in place to enable Plaintiffs[3] to obtain the required permit. As a result, when the Permit Bill becomes enforceable on November 16, 2025, it will result in an unconstitutional statewide total ban on the purchase and sale of handguns for an indeterminate amount of time. Plaintiffs therefore seek relief to immediately halt the Permit Bill's planned November 16, 2025 enforcement date, when criminal penalties will be applicable.

A party seeking expedited injunctive relief must make a threshold showing that there is (1) a likelihood of success on the merits; (2) a prospect of irreparable injury if the injunction is not granted; (3) the balance of harms favors issuance of the injunction; and (4) that the injunction is in

---

[1] A copy of the Permit Bill is attached at Ex. A to Plaintiffs' Complaint and is also available at https://legis.delaware.gov/BillDetail/130284.

[2] Plaintiffs make other claims in their Complaint that are not the subject of this narrow request for injunctive relief.

[3] All unconstitutional requirements that the Permit Bill places upon Plaintiffs also apply to other similarly situated Delawareans and further references to violations to Plaintiffs in this brief incorporate all similarly situated Delawareans.

166395300.1                                              1

**App165**

the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).  Plaintiffs meet each of these threshold prerequisites.

Plaintiffs are likely to succeed on the merits because the Permit Bill's November 16, 2025 commencement date, coupled with the State's failure to have the infrastructure in place to issue the required permits to buy a handgun, amounts "to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society…" *District of Columbia v. Heller,* 554 U.S. 570, 628-29 (2008). The Supreme Court has long held that total bans of handguns "fail constitutional muster." *Id*.

With respect to irreparable harm, the Third Circuit in *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec*., 108 F.4th 194, 203-05 (3d Cir. 2024), recently held that because irreparable harm is not presumed in Second Amendment challenges, plaintiffs, relying on the presumption, did not demonstrate irreparable harm based on the "scant" evidence before the Court. The Court made clear, however, it was not "hold[ing] that Second Amendment harms, or constitutional harms generally, cannot be irreparable." *Id.* at 205. The facts here are distinguishable.

The instant record plainly demonstrates Plaintiffs will suffer irreparable harm absent injunctive relief.  First, unlike the plaintiffs in *Del. State Sportsmen's Ass'n.,* Plaintiffs do not rely on a presumption of irreparable harm. Second, the record here is replete with evidence demonstrating imminent and irreparable injury. For example, the Permit Bill's impending total ban on handgun purchases and sales deprives Plaintiffs of the ability to protect themselves and their families for an indeterminate duration and imposes criminal liability for buying or selling a handgun without a permit—but the State has not implemented the infrastructure needed to issue the required permits.  It is difficult to imagine a harm more irreparable than the loss of the ability

2

**App166**

to defend one's life, and the lives of loved ones for any period of time. That loss in this matter is open-ended because the State cannot establish an exact date that an eligible person will be able to obtain and possess the permit needed to buy a handgun. The net result of this Kafkaesque dystopia is a total ban on the sale or purchase of handguns.

There is additional irreparable injury, particularly for certain of the Plaintiffs who sell handguns because the Permit Bill also makes the purchase and sale of common handguns without a permit a crime. Accordingly, the indefinite ban on handgun sales—until permits are available— leaves Plaintiff-sellers with a Hobson's choice: (1) abide by the State's ban on handgun sales and go out of business; or (2) sell handguns without the required, but unavailable permits, and go to jail and pay fines.[4]

Injunctive relief to stop the planned November 16, 2025 commencement date of the Permit Bill is therefore necessary to preserve the status quo and prevent the irreparable injury that will result from Plaintiffs' inability to defend themselves and their families, their loss of liberty, their freedom of commerce, or inability to sell firearms in their stores. A favorable final judgment will be useless if Plaintiffs are dead because they cannot defend themselves, or in jail, and/or out of business as a result of the statewide total ban on handgun purchases and sales.

Finally, the balance of harms and public interest factors also weigh in favor of injunctive relief. The State is not harmed from being restrained from enforcing an unconstitutional law, whereas Plaintiff face ongoing deprivation of fundamental rights. The public interest likewise favors an injunction as the public always has a strong interest in the protection of constitutional rights.

---

[4] Even in a scenario where all requisite processes and procedures needed to implement the Permit Bill are in place, the statute does not provide any consequences, remedy or cure if the State fails to issue the permit within the mandated 30-day timeframe.

## II.    SUMMARY OF ARGUMENT

The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The United States Supreme Court has ruled that the Second Amendment protects the fundamental right to self-defense inside and outside the home. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022). As "the quintessential self-defense weapon," the Supreme Court has held that a total ban on handguns "fail[s] constitutional muster" under any standard. *Heller*, 554 U.S. at 628-29.

The Third Circuit recognizes that this fundamental right necessarily involves the right to not only possess, but to purchase commonly used arms such as handguns. *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (rev'd on other grounds by *Bruen*, 597 U.S. 1) ("Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment."); *Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 227 (3d Cir. 2021) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704) ("This 'implies a corresponding right to acquire and maintain proficiency' with common weapons.").

The Permit Bill becomes enforceable no later than November 16, 2025, just days from now.[5] It bans law-abiding citizens from purchasing handguns for self-defense and other lawful purposes without a permit. *See* 11 *Del. C.* § 1448D.  Therefore, Delawareans, including Plaintiffs,

---

[5] Section 5 of SS 1 for SB 2 provides that it is to be implemented the earlier of the following:  "(1) Eighteen months from the date of the Act's enactment [or] (2) The date of publication in the Register of Regulation of a notice by the Director of the State Bureau of Identification that the necessary processes have been established for implementation of the handgun qualified purchaser permit under Section 1 of this Act." Governor Carney signed the Permit Bill into law on May 16, 2024 and Plaintiffs are unaware of any notice by the Director that *all* the necessary processes have been established for implementation.  Accordingly, SS 1 for SB 2 will become enforceable on November 16, 2025, which is 18 months from the date of enactment.

4

who wish to purchase a handgun after November 15th, will need to have the required permit.[6] The Permit Bill also criminalizes permit-less purchase and sale of handguns. It purports to authorize the Delaware State Police or a local law-enforcement agency to "take action to ensure surrender or removal" of any permit-less handguns. *Id.* § 1448D(l)(3). It also provides for criminal prosecution of "transferors" that sell or deliver a handgun to a person without a permit. *Id.* § 1448A(h).

Further, although the Permit Bill empowered the State Bureau of Investigation ("SBI") to "adopt regulations to administer, implement and enforce [the Permit Bill]" nearly 18 months ago, the State has failed to put in place all the necessary infrastructure for Plaintiffs to obtain a permit. *Id.* §1448D(q). In their feckless rush to implement the Permit Bill on November 16th, the Defendants have also either knowingly ignored, or failed to account for the fact that regulations that the State and/or SBI have deemed necessary to effectuate the permit application process are subject to Delaware's Administrative Procedures Act ("APA"). The APA's regulation process takes several months to complete and cannot be completed by November 16, 2025 without ignoring the law.

By requiring a permit to buy or sell a handgun but failing to provide the means for Plaintiffs to obtain it by the November 16th commencement date, the State has effectively instituted a statewide total ban on the purchase and sale of handguns, in violation of the Second Amendment. The emergency relief that Plaintiffs seek is therefore necessary to preserve the status quo, prevent

---

[6] Although the Permit Bill provides that "[a] person who holds a valid license to carry concealed deadly weapons. . .is not required to apply for a handgun qualified purchaser permit under this section before purchasing a handgun," elsewhere it states "[a] transferor may not sell, transfer, or deliver from inventory a handgun to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, unless the buyer or transferee has a valid handgun qualified purchaser permit issued by the State Bureau of Identification under §1448D of this title"—creating a textual contradiction. *See* 11 *Del. C.* §§ 1448D(d)(1), 1448A(a)(2).

166395300.1                                              5

**App169**

the irreparable injury that will result from this unconstitutional total ban, and ensure that the action is not rendered useless by Plaintiffs' death, jailing, or, in the case of Plaintiff-sellers, being unable to sell guns in their business.

### III.    STATEMENT OF FACTS

The Permit Bill, set to be enforced beginning on November 16, 2025, bans law-abiding Delawareans, including Plaintiffs, from purchasing handguns for self-defense and other lawful purposes without a permit, and criminalizes permit-less purchase and sale of handguns. *See* 11 *Del. C.* §§ 1448A(a)(2), 1448A(h).

The permit applications must be made available by the SBI and licensed dealers, and completed applications must be submitted to the SBI. 11 *Del. C.* §§ 1448D(e), 1448D(h).[7] The SBI is charged with "investigating" the application. *Id.* § 1448D(h). This "investigation," at minimum, consists of the following:

(1) The SBI shall take the fingerprints of each person who applies for a handgun qualified purchaser permit  and compare the fingerprints with any records of fingerprints in this State. The SBI shall conduct a search of the  Delaware Criminal Justice Information System to determine if the applicant is prohibited under the law of this State or federal law from purchasing or possessing a firearm. The SBI shall submit the person's fingerprints to the Federal  Bureau of Investigation with a request that a search of the National Instant Criminal Background Check System be  conducted.

(2)a. In investigating the application, the SBI shall contact the local law-enforcement agencies of the county or municipality in which the person resides and inquire as to any facts and circumstances relevant to the person's  qualification for a handgun qualified purchaser permit.

b. If an applicant has resided in the applicant's county or municipality of residence for less than 5 years,  the SBI shall contact the local law enforcement agency of each county or municipality in which the applicant has  resided for the previous 5

---

[7] The Permit Bill requires an applicant to provide an exhaustive list of information of questionable justification, including race, ethnicity, national origin, and a physical description including distinguishing characteristics. 11 *Del. C.* § 1448D(d)(1).

**App170**

years and inquire as to any facts and circumstances relevant to the person's qualification for a handgun qualified purchaser permit.

*Id.* § 1448D(h)(1)-(2)(b).

Applicants must also must attend a certified "firearms training course," and fire at least 100 rounds of ammunition. *Id.* § 1448D(f)(4), (f)(4)(f). The State, SBI and the Delaware State Police have decreed that to be eligible to administer the certified "firearms training course" individual and/or entity "firearms instructors" must separately register with and be approved by the Delaware State Police and SBI. The Delaware State Police have issued so-called "Firearm Training Couse Guidelines" for prospective firearms instructors that contain requirements for acceptance as a firearms instructor that are not found in the Permit Bill.

These "guidelines" are actually regulations subject to the APA and include mandates that:

> C.    Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.
> D.    Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.
> E.    Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor. The following supporting documents must also be submitted:
> 1.    A copy of a valid firearms instructor certificate showing the expiration date.
> 2.    The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.
> 3.    An instructor identification card
> 4.    Training course syllabus

*See* Ex. A, a copy of the Firearm Training Course Guidelines, attached to the Declaration of Keith Walter in Support of Plaintiffs' Motion for Expedited Injunctive Relief ("Walter Decl.) at § IV.C.–E.4.

The Permit Bill's firearms training course also mandates the following instruction:

The firearms training course must consist of at least all of the following:

**App171**

    <u>a.</u>      Instruction regarding knowledge and safe handling of firearms.
    <u>b.</u>      Instruction regarding safe storage of firearms and child safety.
    <u>c.</u>      Instruction regarding knowledge and safe handling of ammunition.
    <u>d.</u>      Instruction regarding safe storage of ammunition and child safety.
    <u>e.</u>      Instruction regarding safe firearms shooting fundamentals.
    <u>f.</u>      Live fire shooting exercises conducted on a range, including the expenditure of a minimum of 100 rounds of ammunition.
    <u>g.</u>      Identification of ways to develop and maintain firearm shooting skills.
    <u>h.</u>      Instruction regarding federal and state laws pertaining to the lawful purchase, ownership, transportation, use, and possession of firearms.
    <u>i.</u>      Instruction regarding the laws of this State pertaining to the use of deadly force.
    <u>j.</u>      Instruction regarding techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution.
    <u>k.</u>      Instruction regarding suicide prevention.

11 *Del. C.* § 1448D(f)(4)(a)–(k).

The Permit Bill purports to allow the State 30 days to review and approve or deny an application. § 1448D(h). There is, however, no provision, or any other procedure, that provides any relief or recourse for a permit applicant should the State fail to issue the permit within 30 days from the receipt of the application.

Now, on the eve of the commencement date of the Permit Bill, the State has failed to put the personnel and infrastructure in place necessary to obtain a permit. For example on October 17, 2025, the Delaware State Police made an announcement on its website regarding the upcoming launch of the Permit Bill. *See* Walter Decl., Ex. B. While the announcement "encourages Delaware residents planning to buy a handgun to visit the Permit to Purchase website to learn about the training and documentation requirements associated with the new law," the announcement notes that the registration link to apply for the required permit is "inactive."[8] *Id.* at page 2.

---

[8] As of at least October 31, 2025, the Delaware State Police "Permit to Purchase" website (https://dsp.delaware.gov/permit-to-purchase) has an active link to an application, but other sections of that website are not fully operational. For example, the "Link to Permit to Purchase regulations" includes a parenthetical that reads "to be developed." *See* Walter Decl., Ex. C at page 3.

**App172**

An October 6, 2025 email from Christopher Popp of the Delaware State Police to Federal Firearms Licensees in Delaware further confirms the necessary infrastructure to implement the Permit Bill is not in place. *See* Walter Decl., Ex. D.  In that email, Lieutenant Popp notes that the Firearm Transaction Approval Program ("FTAP") "has been delayed for some time…[due to] critical errors that needed to be addressed" and "[w]e don't want to put out a program that is not effective and make sure it's thoroughly tested thoroughly tested for accuracy." Lieutenant Popp also states that "the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy."

As of the filing of this motion, it appears then, that the State and its agencies do not currently possess the ability to grant a permit by the date that enforcement will commence. It would also appear that the already unconstitutional 30-day waiting period Plaintiffs face for obtaining a permit, and thus for buying a handgun, will in reality be far longer and even indefinite.  Plaintiffs then also have no recourse to challenge these demonstrable delays.

Further, in the State's frantic attempt to "finalize" several regulations that it or its agencies deem necessary to implement the Permit Bill, including those regarding firearm instructor approval, they have either knowingly ignored or failed to account for APA procedure, rendering those regulations unenforceable on November 16th.[9] It is also unclear how the extra-statutory

---

[9] The "Firearm Training Course Guidelines" are only one such regulation subject to the APA Plaintiffs are aware of that the State and its agencies have ignored to date.  Plaintiffs are aware of the "guidelines" because they have been posted online by the Delaware State Police. Given the State's poor planning and the fact that the Permit Bill empowered SBI" to "adopt regulations to administer, implement and enforce [the Permit Bill]," the State and its agencies will no doubt issue more eleventh-hour regulations disregarding the APA in order to give the appearance that the Permit Bill has been properly implemented—it has not been and cannot be if APA procedure has been ignored.

"Firearm Training Course Guidelines" and approval process are delaying the actual availability of "approved" training courses.

One "approved" firearms trainer reported on October 28, 2025, that he cannot offer a course until November 22, 2025, six days after the effective date. *See* Cris Barrish*, Ready or not, Delaware law requiring permit to buy handgun takes effect next month*, WHYY.ORG (https://whyy.org/articles/delaware-handgun-permit-law-background-check/) attached to the Walter Decl., Ex. E at page 4. In short, the State's infrastructural shortcomings and poor planning render permits unobtainable for Plaintiffs at the time of the Permit Bill's commencement date. Without a permit, the sale of purchase of handguns are effectively banned in Delaware.

## IV.    LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief must make a threshold showing that there is (1) a likelihood of success on the merits and (2) a prospect of irreparable injury if the injunction is not granted. *Reilly v. City of Harrisburg*, 858 F.3d at 176.  These two factors are the "most critical." *Del. State Sportsmen's Ass'n*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  In addition, "the district court . . . should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.*  These factors merge, where, as here, the Government is the opposing party. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020).

166395300.1                                           10

**App174**

## V.    ARGUMENT

### A. Plaintiffs are Likely to Succeed on the Merits Because Absent the Infrastructure, the Permit Bill Operates as a Total Handgun Ban

In reaffirming *Heller* and rejecting a "means-end scrutiny" evaluation of a Second Amendment claim, the Supreme Court held, in *Bruen*, 597 U.S. at 24, that:

> …[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen's* reaffirmation of *Heller* "announced a new two-step analytical approach. At the first step, a court determines whether 'the Second Amendment's plain text covers an individual's conduct[.]' If the text applies to the conduct at issue, 'the Constitution presumptively protects that conduct.'" *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 434 (3d Cir. 2025) (internal citations omitted).

It is undisputed that Plaintiffs as ordinary Delawareans are part of "the people." *Bruen*, 597 U.S. at 31; *see also Range v. AG United States*, 124 F.4th 218, 226 (3d Cir. 2024) (quoting *Heller*, 554 U.S. at 580) ("[*Heller*] explained that "the people" as used throughout the Constitution 'unambiguously refers to all members of the political community, not an unspecified subset.'"). It is also undisputed that "handguns are weapons 'in common use' today for self-defense." *Bruen*, 597 U.S. at 32.

The Supreme Court's "historical analysis sufficed to show that the Second Amendment did not countenance a 'complete prohibition' on the use of 'the most popular weapon chosen by Americans for self-defense in the home.'"—the handgun. *Bruen,* 597 U.S. at 22 (quoting *Heller*,

**App175**

554 U.S. at 629). It remains, that a total ban on handguns "fail[s] constitutional muster" under any standard. *Heller*, 554 U.S. at 628-29.

As of this filing, the State has not put in place the infrastructure necessary for an applicant to complete the training required to be granted a permit, or for the State itself to grant a permit, by the November 16, 2025 enforcement date, while still requiring that an individual have an unobtainable permit in order to purchase a handgun.

The State and SBI has also failed to initiate the necessary, months-long APA procedures to pass regulations it and its agencies have determined are necessary to the Permit Bill's implementation, demonstrating that the Permit Bill is nowhere close to functional. Under the APA, [w]henever an agency proposes to formulate, adopt, amend or repeal a regulation," that agency:

> [S]hall describe the nature of the proceedings including a brief synopsis of the subject, substance, issues, possible terms of the agency action, a reference to the legal authority of the agency to act and reference to any other regulations that may be impacted or affected by the proposal

Del. Code Ann. tit. 29, § 10115(a).

This notice to the public also requires that the agency

> …[S]tate the manner in which persons may present their views: (i) if in writing, of the place to which and the final date by which such views may be submitted; or (ii) if at a public hearing, the date, time and place of the hearing. If a public hearing is to be held, such public hearing shall not be scheduled less than 20 days following publication of notice of the proposal in the Register of Regulations.

*Id*.

The State's and its agencies' mad dash to implement the means and infrastructure to grant permits has led to the promulgation of numerous regulations (even if mislabeled with another name), subject to the APA—without following APA procedure, including regulations regarding firearms training courses. "Agency" is defined in the APA as "any authority, department, instrumentality, commission, officer, board or other unit of the state government authorized by

166395300.1                                    12

**App176**

law to make regulations, decide cases or issue licenses." Del. Code Ann. tit. 29, § 10102. The APA

therefore applies to SBI and the Delaware State Police. "Regulation" is defined in the APA as "any

statement of law, procedure, policy, right, requirement or prohibition formulated and promulgated

by an agency as a rule or standard, or as a guide for the decision of cases thereafter by it or by any

other agency, authority or court." *Id.*

The "Firearm Training Course Guidelines" for prospective firearms instructors issued by

SBI and the Delaware State Police are "regulations" under the APA that consist of "procedure,

policy, right, [and/or] requirement" formulated by an agency. The Permit Bill does not provide for

application and approval for firearm trainers. The SBI and Delaware State Police have, then, taken

it upon themselves to issue regulations governing Firearm Training Courses, including that:

> C.    Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.
> D.    Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.
> E.    Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor.  The following supporting documents must also be submitted:
> 1.    A copy of a valid firearms instructor certificate showing the expiration date.
> 2.    The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.
> 3.    An instructor identification card
> 4.    Training course syllabus

*See* Walter Decl., Ex. A at § IV.C.-E.4. (2025).

The SBI and the Delaware State Police may not promulgate these regulations regarding

Firearms Training Courses required to obtain a permit without observing the APA's months-long

comment and review process. *See, e.g., Del. State Sportsmen's Ass'n v. Garvin*, 2020 WL 6813997,

at *10 (Del. Super. Nov. 18, 2020) (Holding that DNREC cannot implement extra-statutory

166395300.1                                         13

**App177**

"policies and requirements, including the disputed language in the Hunting Guide, without observing the comment and review process of the APA.").

Plaintiffs are unaware of any notice or hearing, required by the APA, being held in relation to the "Firearm Training Course Guidelines" or any other regulation related to the Permit Bill. Absent such required notice and hearing the State and its agencies are either: (1) far behind on meeting their requirement to implement regulations necessary to establish the Permit Bill's infrastructure; or (2) they intend to defy the APA.

The State's Permit Bill infrastructural shortcomings and failures result in an open-ended ban on the purchase and sale of handguns in the State of Delaware. The November 16, 2025 commencement date coupled with the above-referenced failures mean that Plaintiffs are required to apply for and be granted a permit in order to purchase a handgun, but the State is not in a position to grant any such permits.

The net result will be that Plaintiffs cannot legally buy or sell a handgun in Delaware on the commencement date for enforcement of the Permit Bill. One cannot exercise his right to keep something if he is prohibited from acquiring it. *See Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022) (citing *Ezell v. City of Chicago*, 651. F.3d 684, 704 (7th Cir. 2011)) (holding that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use…"); *see also Heller*, 554 U.S. at 582. This total ban violates the Second Amendment.

### B. Plaintiffs Will Suffer Irreparable Harm that Threatens to Moot the Case Without an Injunction

The State's open-ended total handgun ban will cause irreparable harm to the Plaintiffs as detailed in the Declarations of the following Plaintiffs:  Thomas Neuberger, Jeff Hague (on behalf of the Delaware Sportsmen's Association, Inc. ("DSSA"), and Bruce Smith in support of Plaintiffs

**App178**

Motion concurrently submitted herewith and fully incorporated herein by reference (hereinafter "Neuberger Decl.," "Hague Decl.," and "Smith Decl."). For example, Neuberger is a 78 year-old Delaware resident that does not presently own a handgun, but intends to purchase one shortly for self-defense after the Permit Bill's implementation on November 16th. *See* Neuberger Decl., ¶¶2, 19, 24, 25. Because of his age, area criminal statistics, and general civil unrest in this Country, he reasonably fears for his safety and the safety of his wife. *Id.*, ¶¶20, 21. Indeed, in the past, Neuberger has been threatened with physical harm due to his pro bono civil rights work. *Id.*, ¶20.

Jeff Hague is the current president of the DSSA, is aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented on November 16, 2025. *See* Hague Decl., ¶¶4, 17. Some of those members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones are attacked. Hague Decl., ¶¶17.

Not being able to purchase a handgun for self-defense for any duration of time, let alone an unknown period of time that could very well be indefinite, puts Neuberger and those DSSA members who do not presently own a handgun at unnecessary risk of bodily harm and even death should they encounter an attacker wanting to harm them or their loved ones, or be put in a situation where such harm may occur such as an home invasion. It is hard to imagine a harm more severe and irreparable than one's life or the life of a family member.

The Permit Bill also causes irreparable injury to firearm sellers commonly known as FFLs. Smith is the owner of BKK Firearms ("BKK), a FFL. *See* Smith Decl., ¶2. Because of the indefinite handgun ban resulting from the implementation of the Permit Bill as described above, BKK will not be able to sell handguns, which make up 90 percent or more of its sales. *Id.*, ¶¶14-19. The Permit Bill also provides for criminal liability to those that sell or deliver a handgun to a person

**App179**

without a permit upon its implementation. *See* 11 *Del. C.* § 1448A(h). Accordingly, if the implementation of the Permit Bill is allowed to go forward on November 16th, BKK and Smith will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability. Smith Decl., ¶19. Jeff Hague is also aware of and spoken with other FFLs facing the same outcome. *See* J. Hague Decl., ¶¶20-21. Bankruptcy and loss of liberty both constitute irreparable harm.

The Permit Bill also authorizes law enforcement to take action upon Plaintiffs for exercising their Second Amendment Rights, subjecting them to significant fines and incarceration. *See* 11 *Del. C.* § 1448D(l)(3). Such action results in additional irreparable harm to Plaintiffs. *See* Neuberger Decl., ¶30 ("As a practicing civil rights attorney, I cannot risk being prosecuted and having law enforcement "take action" against me if I were to violate the Permit Bill because that would adversely impact my ability to practice law and provide legal services to those underserved individuals I seek to represent.").

When the Permit Bill goes into force, Plaintiffs, their members, and other ordinary law-abiding citizens who reside in Delaware, will have their lives and the lives of their loved ones put in unnecessary jeopardy, and be subject to the loss of business, law enforcement action, criminal prosecution, incarceration, and loss of their Second Amendment rights because they wish to obtain a handgun. These harms cannot be compensated through monetary damages, and threaten to moot the case, thereby satisfying the Third Circuit's holding regarding irreparable harm set forth in *Del. State Sportsmen's Ass'n,* 108 F.4th at 201 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975)) (holding that irreparable harm may warrant injunctive relief where "…harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable

**App180**

final judgment might well be useless.'"). Thus, the entry of expedited injunctive relief is appropriate.

### C. Public Interest and Balance of Hardships Strongly Favor Plaintiffs

The remaining two factors also strongly favor injunctive relief. The public interest favors Plaintiffs as the "enforcement of an unconstitutional law vindicates no public interest." *K.A. v. Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d. Cir. 2013) (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.")).

The balance of hardships also strongly favors Plaintiffs because Plaintiffs have demonstrated that they are suffering a deprivation of their constitutionally protected rights, under threat of prosecution, and also face the likelihood of being deprived of their ability to protect themselves and their homes.

### VI.    CONCLUSION

The Permit Bill becomes enforceable on November 16, 2025, but the State has failed to implement the necessary infrastructure to allow for (i) obtaining a permit or; (ii) completing mandated training requirements before a permit may be issued. Thus, the permit required to purchase or sell a handgun in Delaware cannot be obtained.

The result of this Kafkaesque dystopia amounts to an unconstitutional total ban on the purchase and sale of handguns as of November 16, 2025. Plaintiffs, therefore, request that the Court grant their motion for injunctive relief to enjoin the Permit Bill's planned November 16,

**App181**

2025 commencement date for enforcement.

<div style="text-align: right">

Respectfully submitted,

LEWIS BRISBOIS
  BISGAARD & SMITH LLP

</div>

OF COUNSEL:
Joseph G.S. Greenlee
National Rifle Association of
  America – Institute for Legislative
  Action
11250 Waples Mill Road
Fairfax, VA  22030

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (No. 2624)
Keith A. Walter (No. 4157)
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com

*Counsel for Plaintiffs*

Dated:  November 3, 2025

18

<div style="text-align: right">

**App182**

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.  :
MARTIN; WILLIAM R. HAGUE, JR.;  :
BRUCE C. SMITH; BRIDGEVILLE   :
KENPO KARATE, INC. d/b/a BKK   :
FIREARMS; DELAWARE STATE    :
SPORTSMEN'S ASSOCIATION, INC;  :
and BRIDGEVILLE RIFLE & PISTOL  :
CLUB, LTD.,           :
               :
   Plaintiffs.       :
               :
  v.           : Civil Action No. _____
               :
JOSHUA BUSHWELLER, in his   :
official capacity as Cabinet Secretary,  :
Delaware Department of Safety and  :
Homeland Security; and COL. WILLIAM :
CROTTY, in his official capacity as  :
superintendent of the Delaware State Police, :
               :
   Defendants.     :

**DECLARATION OF KEITH A. WALTER, JR. IN SUPPORT OF
PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIEF**

I, KEITH A. WALTER, JR., based on my own personal knowledge and under

penalty of perjury under the law of the United States hereby state the following:

  1.  I am a Partner with the law firm Lewis Brisbois Bisgaard & Smith, and

counsel to Plaintiffs.

  2.  I make this Declaration in support of Plaintiffs' Motion for Expedited

Injunctive Relief.

166288407.1

**App183**

3.      Attached at Exhibit A is a publicly available copy of the Delaware State Police Permit to Purchase "Firearms Training Course Guidelines."

4.      Attached at Exhibit B is an October 17, 2025 Delaware State Police public news release regarding "Upcoming Launch of Permit to Purchase Program."

5.      Attached at Exhibit C is a screenshot of the Delaware State Police Permit to Purchase website https://dsp.delaware.gov/permit-to-purchase/ from October 31, 2025.

6.      Attached at Exhibit D is what I understand to be an email dated October 6, 2025 from Lieutenant Christopher Popp of the Delaware State Police to Delaware Federal Firearms Licensees.

7.      Attached at Exhibit E is an article published on WHYY.org, dated October 28, 2025, by Chris Barrish, titled "Ready or Not, Delaware law requiring permit to buy a handgun takes effect next month" that can be found at https://whyy.org/articles/delaware-handgun-permit-law-background-check/.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

November 3, 2025

Keith A. Walter, Jr.

166288407.1                                2

**App184**

# EXHIBIT A



# Delaware State Police

## Permit to Purchase

### Firearms Training Course Guidelines

I.  **Purpose**

    A.  To establish and maintain firearms training course guidelines compliant with 11 Del. C. § 1448D.

II.  **Definitions**

    A.  "Firearms Training Course" means a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and Regulations established by SBI.

    B.  "Handgun" means a pistol, revolver, or other firearm designed to be readily capable of being fired when held in 1 hand.

    C.  "POST" means the Police Officer Standards and Training Commission.

    D.  "SBI" means the State Bureau of Identification within the Division of State Police.

III.  **Authority**

    A.  11 Del. C. § 1448D mandates that a handgun qualified purchaser permit is required to purchase handguns.  To obtain a handgun qualified purchaser permit, an applicant must complete a firearms training course within the 5 years prior to application or meet one of the exemptions listed in 11 Del. C. § 1448D (g).  Delaware Code mandates that SBI must investigate all applications for handgun

**App186**

qualified purchaser permits and may adopt regulations to administer, implement and enforce this statute.

IV.   **Course Requirements**

A.   Approved training courses must be sponsored by one of the following entities:

    1.   a federal, state, county, or municipal law-enforcement agency

    2.   a college

    3.   a nationally recognized organization that customarily offers firearms training

    4.   a school with instructors certified by a nationally recognized organization that customarily offers firearms training

B.   Approved training courses must provide instruction on the following topics:

    1.   knowledge and safe handling of firearms

    2.   safe storage of firearms and child safety

    3.   knowledge and safe handling of ammunition

    4.   safe storage of ammunition and child safety

    5.   safe firearms shooting fundamentals

    6.   live fire shooting exercises conducted on a firearms range with a minimum expenditure of 100 rounds of ammunition

    7.   identification of ways to develop and maintain firearm shooting skills

    8.   federal and state laws regarding the lawful purchase, ownership, transportation, use, and possession of firearms

    9.   Delaware law regarding the use of deadly force

**App187**

10. techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution

11. suicide prevention

C. Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.

D. Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.

E. Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor. The following supporting documents must also be submitted:

1. A copy of a valid firearms instructor certificate showing the expiration date.

2. The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.

3. An instructor identification card

4. Training course syllabus

DSP/PERMIT TO PURCHASE                                                    3/13/2025

**App188**

# EXHIBIT B

App189

**DSP Menu**

(https://delaware.gov)



# Delaware State Police

Superintendent Colonel William D. Crotty

☰ | ◀) Listen | ▶

# Delaware State Police Announce Upcoming Launch of Permit to Purchase Program

Date Posted: *Friday, October 17th, 2025*



The Delaware State Police, through the State Bureau of Identification (SBI), announces the upcoming launch of the Permit to Purchase Program, which will open for registration in the coming weeks.

Under Delaware law (https://delcode.delaware.gov/title11/c005/sc07/#1448A), a handgun qualified purchaser permit will be required to purchase or transfer a handgun in Delaware. Permits will be issued by the State Bureau of Identification within the Delaware State Police.

The Delaware State Police encourages Delaware residents planning to buy a handgun to visit the Permit to Purchase website (https://dsp.delaware.gov/permit-to-purchase/) to learn about the training and documentation requirements associated with the new law. The Permit to Purchase law takes effect on November 16, 2025, and individuals are urged to review the process ahead of that date to ensure they are prepared to meet all necessary criteria.

Although the registration link is temporarily inactive, the webpage offers a complete overview of the program and will be activated once the online application portal is operational.

## PERMIT TO PURCHASE PROCESS

**App191**

To obtain a handgun qualified purchaser permit, applicants must:

1. Complete a firearms safety course with an approved instructor.
2. Obtain fingerprints and a photograph through an appointment with IdentoGO.
3. Pass a background check conducted by SBI.

Applicants must also submit the following documents when filling out the online application:

- Government-issued photo ID
- Military orders (if applicable)
- Firearms Training Course Certificate or proof of exemption

Individuals with a valid Delaware Concealed Carry Deadly Weapon (CCDW) license issued by the Superior Court are not required to apply for a handgun qualified purchaser permit.

# Exemptions and Special Circumstances

This process applies to anyone who is not an active or retired law enforcement officer or a current CCDW holder. Qualified law enforcement officers, retired officers, military members, and other specific groups may be exempt from the firearms training course requirement. Proof of exemption must be submitted with the application.

Exemptions (https://delcode.delaware.gov/title11/c005/sc07/#1448D) to the firearms training requirement are specified in Delaware law.

A list of approved firearms instructors is available on the Permit to Purchase website (https://dsp.delaware.gov/permit-to-purchase/) and is updated regularly as new instructors are certified.

# Registration and Contact Information

In the coming week, applicants will be able to access and submit their applications through the Permit to Purchase Portal once it becomes available.

All application-related correspondence will be managed through DSP_SBIP2PMail@delaware.gov (mailto:DSP_SBIP2PMail@delaware.gov). Due to the anticipated volume of submissions, SBI staff will not be able to respond to individual questions about the application process. The Permit to Purchase website (https://dsp.delaware.gov/permit-to-purchase/) will be the main source for program updates and detailed information.

(https://dsp.delaware.gov/2025/10/17/delaware-state-police-announce-upcoming-launch-of-permit-to-purchase-program/?print=pdf)

 Print This Page  (https://dsp.delaware.gov/2025/10/17/delaware-state-police-announce-upcoming-launch-of-permit-to-purchase-

program/?print=print)

Follow Delaware State Police on Social Media:



**Facebook** (https://www.facebook.com/DSPNewsroom/)

App192

# EXHIBIT C

App193

Search This Site

Search This Site

Search 🔍



Delaware State Police

Permit to Purchase

**App194**

◀) Listen │ ▶

# Permit to Purchase Firearms

The Delaware State Police Permit to Purchase Section is responsible for the investigation of applications for, and the issuance of, handgun qualified purchaser permits.  To purchase a handgun in Delaware, the purchaser must be a Delaware resident and have a valid handgun qualified purchaser permit.  To obtain a handgun qualified purchaser permit, applicants must: (1) complete a firearms safety course by an approved instructor, (2) obtain fingerprints by appointment with IdentoGO, (3) pass a background check.  Select the appropriate link below to review the specific requirements for obtaining a permit.  A person who holds a valid license to carry a concealed deadly weapon (CCDW) issued by the Superior Court of Delaware under 11 Del. C. § 1441 is not required to apply for a handgun qualified purchaser permit before purchasing a handgun.

| CCDW - Carrying a Concealed Deadly Weapon |
| Applicant |
| Active Law-Enforcement |
| Retired Law-Enforcement |
| Certified Firearms Training Instructors |

1. The Delaware State Police Permit to Purchase section only certifies instructors who provide firearms training to individuals applying for a handgun qualified purchaser permit (permit to purchase). This does not include individuals applying for a professional license through the Delaware State Police Professional Licensing section (i.e. Armed Security Guards, Armored Car Employees, Bail Enforcement Agents, or Constables).  This also does not include individuals applying for a concealed carry permit.  For further information regarding those training certifications, see the below links.
    1. DSP Professional Licensing (https://dsp.delaware.gov/professional-licensing/)
    2. Concealed carry information – De Attorney General (https://attorneygeneral.delaware.gov/criminal/concealed-carry-deadly-weapons-ccdw/)
2. For certification as a Permit to Purchase Firearms Training Instructor complete the following steps:
    1. Review the Training Course Guidelines (https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/09/Training-Course-Guidelines.pdf) ttps://docreader.readspeaker.com/docreader/?cid=buwew&lang=en_us&url=https%3A%2F%2Fdsp.delaware.gov%2Fwp-content%2Fuploads%2Fsites%2F118%2F2025%2F09%2FTraining-Course-Guidelines.pdf)
    2. Complete the Instructor application in the Firearms Instructor Portal
    3. Submit the required documents with the instructor application
3. Permit to Purchase Instructor Portal https://dsp.delaware.gov/p2p-instructor-portal/ (https://dsp.delaware.gov/p2p-instructor-portal/)
4. Firearms Training Course Certification (https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/04/P2P-Firearms-Certification-.pdf) ttps://docreader.readspeaker.com/docreader/?cid=buwew&lang=en_us&url=https%3A%2F%2Fdsp.delaware.gov%2Fwp-content%2Fuploads%2Fsites%2F118%2F2025%2F04%2FP2P-Firearms-Certification-.pdf)      (form to be used by instructors only) The Firearms Training Course Certification form should be completed and signed by the instructor upon the applicant's successful completion of the firearms training safety course.  The applicant will submit this signed certification form along with his or her application for a handgun qualified purchaser permit.

| Frequently Asked Questions |

**App195**

Link of Approved Firearms Instructors

Link to Handgun Qualified Purchaser Permit law 11 Del C. § 1448D

Link to Permit to Purchase regulations (to be developed)

Permit to Purchase section contact info (email, telephone, address)



(/)
- Units & Sections  (https://dsp.delaware.gov/units/)
- Troop Locations  (https://dsp.delaware.gov/locations/)
- Reports & Statistics (https://dsp.delaware.gov/reports/)

App196

- Newsroom (https://dsp.delaware.gov/newsroom/)
- Public Announcements (https://dsp.delaware.gov/public-service-announcements/)
- Victim Services (https://dsp.delaware.gov/victim-services/)
- Become a Trooper (https://dsp.delaware.gov/become-a-trooper/)
- Fingerprints & Backgrounds (https://dsp.delaware.gov/obtaining-a-certified-criminal-history/)

- Contact Us (https://dsp.delaware.gov/contact/)
- FOIA (https://dsp.delaware.gov/foia/)

- Facebook Page (https://www.facebook.com/DSPNewsroom/) Twitter Page (https://twitter.com/DEStatePolice?ref_src=twsrc%5Etfw&ref_url=http%3A%2F%2Fdsp.delaware.gov%2Findex.shtml) YouTube Page (https://www.youtube.com/channel/UCtzcQwVA4sad8bm4c31kIgg)

+

# Delaware's Government

Delaware's Governor (https://governor.delaware.gov)
State Directory (https://de.gov/state-directory)
Elected Officials (https://delaware.gov/guides/your-government/)
General Assembly (https://legis.delaware.gov/)
Delaware Courts (https://courts.delaware.gov/)
State Employees (https://dhr.delaware.gov/talent-management/employee-resources.shtml)
Cities & Towns (https://delaware.gov/guides/municipalities/)
Delaware State Code (http://delcode.delaware.gov/)
State Regulations (http://regulations.delaware.gov/)
Business First Steps (https://firststeps.delaware.gov/)

Phone Directory (https://delaware.gov/phonedirectory/)
Locations Directory (https://delaware.gov/locationsdirectory/)
Public Meetings (https://publicmeetings.delaware.gov/)
Voting & Elections (https://elections.delaware.gov)
Transparency (https://delaware.gov/guides/transparency-resources/)
Choose Health DE (https://www.choosehealthde.com/Health-Insurance-Marketplace)
Tax Center (https://delaware.gov/guides/tax-center/)
Personal Income Tax (https://revenue.delaware.gov/online-filing/)
Privacy Policy (https://delaware.gov/privacy-policy/)
Weather & Travel (https://news.delaware.gov/emergency-weather-information/)

Contact Us (https://delaware.gov/contact/)
Corporations (https://corp.delaware.gov/)
Franchise Tax (https://corp.delaware.gov/paytaxes/)
Gross Receipts Tax (https://tax.delaware.gov/)
Withholding Tax (https://dorweb.revenue.delaware.gov/info/edionline.html)
Guides to Services (https://delaware.gov/guides/)
Help Center (https://delaware.gov/contact/)
Mobile Apps (https://delaware.gov/guides/mobile-apps/)
E-mail / Text Alerts (https://delaware.gov/guides/subscribe/)
Social Media (https://delaware.gov/guides/social-media/)

State of Delaware Facebook Page (https://www.facebook.com/delaware.gov)

State of Delaware Twitter Feed (https://twitter.com/delaware_gov/)

State of Delaware Flickr Photos (https://www.flickr.com/groups/delaware_gov/)

**App197**

State of Delaware YouTube Account (https://www.youtube.com/user/DelawareGovernment)

State of Delaware Instagram Photos (https://www.instagram.com/delaware_gov/)

| Make Text Size Smaler— | Reset Text Size**A** | Make Text Size Bigger**+** |



Built by the Government Information Center (https://gic.delaware.gov)
©MMXXV Delaware.gov (https://delaware.gov)

# EXHIBIT D

**From:** Popp, Christopher W (DSP) <christopher.popp@delaware.gov>

**Sent:** Monday, October 6, 2025 at 07:36:11 AM EDT

**Subject:** FTAP/P2P Update

Good morning,

Since my last communication, things have continued to progress, and DELJIS is developing the FTAP program. This has been delayed for some time but during our initial testing, we found some critical errors that needed to be addressed. We don't want to put out a program that is not effective and make sure it's thoroughly tested for accuracy. We've been advised by DELJIS we can begin testing the program again this week. I believe the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy. If the testing phase is successful, we're going to move into the training phase for all its users. This includes putting dates back on the schedule for you, the FFL's, to attend and show you the program as well as getting everyone registered to use the program. We encourage you to bring all your employees to the seminars so we can get everyone registered. As soon as we confirm the dates and times a follow up email will be sent out.

As we prepare for the launch of Permit to Purchase, we want to make sure we have everything in place. State law mandates that a handgun qualified purchaser permit is required to purchase handguns. To make sure we can do this we need to first register instructors for the Firearms Training Course giving them the ability to provide this required training to the citizens of Delaware. "Firearms Training Course" means a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and Regulations established by SBI. To obtain a handgun qualified purchaser permit, an applicant must complete a firearms training course within the 5 years prior to application or meet one of the exemptions. The website for Permit to Purchase has been developed and can be accessed utilizing www.dsp.delaware.gov. Starting today, October 6, 2025 the website can be accessed for registration and approval for those wanting to provide instruction for the required training and safety course. DSP will be releasing numerous public announcements reference this but please spread the word, anything we can do to avoid delays in issuing permits helps. Again, instructors can register by accessing the State of Delaware website at www.dsp.delaware.gov click on the Public Info tab, and then select the link to Firearms. This website provides them further information on the requirements to be an instructor for Permit to Purchase. You can advise them the course of instruction is the same as the CCDW program but legally requires a block of instruction on suicide prevention.

Permit to Purchase has the following phone number and email address assigned to it:

Phone Number: 302-741-2800

Email: DSP_SBIP2PMail@delaware.gov

We have a responsibility to educate Delawareans about the process. DSP is going to do some of this through public announcements and providing information brochures to law enforcement for the public to obtain. We also hope you can educate them as well and direct them to the website for more information. As important details become available, we will keep everyone informed. It's important to me that we, DSP, continue to maintain a professional working relationship with our FFL's effected by these changes to state law. One of the best ways to do this is keeping everyone informed as we move towards the release of these programs. Thank you.

Chris

**Lt. Christopher Popp #274 | Delaware State Police FTAP**

**Firearms Transaction Approval Program**

600 S. Bay Rd, Dover, DE 19901

**App200**

Phone: Office: 302.741.2878 Cell: 302.222.4705

Email: christopher.popp@delaware.gov

**App201**

# EXHIBIT E

  Listen Live • Sports in America • brought to you by P

❤ DONATE

| COURTS & LAW | DELAWARE | GUN VIOLENCE | LAW |
| --- | --- | --- | --- |

**FIRST STATE FOCUS**

# Ready or not, Delaware law requiring permit to buy handgun takes effect next month

The state's application, which officials have up to 30 days to process, still isn't available, leading one foe to predict a temporary ban on buying guns.

 By Cris Barrish · Updated Oct. 28, 2025 12:29 pm

 ▶ Listen 1:54



Bill Walters is offering one of the firearm safety courses needed to qualify for a permit. (Courtesy of Bill Walters)

*What are journalists missing from the state of Delaware? What would you most like WHYY News to cover?* <u>*Let us know.*</u>

Bill Walters of 302 Tactical Operations Group will be teaching a firearms safety course to prospective handgun buyers next month at Delaware's Mill Creek fire hall.

No one has signed up yet, but Walters says he's certain that dozens will register.

That's because on Nov. 16 — six days before the class — <u>Delaware's law that requires a state-issued permit to buy or transfer a handgun</u> takes effect.

**App204**

WHYY thanks our sponsors — become a WHYY sponsor



A permit to buy a handgun in Delaware will be required starting on Nov. 16. (State of Delaware)

Walters attributed the failure of anyone to sign up yet to a federal lawsuit challenging the provision's constitutionality that was filed four hours after then-Gov. John Carney signed it into law in May 2024.

"They're all hoping at this point that some miracle stops the process from happening, but I don't think it's going to," Walters said of prospective gun buyers.

The lawsuit is still working its way through U.S. District Court in Wilmington and won't be decided anytime soon.

So in 20 days, permits will be required.

Lawmakers gave state police 18 months to put a permitting process into place, but as of Friday, the critical application needed to get the permit was not yet available. Police are directing the public to their website for information about getting a permit, and Lt. India Sturgis said authorities "anticipate the application process will open" sometime this week.

Sturgis said the process of setting up the permitting system was stymied by "an approximate six-

**App205**

month delay in the federal government granting us permission to run background investigations."

So while Walters has no students yet for his Nov. 22 training class, he expects a flood of signups once applications are available online or at state police barracks.

He expects his classes and others to be filled with people who either thought the law would never take effect, didn't realize the deadline was approaching, or recently decided they want a pistol or revolver but found out they couldn't simply walk into a gun shop, submit to an instant background check, and walk out with their weapon.

"It'll be knee-jerk afterwards," Walters predicted.

## Safety course, fingerprinting and background check required

Delaware is among about a dozen states, including New Jersey and Maryland but not Pennsylvania, that have so-called permit-to-purchase laws for all firearms or just for handguns.

Under the law, everyone who wants to buy a handgun in Delaware — except those with a permit to carry concealed weapons — must first obtain a permit.

But before buyers can get a permit, they must take several proactive steps.

The first is to take a safety training course from one of the state's more than 50 certified instructors.

The course must cover safe handling and storage of guns and ammunition, child safety, fundamentals of safe shooting, applicable laws, information on how to manage a violent confrontation and suicide prevention, and live firing of at least 100 bullets.

Not everybody who needs a permit must take the course. The law exempts active and retired law enforcement officers, firearms dealers, licensed security guards, constables, correctional officers, members of the military, certified firearm instructors, competitive shooters and hunters with a state safety certification.

Walters said 302 Tac Ops offers an eight-hour class that takes one day, followed by a two-hour session on a later date, perhaps the next day, at his company's firing range near Clayton. The total cost, including renting a gun and ammunition at the range near Clayton, is about $250, he said.

**App206**

The second step for would-be buyers is to get fingerprinted, a process the state is facilitating through the vendor IdentoGO. The cost is $85. Appointments can be made online, using the service code 27S8N2. A search by WHYY News found that hundreds of slots are available.

Prospective buyers must also fill out an application with the State Bureau of Identification, an arm of the state police. Applications won't be processed until the training course and fingerprinting are completed, Sturgis said.

Once an application is accepted, SBI will conduct a background investigation that includes checks of the state criminal justice database to see if someone is prohibited from buying or having a firearm in Delaware.

The fingerprints will be sent to the Federal Bureau of Investigation to run an instant background check.

SBI can also contact local law enforcement authorities in counties or towns where the applicant has lived for the last five years to ask if "any facts and circumstances" might be grounds for a rejection, according to the law.

The background check can't be an open-ended probe, however.

The law requires that unless the application is rejected, SBI must grant the permit within 30 days of receiving the completed paperwork.

Once approved, the applicant must visit SBI's headquarters in Dover to pick up an official permit, which is good for two years. There is no cost for the actual permit, which will contain the person's name and address, and the permit's expiration date. Sturgis said the "laminated card" will also include the person's photo.

## 'The state has fumbled the ball in the 18 months'

Wilmington lawyer Thomas Neuberger, one of the plaintiffs in the pending lawsuit — said the fact that no application is yet available, coupled with the 30-day turnaround period — has set the stage for a period of time when no one except those with a concealed carry permit can buy a handgun in Delaware.

**App207**



Wilmington attorney Thomas Neuberger is a plaintiff in the lawsuit challenging the law's constitutionality. (Courtesy of Thomas Neuberger)

"I think the state has fumbled the ball in the 18 months" since Carney signed the legislation, Neuberger said. "Now, in the last two minutes of the game, they're trying to get their act together."

"It's too late now and I think there's going to be a total gun ban on the 16th [of November] because dealers will not want to subject themselves to criminal liability. They're not going to give you a handgun and sell it to you if you haven't got the permit."

Sturgis said training courses have already been available to the public, and state police are "committed to a secure, fair, and efficient implementation of the law."

## Related Content



🎧 COMMUNITY

**Delaware summit highlights progress in Wilmington and Laurel as state and national leaders unite to end community violence**

Leaders in Dover reviewed new research and data, explored solutions to violence and highlighted Laurel's positive approach to prevention.

*2 weeks ago*



**App208**

Listen

WHYY News asked Sturgis about Neuberger's assertion that there could be several days when someone who fills out the application as soon as it becomes available won't be able to exercise his or her constitutional right to buy a handgun come Nov. 16.

"We don't operate under hypotheticals," Sturgis said. "SBI will begin processing applications as soon as the portal is live. By law, the review of a complete application can take up to 30 days. Timing depends on when a complete application is submitted and the results of required state and federal checks."

## Sensible law to save lives, or infringement on rights

While state officials prepare to accept and review applications then issue permits, advocates for gun rights and for gun control continue debating whether the law is constitutional and if it will help reduce the gun violence that has plagued Wilmington, Dover and other parts of Delaware.

Traci Murphy of Coalition for a Safer Delaware, which was formerly called the Delaware Coalition Against Gun Violence, predicts positive results.

"Handguns are most often used in homicide and suicide," Murphy said. "The idea is to put a lot more rigor behind who can purchase these weapons legally. And we know that there's an underground market, but we also know that by cutting down on legal buyers, we will cut down on illegal sellers."

WHYY thanks our sponsors — become a WHYY sponsor

**App209**



Traci Murphy of Coalition for a Safer Delaware says requiring permits will reduce homicides and suicides. (Courtesy of Traci Murphy)

Murphy foresees fewer so-called straw purchases, where someone illegally buys a weapon for someone who is prohibited from having one.

"If someone has to go through a permitting process, they have to undergo a comprehensive criminal background check and then they have to pay and undergo rigorous training, including safety training, and then they have to do an in-person appearance before law enforcement," Murphy said.

"We believe that they are far less likely to look a law enforcement officer in the eye, tell them that

**App210**

they're using the weapon for home security and then go and sell it on the underground market."

Murphy said New Jersey, Massachusetts, New York and other states with low rates of gun violence, as reported by Johns Hopkins University's Center for Gun Violence Solutions, have similar laws.

Although courts have not overturned permit-to-purchase laws, Neuberger predicted that the Supreme Court will ultimately find they violate the Second Amendment's provisions granting Americans the right to bear arms. He pointed to a 2022 high court decision that said gun laws must be "consistent with this nation's historical tradition of firearm regulation" to survive legal challenges.

"In colonial days you brought your rifle, your handgun to church," Neuberger said. "Everybody went everywhere with guns. Under this, I've got to go through a several-month process to get a handgun to protect my family."

While instructor Walters looks forward to teaching the safety course so people can get permitted, he doesn't think the permit-to-purchase law is constitutional or will reduce violence.

"For people that have never bought before, having some type of fundamental basic safety course is a great idea," he said. "I think to make it mandatory for purchase is unconstitutional. But we have other states around us that have been doing very similar things for a long time."

Nor does Walters think fewer guns will make their way into the hands of people intent on engaging in violence.

"Anybody that is on the criminality side is going to find a way to get it. Period. Full stop," Walters said. "You're not going to stop that."

State Sen. Majority Whip Tizzy Lockman, the Wilmington Democrat who was lead sponsor of legislation that took five years and underwent multiple changes before lawmakers passed the bill, said she understands the continued opposition but disagrees with it.

"There's always going to be the detractors and folks who don't want to see any policy such as this," Lockman said. She expressed confidence that the law will withstand the constitutional challenge. "But I also see a good cross-section of folks who see the value in this kind of gun-sense policy."

As for any possible reduction in shootings across the state in the future, Lockman said, "It's a little

early to do any victory dances of that kind. But I'm just glad that it's getting off the ground."



State Sen. Majority Whip Tizzy Lockman sponsored the permit to purchase legislation that took five years to pass. (WHYY News file)

## Get in touch

What are journalists missing from the state of Delaware? What would you most like WHYY News to cover? Let us know!

0/200

### Your contact info

We'll be in touch if we look into your question.

| Name | Email address | ZIP code |

☑ Get daily updates from WHYY News!

☐ Please don't publish my name

**App212**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.    :
MARTIN; WILLIAM R. HAGUE, JR.;    :
BRUCE C. SMITH; BRIDGEVILLE    :
KENPO KARATE, INC. d/b/a BKK    :
FIREARMS; DELAWARE STATE    :
SPORTSMEN'S ASSOCIATION, INC;    :
and BRIDGEVILLE RIFLE & PISTOL    :
CLUB, LTD.,    :
  :
      Plaintiffs.    :
  :
      v.    : Civil Action No. _____
  :
JOSHUA BUSHWELLER, in his    :
official capacity as Cabinet Secretary,    :
Delaware Department of Safety and    :
Homeland Security; and COL. WILLIAM    :
CROTTY, in his official capacity as    :
superintendent of the Delaware State Police,    :
  :
      Defendants.    :

## DECLARATION OF THOMAS S. NEUBERGER IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Thomas S. Neuberger, affirm the truth of the following representations:

1.    I am a Plaintiff in the above-titled action.

2.    I am 78 years old, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

165756706.1

**App213**

3.     I submit this Declaration in support of Plaintiffs' motion for temporary restraining order and preliminary injunction.

4.     I am an attorney licensed to practice law in the State of Delaware, a 2023 recipient of the Leonard L. Williams Criminal Justice Reform Award from the Wilmington NAACP, and Life Member of the NAACP.

5.     I am a citizen of Delaware and have been a resident of New Castle County since 1947.

6.     I have a history of rifle shooting and won merit badges for shooting while a Boy Scout at St. Anthony of Padua Grade School in Wilmington, Delaware.

7.     I am a member of both the Delaware State Sportsmen's Association and the Bridgeville Rifle and Pistol Club, Ltd.

8.     I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which I understand requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun.

9.     I also understand that SS 1 for SB 2 provides for criminal liability. For example, according to SS 1 for SB 2, a "transferor" that willfully and intentionally sells or delivers a handgun to a person without a permit is guilty of a class A misdemeanor or class G felony. SS 1 for SB 2 also authorizes the Delaware State

165756706.1                                    2

**App214**

Police or a local law-enforcement agency to "take action to ensure surrender or removal" of any handguns possessed by any law-abiding Delawarean whose permit is revoked, regardless of the reason.

10. I further understand that SS 1 for SB 2 will be implemented on November 16, 2025.

11. As alleged in the Complaint, I believe SS 1 for SB 2's non-historical and burdensome permitting scheme for acquisition of a handgun for self-defense and other lawful purpose deprives me of my Second, Fourth, and Fourteenth Amendment rights.

12. In addition, to my knowledge and based on information that I have seen, as of the date of this Declaration, the State has failed to put in place complete procedures for obtaining the handgun qualified purchaser permit required for the purchase of handguns.

13. As a result, I understand no one has been able to obtain the required permit and there is nothing to ensure anyone will be able to obtain the required permit prior to implementation of SS 1 for SB 2.

14. I also understand that the State failed to follow Delaware's Administrative Prodcedures Act regarding the guidelines and regulations it has created in connection with SS 1 for SB 2.

15. I am unaware, when, if ever, the State will have the full procedures for obtaining the required handgun qualified purchaser permit, created in compliance with Administrative Procedures Act, in place.

16. Therefore, upon implementation of SS 1 for SB 2 on November 16, 2025, there will effectively be a ban on handgun purchases in Delaware of an indefinite duration.

17. As a result of the State's enactment of SS 1 for SB 2, coupled with its failure to implement complete procedures for obtaining the handgun qualified purchaser permit required under SS 1 for SB 2, I will be irreparably harmed.

18. As the Supreme Court has stated, handguns are the quintessential self-defense weapon.

19. I do not presently own a handgun.

20. Because of my age, area criminal statistics, and general civil unrest in this Country, I fear for my safety and the safety of my wife. In the past, I have been threatened with physical harm due to my pro bono civil rights work.

21. I do not believe that I would be able outrun or overpower a criminal if I, or my wife, was attacked.

22. I remember when Dr. Martin Luther King's family and home were first bombed in Alabama in 1956 and Dr. King sought to obtain a handgun to protect his family. But Alabama had a handgun permit law then, and the Governor

**App216**

refused to give him a permit for a handgun. I do not want to find myself, or any law abiding Delawarean to find themselves, in a similar situation.

23. I have received self-defense and firearms safety training from a retired State Trooper who previously commanded the Delaware State Police firearms range and who trained State Troopers in gun safety.

24. The State Trooper provided me with recommendations for my self-defense, including the purchase of a handgun. Based on these recommendations, I decided I needed a handgun for self-defense and that the Sig Sauer P365 is the best option.

25. I intend to purchase a Sig Sauer P365 on November 28, 2025, when I expect the price to be most favorable.

26. My planned purchase, however, will be restricted by SS 1 for SB 2's burdensome handgun permitting scheme.

27. Moreover, even if I wanted to obtain the required permit, I would be unable to do so since, as discussed above, the necessary infrastructure is not in place and it is unknown when, if ever, it will be.

28. Not being able to purchase a handgun for self-defense for any duration of time, let alone an unknown period of time, puts me at unnecessary risk of bodily harm and even death should I encounter an attacker wanting to harm me

165756706.1                                    5

**App217**

or my wife, or be put in a situation where such harm may occur such as an home invasion.

29.    It is hard to imagine a harm more severe and irreparable than one's life or the life of a family member.

30.    In addition, as a practicing civil rights attorney, I cannot risk being prosecuted and having law enforcement "take action" against me if I were to violate SS 1 for SB 2 because that would adversely impact my ability to practice law and provide legal services to those underserved individuals I seek to represent.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

10/05/25
_____
Date

Thomas S. Neuberger

165756706.1

6

**App218**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., | : : : : : : : : : : |
| Plaintiffs. | : : |
| v. | : Civil Action No. _____ : |
| JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, | : : : : : : : |
| Defendants. | : : |

## DECLARATION OF JEFFREY W. HAGUE, PRESIDENT OF DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Jeffrey W. Hague, affirm the truth of the following representations:

1.     I am the President of the Delaware State Sportsmen's Association, Inc., a Plaintiff in the above-titled action. I am over the age of 18, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

166031276.1

**App219**

2.      I submit this Declaration in support of Plaintiffs' motion for temporary restraining order and accompanying brief.

3.      I am a citizen of the State of Delaware, residing in Sussex County, Delaware.

4.      I am the President and a member of the Delaware State Sportsmen's Association, Inc. ("DSSA"), one of the Plaintiffs in this lawsuit.

5.      DSSA was founded in 1968 as the official state-level affiliate of the National Rifle Association of America, and its membership currently consists of approximately 4,500 individual members and constituent clubs.

6.      I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun.

7.      I understand that SS 1 for SB 2 will be implemented on November 16, 2025.

8.      I further understand that SS 1 for SB 2 provides for criminal liability to those that sell or deliver a handgun to a person without a permit upon its implementation.

9.      As alleged in the Complaint, I believe that SS 1 for SB 2 violates the Second Amendment.

166031276.1 2

**App220**

10. To my knowledge and based on information that I have seen, as of the date of this Declaration, the State has failed to put in place complete procedures for obtaining the handgun qualified purchaser permit required for the purchase of handguns.

11. As a result, I understand no one has been able to obtain the required permit and there is nothing to ensure anyone will be able to obtain the required permit prior to implementation of SS 1 for SB 2.

12. I also understand that the State failed to follow Delaware's Administrative Procedures Act regarding the guidelines and regulations it has created in connection with SS 1 for SB 2.

13. It is unknown, when, if ever, the State will have the full procedures for obtaining the required handgun qualified purchaser permit, created in compliance with Administrative Procedures Act, in place.

14. Therefore, upon implementation of SS 1 for SB 2 on November 16, 2025, there will effectively be a ban on handgun purchases for an infinite duration in Delaware.

15. As a result of the State's enactment of SS 1 for SB 2, coupled with its failure to implement complete procedures for obtaining the handgun qualified purchaser permit required under SS 1 for SB 2, members of DSSA will be irreparably harmed.

166031276.1 3

16. As the Supreme Court has stated, handguns are the quintessential self-defense weapon.

17. I am aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented on November 16, 2025. Some of these members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones would be attacked.

18. Not being able to purchase a handgun for self-defense for any duration of time, let alone an unknown period of time, puts these members and their families at an increased risk of bodily harm and even death should they encounter an attacker wanting to do such harm or be put in a situation where such harm may occur such as an home invasion.

19. It is hard to imagine a harm more severe and irreparable than one's life or the life of a family member.

20. I am also aware of and spoken directly with several DSSA members that are sellers of firearms with a Federal Firearms License, commonly known as "FFLs." Many of these members have sold handguns that will be subject to SS 1 for SB 2, and intend to continue to do so after its implementation on November 16, 2025.

166031276.1 4

**App222**

21.   If the implementation of SS 1 for SB 2 is allowed to go forward on November 16, 2025, BKK, those members will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability, including prosecution for a felony.

22.   Therefore, SS 1 for SB2 violates constitutional protections afforded to DSSA members as a purchaser and seller of handguns, and subjects them to immediate, irreparable injury.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  October 27, 2025

_____
Jeffrey W. Hague, DSSA President

166031276.1 5

**App223**

.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.          :
MARTIN; WILLIAM R. HAGUE, JR.;         :
BRUCE C. SMITH; BRIDGEVILLE            :
KENPO KARATE, INC. d/b/a BKK           :
FIREARMS; DELAWARE STATE               :
SPORTSMEN'S ASSOCIATION, INC;          :
and BRIDGEVILLE RIFLE & PISTOL         :
CLUB, LTD.,                            :
                                       :
      Plaintiffs.                   :
                                       :
      v.                            : Civil Action No. _____
                                       :
JOSHUA BUSHWELLER, in his              :
official capacity as Cabinet Secretary, :
Delaware Department of Safety and      :
Homeland Security; and COL. WILLIAM    :
CROTTY, in his official capacity as    :
superintendent of the Delaware State Police, :
                                       :
      Defendants.                   :

## DECLARATION OF BRUCE C. SMITH, OWNER AND OPERATOR OF KENPO KARATE, INC. d/b/a BKK FIREARMS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Bruce C. Smith, affirm the truth of the following representations:

1.    I am a Plaintiff in the above-titled action and so is BKK Firearms. I am over the age of 18, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

**App224**

2.      I am the Owner and Operator of Kenpo Karate, Inc. d/b/a BKK Firearms ("BKK").

3.      I submit this Declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

4.      I am a citizen of the State of Delaware, residing in Sussex County, Delaware.

5.      BKK holds a Federal Firearms License ("FFL") and is engaged in the business of selling firearms.  BKK is headquartered in the State of Delaware and is duly authorized to do business in the State.

6.      I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun.

7.      I understand that SS 1 for SB 2 will be implemented on November 16, 2025.

8.      I further understand that SS 1 for SB 2 provides for criminal liability to those that sell or deliver a handgun to a person without a permit upon its implementation.

9.      As alleged in the Complaint where both BKK and I are named Plaintiffs, I believe that SS 1 for SB 2 violates my constitutional rights, including the Second Amendment.

2

**App225**

10. To my knowledge and based on information that I have seen, as of the date of this Declaration, the State has failed to put in place complete procedures for obtaining the handgun qualified purchaser permit required for purchase of handguns.

11. As a result, I understand no one has been able to obtain the required permit and there is nothing to ensure anyone will be able to obtain the required permit prior to implementation of SS 1 for SB 2.

12. I also understand that the State failed to follow Delaware's Administrative Procedures Act regarding the guidelines and regulations it has created in connection with SS 1 for SB 2.

13. It is unknown, when, if ever, the State will have the full procedures for obtaining the required handgun qualified purchaser permit, created in compliance with the Administrative Procedures Act, in place.

14. Therefore, upon implementation of SS 1 for SB 2 on November 16, 2025, there will effectively be a ban on handgun purchases for an infinite duration in Delaware.

15. As a result of the State's enactment of SS 1 for SB 2, coupled with its failure to implement complete procedures for obtaining the handgun qualified purchaser permit required under SS 1 for SB 2, I, along with BKK, will be irreparably harmed.

**App226**

16.    In the course of my ownership and operation of BKK, I have sold handguns that will be subject to SS 1 for SB 2, and intend to continue to do so after its implementation on November 16, 2025.

17.    In 2024, BKK derived approximately 90% of its sales from handguns subject to SS 1 for SB 2.

18.    To date, in 2025, BKK has derived approximately 98% of its sales from handguns subject to SS 1 for SB 2.

19.    If the implementation of SS 1 for SB 2 is allowed to go forward on November 16, 2025, BKK and I will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability, including prosecution for a felony.

20.    Therefore, SS 1 for SB2 violates constitutional protections afforded to both myself and my business as a purchaser and seller of handguns, subjects me to criminal prosecution for the sale of handguns, and effectively bans me and my business from selling handguns, causing BKK and me immediate and irreparable harm.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

__10/27/25__
Date

Bruce C. Smith, Owner Kenpo Karate, Inc.
d/b/a BKK Firearms

App227

**Archived:** Wednesday, November 5, 2025 10:57:59 AM
**From:** ded_nefreply@ded.uscourts.gov
**Sent:** Wednesday, November 5, 2025 10:11:49 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:25-cv-01341-MN Neuberger et al v. Bushweller et al Oral Order
**Importance:** Normal
**Sensitivity:** None

EXTERNAL

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered on 11/5/2025 at 10:08 AM EST and filed on 11/5/2025

**Case Name:** Neuberger et al v. Bushweller et al
**Case Number:** 1:25-cv-01341-MN
**Filer:**
**Document Number:** 16(No document attached)

**Docket Text:**
**ORAL ORDER re [13] Oral Order - Having reviewed again the briefing in related case C.A. No. 24-590 (MN), IT IS HEREBY ORDERED that the Court's 11/4/2025 Oral Order in this case (D.I. 13) is amended as follows: Defendants need not repeat the arguments made in their briefing in C.A. No. 24-590 (MN); rather, Defendants' response should include, to the extent they have a response, argument as to the challenged law's consistency with the principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*. In addition, Defendants shall address Plaintiffs' allegations regarding the absence of an appropriate infrastructure to implement the challenged law as of 11/16/2025. ORDERED by Judge Maryellen Noreika on 11/5/2025. (dlw)**

**1:25-cv-01341-MN Notice has been electronically mailed to:**

Francis G.X. Pileggi     francis.pileggi@lewisbrisbois.com, cheryl.english@lewisbrisbois.com, christmas.mcdonald@lewisbrisbois.com, eileen.richardson@lewisbrisbois.com, mary.rutkowski@lewisbrisbois.com,

**App228**

susan.brown@lewisbrisbois.com, tami.copple@lewisbrisbois.com

Jennifer-Kate M. Aaronson    Jennifer.Aaronson@delaware.gov

Keith A. Walter, Jr    keith.walter@faegredrinker.com, rokeysha.ramos@faegredrinker.com

Ian Robert Liston    Ian.Liston@delaware.gov, zachary.dotts@delaware.gov

**1:25-cv-01341-MN Filer will deliver document by other means to:**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., <br><br> Plaintiffs. <br><br> v. <br><br> JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, <br><br> Defendants. | Civil Action No. 1:25-cv-01341-MN |

**BRIEF IN SUPPORT OF DEFENDANTS'
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIEF</u>**

**App230**

Date:   November 10, 2025

DELAWARE DEPARTMENT OF JUSTICE

*Of Counsel*:

Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Ian.Liston@delaware.gov
jennifer.aaronson@delaware.gov

FRESHFIELDS US LLP

Jennifer B. Loeb (*pro hac vice* forthcoming)
Austin R. Evers (*pro hac vice* forthcoming)
Lauren Kaplin (*pro hac vice* forthcoming)
Jacob Johnston (*pro hac vice* forthcoming)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice* forthcoming)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*

**App231**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 1

    I.    THE STATUTE AND PLAINTIFFS' LAWSUITS ................................................................ 1

    II.   DELAWARE'S PERMIT TO PURCHASE INFRASTRUCTURE .................................... 4

LEGAL STANDARD ................................................................................................................ 6

ARGUMENT .............................................................................................................................. 6

    I.    PLAINTIFFS LACK STANDING TO SUE TO ENJOIN THE STATUTE ....................... 6

    II.   PLAINTIFFS WHO CAN ALREADY GET PERMITS DO NOT NEED AN
INJUNCTION SO THEY CAN GET PERMITS ...................................................................... 8

    III.  PRELIMINARY INJUNCTIVE RELIEF IS NOT WARRANTED ................................ 11

        A.    Preliminary Injunctions Are Extraordinary Relief Not Appropriate Here ............... 11

        B.    Plaintiffs Have Failed to Show Irreparable Harm ..................................................... 12

        C.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits ............. 15

        D.    The Equities and the Public Interest Weigh in Defendants' Favor ........................... 19

CONCLUSION ........................................................................................................................ 20

i

**App232**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Acierno v. New Castle Cnty.*,
 40 F.3d 645, 653 (3d Cir. 1994)...........................................................................................13

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)...................................................................................................................7

*Colo. Outfitters Ass'n v. Hickenlooper*,
 823 F.3d 537 (10th Cir. 2016) ..................................................................................................8

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
 No. 1:22-cv-00951 (D. Del. Jul 20, 2022) ..............................................................................12

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
 108 F.4th 194 (3d Cir. 2024),  ....................................................................................... *passim*

*Del. State Sportsmen's Ass'n v. Garvin*,
 2020 WL 6813997 (Del. Super. Nov. 18, 2020).....................................................................11

*DeMatteis v. RiseDelaware Inc.*,
 315 A.3d 499, 515 (Del. 2024) ...............................................................................................10

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
 11 F.4th 200 (3d Cir. 2021) ......................................................................................................7

*Fahr v. City of San Diego*,
 2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) ..........................................................................7

*Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*,
 861 A.2d 1233 (Del. 2004). ..............................................................................................10, 11

*Frey v. Nigrelli*,
 661 F. Supp. 3d 176 (S.D.N.Y. 2023).....................................................................................15

*Hope v. Warden York Cnty. Prison*,
 972 F.3d 310 (3d Cir. 2020).....................................................................................................19

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
 882 F.2d 797, 802 (3d Cir. 1989).............................................................................................13

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Del.*,
 506 F. Supp. 3d 229 (D. Del. 2020).........................................................................................9

*Koons v. Att'y Gen. N.J.*,
 2025 WL 2612055 (3d Cir. Sept. 10, 2025) ..........................................................8, 13, 16, 18

ii

**App233**

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................7

*Md. Shall Issue, Inc. v. Moore*,
    116 F.4th 211 (4th Cir. 2024) ..............................................................................16

*Neuberger v. Delaware Dep't of Safety and Homeland Sec.*,
    No. 1:24-cv-00590 (D. Del. May 16, 2024) ...................................................2, 3, 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................15, 19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) ...................................................................................11, 16, 17

*Or. Firearms Fed'n, Inc. v. Brown*,
    644 F. Supp. 3d 782 (D. Or. 2022) .......................................................................14

*Or. Firearms Fed'n, Inc. v. Kotek*,
    682 F. Supp. 3d 874 (D. Or. 2023) .......................................................................16

*Parker v. Wolf*,
    506 F. Supp. 3d 271 (M.D. Pa. 2020) ....................................................................7

*Reading v. N. Hanover Township*,
    124 F.4th 189 (3d Cir. 2024) .................................................................................7

*S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*,
    274 F.3d 771 (3d Cir. 2001) ..................................................................................6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...............................................................................................8

*Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners*,
    2025 WL 2338069, at *2 (D. Del. Aug. 13, 2025) ...........................................11–12

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................6, 19

*United States v. Harris*,
    144 F.4th 154 (3d Cir. 2025) ...............................................................................17

*United States v. Rahimi*,
    602 U.S. 680 (2024) ........................................................................................17, 18

*United States v. Salerno*,
    481 U.S. 739 (1987) .............................................................................................19

iii

**App234**

**Statutes**

1 Del. Admin. C. §801 ....................................................................................................10

11 Del. C. § 1448D ................................................................................................. *passim*

18 U.S.C. § 922(b)(1) ...................................................................................................17

1893 Fla. Laws 71 ....................................................................................................... 17

1902 Ga. Laws 427 .......................................................................................................17

1905 N.C. Sess. Laws 545 ............................................................................................17

An Act Providing for the Punishment of Persons Carrying Concealed
   Deadly Weapons, ch. 548, § 1, 1881 Del. Laws 987................................................18

Jersey City, N.J., An Act to Re-organize the
   Local Government of Jersey City, § 3 (1874)..........................................................17

N.Y.C., N.Y., Ordinances ch. 6, art. 27 § 265 (1881) ..................................................17

**Other Authorities**

Joseph G.S. Greenlee, The Right to Train: A Pillar of the Second Amendment, 31 Wm. & Mary
   Bill Rts. J. 93 (2022)................................................................................................19

Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 L. &
   Contemp. Probs. 55 (2017) ......................................................................................18

Saul Cornell, The Right to Regulate Arms in the Era of the Fourteenth Amendment: The
   Emergence of Good Cause Permit Schemes in Post-Civil War America, 55 U.C. Davis L.
   Rev. Online 65 (2021)...........................................................................................17, 18

**App235**

## INTRODUCTION

It is entirely possible to purchase a handgun in Delaware today, and it will remain so after November 16, the effective date of Senate Substitute 1 for Senate Bill 2 (the *Statute*), which enacts a common-sense gun permitting scheme known as permit-to-purchase, or P2P. The gravamen of Plaintiffs' Motion for Expedited Injunctive Relief (the *Motion*)—that allowing the Statute to take effect on November 16 will create a *de facto* "total ban" on handgun sales—is demonstrably false. Hundreds of the permits required under the Statute have already been issued. Instead of applying for permits, and despite already having the relief they seek in their proposed order, Plaintiffs ask this Court to block the law from taking effect. Plaintiffs' Motion should be denied as moot.

Plaintiffs cannot meet their burden for the extraordinary injunctive relief they seek. *First*, Plaintiffs fail to demonstrate irreparable harm, as there is no *de facto* ban on the purchase and sale of handguns, and Plaintiffs may apply for and—if not barred by the Statute—obtain a permit to purchase one at any time. *Second*, Plaintiffs have no likelihood of success on the merits, as (1) they lack standing to challenge an application process to which they have never submitted themselves; and (2) the Statute is consistent with the nation's regulatory tradition of requiring some form of permit to acquire and possess a firearm. *Finally*, equity and public interest weigh heavily in Defendants' favor: Plaintiffs seek to enjoin a statutory scheme without trying to comply with it at the cost of public safety by blocking a common-sense regulation enacted to protect Delawareans.

## STATEMENT OF FACTS

### I.    THE STATUTE AND PLAINTIFFS' LAWSUITS

The Statute is a handgun permitting statute enacted to reduce gun violence without encroaching on individual constitutional rights. Under this permitting regime, the Director of the State Bureau of Investigation (*SBI*) "shall issue" a handgun qualified purchaser permit (a *permit*)

**App236**

to all applicants not barred by any of five narrow criteria. Permit applicants must take a firearms safety course, be fingerprinted, and submit an application. The Statute is set to go into effect November 16, "[e]ighteen months from the date of the Act's enactment." Compl. Ex. A, Sec. 5(1).

On May 16, 2024, Plaintiffs other than BKK Firearms and Smith filed a lawsuit in this Court challenging the constitutionality of the Statute under the Second, Fourth, and Fourteenth Amendments and Article I, Section 20 of the Delaware Constitution. *See Neuberger v. Del. Dep't of Safety & Homeland Sec.*, No. 1:24-cv-00590 (D. Del. May 16, 2024) (***Neuberger I***), D.I. 1. In response to Defendants' motion to dismiss, Plaintiffs filed a First Amended Complaint. *Id.* D.I. 28. In response to Defendants' second Motion to Dismiss, Plaintiffs (with the negotiated consent of the Defendants) sought permission from the Court to file yet another amended complaint. *Id.* D.I. 34. The Court granted permission but—pursuant to a stipulation agreed by the parties—ordered that Plaintiffs may "not seek to further amend their complaint.*" Id.* D.I. 40. Defendants' Motion to Dismiss the Second Amended Complaint is pending. *Id.* D.I. 41 (***Defendants' MTD***)

In an attempt to circumvent this Court's order forbidding further amendment of their Complaint (circumstances that will likely require future litigation to cure), Plaintiffs, now including BKK Firearms and its owner, Bruce C. Smith, filed this action on November 3, 2025 (***Neuberger II***). Plaintiffs' Complaint in this action is a copycat of the original complaint: it challenges the constitutionality of the Statute under the Second, Fourth, and Fourteenth Amendments and recycles swaths of text from previous complaints. *Compare* Compl. ¶¶ 142–192 *with Neuberger I*, D.I. 34-1 at ¶¶ 111–158.

Plaintiffs also filed the instant Motion for Expedited Injunctive Relief based exclusively on certain aspects of their Second Amendment claim, *see* Motion at 2, claiming Delaware "fail[ed] to have the infrastructure in place to issue the required permits" and has not enacted regulations

2

**App237**

supposedly necessary to effectuate the permit application process, and has thus "effectively instituted a statewide total ban on the purchase and sale of handguns." Br. in Supp. of Mot. for Expedited Injunctive Relief, D.I. 4 (***Plaintiffs' Brief***) at 2, 5. On that (faulty) premise, Plaintiffs seek an order enjoining enforcement of the Statute until (1) the State has submitted to the court a "copy of an actual handgun qualified purchaser permit issued by the State to an eligible person," and (2) "fil[ed] with the Court sworn declarations . . . that all the necessary personnel, systems, and infrastructure has been implemented . . . to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit[.]" Plaintiffs' Proposed Order Granting Expedited Injunctive Relief, D.I. 3-2 (***Proposed Order***) ¶ 2.

Those claims are wrong. Defendants *have* implemented the necessary "infrastructure" and have already issued over 200 permits. A declaration and examples of issued permits are attached as exhibits herein. Decl. of Jason L. Stevenson (***Stevenson Decl.***) and Stevenson Decl. Ex. B.

No evidence to the contrary exists in the record. None of the exhibits to Plaintiffs' Complaint and none of the declarations accompanying their Motion indicate any of them have tried to obtain a permit. Instead, they assert that aspects of the permitting websites are not functional, Pls.' Br. at 8, even though they are, Stevenson Decl. ¶ 6, and that an unrelated background check system has been delayed until March 2026, Pls.' Br. at 9, which has no bearing on the P2P system, Stevenson Decl. ¶¶ 24–26. Evidence of any need for "expedited" relief is also lacking. The *Neuberger I* Plaintiffs allege they plan to buy a handgun no sooner than November 28. *See, e.g.*, Decl. of Thomas S. Neuberger, D.I. 6, ¶ 25. The two new Plaintiffs allege that they, as sellers of handguns, believe they will need to make an impossible choice between selling them unlawfully (due to the allegedly unobtainable permits), or going out of business. Decl. of Bruce S. Smith, D.I. No. 8, ¶ 19. But they do not allege any plan to purchase a handgun. These allegations

**App238**

are insufficient to establish their standing to seek relief.

## II.     DELAWARE'S PERMIT TO PURCHASE INFRASTRUCTURE

Delawareans have been applying for and obtaining permits under the Statute since at least November 1, 2025, days before Plaintiffs filed this action. Stevenson Decl. ¶ 7. The Delaware Police have published numerous updates and sent communications informing individuals about the availability of the P2P tools; indeed, Plaintiff BKK Firearms was informed directly in October that this online system had been implemented and was available to applicants. Stevenson Decl. Ex. A. The Delaware Police P2P website lays out the application process and provides all information needed to apply for a permit, including (1) a step-by-step guide for applicants, (2) the application questionnaire, (3) a link to the Statute, (4) answers to frequently asked questions, (5) a link to schedule a fingerprinting appointment, and (6) a list of nearly 100 certified firearms instructors, (among them, Plaintiff BKK Firearms). *Id*. ¶ 14. All materials to apply for a permit can be found in hard copy at every State Police Troop Location in the state. *Id*. ¶ 16. The P2P website provides a telephone number for questions or to request assistance with the application process. *Id*. ¶ 14.

Plaintiffs' claim that "the State has not put in place the infrastructure necessary for an applicant to complete the training required to be granted a permit" is baseless. Pls.' Br. at 12; *see also id*. at 17. In reality, weeks ago, SBI implemented an informative website through which it is accepting applications, and SBI is sufficiently staffed to process applications as required by Statute. Stevenson Decl. ¶ 18. Qualified instructors' websites offer at least fourteen training courses between November 7 and November 16, 2025. *Id*. ¶ 21.

The Statute imposes several requirements a training course must meet to qualify an individual for a permit. *See* 11 Del. C. § 1448D(d)(f)(4)(a)–(k) (listing 11 specific requirements). Accordingly, SBI created an online tool through which training providers can qualify and that

**App239**

provides Firearms Training Course Guidelines specifying the subjects that must be taught to applicants to ensure they meet the permit requirements. *See* Decl. of Keith Walter, Ex. A, D.I. 5-1. On October 6, 2025, the Delaware State Police contacted Delaware FFLs and informed them they could register to be approved training instructors on the DSP website. Stevenson Decl. ¶ 7 n.1. Plaintiff Bruce C. Smith, owner of BKK Firearms, Compl. at 10, completed this process and is listed as an approved instructor as of Nov. 3, 2025. Stevenson Decl. ¶ 7 n.1.

To suggest the P2P system is not functioning, Plaintiffs highlight language on the P2P website that permit to purchase regulations are "to be developed." Pls.' Br. at 8 n.8. But this has no impact on an individual's ability to successfully apply for a permit online. Stevenson Decl. ¶ 15. The language is a placeholder in case regulations are promulgated in the future, but the Statute does not require agencies to do so (it says they "may"), and none is required to implement the Statute. *Id.*; *see infra* 8–11 (discussing Plaintiffs' regulation arguments).

The State has already issued 218 permits as of the date of filing, Stevenson Decl. ¶ 11, and there are seven applications currently pending. *Id.* ¶ 13. The State has not received an application from any of the Plaintiffs. *Id.* ¶ 10. The State has processed all permit applications well within the 30-day period provided by the statute. *Id.* ¶ 19. In about 90% of cases, SBI has granted permits within one to three business days. *Id.* And, to prepare for a potential increase in applications, SBI has hired four additional troopers and five civilian analysts to join the P2P Section. *Id.* ¶ 18.

In a confusing move, Plaintiffs appear to argue that the P2P system must not be functioning because the State has delayed the implementation of a separate background check system, the Firearm Transaction Approval Program (**FTAP**). But P2P is not FTAP, and the FTAP process has no bearing on the availability of a P2P permit. Currently, an individual seeking to buy a firearm in Delaware undergoes two separate background checks. *Id.* ¶ 27. The first is performed by the SBI

5

**App240**

during the P2P permit application process. *Id.* That process is fully operational. *Id.* The second background check is separate from the application process and part of the purchase process when an individual goes to an FFL to buy a firearm. *Id.* ¶ 28. That process, too, is fully operational, but eventually it will be replaced with the FTAP process. *Id.* ¶¶ 28-29. The FTAP system will streamline this second FFL process by allowing the FFL to contact only SBI to run a complete check instead of needing to contact both the FBI and SBI separately, as is required today. *Id.* ¶ 29. This will make the process slightly faster for the purchaser, but purchasers are still able to obtain permits and purchase firearms prior to FTAP being implemented. *Id.*

## LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary remedy that should be granted only in limited circumstances." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (**DSSA**) (internal brackets omitted) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021)), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). To obtain a preliminary injunction, the moving party must make a "clear showing" that: (1) it has a likelihood of success on the merits; (2) there is a risk of irreparable harm absent preliminary relief; (3) the balance of the equities are in its favor; and (4) the injunction would support the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *DSSA*, 108 F.4th at 202. "The first two factors are the 'most critical.'" *DSSA*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Failing to show either a likelihood of success or risk of irreparable harm, "necessarily result[s] in the denial of a preliminary injunction." *S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citation omitted).

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO SUE TO ENJOIN THE STATUTE.

Plaintiffs lack standing to challenge an application process with which they have

6

never attempted to comply.[1] Nowhere in their Motion or related papers have any of the Plaintiffs pled an "injury in fact—an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). This is enough on its own to defeat a motion for preliminary injunction. *See Parker v. Wolf*, 506 F. Supp. 3d 271, 292 (M.D. Pa. 2020) (denying motion for preliminary injunction for lack of standing).

A plaintiff who challenges the lawfulness of an application process without first submitting himself to that process can establish standing only by showing he was "able and ready" to apply for a benefit, but application "would be futile." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205–06 (3d Cir. 2021) (quoting *Carney v. Adams*, 592 U.S. 53, 66 (2020)). This is fatal to the buyer-Plaintiffs' standing, as they fail to offer any evidence that they have submitted themselves to the application process and whose assertions of futility cannot survive contact with the facts. They also have waited 18 months from the Statute's enactment to try to make purchases on November 28, 2025. But Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves." *Reading v. N. Hanover Township*, 124 F.4th 189, 198 (3d Cir. 2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)); *see Clapper*, 568 U.S. at 418 (holding "self-inflicted" constitutional injuries "are not fairly traceable to the Government's purported[ly] [unconstitutional activities]" and thus do not give rise to standing); *Fahr v. City of San Diego*, 2021 WL 4895974, at *13 (S.D. Cal. Oct. 20, 2021) (denying preliminary relief for "wholly self-inflicted constitutional violations" where plaintiffs did not use "ample time" to adjust non-compliant firearm parts). Plaintiffs' attempt to manufacture standing is also distinguishable from the allegations in *Koons v. Att'y Gen. New Jersey*, where the plaintiffs alleged that New

---

[1] As requested by the Court, Defendants incorporate their arguments from *Defendants' MTD*, adding the following arguments in light of the current circumstances.

7

**App242**

Jersey's application process necessitated something the state could not require of them—the submission of endorsements from four reputable persons. 2025 WL 2612055, at *22 (3d Cir. Sept. 10, 2025), *as amended* (Sept. 17, 2025). Plaintiffs make no similar allegation here.

Plaintiffs Delaware State Sportsmen's Association, Inc. and Bridgeville Rifle & Pistol Club, Ltd. fare no better. They lack standing on behalf of their members because the Motion fails to "make specific allegations establishing that at least one identified member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016) ("The mere possibility that 'some day' a member of [plaintiff organization] might wish to obtain or retain a firearm . . . and that he or she might then experience difficulties [meeting] the requisite [permitting requirements] is insufficient to establish an imminent injury for purposes of Article III standing."). Plaintiffs make no similar allegation for not being able to apply.

Plaintiffs BKK and Smith do not request relief in the Motion, as they do not seek to apply for a permit. They therefore do not have standing for this Motion. *See Summers*, 555 U.S. at 493 (plaintiff "bears the burden of showing that he has standing for each type of relief sought").

## II. PLAINTIFFS WHO CAN ALREADY GET PERMITS DO NOT NEED AN INJUNCTION SO THEY CAN GET PERMITS.

Even if the Court were to find standing, Plaintiffs already have what they are seeking. Plaintiffs are not seeking an injunction on the basis that the Statute is unconstitutional as drafted (that is an aim of their *Complaint*), but rather on the basis that the Statute, as implemented, will operate as a *de facto* "total ban" on handgun purchases. Thus, the injunction they seek is limited: Plaintiffs' Proposed Order only asks the Court to enjoin the Statute until (1) the State submits to the Court a "copy of an actual handgun qualified purchaser permit issued by the State to an eligible person," and (2) the state "fil[es] with the Court sworn declarations . . . that all the necessary

8

**App243**

personnel, systems, and infrastructure has been implemented, in accordance with the Delaware Administrative Procedures Act [(***APA***)], to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit." They seek a "reasonable amount of time" to complete the permitting process (a process they could have begun weeks ago).

Because Plaintiffs have the relief they request, Plaintiffs' Motion should be denied as moot or inapplicable. *See, e.g.*, *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Del.*, 506 F. Supp. 3d 229, 237 (D. Del. 2020) (motion for preliminary injunction moot given conforming conduct by defendant).

The documents and representations Plaintiffs demand are attached as exhibits to this Opposition, thereby mooting most of the requested relief. Stevenson Decl.; *id.* Ex. B. As for the rest, there is nothing for the Court to do about Plaintiffs' red-herring arguments on the APA. Plaintiffs allege "[t]he State and SBI has also failed to initiate the necessary, months-long APA procedures to pass regulations it and its agencies have determined are necessary to the Permit Bill's implementation." Pls.' Br. at 12. To back this up, Plaintiffs point to the Delaware State Police Firearms Training Course Guidelines (***Guidelines***) and the requirement that training courses and firearms instructors be approved by SBI. *Id.* at 13; D.I. 5-1, § IV.C–E. They assert these Guidelines and approval requirements violate the APA. Pls.' Br. at 9. Their argument fails.

First, there is no cause of action to invalidate the referenced materials. Neither Plaintiffs' Complaint nor Motion includes a count for violation of the APA. Instead, they ask the Court to presume the Guidelines are invalid based on threadbare, conclusory assertions and to accept that their presumed invalidity somehow operates to harm the Plaintiffs. Second, while Defendants need not rebut Plaintiffs' unperfected APA claim, the APA is not implicated here. No regulations are required by the Statute: the SBI "*may* adopt regulations to administer, implement, and enforce"

9

**App244**

the Statute. 11 Del. C. § 1448D(q) (emphasis added). Moreover, the Guidelines literally reiterate the course content requirements as stated in the Statute, Compl. Ex. G, ¶IV, D.I. 1-7, and the requirements for trainer certification. The Statute provides that for the required certificate, an instructor applicant must present to SBI a certificate "from a nationally recognized organization" or "law-enforcement agency." 11 Del. C. § 1448D(f)(4). The Guidelines do the same by requiring a certificate from a law enforcement agency that "meets the Delaware POST [Police Officer Standards and Training] standards for firearms instructors" or "from a nationally recognized organization." *Id*. This is logical because Delaware POST—not SBI—is vested with the authority to regulate instructor training standards for any instructor who will train sworn officers. 11 *Del. C.* § 8404(a)(10). Those qualifications are established by 1 Del. Admin. C. §801 and cannot be modified by SBI. No additional regulations are necessary to implement P2P.

Delaware law provides that "when an agency . . . implements a specific and detailed statutory directive, it may operate outside the scope of the APA." *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233, 1236 (Del. 2004). Here, the plain language of the Statute provides a clear mandate regarding the requirements of the firearms training courses. *See* 11 Del. C. § 1448(d)(f)(4)(a)–(k) (providing 11 specific requirements). The Guidelines that Plaintiffs allege require APA review, *see* D.I. 5-1, § IV.C–E, straightforwardly implement the legislature's mandate. *See DeMatteis v. Rise Delaware Inc.*, 315 A.3d 499, 515 (Del. 2024) (finding that the adoption of a healthcare plan authorized by statute was outside the APA's scope). Indeed, the materials of which Plaintiffs complain effectively copy-and-paste language directly from the Statute. To ensure that the legislature's numerous requirements are appropriately applied, it is necessary that training courses be approved and instructors be certified. *See* D.I. 5-1, § IV.C–E (clarifying conditions for approval of certified training courts and

10

instructors). The Guidelines are logically within the scope of SBI's implementation duties. *See Free-Flow Packaging*, 861 A.2d at 1236 ("level of specificity in statute" provided agency authorization to implement fee categories without APA review). Plaintiffs' reliance on *Delaware State Sportsmen's Association v. Garvin* is misplaced: the agency action there did not involve implementation of a statute regime. 2020 WL 6813997, at *10 (Del. Super. Nov. 18, 2020).

Finally, even if the Court were to assume that the referenced Guidelines and materials are invalid under the APA (which it should not), Plaintiffs' Motion cannot survive on APA arguments alone given that their other relief is already available.

## III. PRELIMINARY INJUNCTIVE RELIEF IS NOT WARRANTED.

### A. Preliminary Injunctions Are Extraordinary Relief Not Appropriate Here.

Preliminary injunctions are reserved for "exceptional cases" and "drastic circumstances." *DSSA*, 108 F.4th at 199, 206. The circumstances here hardly qualify. As explained herein, the "shall-issue" licensing Statute is presumptively constitutional; it does not infringe on Plaintiffs right to keep and bear arms. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38. Moreover, several Plaintiffs claim that on November 28—three weeks after their Motion and nearly two weeks after the effective date of the Statute—they plan to purchase a handgun that will require a permit they do not have. They could avoid this fate either by buying before November 16, or applying for a permit. An injunction is unnecessary to avert Plaintiffs' phantom harms, and entering one would harm public safety.

The Third Circuit also cautioned that "injunctions raise [] problems" because, *inter alia*, they are often "granted hurriedly and on the basis of very limited evidence[,]" "[t]ime pressures limit adversarial testing[,]" and when enjoinment of a new law is at issue, "courts must forecast how the law will work." *DSSA*, 108 F.4th at 200 (internal quotation marks and citations omitted); *see Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners, LLC*, 2025 WL 2338069, at *2 (D. Del.

11

**App246**

Aug. 13, 2025) (observing that preliminary relief is an "extraordinary remedy never awarded as of right" and denying motion). Plaintiffs' Motion poses these risks.

### B. Plaintiffs Have Failed to Show Irreparable Harm.

#### 1. Plaintiffs Have Failed to Establish a Risk of Irreparable Harm.

Rather than using the time before the Statute's effective date to apply for a permit or buy a handgun, Plaintiffs brought this Motion. Meanwhile, the State has been issuing permits. Firearms training courses necessary to obtain permits have, and will continue to be, offered. This is far from the "total ban" Plaintiffs allege is imminent. No injunction is necessary today to avoid a harm Plaintiffs can avoid themselves and for which they have plenty of time to do so. And even if—once they apply—it takes some Plaintiffs until after November 28 to satisfy the permitting requirements, the only harm related to that delay is marginal cost. Indeed, their claims of a pressing need for a handgun to protect themselves cannot be squared with failing to buy one in the 18 months since the Statute was enacted. The Plaintiffs who sell firearms may sell them to any customer who has received a permit, and may continue selling a variety of other types of guns.

In any event, Plaintiffs' alleged inability to obtain a firearm permit after November 16, 2025, would not establish a risk of irreparable harm. *DSSA* is instructive. *See* 108 F.4th at 204–05. There, the plaintiffs attested that they intended to purchase firearms and would do so if legal, but the challenged Delaware law outlawed their possession or purchase. *See id.*; Decl. of Cecil Curtis ¶ 11, *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 1:22-cv-00951 (D. Del. Jul 20, 2022) D.I. 21 Decl. of Cecil Curtis at ¶ 11 ("I also desire and intend to acquire additional [banned] firearms . . . ."). The Third Circuit upheld the denial of preliminary relief because the plaintiffs had not "allege[d] a time-sensitive need for such guns" and their "generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'" *DSSA*, 108 F.4th at 205–06 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also*

12

*Koons*, 2025 WL 2612055, at *42 ("[V]iolations of constitutional rights are not presumed irreparable outside the First Amendment context . . . ."). Even if the Delaware statute in *DSSA* violated the plaintiffs' Second Amendment rights, that harm "can be cured after final judgment." 108 F.4th at 205. "That finding alone suffices to support" denial of preliminary relief. *Id*.

So too here. Plaintiffs who seek to purchase firearms have not alleged a "time-sensitive need" for firearms. They only assert a general intent to purchase a firearm. *See, e.g.*, Decl. of Thomas S. Neuberger, D.I. 6, ¶ 25 ("I intend to purchase a Sig Sauer P365 on November 28, 2025 . . . ."); Decl. of Jeffrey W. Hague, D.I. 7, ¶ 17 ("I am aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented. . . ."). This "generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'" *DSSA*, 108 F.4th at 205 (quoting *Mazurek*, 520 U.S. at 972). As for the Plaintiffs who sell firearms, it has long been held that "[e]conomic loss does not constitute irreparable harm," and even where that harm stems from a constitutional violation, it "can be remedied by an award of money damages." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653, 655 (3d Cir. 1994). Plaintiff BKK Firearms claims it faces bankruptcy if temporarily unable to sell handguns, Decl. of Bruce C. Smith, D.I. 8, ¶¶ 17–19, but has presented no financial statements or projections to support this assertion and, even if unable to sell handguns, Plaintiff would be able to sell other firearms not covered by the Statute. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (no irreparable injury where plaintiff's assertion of bankruptcy was "not supported by any financial statements or projections in the record" and plaintiff "still maintains twenty percent of its business"). The evidence also shows that permits are issuing, so *a fortiori* individuals will be able to present proof of permits to purchase handguns from the seller Plaintiffs.

13

Because Plaintiffs will not suffer injury absent preliminary relief, and the injuries they allege would not suffice even if they occurred, this Court should deny their request. *See Or. Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 812 (D. Or. 2022) (denying preliminary injunction of permit to purchase law absent harm because plaintiffs could apply for permit).

### 2. The Harm Plaintiffs Allege Will Not Moot This Case.

The Third Circuit has explained that "the threat of irreparable harm does not automatically trigger a preliminary injunction." *DSSA*, 108 F.4th at 201. "Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Id*. (quoting 11A Wright & Miller § 2948.1, at 129). Thus, "[c]ourts may withhold this extraordinary remedy if a plaintiff's alleged injury does not threaten to moot the case." *Id*.

Even if Plaintiffs' allegations of harm were accurate, the occurrence of those harms would not moot this case because the Court could still grant an effective remedy. Even if Plaintiffs were unable to buy or sell firearms in the near-term (although permits are readily accessible), the Court can nevertheless rule in the course of litigation on Plaintiffs' claims that the Statute infringes on constitutional rights and, if it does, grant an effective remedy by enjoining the Statute's enforcement. The Court could also award damages if Plaintiffs prove economic losses. While Plaintiffs argue this action may be "rendered useless by Plaintiffs' death," Pls.' Br. at 6, this is absurd. Were Plaintiffs truly worried about their safety, they could apply for a permit; they could obtain a rifle or shotgun not covered by the Statute; or they could simply have purchased a handgun anytime in the year-and-a-half since filing their first complaint challenging the Statute.[2]

Plaintiffs have "offered no evidence that without a preliminary injunction, the District

---

[2] Plaintiffs allege they anticipate prices will be favorable on November 28, 2025 (Black Friday). This is speculative. But in any event, the only harm they are alleging in that context is the marginal price difference between the sale price on November 28, 2025, and any day before that.

14

Court will be unable to decide the case or give them meaningful relief[.]" Thus denial of their request is appropriate. *DSSA*, 108 F.4th at 205; *see also Frey v. Nigrelli*, 661 F. Supp. 3d 176, 207 (S.D.N.Y. 2023) (denying request for preliminary injunction because "the alleged violations of Plaintiffs' Second Amendment rights . . . are not sufficient to show irreparable harm.").

### C.      Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits.

Plaintiffs' request for injunctive relief further fails because they have not established any likelihood of success on the merits of their claim. A "strong showing" of a likelihood of success on the merits requires more than a "mere possibility" that relief will be granted. *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Plaintiffs fail to show even a mere possibility of success.

Importantly, Plaintiffs' Motion only argues that the State's alleged inability to implement the Statute violates the Second Amendment. In its November 5, 2025, Oral Order, the Court directed Defendants to present "argument as to the challenged law's consistency with the principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*." D.I. 16. Although Plaintiffs' Motion does not claim that the Statute itself violates the Second Amendment—rather, they argue it will be implemented improperly, thereby creating a "total ban" on handgun sales—such a claim would have no likelihood of success. This is because the Statute fits squarely within the bounds of permissible regulations under Second Amendment: (i) the Statute is a presumptively constitutional shall-issue permitting regime, and (ii) the Statute is consistent with this Nation's historical tradition of firearm regulation. Plaintiffs' Brief does not make any Fourth Amendment or void for vagueness claims for expedited relief, but they too would be unlikely to succeed. *See Neuberger I*, D.I. 42, at 16–25.

### 1.      Shall-Issue Permitting Regimes Like the Statute Are Permissible.

As Defendants explained in *Neuberger I*, the Statute is a presumptively constitutional "shall-issue" permitting regime. *See Neuberger I*, D.I. 42, at 12–14. The Third Circuit recently

15

**App250**

explained that determining the constitutionality of requirements associated with permitting laws "does not require an assessment of historical analogues because shall-issue licensing regimes . . . remain presumptively constitutional." *Koons*, 2025 WL 2612055, at *21. *Bruen* explains that shall-issue regimes, which employ "narrow, objective and definite standards, "often require applicants to undergo a background check or pass a firearms safety course," are permissible under the Second Amendment because they, like the Statute, "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 597 U.S. at 38 n.9; *see also Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216 (4th Cir. 2024) (upholding permit-to-purchase law "nearly identical" to the Statute as presumptively constitutional) (*Neuberger I* Plaintiffs characterized the Maryland statute as "nearly identical" to the Delaware statute in their Complaint. *Neuberger I*, D.I. 1, ¶ 67); *Or. Firearms Fed'n, Inc. v. Kotek*, 682 F. Supp. 3d 874, 936–40 (D. Or. 2023) (upholding permit-to-purchase statute requiring permit, fingerprinting, and training course).

### 2.   The Statute is Consistent with the Nation's Regulatory Tradition.

Any Second Amendment challenge would be unlikely to succeed on the merits because the Statute is "consistent with this Nation's historical tradition of firearm regulation."[3] *Bruen*, 597 U.S. at 17; *see Koons*, 2025 WL 2612055, at *23 (plaintiffs failed to demonstrate likelihood of success where the law "fit[] squarely within the principles underlying our Nation's history of firearm regulation"); *DSSA*, 108 F.4th at 217 (Roth, J., concurring) (no likelihood of success where "Delaware's laws are consistent with the nation's historical tradition of firearm regulation").

*Bruen* requires a "nuanced approach" to historical analysis to avoid putting a "regulatory

---

[3] Defendants emphasize that this historical analysis has been provided in response to the Court's request and in the context of procedural limitations. It should be understood as brief summary which merely scratches the surface of the full breadth of the Statute's historical analogues. Should these cases reach full merits briefing, Defendants intend to provide expert testimony.

16

straightjacket" on governments seeking to protect the public from dangerous firearms. *Bruen*, 597 U.S. at 27, 30. Indeed, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *United States v. Rahimi*, 602 U.S. 680, 691–92 (2024). A modern regulation need not be the "twin" of a historical regulation, but rather the two should be "relevantly similar." *Bruen*, 597 U.S. at 29–30. When determining if regulations are relevantly similar, the Court considers "*how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29 (emphases added). "[T]he analogy turns on similarity in principle, not specific facts[.]" *United States v. Harris*, 144 F.4th 154, 158 (3d Cir. 2025).

The Statute is consistent with the principles that underpin the Nation's regulatory tradition. The United States has a long history of requiring individuals acquire some type of permit to purchase a firearm. Permitting schemes emerged in the Reconstruction Era and became "the dominant model of firearms regulation in America" as gun violence emerged as a grave and novel societal problem. Saul Cornell, *The Right to Regulate Arms in the Era of the Fourteenth Amendment: The Emergence of Good Cause Permit Schemes in Post-Civil War America*, 55 U.C. Davis L. Rev. Online 65, 89 (2021). These "ordinances were first enacted by municipalities" and "were soon emulated by states." *Id.* By the end of the 19th century, "[r]esidents in the ten most populous cities in America . . . all lived under some form of restrictive public carry regime" including "permit schemes." *Id.* at 84. These permitting schemes, like the Statute, sought to ensure that those possessing firearms were "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 70. Examples of historic permitting laws include: 1893 Fla. Laws 71, 71–72; 1905 N.C. Sess. Laws 545, 547; 1902 Ga. Laws 427, 434–35; Jersey City, N.J., An Act to Re-organize the Local Government of Jersey City, § 3 (1874); N.Y.C., N.Y., Ordinances ch. 6, art. 27 § 265 (1881).

"[I]mposing similar restrictions for similar reasons" as historical firearm regulations is a

17

"strong indicator" that a contemporary law will "fall within a permissible category of regulations." *Rahimi*, 602 U.S. at 692. Here, the Statute advances the same interests that motivated historical firearm regulations: reducing gun violence and promoting public safety. *See* Cornell, *supra* 17, at 68–69, 78; Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55, 58 (2017) ("America's early governmental preoccupation with gun possession, storage, and regulation was tied to the overarching concern for public safety."). Each component of the Statute helps achieve these purposes, and each has historical analogues:

(i) <u>The applicant must be at least 21 years old, 11 Del. C. § 1448D(f)(1)</u>: Federal law has prohibited the sale of handguns to persons under age 21 since 1968. 18 U.S.C. § 922(b)(1). Further, age restrictions were common before and during the Reconstruction Era, including in Delaware, which outlawed the sale of deadly weapons to minors. *See, e.g.*, An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, ch. 548, § 1, 1881 Del. Laws 987.

(ii) <u>The applicant must not be prohibited from purchasing, owning, possessing, or controlling a deadly weapon—*e.g.*, because the applicant was convicted of a felony or domestic violence offense, or is subject to a protective order, *id.* § 1448D(f)(2)</u>: In *Rahimi*, the Supreme Court upheld a statute prohibiting individuals subject to domestic violence restraining orders from possessing firearms. 602 U.S. at 698.

(iii) <u>There must not be probable cause to believe that the applicant poses a danger to themselves or others, *id.* § 1448D(f)(3)</u>: "From the beginning of the Nation, jurisdictions limited the ownership and use of guns to those who were not considered dangerous by their communities[,]" *Koons*, 2025 WL 2612055, at \*22 (citing *Rahimi*, 602 U.S. at 693–98 (collecting historical statutes that "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.")).

18

**App253**

(iv) <u>The applicant must have passed a firearms training course within five years of the application,</u> *id.* § 1448D(f)(4): "England ha[d] an extensive tradition of training mandates" back to 1363. Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*, 31 Wm. & Mary Bill Rts. J. 93, 99 (2022). That tradition continued in America from colonial Times. *Id.* at 108.

(v) <u>The applicant cannot be otherwise prohibited from purchasing or possessing firearms under Delaware or federal law,</u> *id.* § 1448D(f)(5).

### D.       The Equities and the Public Interest Weigh in Defendants' Favor.

To balance the equities, the Court weighs the harm the opposing party would suffer from an injunction against the harm to the movant absent the injunction. *See Winter*, 555 U.S. at 24. "[W]hen the Government is the opposing party," factors three and four merge because harm suffered by the Government constitutes harm to the public. *Nken*, 556 U.S. at 435.

"[A court's] consideration of risk to the public's safety before providing preliminary injunctive relief is crucial." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (federal government has "compelling interests in public safety"). Defendants have a compelling interest in protecting Delawareans' safety by ensuring that those who wish to purchase handguns have the proper qualifications and training. The Statute helps keep the public safe.

Moreover, "'[t]here is always a public interest in prompt execution' of the laws," especially where a federal court is asked to interfere with the enforcement of a state law. *DSSA*, 108 F.4th at 205 (quoting *Nken*, 556 U.S. at 436). While federal courts may strike state laws that go beyond the state's constitutional authority, this power hinges on a complete record. "Without the clarity of a full trial on the merits . . . [federal courts] must err on the side of respecting state sovereignty." *Id.* at 206. Invalidation of the Statute now would constitute an affront to state sovereignty.

19

Plaintiffs claim the public interest weighs in their favor based solely on their assertion that the "enforcement of an unconstitutional law vindicates no public interest." Pls.' Br. at 17 (quoting *K.A. ex rel. Ayers v. Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d. Cir. 2013)). Yet their Motion challenges an imagined future "total ban" that would *conflict* with the Statute at the heart of their Complaint. Plaintiffs have not demonstrated that they will likely suffer a deprivation of their constitutional rights and so cannot show that they will face *any* significant harm in the absence of injunctive relief. In contrast, any preliminary injunctive relief in this case would harm the State's public safety interests and "threaten[] federalism and the separation of powers[.]" *DSSA*, 108 F.4th at 205. Because the harms to the State greatly outweigh any individual harms alleged by Plaintiffs, public interest weighs in favor of denying a preliminary injunction.

<div align="center">**CONCLUSION**</div>

For the foregoing reasons, the Motion for Expedited Injunctive Relief should be denied.

<div align="center">20</div>

<div align="right">**App255**</div>

Dated: November 10, 2025

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

*Of Counsel*:

FRESHFIELDS US LLP

 */s/ Jennifer K. Aaronson*
Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Ian.Liston@delaware.gov
jennifer.aaronson@delaware.gov

Jennifer B. Loeb (*pro hac vice* forthcoming)
Austin R. Evers (*pro hac vice* forthcoming)
Lauren Kaplin (*pro hac vice* forthcoming)
Jacob Johnston (*pro hac vice* forthcoming)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice* forthcoming)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*

21

**App256**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 10, 2025, he caused the forgoing Brief in Support of Defendants' Opposition to Plaintiffs' Motion for Expedited Injunctive Relief to be served on all counsel of record via the Court's electronic filing service.

*/s/ Ian R. Liston*
Ian R. Liston (#5507)

22

**App257**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| |
|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., <br><br><br> Plaintiffs. <br><br> v. <br><br><br> JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, <br><br> Defendants. |

**DECLARATION OF SERGEANT JASON L. STEVENSON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIF**

I, Jason L. Stevenson, affirm the truth of the following representations under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1. I am over the age of 18 and have personal knowledge of the facts and events referred to in this Declaration.

2. I submit this Declaration in support of Defendants' opposition to Plaintiffs' motion for expedited injunctive relief.

3. I am a sergeant in the Delaware State Bureau of Identification ("SBI"), a unit of the Delaware State Police. Within the SBI, I have been assigned to the Permit to Purchase Section ("P2P Section") since February 2025 and have been responsible for implementing the P2P Program. P2P reviews applications for, and issues, handgun purchasing permits. The P2P Section was created in connection with Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which becomes effective on November 16, 2025.

4. I have reviewed Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint") and Plaintiffs' Opening Brief in Support of Their Motion for Expedited Injunctive Relief ("Motion"). I believe that several key factual allegations in Plaintiffs' Complaint and Motion are inaccurate or lack sufficient context, and I've tried to correct and clarify these points below.

**The P2P Permitting System Is Up and Running**

5. Under SS 1 for SB2, individuals who wish to purchase a handgun in Delaware will be required to obtain a permit subject to several prerequisites.

6. The processes and resources necessary for applicants to obtain the required permit are in place and functional, in advance of the effective date of SS 1 for SB2. It is, and will

2

**App259**

continue to be, lawful and possible to purchase a handgun in Delaware by obtaining the permits required by SS 1 for SB2.

7.      The application process to obtain the required permits has been open since at least November 1, 2025.[1]  On October 28, 2025, I sent an email to all federally licensed firearm dealers (FFLs) in the State informing them of the portal's launch.  Plaintiff BKK Firearms was among the dozens of FFLs on the recipient list. A copy of the email is attached as Exhibit A to this declaration.

8.      P2P applications are available online at https://dsp.delaware.gov/permit-to-purchase and in hard copy at the eight State Police Troop locations around the State.

9.      Applicants are able to satisfy the prerequisites for a permit, including having their fingerprints taken at one of nine IdentoGO locations across the State, IdentoGO_Fingerprinting_Locations_September_2023.pdf, and taking the requisite safety course (if they are not otherwise exempt from this requirement). As of November 7, 2025, more than 200 applicants have successfully been issued P2P permits. Redacted copies of several such permits are attached as Exhibit B to this declaration.

10.     To my knowledge, none of the Plaintiffs who allege they plan to purchase a handgun after November 16, 2025, have applied for a permit.

### Mischaracterizations of the Status of the P2P Permitting System

11.     Plaintiffs contend the State has failed to put in place the necessary "infrastructure" for individuals to apply for and obtain a permit, and that, as a result, no one has been able to

---

[1] Before that, on October 6, 2025, the Delaware State Police contacted Delaware FFLs and informed them they could register to be approved training instructors on the Delaware State Police website, www.dsp.delaware.gov. Plaintiff Bruce C. Smith, owner of BKK Firearms, completed this process and is listed as an approved instructor as of Nov. 3, 2025.

3

**App260**

obtain a permit thus far. This is inaccurate. The State has already processed and approved 218 permits as of the date of this Declaration.

12.    SBI does not track the type of applicant (i.e., law enforcement vs. civilian). However, to the best of my personal knowledge, at least 2 of these were civilian permits.

13.    As of the date of this Declaration, there are 7 permits pending review.

*Online & Offline Resources*

14.    Plaintiffs allege certain portions of the Delaware Police's P2P website (https://dsp.delaware.gov/permit-to-purchase/) are not fully operational. For example, Plaintiffs allege that as of October 31, 2025, the website lacked a link to an application. I lack personal knowledge of Plaintiffs' experience with the website, but since October 28, 2025, the website has provided all necessary material to apply for a permit, including (1) a step-by-step guide for applicants, (2) the application questionnaire, (3) a link to Delaware's Handgun Qualified Purchaser Permit law (11 Del C. § 1448D), and (4) answers to frequently asked questions. The website includes a direct P2P telephone number (302-741-2800) as a helpline for persons who have questions about the process or need assistance with the application process. To date, SBI's P2P Section has no record of anyone calling into the helpline to seek assistance with their online P2P application.

15.    Plaintiffs highlight that the website states that P2P regulations are "to be developed." The website does contain that language, but it has no bearing on the availability of permits to applicants. The quoted language is a placeholder for regulations that may be promulgated in the future.  No such regulations are currently necessary to apply for or issue P2P permits.

4

**App261**

16.    Individuals can also apply for a permit without using the website, as SBI has provided a paper alternative to ensure accessibility. All the material an individual needs to apply for a permit is available in hard copy at each of the Delaware State Police Troop locations in the State; applications can then dropped off at SBI.

*Processing Resources*

17.    Plaintiffs allege that all applications must be "processed" through one person—i.e., the Director of the SBI. To clarify, a team of people is responsible for processing and validating permit applications, not a single individual.

18.    Plaintiffs allege that SBI lacks the necessary personnel to operate the P2P program. This is not accurate. SBI has personnel and resources in place to process applications and is doing so. And, to prepare for a potential increase in permit applications, SBI has hired four additional troopers and five civilian analysts to join the P2P Section.

19.    Plaintiffs allege it will take more than 30 days to process a permit application. I disagree. SBI has processed all permit applications well within the 30-day period provided by the statute. Assuming an applicant has no extensive criminal history, it has typically taken SBI less than 30 minutes to complete a background check. Once this is complete (and assuming the necessary fingerprints, photo ID, and firearms training course certificate have been properly submitted), an application can be validated almost immediately. SBI has already, on multiple occasions, granted permits within a day of an application. In 90% of cases thus far, permits have been granted within one to three business days.

5

**App262**

*Availability of Training*

20.    Based on my knowledge, applicants for permits can easily complete the required training course within days.

21.    The State maintains a list of 99 instructors who can provide firearm training across at least 60 locations. *See* https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/11/Permit-to-Purchase-List-of-Approved-Firearms-Trainers-11032025.pdf. To the best of my knowledge, there are at least fourteen publicly available trainings offered between November 7, 2025 and November 16, 2025, the date on which SS 1 for SB 2 goes into effect.

22.    An individual and a business with the same names as two Plaintiffs, Bruce Smith and BKK Firearms and Defensive Systems, are included on the list of approved training providers.

23.    Plaintiffs suggest that completing the required training is not possible because applicants would need to possess a handgun to participate in the training course that SS 1 for SB 2 requires. This is inaccurate, as several instructors on our Approved List of Firearms Training Instructors provide firearms on site for purposes of the trainings.

*P2P Permit Process vs. Firearm Transaction Approval Program*

24.    Plaintiffs raise concerns about an October 6, 2025 email from the Delaware State Police to FFLs regarding the implementation of the Firearm Transaction Approval Program ("FTAP"). The availability of FTAP resources has no impact on an individual's ability to

6

**App263**

qualify for, apply for, or obtain a permit. Moreover, delays in the deployment of FTAP resources has not impaired the completion of background checks.

25. Plaintiffs allege that delays in the deployment of FTAP render the SBI unable to conduct the background checks needed to approve permit applications. This is inaccurate in multiple respects.

26. FTAP is a separate initiative from the work conducted by the P2P Section.

27. An individual seeking to buy a firearm in Delaware undergoes two separate background checks. The first check is part of the SS 1 for SB 2 permit application process and is overseen by SBI's P2P Section. Applicants are able to schedule fingerprinting via the website https://uenroll.identogo.com. The Delaware website detailing the P2P process provides a service code to facilitate scheduling. The P2P Section reviews the results generated by FBI's National Instant Criminal Background Check System (NICS) with fingerprints submitted by the permit applicant. SBI reviews further details within National Criminal Justice Information Center (NCIC) and the Delaware Criminal Justice Information System (DELJIS), as needed.

28. The second check occurs *after* an individual has obtained a permit and goes to a FFL to purchase a handgun. FFLs are required under federal law to initiate a separate NICS check, which the purchaser must pass before the sale can be completed. FFLs are additionally required under SS 1 for SB 2 to verify the validity of the purchaser's handgun permit with the SBI's P2P Section.

29. Though Plaintiffs are correct that FTAP's launch has been delayed, this delay has no impact on individuals purchasing handguns; purchasers are still able to obtain permits and purchase firearms prior to FTAP's launch. FTAP's launch will only result in two changes. *First,*

7

**App264**

FTAP will make SBI (rather than the FBI) the point of contact for any background checks initiated by FFLs at the time of sale. This change is expected to make marginal improvements in the processing time for FFL-initiated background checks. We estimate that the check will take five fewer minutes. *Second*, once FTAP is launched, FFLs will no longer need to separately call the SBI's P2P Section to verify the validity of a purchaser's handgun permit, as both the permit and the background check will be integrated into one process. Again, this will marginally accelerate the purchasing process, as the process of calling SBI takes only a few minutes, and beginning on November 16, 2025, SBI employees will be available Monday through Saturday from 8 AM to 9 PM and on Sunday (the same operational hours as FFLs) to service FFLs' requests to validate permits. Currently, SBI employees are available Monday through Friday from 8 am to 4 pm.

30.     FFLs are required under federal law to initiate a background check via NICS until such time as FTAP is operational.  FFLs have used this process for more than fifteen years and DSP will not criminally charge FFLs for non-compliance with 1448A(a)(1), (f), and (h) or 1448D by continuing to use NICS until FTAP is fully implemented.  This is because FTAP does not change the background check process except to have SBI serve as the point of contact for the check versus the FBI.

*Penalties for Purchasers*

31.     Plaintiffs state that SS 1 for SB 2 criminalizes the acquisition of a handgun without a permit to purchase. This is incorrect; the law does not include criminal penalties for purchasers who purchase a handgun without a permit.

32.     A person issued a handgun qualified purchaser permit may purchase handguns using the handgun qualified purchaser permit while the handgun qualified purchaser permit is

8

**App265**

valid. A permit under SS1 for SB 2 is not required to own a handgun after it has been validly purchased. There is no penalty for handgun owners who allow their permits to lapse after validly purchasing a handgun.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 10, 2025

Jason L. Stevenson

9

**App266**

# EXHIBIT A

## HENSLEE, Brandt

| | |
|---|---|
| **From:** | Stevenson, Jason L (DSP) <Jason.Stevenson@delaware.gov> on behalf of DSP_SBIP2PMail, DSP_SBIP2PMail (MailBox Resources) <DSP_SBIP2PMail@delaware.gov> |
| **Sent:** | Tuesday, October 28, 2025 1:55 PM |
| **To:** | Elizabeth.Harris@Cabelas.com; pjl1183@verizon.net; rwarren@comcast.net; tarnold197844@verizon.net; M.Barrett@Barrcosec.com; info@bbcg.co; billysgunsandammo@gmail.com; info@crazycoatings.com; fdean@deandigital.com; thekegs@verizon.net; INTSHOOTER@yahoo.com; dut300@verizon.net; federalfirearm@rocketmail.com; firststatefirearms@outlook.com; Wilson.joseph@gmail.com; eddie@getagrip302.com; Dmitry@Custommadearms.com; gpettinaro@pettinaro.com; johnc@udel.edu; knfpistolas@gmail.com; nccfflde@gmail.com; libertyfirearms76@gmail.com; matthew@djjams.us; nicksgunshop@gmail.com; madmooseamfas@gmail.com; sales@millersguncenter.com; NJMsolutions@protonmail.com; QueksLLC@Gmail.com; starquestshooterssupply@gmail.com; targetmaster1@verizon.net; topammunitionllc@gmail.com; woodcrestsupply@yahoo.com; staber95@verizon.net; josh@x-ringsupply.com; Training@DelawareTactical.com; greg@ahsat.com; gunsusa@comcast.net; HarringtonPawn@Gmail.com; pf@pearsonfirearms.com; Jburkert@Comcast.net; ShootersATFcompliance@Gmail.com; SmyrnaSportingGoods@Gmail.com; Preston@Spichercustom.com; TheTradingPost02@Gmail.com; Troutmanmachine@gmail.com; JVGunsmith@Gmail.com; annisarms@comcast.net; twyshock@arrowsafetydevice.com; contact@atlantisusa.com; Wilkie94@verizon.net; stevebairdjr@gmail.com; bakrod@msn.com; bricker@bakershardware.com; info@bestshotde.com; info@bkkfirearms.com; burtsbunker@gmail.com; info@chancesfirearms.com; cdmincshootingsupplies@gmail.com; guy@coastalfirearmsllc.com; gusc1911@gmail.com; robdanzi@hotmail.com; mhdgunshop@gmail.com; jonestuart@yahoo.com; delmarvaspeed@gmail.com; jaydeputy@comcast.net; NDWhitaker@DipItIn.com; eastcoastdefense@gmail.com; cgeisler07@comcast.net; emmertauctions@aol.com; Training@firingdistance.com; fred5580@hotmail.com; Pawnman33@AOL.com; gehardware@mediacombb.net; david@generalstore24.com; sales@gunshooter.com; ejr12@live.com; hcoutfitters@verizon.net; dhop500@comcast.net; ltgpd@aol.com; jamiepwalker@gmail.com; lankfordsgunshop@gmail.com; lighthouseoutfitters54@gmail.com; roberth@mfg-support.com; ekajewelers1990@gmail.com; milfordpawn03@gmail.com; jfmumford56@gmail.com; onestopgunshopllc@gmail.com; atlanticpawn302@gmail.com; scpawn@yahoo.com; rlservices4747@Comcast.net; info@range-time.com; scott@reagan-watson.com; davidvinescreekmarina@gmail.com; resortpatrol@yahoo.com; 7739info@rommelusa.com; snctactical@comcast.net; shoreguns@msn.com; nitro8770@gmail.com; ses218@gmail.com; southerndearmory@comcast.net; steelesgunshop3@gmail.com; billtattersall@gmail.com; taylored1@comcast.net; roger@theoldsoldier.com; hunterswidow2@comcast.net; glenn@reagan-watson.com; Gunzandstuff@comcast.net; wilsonsauction@aol.com; ronwisseman@gmail.com; jovic6@verizon.net; grayboy6506@hotmail.com; jstephenson@basspro.com; firststatefirearmsNACC@gmail.com; targetmaster2@gmail.com; josh@delawaretactical.com; mhdcontour@comcast.net; robert.annis@annisarms.com |
| **Subject:** | Handgun Qualified Purchaser Permits |
| **Attachments:** | P2P Approval.doc |

Good afternoon,

1

**App268**

DSP has opened the application portal for permit to purchase and has begun accepting applications for handgun qualified purchaser permits.  In an effort to expedite the issuance of permits, once an applicant is approved, an email will be sent to the email address provided on the application.  Attached to the email will be an approval letter which contains the applicant's permit number and expiration date.  This letter can be used in lieu of the permit card until they receive their permit in the mail.  You still must contact the Permit to Purchase section to verify the permit (or letter) is valid prior to transferring any handgun.  Again, the phone number for the Permit to Purchase section is 302-741-2800.  An example letter is attached.

Thank you,



Sergeant Jason Stevenson 384
Permit to Purchase
Delaware State Police
600 South Bay Rd, Suite 1
Dover, DE 19901
302-741-2839

2

**App269**

# EXHIBIT B

**STATE OF DELAWARE**

EXPIRES  10/30/2027
PERMIT #2025000069

**HANDGUN PURCHASER PERMIT**

**STATE OF DELAWARE**

EXPIRES  10/29/2027
PERMIT #2025000051

**HANDGUN PURCHASER PERMIT**

**STATE OF DELAWARE**

EXPIRES  10/30/2027
PERMIT #2025000064

**HANDGUN PURCHASER PERMIT**

**STATE OF DELAWARE**

EXPIRES  10/30/2027
PERMIT #2025000077

**HANDGUN PURCHASER PERMIT**

**STATE OF DELAWARE**

EXPIRES  10/30/2027
PERMIT #2025000076

**HANDGUN PURCHASER PERMIT**

**App271**

STATE OF DELAWARE

EXPIRES  10/29/2027
PERMIT #2025000053

HANDGUN PURCHASER PERMIT

STATE OF DELAWARE

EXPIRES  10/30/2027
PERMIT #2025000025

HANDGUN PURCHASER PERMIT

STATE OF DELAWARE

EXPIRES  10/29/2027
PERMIT #2025000015

HANDGUN PURCHASER PERMIT

STATE OF DELAWARE

EXPIRES  10/30/2027
PERMIT #2025000023

HANDGUN PURCHASER PERMIT

STATE OF DELAWARE

EXPIRES  10/29/2027
PERMIT #2025000021

HANDGUN PURCHASER PERMIT

STATE OF DELAWARE

EXPIRES  11/03/2027
PERMIT #2025000166

HANDGUN PURCHASER PERMIT

**App272**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., | : : : : : : : : : : |
| Plaintiffs. | : : |
| v. | : Civil Action No. 1:25-cv-01341-MN : |
| JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, | : : : : : : : |
| Defendants. | : : |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR EXPEDITED INJUNCTIVE RELIEF</u>**

OF COUNSEL:
Joseph G.S. Greenlee
National Rifle Association of
  America – Institute for Legislative
  Action
11250 Waples Mill Road
Fairfax, VA  22030

Francis G.X. Pileggi (No. 2624)
Keith A. Walter (No. 4157)
Alexander D. MacMullan (*pro hac vice* admission
  pending)
LEWIS BRISBOIS BISGAARD & SMITH LLP
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com
Alexander.MacMullan@LewisBrisbois.com

*Counsel for Plaintiffs*

Dated:  November 12, 2025

**App273**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  CHALLENGERS HAVE STANDING ....................................................................2

III.  THE EXPEDITED INJUNCTIVE RELIEF IS NOT MOOT ......................................4

A.  Challengers have been unable to complete the Permit Bill's application process.................................................................................................................4

B.  The State did not timely implement the Permit Bill ...............................................5

C.  The State's own statistics demonstrate there will be a de facto handgun ban on November 16th ...............................................................................................6

IV.  THE PERMIT BILL VIOLATES THE SECOND AMENDMENT AND CHALLENGERS ARE LIKELY TO SUCCEED ON THE MERITS ........................7

A.  The Permit Bill Is Not Presumptively Constitutional .............................................7

B.  The State Provides No Evidence that the Permit Bill Fits Within the Nation's Historical Tradition of Firearm Regulation................................................8

V.  CHALLENGERS HAVE SHOWN IRREPARABLE HARM......................................9

VI.  THE STATE'S ARGUMENT THAT AN INJUNCTION WOULD HARM THE PUBLIC SAFETY INTERESTS IS UNFOUNDED.........................................10

i

166888215

**App274**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridgeville Rifle & Pistol Club, Ltd. v. Small*,
  176 A.3d 632, 642 (Del. 2017) ........................................................................................2

*Carney v. Adams*,
  592 U.S. 53, 60, 63 (2022)..............................................................................................3

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dept. of Safety and*
  *Homeland Security*, 108 F. 4th 194, 206 (3rd Cir. 2024) ........................................3, 9

*Del. State Sportsmen's Ass'n v. Garvin*,
  196 A.3d 1254, 1269 (Del. Super. Ct. 2018) ..................................................................3

*Del. State Sportsmen's Ass'n v. Garvin,*
  2020 Del. Super. LEXIS 2927 (Del. Super. Ct. Nov. 18, 2020)..................................3, 6

*Ellison v. Am. Bd. Of Orthopedic Surgery*,
  11 F. 4th 200 (3d Cir. 2021) ............................................................................................3

*Koons v. Attorney Gen. N.J.*,
  2025 No. 23-1900, 2025 WL 2612055, at 43 (3d Cir. Sep. 10, 2025), as amended
  (Sept. 17, 2025)..........................................................................................................7, 10

*Lara v. Comm'r Pa. State Police*,
  125 F.4th 428, 441 (3d Cir. 2025) ...................................................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 561 (1992)..................................................................................................3

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022)..............................................7

*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
  805 F.2d 351, 356 (10 Cir. 1986)...................................................................................10

*Watson v. Stone*,
  4 So. 2d 700, 701 (Fla. 1941)...........................................................................................8

**Other Sources**

Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*,
  31 Wm. & Mary Bill Rts. J. 93, 99 (2022) ......................................................................9

ii

166888215

**App275**

## I.    INTRODUCTION

This lawsuit challenges the constitutionality of the Permit Bill[1] that the Governor signed into law about 18 months ago. But only at the eleventh hour has the State scrambled to put in place the necessary procedures and infrastructure to implement the Permit Bill before the State begins enforcement on November 16, 2025.

Since at or about the time this lawsuit was filed with a motion seeking expedited injunctive relief, the facts have changed. But unchanged is the fire drill the State caused by the mad dash it is requiring everyone to participate in because of its failure to plan in advance over the last 18 months..

Despite the moving target, the Challengers[2] have maintained their focus. Judicial relief is still needed notwithstanding daily factual updates in the State's rush to make up for their lack of preparation over the last 18 months.

The updated Declarations that are submitted with this Reply Brief demonstrate some measure of factual dispute, but what cannot be disputed is that related to the unconstitutionality of the Permit Bill itself, Challengers will suffer imminent actual harm—such as the risk of injury due to an inability to use a handgun in self-defense—without an injunction to prevent enforcement of the Permit Bill. The State's feckless last minute rollout of the Permit Bill, has resulted in only a relatively minuscule number of permits very recently issued, compared to the estimate of 40,000 to 50,000 Delawareans who purchase handguns every year.[3]

---

[1] Capitalized terms have the same meaning as in our Opening Brief.

[2] Thomas S. Neuberger; Jerry L. Martin; William R. Hague, Jr.; Bruce C. Smith; Bridgeville Kenpo Karate, Inc., doing business as BKK Firearms (BKK); Delaware State Sportsmen's Association ; and Bridgeville Rifle and Pistol Club, Ltd. (collectively "Challengers")

[3] *See* Declaration of Alexander MacMullan at ¶s 22-26..

1

166888215

**App276**

Simple arithmetic and deductive reasoning leads to the conclusion that the chaotic implementation of the Permit Bill will result in a de facto ban on the purchase and sale of handguns for those who cannot obtain the required permit by November 16, 2025. The vast majority of the paucity of permits only recently issued were made available to insiders—those who are exempt from most of the prerequisites for obtaining a permit. This is too little, too late.

The enforcement date for the Permit Bill should be extended until the State can demonstrate that eligible persons such as the Declarants can obtain a permit before the Permit Bill is enforced. The Permit Bill gives the State 30 days to review a permit application—with no penalty to the State, and no recourse to the applicant if the State takes more than 30 days. Thus, the enforcement of the Permit Bill should be extended at least 30 days so that those who seek a permit will have a reasonable time to obtain one. The State in its Opening Brief said that November 1, 2025, was the first date that permits were issued—*i.e.*, less than 30 days from Nov. 16, 2025. Opp. at 4. The State should not require permits until the average eligible person has a reasonable time to obtain one.

## II.    CHALLENGERS HAVE STANDING

The State's arguments that the Challengers do not have standing to contest the constitutionality of the Permit Bill suggests a lack of awareness or a disregard for the precedent of multiple court decisions in which the Challengers have been successful in contesting the constitutionality of Delaware statutes and regulations that violate the fundamental civil right to keep and bear arms. Both explicitly and implicitly, the following Delaware Supreme Court decision and two Superior Court decisions, that the State lost and did not appeal, recognize that the Delaware State Sportsmen's Association and Bridgeville Rifle & Pistol Club, Ltd., had standing in a similar context to challenge regulations that violated the right to keep and bear arms. *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 642 (Del. 2017); *Del. State Sportsmen's Ass'n v. Garvin*,

2

166888215

**App277**

196 A.3d 1254, 1269 (Del. Super. Ct. 2018); *Del. State Sportsmen's Ass'n v. Garvin,* Del. Super., 2020 LEXIS 2927 (Del. Super. Ct. Nov. 18, 2020). In another case still pending in this court, which has not yet been finally decided on the merits, and which was remanded by the U.S. Court of Appeals for the Third Circuit on procedural issues, *Del. State Sportsmen's Ass'n, Inc. v. Del. Dept. of Safety and Homeland Security*, 108 F. 4th 194, 206 (3rd Cir. 2024), standing of both DSSA and Bridgeville was at least implicitly recognized.

Although the section of the State's Answering Brief discussing standing does not appear to list the elements of standing, they include the following: first, the individual Challengers and the organization Challengers will suffer an actual or imminent concrete injury if they are not permitted to purchase or sell a handgun on November 16, 2025, and if they are unable to obtain a permit by that date. Declarants show they cannot do so. Second, there is a direct connection between the injury described and the unconstitutional conduct of the State complained of. Third, it is likely that a favorable decision in this matter will redress the injury complained of. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The State's reliance on *Lujan* can be distinguished on the facts. In *Lujan,* the plaintiffs had not described any concrete plans to visit the habitats about which the lawsuit was involved. Likewise distinguishable on a factual level are *Ellison v. Am. Bd. Of Orthopedic Surgery*, 11 F. 4th 200 (3d Cir. 2021) (plaintiff, unlike in the instant matter, lacked standing because he failed to allege an imminent injury and did not demonstrate that he was "able and ready" to apply for the privileges that he was challenging); *Carney v. Adams*, 592 U.S. 53, 60, 63 (2022) (the court determined that the plaintiff never demonstrated that he was "able and ready" to apply for the position at issue and that he had not presented any "anticipated time frame.") The Declarations in this case present opposite facts.

3

166888215

The State argues that BKK and Smith do not seek permits and therefore do not seek relief, but the truth is that they both will suffer if they cannot sell firearms without eligible purchasers having a permit. Therefore, the relief requested directly impacts an injury they will suffer.

## III.   THE EXPEDITED INJUNCTIVE RELIEF IS NOT MOOT

### A.   Challengers have been unable to complete the Permit Bill's application process

The State argues that this issue is moot because it has very recently distributed some permits, largely to law enforcement officers exempt from most requirements. However, Challengers still need the injunctive relief they seek—namely, postponement of enforcement of the Permit Bill until all eligible persons have a reasonable time to apply for one. Indeed, the Challengers have attempted to apply for a Permit, but have not been able to obtain one. Challenger Thomas S. Neuberger ("Neuberger"), attempted to apply for a Permit on October 27, 2025, on the Delaware State Police Website, but it read "LINK TO COME." Second Decl. of Thomas S. Neuberger (Neuberger 2nd Decl.) ¶7.  As a result, Neuberger was unable to apply. This is not surprising since the State admits the application process to obtain the Permit did not open until November 1, 2025.  Decl. of Jason L. Stevenson D.I. 20 ("Stevenson Decl.") ¶7. Since that time Neuberger has attempted to apply for a Permit on five separate occasions, with the latest attempt on November 11. Neuberger 2nd Decl. ¶¶ 9, 21, 23, 28, 31.  All of his attempts have been unsuccessful. *Id*. ¶¶ 9, 21, 27, 35, 39.

In his Declaration, Neuberger identified at least two reasons for not being able to complete the Permit application. *See* Neuberger 2nd Decl. ¶s 11-20.

Challenger Jerry L. Martin ("Martin"), had a similar experience. As detailed in his Declaration, he also unsuccessfully attempted to apply for a Permit on November 9. Decl. of Jerry L. Martin submitted herewith ("Martin Decl.") ¶s 12-15. Accordingly, contrary to the State's

4

contention, Challengers do not "already have what they are seeking," and will be unable to purchase a handgun on the Permit Bill's November 16 enforcement date, thereby depriving them of their constitutional rights and causing them irreparable harm.

### B. The State did not timely implement the Permit Bill

An unconstitutional de facto handgun ban will occur if the Permit Bill is allowed to be enforced on November 16. This crisis is entirely of the State's own making.  Having created the problem, the State now asks this Court to shield it from the consequences. The Permit Bill was signed into law 18 months ago. However, it was not until less than two weeks ago that the State claims to have opened the permit application process to the public. Stevenson Decl. ¶7. The State's Declarant mentions only that: (a) an email was sent to Delaware FFLs on October 6, 2025 informing them they could register to be approved training instructors (but the list of approved training instructors was not released to the public until on or about November 3, 2025, almost a month later), and (b) an October 28, 2025 email from the State advising the FFLs of the Portal's upcoming launch. *Id.* The undisputed fact remains that the State waited over 17 months to provide public details of the rollout of the Permit Bill, and has been scrambling ever since.[4]

SBI has also created regulations that don't comply with the Administrative Procedures Act. The Delaware State Police has issued, to FFL's and prospective trainers, Firearms Training Course Guidelines that define "Firearms Training Course" as "a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and *Regulations* established  by SBI." *See* Exhibit "A" to Declaration of Keith A.

---

[4] Akin to a student cramming for an exam.

5

166888215

Walter, Jr[5] D.I. 5 (emphasis added). This contradicts the State's statements in briefing that SBI has not created regulations for firearms training approval and administration. These extra-statutory "guidelines" are actually APA-subject regulations. The State lost this argument before in a decision they did not appeal. *See Del. State Sportsmen's Ass'n v. Garvin*, 2020 Del. Super. LEXIS 2927, *26, 2020 WL 6813997 (Del. Super. Ct. November 18, 2020) (Holding that DNREC's authority to "protect, manage, and conserve all forms of protected wildlife…does not mean that DNREC may implement additional policies and requirements, including dictating what rifles hunters were approved to use, without observing the comment and review process of the APA.")[6]

The State argues that failure to follow the APA is not relevant because it does not impede individual Challengers' ability to obtain a permit. This misses the point. The State's imposition of requirements for a permit that do not comply with the APA is another unlawful impediment to exercising a fundamental right.

### C. The State's own statistics demonstrate there will be a de facto handgun ban on November 16th

Deductive reasoning and basic math demonstrate that the Permit Bill's failed rollout will ban handgun sales in Delaware. The Stevenson Declaration acknowledges that he is only aware of 2 "civilian permits" being approved to date. A "civilian permit" is one that is not exempt from the Permit Bill's training requirement. *See* Decl. of MacMullan at 18. Training classes are expected to accommodate between ten and fifteen trainees total. *Id*. at 11. Simple math suggests then, that

---

[5] An email from Lieutenant Christopher Popp of the Delaware State Police's  Firearms Transaction Approval Program's October 6, 2025 email to FFL's reiterates this definition. *See* Declaration of Keith A. Walter, Jr. , D.I. 5, at Exhibit "D."

[6] The Firearm Training Guidelines are, of course, only one of many such regulations expected to be issued by SBI that are subject to APA review. SBI  has, for example, not indicated to date how exactly it determines who meets its vague "dangerousness" standard such that a permit will be denied to the so-called dangerous applicant.

6

166888215

**App281**

between now and November 16, the cap on non-exempt Delawarean permits is between 50-60 individuals.

Conversely, 40,686 NICS firearm background checks have been conducted to-date in 2025 in the State of Delaware. 53,370 such checks were conducted in 2024, and 50,080 were conducted in 2023. *Id.* at 20. Given that handguns are the most popular weapon chosen by Americans for self-defense, and are considered the "quintessential self-defense weapon," it is reasonable to assume that the majority of the checks in Delaware relate to handgun purchases.

Therefore, with a cap of 50-60 available permits for non-exempt Delawareans and a demand of thousands of handguns per year, the Permit Bill's failed, incomplete implementation will restrict purchases of handgun in the state to a minute fraction of expected sales. The State's failure has amounted to an effective ban on handgun sales in Delaware. This is the Permit Bill's goal.

## IV. THE PERMIT BILL VIOLATES THE SECOND AMENDMENT AND CHALLENGERS ARE LIKELY TO SUCCEED ON THE MERITS

### A. The Permit Bill Is Not Presumptively Constitutional

The Permit Bill is not consistent with the Nation's tradition of firearm regulation as *Bruen* requires. The State instead relies on dicta in a footnote instead of *Bruen's* holding. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022).

Nothing new is offered in the State's opposition. The only additional case the State cites is *Koons v. Attorney Gen. N.J.*, 2025 No. 23-1900, 2025 WL 2612055, at 43 (3d Cir. Sep. 10, 2025) (pending en banc review request), as amended (Sept. 17, 2025), but that case did not deal with permits to purchase handguns. *Bruen* did not adopt a separate test for permits to purchase, nor a presumption for permits to purchase.

7

166888215

**App282**

**B.  The State Provides No Evidence that the Permit Bill Fits Within the Nation's Historical Tradition of Firearm Regulation**

The State argues that the United States has "a long history of requiring individuals to acquire *some type of permit to purchase a firearm*." Opp. at 17. (emphasis added). Not so.

The State does not provide a single historical law from the Founding Era that required a permit to purchase a common firearm. Instead it cites to anti-gun activist Saul Cornell's article on post-Reconstruction and early 20th Century public carry permitting schemes, and then makes a leap of faith to argue that because there have at times been "some type[s] of permit[s]" for public carry, the Permit Bill's permit to *purchase* does not violate the Second Amendment. That makes no sense and it fails the *Bruen* test. Rather, it is a failed attempt "to uphold [a] modern law that remotely resembles a historical analogue," which *Bruen* warns, "risk[s] endorsing outliers that our ancestors would never have accepted." *Bruen*, 597 U.S. at 30. The Permit Bill is one such outlier with no support in the Nation's historical tradition, evidenced by the State's failure to provide any relevant analogues. *See generally Watson v. Stone*, 4 So. 2d 700, 701 (Fla. 1941) (the main purpose of the permitting system created by 1893 Fla. Laws 71, 71-2 was to "disarm[] the negro laborers….[and that] the statute was never intended to be applied to the white population and in practice has never been so applied.")[7]

The State ignores any distinction between the Nation's traditions regarding public carry and that of possession in the home. The State's hired gun acknowledges in the article the State cites, that post-Reconstruction permit to carry schemes arose "particularly [because of] the danger posed

---

[7] The State omits any reference to Founding Era or early 19th Century permitting because the only laws that could conceivably qualify were racist. *See* Challengers' Complaint at 113-118. In fact, even the irrelevant 20th Century permitting law that the State cites in its opposition has racist motivations. 1893 Fla. Laws 71, 71-2, is cited prominently and approvingly by the State as an example of an early 20th Century permitting system.

166888215

**App283**

by public carry," rather than general possession in defense of the home and family. Cornell at 75-76 (quoting unnamed delegate to the 1868 Texas Constitutional Convention).

Next, the State's approach still deliberately ignores the relevant era from which to derive the Nation's tradition of firearms regulation—the Founding Era.[8] *See, e.g., Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d Cir. 2025) (quoting *Bruen* at 28, 37) (…the constitutional right to keep and bear arms should be understood according to its public meaning in 1791, as  that 'meaning is fixed according to the understandings of those who ratified it[.]' *")*.

### V. CHALLENGERS HAVE SHOWN IRREPARABLE HARM

The State argues that the Challengers will not suffer irreparable harm because they now can apply for and get the required Permit.  The attached Declarations, however, demonstrate the contrary position. They are not alone—the State admits it has only issued two "civilian" Permits. This effective handgun ban subjects FFLs to criminal prosecution and creates a risk of injury if a handgun is not available for self-defense.

The State maintains that this case is analogous to the remand decision in *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024). It is not.  The State argues that the Third Circuit upheld the denial of preliminary relief in that matter "because the plaintiffs had not 'allege[d] a time sensitive need for such guns' and their 'generalized claim of harm is hardly enough to call for this 'extraordinary remedy.'" Opp. at 12. But the facts of the instant matter are materially different.

First, the State's argument ignores that plaintiffs in that case were relying on the presumption of irreparable harm and, as a result, only provided what the Court described "scant"

---

[8] The State mischaracterizes a quote from a law review article by Challengers' counsel in a misleading attempt to justify the training requirement. Opp. at 19 (quoting Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*, 31 Wm. & Mary Bill Rts. J. 93, 99 (2022).

166888215

evidence of alleged harm. Challengers are not relying on a presumption. Second, Challengers have not made generalized claims of harm, but instead provided detailed declarations of the harms they will face as a result of an effective de facto handgun ban, e.g., loss of life as well as a "time-sensitive need" for firearms.  *See, e.g.,* Neuberger 1st Decl. D.I. 6  ¶18-22 (asserting time-sensitive need to acquire a handgun for self-defense based upon age, criminal statistics, civil unrest and past threats of physical harm); *see also* the Decl. of Jeffrey Hague, D.I. 7, ¶  (stating that he has spoken to DSSA members who intend to buy a handgun on November 16, because "…[s]ome of these members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones would be attacked.")  As for the Challengers who sell firearms, while economic loss may not always result in irreparable harm, the loss of one's business constitutes irreparable harm. *See, e.g., Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc*. 805 F.2d 351, 356 (10 Cir. 1986).

## VI. THE STATE'S ARGUMENT THAT AN INJUNCTION WOULD HARM THE PUBLIC SAFETY INTERESTS IS UNFOUNDED

The State argues that the balance of the equities tip in their favor because injunctive relief would (1) harm the State's public safety interest and (2) threaten the separation of powers by stalling the execution of its law.  Opp. at 20. There is no record support for their position.

If the record is insufficient to quantify any harm to the public that would be caused by a preliminary injunction where government restrictions likely violate the Second Amendment, such restrictions should be preliminarily enjoined.  *Koons v. Att'y Gen. New Jersey*, No. 23-1900, 2025 WL 2612055, at *43 (3d Cir. Sept. 10, 2025), as amended (Sept. 17, 2025) (remanding with instruction to preliminarily enjoin certain restrictions). So too here, there is no evidence of harm to the public from an injunction.

10

166888215

**App285**

Respectfully submitted,

LEWIS BRISBOIS
   BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*

Francis G.X. Pileggi (No. 2624)

Keith A. Walter (No. 4157)

Alexander D. MacMullan (*pro hac vice* admission
  pending)

500 Delaware Ave., Suite 700

Wilmington, DE 19801

(302) 985-6000

Francis.Pileggi@LewisBrisbois.com

Keith.Walter@LewisBrisbois.com

Alexander.MacMullan@LewisBrisbois.com

*Counsel for Plaintiffs*

OF COUNSEL:

Joseph G.S. Greenlee

National Rifle Association of
  America – Institute for Legislative
  Action

11250 Waples Mill Road

Fairfax, VA  22030

Dated:  November 12, 2025

11

166888215

**App286**

## CERTIFICATE OF SERVICE

I, Francis G.X. Pileggi, hereby certify that on this 12th day of November 2025, I caused a true and correct copy of ***Plaintiffs' Reply Brief in Further Support of Their Motion for Expedited Injunctive Relief, Declaration of Thomas S. Neuberger, Esquire, Declaration of Jerry L. Martin, Declaration of Alexander D. MacMullan, Esquire and Declaration of Bruce C. Smith*** to be electronically filed with the Clerk of the Court and served upon all parties of record via CM/ECF.

*/s/ Francis G.X. Pileggi*
Francis G.X. Pileggi (No. 2624)

**App287**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.          :
MARTIN; WILLIAM R. HAGUE, JR.;         :
BRUCE C. SMITH; BRIDGEVILLE            :
KENPO KARATE, INC. d/b/a BKK           :
FIREARMS; DELAWARE STATE               :
SPORTSMEN'S ASSOCIATION, INC;          :
and BRIDGEVILLE RIFLE & PISTOL         :
CLUB, LTD.,                            :
                                       :
          Plaintiffs.                  :
                                       :
     v.                                : Civil Action No. 1:25-cv-01341-MN
                                       :
JOSHUA BUSHWELLER, in his              :
official capacity as Cabinet Secretary, :
Delaware Department of Safety and      :
Homeland Security; and COL. WILLIAM    :
CROTTY, in his official capacity as    :
superintendent of the Delaware State Police, :
                                       :
          Defendants.                  :

## SECOND DECLARATION OF THOMAS S. NEUBERGER IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIEF

I, Thomas S. Neuberger, affirm the truth of the following representations:

1.     I  am a Plaintiff in the above-titled action.

2.     I am 78 years old, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

165756706.1

**App288**

3. I am an attorney licensed to practice law in the State of Delaware and I am a citizen of Delaware and have been a resident of New Castle County since 1947.

4. I previously submitted a Declaration in support of Plaintiffs' Motion for Expedited Injunctive Relief dated October 28, 2025 ("First Declaration"). I submit this Second Declaration in support of Plaintiffs' Reply Brief in Support of that Motion.

5. In this Second Declaration, although I believe I should not have to submit myself to SS 1 for SB 2's unconstitutional permitting scheme, I have attempted to do so on multiple occasions over the last few weeks, but have been unsuccessful. In this Second Declaration I chronicle the attempts I have made to obtain a permit.

6. On October 27, 2025, I went to the Delaware State Police public website found at  https://dsp.delaware.gov/p2p applicant portal to apply for a Permit to Purchase and I was commanded to complete steps 1 and 2 before step 3.

7. Step 1 was completing a course in firearms safety, and step 2 was fingerprinting.  Step 3 was completing an online application.  So I tried to complete the application, but, the website said "LINK TO COME."

8. So I hit a dead end in the process.  I had no idea what information was required of me to even start the process that day, let alone locate and get into and pass some firearm safety course, or locate and go somewhere for fingerprints.

9.     On November 5, 2025 at about 3:45 pm to 4:50 pm, I went again to the same website link and I navigated to a screen that contained a six page online application to complete ("Application").  However, I was unable to complete the Application.

10.     To complete the Application, I had to attach a certificate that I had completed the required "firearms training course" and the date the course was completed.  But there was no link or other direction as to how to take the course.

11.     Although I could not locate a help page or help link, after further searching, I was able locate a link to a list of training instructors, but there was no other information about the course that I could find, such as the course requirements, whether there was classroom instruction, live range shooting, and the expected time required to complete the training.

12.     I clicked on the link to the list of training instructors, which took me to a document dated 11/3/25 that contained a list around 99 names sorted in alphabetical order by first name.  A copy of this list is attached at Exhibit A.  Some of the names were associated with a business name, while others simply said "N/A" or "None." For example, Michael T. Morgan, Mary Sharkley, and Jamar Brison were listed with no other identifying information. There were no telephone numbers, email addresses, websites, physical addresses or links to any of the foregoing, associated with any of the "instructors" or their businesses.

App290

13. After further searching, I was also unable to find any information or links to upcoming courses, when and where the course are offered, whether there is availability, and the cost. Such information is critical for persons like me who work, have other commitments, need to make travel arrangements, and other accommodations.

14. As a result of the failure to provide the information described above necessary for me to locate, schedule, and enroll in the required training course, I was unable to obtain the required firearms training certificate necessary to complete the application, and ultimately receive the required permit to purchase a handgun.

15. In addition, I also attempted to navigate the fingerprinting requirement, but could not complete that step either because I could not get the website to release to me the information as to the location of the center where I would have to appear to apply.

16. I learned that "Fingerprinting services are available by appointment only through IdentoGO." When scheduling, applicants must use Service Code 27S8N2 to ensure their prints are appropriately routed for the Permit-to-Purchase process.

17. The website read that appointments can be made online at https://uenroll.identgo.com.

18. I clicked on the link and was taken to a Website named IdentoGO, and I entered the Service Code 27S8N2.

19. On a new webpage, I then clicked on Locate An Enrollment Center and then entered my 5 digit residential zip code.

20. The process then ended with statements that it would be closed on Thanksgiving Day. No locations or sites were ever provided.

21. On November 6, 2025 at 4:25 pm, I again tried to complete and submit the online Application. However, nothing described above from the day before had changed, and I could not complete the Application.

22. In addition, I also noticed the website was unfinished, which I failed to discover on November 5. There was a section on the website titled "Link to Permit to Purchase regulations (to be developed)," which was inactive and no information or lawfully enacted regulations were provided. This implies to me either the State is (a) still in the process of promulgating regulations associate with SB 1 for SB 2 (or plans to engage in that process) or (b) it does not want to publicly identify the regulations it has put in place because those regulations were not promulgated pursuant to the Administrative Procedures Act.

23. On November 7 at 4:33 pm, I again tried to complete the online Application, but nothing described above from my attempts on November 5 and 6 had changed.

24. The November 3, 2025 approved list of 99 firearms training instructors does not appear to have been changed. My problems with the list, stated earlier, continued, for example there are no links to their person or business, no phone number, email address or website.

25. Next, on fingerprinting nothing appeared to have changed from earlier, and I still could not locate a center to travel to apply. After entering in the code which is given, I cannot locate an enrollment center after entering my zip code.

26. Last, as noted the day before, that the platform is unfinished is admitted online. The category on line entitled "Link to Permit to Purchase Regulations (to be developed)" remains. Unfortunately, no information or duly enacted regulations were provided since construction here was unfinished.

27. I could therefore, not complete the Application on November 7.

28. I again tried to complete and submit an online Application at 4:06 pm on November 8, 2025.

29. The link I used again to the DSP was https://dsp.delaware.gov/p2p applicant portal/. There I found the same "Permit to Purchase Applicant Portal" I had used previously.

30. There was no help page or link for help.

31.     Next I used this link https://dsp.delaware.gov/permit to purchase/.  It took me to the sections on training and fingerprinting.  Again there was no help page or link for help.

32.     The November 3, 2025 approved list of 99 firearms training instructors still has not changed. My problems with the list, stated earlier, continued. For example, there are no links to their person or business, no phone number, email address or website.

33.     Next, on fingerprinting nothing appeared to have changed from earlier, and I still could not locate a center to travel to apply.

34.     As noted several times now, that the platform is unfinished is admitted online. The category on line entitled "Link to Permit to Purchase Regulations (to be developed)" remains. Unfortunately, no information or duly enacted regulations were provided since construction here was unfinished.

35.     I could therefore, not complete the Application on November 8.

36.     On November 11, 2025, I again tried to complete the online Application, but nothing described above from my prior attempts on November 5 through and 8 have changed except that there is an updated list of firearms training instructors dated November 10, 2025. My problems with the list are the same. For example, there are no links to their person or business, no phone number, email address or website.

**App294**

37. Next, on fingerprinting nothing appeared to have changed from earlier, and I still could not locate a center to travel to apply. After entering in the code which is given, I cannot locate an enrollment center after entering my zip code.

38. Last, and as before, the platform is admittedly unfinished. The category on line entitled "Link to Permit to Purchase Regulations (to be developed)" remains. Unfortunately, no information or duly enacted regulations were provided since construction here was unfinished.

39. I could therefore, not complete the Application on November 11.

40. Previously unknown to me, I have been recently informed there are 4 Permit-to-Purchase training instructors that are offering a total number of 4 training courses (1 each) before November 16. I further have been informed that the training course typically takes at least over 8 hours to complete, not including travel time, and that the training is intensive. Accordingly, even if I had been able to locate those instructors offering those classes, which I could not, and there were seats available, I would not have been able to enroll on such short notice because (a) I am a practicing attorney and have other commitments during most of the days when the courses are offered and (b) I have a medical condition that would not allow me to take an intensive 8 hour course in one sitting, at unknown facility that may not be able to accommodate my medical needs, potentially hours away from my home. That is I would need to spread out the course over more than one session.

App295

41.    For all the foregoing reasons, including the State's failure over the last 18 months to fully implement all the necessary infrastructure for SS 1 for SB 2 within sufficient time before the enforcement date and not making available to me in a manner I can access, the information needed for me to complete the SS 1 for SB 2 Training Course and Application—I will not be able to obtain the required Permit to purchase a handgun on November 16 when SB 1 for SB 2 will be enforced, which I now seek to do, or even on November 28, when I had previously hoped to make such a purchase.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


  11/11/2025                          /s/ Thomas S. Neuberger
Date                               Thomas S. Neuberger, Esq. (  243)

# EXHIBIT A

# Permit to Purchase
## Approved List of Firearms Training Instructors
*AS OF 11/3/2025*

| NAME | BUSINESS |
| --- | --- |
| Andrae J Jackson | Trained to Protect |
| Andrea J Bates | Girlz N Guns |
| Anthony D Amado | Critical Shot |
| Anthony Y Smith | Carry to Defend |
| Barbara T Boyce | DE Rifle & Pistol Club |
| Blake Baxendale | Elite Carry Solutions LLC |
| Brian J Bockrath | Defend 2A Rights Inc |
| Brian K Mason | American Defense Civilian Tng Group |
| Brian Pritt | Diamond State Firearms Training |
| Bruce C Smith | BKK Firearms and Defensive Systems |
| Bryan K Griffith | Atlantic Tactical Firearm Trainers |
| Byron L Henry | Henry Defense |
| Christopher A Burton | Task Force Security Services LLC |
| Clair N Swenson | Chandelleair LLC |
| Colt T Sain | Delmarva Defense LLC |
| Craig T Doughty | Target Shooting Solutions |
| Crystal Rau | It's All About Protection |
| David A Diianni | Delmarva Defense LLC |
| David A Johnson | First State Firearms Training |
| David J Walters | 3rd Monkey Martial Arts and Firearms |
| David L Kerr Jr. | Dave's Range |
| Dean W Stotler | Delaware 3 Gun |
| Donald K Johnson | Conflict Area Management |
| Dusty W Tibbett | NCC Firearms Training Services |
| Edward P Heinemann | N/A |
| Edward Reese | Best Shot |
| Erin M Chronister | Delaware Tactical |
| Erinn E O'Donnell | Girlz N Guns |
| Fredrick H Wetztein | No Limit Tactical LLC |
| Glen A Biddle | Atlantic Tactical Firearm Trainers |
| Grover C Linaweaver IV | Target Shooting Solutions |
| Harry B Murray | Best Shot |
| Herb A Cunningham | 313 LLC |
| Isaiah A Mobley | Trinity Arms Training LLC |
| Jamar J Brison | N/A |
| James A Manlove | Aegis Development Group |
| James L Ashmead | East Coast TAC/MED Group |
| Jason M Wright | Delaware Tactical LLC |
| Jason W Heller | Krazy Two, LLC |
| Jeffrey A Winnington | Tactical Firearm Solutions LLC |
| Jeffrey R Johnson | Concealed Carry Connection, LLC |
| Jeffrey R Johnson | First State Firearms Training |
| Jennifer L Hagan | Best Shot DE |
| John H Davis | Peace of Mind |
| John J Davis | Target Shooting Solutions |
| John N Biasiello | Peach of Mind |
| Joseph G McDonald | Best Shot DE |
| Joshua A Wright | Delaware Tactical LLC |
| Juan C Martinez | Pike Creek Tactical & Self Defense |
| Kelly J Delikat | BK Defensive Training |
| Kenneth W McQueston | N/A |
| Kevin C Jones | Safe Action's Firearms ED |
| Kevin D McDonald | Fundamental Firearms |
| Kevin D O'Shaughnessy | Reliance Tactical |
| Kevin Stephens | Precise-Fire LLC |
| Kimberly Wiltbank | Delaware Patriot |
| Kirk Marino | Marino Tacitcal Training Inc |
| Kwasi Asante | Self |
| Larry Aldridge | Atlantic Tactical Firearm Trainers |
| Leon R Wilson | Workhorse in Arms |
| Mark W Garfinkel | Ameritas Security T/A De. Firearms TNG |
| Marquis J Swift | SwiftShooters LLC |
| Mary E Sharkey | N/A |
| Matthew D Hollowell | Shooter's Choice |
| Melvin N Adam | Tactical Shepherd LLC |
| Michael R Rabb | N/A |
| Michael T Morgan | None |
| Nicholas L Gilgenast | Delmarva Defense LLC |
| Nicholas P Romano | Best Shot DE |
| Nicole L Hughes | Defensive Training Solutions |
| Pamela Waters | Locked & Loaded Ladies LLC |
| Patricia A Klishevich | Pearl Firearms Training LLC |
| Rachel A Nicholson | Peace of Mind |
| Randy L Warren | ADWVC LLC |
| Richard Mitchell | Atlantic Tactical Firearm Trainers |
| Richard R Parker | Best Shot DE |
| Rick A Brewer | Never Quit Firearms Training |
| Robert Wiltbank III | Delaware Patriot |
| Roger T Boyce | Delaware Rifle & Pistol Club |
| Ronald C Palimere | Starquest Shooters & Survival Supply |
| Ronald D Hundley | Eagle Wings Firearms Traning LLC |
| Ronald J Landry Jr | RedBeardz LLC |
| Ronald W Hagan | Best Shot |
| Saundra L Mayhew | Trigger Control Firearms Training |
| Scott R Taylor | Delaware Tactical LLC |
| Shane E Smart | Smart Defense |
| Shawn W Rau | It's All About Protection |
| Sheila E Carello | None |
| Stephen P Ondich | Training Associates |
| Talbert A Barnes | Best Shot |
| Timothy Otwell | Atlantic Tactical Firearm Trainers |
| Vaughn L Mccabe | Bestshot |
| Wiliam V Gregory | Billy's Guns and Ammo |
| William E Dixon | Precise-Fire LLC |
| William E Rhem | Shooter's Choice |
| William N Walters | 302 Group |
| William R Culver | Best Shot |
| Xavier M Price | None |
| Xavier S Price | Atlantic Tactical Firearm Trainers |

App298

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.   :
MARTIN; WILLIAM R. HAGUE, JR.;   :
BRUCE C. SMITH; BRIDGEVILLE   :
KENPO KARATE, INC. d/b/a BKK   :
FIREARMS; DELAWARE STATE   :
SPORTSMEN'S ASSOCIATION, INC;   :
and BRIDGEVILLE RIFLE & PISTOL   :
CLUB, LTD.,   :
  :
      Plaintiffs.   :
  :
      v.   : Civil Action No. 1:25-cv-01341-MN
  :
JOSHUA BUSHWELLER, in his   :
official capacity as Cabinet Secretary,   :
Delaware Department of Safety and   :
Homeland Security; and COL. WILLIAM   :
CROTTY, in his official capacity as   :
superintendent of the Delaware State Police, :
  :
      Defendants.   :

## DECLARATION OF ALEXANDER D. MACMULLAN, ESQUIRE IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIEF

I, ALEXANDER D. MACMULLAN, Esquire, based upon my own personal knowledge and under penalty of perjury under the law of the United States hereby state the following:

1. I am a Partner with the law firm Lewis Brisbois Bisgaard & Smith, LLP and counsel to Plaintiffs.

2. I make this Declaration in support of Plaintiffs' Motion for Expedited Injunctive Relief.

**App299**

3. Attached as Exhibit "A" are publicly available copies of the Delaware State Police "Permit to Purchase Approved List of Firearms Training Instructors, *As of 11/3/2025*" and Delaware State Police "Permit to Purchase Approved List of Firearms Training Instructors, *As of 11/10/2025*."

4. On November 8, 2025, I accessed the "Permit to Purchase Approved List of Firearms Training Instructors, *As of 11/3/2025*" via https://dsp.delaware.gov/permit-to-purchase/ >Link of Approved Firearm Instructors ("Training Instructor List").

5. Also on November 8, 2025, I conducted google searches of each of the training instructors listed on the Training Instructor List.

6. My google searches consisted of inputting the exact information provided on the Training Instructor List for each training instructor listed. Each individual search included the training instructor's name and, where applicable, their associated business.

7. For each individual training instructor search I reviewed the available google search results and, where available in search results, attempted to access websites associated with individual training instructors.

8. The purpose of my searches and attempts to access websites associated with individual training instructors was to identify posted, available Permit to Purchase trainings.

9. The results of my individual searches and attempts to access websites associated with individual training instructors yielded the following results:

- Four posted Permit to Purchase trainings scheduled by four different training instructors offered between my date of access (November 8, 2025) and the date of implementation of the Permit Bill (November 16, 2025);

- One of these four trainings indicated there were "no slots available" for a scheduled November 15, 2025 training;

- Sixteen additional posted Permit to Purchase trainings offered between my date of access (November 8, 2025) and the end of the 2025 calendar year;

- Twenty-two approved firearms training instructors for whom I could find no immediately available website and/or discernible online presence relating to firearms training instruction;

- Forty-Eight approved firearms training instructors for whom I found an immediately available website and/or discernible online presence relating to firearms training instruction but for which there were no posted Permit to Purchase trainings offered.

10. In the course of my review, it was unclear to me how many training slots were offered in the four posted Permit to Purchase trainings scheduled by four different training instructors offered between my date of access (November 8, 2025) and the date of implementation of the Permit Bill (November 16, 2025).

11. However, I have discussed Permit to Purchase training with approved Permit to Purchase Firearm Training Instructor, Plaintiff Bruce Smith. From my conversation, it is my understanding that firearms trainings such as the Permit to Purchase training typically consist of ten to fifteen students.

12. It is also my understanding that Mr. Smith offered a Permit to Purchase training with 11 attendees on November 9, 2025.

13. This understanding, coupled with my review of the four available, posted Permit to Purchase trainings scheduled by four different training instructors offered between my date of access (November 8, 2025) and the date of implementation of the Permit Bill (November 16, 2025), leads me to estimate that there were approximately 50-60 available Permit to Purchase

**App301**

trainings available to Delaware citizens between November 8, 2025 and the November 16, 2025 Permit Bill date of implementation.

14. On November 11, 2025, I again accessed the I accessed the "Permit to Purchase Approved List of Firearms Training Instructors," via https://dsp.delaware.gov/permit-to-purchase/ >Link Training Instructor List. Upon review I saw that the Training Instructor List was updated *As of 11/10/2025.*

15. I reviewed the updated Training Instructor List and counted 103 total approved training instructors. The Training Instructor List *As of 11/3/2025* had 99 total approved training instructors.

16. I have reviewed the Declaration of Sergeant Jason L. Stevenson in Support of Defendants' Opposition to Plaintiffs' Motion for Expedited Injunctive Relief. Therein, Sergeant Stevenson acknowledges that the Delaware State Police did not contact Delaware FFLs to inform them that they could register to be approved training instructors until October 6, 2025. See Declaration of Jason L. Stevenson at paragraph 7 at fn. 1.

17. Sergeant Stevenson's Declaration also acknowledges that approved firearm training instructors were not listed publicly until November 3, 2025. *Id.*

18. Sergeant Stevenson's declaration also acknowledges that he is only aware of 2 "civilian permits" being approved to date. I understand a "civilian permit" to mean one that is not exempt from the Permit Bill's training requirement.

19. Based upon Sergeant Stevenson's declaration, I conclude that Permit to Purchase trainings were not offered by approved firearm training instructors until, at the earliest, November of 2025, and that as a result, the State has processed only two known permits for those who are not exempt from the Permit Bill's training requirement .

**App302**

20. Attached as Exhibit "B" is a publicly available copy of the FBI's "NICS Firearm Background Checks: Month/Year by State." This document contains the FBI's statistics on the monthly and yearly number of NICS firearm background checks that have been conducted in the State of Delaware between 2001-2025 (year-to-date).

21. It is my understanding that anytime an individual attempts to purchase a firearm in Delaware, a NICS firearm background check is conducted.

22. For 2025, year-to-date, 40,686 NICS firearm background checks have been conducted in the State of Delaware. For the year 2024, 53,370 NICS firearm background checks were conducted in the State of Delaware, and for the year 2023 50,080 NICS firearm background checks were conducted in the State of Delaware.

23. I also understand that the United States Supreme Court has held that that handguns are the most popular weapon chosen by Americans for self-defense, as they are considered the "quintessential self-defense weapon." See *District of Columbia v. Heller,* 544 U.S. 570, 629 (2008).

24. I am informed that Plaintiff, Kenpo Karate, Inc. d/b/a BKK Firearms ("BKK") and its owner, Bruce Smith, hold a Federal Firearms License ("FFL") and are engaged in the business of selling firearms. BKK is headquartered in the State of Delaware and is duly authorized to do business in the State.

25. I understand from Mr. Smith's Second Declaration filed with our Reply Brief, that in 2024 and 2025, BKK derived approximately 90% and 98% respectively of its sales from handguns. *See* Second Declaration of Bruce C. Smith, Owner and Operator of Kenpo Karate, Inc. d/b/a BKK Firearms in Support of Plaintiffs' Motion for Expedited Injunctive Relief, at 2, 15.

**App303**

26. My understanding based on the foregoing is that the large majority of NICS firearm background checks conducted in the State of Delaware result from the purchase of handguns.

27. Based upon paragraphs 9-13 and 14-19 of this Declaration, the information cited supports the view that Delaware's failure to approve firearm training instructors until November of 2025, has effectively reduced handgun sales in Delaware to a minute fraction of what would be expected, monthly, based upon year over year data.

Date: 11/12/2025

Alexander D. MacMullan

**App304**

# Permit to Purchase
## Approved List of Firearms Training Instructors
*AS OF 11/3/2025*

| NAME | BUSINESS |
|---|---|
| Andrae J Jackson | Trained to Protect |
| Andrea J Bates | Girlz N Guns |
| Anthony D Amado | Critical Shot |
| Anthony Y Smith | Carry to Defend |
| Barbara T Boyce | DE Rifle & Pistol Club |
| Blake Baxendale | Elite Carry Solutions LLC |
| Brian J Bockrath | Defend 2A Rights Inc |
| Brian K Mason | American Defense Civilian Tng Group |
| Brian Pritt | Diamond State Firearms Training |
| Bruce C Smith | BKK Firearms and Defensive Systems |
| Bryan K Griffith | Atlantic Tactical Firearm Trainers |
| Byron L Henry | Henry Defense |
| Christopher A Burton | Task Force Security Services LLC |
| Clair N Swenson | Chandelleair LLC |
| Colt T Sain | Delmarva Defense LLC |
| Craig T Doughty | Target Shooting Solutions |
| Crystal Rau | It's All About Protection |
| David A Diianni | Delmarva Defense LLC |
| David A Johnson | First State Firearms Training |
| David J Walters | 3rd Monkey Martial Arts and Firearms |
| David L Kerr Jr. | Dave's Range |
| Dean W Stotler | Delaware 3 Gun |
| Donald K Johnson | Conflict Area Management |
| Dusty W Tibbett | NCC Firearms Training Services |
| Edward P Heinemann | N/A |
| Edward Reese | Best Shot |
| Erin M Chronister | Delaware Tactical |
| Erinn E O'Donnell | Girlz N Guns |
| Fredrick H Wetztein | No Limit Tactical LLC |
| Glen A Biddle | Atlantic Tactical Firearm Trainers |
| Grover C Linaweaver IV | Target Shooting Solutions |
| Harry B Murray | Best Shot |
| Herb A Cunningham | 313 LLC |
| Isaiah A Mobley | Trinity Arms Training LLC |
| Jamar J Brison | N/A |
| James A Manlove | Aegis Development Group |
| James L Ashmead | East Coast TAC/MED Group |
| Jason M Wright | Delaware Tactical LLC |
| Jason W Heller | Krazy Two, LLC |
| Jeffrey A Winnington | Tactical Firearm Solutions LLC |
| Jeffrey R Johnson | Concealed Carry Connection, LLC |
| Jeffrey R Johnson | First State Firearms Training |
| Jennifer L Hagan | Best Shot DE |
| John H Davis | Peace of Mind |
| John J Davis | Target Shooting Solutions |
| John N Biasiello | Peach of Mind |
| Joseph G McDonald | Best Shot DE |
| Joshua A Wright | Delaware Tactical LLC |
| Juan C Martinez | Pike Creek Tactical & Self Defense |
| Kelly J Delikat | BK Defensive Training |
| Kenneth W McQueston | N/A |
| Kevin C Jones | Safe Action's Firearms ED |
| Kevin D McDonald | Fundamental Firearms |
| Kevin D O'Shaughnessy | Reliance Tactical |
| Kevin Stephens | Precise-Fire LLC |
| Kimberly Wiltbank | Delaware Patriot |
| Kirk Marino | Marino Tacitcal Training Inc |
| Kwasi Asante | Self |
| Larry Aldridge | Atlantic Tactical Firearm Trainers |
| Leon R Wilson | Workhorse in Arms |
| Mark W Garfinkel | Ameritas Security T/A De. Firearms TNG |
| Marquis J Swift | SwiftShooters LLC |
| Mary E Sharkey | N/A |
| Matthew D Hollowell | Shooter's Choice |
| Melvin N Adam | Tactical Shepherd LLC |
| Michael R Rabb | N/A |
| Michael T Morgan | None |
| Nicholas L Gilgenast | Delmarva Defense LLC |
| Nicholas P Romano | Best Shot DE |
| Nicole L Hughes | Defensive Training Solutions |
| Pamela Waters | Locked & Loaded Ladies LLC |
| Patricia A Klishevich | Pearl Firearms Training LLC |
| Rachel A Nicholson | Peace of Mind |
| Randy L Warren | ADWVC LLC |
| Richard Mitchell | Atlantic Tactical Firearm Trainers |
| Richard R Parker | Best Shot DE |
| Rick A Brewer | Never Quit Firearms Training |
| Robert Wiltbank III | Delaware Patriot |
| Roger T Boyce | Delaware Rifle & Pistol Club |
| Ronald C Palimere | Starquest Shooters & Survival Supply |
| Ronald D Hundley | Eagle Wings Firearms Traning LLC |
| Ronald J Landry Jr | RedBeardz LLC |
| Ronald W Hagan | Best Shot |
| Saundra L Mayhew | Trigger Control Firearms Training |
| Scott R Taylor | Delaware Tactical LLC |
| Shane E Smart | Smart Defense |
| Shawn W Rau | It's All About Protection |
| Sheila E Carello | None |
| Stephen P Ondich | Training Associates |
| Talbert A Barnes | Best Shot |
| Timothy Otwell | Atlantic Tactical Firearm Trainers |
| Vaughn L Mccabe | Bestshot |
| Wiliam V Gregory | Billy's Guns and Ammo |
| William E Dixon | Precise-Fire LLC |
| William E Rhem | Shooter's Choice |
| William N Walters | 302 Group |
| William R Culver | Best Shot |
| Xavier M Price | None |
| Xavier S Price | Atlantic Tactical Firearm Trainers |

**App305**

# Permit to Purchase
## Approved List of Firearms Training Instructors
*AS OF 11/10/2025*

| NAME | BUSINESS |
|------|----------|
| Amanda Pritt | Diamond State Firearms Training |
| Amber L O'Connell | Best Shot DE |
| Andrae J Jackson | Trained to Protect |
| Andrea J Bates | Girlz N Guns |
| Anthony D Amado | Critical Shot |
| Anthony Y Smith | Carry to Defend |
| Barbara T Boyce | DE Rifle & Pistol Club |
| Blake Baxendale | Elite Carry Solutions LLC |
| Brian J Bockrath | Defend 2A Rights Inc |
| Brian K Mason | American Defense Civilian Tng Group |
| Brian Pritt | Diamond State Firearms Training |
| Bruce C Smith | BKK Firearms and Defensive Systems |
| Bryan K Griffith | Atlantic Tactical Firearm Trainers |
| Byron L Henry | Henry Defense |
| Christopher A Burton | Task Force Security Services LLC |
| Clair N Swenson | Chandelleair LLC |
| Colt T Sain | Delmarva Defense LLC |
| Craig T Doughty | Target Shooting Solutions |
| Crystal Rau | It's All About Protection |
| David A Diianni | Delmarva Defense LLC |
| David A Johnson | First State Firearms Training |
| David J Walters | 3rd Monkey Martial Arts and Firearms |
| David L Kerr Jr. | Dave's Range |
| Dean W Stotler | Delaware 3 Gun |
| Donald K Johnson | Conflict Area Management |
| Dusty W Tibbett | NCC Firearms Training Services |
| Edward P Heinemann | N/A |
| Edward Reese | Best Shot |
| Erin M Chronister | Delaware Tactical |
| Erinn E O'Donnell | Girlz N Guns |
| Fredrick H Wetztein | No Limit Tactical LLC |
| Glen A Biddle | Atlantic Tactical Firearm Trainers |
| Greg N Fuller | Fuller Mag Defense LLC |
| Grover C Linaweaver IV | Target Shooting Solutions |
| Harry B Murray | Best Shot |
| Herb A Cunningham | 313 LLC |
| Isaiah A Mobley | Trinity Arms Training LLC |
| Jamar J Brison | N/A |
| James A Manlove | Aegis Development Group |
| James L Ashmead | East Coast TAC/MED Group |
| Jason M Wright | Delaware Tactical LLC |
| Jason W Heller | Krazy Two, LLC |
| Jeffrey A Winnington | Tactical Firearm Solutions LLC |
| Jeffrey R Johnson | Concealed Carry Connection, LLC |
| Jeffrey R Johnson | First State Firearms Training |
| Jennifer L Hagan | Best Shot DE |
| John H Davis | Peace of Mind |
| John J Davis | Target Shooting Solutions |
| John N Biasiello | Peach of Mind |
| Joseph G McDonald | Best Shot DE |
| Joshua A Wright | Delaware Tactical LLC |
| Juan C Martinez | Pike Creek Tactical & Self Defense |
| Kelly J Delikat | BK Defensive Training |
| Kenneth W McQueston | N/A |
| Kevin C Jones | Safe Action's Firearms ED |
| Kevin D McDonald | Fundamental Firearms |
| Kevin D O'Shaughnessy | Reliance Tactical |
| Kevin Stephens | Precise-Fire LLC |
| Kimberly Wiltbank | Delaware Patriot |
| Kirk Marino | Marino Tacitcal Training Inc |
| Kwasi Asante | Self |
| Larry Aldridge | Atlantic Tactical Firearm Trainers |
| Leon R Wilson | Workhorse in Arms |
| Mark W Garfinkel | Ameritas Security T/A De. Firearms TNG |
| Marquis J Swift | SwiftShooters LLC |
| Mary E Sharkey | N/A |
| Matthew D Hollowell | Shooter's Choice |
| Melvin N Adam | Tactical Shepherd LLC |
| Michael R Rabb | N/A |
| Michael T Morgan | None |
| Nicholas L Gilgenast | Delmarva Defense LLC |
| Nicholas P Romano | Best Shot DE |
| Nicole L Hughes | Defensive Training Solutions |
| Pamela Waters | Locked & Loaded Ladies LLC |
| Patricia A Klishevich | Pearl Firearms Training LLC |
| Rachel A Nicholson | Peace of Mind |
| Randy L Warren | ADWVC LLC |
| Richard Mitchell | Atlantic Tactical Firearm Trainers |
| Richard R Parker | Best Shot DE |
| Rick A Brewer | Never Quit Firearms Training |
| Robert Wiltbank III | Delaware Patriot |
| Roger T Boyce | Delaware Rifle & Pistol Club |
| Ronald C Palimere | Starquest Shooters & Survival Supply |
| Ronald D Hundley | Eagle Wings Firearms Traning LLC |
| Ronald J Landry Jr | RedBeardz LLC |
| Ronald W Hagan | Best Shot |
| Saundra L Mayhew | Trigger Control Firearms Training |
| Scott R Taylor | Delaware Tactical LLC |
| Shane E Smart | Smart Defense |
| Shawn W Rau | It's All About Protection |
| Sheila E Carello | None |
| Stephen P Ondich | Training Associates |
| Talbert A Barnes | Best Shot |
| Timothy Otwell | Atlantic Tactical Firearm Trainers |
| Vaughn L Mccabe | Bestshot |
| Warren A Kennedy | Northeast Fishing & Firearms Training, LLC |
| Wiliam V Gregory | Billy's Guns and Ammo |
| William E Dixon | Precise-Fire LLC |
| William E Rhem | Shooter's Choice |
| William N Walters | 302 Group |
| William R Culver | Best Shot |
| Xavier M White | None |
| Xavier S Price | Atlantic Tactical Firearm Trainers |

**App306**

## NICS Firearm Background Checks:
## Month/Year by State

### Year 2025

January 1, 2025 - October 31, 2025

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

| State / Territory | January | February | March | April | May | June | July | August | September | October | November | December | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 46,856 | 48,677 | 50,369 | 43,679 | 41,793 | 38,079 | 36,784 | 39,779 | 41,876 | 42,165 | | | 430,057 |
| Alaska | 5,101 | 5,450 | 6,471 | 6,651 | 6,477 | 5,810 | 6,027 | 6,849 | 6,556 | 7,405 | | | 62,797 |
| Arizona | 43,488 | 42,830 | 42,543 | 42,860 | 36,024 | 35,579 | 36,915 | 41,101 | 39,930 | 39,740 | | | 401,010 |
| Arkansas | 17,225 | 18,275 | 18,990 | 15,640 | 15,023 | 14,885 | 15,450 | 18,737 | 20,097 | 24,776 | | | 179,098 |
| California | 120,876 | 114,683 | 129,172 | 118,861 | 111,075 | 114,152 | 113,607 | 119,025 | 118,255 | 139,097 | | | 1,198,803 |
| Colorado | 37,519 | 42,109 | 68,099 | 56,509 | 37,309 | 39,917 | 28,261 | 27,919 | 29,879 | 31,378 | | | 398,899 |
| Connecticut | 17,337 | 15,358 | 17,496 | 15,986 | 16,682 | 13,050 | 15,661 | 13,925 | 15,635 | 17,515 | | | 158,645 |
| Delaware | 4,045 | 4,074 | 4,504 | 4,183 | 4,336 | 4,017 | 3,047 | 3,275 | 3,440 | 5,765 | | | 40,686 |
| District of Columbia | 1,570 | 1,558 | 1,773 | 1,594 | 1,487 | 1,458 | 1,508 | 1,699 | 1,521 | 1,482 | | | 15,650 |
| Florida | 109,143 | 101,253 | 106,635 | 95,805 | 90,998 | 90,875 | 89,864 | 88,032 | 109,479 | 118,752 | | | 1,000,836 |
| Georgia | 47,541 | 49,514 | 50,608 | 39,183 | 40,215 | 41,832 | 43,269 | 45,606 | 48,474 | 52,532 | | | 458,774 |
| Guam | 322 | 245 | 288 | 351 | 304 | 291 | 274 | 263 | 275 | 327 | | | 2,940 |
| Hawaii | 1,199 | 1,066 | 1,268 | 1,543 | 1,742 | 1,291 | 1,161 | 1,049 | 1,522 | 1,394 | | | 13,235 |
| Idaho | 19,567 | 18,162 | 19,636 | 18,536 | 16,321 | 18,058 | 18,458 | 18,060 | 17,954 | 19,256 | | | 184,008 |
| Illinois | 310,380 | 272,467 | 284,978 | 234,355 | 179,096 | 164,500 | 175,755 | 171,314 | 181,505 | 197,166 | | | 2,171,516 |
| Indiana | 64,150 | 60,745 | 65,671 | 60,074 | 54,124 | 54,363 | 56,378 | 57,713 | 57,202 | 59,567 | | | 589,987 |
| Iowa | 19,638 | 15,366 | 17,659 | 15,116 | 12,026 | 11,425 | 11,846 | 11,887 | 14,172 | 15,650 | | | 144,785 |
| Kansas | 14,379 | 15,032 | 16,264 | 14,056 | 12,583 | 12,166 | 13,615 | 14,072 | 13,828 | 15,107 | | | 141,102 |
| Kentucky | 305,281 | 304,861 | 307,599 | 301,412 | 297,467 | 296,185 | 294,874 | 23,907 | 25,322 | 297,083 | | | 2,453,991 |
| Louisiana | 22,449 | 21,525 | 22,702 | 18,584 | 17,514 | 16,996 | 17,564 | 19,254 | 25,147 | 23,640 | | | 205,375 |
| Maine | 7,084 | 7,146 | 8,804 | 8,274 | 7,042 | 6,149 | 6,588 | 7,578 | 9,223 | 10,739 | | | 78,627 |
| Mariana Islands | 16 | 16 | 17 | 25 | 18 | 28 | 28 | 33 | 33 | 18 | | | 232 |
| Maryland | 30,385 | 30,084 | 36,870 | 36,248 | 31,829 | 28,317 | 29,513 | 29,688 | 30,341 | 31,287 | | | 314,562 |
| Massachusetts | 22,406 | 21,852 | 24,118 | 20,842 | 22,875 | 19,583 | 20,612 | 22,775 | 21,273 | 23,528 | | | 219,864 |
| Michigan | 70,962 | 70,162 | 84,103 | 72,462 | 63,888 | 53,175 | 51,353 | 53,046 | 59,591 | 64,361 | | | 643,103 |
| Minnesota | 64,688 | 66,476 | 85,803 | 82,748 | 70,662 | 57,799 | 58,896 | 61,150 | 69,026 | 76,191 | | | 693,439 |
| Mississippi | 19,394 | 20,590 | 20,954 | 16,013 | 15,715 | 15,104 | 15,393 | 21,229 | 18,893 | 21,109 | | | 184,394 |
| Missouri | 38,252 | 39,865 | 43,661 | 36,965 | 35,088 | 33,828 | 32,437 | 35,706 | 37,861 | 42,113 | | | 375,776 |
| Montana | 9,874 | 9,435 | 12,076 | 11,332 | 10,911 | 9,873 | 9,185 | 11,068 | 11,717 | 12,499 | | | 107,970 |
| Nebraska | 7,140 | 6,284 | 6,736 | 5,751 | 4,932 | 4,913 | 4,981 | 5,443 | 6,344 | 6,741 | | | 59,265 |
| Nevada | 11,867 | 11,068 | 13,831 | 12,059 | 11,946 | 10,779 | 12,122 | 8,095 | 12,168 | 12,423 | | | 116,358 |
| New Hampshire | 11,396 | 10,242 | 12,531 | 11,498 | 10,515 | 9,823 | 9,731 | 9,929 | 11,522 | 12,796 | | | 109,983 |
| New Jersey | 13,475 | 12,763 | 14,058 | 12,976 | 11,992 | 10,917 | 10,076 | 9,939 | 11,221 | 10,704 | | | 118,121 |
| New Mexico | 11,531 | 11,900 | 12,288 | 10,958 | 10,198 | 8,599 | 8,427 | 9,492 | 9,561 | 10,253 | | | 103,207 |
| New York | 28,655 | 24,642 | 31,535 | 28,628 | 25,743 | 22,524 | 23,494 | 29,807 | 37,881 | 46,631 | | | 299,540 |
| North Carolina | 58,818 | 59,503 | 63,125 | 50,625 | 48,687 | 47,886 | 47,545 | 51,621 | 55,003 | 60,385 | | | 543,198 |
| North Dakota | 9,398 | 4,553 | 5,624 | 13,513 | 4,339 | 4,097 | 12,597 | 4,846 | 5,401 | 13,755 | | | 78,123 |
| Ohio | 49,403 | 52,636 | 58,466 | 48,617 | 44,197 | 42,029 | 43,891 | 49,319 | 49,386 | 54,539 | | | 492,483 |
| Oklahoma | 30,694 | 29,731 | 29,342 | 26,893 | 24,319 | 22,786 | 24,259 | 27,213 | 28,036 | 28,992 | | | 272,265 |
| Oregon | 32,461 | 32,776 | 50,164 | 44,636 | 31,843 | 28,634 | 28,433 | 28,412 | 31,395 | 33,779 | | | 342,533 |
| Pennsylvania | 88,553 | 84,547 | 95,751 | 83,373 | 79,736 | 80,856 | 81,871 | 87,607 | 97,031 | 105,214 | | | 884,539 |
| Puerto Rico | 6,480 | 6,816 | 7,845 | 7,312 | 7,676 | 4,427 | 6,030 | 7,743 | 8,457 | 8,356 | | | 71,142 |
| Rhode Island | 2,439 | 2,448 | 2,736 | 2,452 | 2,100 | 2,639 | 2,627 | 2,358 | 2,426 | 2,878 | | | 25,103 |
| South Carolina | 30,464 | 30,363 | 30,192 | 25,724 | 27,370 | 25,103 | 26,466 | 27,551 | 28,219 | 30,108 | | | 281,560 |
| South Dakota | 5,789 | 5,431 | 6,334 | 5,207 | 4,498 | 4,281 | 4,575 | 5,156 | 6,252 | 7,625 | | | 55,148 |
| Tennessee | 66,032 | 64,474 | 70,218 | 59,006 | 55,127 | 53,694 | 53,116 | 57,842 | 57,506 | 62,761 | | | 599,776 |
| Texas | 140,751 | 150,461 | 162,022 | 130,986 | 134,735 | 127,807 | 131,529 | 141,104 | 143,083 | 147,277 | | | 1,409,755 |
| Utah | 75,112 | 72,380 | 77,431 | 73,502 | 73,648 | 71,811 | 71,722 | 75,601 | 72,860 | 73,477 | | | 737,544 |
| Vermont | 2,920 | 2,894 | 3,498 | 3,155 | 2,710 | 2,367 | 2,341 | 2,801 | 3,108 | 3,473 | | | 29,267 |
| Virgin Islands | 211 | 257 | 274 | 258 | 215 | 220 | 217 | 243 | 279 | 327 | | | 2,501 |
| Virginia | 43,207 | 42,528 | 47,069 | 40,343 | 37,167 | 36,466 | 36,595 | 39,126 | 42,020 | 45,212 | | | 409,733 |
| Washington | 38,751 | 34,571 | 40,732 | 35,788 | 33,588 | 30,227 | 29,886 | 32,134 | 35,959 | 38,377 | | | 350,013 |
| West Virginia | 12,272 | 14,383 | 16,436 | 13,327 | 12,829 | 11,432 | 11,661 | 13,328 | 15,131 | 18,212 | | | 139,011 |
| Wisconsin | 46,212 | 44,940 | 57,422 | 51,956 | 42,844 | 41,358 | 43,355 | 45,814 | 52,661 | 58,276 | | | 484,838 |
| Wyoming | 4,831 | 5,170 | 5,914 | 5,576 | 4,862 | 4,834 | 4,751 | 5,246 | 5,826 | 5,561 | | | 52,571 |

**App307**

## NICS Firearm Background Checks: Month/Year by State

### Year 2024

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

January 1, 2024 - December 31,2024

| State / Territory | January | February | March | April | May | June | July | August | September | October | November | December | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 48,000 | 52,312 | 55,536 | 44,324 | 42,930 | 40,950 | 43,799 | 47,657 | 45,926 | 49,856 | 57,272 | 67,826 | 596,388 |
| Alaska | 4,712 | 5,200 | 6,955 | 6,310 | 6,438 | 5,746 | 5,815 | 6,670 | 5,997 | 7,375 | 6,907 | 7,563 | 75,688 |
| Arizona | 39,760 | 42,728 | 44,239 | 38,139 | 40,629 | 52,422 | 42,794 | 43,185 | 39,453 | 45,259 | 44,552 | 51,322 | 524,482 |
| Arkansas | 17,375 | 20,719 | 20,647 | 16,718 | 15,549 | 16,250 | 16,879 | 19,662 | 19,013 | 23,448 | 24,912 | 28,019 | 239,191 |
| California | 124,166 | 123,463 | 130,539 | 118,588 | 124,928 | 138,676 | 106,815 | 129,824 | 113,329 | 121,359 | 117,070 | 127,187 | 1,475,944 |
| Colorado | 35,655 | 38,824 | 51,004 | 49,496 | 38,821 | 33,399 | 33,581 | 35,955 | 35,686 | 38,836 | 40,416 | 45,329 | 477,002 |
| Connecticut | 18,784 | 19,770 | 21,584 | 21,323 | 19,239 | 18,215 | 15,726 | 15,609 | 14,209 | 15,727 | 16,564 | 16,054 | 212,804 |
| Delaware | 4,474 | 4,440 | 5,710 | 4,810 | 4,387 | 3,787 | 4,205 | 4,653 | 3,725 | 4,064 | 4,434 | 4,681 | 53,370 |
| District of Columbia | 1,512 | 1,305 | 1,196 | 1,051 | 1,441 | 1,098 | 1,400 | 1,156 | 1,314 | 1,418 | 1,277 | 2,434 | 16,602 |
| Florida | 113,313 | 116,605 | 115,603 | 105,104 | 96,736 | 92,817 | 95,959 | 101,417 | 91,112 | 98,355 | 115,338 | 133,078 | 1,275,437 |
| Georgia | 47,052 | 50,114 | 50,700 | 41,757 | 39,567 | 38,161 | 40,702 | 43,241 | 41,353 | 48,840 | 56,718 | 64,641 | 562,846 |
| Guam | 214 | 202 | 262 | 259 | 208 | 251 | 237 | 269 | 245 | 252 | 284 | 328 | 3,011 |
| Hawaii | 1,111 | 1,012 | 1,002 | 1,432 | 1,357 | 1,228 | 1,341 | 1,423 | 1,309 | 1,474 | 1,390 | 1,323 | 15,402 |
| Idaho | 18,423 | 16,601 | 22,260 | 23,653 | 21,125 | 17,387 | 21,444 | 18,231 | 16,967 | 19,757 | 22,473 | 23,764 | 242,085 |
| Illinois | 237,003 | 248,767 | 259,369 | 220,416 | 174,194 | 179,756 | 211,860 | 214,553 | 211,218 | 231,025 | 285,759 | 295,035 | 2,768,955 |
| Indiana | 60,424 | 62,544 | 69,726 | 58,511 | 54,636 | 54,115 | 55,909 | 61,683 | 61,053 | 64,126 | 73,025 | 75,788 | 751,540 |
| Iowa | 15,762 | 19,209 | 22,057 | 15,621 | 11,946 | 10,526 | 11,141 | 11,866 | 11,628 | 15,557 | 19,520 | 18,408 | 183,241 |
| Kansas | 14,232 | 16,466 | 16,169 | 13,416 | 12,101 | 11,430 | 12,145 | 14,137 | 13,234 | 15,413 | 19,082 | 20,714 | 178,539 |
| Kentucky | 317,754 | 321,300 | 319,814 | 310,512 | 302,948 | 303,790 | 304,664 | 307,824 | 307,059 | 309,780 | 316,780 | 319,479 | 3,741,704 |
| Louisiana | 21,122 | 22,842 | 25,113 | 19,304 | 17,437 | 17,954 | 20,202 | 22,219 | 24,517 | 24,461 | 28,310 | 33,878 | 277,359 |
| Maine | 7,951 | 9,409 | 9,689 | 8,604 | 7,415 | 6,665 | 7,351 | 7,512 | 7,628 | 9,771 | 8,725 | 9,029 | 99,749 |
| Mariana Islands | 27 | 23 | 24 | 25 | 18 | 20 | 13 | 22 | 19 | 14 | 17 | 17 | 239 |
| Maryland | 26,284 | 25,010 | 25,683 | 23,566 | 20,715 | 18,361 | 20,233 | 21,661 | 23,375 | 27,978 | 28,147 | 28,433 | 289,446 |
| Massachusetts | 23,018 | 23,249 | 25,344 | 20,994 | 20,775 | 18,295 | 39,543 | 28,222 | 26,057 | 29,709 | 23,950 | 20,281 | 299,437 |
| Michigan | 60,881 | 73,278 | 80,691 | 70,820 | 57,647 | 52,661 | 57,575 | 61,617 | 63,332 | 74,140 | 79,052 | 76,581 | 808,275 |
| Minnesota | 65,805 | 73,537 | 88,915 | 88,208 | 69,915 | 59,041 | 62,518 | 69,137 | 68,918 | 81,430 | 75,047 | 71,101 | 873,572 |
| Mississippi | 17,298 | 22,878 | 22,528 | 17,039 | 15,576 | 14,961 | 15,779 | 22,357 | 17,461 | 19,851 | 26,204 | 31,156 | 243,088 |
| Missouri | 37,779 | 43,300 | 45,844 | 37,765 | 34,126 | 32,468 | 33,843 | 40,013 | 36,612 | 44,352 | 50,675 | 56,094 | 492,871 |
| Montana | 9,359 | 10,861 | 12,483 | 12,056 | 11,392 | 10,698 | 10,238 | 12,067 | 12,353 | 13,761 | 13,882 | 14,875 | 144,025 |
| Nebraska | 6,264 | 7,060 | 7,009 | 5,438 | 4,961 | 4,625 | 4,794 | 5,224 | 5,453 | 7,000 | 7,934 | 8,014 | 73,776 |
| Nevada | 11,440 | 12,031 | 13,443 | 11,486 | 11,817 | 10,912 | 11,208 | 10,898 | 9,773 | 11,246 | 11,904 | 15,572 | 141,730 |
| New Hampshire | 13,409 | 13,741 | 14,770 | 12,396 | 10,787 | 10,248 | 10,670 | 11,620 | 11,354 | 12,375 | 13,382 | 14,557 | 149,309 |
| New Jersey | 14,593 | 13,867 | 14,656 | 14,283 | 11,508 | 12,193 | 11,806 | 11,589 | 11,527 | 12,851 | 12,222 | 14,257 | 155,352 |
| New Mexico | 12,501 | 15,908 | 15,056 | 13,738 | 12,011 | 8,875 | 9,984 | 10,715 | 10,464 | 11,101 | 11,614 | 13,732 | 145,699 |
| New York | 28,965 | 29,539 | 31,065 | 30,206 | 26,177 | 23,635 | 24,573 | 28,107 | 29,312 | 32,453 | 31,752 | 29,754 | 345,538 |
| North Carolina | 59,416 | 66,643 | 65,413 | 56,211 | 50,736 | 47,078 | 49,072 | 52,587 | 46,822 | 56,491 | 67,015 | 73,144 | 690,628 |
| North Dakota | 5,151 | 5,422 | 6,533 | 14,183 | 4,568 | 4,370 | 12,804 | 4,760 | 5,102 | 13,753 | 6,241 | 5,560 | 88,447 |
| Ohio | 49,784 | 58,993 | 63,588 | 51,028 | 43,437 | 42,103 | 44,365 | 50,121 | 45,936 | 53,049 | 69,690 | 68,097 | 640,191 |
| Oklahoma | 26,858 | 30,670 | 30,319 | 26,765 | 24,175 | 22,689 | 23,816 | 26,966 | 25,204 | 31,040 | 40,182 | 45,627 | 354,311 |
| Oregon | 34,269 | 33,195 | 47,440 | 42,485 | 38,868 | 36,357 | 34,802 | 38,022 | 38,340 | 41,326 | 35,816 | 37,947 | 458,867 |
| Pennsylvania | 85,802 | 96,517 | 109,990 | 92,911 | 81,703 | 75,594 | 81,027 | 90,983 | 87,592 | 99,323 | 104,766 | 102,804 | 1,109,012 |
| Puerto Rico | 4,448 | 4,786 | 5,401 | 5,623 | 4,960 | 4,600 | 4,407 | 4,383 | 4,218 | 6,514 | 6,266 | 6,609 | 62,215 |
| Rhode Island | 2,168 | 2,170 | 2,529 | 2,125 | 1,771 | 1,564 | 1,628 | 1,968 | 1,876 | 2,174 | 2,179 | 2,292 | 24,444 |
| South Carolina | 28,215 | 31,299 | 37,566 | 28,815 | 24,942 | 24,074 | 23,436 | 27,216 | 23,227 | 29,768 | 34,170 | 39,471 | 352,199 |
| South Dakota | 5,776 | 6,415 | 7,049 | 5,931 | 4,973 | 4,566 | 5,032 | 5,713 | 5,831 | 8,045 | 8,278 | 7,500 | 75,109 |
| Tennessee | 54,679 | 61,233 | 62,504 | 57,365 | 47,686 | 49,713 | 51,949 | 56,973 | 54,071 | 59,618 | 71,998 | 83,950 | 711,739 |
| Texas | 128,453 | 148,972 | 158,096 | 133,950 | 122,363 | 128,605 | 119,746 | 143,984 | 132,858 | 142,102 | 165,602 | 177,921 | 1,702,652 |
| Utah | 73,565 | 74,032 | 82,331 | 98,527 | 81,328 | 75,768 | 78,311 | 82,248 | 75,640 | 77,325 | 77,492 | 81,230 | 957,797 |
| Vermont | 2,849 | 3,763 | 4,023 | 3,272 | 2,456 | 2,470 | 2,440 | 3,065 | 3,038 | 3,463 | 3,665 | 3,669 | 38,173 |
| Virgin Islands | 173 | 222 | 193 | 238 | 166 | 164 | 162 | 201 | 207 | 272 | 187 | 196 | 2,381 |
| Virginia | 43,226 | 48,250 | 49,434 | 41,041 | 37,645 | 35,464 | 38,695 | 41,175 | 39,976 | 43,875 | 52,013 | 56,744 | 527,538 |
| Washington | 38,804 | 36,080 | 40,284 | 35,741 | 34,045 | 30,365 | 30,003 | 32,417 | 31,162 | 35,066 | 35,653 | 38,488 | 418,108 |
| West Virginia | 13,050 | 16,713 | 18,451 | 14,657 | 12,663 | 11,628 | 12,150 | 13,830 | 13,082 | 15,331 | 19,184 | 19,991 | 180,730 |
| Wisconsin | 42,240 | 47,214 | 53,070 | 45,947 | 35,110 | 34,403 | 35,490 | 39,443 | 40,926 | 49,655 | 55,455 | 48,626 | 527,579 |
| Wyoming | 4,914 | 5,687 | 6,678 | 6,251 | 5,453 | 5,256 | 5,154 | 5,490 | 5,457 | 5,779 | 6,926 | 7,763 | 70,808 |

**App308**

# NICS Firearm Background Checks:
## Month/Year by State

### Year 2023

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

January 1, 2023 - December 31, 2023

| State / Territory | January | February | March | April | May | June | July | August | September | October | November | December | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 52,902 | 53,348 | 59,294 | 45,856 | 43,491 | 42,964 | 39,910 | 44,804 | 44,556 | 50,943 | 59,624 | 71,560 | 609,252 |
| Alaska | 5,157 | 5,595 | 7,164 | 7,172 | 6,420 | 6,314 | 5,662 | 6,278 | 5,922 | 7,457 | 6,547 | 7,127 | 76,815 |
| Arizona | 41,003 | 42,960 | 50,957 | 44,167 | 42,092 | 41,958 | 38,654 | 42,093 | 38,189 | 36,775 | 43,877 | 46,679 | 509,404 |
| Arkansas | 17,648 | 19,635 | 23,692 | 18,178 | 16,024 | 17,305 | 15,383 | 17,338 | 17,207 | 20,843 | 25,973 | 27,688 | 236,914 |
| California | 109,159 | 109,948 | 128,399 | 117,488 | 119,898 | 119,610 | 114,154 | 127,662 | 118,625 | 137,944 | 144,675 | 150,791 | 1,498,353 |
| Colorado | 41,139 | 44,124 | 56,915 | 47,614 | 42,050 | 38,588 | 36,324 | 37,881 | 39,320 | 37,023 | 42,494 | 44,179 | 507,651 |
| Connecticut | 22,375 | 18,704 | 21,984 | 17,658 | 17,193 | 19,449 | 13,584 | 15,528 | 13,784 | 16,499 | 17,568 | 17,673 | 211,999 |
| Delaware | 4,099 | 4,350 | 4,650 | 4,650 | 4,610 | 4,379 | 3,497 | 3,291 | 3,155 | 3,869 | 4,368 | 5,162 | 50,080 |
| District of Columbia | 1,362 | 1,309 | 1,601 | 1,293 | 1,277 | 1,317 | 1,051 | 1,197 | 929 | 1,213 | 1,635 | 1,503 | 15,687 |
| Florida | 115,612 | 118,402 | 128,927 | 124,000 | 110,038 | 106,100 | 101,017 | 98,132 | 95,281 | 123,586 | 134,389 | 143,783 | 1,399,267 |
| Georgia | 48,617 | 52,116 | 55,648 | 43,913 | 42,305 | 39,551 | 36,529 | 40,369 | 38,783 | 47,747 | 53,488 | 63,222 | 562,288 |
| Guam | 292 | 234 | 269 | 245 | 197 | 250 | 283 | 313 | 233 | 201 | 227 | 278 | 3,022 |
| Hawaii | 1,848 | 1,723 | 2,310 | 1,916 | 2,287 | 1,797 | 1,339 | 1,754 | 1,689 | 2,103 | 2,458 | 2,526 | 23,750 |
| Idaho | 17,459 | 19,811 | 22,180 | 25,247 | 18,632 | 19,508 | 18,060 | 17,071 | 14,935 | 19,204 | 19,980 | 21,133 | 233,220 |
| Illinois | 524,977 | 412,005 | 499,315 | 437,555 | 377,463 | 271,382 | 227,972 | 237,846 | 222,356 | 254,303 | 261,188 | 234,874 | 3,961,236 |
| Indiana | 72,692 | 68,120 | 77,997 | 66,677 | 58,662 | 55,949 | 51,804 | 54,117 | 55,955 | 62,012 | 70,659 | 73,487 | 768,131 |
| Iowa | 19,255 | 17,739 | 23,437 | 15,991 | 11,432 | 10,736 | 10,940 | 12,124 | 12,368 | 13,998 | 18,250 | 19,570 | 185,840 |
| Kansas | 15,776 | 16,369 | 17,121 | 14,808 | 13,101 | 12,946 | 12,899 | 14,227 | 13,542 | 15,828 | 18,600 | 21,493 | 186,710 |
| Kentucky | 324,428 | 297,902 | 351,093 | 342,513 | 338,009 | 335,656 | 326,586 | 254,242 | 284,622 | 164,242 | 332,787 | 333,763 | 3,685,843 |
| Louisiana | 24,118 | 25,596 | 28,266 | 26,425 | 20,995 | 19,624 | 18,392 | 21,479 | 24,513 | 25,540 | 31,206 | 35,502 | 301,656 |
| Maine | 7,955 | 8,674 | 10,352 | 9,132 | 7,622 | 7,462 | 6,970 | 7,763 | 8,791 | 13,131 | 12,598 | 11,854 | 112,304 |
| Mariana Islands | 11 | 20 | 20 | 27 | 26 | 30 | 33 | 36 | 16 | 14 | 21 | 21 | 275 |
| Maryland | 40,165 | 32,171 | 37,118 | 28,157 | 25,583 | 21,869 | 20,290 | 22,159 | 20,991 | 25,053 | 27,075 | 24,796 | 325,427 |
| Massachusetts | 20,984 | 19,078 | 21,888 | 18,778 | 17,222 | 16,068 | 17,053 | 18,678 | 16,086 | 20,592 | 23,845 | 21,654 | 231,926 |
| Michigan | 65,191 | 66,891 | 83,557 | 68,276 | 58,636 | 55,814 | 51,275 | 57,904 | 56,622 | 68,311 | 75,883 | 73,409 | 781,769 |
| Minnesota | 63,422 | 67,922 | 90,757 | 86,214 | 69,238 | 59,722 | 61,634 | 69,182 | 71,753 | 83,441 | 71,103 | 74,387 | 868,775 |
| Mississippi | 21,050 | 24,427 | 24,280 | 19,091 | 17,755 | 17,357 | 15,206 | 21,328 | 18,411 | 20,515 | 27,320 | 33,027 | 259,767 |
| Missouri | 41,111 | 44,370 | 49,079 | 37,778 | 34,553 | 33,847 | 31,886 | 36,315 | 36,207 | 44,646 | 52,857 | 59,949 | 502,598 |
| Montana | 9,219 | 10,540 | 13,496 | 12,415 | 10,788 | 10,021 | 9,659 | 10,992 | 11,983 | 12,535 | 13,162 | 14,921 | 139,731 |
| Nebraska | 6,301 | 7,057 | 8,615 | 6,918 | 6,545 | 5,264 | 4,881 | 5,458 | 5,602 | 7,358 | 7,758 | 8,289 | 80,046 |
| Nevada | 10,112 | 11,431 | 14,066 | 13,309 | 12,314 | 10,438 | 10,872 | 11,232 | 9,765 | 11,272 | 12,539 | 14,378 | 141,728 |
| New Hampshire | 10,384 | 10,926 | 12,357 | 11,536 | 10,121 | 9,516 | 9,113 | 9,894 | 9,703 | 12,902 | 16,360 | 17,344 | 140,156 |
| New Jersey | 16,748 | 13,347 | 16,705 | 13,193 | 13,195 | 11,978 | 10,933 | 10,470 | 10,519 | 12,587 | 15,064 | 15,057 | 159,796 |
| New Mexico | 13,567 | 14,725 | 16,684 | 13,476 | 13,620 | 13,196 | 11,622 | 11,887 | 12,709 | 13,234 | 14,692 | 15,969 | 165,381 |
| New York | 31,966 | 31,505 | 38,874 | 33,994 | 30,234 | 28,716 | 25,975 | 31,413 | 33,354 | 39,198 | 36,439 | 33,609 | 395,277 |
| North Carolina | 54,685 | 53,785 | 67,325 | 83,395 | 65,227 | 58,917 | 50,371 | 52,536 | 48,410 | 56,921 | 65,490 | 73,095 | 730,157 |
| North Dakota | 5,161 | 5,736 | 6,613 | 6,145 | 5,041 | 4,440 | 4,206 | 5,014 | 5,361 | 6,569 | 38,688 | 6,487 | 99,461 |
| Ohio | 50,153 | 58,078 | 64,944 | 53,026 | 46,693 | 45,802 | 44,279 | 45,688 | 45,659 | 56,587 | 72,235 | 72,808 | 655,952 |
| Oklahoma | 28,280 | 31,298 | 33,327 | 29,531 | 26,113 | 25,503 | 23,521 | 25,905 | 25,836 | 29,314 | 36,965 | 40,665 | 356,258 |
| Oregon | 56,173 | 44,411 | 57,985 | 50,292 | 44,033 | 32,821 | 26,385 | 28,140 | 29,407 | 30,850 | 34,396 | 47,995 | 482,888 |
| Pennsylvania | 101,711 | 104,827 | 122,065 | 97,960 | 87,799 | 84,403 | 76,555 | 84,378 | 82,073 | 100,813 | 105,129 | 107,048 | 1,154,761 |
| Puerto Rico | 5,155 | 5,408 | 6,420 | 5,939 | 6,414 | 6,156 | 5,115 | 5,443 | 5,020 | 4,781 | 5,439 | 5,113 | 66,403 |
| Rhode Island | 2,120 | 2,369 | 2,481 | 2,306 | 1,883 | 1,823 | 1,624 | 1,762 | 1,675 | 2,406 | 2,479 | 2,250 | 25,178 |
| South Carolina | 31,169 | 31,382 | 33,086 | 25,103 | 28,237 | 28,632 | 25,186 | 25,310 | 26,580 | 29,020 | 33,410 | 37,500 | 354,615 |
| South Dakota | 5,862 | 6,277 | 7,671 | 6,374 | 5,052 | 4,821 | 4,620 | 5,559 | 6,148 | 8,328 | 8,355 | 8,532 | 77,599 |
| Tennessee | 66,377 | 67,898 | 72,008 | 62,843 | 54,444 | 51,845 | 50,235 | 53,005 | 50,338 | 60,069 | 71,012 | 82,148 | 742,222 |
| Texas | 131,221 | 140,653 | 151,915 | 127,394 | 125,580 | 121,507 | 109,274 | 122,787 | 123,482 | 139,625 | 159,578 | 180,418 | 1,633,434 |
| Utah | 77,247 | 73,853 | 89,575 | 81,933 | 86,981 | 84,482 | 80,128 | 83,049 | 77,300 | 78,590 | 79,030 | 79,171 | 971,339 |
| Vermont | 3,269 | 3,936 | 4,463 | 3,859 | 3,057 | 3,129 | 2,330 | 2,881 | 3,148 | 3,560 | 3,712 | 4,151 | 41,495 |
| Virgin Islands | 379 | 238 | 289 | 79 | 152 | 128 | 457 | 221 | 191 | 229 | 217 | 178 | 2,758 |
| Virginia | 46,130 | 47,218 | 50,368 | 45,077 | 39,188 | 38,842 | 36,589 | 37,665 | 39,154 | 46,686 | 54,528 | 60,271 | 541,716 |
| Washington | 57,495 | 57,315 | 97,585 | 87,463 | 45,502 | 37,461 | 33,857 | 38,297 | 37,508 | 42,552 | 48,374 | 61,332 | 644,741 |
| West Virginia | 15,389 | 17,498 | 19,818 | 15,068 | 13,747 | 12,955 | 12,004 | 12,900 | 13,273 | 16,207 | 20,603 | 21,891 | 191,353 |
| Wisconsin | 52,291 | 52,061 | 60,811 | 51,604 | 39,695 | 36,822 | 34,924 | 39,227 | 40,897 | 49,422 | 51,788 | 50,772 | 560,314 |
| Wyoming | 4,365 | 5,070 | 6,414 | 5,678 | 5,384 | 5,017 | 4,548 | 5,288 | 5,474 | 5,665 | 6,769 | 7,749 | 67,421 |

**App309**

## NICS Firearm Background Checks:
## Month/Year by State

### Year 2022

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

January 1, 2022 - December 31, 2022

| State / Territory | January | February | March | April | May | June | July | August | September | October | November | December | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 62,764 | 69,098 | 76,494 | 54,956 | 51,735 | 59,049 | 54,307 | 58,549 | 55,587 | 53,721 | 63,954 | 78,899 | 739,113 |
| Alaska | 4,986 | 5,916 | 7,786 | 7,589 | 6,661 | 6,821 | 6,632 | 7,400 | 9,008 | 7,833 | 7,149 | 7,021 | 84,802 |
| Arizona | 34,855 | 38,149 | 49,474 | 61,899 | 42,163 | 47,044 | 42,434 | 43,789 | 40,472 | 38,984 | 42,895 | 51,541 | 533,699 |
| Arkansas | 17,487 | 19,002 | 24,412 | 18,222 | 15,854 | 18,337 | 16,395 | 18,508 | 18,927 | 19,519 | 24,160 | 28,527 | 239,350 |
| California | 104,282 | 106,295 | 129,391 | 116,208 | 111,612 | 123,930 | 120,932 | 138,358 | 126,521 | 116,527 | 116,394 | 121,543 | 1,431,993 |
| Colorado | 40,897 | 42,694 | 52,984 | 44,201 | 40,505 | 45,272 | 41,071 | 45,130 | 41,857 | 40,891 | 43,932 | 48,901 | 528,335 |
| Connecticut | 18,473 | 20,654 | 27,188 | 23,781 | 18,914 | 17,258 | 17,455 | 18,930 | 16,655 | 16,635 | 16,732 | 18,027 | 230,702 |
| Delaware | 4,596 | 5,088 | 5,828 | 4,877 | 4,322 | 9,891 | 3,639 | 3,654 | 3,555 | 3,786 | 4,122 | 4,965 | 58,323 |
| District of Columbia | 1,418 | 1,108 | 1,569 | 1,194 | 878 | 928 | 1,273 | 1,644 | 1,335 | 1,537 | 1,941 | 1,277 | 16,102 |
| Florida | 112,827 | 121,578 | 141,042 | 124,153 | 111,723 | 137,336 | 120,328 | 119,576 | 109,209 | 110,333 | 120,839 | 145,786 | 1,474,730 |
| Georgia | 48,062 | 54,210 | 63,697 | 47,352 | 42,352 | 46,597 | 41,696 | 44,081 | 46,131 | 47,077 | 52,709 | 67,443 | 601,407 |
| Guam | 275 | 285 | 341 | 312 | 288 | 305 | 303 | 320 | 357 | 295 | 307 | 285 | 3,673 |
| Hawaii | 1,358 | 1,332 | 1,780 | 1,452 | 1,334 | 1,860 | 1,834 | 1,719 | 1,571 | 1,621 | 1,419 | 1,562 | 18,842 |
| Idaho | 15,947 | 20,046 | 24,376 | 19,580 | 18,711 | 20,831 | 18,373 | 18,669 | 17,593 | 19,088 | 20,403 | 21,848 | 235,465 |
| Illinois | 473,953 | 308,269 | 385,030 | 302,986 | 279,089 | 315,073 | 327,083 | 380,262 | 370,928 | 402,829 | 453,252 | 477,301 | 4,476,055 |
| Indiana | 111,333 | 106,776 | 134,911 | 102,886 | 86,916 | 82,538 | 82,999 | 81,433 | 78,652 | 71,455 | 79,544 | 85,597 | 1,105,040 |
| Iowa | 22,011 | 23,831 | 30,460 | 19,809 | 15,142 | 16,595 | 12,819 | 15,041 | 14,316 | 13,761 | 17,168 | 17,750 | 218,703 |
| Kansas | 14,630 | 16,737 | 19,692 | 15,128 | 13,118 | 15,830 | 14,134 | 14,728 | 13,861 | 14,126 | 18,610 | 21,301 | 191,895 |
| Kentucky | 354,595 | 357,772 | 358,839 | 347,125 | 338,283 | 338,173 | 325,084 | 261,153 | 330,999 | 330,427 | 335,435 | 338,625 | 4,016,510 |
| Louisiana | 27,768 | 30,836 | 36,323 | 25,869 | 22,810 | 26,521 | 24,081 | 27,443 | 27,064 | 26,767 | 30,374 | 38,952 | 344,808 |
| Maine | 7,239 | 8,429 | 11,521 | 9,349 | 7,573 | 9,676 | 8,719 | 9,102 | 10,288 | 10,988 | 9,793 | 11,413 | 114,090 |
| Mariana Islands | 43 | 30 | 30 | 31 | 47 | 31 | 20 | 20 | 35 | 35 | 23 | 27 | 372 |
| Maryland | 17,340 | 18,871 | 22,132 | 19,346 | 17,641 | 19,042 | 21,625 | 35,102 | 35,282 | 36,145 | 40,087 | 43,501 | 326,114 |
| Massachusetts | 17,297 | 18,136 | 23,708 | 18,518 | 17,306 | 18,507 | 19,054 | 20,080 | 17,567 | 18,673 | 20,236 | 18,846 | 227,928 |
| Michigan | 62,731 | 62,456 | 83,801 | 71,095 | 58,616 | 64,312 | 58,259 | 62,907 | 61,390 | 62,156 | 70,852 | 70,585 | 789,160 |
| Minnesota | 65,564 | 69,674 | 95,934 | 88,959 | 71,729 | 66,708 | 66,314 | 73,198 | 72,322 | 81,000 | 69,999 | 69,643 | 891,044 |
| Mississippi | 19,312 | 26,603 | 29,300 | 21,215 | 18,066 | 20,146 | 18,667 | 25,074 | 21,612 | 21,233 | 27,843 | 35,793 | 284,864 |
| Missouri | 38,691 | 44,174 | 56,698 | 44,583 | 36,382 | 40,871 | 39,442 | 39,913 | 39,962 | 41,961 | 50,043 | 58,212 | 530,932 |
| Montana | 9,052 | 10,924 | 14,175 | 12,719 | 11,440 | 12,242 | 10,568 | 11,157 | 12,144 | 12,440 | 11,552 | 13,390 | 141,803 |
| Nebraska | 5,904 | 6,697 | 8,080 | 6,598 | 5,353 | 5,677 | 4,849 | 5,930 | 5,209 | 5,769 | 7,140 | 7,878 | 75,084 |
| Nevada | 13,648 | 11,353 | 15,865 | 11,689 | 12,230 | 15,925 | 12,130 | 12,221 | 10,883 | 10,128 | 11,598 | 14,591 | 152,261 |
| New Hampshire | 9,481 | 10,201 | 13,482 | 11,858 | 9,454 | 11,537 | 10,418 | 10,841 | 10,681 | 10,738 | 11,333 | 13,483 | 133,507 |
| New Jersey | 13,063 | 12,695 | 17,168 | 13,713 | 11,608 | 12,962 | 14,488 | 15,435 | 13,917 | 15,401 | 13,317 | 13,973 | 167,740 |
| New Mexico | 12,417 | 14,428 | 18,396 | 14,255 | 12,566 | 14,260 | 13,027 | 15,005 | 13,903 | 13,284 | 14,702 | 17,550 | 173,793 |
| New York | 29,536 | 32,626 | 42,755 | 36,967 | 31,346 | 48,349 | 37,743 | 49,734 | 36,178 | 32,562 | 34,289 | 35,482 | 447,567 |
| North Carolina | 50,952 | 56,914 | 66,464 | 47,034 | 44,641 | 50,992 | 44,513 | 49,063 | 43,920 | 45,899 | 52,080 | 60,223 | 612,695 |
| North Dakota | 5,064 | 5,558 | 7,803 | 6,155 | 5,419 | 5,733 | 5,617 | 5,914 | 6,170 | 7,304 | 5,901 | 5,820 | 72,458 |
| Ohio | 50,625 | 54,960 | 74,436 | 57,067 | 45,371 | 54,522 | 49,066 | 48,026 | 46,512 | 46,563 | 62,899 | 66,889 | 656,936 |
| Oklahoma | 27,273 | 29,655 | 36,821 | 30,183 | 25,287 | 31,123 | 27,849 | 29,595 | 27,404 | 27,251 | 35,701 | 42,133 | 370,275 |
| Oregon | 30,035 | 32,115 | 39,596 | 33,864 | 30,641 | 34,771 | 30,614 | 30,272 | 30,973 | 34,863 | 91,661 | 76,437 | 495,842 |
| Pennsylvania | 93,298 | 105,057 | 124,456 | 102,997 | 88,898 | 104,824 | 93,961 | 97,000 | 95,909 | 100,930 | 106,439 | 115,360 | 1,229,129 |
| Puerto Rico | 5,778 | 6,349 | 7,802 | 6,012 | 7,305 | 7,050 | 5,993 | 6,238 | 4,580 | 6,041 | 7,330 | 6,363 | 76,841 |
| Rhode Island | 2,139 | 2,433 | 3,160 | 2,406 | 2,136 | 2,883 | 1,940 | 2,143 | 1,914 | 2,055 | 2,269 | 2,422 | 27,900 |
| South Carolina | 29,123 | 38,534 | 42,803 | 33,686 | 29,978 | 35,719 | 29,866 | 32,827 | 34,562 | 32,379 | 36,936 | 46,685 | 423,098 |
| South Dakota | 6,536 | 7,322 | 8,903 | 7,373 | 5,639 | 5,999 | 6,236 | 7,158 | 7,293 | 8,737 | 8,577 | 7,816 | 87,589 |
| Tennessee | 62,111 | 76,335 | 85,646 | 67,877 | 61,194 | 67,036 | 63,453 | 65,344 | 63,911 | 64,371 | 73,566 | 86,109 | 836,953 |
| Texas | 127,737 | 140,141 | 170,171 | 138,869 | 128,523 | 150,464 | 135,854 | 138,829 | 137,483 | 134,003 | 148,620 | 181,957 | 1,732,651 |
| Utah | 80,486 | 77,580 | 90,977 | 86,869 | 83,437 | 87,018 | 85,909 | 85,962 | 84,042 | 81,921 | 82,434 | 87,642 | 1,014,277 |
| Vermont | 3,184 | 3,716 | 4,878 | 3,955 | 2,894 | 3,570 | 3,333 | 3,401 | 3,832 | 3,819 | 3,732 | 4,408 | 44,722 |
| Virgin Islands | 95 | 212 | 175 | 154 | 186 | 302 | 189 | 312 | 137 | 95 | 108 | 133 | 2,098 |
| Virginia | 42,218 | 48,021 | 54,961 | 46,010 | 40,599 | 47,169 | 43,959 | 42,790 | 43,065 | 45,652 | 51,769 | 61,291 | 567,504 |
| Washington | 52,914 | 55,807 | 79,291 | 67,149 | 63,908 | 80,189 | 56,721 | 50,695 | 47,101 | 47,166 | 48,037 | 57,282 | 706,260 |
| West Virginia | 13,050 | 16,718 | 19,951 | 15,280 | 13,069 | 14,473 | 13,743 | 14,241 | 14,483 | 15,952 | 19,756 | 22,152 | 192,868 |
| Wisconsin | 51,816 | 54,653 | 64,537 | 54,798 | 43,611 | 46,961 | 45,916 | 49,282 | 52,391 | 55,872 | 59,699 | 55,992 | 635,528 |
| Wyoming | 4,827 | 5,765 | 6,972 | 5,845 | 5,684 | 6,076 | 5,223 | 5,418 | 5,910 | 5,271 | 6,202 | 7,083 | 70,276 |

**App310**

# NICS Firearm Background Checks:
# Month/Year by State

## Year 2021
January 1, 2021 - December 31, 2021

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 105,602 | 74,710 | 107,474 | 88,232 | 66,937 | 72,284 | 66,051 | 66,233 | 65,900 | 66,499 | 74,158 | 92,191 | 946,271 |
| Alaska | 9,018 | 6,667 | 10,170 | 9,078 | 7,145 | 6,415 | 6,620 | 7,020 | 6,520 | 7,572 | 7,342 | 7,640 | 91,207 |
| Arizona | 60,548 | 45,496 | 65,805 | 55,830 | 56,581 | 38,539 | 38,125 | 37,365 | 40,033 | 38,523 | 38,933 | 47,985 | 563,763 |
| Arkansas | 30,085 | 18,916 | 34,134 | 26,952 | 24,206 | 21,231 | 18,454 | 19,683 | 20,536 | 21,518 | 23,744 | 29,247 | 288,706 |
| California | 134,432 | 119,784 | 143,742 | 126,285 | 119,739 | 125,609 | 116,701 | 120,959 | 116,704 | 114,144 | 112,977 | 124,997 | 1,476,073 |
| Colorado | 65,051 | 50,485 | 69,757 | 60,918 | 50,079 | 44,970 | 44,778 | 46,385 | 45,908 | 46,964 | 48,728 | 54,788 | 628,811 |
| Connecticut | 25,606 | 19,748 | 28,021 | 33,213 | 31,313 | 25,840 | 16,773 | 17,890 | 17,742 | 20,467 | 20,566 | 20,071 | 277,250 |
| Delaware | 7,408 | 5,245 | 7,280 | 7,514 | 5,308 | 5,009 | 5,141 | 4,978 | 4,469 | 5,221 | 5,334 | 6,161 | 69,068 |
| District of Columbia | 1,076 | 920 | 1,035 | 1,050 | 768 | 976 | 1,059 | 1,070 | 1,076 | 1,342 | 1,288 | 1,250 | 12,910 |
| Florida | 190,817 | 138,870 | 178,247 | 162,912 | 133,237 | 129,351 | 125,688 | 121,803 | 124,186 | 125,938 | 129,708 | 150,928 | 1,711,685 |
| Georgia | 92,903 | 73,120 | 95,449 | 78,993 | 61,003 | 60,489 | 57,185 | 55,189 | 52,797 | 54,202 | 56,981 | 68,601 | 806,912 |
| Guam | 304 | 301 | 404 | 363 | 379 | 391 | 405 | 410 | 392 | 403 | 386 | 380 | 4,518 |
| Hawaii | 1,504 | 1,507 | 1,770 | 1,357 | 1,169 | 1,319 | 1,135 | 1,672 | 1,674 | 1,570 | 1,568 | 1,462 | 17,707 |
| Idaho | 28,243 | 21,223 | 34,839 | 26,291 | 18,674 | 18,741 | 19,461 | 19,548 | 18,890 | 20,322 | 22,754 | 24,776 | 273,762 |
| Illinois | 1,002,118 | 902,020 | 1,427,917 | 955,439 | 998,326 | 764,884 | 656,778 | 426,563 | 347,462 | 251,681 | 303,670 | 437,647 | 8,474,505 |
| Indiana | 262,684 | 195,162 | 206,884 | 186,853 | 165,454 | 120,670 | 106,359 | 119,061 | 105,065 | 112,228 | 117,778 | 117,333 | 1,815,531 |
| Iowa | 34,313 | 30,572 | 32,870 | 24,056 | 16,280 | 16,152 | 20,275 | 17,734 | 16,929 | 18,119 | 18,495 | 20,883 | 266,678 |
| Kansas | 26,195 | 17,528 | 26,915 | 20,588 | 15,534 | 15,021 | 15,630 | 16,276 | 16,789 | 17,529 | 19,934 | 22,229 | 230,168 |
| Kentucky | 421,790 | 378,499 | 330,476 | 38,414 | 158,983 | 323,280 | 332,946 | 375,270 | 370,706 | 370,434 | 372,237 | 375,026 | 3,848,061 |
| Louisiana | 40,266 | 26,669 | 46,633 | 37,415 | 29,406 | 31,317 | 29,811 | 25,498 | 27,258 | 31,793 | 34,641 | 40,638 | 401,345 |
| Maine | 13,693 | 8,985 | 14,536 | 11,564 | 8,326 | 8,012 | 8,988 | 9,094 | 11,473 | 12,019 | 10,571 | 11,932 | 129,193 |
| Mariana Islands | 27 | 16 | 29 | 17 | 22 | 30 | 28 | 29 | 56 | 31 | 38 | 41 | 364 |
| Maryland | 31,014 | 23,931 | 30,754 | 25,666 | 20,904 | 19,155 | 18,623 | 19,019 | 17,893 | 18,940 | 20,191 | 21,663 | 267,753 |
| Massachusetts | 29,570 | 23,711 | 28,257 | 22,964 | 19,639 | 18,490 | 20,756 | 20,836 | 18,819 | 19,178 | 18,318 | 18,710 | 259,248 |
| Michigan | 120,227 | 80,944 | 112,066 | 92,922 | 71,704 | 67,663 | 64,503 | 67,496 | 71,059 | 71,295 | 73,622 | 77,489 | 970,990 |
| Minnesota | 87,583 | 75,898 | 105,224 | 95,577 | 72,677 | 64,977 | 66,916 | 75,595 | 74,716 | 84,006 | 70,470 | 71,660 | 945,299 |
| Mississippi | 34,093 | 20,971 | 38,031 | 30,960 | 22,302 | 21,165 | 20,536 | 23,812 | 21,872 | 23,487 | 29,567 | 36,523 | 323,319 |
| Missouri | 72,234 | 48,646 | 77,617 | 58,530 | 46,842 | 42,011 | 42,119 | 42,099 | 43,082 | 47,730 | 51,965 | 61,316 | 634,191 |
| Montana | 18,154 | 11,876 | 18,329 | 14,996 | 11,537 | 10,195 | 10,260 | 11,364 | 12,450 | 13,967 | 12,714 | 14,798 | 160,640 |
| Nebraska | 10,509 | 7,870 | 10,860 | 8,798 | 6,096 | 5,385 | 6,213 | 6,598 | 6,264 | 6,555 | 7,416 | 8,112 | 90,676 |
| Nevada | 19,266 | 15,615 | 21,101 | 19,013 | 15,840 | 14,049 | 13,659 | 15,001 | 13,084 | 13,143 | 12,209 | 14,598 | 186,578 |
| New Hampshire | 19,214 | 12,651 | 17,186 | 14,643 | 10,959 | 9,633 | 10,441 | 10,786 | 11,013 | 11,369 | 10,798 | 13,160 | 151,853 |
| New Jersey | 28,230 | 20,242 | 24,563 | 25,086 | 19,911 | 17,559 | 15,550 | 16,100 | 14,237 | 13,908 | 14,453 | 13,598 | 223,437 |
| New Mexico | 19,689 | 15,609 | 23,024 | 19,471 | 14,349 | 13,679 | 13,935 | 14,287 | 14,497 | 14,055 | 14,427 | 17,967 | 194,989 |
| New York | 49,184 | 36,115 | 49,158 | 42,226 | 34,892 | 33,448 | 33,235 | 34,819 | 38,177 | 38,053 | 36,471 | 38,797 | 464,575 |
| North Carolina | 86,017 | 72,430 | 90,090 | 75,043 | 58,045 | 59,187 | 56,487 | 53,133 | 53,482 | 53,753 | 58,875 | 65,191 | 781,733 |
| North Dakota | 8,662 | 6,057 | 9,200 | 7,571 | 5,581 | 5,350 | 5,435 | 6,074 | 6,432 | 7,361 | 6,273 | 6,550 | 80,546 |
| Ohio | 98,651 | 68,106 | 98,474 | 83,165 | 63,051 | 60,907 | 58,041 | 57,745 | 56,777 | 61,404 | 70,492 | 75,074 | 851,887 |
| Oklahoma | 48,278 | 29,006 | 48,568 | 38,393 | 29,379 | 27,578 | 28,287 | 27,611 | 28,779 | 30,359 | 36,936 | 43,321 | 416,514 |
| Oregon | 49,755 | 34,957 | 49,752 | 41,443 | 35,296 | 33,011 | 30,975 | 33,854 | 34,563 | 35,098 | 36,231 | 39,198 | 454,133 |
| Pennsylvania | 160,116 | 114,482 | 154,301 | 132,512 | 102,373 | 100,422 | 99,708 | 103,036 | 101,592 | 110,047 | 109,089 | 120,487 | 1,408,165 |
| Puerto Rico | 4,377 | 4,339 | 5,475 | 6,732 | 7,164 | 6,969 | 6,340 | 5,953 | 6,031 | 7,089 | 7,020 | 6,892 | 74,381 |
| Rhode Island | 5,190 | 3,998 | 4,957 | 3,633 | 2,648 | 2,427 | 2,408 | 2,326 | 2,433 | 2,418 | 2,706 | 2,792 | 37,936 |
| South Carolina | 52,622 | 40,032 | 55,773 | 43,879 | 37,018 | 36,050 | 34,420 | 35,795 | 35,025 | 35,878 | 36,603 | 42,392 | 485,487 |
| South Dakota | 12,571 | 9,208 | 12,430 | 9,516 | 7,275 | 5,973 | 6,744 | 7,440 | 7,924 | 10,049 | 8,717 | 9,034 | 106,881 |
| Tennessee | 94,262 | 62,346 | 93,979 | 77,525 | 63,517 | 109,743 | 89,125 | 68,672 | 64,531 | 69,638 | 78,252 | 92,922 | 964,512 |
| Texas | 212,208 | 134,310 | 222,409 | 187,843 | 158,526 | 147,120 | 135,551 | 144,254 | 154,778 | 146,593 | 150,809 | 186,352 | 1,980,753 |
| Utah | 101,167 | 89,891 | 112,572 | 119,014 | 113,089 | 96,829 | 101,228 | 95,834 | 86,418 | 88,155 | 85,831 | 91,536 | 1,181,564 |
| Vermont | 6,012 | 3,874 | 5,909 | 5,031 | 3,551 | 3,301 | 3,662 | 3,650 | 3,993 | 4,300 | 3,683 | 4,583 | 51,549 |
| Virgin Islands | 154 | 159 | 206 | 171 | 118 | 315 | 210 | 129 | 153 | 169 | 181 | 180 | 2,145 |
| Virginia | 72,451 | 53,222 | 72,438 | 59,893 | 46,767 | 47,216 | 45,531 | 45,911 | 44,779 | 49,467 | 54,909 | 62,755 | 655,339 |
| Washington | 73,369 | 61,409 | 74,860 | 68,676 | 56,038 | 53,104 | 50,887 | 53,524 | 58,393 | 61,127 | 56,444 | 69,015 | 736,846 |
| West Virginia | 26,626 | 17,914 | 27,426 | 20,522 | 14,022 | 13,096 | 14,625 | 14,672 | 15,034 | 16,759 | 20,461 | 23,083 | 224,240 |
| Wisconsin | 73,836 | 52,251 | 76,885 | 72,407 | 60,229 | 59,860 | 59,969 | 64,208 | 65,312 | 68,017 | 66,983 | 65,899 | 785,856 |
| Wyoming | 9,266 | 6,382 | 9,348 | 7,861 | 6,381 | 5,963 | 5,706 | 5,871 | 6,136 | 6,027 | 7,241 | 8,442 | 84,624 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App311**

## NICS Firearm Background Checks:
## Month/Year by State

### Year 2020
January 1, 2020 - December 31, 2020

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 79,332 | 75,336 | 92,652 | 70,748 | 80,519 | 139,873 | 107,490 | 85,347 | 80,478 | 80,934 | 91,839 | 100,927 | 1,085,475 |
| Alaska | 4,706 | 5,466 | 9,939 | 8,560 | 8,883 | 9,060 | 10,108 | 9,363 | 7,897 | 7,564 | 8,510 | 8,896 | 98,952 |
| Arizona | 33,224 | 37,100 | 82,771 | 59,986 | 51,098 | 74,055 | 60,330 | 54,095 | 51,287 | 52,521 | 54,444 | 54,547 | 665,458 |
| Arkansas | 19,126 | 21,445 | 31,651 | 30,575 | 25,917 | 30,792 | 27,647 | 23,980 | 24,043 | 27,177 | 30,770 | 31,618 | 324,741 |
| California | 96,567 | 95,430 | 164,497 | 122,999 | 110,823 | 158,349 | 149,685 | 145,797 | 139,313 | 151,359 | 130,793 | 135,442 | 1,601,054 |
| Colorado | 42,133 | 40,549 | 77,305 | 52,249 | 49,967 | 66,038 | 59,666 | 57,388 | 54,479 | 59,132 | 61,362 | 60,239 | 680,507 |
| Connecticut | 15,695 | 16,851 | 23,103 | 12,986 | 10,935 | 18,215 | 19,494 | 17,534 | 20,091 | 21,481 | 21,498 | 21,344 | 219,227 |
| Delaware | 4,482 | 4,321 | 8,123 | 5,701 | 4,858 | 8,225 | 6,935 | 6,367 | 6,381 | 7,430 | 7,568 | 6,666 | 77,057 |
| District of Columbia | 666 | 551 | 692 | 552 | 538 | 897 | 898 | 1,541 | 1,469 | 1,507 | 1,066 | 1,108 | 11,485 |
| Florida | 110,019 | 116,238 | 192,234 | 128,670 | 115,815 | 210,415 | 190,975 | 167,138 | 154,982 | 175,783 | 176,987 | 172,948 | 1,912,204 |
| Georgia | 52,557 | 54,250 | 84,601 | 52,299 | 63,658 | 106,541 | 96,979 | 75,656 | 72,354 | 77,979 | 80,510 | 86,651 | 904,035 |
| Guam | 229 | 245 | 271 | 222 | 334 | 391 | 385 | 256 | 254 | 354 | 345 | 286 | 3,572 |
| Hawaii | 1,182 | 1,264 | 1,843 | 1,818 | 1,494 | 1,660 | 1,841 | 1,623 | 1,536 | 2,113 | 1,722 | 2,006 | 20,102 |
| Idaho | 16,541 | 18,476 | 30,989 | 21,747 | 21,863 | 28,744 | 23,392 | 19,797 | 22,515 | 24,014 | 25,663 | 27,543 | 281,284 |
| Illinois | 612,411 | 620,067 | 645,109 | 632,564 | 661,470 | 706,404 | 714,424 | 587,224 | 421,030 | 473,595 | 550,784 | 829,983 | 7,455,065 |
| Indiana | 80,283 | 85,107 | 129,016 | 88,276 | 92,156 | 141,947 | 176,861 | 206,454 | 203,253 | 227,056 | 242,048 | 263,130 | 1,935,587 |
| Iowa | 22,600 | 20,889 | 24,652 | 26,108 | 17,359 | 24,450 | 19,035 | 17,660 | 19,871 | 22,738 | 24,215 | 31,037 | 270,614 |
| Kansas | 15,578 | 17,535 | 29,816 | 18,994 | 20,044 | 22,817 | 20,532 | 18,687 | 17,660 | 19,430 | 24,622 | 23,874 | 249,589 |
| Kentucky | 367,301 | 398,247 | 235,305 | 205,536 | 394,969 | 395,188 | 292,534 | 39,157 | 36,139 | 181,425 | 377,139 | 407,522 | 3,330,462 |
| Louisiana | 23,686 | 24,696 | 42,015 | 31,559 | 32,565 | 44,903 | 42,103 | 32,594 | 33,496 | 35,224 | 43,007 | 44,689 | 430,537 |
| Maine | 7,400 | 7,966 | 14,627 | 11,589 | 10,674 | 12,090 | 10,688 | 10,576 | 12,747 | 14,836 | 12,310 | 11,646 | 137,149 |
| Mariana Islands | 26 | 15 | 5 | 9 | 13 | 17 | 21 | 16 | 30 | 28 | 13 | 29 | 222 |
| Maryland | 13,961 | 15,005 | 29,414 | 20,963 | 18,282 | 25,932 | 26,326 | 27,273 | 30,948 | 33,842 | 31,332 | 29,285 | 302,563 |
| Massachusetts | 18,235 | 18,525 | 23,579 | 7,934 | 16,371 | 24,165 | 23,816 | 24,176 | 26,145 | 27,772 | 27,378 | 24,487 | 262,583 |
| Michigan | 47,110 | 47,557 | 107,492 | 53,914 | 78,813 | 110,604 | 109,466 | 102,703 | 101,789 | 108,742 | 105,882 | 94,439 | 1,068,511 |
| Minnesota | 56,561 | 61,603 | 96,654 | 75,099 | 70,553 | 86,100 | 79,160 | 83,801 | 86,830 | 95,792 | 84,754 | 81,484 | 958,391 |
| Mississippi | 20,420 | 24,788 | 33,583 | 29,581 | 29,067 | 36,894 | 35,159 | 31,482 | 25,757 | 27,815 | 34,182 | 38,101 | 366,829 |
| Missouri | 43,596 | 48,705 | 76,262 | 58,011 | 57,221 | 67,609 | 60,576 | 53,388 | 52,222 | 58,729 | 65,193 | 66,672 | 708,184 |
| Montana | 9,499 | 10,448 | 16,885 | 14,690 | 14,809 | 16,018 | 13,741 | 13,882 | 14,808 | 15,414 | 15,410 | 17,091 | 172,695 |
| Nebraska | 7,021 | 6,616 | 11,154 | 7,517 | 5,502 | 9,080 | 8,913 | 8,606 | 9,145 | 9,068 | 10,926 | 10,963 | 104,511 |
| Nevada | 11,074 | 13,069 | 22,236 | 18,621 | 17,987 | 24,146 | 21,769 | 19,831 | 16,097 | 18,838 | 18,343 | 17,338 | 219,349 |
| New Hampshire | 10,856 | 10,549 | 22,466 | 14,935 | 12,817 | 16,731 | 13,743 | 12,934 | 13,429 | 15,340 | 15,776 | 14,450 | 174,662 |
| New Jersey | 8,313 | 8,548 | 10,922 | 9,072 | 9,681 | 13,578 | 14,414 | 16,954 | 20,811 | 21,495 | 22,951 | 21,162 | 177,901 |
| New Mexico | 13,095 | 15,076 | 24,571 | 13,216 | 17,442 | 20,850 | 17,525 | 16,672 | 15,923 | 16,739 | 15,706 | 19,437 | 206,252 |
| New York | 32,390 | 31,863 | 59,787 | 27,035 | 26,764 | 52,252 | 44,795 | 42,443 | 45,684 | 50,434 | 49,623 | 44,870 | 507,940 |
| North Carolina | 53,819 | 52,252 | 83,077 | 67,465 | 61,155 | 90,593 | 82,831 | 77,846 | 74,810 | 81,490 | 83,270 | 81,676 | 890,284 |
| North Dakota | 4,866 | 5,498 | 9,136 | 6,803 | 6,179 | 7,747 | 6,731 | 7,060 | 7,362 | 8,115 | 7,883 | 8,085 | 85,465 |
| Ohio | 55,784 | 63,156 | 114,086 | 68,812 | 69,739 | 97,568 | 86,125 | 80,387 | 76,519 | 85,170 | 94,205 | 85,200 | 976,751 |
| Oklahoma | 31,908 | 34,408 | 50,194 | 42,054 | 36,214 | 44,095 | 38,922 | 34,218 | 34,288 | 35,083 | 43,560 | 45,342 | 470,286 |
| Oregon | 31,752 | 33,430 | 59,115 | 44,816 | 41,224 | 47,918 | 41,314 | 40,503 | 40,282 | 44,350 | 44,818 | 46,574 | 516,096 |
| Pennsylvania | 88,224 | 93,240 | 125,013 | 76,134 | 87,752 | 151,738 | 142,966 | 131,205 | 134,626 | 145,680 | 149,401 | 126,942 | 1,452,921 |
| Puerto Rico | 1,911 | 1,819 | 862 | 97 | 1,524 | 3,533 | 2,908 | 3,152 | 3,227 | 4,595 | 3,604 | 4,439 | 31,671 |
| Rhode Island | 2,701 | 2,597 | 6,169 | 3,988 | 3,232 | 5,332 | 4,303 | 4,235 | 4,666 | 5,178 | 4,966 | 4,002 | 51,369 |
| South Carolina | 30,365 | 36,085 | 50,953 | 39,327 | 42,137 | 55,636 | 46,905 | 41,169 | 41,395 | 47,060 | 50,441 | 49,457 | 530,930 |
| South Dakota | 7,002 | 7,962 | 11,332 | 8,487 | 7,379 | 9,844 | 8,612 | 9,280 | 9,707 | 11,563 | 12,543 | 11,737 | 115,448 |
| Tennessee | 53,382 | 57,867 | 88,458 | 77,829 | 95,314 | 103,807 | 99,943 | 77,894 | 73,612 | 79,718 | 86,872 | 90,064 | 984,760 |
| Texas | 129,176 | 142,928 | 274,211 | 197,343 | 179,192 | 227,232 | 213,969 | 188,091 | 178,136 | 192,162 | 197,225 | 205,616 | 2,325,281 |
| Utah | 80,856 | 83,113 | 101,382 | 96,612 | 89,255 | 96,050 | 100,294 | 131,552 | 114,600 | 119,117 | 105,024 | 98,918 | 1,216,773 |
| Vermont | 3,052 | 3,642 | 7,023 | 5,618 | 4,973 | 4,920 | 4,466 | 4,345 | 4,645 | 5,214 | 4,957 | 5,110 | 57,965 |
| Virgin Islands | 149 | 71 | 122 | 49 | 34 | 150 | 260 | 62 | 92 | 222 | 217 | 211 | 1,639 |
| Virginia | 68,420 | 67,257 | 83,675 | 64,835 | 58,898 | 84,124 | 71,082 | 62,251 | 56,930 | 67,233 | 68,774 | 70,034 | 823,513 |
| Washington | 49,714 | 48,418 | 75,529 | 57,202 | 53,922 | 73,517 | 71,472 | 66,713 | 67,228 | 71,759 | 72,267 | 73,730 | 781,471 |
| West Virginia | 17,974 | 20,942 | 26,346 | 22,429 | 21,549 | 24,389 | 22,194 | 19,728 | 19,251 | 21,199 | 25,147 | 24,557 | 265,705 |
| Wisconsin | 38,349 | 41,799 | 77,811 | 55,375 | 49,535 | 68,738 | 59,871 | 65,771 | 68,257 | 72,837 | 71,736 | 61,539 | 731,618 |
| Wyoming | 4,984 | 5,500 | 8,847 | 8,566 | 6,272 | 7,901 | 7,598 | 7,370 | 7,427 | 7,464 | 9,719 | 9,736 | 91,384 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App312**

# NICS Firearm Background Checks: Month/Year by State

## Year 2019
### January 1, 2019 - December 31, 2019

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 44,989 | 46,203 | 51,923 | 41,146 | 43,908 | 42,898 | 51,757 | 69,377 | 56,872 | 63,254 | 77,657 | 100,100 | 690,084 |
| Alaska | 4,582 | 5,233 | 7,136 | 6,505 | 6,376 | 5,557 | 5,298 | 6,796 | 6,106 | 8,281 | 7,213 | 7,840 | 76,923 |
| Arizona | 29,039 | 32,776 | 37,340 | 30,222 | 28,950 | 26,746 | 26,325 | 33,851 | 29,307 | 28,833 | 31,352 | 38,171 | 372,912 |
| Arkansas | 17,258 | 20,289 | 22,246 | 15,812 | 15,317 | 13,956 | 13,684 | 18,303 | 16,285 | 19,303 | 23,192 | 25,699 | 221,344 |
| California | 98,502 | 96,970 | 123,056 | 114,466 | 111,816 | 115,987 | 89,532 | 99,146 | 95,540 | 96,252 | 92,765 | 106,600 | 1,240,632 |
| Colorado | 38,491 | 40,467 | 46,915 | 39,433 | 36,814 | 34,773 | 33,812 | 38,755 | 35,333 | 37,564 | 39,682 | 47,496 | 469,535 |
| Connecticut | 16,324 | 15,040 | 18,362 | 15,726 | 14,737 | 14,041 | 13,362 | 13,326 | 12,365 | 12,574 | 13,789 | 13,289 | 172,935 |
| Delaware | 4,119 | 3,682 | 4,985 | 3,807 | 3,694 | 3,204 | 2,873 | 3,547 | 3,356 | 3,982 | 4,258 | 4,920 | 46,427 |
| District of Columbia | 360 | 364 | 417 | 409 | 417 | 305 | 375 | 386 | 610 | 933 | 595 | 755 | 5,926 |
| Florida | 97,486 | 101,991 | 114,001 | 93,693 | 88,204 | 85,730 | 84,024 | 107,318 | 89,815 | 97,214 | 107,274 | 128,789 | 1,195,539 |
| Georgia | 44,839 | 48,900 | 56,804 | 40,952 | 37,444 | 34,910 | 34,787 | 45,508 | 39,794 | 43,417 | 48,604 | 63,154 | 539,113 |
| Guam | 181 | 178 | 195 | 150 | 163 | 181 | 200 | 248 | 209 | 217 | 181 | 294 | 2,397 |
| Hawaii | 1,068 | 1,032 | 1,129 | 1,212 | 1,105 | 857 | 1,045 | 1,025 | 969 | 1,102 | 923 | 1,199 | 12,666 |
| Idaho | 13,634 | 16,965 | 18,314 | 16,004 | 17,565 | 17,541 | 19,637 | 16,411 | 15,818 | 19,392 | 17,385 | 20,609 | 209,275 |
| Illinois | 331,325 | 190,886 | 376,018 | 405,464 | 381,771 | 373,166 | 439,458 | 491,715 | 483,162 | 478,329 | 450,084 | 548,192 | 4,949,570 |
| Indiana | 160,140 | 71,892 | 98,597 | 106,096 | 292,587 | 273,660 | 61,139 | 74,022 | 72,951 | 77,713 | 80,002 | 81,766 | 1,450,565 |
| Iowa | 16,067 | 15,181 | 20,108 | 15,144 | 12,850 | 10,933 | 11,507 | 11,760 | 12,081 | 16,605 | 20,819 | 19,747 | 182,802 |
| Kansas | 13,767 | 15,224 | 17,353 | 11,933 | 11,538 | 10,622 | 10,662 | 13,227 | 11,473 | 13,324 | 17,643 | 20,244 | 167,010 |
| Kentucky | 308,573 | 328,572 | 379,268 | 381,411 | 332,076 | 369,622 | 319,270 | 315,348 | 286,064 | 303,650 | 391,747 | 405,291 | 4,120,892 |
| Louisiana | 21,945 | 24,345 | 25,970 | 19,650 | 19,274 | 17,509 | 17,385 | 23,780 | 23,463 | 24,893 | 28,692 | 35,358 | 282,264 |
| Maine | 6,682 | 6,794 | 8,766 | 7,375 | 6,552 | 5,809 | 5,437 | 7,686 | 8,510 | 9,912 | 8,297 | 8,806 | 90,626 |
| Mariana Islands | 25 | 19 | 18 | 15 | 17 | 18 | 13 | 9 | 16 | 16 | 13 | 10 | 189 |
| Maryland | 11,976 | 12,190 | 15,083 | 12,537 | 10,904 | 9,839 | 9,891 | 11,823 | 11,386 | 13,720 | 14,459 | 15,005 | 148,813 |
| Massachusetts | 19,812 | 18,604 | 20,670 | 17,738 | 18,007 | 16,256 | 15,272 | 19,189 | 16,991 | 18,059 | 16,649 | 15,069 | 212,316 |
| Michigan | 35,884 | 39,073 | 51,698 | 40,570 | 35,352 | 32,369 | 31,607 | 39,967 | 40,925 | 44,078 | 51,439 | 49,209 | 492,171 |
| Minnesota | 53,145 | 50,984 | 75,386 | 72,720 | 56,564 | 45,667 | 42,454 | 53,571 | 54,733 | 62,920 | 55,511 | 58,701 | 682,356 |
| Mississippi | 17,416 | 21,681 | 23,090 | 15,894 | 15,190 | 13,809 | 13,918 | 21,951 | 16,974 | 19,167 | 26,494 | 32,804 | 238,388 |
| Missouri | 36,657 | 42,502 | 51,487 | 35,825 | 34,114 | 32,674 | 31,627 | 42,413 | 36,924 | 44,498 | 51,008 | 58,129 | 497,858 |
| Montana | 7,695 | 8,224 | 11,143 | 9,419 | 8,603 | 8,276 | 8,110 | 9,931 | 10,091 | 11,496 | 10,295 | 12,540 | 115,823 |
| Nebraska | 6,635 | 5,759 | 6,878 | 5,267 | 4,495 | 4,411 | 4,044 | 5,396 | 5,065 | 5,807 | 6,208 | 8,271 | 68,236 |
| Nevada | 10,920 | 11,643 | 13,856 | 10,524 | 9,769 | 9,248 | 8,635 | 10,782 | 9,285 | 10,464 | 10,424 | 12,762 | 128,312 |
| New Hampshire | 9,156 | 10,213 | 11,684 | 9,389 | 8,193 | 8,018 | 7,439 | 9,617 | 8,940 | 9,754 | 9,538 | 10,232 | 112,173 |
| New Jersey | 6,892 | 7,030 | 8,410 | 8,173 | 7,693 | 7,208 | 7,049 | 7,721 | 7,372 | 7,327 | 7,955 | 8,427 | 91,257 |
| New Mexico | 11,571 | 14,727 | 16,850 | 12,483 | 11,856 | 11,056 | 11,128 | 13,906 | 11,850 | 12,265 | 13,508 | 15,629 | 156,829 |
| New York | 29,388 | 28,043 | 35,004 | 31,154 | 26,731 | 23,636 | 22,471 | 26,227 | 32,332 | 33,982 | 33,832 | 32,574 | 355,374 |
| North Carolina | 46,230 | 49,154 | 53,896 | 42,651 | 38,637 | 34,768 | 36,694 | 44,438 | 38,305 | 42,903 | 48,107 | 54,582 | 530,365 |
| North Dakota | 4,459 | 4,420 | 5,990 | 5,135 | 4,312 | 3,914 | 3,794 | 5,228 | 5,455 | 5,886 | 5,738 | 6,058 | 60,389 |
| Ohio | 49,856 | 57,518 | 70,826 | 53,819 | 43,850 | 42,122 | 39,206 | 50,963 | 44,767 | 50,834 | 65,092 | 69,642 | 638,495 |
| Oklahoma | 28,793 | 32,166 | 35,704 | 26,528 | 24,627 | 23,701 | 22,754 | 29,350 | 25,203 | 28,794 | 40,823 | 41,600 | 360,043 |
| Oregon | 28,668 | 28,726 | 35,949 | 30,299 | 26,970 | 25,185 | 24,493 | 29,328 | 28,008 | 30,395 | 32,305 | 37,374 | 357,700 |
| Pennsylvania | 77,420 | 84,567 | 105,892 | 79,853 | 72,244 | 66,423 | 66,052 | 83,346 | 77,630 | 86,066 | 92,011 | 96,382 | 987,886 |
| Puerto Rico | 2,368 | 2,406 | 2,554 | 2,427 | 2,653 | 2,946 | 2,317 | 2,486 | 1,878 | 2,189 | 2,273 | 2,138 | 28,635 |
| Rhode Island | 2,093 | 2,105 | 2,640 | 2,175 | 1,813 | 1,609 | 1,561 | 1,895 | 1,842 | 2,050 | 2,149 | 2,406 | 24,338 |
| South Carolina | 23,546 | 29,811 | 33,312 | 24,607 | 24,977 | 23,186 | 21,886 | 27,354 | 23,280 | 26,707 | 31,593 | 37,962 | 328,221 |
| South Dakota | 6,803 | 6,992 | 8,174 | 6,581 | 5,792 | 5,566 | 5,323 | 6,971 | 6,932 | 8,783 | 8,510 | 8,999 | 85,426 |
| Tennessee | 58,167 | 62,785 | 66,433 | 48,624 | 44,913 | 44,802 | 43,647 | 46,533 | 40,468 | 45,015 | 58,890 | 75,036 | 635,313 |
| Texas | 119,902 | 135,931 | 141,056 | 106,112 | 107,763 | 101,762 | 91,183 | 133,647 | 121,718 | 121,299 | 140,598 | 166,241 | 1,487,212 |
| Utah | 25,082 | 27,648 | 82,398 | 77,263 | 77,058 | 69,438 | 76,002 | 74,699 | 73,084 | 76,361 | 76,354 | 87,883 | 823,270 |
| Vermont | 2,417 | 3,172 | 4,054 | 3,236 | 2,659 | 2,269 | 2,183 | 2,936 | 2,991 | 3,348 | 3,094 | 3,484 | 35,843 |
| Virgin Islands | 127 | 120 | 140 | 114 | 91 | 109 | 75 | 149 | 117 | 150 | 242 | 110 | 1,544 |
| Virginia | 37,857 | 41,532 | 48,527 | 35,052 | 30,515 | 33,543 | 32,513 | 41,457 | 37,059 | 40,490 | 57,662 | 76,559 | 512,766 |
| Washington | 56,051 | 47,674 | 61,812 | 53,377 | 53,125 | 83,436 | 37,439 | 40,144 | 38,130 | 42,984 | 40,764 | 52,234 | 607,170 |
| West Virginia | 15,320 | 18,810 | 21,859 | 15,583 | 13,173 | 12,841 | 12,289 | 16,501 | 17,740 | 18,239 | 20,851 | 22,990 | 206,196 |
| Wisconsin | 34,545 | 34,612 | 47,671 | 38,561 | 30,307 | 28,507 | 25,170 | 35,146 | 36,278 | 39,395 | 43,909 | 41,584 | 435,685 |
| Wyoming | 4,075 | 4,842 | 5,880 | 4,821 | 4,793 | 4,447 | 4,469 | 4,754 | 5,176 | 5,067 | 5,411 | 7,556 | 61,291 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

### Year 2018
January 1, 2018 - December 31, 2018

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 38,477 | 45,171 | 50,610 | 34,915 | 33,193 | 32,572 | 32,572 | 37,227 | 32,706 | 37,123 | 45,345 | 54,383 | 474,294 |
| Alaska | 4,429 | 5,392 | 7,800 | 7,367 | 7,548 | 6,330 | 5,714 | 6,818 | 5,699 | 7,768 | 6,645 | 7,251 | 78,761 |
| Arizona | 28,627 | 36,281 | 41,551 | 31,658 | 28,285 | 28,041 | 26,359 | 34,149 | 30,667 | 25,560 | 30,385 | 36,275 | 377,838 |
| Arkansas | 17,483 | 24,266 | 24,492 | 18,240 | 17,667 | 18,809 | 19,399 | 20,502 | 17,072 | 19,762 | 24,475 | 26,272 | 248,439 |
| California | 119,910 | 107,649 | 136,228 | 121,478 | 104,498 | 99,683 | 94,672 | 103,019 | 91,975 | 101,623 | 106,380 | 110,017 | 1,297,132 |
| Colorado | 41,989 | 47,221 | 61,839 | 47,462 | 41,583 | 38,395 | 37,788 | 40,922 | 35,347 | 37,586 | 44,094 | 50,544 | 524,770 |
| Connecticut | 13,775 | 15,617 | 18,091 | 15,269 | 14,409 | 14,440 | 13,650 | 14,338 | 12,754 | 14,477 | 14,751 | 16,119 | 177,690 |
| Delaware | 3,684 | 4,651 | 6,298 | 4,988 | 3,674 | 3,211 | 2,840 | 2,914 | 2,843 | 3,418 | 4,178 | 5,024 | 47,723 |
| District of Columbia | 283 | 217 | 381 | 321 | 289 | 259 | 246 | 329 | 203 | 203 | 290 | 223 | 3,244 |
| Florida | 98,243 | 119,561 | 137,997 | 102,426 | 95,481 | 88,991 | 82,909 | 89,711 | 78,804 | 82,628 | 105,975 | 120,419 | 1,203,145 |
| Georgia | 45,591 | 57,838 | 67,791 | 43,671 | 39,528 | 35,963 | 34,244 | 40,046 | 36,097 | 40,579 | 49,784 | 58,400 | 549,532 |
| Guam | 135 | 146 | 146 | 155 | 156 | 146 | 145 | 133 | 120 | 180 | 191 | 205 | 1,858 |
| Hawaii | 1,185 | 1,074 | 1,420 | 1,393 | 1,187 | 1,170 | 1,057 | 1,129 | 975 | 1,204 | 1,188 | 1,106 | 14,088 |
| Idaho | 15,060 | 20,359 | 24,342 | 16,974 | 18,243 | 15,401 | 14,478 | 14,312 | 15,566 | 16,855 | 15,793 | 19,937 | 207,320 |
| Illinois | 170,007 | 185,288 | 271,714 | 238,774 | 233,963 | 225,006 | 198,971 | 242,864 | 228,695 | 237,224 | 296,910 | 302,031 | 2,831,447 |
| Indiana | 83,769 | 81,904 | 121,376 | 78,367 | 78,143 | 74,423 | 60,457 | 60,712 | 51,787 | 59,386 | 69,171 | 76,653 | 896,148 |
| Iowa | 19,745 | 17,387 | 21,697 | 17,457 | 13,766 | 10,904 | 10,329 | 14,306 | 13,861 | 15,518 | 17,001 | 17,188 | 189,159 |
| Kansas | 13,782 | 18,016 | 18,772 | 13,184 | 11,062 | 11,501 | 11,364 | 12,690 | 11,429 | 13,063 | 17,477 | 19,707 | 172,047 |
| Kentucky | 402,376 | 417,418 | 421,247 | 409,485 | 395,487 | 411,606 | 393,583 | 411,800 | 409,385 | 413,568 | 422,343 | 404,143 | 4,912,441 |
| Louisiana | 20,744 | 26,449 | 31,519 | 22,491 | 20,265 | 22,339 | 20,229 | 24,273 | 25,058 | 24,412 | 32,383 | 37,030 | 307,192 |
| Maine | 5,850 | 7,816 | 10,684 | 8,745 | 6,847 | 6,156 | 5,968 | 6,951 | 7,926 | 9,299 | 7,769 | 9,349 | 93,360 |
| Mariana Islands | 10 | 20 | 25 | 22 | 13 | 17 | 15 | 13 | 8 | 14 | 12 | 10 | 179 |
| Maryland | 12,564 | 13,245 | 17,841 | 14,105 | 11,990 | 10,333 | 10,020 | 11,281 | 10,237 | 11,919 | 13,684 | 14,251 | 151,470 |
| Massachusetts | 16,120 | 16,463 | 22,326 | 17,983 | 18,574 | 15,930 | 14,275 | 17,975 | 16,320 | 17,969 | 19,392 | 17,968 | 211,295 |
| Michigan | 35,895 | 44,706 | 59,589 | 44,190 | 35,563 | 33,308 | 32,443 | 36,381 | 34,781 | 40,370 | 47,460 | 45,271 | 489,957 |
| Minnesota | 50,478 | 49,636 | 72,268 | 64,410 | 47,533 | 38,204 | 36,279 | 41,548 | 43,339 | 54,993 | 48,884 | 56,506 | 604,078 |
| Mississippi | 16,642 | 25,182 | 27,387 | 17,470 | 15,999 | 15,858 | 14,206 | 20,545 | 17,683 | 18,379 | 26,230 | 31,697 | 247,278 |
| Missouri | 35,204 | 49,381 | 58,076 | 38,859 | 31,607 | 32,616 | 30,157 | 37,674 | 35,005 | 41,162 | 50,096 | 56,347 | 496,184 |
| Montana | 7,448 | 9,983 | 13,402 | 9,795 | 8,952 | 8,746 | 7,794 | 9,309 | 9,770 | 10,772 | 10,113 | 11,523 | 117,607 |
| Nebraska | 6,645 | 7,585 | 9,048 | 6,643 | 5,165 | 4,418 | 4,220 | 4,456 | 4,763 | 6,358 | 7,306 | 7,870 | 74,477 |
| Nevada | 9,952 | 12,407 | 14,322 | 11,470 | 10,327 | 9,442 | 8,903 | 9,350 | 8,486 | 8,971 | 10,787 | 13,017 | 127,434 |
| New Hampshire | 8,758 | 11,486 | 14,184 | 11,372 | 9,875 | 8,511 | 8,029 | 9,005 | 9,009 | 9,364 | 10,049 | 11,247 | 120,889 |
| New Jersey | 8,010 | 8,459 | 10,195 | 8,958 | 8,037 | 7,413 | 6,857 | 7,216 | 6,138 | 6,718 | 7,339 | 7,784 | 93,124 |
| New Mexico | 11,783 | 15,891 | 18,357 | 12,859 | 11,432 | 11,259 | 10,485 | 12,038 | 11,160 | 11,295 | 14,338 | 15,956 | 156,853 |
| New York | 26,079 | 31,129 | 37,050 | 33,326 | 25,621 | 23,921 | 22,405 | 27,145 | 29,374 | 32,273 | 33,969 | 36,322 | 358,614 |
| North Carolina | 43,439 | 53,082 | 61,950 | 47,770 | 43,211 | 37,350 | 35,244 | 39,800 | 29,572 | 39,478 | 47,992 | 51,028 | 529,916 |
| North Dakota | 4,388 | 5,116 | 6,803 | 5,793 | 4,539 | 4,124 | 3,791 | 4,700 | 5,226 | 6,188 | 5,861 | 5,805 | 62,334 |
| Ohio | 52,079 | 73,240 | 91,247 | 65,456 | 51,734 | 47,756 | 45,689 | 50,289 | 45,698 | 51,806 | 69,894 | 72,587 | 717,475 |
| Oklahoma | 23,460 | 31,763 | 35,317 | 25,345 | 21,697 | 22,471 | 19,932 | 24,190 | 22,160 | 27,641 | 37,716 | 40,599 | 332,291 |
| Oregon | 27,037 | 32,397 | 41,616 | 32,494 | 28,305 | 26,685 | 23,171 | 25,648 | 26,644 | 27,591 | 31,878 | 36,216 | 359,682 |
| Pennsylvania | 78,428 | 98,075 | 123,031 | 91,401 | 75,296 | 71,106 | 66,391 | 74,944 | 70,420 | 80,946 | 93,168 | 98,737 | 1,021,943 |
| Puerto Rico | 2,022 | 2,076 | 2,072 | 2,224 | 2,616 | 2,522 | 2,268 | 2,816 | 2,490 | 2,760 | 3,014 | 2,395 | 29,275 |
| Rhode Island | 1,882 | 2,646 | 3,528 | 2,332 | 1,887 | 1,685 | 1,472 | 1,733 | 1,621 | 1,914 | 2,134 | 2,196 | 25,030 |
| South Carolina | 22,311 | 28,968 | 29,427 | 19,286 | 17,103 | 18,597 | 17,434 | 27,280 | 20,159 | 21,279 | 27,082 | 31,823 | 280,749 |
| South Dakota | 6,556 | 8,086 | 10,135 | 7,040 | 5,720 | 5,779 | 5,385 | 7,156 | 7,305 | 9,023 | 9,456 | 9,052 | 90,693 |
| Tennessee | 55,251 | 66,667 | 71,458 | 53,166 | 50,613 | 47,938 | 48,261 | 52,483 | 46,134 | 54,302 | 71,786 | 76,042 | 694,101 |
| Texas | 123,042 | 155,942 | 161,200 | 114,704 | 111,159 | 108,008 | 122,071 | 134,727 | 121,366 | 112,356 | 141,813 | 165,244 | 1,571,632 |
| Utah | 21,187 | 22,632 | 33,649 | 29,213 | 31,638 | 29,176 | 22,301 | 22,634 | 18,221 | 19,215 | 21,266 | 24,726 | 295,858 |
| Vermont | 2,268 | 3,870 | 6,177 | 5,081 | 2,818 | 2,725 | 2,313 | 2,781 | 3,590 | 3,234 | 2,964 | 3,729 | 41,550 |
| Virgin Islands | 137 | 41 | 195 | 133 | 136 | 116 | 138 | 59 | 99 | 143 | 117 | 122 | 1,436 |
| Virginia | 35,206 | 47,385 | 55,765 | 37,720 | 32,135 | 32,496 | 32,931 | 34,578 | 33,627 | 35,497 | 46,478 | 52,942 | 476,760 |
| Washington | 51,432 | 53,915 | 66,587 | 51,693 | 46,008 | 44,090 | 41,040 | 44,867 | 42,874 | 48,505 | 65,316 | 70,974 | 627,301 |
| West Virginia | 15,102 | 23,344 | 40,701 | 22,379 | 17,108 | 14,127 | 13,136 | 15,366 | 15,411 | 17,523 | 22,695 | 24,786 | 241,678 |
| Wisconsin | 36,791 | 43,777 | 56,482 | 41,542 | 28,841 | 26,403 | 26,598 | 32,732 | 33,194 | 37,142 | 45,446 | 43,572 | 452,520 |
| Wyoming | 3,971 | 5,057 | 6,476 | 5,065 | 4,820 | 4,362 | 4,118 | 4,445 | 4,988 | 4,740 | 5,442 | 6,666 | 60,150 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

# NICS Firearm Background Checks:
# Month/Year by State

## Year 2017
### January 1, 2017 - December 31, 2017

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 41,542 | 46,251 | 48,769 | 32,652 | 33,331 | 35,687 | 31,474 | 35,038 | 32,019 | 36,619 | 47,418 | 56,545 | 477,345 |
| Alaska | 4,500 | 5,917 | 6,971 | 6,983 | 6,442 | 6,353 | 6,487 | 6,946 | 6,303 | 8,080 | 7,527 | 8,330 | 80,839 |
| Arizona | 31,366 | 37,388 | 38,170 | 32,052 | 28,734 | 28,359 | 25,714 | 29,376 | 28,394 | 29,277 | 34,541 | 41,559 | 384,930 |
| Arkansas | 16,762 | 22,548 | 23,290 | 16,452 | 16,749 | 16,614 | 14,015 | 17,517 | 17,747 | 20,327 | 26,049 | 29,559 | 237,629 |
| California | 130,365 | 129,885 | 146,592 | 132,190 | 129,307 | 130,187 | 114,595 | 130,901 | 123,506 | 119,395 | 140,695 | 142,492 | 1,570,110 |
| Colorado | 37,047 | 43,577 | 45,645 | 39,989 | 36,008 | 36,459 | 33,811 | 37,150 | 35,873 | 40,163 | 51,473 | 59,800 | 496,995 |
| Connecticut | 15,073 | 15,209 | 18,787 | 16,406 | 16,149 | 16,504 | 14,525 | 14,019 | 12,117 | 13,201 | 14,334 | 15,455 | 181,779 |
| Delaware | 4,299 | 5,066 | 5,527 | 4,296 | 4,012 | 3,634 | 2,981 | 3,509 | 3,502 | 3,692 | 4,577 | 5,544 | 50,639 |
| District of Columbia | 81 | 93 | 111 | 104 | 82 | 74 | 68 | 80 | 61 | 217 | 365 | 204 | 1,540 |
| Florida | 104,576 | 117,892 | 122,716 | 103,641 | 96,556 | 100,508 | 92,822 | 96,664 | 77,390 | 103,032 | 123,397 | 137,355 | 1,276,549 |
| Georgia | 44,615 | 53,177 | 57,235 | 37,829 | 36,905 | 39,874 | 35,085 | 38,830 | 35,371 | 43,293 | 54,950 | 64,491 | 541,655 |
| Guam | 205 | 132 | 136 | 147 | 157 | 156 | 145 | 159 | 135 | 135 | 127 | 181 | 1,815 |
| Hawaii | 866 | 1,037 | 1,090 | 888 | 1,117 | 1,083 | 1,109 | 1,079 | 948 | 1,235 | 1,171 | 1,119 | 12,742 |
| Idaho | 11,146 | 14,936 | 16,675 | 15,234 | 13,065 | 20,241 | 11,871 | 13,341 | 14,938 | 15,130 | 15,772 | 19,750 | 182,099 |
| Illinois | 138,008 | 139,697 | 163,728 | 135,507 | 121,746 | 113,889 | 108,000 | 126,921 | 116,449 | 122,798 | 150,588 | 163,756 | 1,601,087 |
| Indiana | 80,412 | 136,193 | 79,624 | 63,298 | 54,347 | 49,689 | 47,145 | 47,649 | 48,524 | 55,336 | 75,879 | 92,261 | 830,357 |
| Iowa | 15,707 | 15,025 | 20,026 | 13,017 | 10,232 | 8,352 | 8,801 | 9,416 | 9,975 | 14,012 | 17,182 | 19,236 | 160,981 |
| Kansas | 15,049 | 19,211 | 17,891 | 15,139 | 12,337 | 13,485 | 13,775 | 13,097 | 12,856 | 15,018 | 20,460 | 23,133 | 191,451 |
| Kentucky | 345,924 | 313,748 | 397,959 | 392,685 | 391,740 | 392,002 | 390,494 | 394,718 | 398,706 | 401,155 | 404,508 | 417,841 | 4,641,480 |
| Louisiana | 27,709 | 27,684 | 29,310 | 22,065 | 21,311 | 23,497 | 20,454 | 24,694 | 27,821 | 27,436 | 35,485 | 41,735 | 329,201 |
| Maine | 6,865 | 7,731 | 9,632 | 8,115 | 7,200 | 6,474 | 5,837 | 7,751 | 8,715 | 10,328 | 8,578 | 9,364 | 96,590 |
| Mariana Islands | 2 | 0 | 11 | 13 | 12 | 12 | 13 | 27 | 16 | 9 | 21 | 23 | 159 |
| Maryland | 13,368 | 14,852 | 15,769 | 13,182 | 11,660 | 10,945 | 10,088 | 11,561 | 11,255 | 13,651 | 16,266 | 16,062 | 158,659 |
| Massachusetts | 19,996 | 18,130 | 21,059 | 17,866 | 16,651 | 15,841 | 12,900 | 16,258 | 15,460 | 16,842 | 17,548 | 17,941 | 206,492 |
| Michigan | 39,067 | 48,382 | 54,452 | 41,939 | 38,548 | 37,088 | 33,378 | 39,255 | 36,944 | 44,262 | 54,350 | 45,578 | 513,243 |
| Minnesota | 85,322 | 62,051 | 77,749 | 71,484 | 55,570 | 44,775 | 41,186 | 46,613 | 44,552 | 55,012 | 48,087 | 51,143 | 683,544 |
| Mississippi | 17,113 | 24,043 | 24,421 | 16,803 | 15,680 | 17,154 | 14,388 | 21,963 | 17,491 | 19,080 | 28,188 | 35,528 | 251,852 |
| Missouri | 39,098 | 50,850 | 52,928 | 40,019 | 34,965 | 36,752 | 32,415 | 37,449 | 37,571 | 43,987 | 56,129 | 62,810 | 524,973 |
| Montana | 7,994 | 10,386 | 12,396 | 10,293 | 9,418 | 9,901 | 7,890 | 9,618 | 10,283 | 11,673 | 11,107 | 12,979 | 123,938 |
| Nebraska | 6,205 | 7,122 | 7,337 | 5,745 | 5,025 | 4,265 | 4,266 | 5,209 | 5,345 | 6,543 | 8,303 | 8,953 | 74,318 |
| Nevada | 10,013 | 11,765 | 14,158 | 10,588 | 9,803 | 10,602 | 8,310 | 9,035 | 9,460 | 10,198 | 12,064 | 13,626 | 129,622 |
| New Hampshire | 12,067 | 12,282 | 13,529 | 10,792 | 8,868 | 9,184 | 8,333 | 9,313 | 10,689 | 10,371 | 11,627 | 12,035 | 129,090 |
| New Jersey | 9,274 | 9,601 | 10,993 | 9,119 | 8,694 | 7,790 | 7,034 | 7,443 | 7,165 | 7,852 | 9,433 | 9,341 | 103,739 |
| New Mexico | 10,966 | 15,364 | 14,963 | 12,748 | 11,291 | 11,398 | 10,580 | 11,690 | 12,491 | 13,543 | 16,110 | 18,635 | 159,779 |
| New York | 31,567 | 31,910 | 35,608 | 33,113 | 31,294 | 27,677 | 25,576 | 28,779 | 30,703 | 32,615 | 37,306 | 36,347 | 382,495 |
| North Carolina | 46,548 | 51,627 | 55,574 | 39,992 | 39,413 | 39,169 | 34,784 | 41,122 | 37,325 | 43,211 | 51,839 | 57,209 | 537,813 |
| North Dakota | 4,933 | 6,193 | 6,461 | 6,504 | 4,654 | 4,939 | 4,136 | 4,874 | 5,212 | 6,209 | 6,334 | 6,528 | 66,977 |
| Ohio | 58,574 | 74,257 | 81,153 | 66,800 | 56,229 | 53,164 | 49,432 | 51,103 | 49,942 | 56,960 | 76,732 | 78,726 | 753,072 |
| Oklahoma | 24,547 | 30,840 | 30,518 | 27,478 | 22,693 | 24,623 | 20,738 | 24,061 | 23,371 | 25,822 | 38,406 | 41,245 | 334,351 |
| Oregon | 22,210 | 29,183 | 32,423 | 27,936 | 26,466 | 27,103 | 23,239 | 24,904 | 27,277 | 27,786 | 34,103 | 38,537 | 341,167 |
| Pennsylvania | 85,948 | 95,585 | 110,334 | 85,908 | 79,725 | 76,201 | 73,654 | 79,020 | 77,003 | 87,064 | 104,479 | 107,730 | 1,062,651 |
| Puerto Rico | 1,332 | 1,259 | 1,560 | 1,387 | 1,600 | 1,631 | 1,381 | 1,490 | 791 | 1,306 | 2,307 | 2,767 | 18,811 |
| Rhode Island | 2,147 | 2,354 | 2,553 | 2,133 | 1,883 | 1,899 | 1,646 | 1,718 | 1,799 | 2,103 | 2,173 | 2,269 | 24,677 |
| South Carolina | 31,829 | 41,969 | 43,113 | 30,218 | 31,248 | 32,995 | 26,567 | 31,663 | 25,930 | 28,996 | 34,132 | 38,260 | 396,920 |
| South Dakota | 7,614 | 9,754 | 9,770 | 7,857 | 7,004 | 6,704 | 6,068 | 6,686 | 7,457 | 9,244 | 9,908 | 10,507 | 98,573 |
| Tennessee | 83,613 | 69,264 | 74,655 | 57,852 | 57,763 | 52,959 | 52,643 | 49,945 | 50,945 | 55,531 | 74,800 | 87,983 | 767,953 |
| Texas | 117,903 | 137,470 | 144,270 | 109,961 | 109,732 | 118,091 | 98,338 | 110,946 | 128,260 | 129,869 | 163,358 | 181,236 | 1,549,434 |
| Utah | 18,314 | 24,889 | 26,941 | 23,177 | 23,844 | 22,138 | 17,925 | 22,010 | 20,041 | 19,619 | 24,359 | 27,220 | 270,477 |
| Vermont | 2,691 | 3,594 | 4,051 | 3,818 | 2,577 | 2,382 | 2,275 | 2,676 | 3,084 | 3,463 | 3,240 | 3,759 | 37,610 |
| Virgin Islands | 88 | 106 | 96 | 111 | 79 | 153 | 151 | 132 | 9 | 68 | 86 | 131 | 1,210 |
| Virginia | 37,369 | 47,038 | 49,368 | 48,631 | 36,007 | 36,838 | 36,183 | 39,114 | 36,446 | 40,293 | 53,142 | 60,398 | 520,827 |
| Washington | 46,027 | 52,154 | 58,069 | 47,895 | 45,816 | 46,023 | 38,369 | 42,120 | 43,049 | 48,147 | 53,072 | 58,937 | 579,678 |
| West Virginia | 15,772 | 22,449 | 22,529 | 16,988 | 15,085 | 14,498 | 13,970 | 14,770 | 16,723 | 18,256 | 24,455 | 27,273 | 222,768 |
| Wisconsin | 46,775 | 50,720 | 58,739 | 45,872 | 37,888 | 36,267 | 32,846 | 40,924 | 37,506 | 43,183 | 48,683 | 47,120 | 526,523 |
| Wyoming | 3,705 | 4,554 | 5,315 | 4,269 | 4,128 | 3,975 | 3,398 | 4,111 | 4,281 | 4,370 | 5,665 | 6,940 | 54,711 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App315**

## NICS Firearm Background Checks: Month/Year by State

### Year 2016
January 1, 2016 - December 31, 2016

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 73,218 | 77,411 | 55,486 | 41,239 | 36,157 | 44,976 | 48,927 | 42,455 | 41,336 | 43,251 | 50,477 | 62,014 | 616,947 |
| Alaska | 6,085 | 6,779 | 6,982 | 6,867 | 5,991 | 7,406 | 6,793 | 7,194 | 6,867 | 9,383 | 8,514 | 8,786 | 87,647 |
| Arizona | 31,910 | 35,307 | 35,795 | 32,005 | 28,671 | 32,540 | 34,496 | 33,422 | 33,390 | 34,134 | 39,722 | 44,887 | 416,279 |
| Arkansas | 20,437 | 27,506 | 24,390 | 19,048 | 16,422 | 18,779 | 19,378 | 21,692 | 18,826 | 22,709 | 26,901 | 29,926 | 266,014 |
| California | 220,912 | 214,844 | 201,041 | 171,256 | 166,035 | 173,846 | 190,218 | 176,770 | 159,077 | 180,968 | 224,039 | 298,161 | 2,377,167 |
| Colorado | 48,214 | 47,302 | 46,430 | 41,636 | 36,512 | 41,134 | 43,094 | 40,996 | 40,013 | 45,337 | 54,418 | 55,428 | 540,514 |
| Connecticut | 31,712 | 32,110 | 35,332 | 32,657 | 29,247 | 33,475 | 29,755 | 27,353 | 14,955 | 16,048 | 17,223 | 17,825 | 317,692 |
| Delaware | 4,886 | 5,173 | 4,986 | 4,316 | 4,355 | 4,987 | 4,494 | 4,169 | 4,160 | 5,757 | 5,791 | 6,356 | 59,430 |
| District of Columbia | 82 | 95 | 85 | 69 | 110 | 72 | 60 | 62 | 52 | 61 | 56 | 71 | 875 |
| Florida | 125,935 | 132,010 | 119,207 | 104,114 | 94,732 | 125,567 | 125,208 | 114,446 | 102,843 | 111,657 | 134,638 | 144,983 | 1,435,340 |
| Georgia | 62,707 | 66,777 | 55,396 | 41,265 | 33,740 | 42,626 | 49,183 | 44,370 | 41,621 | 48,308 | 58,723 | 68,269 | 612,985 |
| Guam | 176 | 141 | 188 | 160 | 194 | 164 | 173 | 170 | 189 | 220 | 176 | 172 | 2,123 |
| Hawaii | 1,383 | 1,424 | 1,469 | 1,453 | 1,316 | 1,754 | 1,565 | 1,305 | 1,247 | 1,277 | 1,347 | 1,141 | 16,681 |
| Idaho | 13,197 | 15,520 | 13,824 | 10,638 | 8,658 | 12,947 | 12,154 | 11,635 | 12,611 | 14,160 | 13,965 | 17,034 | 156,343 |
| Illinois | 189,400 | 169,908 | 175,762 | 154,306 | 119,574 | 164,500 | 168,227 | 185,912 | 127,535 | 169,348 | 161,604 | 137,994 | 1,924,070 |
| Indiana | 230,892 | 221,556 | 151,821 | 126,579 | 119,897 | 94,326 | 88,340 | 79,202 | 63,820 | 72,085 | 92,535 | 95,672 | 1,436,725 |
| Iowa | 26,714 | 23,728 | 23,526 | 15,435 | 12,578 | 12,209 | 11,937 | 12,518 | 12,094 | 14,908 | 18,540 | 18,090 | 202,277 |
| Kansas | 19,443 | 19,817 | 16,593 | 13,227 | 10,559 | 12,364 | 14,140 | 13,770 | 14,051 | 17,656 | 22,646 | 22,282 | 196,548 |
| Kentucky | 302,383 | 266,913 | 321,318 | 306,214 | 321,666 | 360,293 | 363,085 | 29,746 | 298,753 | 378,973 | 330,444 | 397,059 | 3,676,847 |
| Louisiana | 32,192 | 32,939 | 26,552 | 23,719 | 20,462 | 26,278 | 41,063 | 30,716 | 33,656 | 32,820 | 39,979 | 51,493 | 391,869 |
| Maine | 8,844 | 9,868 | 9,429 | 8,567 | 6,572 | 7,858 | 7,702 | 8,204 | 10,550 | 12,954 | 10,506 | 10,528 | 111,582 |
| Mariana Islands | 3 | 1 | 1 | 0 | 1 | 1 | 1 | 3 | 1 | 1 | 4 | 0 | 17 |
| Maryland | 13,321 | 14,735 | 14,546 | 13,007 | 11,176 | 11,647 | 12,228 | 12,510 | 12,161 | 14,405 | 17,647 | 17,984 | 165,367 |
| Massachusetts | 20,208 | 17,835 | 20,450 | 17,505 | 15,449 | 17,743 | 20,480 | 18,138 | 17,481 | 19,500 | 21,581 | 19,842 | 226,212 |
| Michigan | 56,723 | 61,421 | 59,827 | 48,163 | 37,823 | 39,580 | 40,142 | 41,493 | 41,363 | 49,099 | 56,137 | 47,834 | 579,605 |
| Minnesota | 50,842 | 50,144 | 56,311 | 57,100 | 42,135 | 47,916 | 43,368 | 51,700 | 58,507 | 70,854 | 62,666 | 60,056 | 651,599 |
| Mississippi | 21,330 | 28,656 | 21,727 | 17,182 | 15,159 | 17,507 | 21,907 | 26,351 | 19,705 | 21,433 | 29,113 | 36,091 | 276,161 |
| Missouri | 61,257 | 67,682 | 64,449 | 49,098 | 40,752 | 45,384 | 46,637 | 44,182 | 41,437 | 50,651 | 57,501 | 63,289 | 632,319 |
| Montana | 10,722 | 12,644 | 11,967 | 10,728 | 9,551 | 10,610 | 9,869 | 10,672 | 11,479 | 13,411 | 12,074 | 12,610 | 136,337 |
| Nebraska | 11,116 | 8,576 | 8,315 | 6,280 | 4,956 | 5,777 | 5,429 | 6,405 | 6,099 | 7,834 | 9,086 | 8,790 | 88,663 |
| Nevada | 12,291 | 14,342 | 13,550 | 11,803 | 10,105 | 11,771 | 11,785 | 10,520 | 10,434 | 12,026 | 14,476 | 14,889 | 147,992 |
| New Hampshire | 16,887 | 14,577 | 14,498 | 12,630 | 10,869 | 12,661 | 13,068 | 12,039 | 13,329 | 15,045 | 15,256 | 14,305 | 165,164 |
| New Jersey | 8,683 | 9,811 | 11,138 | 10,465 | 9,770 | 10,806 | 10,074 | 9,728 | 9,309 | 10,175 | 11,317 | 10,577 | 121,853 |
| New Mexico | 12,577 | 16,662 | 13,999 | 12,421 | 10,847 | 12,560 | 12,219 | 12,341 | 11,867 | 13,089 | 15,116 | 17,518 | 161,216 |
| New York | 34,071 | 34,195 | 34,781 | 31,789 | 26,336 | 28,472 | 29,513 | 30,808 | 33,599 | 37,907 | 43,009 | 40,292 | 404,772 |
| North Carolina | 51,646 | 58,096 | 53,581 | 43,592 | 38,727 | 44,535 | 44,123 | 46,518 | 46,452 | 49,372 | 59,658 | 65,145 | 601,445 |
| North Dakota | 5,877 | 5,799 | 6,281 | 6,039 | 4,620 | 6,568 | 5,470 | 5,461 | 5,883 | 7,283 | 6,494 | 6,261 | 72,036 |
| Ohio | 76,218 | 90,222 | 85,267 | 71,881 | 58,406 | 60,366 | 63,148 | 62,418 | 58,828 | 71,864 | 88,928 | 88,178 | 875,724 |
| Oklahoma | 34,889 | 37,589 | 29,112 | 26,489 | 21,379 | 26,167 | 25,946 | 25,927 | 25,309 | 28,578 | 40,123 | 43,082 | 364,590 |
| Oregon | 26,378 | 28,869 | 27,093 | 23,132 | 21,266 | 25,502 | 24,813 | 22,911 | 26,487 | 28,948 | 33,555 | 35,754 | 324,708 |
| Pennsylvania | 102,170 | 104,116 | 105,145 | 88,140 | 70,244 | 80,806 | 86,137 | 86,652 | 86,424 | 103,095 | 118,378 | 111,913 | 1,143,220 |
| Puerto Rico | 1,133 | 1,088 | 1,188 | 1,185 | 1,202 | 1,298 | 1,331 | 1,370 | 1,383 | 1,429 | 1,590 | 1,664 | 15,861 |
| Rhode Island | 2,617 | 2,392 | 2,516 | 2,125 | 1,648 | 2,302 | 2,368 | 2,090 | 2,052 | 2,448 | 2,658 | 2,542 | 27,758 |
| South Carolina | 31,396 | 39,376 | 38,503 | 30,929 | 24,923 | 30,209 | 32,730 | 31,389 | 28,988 | 31,780 | 39,711 | 43,044 | 402,978 |
| South Dakota | 10,220 | 10,732 | 9,118 | 8,275 | 6,403 | 7,519 | 7,406 | 7,873 | 9,284 | 12,670 | 11,622 | 10,739 | 111,921 |
| Tennessee | 62,789 | 68,503 | 51,955 | 57,837 | 44,044 | 56,218 | 57,653 | 60,971 | 48,546 | 56,652 | 74,722 | 74,884 | 714,774 |
| Texas | 164,088 | 192,417 | 152,465 | 126,292 | 104,134 | 120,263 | 127,207 | 124,608 | 126,694 | 144,467 | 157,519 | 181,572 | 1,721,726 |
| Utah | 19,968 | 22,999 | 30,548 | 30,706 | 24,045 | 28,189 | 17,608 | 21,178 | 19,914 | 23,339 | 26,928 | 29,485 | 294,907 |
| Vermont | 3,451 | 4,173 | 3,861 | 3,220 | 2,247 | 2,688 | 2,674 | 2,724 | 3,130 | 3,769 | 3,503 | 3,977 | 39,417 |
| Virgin Islands | 100 | 115 | 90 | 85 | 112 | 106 | 105 | 90 | 75 | 66 | 76 | 67 | 1,087 |
| Virginia | 44,181 | 47,955 | 42,741 | 36,219 | 30,787 | 37,593 | 43,574 | 38,667 | 38,779 | 46,862 | 58,362 | 62,649 | 528,369 |
| Washington | 58,050 | 56,043 | 126,000 | 65,565 | 41,282 | 50,487 | 47,887 | 46,645 | 48,147 | 57,746 | 56,963 | 59,181 | 713,996 |
| West Virginia | 18,985 | 27,216 | 22,143 | 17,825 | 14,918 | 16,423 | 16,791 | 17,315 | 18,079 | 20,035 | 25,378 | 27,242 | 242,350 |
| Wisconsin | 39,561 | 42,855 | 44,925 | 38,403 | 27,431 | 30,747 | 38,922 | 53,689 | 59,639 | 63,442 | 65,277 | 56,928 | 561,819 |
| Wyoming | 5,676 | 5,703 | 5,302 | 5,029 | 4,504 | 4,812 | 4,585 | 5,295 | 5,086 | 5,228 | 5,814 | 6,560 | 63,594 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

### Year 2015
January 1, 2015 - December 31, 2015

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 51,119 | 62,220 | 57,152 | 46,971 | 45,128 | 45,952 | 56,762 | 62,770 | 56,228 | 61,156 | 71,137 | 120,914 | 737,509 |
| Alaska | 5,348 | 6,731 | 7,223 | 7,030 | 6,168 | 5,830 | 6,029 | 6,976 | 6,195 | 9,941 | 7,095 | 11,055 | 85,621 |
| Arizona | 24,620 | 30,563 | 28,402 | 24,762 | 24,503 | 22,999 | 23,779 | 25,003 | 25,464 | 26,501 | 27,087 | 47,759 | 331,442 |
| Arkansas | 18,184 | 24,042 | 20,397 | 17,135 | 16,258 | 15,372 | 17,694 | 21,087 | 21,834 | 23,409 | 25,048 | 36,886 | 257,346 |
| California | 113,292 | 113,789 | 199,833 | 114,686 | 119,574 | 112,704 | 140,365 | 125,122 | 125,441 | 163,211 | 180,116 | 252,946 | 1,761,079 |
| Colorado | 33,007 | 37,520 | 37,740 | 34,688 | 33,062 | 31,777 | 31,280 | 36,156 | 34,229 | 37,785 | 42,271 | 64,547 | 454,062 |
| Connecticut | 24,791 | 24,291 | 30,302 | 26,677 | 24,571 | 24,605 | 22,195 | 21,514 | 21,775 | 23,918 | 26,438 | 36,673 | 307,750 |
| Delaware | 4,133 | 4,137 | 4,610 | 3,665 | 3,683 | 3,332 | 3,275 | 3,459 | 3,360 | 4,052 | 5,040 | 7,670 | 50,416 |
| District of Columbia | 61 | 53 | 68 | 51 | 53 | 49 | 64 | 67 | 41 | 76 | 64 | 95 | 742 |
| Florida | 87,895 | 103,809 | 93,683 | 81,456 | 77,601 | 79,101 | 83,877 | 87,429 | 85,246 | 94,518 | 103,532 | 168,935 | 1,147,082 |
| Georgia | 43,248 | 57,432 | 48,200 | 35,901 | 32,956 | 34,674 | 39,608 | 40,519 | 41,685 | 45,420 | 50,795 | 96,508 | 566,946 |
| Guam | 164 | 147 | 161 | 146 | 148 | 184 | 186 | 147 | 181 | 213 | 171 | 218 | 2,066 |
| Hawaii | 1,188 | 1,193 | 1,344 | 1,329 | 1,145 | 1,213 | 1,157 | 1,175 | 1,270 | 1,380 | 1,252 | 1,644 | 15,290 |
| Idaho | 9,858 | 12,820 | 12,234 | 10,686 | 9,975 | 9,373 | 8,675 | 9,792 | 11,078 | 11,986 | 11,925 | 18,544 | 136,946 |
| Illinois | 96,712 | 86,317 | 96,770 | 118,541 | 76,538 | 80,431 | 95,297 | 94,314 | 94,476 | 95,886 | 129,861 | 182,255 | 1,247,398 |
| Indiana | 67,533 | 84,043 | 83,305 | 67,791 | 64,608 | 62,755 | 52,154 | 66,212 | 83,928 | 100,220 | 130,333 | 214,035 | 1,076,917 |
| Iowa | 12,562 | 16,457 | 14,948 | 11,113 | 7,597 | 7,359 | 8,356 | 8,592 | 9,865 | 10,725 | 13,794 | 25,941 | 147,309 |
| Kansas | 15,166 | 18,262 | 16,337 | 14,044 | 12,249 | 10,463 | 12,248 | 13,366 | 12,731 | 14,469 | 18,433 | 28,091 | 185,859 |
| Kentucky | 320,778 | 198,493 | 281,518 | 253,890 | 271,614 | 242,027 | 220,018 | 286,463 | 262,693 | 276,162 | 295,891 | 308,824 | 3,218,371 |
| Louisiana | 24,516 | 33,759 | 26,788 | 21,000 | 20,941 | 21,042 | 23,822 | 30,880 | 39,053 | 33,300 | 37,752 | 59,760 | 372,613 |
| Maine | 5,423 | 6,166 | 7,438 | 6,608 | 5,860 | 6,151 | 6,549 | 7,283 | 8,648 | 11,245 | 9,297 | 14,076 | 94,744 |
| Mariana Islands | 1 | 5 | 2 | 2 | 1 | 2 | 1 | 1 | 1 | 1 | 0 | 1 | 18 |
| Maryland | 9,311 | 9,092 | 10,656 | 10,464 | 8,105 | 8,826 | 8,595 | 8,606 | 8,912 | 11,832 | 13,463 | 17,832 | 125,694 |
| Massachusetts | 13,112 | 11,039 | 16,296 | 14,211 | 11,907 | 11,383 | 11,898 | 12,792 | 12,092 | 13,947 | 15,885 | 22,723 | 167,285 |
| Michigan | 33,596 | 38,502 | 43,233 | 36,840 | 32,961 | 30,723 | 32,153 | 33,600 | 48,331 | 43,822 | 50,278 | 76,882 | 500,921 |
| Minnesota | 37,824 | 40,699 | 51,987 | 44,682 | 37,779 | 33,553 | 31,732 | 39,036 | 43,688 | 50,060 | 44,023 | 64,181 | 519,244 |
| Mississippi | 17,119 | 23,970 | 18,635 | 14,292 | 13,803 | 13,111 | 16,575 | 18,376 | 23,398 | 20,862 | 27,504 | 44,727 | 252,372 |
| Missouri | 47,271 | 55,680 | 52,566 | 42,187 | 37,565 | 37,010 | 37,539 | 40,259 | 40,511 | 49,890 | 55,031 | 89,366 | 584,875 |
| Montana | 8,234 | 11,027 | 10,863 | 9,473 | 9,364 | 8,529 | 8,713 | 10,130 | 11,302 | 12,988 | 10,415 | 16,667 | 127,705 |
| Nebraska | 6,241 | 6,715 | 6,796 | 5,325 | 4,500 | 4,369 | 4,596 | 5,418 | 5,433 | 6,880 | 8,299 | 14,768 | 79,340 |
| Nevada | 9,482 | 11,626 | 11,192 | 9,830 | 9,959 | 9,186 | 8,829 | 8,818 | 9,821 | 9,456 | 10,632 | 18,649 | 127,480 |
| New Hampshire | 9,834 | 9,085 | 11,780 | 10,849 | 10,564 | 9,881 | 9,404 | 10,185 | 10,094 | 11,664 | 12,850 | 20,626 | 136,816 |
| New Jersey | 7,144 | 7,229 | 8,529 | 7,594 | 6,704 | 7,007 | 6,588 | 6,537 | 6,056 | 7,315 | 8,313 | 11,018 | 90,034 |
| New Mexico | 10,614 | 13,832 | 13,587 | 11,299 | 11,021 | 9,969 | 10,404 | 11,179 | 11,570 | 12,381 | 12,721 | 19,335 | 147,912 |
| New York | 26,506 | 25,920 | 29,889 | 26,818 | 21,977 | 22,717 | 21,821 | 23,978 | 28,204 | 33,282 | 36,421 | 48,515 | 346,048 |
| North Carolina | 43,199 | 48,473 | 45,196 | 37,520 | 32,357 | 33,889 | 37,651 | 39,565 | 42,348 | 46,020 | 49,217 | 76,441 | 531,876 |
| North Dakota | 5,512 | 5,512 | 6,517 | 5,225 | 4,683 | 4,481 | 4,593 | 5,148 | 5,619 | 7,547 | 6,288 | 8,304 | 69,429 |
| Ohio | 47,676 | 59,899 | 62,389 | 59,965 | 49,428 | 49,297 | 49,952 | 51,999 | 53,928 | 62,456 | 81,616 | 119,897 | 748,502 |
| Oklahoma | 28,606 | 34,307 | 29,926 | 26,152 | 23,210 | 21,793 | 23,594 | 26,376 | 25,154 | 28,582 | 35,457 | 56,119 | 359,276 |
| Oregon | 19,429 | 24,213 | 23,895 | 20,563 | 19,292 | 17,765 | 18,003 | 19,393 | 21,650 | 25,405 | 25,453 | 41,065 | 276,126 |
| Pennsylvania | 73,321 | 81,379 | 92,329 | 74,820 | 62,676 | 64,122 | 65,250 | 69,162 | 70,156 | 82,552 | 103,836 | 153,826 | 993,429 |
| Puerto Rico | 1,225 | 1,282 | 1,377 | 1,168 | 1,477 | 1,499 | 1,342 | 1,357 | 1,300 | 1,288 | 1,242 | 1,335 | 15,892 |
| Rhode Island | 1,722 | 1,777 | 1,953 | 1,710 | 1,543 | 1,512 | 1,461 | 1,477 | 1,566 | 1,944 | 2,101 | 3,363 | 22,129 |
| South Carolina | 23,923 | 31,543 | 26,546 | 22,801 | 20,254 | 20,763 | 25,017 | 25,047 | 24,395 | 26,030 | 32,064 | 48,614 | 326,997 |
| South Dakota | 6,709 | 9,065 | 8,923 | 6,951 | 6,436 | 5,645 | 5,914 | 7,369 | 7,949 | 10,920 | 9,727 | 14,660 | 100,268 |
| Tennessee | 57,536 | 53,761 | 40,064 | 44,972 | 40,597 | 42,558 | 57,873 | 49,128 | 52,313 | 51,134 | 63,670 | 100,586 | 654,192 |
| Texas | 115,315 | 140,229 | 129,368 | 106,032 | 111,012 | 106,461 | 106,013 | 122,233 | 122,503 | 126,327 | 146,982 | 241,791 | 1,574,266 |
| Utah | 19,394 | 20,627 | 23,422 | 20,361 | 18,544 | 20,684 | 17,259 | 19,717 | 22,343 | 19,046 | 21,772 | 31,645 | 254,814 |
| Vermont | 2,373 | 3,220 | 3,115 | 3,081 | 2,172 | 2,135 | 2,219 | 2,466 | 2,681 | 3,259 | 3,136 | 4,731 | 34,588 |
| Virgin Islands | 79 | 113 | 96 | 115 | 118 | 104 | 159 | 100 | 134 | 100 | 109 | 115 | 1,342 |
| Virginia | 36,685 | 40,786 | 39,427 | 31,657 | 28,447 | 27,904 | 32,419 | 32,147 | 34,030 | 38,959 | 48,010 | 72,526 | 462,997 |
| Washington | 38,018 | 43,129 | 43,542 | 38,008 | 33,943 | 32,783 | 34,177 | 36,031 | 40,441 | 45,061 | 43,989 | 73,158 | 502,280 |
| West Virginia | 17,624 | 24,248 | 25,804 | 18,739 | 15,288 | 14,695 | 15,607 | 16,720 | 17,801 | 21,388 | 25,063 | 36,037 | 249,014 |
| Wisconsin | 24,587 | 32,541 | 37,433 | 31,164 | 24,362 | 22,715 | 24,350 | 28,396 | 30,630 | 36,111 | 38,541 | 52,450 | 383,280 |
| Wyoming | 4,413 | 5,539 | 5,459 | 4,697 | 4,612 | 4,388 | 4,371 | 4,839 | 4,968 | 5,166 | 5,017 | 8,870 | 62,339 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

# NICS Firearm Background Checks: Month/Year by State

## Year 2014
### January 1, 2014 - December 31, 2014

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 52,138 | 63,947 | 57,656 | 46,332 | 43,111 | 41,709 | 43,600 | 45,465 | 45,081 | 50,068 | 56,324 | 75,874 | 621,305 |
| Alaska | 4,951 | 6,353 | 7,271 | 8,305 | 7,166 | 6,005 | 6,035 | 7,816 | 6,625 | 9,803 | 7,851 | 9,442 | 87,623 |
| Arizona | 24,458 | 29,657 | 28,307 | 25,939 | 24,566 | 22,049 | 21,193 | 26,519 | 23,538 | 25,181 | 26,203 | 33,062 | 310,672 |
| Arkansas | 17,158 | 24,599 | 20,173 | 16,546 | 17,070 | 14,177 | 13,484 | 15,895 | 17,053 | 23,097 | 25,577 | 29,453 | 234,282 |
| California | 100,054 | 111,341 | 137,660 | 134,448 | 120,661 | 102,639 | 104,309 | 119,570 | 118,856 | 128,439 | 132,469 | 164,170 | 1,474,616 |
| Colorado | 33,328 | 36,936 | 38,547 | 34,615 | 31,697 | 26,802 | 29,247 | 32,230 | 30,504 | 35,546 | 36,523 | 47,309 | 413,284 |
| Connecticut | 28,542 | 29,640 | 36,553 | 20,715 | 14,437 | 13,270 | 12,620 | 16,479 | 22,160 | 24,547 | 23,451 | 27,883 | 270,297 |
| Delaware | 2,486 | 3,207 | 3,534 | 2,822 | 3,896 | 2,928 | 2,960 | 3,415 | 3,289 | 3,802 | 4,764 | 5,847 | 42,950 |
| District of Columbia | 52 | 28 | 48 | 36 | 31 | 23 | 49 | 47 | 48 | 52 | 45 | 53 | 512 |
| Florida | 82,342 | 100,876 | 104,835 | 94,323 | 78,127 | 70,597 | 70,230 | 75,868 | 77,573 | 83,962 | 87,931 | 107,882 | 1,034,546 |
| Georgia | 36,627 | 50,459 | 45,841 | 36,533 | 33,247 | 30,386 | 32,987 | 35,344 | 35,423 | 43,186 | 44,325 | 60,222 | 484,580 |
| Guam | 173 | 158 | 205 | 209 | 166 | 145 | 126 | 162 | 181 | 172 | 160 | 203 | 2,060 |
| Hawaii | 1,337 | 1,222 | 1,333 | 1,597 | 1,155 | 1,210 | 1,291 | 1,130 | 1,153 | 1,330 | 1,078 | 1,389 | 15,225 |
| Idaho | 8,532 | 11,822 | 14,322 | 10,422 | 9,289 | 9,745 | 8,251 | 10,295 | 11,211 | 11,973 | 10,932 | 14,948 | 131,742 |
| Illinois | 121,288 | 115,903 | 145,597 | 105,924 | 92,638 | 112,407 | 86,596 | 91,721 | 117,143 | 103,053 | 104,606 | 147,220 | 1,344,096 |
| Indiana | 38,520 | 51,976 | 52,880 | 42,399 | 36,151 | 30,807 | 31,816 | 37,077 | 34,547 | 80,707 | 136,175 | 74,495 | 647,550 |
| Iowa | 13,003 | 13,167 | 13,686 | 10,404 | 8,165 | 8,569 | 7,575 | 7,923 | 8,494 | 10,795 | 10,906 | 14,335 | 127,022 |
| Kansas | 14,248 | 17,798 | 16,410 | 13,161 | 10,895 | 10,053 | 10,381 | 11,796 | 12,558 | 14,601 | 18,147 | 22,119 | 172,167 |
| Kentucky | 258,471 | 259,837 | 280,948 | 274,155 | 230,610 | 214,382 | 248,979 | 232,853 | 80,383 | 31,756 | 84,113 | 295,697 | 2,492,184 |
| Louisiana | 22,584 | 28,120 | 25,477 | 19,656 | 19,085 | 18,906 | 17,996 | 24,409 | 31,703 | 29,220 | 33,557 | 44,644 | 315,357 |
| Maine | 5,673 | 7,101 | 7,591 | 6,890 | 5,674 | 4,783 | 4,923 | 6,313 | 7,667 | 10,133 | 7,347 | 8,990 | 83,085 |
| Mariana Islands | 0 | 1 | 0 | 2 | 0 | 1 | 2 | 0 | 2 | 2 | 2 | 0 | 12 |
| Maryland | 21,715 | 18,999 | 17,071 | 10,548 | 7,913 | 7,320 | 6,878 | 8,265 | 8,480 | 10,073 | 12,483 | 12,462 | 142,207 |
| Massachusetts | 17,908 | 16,662 | 20,176 | 16,097 | 14,087 | 13,474 | 12,638 | 13,949 | 12,394 | 14,369 | 13,258 | 14,332 | 179,344 |
| Michigan | 29,623 | 35,449 | 42,636 | 36,618 | 31,109 | 28,148 | 29,119 | 32,189 | 37,179 | 40,169 | 39,561 | 42,291 | 424,091 |
| Minnesota | 34,528 | 40,503 | 50,582 | 46,067 | 34,462 | 35,400 | 33,483 | 37,674 | 41,988 | 45,025 | 38,258 | 43,152 | 481,122 |
| Mississippi | 14,902 | 21,805 | 17,334 | 13,044 | 12,506 | 11,455 | 11,995 | 15,732 | 20,332 | 19,086 | 24,074 | 32,564 | 214,829 |
| Missouri | 36,903 | 48,674 | 46,051 | 38,283 | 31,691 | 30,079 | 30,494 | 40,886 | 39,077 | 50,021 | 60,330 | 64,574 | 517,063 |
| Montana | 8,273 | 10,352 | 11,045 | 10,056 | 8,930 | 8,454 | 7,798 | 9,986 | 10,880 | 12,833 | 10,052 | 13,177 | 121,836 |
| Nebraska | 6,115 | 6,384 | 6,437 | 5,240 | 4,074 | 3,550 | 3,704 | 4,763 | 5,577 | 6,735 | 7,072 | 8,917 | 68,568 |
| Nevada | 9,387 | 11,879 | 11,769 | 9,819 | 8,950 | 9,000 | 8,108 | 8,780 | 8,630 | 8,873 | 8,950 | 12,590 | 116,735 |
| New Hampshire | 9,884 | 10,204 | 12,519 | 11,592 | 10,119 | 8,534 | 8,374 | 9,688 | 9,668 | 11,633 | 10,215 | 12,247 | 124,677 |
| New Jersey | 7,954 | 7,762 | 9,726 | 8,472 | 7,908 | 6,649 | 6,792 | 6,828 | 6,470 | 7,435 | 7,612 | 8,712 | 92,320 |
| New Mexico | 10,183 | 13,859 | 13,550 | 10,620 | 10,235 | 9,546 | 9,168 | 10,816 | 10,973 | 12,641 | 12,308 | 15,881 | 139,780 |
| New York | 25,551 | 27,317 | 33,819 | 43,433 | 25,889 | 23,810 | 27,126 | 27,139 | 28,575 | 34,659 | 33,260 | 34,849 | 365,427 |
| North Carolina | 41,804 | 224,667 | 541,978 | 59,495 | 34,589 | 32,577 | 31,117 | 35,184 | 35,405 | 43,204 | 45,758 | 56,571 | 1,182,349 |
| North Dakota | 5,594 | 6,472 | 6,329 | 6,330 | 5,216 | 4,224 | 4,382 | 5,239 | 5,914 | 7,836 | 6,217 | 6,795 | 70,548 |
| Ohio | 40,864 | 59,527 | 59,244 | 48,767 | 40,586 | 35,267 | 37,889 | 42,044 | 42,944 | 53,277 | 64,249 | 71,731 | 596,389 |
| Oklahoma | 26,608 | 33,901 | 30,087 | 26,310 | 22,251 | 21,797 | 21,917 | 25,875 | 25,886 | 30,881 | 37,671 | 45,311 | 348,495 |
| Oregon | 19,504 | 23,197 | 24,346 | 19,475 | 17,875 | 16,461 | 14,896 | 16,665 | 19,544 | 20,667 | 22,003 | 28,411 | 243,044 |
| Pennsylvania | 69,963 | 76,916 | 93,402 | 74,553 | 63,261 | 56,296 | 59,582 | 67,743 | 71,450 | 83,119 | 87,572 | 95,384 | 899,241 |
| Puerto Rico | 1,400 | 1,386 | 1,431 | 1,221 | 1,378 | 1,188 | 1,219 | 1,391 | 1,316 | 1,402 | 1,369 | 1,417 | 16,118 |
| Rhode Island | 1,646 | 1,897 | 2,208 | 1,667 | 1,471 | 1,251 | 1,374 | 1,617 | 1,570 | 1,889 | 1,822 | 1,988 | 20,400 |
| South Carolina | 22,356 | 28,440 | 28,436 | 21,621 | 21,331 | 19,781 | 19,093 | 22,184 | 20,378 | 24,311 | 26,987 | 34,846 | 289,764 |
| South Dakota | 6,101 | 7,897 | 7,538 | 6,054 | 5,167 | 4,781 | 4,984 | 6,261 | 7,166 | 9,445 | 8,620 | 9,645 | 83,659 |
| Tennessee | 45,597 | 55,684 | 43,344 | 36,861 | 33,567 | 32,665 | 34,494 | 39,800 | 38,227 | 44,933 | 55,288 | 72,934 | 533,394 |
| Texas | 130,524 | 147,793 | 130,310 | 101,103 | 97,814 | 91,133 | 94,876 | 115,497 | 114,900 | 122,547 | 138,837 | 180,658 | 1,465,992 |
| Utah | 21,908 | 21,548 | 22,924 | 29,587 | 26,525 | 23,271 | 19,385 | 19,335 | 17,531 | 16,476 | 19,211 | 26,111 | 263,812 |
| Vermont | 2,138 | 3,132 | 3,305 | 3,114 | 2,100 | 1,736 | 1,868 | 2,280 | 2,743 | 3,101 | 2,833 | 3,152 | 31,502 |
| Virgin Islands | 131 | 108 | 108 | 103 | 94 | 105 | 63 | 132 | 112 | 127 | 94 | 94 | 1,271 |
| Virginia | 31,647 | 42,073 | 40,700 | 31,037 | 27,385 | 26,351 | 28,031 | 30,501 | 31,726 | 36,419 | 43,955 | 49,939 | 419,764 |
| Washington | 40,612 | 44,399 | 45,491 | 46,446 | 37,636 | 32,647 | 31,164 | 32,674 | 35,256 | 41,682 | 44,282 | 49,826 | 482,115 |
| West Virginia | 15,350 | 23,569 | 20,942 | 16,702 | 14,682 | 12,646 | 13,298 | 15,799 | 16,952 | 20,922 | 24,050 | 26,935 | 221,847 |
| Wisconsin | 23,568 | 31,698 | 37,199 | 32,375 | 22,493 | 19,302 | 19,541 | 24,467 | 27,754 | 33,262 | 31,027 | 31,622 | 334,308 |
| Wyoming | 4,359 | 5,677 | 5,699 | 5,508 | 5,187 | 4,644 | 4,205 | 4,637 | 5,296 | 5,421 | 5,399 | 7,031 | 63,063 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

### Year 2013
January 1, 2013 - December 31, 2013

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 55,210 | 52,678 | 45,144 | 33,215 | 32,005 | 27,990 | 33,290 | 49,978 | 46,263 | 51,520 | 59,213 | 77,374 | 563,880 |
| Alaska | 9,975 | 9,397 | 9,047 | 8,758 | 7,529 | 6,077 | 5,889 | 7,545 | 6,047 | 8,322 | 6,868 | 7,951 | 93,405 |
| Arizona | 41,443 | 38,022 | 36,946 | 32,444 | 27,145 | 25,994 | 25,712 | 29,065 | 22,904 | 24,148 | 26,839 | 32,374 | 363,036 |
| Arkansas | 29,607 | 33,226 | 28,004 | 22,062 | 18,509 | 17,280 | 22,815 | 22,401 | 16,195 | 19,661 | 24,393 | 25,583 | 279,736 |
| California | 133,187 | 108,666 | 117,106 | 110,149 | 112,464 | 109,153 | 100,114 | 111,132 | 104,067 | 114,595 | 109,140 | 138,522 | 1,368,295 |
| Colorado | 53,121 | 55,170 | 58,007 | 43,675 | 39,181 | 40,488 | 42,207 | 35,642 | 31,620 | 34,371 | 37,908 | 43,268 | 514,658 |
| Connecticut | 31,886 | 24,128 | 31,213 | 29,703 | 22,706 | 22,597 | 22,598 | 23,489 | 21,666 | 20,189 | 22,530 | 21,633 | 294,338 |
| Delaware | 5,055 | 4,235 | 4,250 | 3,665 | 2,992 | 2,447 | 2,282 | 2,526 | 2,515 | 2,989 | 3,354 | 3,752 | 40,062 |
| District of Columbia | 59 | 62 | 52 | 48 | 40 | 26 | 32 | 35 | 36 | 37 | 35 | 35 | 497 |
| Florida | 117,696 | 99,785 | 86,541 | 102,757 | 90,077 | 76,142 | 78,121 | 81,138 | 73,216 | 79,284 | 86,342 | 102,760 | 1,073,859 |
| Georgia | 70,862 | 67,907 | 53,457 | 39,865 | 32,984 | 28,248 | 31,011 | 34,288 | 32,309 | 38,032 | 43,059 | 55,863 | 527,885 |
| Guam | 132 | 95 | 82 | 89 | 134 | 95 | 113 | 122 | 98 | 127 | 103 | 141 | 1,331 |
| Hawaii | 2,260 | 1,803 | 1,564 | 1,753 | 1,322 | 1,146 | 1,260 | 1,283 | 1,196 | 1,325 | 1,103 | 1,401 | 17,416 |
| Idaho | 17,708 | 17,947 | 15,954 | 13,075 | 10,133 | 8,717 | 8,460 | 9,967 | 10,165 | 10,694 | 10,703 | 13,971 | 147,494 |
| Illinois | 149,608 | 127,615 | 137,812 | 132,255 | 109,338 | 105,012 | 82,699 | 85,074 | 67,839 | 101,416 | 90,868 | 91,077 | 1,280,613 |
| Indiana | 61,855 | 57,638 | 57,961 | 51,393 | 39,560 | 39,636 | 51,081 | 49,336 | 40,129 | 43,650 | 51,526 | 53,359 | 597,124 |
| Iowa | 24,157 | 20,309 | 19,176 | 15,734 | 9,708 | 8,336 | 6,772 | 8,566 | 10,873 | 11,717 | 12,076 | 12,638 | 160,062 |
| Kansas | 29,270 | 24,839 | 22,741 | 21,146 | 19,099 | 13,084 | 14,721 | 14,753 | 13,318 | 15,038 | 18,670 | 21,426 | 228,105 |
| Kentucky | 238,510 | 247,260 | 243,253 | 39,190 | 25,271 | 29,195 | 29,719 | 27,296 | 54,426 | 204,305 | 208,696 | 231,210 | 1,578,331 |
| Louisiana | 42,313 | 35,129 | 30,893 | 24,525 | 21,920 | 18,953 | 19,777 | 25,224 | 29,508 | 28,194 | 33,765 | 42,824 | 353,025 |
| Maine | 10,538 | 9,029 | 10,320 | 8,888 | 6,442 | 5,620 | 5,492 | 6,806 | 8,102 | 9,707 | 8,004 | 7,812 | 96,760 |
| Mariana Islands | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 5 | 2 | 13 |
| Maryland | 18,392 | 16,241 | 16,873 | 15,618 | 14,340 | 12,702 | 12,248 | 14,929 | 49,644 | 20,526 | 18,413 | 21,256 | 231,182 |
| Massachusetts | 27,785 | 21,491 | 25,220 | 22,616 | 20,226 | 18,481 | 20,775 | 21,380 | 18,583 | 19,891 | 18,506 | 16,407 | 251,361 |
| Michigan | 60,852 | 54,680 | 57,686 | 49,219 | 34,050 | 29,521 | 29,608 | 34,265 | 36,135 | 40,320 | 39,996 | 37,647 | 503,979 |
| Minnesota | 64,272 | 55,260 | 57,031 | 52,210 | 40,424 | 29,559 | 30,700 | 35,738 | 40,431 | 43,178 | 38,292 | 38,679 | 525,774 |
| Mississippi | 26,380 | 26,649 | 21,207 | 15,363 | 13,418 | 11,605 | 12,768 | 16,821 | 14,804 | 18,028 | 25,301 | 29,367 | 231,711 |
| Missouri | 71,515 | 65,205 | 62,321 | 47,963 | 39,002 | 32,677 | 32,926 | 38,352 | 35,901 | 42,480 | 47,444 | 51,223 | 567,009 |
| Montana | 15,217 | 14,677 | 13,783 | 11,764 | 9,873 | 8,571 | 8,719 | 10,683 | 10,194 | 12,038 | 10,548 | 11,763 | 137,830 |
| Nebraska | 14,751 | 9,960 | 11,052 | 8,310 | 5,806 | 4,503 | 4,323 | 5,411 | 5,387 | 6,517 | 6,868 | 8,665 | 91,553 |
| Nevada | 18,361 | 17,065 | 15,623 | 14,225 | 11,297 | 9,962 | 8,915 | 9,540 | 8,704 | 9,800 | 10,503 | 12,897 | 146,892 |
| New Hampshire | 20,513 | 14,988 | 15,881 | 14,365 | 11,780 | 8,975 | 8,707 | 9,645 | 10,164 | 11,318 | 10,397 | 10,993 | 147,726 |
| New Jersey | 11,110 | 8,972 | 9,843 | 8,977 | 12,656 | 12,104 | 9,963 | 9,865 | 8,091 | 9,341 | 10,031 | 9,118 | 120,071 |
| New Mexico | 16,998 | 17,202 | 16,606 | 12,995 | 11,936 | 9,948 | 10,135 | 10,939 | 10,018 | 12,018 | 12,642 | 14,896 | 156,333 |
| New York | 43,752 | 32,249 | 35,013 | 30,999 | 23,167 | 21,003 | 20,065 | 23,867 | 27,247 | 30,402 | 32,643 | 32,657 | 353,064 |
| North Carolina | 70,301 | 72,694 | 58,353 | 46,729 | 38,695 | 32,934 | 33,798 | 36,326 | 34,609 | 40,850 | 50,272 | 59,061 | 574,622 |
| North Dakota | 9,686 | 8,362 | 8,143 | 7,678 | 6,284 | 5,016 | 5,143 | 5,641 | 6,707 | 8,511 | 7,692 | 6,949 | 85,812 |
| Ohio | 83,996 | 79,762 | 76,031 | 57,639 | 42,751 | 39,150 | 39,440 | 41,954 | 42,579 | 48,416 | 61,911 | 67,301 | 680,930 |
| Oklahoma | 48,246 | 43,984 | 37,224 | 30,530 | 24,269 | 21,661 | 22,622 | 26,282 | 23,496 | 27,268 | 35,876 | 39,176 | 380,634 |
| Oregon | 33,335 | 30,190 | 28,021 | 23,657 | 18,777 | 17,274 | 15,846 | 18,504 | 19,746 | 19,484 | 22,895 | 26,573 | 274,302 |
| Pennsylvania | 135,603 | 113,841 | 114,209 | 90,995 | 70,882 | 61,992 | 60,876 | 70,687 | 70,015 | 79,205 | 88,985 | 87,441 | 1,044,731 |
| Puerto Rico | 1,357 | 1,258 | 1,233 | 1,315 | 1,555 | 1,606 | 1,351 | 1,540 | 1,469 | 1,491 | 1,488 | 1,305 | 16,968 |
| Rhode Island | 3,792 | 2,624 | 3,088 | 2,775 | 2,109 | 1,697 | 1,561 | 1,642 | 1,622 | 1,862 | 1,925 | 1,969 | 26,666 |
| South Carolina | 36,801 | 42,168 | 35,234 | 27,599 | 23,713 | 21,463 | 23,572 | 25,637 | 20,573 | 21,704 | 25,922 | 31,309 | 335,695 |
| South Dakota | 11,242 | 10,060 | 9,506 | 7,058 | 5,772 | 4,820 | 4,719 | 5,998 | 6,812 | 8,534 | 8,416 | 9,118 | 92,055 |
| Tennessee | 69,456 | 70,784 | 61,462 | 45,767 | 42,521 | 36,424 | 34,531 | 39,133 | 40,207 | 42,522 | 53,278 | 64,784 | 600,869 |
| Texas | 186,890 | 189,806 | 163,594 | 131,815 | 111,668 | 97,420 | 100,819 | 115,380 | 111,067 | 124,834 | 133,911 | 166,074 | 1,633,278 |
| Utah | 27,938 | 28,356 | 32,240 | 30,717 | 34,615 | 27,453 | 28,963 | 30,966 | 19,074 | 17,812 | 21,492 | 24,978 | 324,604 |
| Vermont | 4,195 | 4,254 | 4,099 | 3,608 | 2,228 | 1,957 | 1,915 | 2,306 | 2,742 | 2,951 | 3,007 | 2,873 | 36,135 |
| Virgin Islands | 26 | 6 | 271 | 108 | 75 | 94 | 77 | 107 | 94 | 96 | 86 | 94 | 1,134 |
| Virginia | 60,837 | 57,124 | 52,284 | 39,271 | 31,108 | 29,376 | 28,960 | 33,074 | 33,507 | 36,623 | 44,918 | 51,344 | 498,426 |
| Washington | 73,547 | 66,081 | 60,588 | 49,100 | 40,430 | 35,567 | 33,115 | 37,388 | 36,213 | 41,311 | 40,784 | 46,998 | 561,122 |
| West Virginia | 26,793 | 29,414 | 25,848 | 18,761 | 15,908 | 13,796 | 13,839 | 16,506 | 17,038 | 19,865 | 24,919 | 26,265 | 248,952 |
| Wisconsin | 56,977 | 50,656 | 50,492 | 42,236 | 28,975 | 20,416 | 22,108 | 27,420 | 32,039 | 35,951 | 35,704 | 31,714 | 434,688 |
| Wyoming | 7,861 | 7,556 | 7,534 | 6,084 | 5,581 | 4,854 | 4,299 | 4,876 | 5,018 | 4,629 | 5,494 | 6,885 | 70,671 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS.  They do not represent the number of firearms sold.  Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks:
## Month/Year by State

## Year 2012
January 1, 2012 - December 31, 2012

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 28,358 | 39,993 | 33,964 | 25,289 | 24,617 | 26,055 | 26,858 | 32,191 | 28,384 | 32,850 | 52,221 | 80,576 | 431,356 |
| Alaska | 3,824 | 5,712 | 6,886 | 7,359 | 6,697 | 6,231 | 5,963 | 7,482 | 6,116 | 8,503 | 8,131 | 12,438 | 85,342 |
| Arizona | 22,223 | 30,320 | 32,310 | 24,088 | 23,073 | 23,452 | 23,776 | 27,791 | 25,496 | 24,336 | 34,003 | 48,795 | 339,663 |
| Arkansas | 16,113 | 25,303 | 19,824 | 14,875 | 12,851 | 13,640 | 14,859 | 17,976 | 19,881 | 22,743 | 29,298 | 38,830 | 246,193 |
| California | 75,418 | 89,188 | 107,573 | 90,368 | 83,820 | 85,384 | 80,683 | 87,291 | 79,077 | 89,164 | 113,832 | 150,805 | 1,132,603 |
| Colorado | 30,531 | 35,411 | 36,411 | 29,874 | 27,051 | 25,936 | 28,679 | 34,204 | 32,087 | 35,009 | 46,192 | 53,453 | 414,838 |
| Connecticut | 17,958 | 19,861 | 22,234 | 19,172 | 18,426 | 17,348 | 16,544 | 18,497 | 16,902 | 18,761 | 22,547 | 29,246 | 237,496 |
| Delaware | 2,054 | 2,503 | 2,486 | 1,997 | 1,813 | 1,737 | 1,907 | 2,259 | 2,149 | 2,512 | 3,681 | 5,626 | 30,724 |
| District of Columbia | 45 | 39 | 34 | 29 | 26 | 20 | 41 | 40 | 30 | 53 | 41 | 51 | 449 |
| Florida | 58,468 | 73,182 | 68,009 | 57,162 | 54,996 | 55,905 | 57,012 | 63,007 | 59,337 | 64,782 | 88,114 | 134,345 | 834,319 |
| Georgia | 34,191 | 49,066 | 40,518 | 27,989 | 27,905 | 27,206 | 28,807 | 34,710 | 31,077 | 37,586 | 47,507 | 78,998 | 465,560 |
| Guam | 78 | 91 | 72 | 70 | 51 | 83 | 62 | 78 | 71 | 81 | 82 | 111 | 930 |
| Hawaii | 1,079 | 1,257 | 1,547 | 1,599 | 1,408 | 1,260 | 1,313 | 1,426 | 1,334 | 1,569 | 1,622 | 2,014 | 17,428 |
| Idaho | 9,525 | 11,776 | 12,760 | 10,070 | 9,358 | 8,872 | 8,239 | 10,348 | 10,427 | 11,157 | 13,395 | 20,555 | 136,482 |
| Illinois | 89,958 | 88,343 | 105,812 | 93,918 | 78,257 | 75,388 | 65,557 | 85,626 | 71,123 | 78,049 | 91,889 | 112,141 | 1,036,061 |
| Indiana | 31,328 | 45,553 | 46,111 | 37,242 | 31,246 | 28,002 | 29,009 | 35,953 | 33,033 | 38,305 | 48,477 | 71,348 | 475,607 |
| Iowa | 13,663 | 16,076 | 14,773 | 11,101 | 9,505 | 7,505 | 8,596 | 9,917 | 8,990 | 12,012 | 16,155 | 19,407 | 147,700 |
| Kansas | 15,972 | 19,272 | 18,716 | 12,984 | 12,295 | 12,147 | 13,225 | 15,708 | 13,809 | 16,551 | 24,748 | 35,545 | 210,972 |
| Kentucky | 199,339 | 215,496 | 211,057 | 204,963 | 204,954 | 209,443 | 209,830 | 216,276 | 216,886 | 220,986 | 219,921 | 260,207 | 2,589,358 |
| Louisiana | 20,314 | 26,139 | 23,196 | 17,563 | 17,048 | 18,895 | 19,708 | 25,320 | 30,724 | 29,102 | 38,584 | 59,697 | 326,290 |
| Maine | 5,625 | 7,547 | 8,348 | 6,736 | 5,802 | 5,581 | 5,344 | 7,054 | 8,539 | 9,748 | 9,094 | 12,416 | 91,834 |
| Mariana Islands | 0 | 0 | 0 | 2 | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 5 |
| Maryland | 8,893 | 12,186 | 11,645 | 10,204 | 9,074 | 8,127 | 8,478 | 10,609 | 9,528 | 11,640 | 17,048 | 19,172 | 136,604 |
| Massachusetts | 13,612 | 15,536 | 18,697 | 15,957 | 15,951 | 15,165 | 14,682 | 17,855 | 17,519 | 19,062 | 21,166 | 25,251 | 210,453 |
| Michigan | 29,519 | 39,674 | 40,012 | 32,598 | 29,042 | 26,213 | 25,821 | 32,653 | 32,715 | 37,464 | 45,249 | 59,445 | 430,405 |
| Minnesota | 28,780 | 34,904 | 43,516 | 37,216 | 31,819 | 27,343 | 25,668 | 34,927 | 37,424 | 43,310 | 40,168 | 55,917 | 440,992 |
| Mississippi | 14,352 | 21,136 | 15,955 | 11,424 | 11,613 | 11,832 | 12,428 | 17,313 | 14,861 | 18,935 | 30,272 | 42,176 | 222,297 |
| Missouri | 35,338 | 49,037 | 44,469 | 34,335 | 30,808 | 30,925 | 30,826 | 39,336 | 37,258 | 44,157 | 55,571 | 81,243 | 513,303 |
| Montana | 8,531 | 11,811 | 11,723 | 9,869 | 9,277 | 9,498 | 8,537 | 10,765 | 11,118 | 13,036 | 11,728 | 18,562 | 134,455 |
| Nebraska | 6,811 | 7,184 | 7,126 | 5,476 | 4,708 | 4,413 | 4,557 | 6,141 | 5,806 | 7,814 | 10,418 | 15,406 | 85,860 |
| Nevada | 9,988 | 12,627 | 13,338 | 11,897 | 10,415 | 9,605 | 9,229 | 11,228 | 9,948 | 11,057 | 14,611 | 22,420 | 146,363 |
| New Hampshire | 8,336 | 10,126 | 10,886 | 9,937 | 8,723 | 9,486 | 8,297 | 9,918 | 10,028 | 10,591 | 12,223 | 19,647 | 128,178 |
| New Jersey | 5,312 | 6,545 | 7,587 | 6,904 | 6,952 | 6,723 | 6,430 | 7,179 | 6,471 | 6,791 | 8,910 | 10,047 | 85,851 |
| New Mexico | 9,317 | 13,631 | 13,239 | 9,845 | 9,488 | 9,906 | 9,051 | 11,175 | 10,284 | 11,675 | 14,271 | 21,537 | 143,419 |
| New York | 21,957 | 29,129 | 29,139 | 25,906 | 22,811 | 20,283 | 20,284 | 24,296 | 28,050 | 30,294 | 38,150 | 48,320 | 338,619 |
| North Carolina | 36,985 | 49,479 | 41,221 | 31,334 | 31,590 | 29,124 | 30,022 | 37,343 | 33,538 | 40,956 | 53,692 | 74,023 | 489,307 |
| North Dakota | 5,492 | 7,192 | 8,337 | 6,652 | 6,310 | 5,770 | 4,936 | 5,815 | 6,599 | 9,138 | 7,637 | 10,989 | 84,867 |
| Ohio | 39,215 | 61,246 | 57,181 | 44,422 | 36,717 | 37,375 | 37,815 | 43,974 | 44,695 | 49,510 | 74,534 | 102,531 | 629,215 |
| Oklahoma | 25,498 | 34,440 | 30,398 | 23,286 | 21,764 | 22,450 | 22,596 | 28,548 | 25,546 | 28,960 | 43,759 | 60,731 | 367,976 |
| Oregon | 17,368 | 23,339 | 25,401 | 20,442 | 16,915 | 17,331 | 16,380 | 18,294 | 20,203 | 19,989 | 27,133 | 44,246 | 267,041 |
| Pennsylvania | 66,682 | 89,424 | 93,005 | 71,690 | 62,343 | 60,533 | 64,227 | 75,174 | 72,565 | 79,821 | 99,829 | 133,241 | 968,534 |
| Puerto Rico | 936 | 1,327 | 1,467 | 1,167 | 1,297 | 1,255 | 1,202 | 1,374 | 1,149 | 1,327 | 1,271 | 1,773 | 15,545 |
| Rhode Island | 1,671 | 2,064 | 2,237 | 1,806 | 1,655 | 1,457 | 1,486 | 1,658 | 1,771 | 1,897 | 2,478 | 3,870 | 24,050 |
| South Carolina | 21,901 | 32,897 | 26,955 | 20,048 | 21,046 | 22,649 | 21,905 | 23,329 | 20,783 | 23,632 | 30,131 | 43,132 | 308,408 |
| South Dakota | 5,984 | 7,261 | 7,242 | 5,538 | 4,777 | 4,553 | 4,742 | 6,525 | 7,029 | 9,893 | 10,114 | 14,789 | 88,447 |
| Tennessee | 35,142 | 49,025 | 40,590 | 33,338 | 31,263 | 33,629 | 35,059 | 39,107 | 35,175 | 40,032 | 59,840 | 91,922 | 524,122 |
| Texas | 96,394 | 130,571 | 122,295 | 88,867 | 88,027 | 89,057 | 93,179 | 117,318 | 108,117 | 112,530 | 149,821 | 239,956 | 1,436,132 |
| Utah | 12,187 | 16,204 | 20,038 | 18,140 | 17,117 | 17,624 | 16,303 | 19,635 | 16,936 | 20,048 | 23,859 | 32,908 | 230,999 |
| Vermont | 2,051 | 3,182 | 3,565 | 2,862 | 2,176 | 2,036 | 2,067 | 2,397 | 2,983 | 3,152 | 3,191 | 4,845 | 34,507 |
| Virgin Islands | 30 | 38 | 17 | 27 | 45 | 38 | 34 | 38 | 41 | 37 | 25 | 29 | 399 |
| Virginia | 28,119 | 40,976 | 36,602 | 30,439 | 25,559 | 25,962 | 30,064 | 32,039 | 33,749 | 35,342 | 52,416 | 77,487 | 448,754 |
| Washington | 33,742 | 44,047 | 46,610 | 41,366 | 37,315 | 37,742 | 34,518 | 39,036 | 36,883 | 43,051 | 50,452 | 74,447 | 519,209 |
| West Virginia | 14,865 | 23,043 | 19,085 | 14,643 | 13,060 | 12,880 | 12,858 | 17,075 | 17,549 | 19,662 | 26,830 | 34,030 | 225,580 |
| Wisconsin | 43,852 | 47,912 | 47,104 | 39,410 | 30,059 | 24,986 | 25,991 | 34,499 | 34,070 | 41,069 | 44,890 | 55,533 | 469,375 |
| Wyoming | 3,892 | 5,325 | 5,822 | 4,579 | 4,476 | 4,149 | 3,901 | 4,969 | 4,874 | 5,011 | 6,482 | 9,876 | 63,356 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

App320

## NICS Firearm Background Checks: Month/Year by State

### Year 2011
January 1, 2011 - December 31, 2011

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 24,683 | 31,759 | 27,452 | 21,718 | 20,125 | 21,639 | 21,394 | 25,075 | 25,550 | 27,096 | 37,559 | 52,052 | 336,102 |
| Alaska | 4,193 | 5,016 | 6,324 | 7,213 | 5,481 | 5,011 | 5,228 | 6,191 | 5,603 | 7,586 | 5,264 | 7,088 | 70,198 |
| Arizona | 19,927 | 24,293 | 24,362 | 20,312 | 17,228 | 16,921 | 17,393 | 19,178 | 19,614 | 20,660 | 21,962 | 29,627 | 251,477 |
| Arkansas | 14,629 | 20,726 | 19,153 | 14,440 | 12,861 | 12,967 | 12,443 | 15,574 | 17,056 | 17,704 | 21,952 | 26,723 | 206,228 |
| California | 68,984 | 67,480 | 84,183 | 87,052 | 66,457 | 75,317 | 62,387 | 76,162 | 70,043 | 83,926 | 74,118 | 89,592 | 905,701 |
| Colorado | 26,423 | 28,056 | 32,233 | 28,366 | 24,526 | 22,374 | 22,111 | 25,611 | 27,601 | 27,895 | 31,566 | 39,534 | 336,296 |
| Connecticut | 13,324 | 15,154 | 19,479 | 17,025 | 15,458 | 15,027 | 13,519 | 13,583 | 14,477 | 14,842 | 15,588 | 18,592 | 186,068 |
| Delaware | 1,543 | 1,878 | 2,121 | 1,682 | 1,412 | 1,381 | 1,348 | 1,544 | 1,751 | 2,141 | 2,422 | 3,267 | 22,490 |
| District of Columbia | 18 | 35 | 40 | 40 | 15 | 6 | 4 | 12 | 39 | 35 | 33 | 23 | 300 |
| Florida | 53,396 | 60,661 | 57,319 | 49,574 | 44,317 | 45,007 | 44,259 | 49,864 | 49,825 | 52,459 | 58,793 | 77,755 | 643,229 |
| Georgia | 27,893 | 40,229 | 34,903 | 25,173 | 23,106 | 23,612 | 23,438 | 27,571 | 28,549 | 30,008 | 33,484 | 49,928 | 367,894 |
| Guam | 44 | 41 | 30 | 43 | 35 | 40 | 38 | 35 | 37 | 52 | 37 | 79 | 511 |
| Hawaii | 870 | 889 | 1,226 | 1,025 | 1,046 | 1,024 | 1,001 | 1,186 | 991 | 1,080 | 1,110 | 1,187 | 12,635 |
| Idaho | 6,990 | 8,804 | 9,694 | 8,688 | 7,507 | 7,309 | 7,019 | 8,600 | 9,756 | 9,704 | 9,207 | 13,338 | 106,616 |
| Illinois | 64,814 | 59,431 | 81,115 | 68,667 | 55,615 | 56,547 | 58,099 | 66,058 | 66,147 | 69,530 | 85,419 | 97,520 | 828,962 |
| Indiana | 30,541 | 32,083 | 38,315 | 29,792 | 24,145 | 23,206 | 18,687 | 28,228 | 27,494 | 28,973 | 35,122 | 43,254 | 359,840 |
| Iowa | 28,239 | 21,226 | 24,621 | 15,666 | 11,264 | 9,134 | 7,925 | 10,193 | 10,514 | 11,784 | 14,326 | 15,052 | 179,944 |
| Kansas | 13,993 | 15,363 | 17,046 | 12,000 | 9,818 | 9,557 | 9,855 | 12,273 | 11,634 | 13,909 | 17,794 | 21,656 | 164,898 |
| Kentucky | 177,464 | 188,375 | 184,546 | 184,195 | 180,713 | 183,978 | 184,356 | 189,671 | 194,180 | 196,026 | 203,683 | 213,645 | 2,280,832 |
| Louisiana | 19,895 | 21,596 | 19,561 | 15,795 | 14,440 | 15,573 | 16,513 | 20,405 | 27,344 | 24,489 | 28,512 | 40,429 | 264,552 |
| Maine | 4,669 | 5,003 | 6,751 | 5,735 | 4,680 | 4,489 | 4,989 | 5,647 | 6,967 | 8,725 | 6,775 | 8,697 | 73,127 |
| Mariana Islands | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Maryland | 7,521 | 8,759 | 9,754 | 8,500 | 6,920 | 6,397 | 6,505 | 7,885 | 7,465 | 9,038 | 11,678 | 12,598 | 103,020 |
| Massachusetts | 12,065 | 11,390 | 15,402 | 13,456 | 12,030 | 11,643 | 11,285 | 12,992 | 12,509 | 13,199 | 12,944 | 14,572 | 153,487 |
| Michigan | 26,610 | 29,976 | 40,176 | 33,074 | 26,415 | 23,436 | 20,783 | 26,445 | 29,598 | 29,448 | 34,261 | 36,413 | 356,635 |
| Minnesota | 23,965 | 25,707 | 35,730 | 32,612 | 25,879 | 21,508 | 18,160 | 26,543 | 30,635 | 33,383 | 29,226 | 34,186 | 337,534 |
| Mississippi | 12,934 | 17,673 | 13,865 | 10,880 | 9,594 | 9,714 | 10,757 | 13,706 | 14,705 | 16,435 | 23,983 | 30,813 | 185,059 |
| Missouri | 30,010 | 35,225 | 39,100 | 31,760 | 25,846 | 24,461 | 24,059 | 30,121 | 31,041 | 34,786 | 39,621 | 48,893 | 394,923 |
| Montana | 6,843 | 8,786 | 9,800 | 9,246 | 8,102 | 7,534 | 7,591 | 8,782 | 10,256 | 11,459 | 8,837 | 11,738 | 108,974 |
| Nebraska | 5,577 | 5,627 | 6,471 | 4,888 | 3,768 | 3,407 | 3,262 | 4,713 | 4,939 | 5,918 | 7,645 | 9,645 | 65,860 |
| Nevada | 9,020 | 10,209 | 11,807 | 9,911 | 9,903 | 8,731 | 8,504 | 9,274 | 8,986 | 8,750 | 10,148 | 13,497 | 118,740 |
| New Hampshire | 6,602 | 6,939 | 8,374 | 7,879 | 6,348 | 6,730 | 6,643 | 7,031 | 8,018 | 8,228 | 8,464 | 9,728 | 90,984 |
| New Jersey | 4,094 | 4,498 | 5,686 | 5,327 | 4,744 | 4,471 | 4,283 | 4,554 | 4,691 | 5,071 | 5,896 | 6,941 | 60,256 |
| New Mexico | 8,568 | 11,305 | 10,732 | 9,344 | 8,107 | 8,248 | 8,027 | 9,187 | 9,001 | 9,724 | 10,111 | 13,266 | 115,620 |
| New York | 18,184 | 20,575 | 25,590 | 23,702 | 19,043 | 17,222 | 15,609 | 20,848 | 24,847 | 26,213 | 28,792 | 31,212 | 271,837 |
| North Carolina | 28,745 | 38,046 | 34,691 | 26,486 | 23,166 | 23,829 | 22,879 | 28,308 | 29,321 | 31,770 | 38,647 | 49,323 | 375,211 |
| North Dakota | 3,509 | 4,196 | 5,026 | 5,014 | 4,020 | 3,453 | 3,594 | 4,793 | 5,779 | 7,713 | 6,415 | 7,520 | 61,032 |
| Ohio | 32,445 | 43,281 | 45,933 | 39,009 | 30,264 | 27,715 | 29,200 | 33,656 | 35,819 | 39,276 | 49,995 | 62,381 | 468,974 |
| Oklahoma | 21,901 | 24,262 | 22,825 | 20,910 | 16,468 | 16,926 | 17,504 | 20,606 | 21,437 | 21,830 | 29,611 | 37,536 | 271,816 |
| Oregon | 15,053 | 19,107 | 21,396 | 18,924 | 16,844 | 15,010 | 13,172 | 14,272 | 16,606 | 16,276 | 18,197 | 24,924 | 209,781 |
| Pennsylvania | 49,123 | 60,141 | 72,258 | 62,023 | 48,401 | 46,403 | 45,686 | 54,953 | 58,671 | 63,135 | 73,684 | 84,456 | 718,934 |
| Puerto Rico | 765 | 724 | 928 | 819 | 974 | 968 | 816 | 991 | 1,084 | 1,137 | 1,100 | 1,219 | 11,525 |
| Rhode Island | 1,259 | 1,529 | 1,756 | 1,560 | 1,191 | 1,195 | 1,105 | 1,367 | 1,350 | 1,464 | 1,534 | 1,961 | 17,271 |
| South Carolina | 15,559 | 23,822 | 21,669 | 16,096 | 14,728 | 14,435 | 14,201 | 18,589 | 17,958 | 18,470 | 23,354 | 30,538 | 229,419 |
| South Dakota | 5,062 | 5,636 | 6,115 | 5,359 | 4,300 | 3,871 | 3,759 | 5,338 | 6,092 | 8,405 | 7,157 | 8,560 | 69,654 |
| Tennessee | 37,303 | 41,709 | 49,190 | 34,499 | 33,407 | 26,388 | 29,884 | 31,215 | 29,468 | 39,802 | 41,364 | 56,878 | 451,107 |
| Texas | 85,642 | 98,234 | 97,274 | 87,448 | 81,733 | 79,768 | 77,160 | 88,889 | 95,830 | 96,869 | 112,058 | 154,482 | 1,155,387 |
| Utah | 156,273 | 148,222 | 19,213 | 106,858 | 156,415 | 116,927 | 129,912 | 120,911 | 12,668 | 13,611 | 17,367 | 22,412 | 1,020,789 |
| Vermont | 1,668 | 2,326 | 2,835 | 2,611 | 1,833 | 1,711 | 1,551 | 1,973 | 2,415 | 2,669 | 2,616 | 3,084 | 27,292 |
| Virgin Islands | 114 | 138 | 179 | 90 | 112 | 178 | 102 | 89 | 66 | 85 | 92 | 111 | 1,356 |
| Virginia | 24,482 | 31,915 | 30,593 | 25,922 | 20,659 | 19,279 | 23,271 | 23,087 | 25,348 | 29,209 | 34,504 | 43,199 | 331,468 |
| Washington | 30,026 | 35,059 | 38,679 | 33,741 | 29,384 | 28,038 | 27,113 | 30,258 | 30,810 | 33,594 | 33,662 | 44,046 | 394,410 |
| West Virginia | 12,306 | 18,145 | 15,674 | 13,548 | 10,691 | 10,610 | 11,387 | 13,269 | 15,704 | 17,195 | 21,995 | 24,967 | 185,491 |
| Wisconsin | 13,328 | 17,288 | 23,330 | 19,630 | 14,313 | 13,675 | 14,162 | 19,017 | 21,701 | 24,984 | 73,346 | 67,987 | 322,761 |
| Wyoming | 3,455 | 4,591 | 5,184 | 4,346 | 4,021 | 3,714 | 3,423 | 4,110 | 4,614 | 4,066 | 4,424 | 6,276 | 52,224 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App321**

## NICS Firearm Background Checks:
## Month/Year by State

### Year 2010
January 1, 2010 - December 31, 2010

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 24,397 | 30,456 | 26,403 | 20,791 | 18,752 | 18,801 | 20,513 | 23,813 | 23,344 | 25,403 | 32,668 | 43,266 | 308,607 |
| Alaska | 3,821 | 4,649 | 5,577 | 6,411 | 5,385 | 5,126 | 5,129 | 5,735 | 5,188 | 6,817 | 5,035 | 7,036 | 65,909 |
| Arizona | 15,687 | 19,737 | 18,142 | 16,578 | 15,048 | 13,846 | 14,910 | 16,826 | 17,027 | 16,732 | 17,575 | 23,942 | 206,050 |
| Arkansas | 13,506 | 18,988 | 16,781 | 14,563 | 11,251 | 12,677 | 12,316 | 13,877 | 15,907 | 16,979 | 20,782 | 23,821 | 191,448 |
| California | 63,048 | 64,271 | 74,011 | 80,750 | 69,344 | 61,889 | 62,682 | 65,506 | 60,530 | 68,851 | 63,995 | 81,522 | 816,399 |
| Colorado | 24,265 | 25,008 | 26,781 | 23,609 | 21,575 | 21,273 | 21,849 | 25,298 | 23,433 | 25,402 | 27,634 | 34,693 | 300,820 |
| Connecticut | 15,346 | 14,929 | 19,380 | 15,922 | 13,890 | 14,432 | 12,848 | 14,183 | 13,743 | 14,371 | 15,005 | 15,546 | 179,595 |
| Delaware | 1,638 | 1,387 | 1,878 | 1,439 | 1,227 | 1,222 | 1,272 | 1,418 | 1,571 | 1,720 | 2,058 | 2,410 | 19,240 |
| District of Columbia | 21 | 29 | 52 | 35 | 26 | 21 | 37 | 23 | 29 | 26 | 23 | 27 | 349 |
| Florida | 46,404 | 50,797 | 51,836 | 42,794 | 39,988 | 39,190 | 40,949 | 42,301 | 42,666 | 46,464 | 50,550 | 65,408 | 559,347 |
| Georgia | 29,217 | 35,867 | 32,199 | 24,065 | 21,440 | 21,083 | 21,897 | 23,723 | 24,281 | 28,899 | 29,045 | 41,531 | 333,247 |
| Guam | 53 | 52 | 60 | 35 | 46 | 29 | 43 | 50 | 41 | 43 | 42 | 48 | 542 |
| Hawaii | 826 | 829 | 1,055 | 963 | 787 | 895 | 783 | 874 | 874 | 913 | 800 | 934 | 10,533 |
| Idaho | 7,252 | 8,724 | 9,051 | 7,814 | 7,017 | 6,472 | 5,973 | 6,798 | 8,017 | 8,121 | 6,874 | 9,918 | 92,031 |
| Illinois | 58,343 | 55,994 | 65,629 | 53,929 | 45,009 | 52,369 | 50,122 | 59,738 | 58,617 | 62,384 | 63,906 | 69,260 | 695,300 |
| Indiana | 27,193 | 30,162 | 32,174 | 25,232 | 24,879 | 25,869 | 24,070 | 29,281 | 27,346 | 30,124 | 32,292 | 37,028 | 345,650 |
| Iowa | 10,429 | 10,673 | 13,878 | 9,720 | 7,568 | 7,847 | 6,921 | 7,723 | 9,588 | 11,029 | 13,273 | 16,089 | 124,738 |
| Kansas | 11,571 | 13,308 | 12,889 | 9,529 | 8,360 | 8,099 | 8,428 | 10,317 | 11,262 | 14,359 | 16,070 | 19,964 | 144,156 |
| Kentucky | 201,899 | 211,077 | 211,068 | 211,261 | 213,810 | 216,147 | 219,640 | 181,135 | 172,165 | 177,281 | 181,908 | 188,188 | 2,385,579 |
| Louisiana | 16,562 | 19,631 | 18,069 | 13,373 | 12,402 | 13,340 | 15,351 | 19,062 | 24,914 | 24,310 | 26,317 | 35,873 | 239,204 |
| Maine | 3,949 | 4,916 | 5,941 | 5,073 | 4,219 | 4,308 | 4,143 | 5,119 | 6,817 | 8,605 | 6,065 | 6,833 | 65,988 |
| Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 7,055 | 6,974 | 8,437 | 6,992 | 6,097 | 5,753 | 6,047 | 6,823 | 6,809 | 7,702 | 9,827 | 9,646 | 88,162 |
| Massachusetts | 8,882 | 8,302 | 10,018 | 8,748 | 7,926 | 7,959 | 7,845 | 9,673 | 10,818 | 12,237 | 11,609 | 11,887 | 115,904 |
| Michigan | 26,082 | 31,742 | 37,529 | 29,383 | 25,102 | 22,964 | 21,625 | 26,506 | 30,062 | 30,825 | 33,796 | 32,584 | 348,200 |
| Minnesota | 20,181 | 21,210 | 29,495 | 26,351 | 20,172 | 21,173 | 19,268 | 24,702 | 31,519 | 33,303 | 23,577 | 26,439 | 297,390 |
| Mississippi | 12,266 | 16,277 | 13,284 | 9,702 | 9,100 | 9,040 | 10,321 | 12,666 | 13,250 | 15,634 | 21,845 | 26,488 | 169,873 |
| Missouri | 26,169 | 34,082 | 33,666 | 26,289 | 23,067 | 23,624 | 22,889 | 26,607 | 27,317 | 32,211 | 34,075 | 39,676 | 349,672 |
| Montana | 6,771 | 8,525 | 9,108 | 8,367 | 7,361 | 7,421 | 7,058 | 8,707 | 9,441 | 10,789 | 7,676 | 9,871 | 101,095 |
| Nebraska | 4,060 | 4,620 | 5,480 | 4,141 | 3,567 | 3,627 | 3,252 | 4,228 | 4,768 | 6,038 | 6,709 | 7,793 | 58,283 |
| Nevada | 7,705 | 8,959 | 10,375 | 9,294 | 8,692 | 7,610 | 7,500 | 8,228 | 7,908 | 7,817 | 9,052 | 11,649 | 104,789 |
| New Hampshire | 6,253 | 6,377 | 7,705 | 6,911 | 5,694 | 5,666 | 5,711 | 6,093 | 6,987 | 7,579 | 6,942 | 8,022 | 79,940 |
| New Jersey | 4,038 | 3,655 | 4,949 | 4,215 | 3,913 | 3,787 | 3,728 | 3,801 | 4,078 | 4,423 | 5,087 | 4,848 | 50,522 |
| New Mexico | 7,971 | 10,513 | 10,359 | 8,599 | 7,727 | 7,867 | 8,829 | 8,914 | 8,743 | 8,830 | 8,812 | 11,905 | 109,069 |
| New York | 17,411 | 18,302 | 22,365 | 19,906 | 16,001 | 16,345 | 15,277 | 18,015 | 22,021 | 25,138 | 25,758 | 24,956 | 241,495 |
| North Carolina | 27,260 | 32,128 | 30,488 | 23,378 | 20,806 | 21,312 | 22,358 | 26,494 | 26,711 | 28,544 | 32,825 | 39,333 | 331,637 |
| North Dakota | 3,064 | 3,253 | 4,035 | 3,726 | 3,279 | 3,154 | 2,818 | 3,629 | 4,733 | 6,477 | 4,490 | 4,425 | 47,083 |
| Ohio | 30,348 | 34,190 | 38,472 | 31,312 | 25,857 | 23,934 | 26,464 | 28,258 | 30,234 | 35,171 | 42,549 | 46,461 | 393,250 |
| Oklahoma | 17,538 | 24,308 | 19,616 | 17,750 | 15,202 | 14,331 | 15,970 | 17,819 | 17,862 | 19,605 | 24,250 | 29,658 | 233,909 |
| Oregon | 13,157 | 16,920 | 18,422 | 16,031 | 14,063 | 13,236 | 12,364 | 13,652 | 16,035 | 15,007 | 15,153 | 20,795 | 184,835 |
| Pennsylvania | 47,456 | 47,352 | 65,871 | 50,249 | 41,779 | 43,153 | 43,054 | 47,362 | 52,002 | 57,446 | 67,443 | 63,510 | 626,677 |
| Puerto Rico | 597 | 635 | 691 | 642 | 613 | 650 | 735 | 742 | 706 | 597 | 663 | 807 | 8,078 |
| Rhode Island | 1,270 | 1,316 | 1,542 | 1,199 | 1,052 | 1,044 | 990 | 1,151 | 1,178 | 1,306 | 1,331 | 1,456 | 14,835 |
| South Carolina | 16,697 | 20,358 | 18,306 | 14,441 | 13,570 | 14,532 | 13,501 | 15,262 | 15,413 | 14,800 | 21,016 | 23,732 | 201,628 |
| South Dakota | 4,009 | 5,010 | 5,388 | 4,561 | 3,889 | 3,696 | 3,810 | 4,761 | 6,051 | 8,232 | 6,566 | 7,178 | 63,151 |
| Tennessee | 26,056 | 47,562 | 43,340 | 30,453 | 23,904 | 26,099 | 27,459 | 30,419 | 31,436 | 34,894 | 38,300 | 51,102 | 411,024 |
| Texas | 73,787 | 87,849 | 77,795 | 65,012 | 61,789 | 60,337 | 67,262 | 81,327 | 78,300 | 91,997 | 95,755 | 126,861 | 968,071 |
| Utah | 42,200 | 22,622 | 17,173 | 109,391 | 18,308 | 17,437 | 65,785 | 13,179 | 38,412 | 154,655 | 17,282 | 36,690 | 553,134 |
| Vermont | 1,495 | 2,234 | 2,630 | 2,053 | 1,638 | 1,433 | 1,523 | 1,698 | 2,344 | 2,592 | 2,292 | 2,344 | 24,276 |
| Virgin Islands | 85 | 113 | 130 | 161 | 87 | 156 | 190 | 151 | 158 | 111 | 120 | 132 | 1,594 |
| Virginia | 22,145 | 25,620 | 30,216 | 44,137 | 27,723 | 16,652 | 21,272 | 22,580 | 22,314 | 25,771 | 29,492 | 32,861 | 320,783 |
| Washington | 27,184 | 30,358 | 32,149 | 27,816 | 24,989 | 24,456 | 23,826 | 26,001 | 28,670 | 29,320 | 26,375 | 34,198 | 335,342 |
| West Virginia | 11,693 | 14,737 | 13,794 | 11,180 | 9,350 | 9,774 | 10,050 | 11,116 | 13,298 | 16,499 | 19,482 | 18,577 | 159,550 |
| Wisconsin | 12,734 | 16,017 | 21,554 | 16,471 | 11,567 | 11,437 | 10,964 | 15,192 | 18,610 | 21,543 | 21,043 | 17,665 | 194,797 |
| Wyoming | 3,266 | 4,013 | 4,382 | 4,013 | 3,911 | 3,668 | 3,265 | 3,804 | 4,332 | 3,968 | 3,708 | 5,379 | 47,709 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

### Year 2009
January 1, 2009 - December 31, 2009

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 29,770 | 30,391 | 27,949 | 21,322 | 20,277 | 18,538 | 21,001 | 24,123 | 24,221 | 27,346 | 30,734 | 42,196 | 317,868 |
| Alaska | 4,227 | 4,652 | 5,140 | 5,775 | 4,878 | 4,419 | 4,263 | 5,076 | 4,885 | 6,724 | 4,726 | 6,015 | 60,780 |
| Arizona | 20,293 | 21,423 | 21,766 | 20,896 | 17,837 | 18,953 | 16,099 | 14,956 | 14,619 | 14,831 | 14,003 | 19,703 | 215,379 |
| Arkansas | 17,819 | 21,434 | 19,172 | 19,326 | 13,435 | 14,489 | 14,074 | 14,319 | 15,465 | 18,480 | 18,795 | 23,034 | 209,842 |
| California | 72,039 | 62,736 | 72,248 | 73,315 | 64,304 | 63,190 | 61,389 | 65,927 | 62,920 | 64,468 | 56,392 | 69,236 | 788,164 |
| Colorado | 28,193 | 29,189 | 32,067 | 30,277 | 27,595 | 24,127 | 20,949 | 22,782 | 21,855 | 22,940 | 24,466 | 29,201 | 313,641 |
| Connecticut | 18,593 | 19,264 | 21,879 | 19,564 | 16,972 | 16,887 | 15,338 | 15,081 | 15,448 | 14,754 | 13,520 | 15,154 | 202,454 |
| Delaware | 1,860 | 1,886 | 2,031 | 1,736 | 1,439 | 1,318 | 1,245 | 1,545 | 1,520 | 1,763 | 1,926 | 2,261 | 20,530 |
| District of Columbia | 34 | 40 | 40 | 34 | 29 | 28 | 25 | 31 | 28 | 28 | 33 | 19 | 369 |
| Florida | 51,169 | 53,862 | 55,646 | 48,761 | 40,976 | 38,505 | 38,918 | 40,232 | 39,874 | 44,824 | 46,324 | 57,449 | 556,540 |
| Georgia | 39,703 | 44,226 | 40,635 | 30,714 | 24,765 | 24,872 | 23,360 | 25,045 | 24,701 | 28,353 | 27,511 | 39,352 | 373,237 |
| Guam | 54 | 34 | 27 | 40 | 38 | 45 | 34 | 42 | 41 | 50 | 43 | 62 | 510 |
| Hawaii | 894 | 792 | 1,086 | 1,013 | 897 | 758 | 813 | 687 | 867 | 853 | 859 | 992 | 10,511 |
| Idaho | 8,903 | 9,851 | 11,281 | 9,396 | 6,886 | 6,798 | 6,207 | 6,930 | 7,615 | 8,237 | 7,406 | 9,733 | 99,243 |
| Illinois | 62,068 | 58,938 | 72,066 | 82,671 | 64,049 | 52,126 | 47,204 | 54,912 | 60,010 | 65,610 | 64,018 | 68,399 | 752,071 |
| Indiana | 23,196 | 24,131 | 25,741 | 20,245 | 16,093 | 14,038 | 14,138 | 19,136 | 25,710 | 29,405 | 29,522 | 32,448 | 273,803 |
| Iowa | 11,987 | 11,199 | 13,542 | 10,764 | 7,354 | 6,646 | 6,309 | 7,213 | 8,711 | 11,607 | 11,146 | 13,755 | 120,233 |
| Kansas | 14,131 | 13,268 | 14,201 | 11,607 | 9,031 | 7,979 | 8,181 | 10,762 | 10,137 | 13,343 | 14,017 | 16,327 | 142,984 |
| Kentucky | 167,035 | 173,104 | 175,314 | 174,987 | 174,703 | 175,957 | 179,312 | 182,433 | 187,031 | 194,580 | 195,656 | 209,466 | 2,189,578 |
| Louisiana | 22,219 | 21,639 | 21,067 | 17,171 | 14,561 | 13,579 | 15,059 | 18,088 | 25,613 | 22,882 | 22,565 | 32,641 | 247,084 |
| Maine | 4,200 | 4,676 | 5,782 | 5,148 | 3,948 | 3,763 | 3,847 | 4,406 | 5,887 | 7,967 | 5,444 | 5,887 | 60,955 |
| Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 8,734 | 9,271 | 9,733 | 8,445 | 6,328 | 6,453 | 6,344 | 6,379 | 7,152 | 8,169 | 9,498 | 8,685 | 95,191 |
| Massachusetts | 8,960 | 8,230 | 10,135 | 9,236 | 7,827 | 7,487 | 6,730 | 6,682 | 7,681 | 8,887 | 8,631 | 8,378 | 98,864 |
| Michigan | 30,182 | 32,473 | 38,803 | 34,713 | 25,954 | 24,233 | 23,268 | 26,423 | 28,759 | 31,974 | 32,954 | 32,436 | 362,172 |
| Minnesota | 22,768 | 23,895 | 32,695 | 31,130 | 19,636 | 18,162 | 17,426 | 21,487 | 25,748 | 29,398 | 20,902 | 21,883 | 285,130 |
| Mississippi | 16,201 | 16,599 | 13,189 | 11,131 | 9,488 | 8,359 | 9,717 | 11,702 | 12,488 | 14,967 | 18,202 | 25,014 | 167,057 |
| Missouri | 32,110 | 35,664 | 36,214 | 30,743 | 23,401 | 21,868 | 21,998 | 26,207 | 26,143 | 33,121 | 30,743 | 37,466 | 355,678 |
| Montana | 7,519 | 8,799 | 9,600 | 9,076 | 8,190 | 7,541 | 7,082 | 8,311 | 8,753 | 10,521 | 7,326 | 9,258 | 101,976 |
| Nebraska | 5,702 | 5,475 | 6,092 | 5,495 | 3,211 | 3,379 | 3,103 | 4,108 | 4,638 | 6,017 | 5,792 | 6,316 | 59,328 |
| Nevada | 10,224 | 10,154 | 11,536 | 10,912 | 8,004 | 7,695 | 6,908 | 7,597 | 6,985 | 8,224 | 8,367 | 10,737 | 107,343 |
| New Hampshire | 6,165 | 5,910 | 7,376 | 6,975 | 5,463 | 4,896 | 5,239 | 6,019 | 6,327 | 8,681 | 6,536 | 6,515 | 76,102 |
| New Jersey | 4,216 | 4,343 | 5,266 | 5,060 | 4,567 | 4,739 | 4,428 | 4,172 | 4,083 | 4,953 | 4,713 | 4,993 | 55,533 |
| New Mexico | 9,635 | 10,875 | 10,757 | 8,676 | 7,901 | 7,762 | 7,168 | 8,333 | 8,047 | 8,776 | 7,963 | 10,961 | 106,854 |
| New York | 18,383 | 18,910 | 22,794 | 21,727 | 16,415 | 16,193 | 15,824 | 17,289 | 21,159 | 25,423 | 23,176 | 23,872 | 241,165 |
| North Carolina | 38,538 | 39,872 | 37,632 | 31,413 | 25,730 | 23,591 | 22,884 | 24,625 | 25,737 | 29,399 | 30,279 | 38,760 | 368,460 |
| North Dakota | 3,523 | 3,682 | 3,846 | 4,714 | 4,078 | 3,289 | 2,933 | 3,439 | 4,419 | 5,749 | 4,107 | 4,183 | 47,962 |
| Ohio | 33,593 | 38,939 | 41,762 | 35,416 | 27,137 | 24,817 | 25,287 | 26,574 | 27,796 | 33,727 | 39,266 | 41,266 | 395,580 |
| Oklahoma | 22,098 | 24,547 | 21,680 | 21,163 | 16,353 | 13,868 | 14,752 | 17,038 | 16,049 | 18,934 | 21,832 | 26,203 | 234,562 |
| Oregon | 16,799 | 18,063 | 20,906 | 16,980 | 14,086 | 12,127 | 11,007 | 12,204 | 14,503 | 14,610 | 14,938 | 18,820 | 185,043 |
| Pennsylvania | 54,695 | 57,544 | 69,675 | 59,806 | 45,804 | 43,428 | 42,862 | 44,917 | 50,424 | 56,079 | 60,101 | 56,361 | 641,696 |
| Puerto Rico | 625 | 609 | 727 | 653 | 637 | 663 | 658 | 689 | 715 | 705 | 585 | 726 | 7,992 |
| Rhode Island | 1,287 | 1,355 | 1,557 | 1,469 | 1,158 | 1,072 | 922 | 968 | 1,098 | 1,355 | 1,186 | 1,372 | 14,799 |
| South Carolina | 17,818 | 20,958 | 19,681 | 18,209 | 15,961 | 13,977 | 14,914 | 15,567 | 16,028 | 16,984 | 21,990 | 22,497 | 214,584 |
| South Dakota | 5,447 | 5,614 | 5,776 | 5,533 | 3,769 | 3,786 | 3,652 | 4,757 | 5,738 | 7,578 | 5,742 | 6,356 | 63,748 |
| Tennessee | 31,505 | 33,801 | 34,899 | 26,003 | 25,506 | 23,435 | 26,032 | 55,766 | 27,528 | 35,780 | 40,591 | 48,145 | 408,991 |
| Texas | 86,835 | 96,192 | 102,372 | 76,844 | 71,891 | 69,421 | 66,285 | 80,589 | 74,929 | 78,429 | 95,339 | 114,889 | 1,014,015 |
| Utah | 28,809 | 16,137 | 18,402 | 28,052 | 16,119 | 19,092 | 31,518 | 20,191 | 15,749 | 30,908 | 12,993 | 18,166 | 256,136 |
| Vermont | 1,619 | 2,314 | 2,456 | 2,129 | 1,564 | 1,349 | 1,437 | 1,644 | 2,028 | 2,421 | 2,068 | 2,056 | 23,085 |
| Virgin Islands | 183 | 126 | 179 | 213 | 162 | 169 | 120 | 136 | 147 | 113 | 117 | 94 | 1,759 |
| Virginia | 27,133 | 29,763 | 28,923 | 26,103 | 19,811 | 17,106 | 20,436 | 20,882 | 21,425 | 27,563 | 27,434 | 29,884 | 296,463 |
| Washington | 31,526 | 33,303 | 35,861 | 32,498 | 27,031 | 23,229 | 21,284 | 23,384 | 24,405 | 27,301 | 24,453 | 32,457 | 336,732 |
| West Virginia | 13,020 | 15,097 | 13,698 | 12,237 | 10,016 | 9,232 | 9,628 | 10,435 | 12,343 | 15,987 | 17,419 | 17,719 | 156,831 |
| Wisconsin | 14,071 | 17,025 | 23,863 | 19,575 | 11,864 | 10,519 | 10,489 | 14,794 | 17,700 | 21,119 | 19,327 | 16,605 | 196,951 |
| Wyoming | 4,553 | 5,050 | 5,594 | 4,931 | 4,202 | 4,118 | 3,421 | 3,800 | 3,804 | 3,663 | 3,553 | 4,706 | 51,395 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App323**

# NICS Firearm Background Checks:
## Month/Year by State

## Year 2008
January 1, 2008 - December 31, 2008

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 22,516 | 26,565 | 23,827 | 18,165 | 19,228 | 17,454 | 18,312 | 21,264 | 21,365 | 24,898 | 39,594 | 46,244 | 299,432 |
| Alaska | 3,266 | 3,844 | 4,404 | 4,745 | 4,409 | 3,804 | 4,102 | 5,201 | 7,083 | 5,926 | 7,945 | 7,000 | 61,729 |
| Arizona | 17,302 | 19,279 | 17,466 | 16,321 | 16,274 | 13,644 | 14,129 | 15,201 | 14,404 | 16,206 | 22,813 | 25,682 | 208,721 |
| Arkansas | 13,794 | 17,726 | 15,717 | 12,214 | 12,463 | 11,306 | 11,428 | 12,925 | 14,715 | 18,762 | 24,251 | 26,498 | 191,799 |
| California | 58,872 | 59,380 | 74,599 | 66,612 | 64,811 | 57,322 | 62,382 | 63,942 | 56,404 | 65,372 | 73,190 | 77,512 | 780,398 |
| Colorado | 18,057 | 20,877 | 22,401 | 20,016 | 19,921 | 18,991 | 19,673 | 22,460 | 21,596 | 26,115 | 39,798 | 35,616 | 285,521 |
| Connecticut | 12,621 | 11,681 | 12,978 | 12,549 | 11,869 | 10,658 | 11,352 | 11,373 | 12,304 | 14,573 | 16,586 | 17,341 | 155,885 |
| Delaware | 1,242 | 1,380 | 1,339 | 1,350 | 1,162 | 1,013 | 1,103 | 1,296 | 1,349 | 1,716 | 2,512 | 2,640 | 18,102 |
| District of Columbia | 1 | 53 | 0 | 0 | 0 | 16 | 1 | 1 | 39 | 49 | 55 | 44 | 259 |
| Florida | 38,219 | 40,476 | 39,246 | 36,385 | 35,887 | 34,145 | 34,809 | 34,316 | 34,029 | 44,475 | 65,859 | 65,826 | 503,672 |
| Georgia | 27,410 | 32,150 | 27,880 | 24,172 | 23,424 | 22,513 | 25,433 | 25,427 | 25,289 | 35,246 | 46,108 | 52,322 | 367,374 |
| Guam | 27 | 36 | 27 | 37 | 36 | 36 | 28 | 33 | 42 | 55 | 34 | 56 | 447 |
| Hawaii | 642 | 563 | 689 | 746 | 565 | 608 | 612 | 615 | 655 | 835 | 989 | 1,050 | 8,569 |
| Idaho | 6,590 | 8,715 | 9,166 | 7,964 | 7,518 | 6,778 | 6,088 | 7,234 | 8,095 | 8,979 | 11,539 | 11,791 | 100,457 |
| Illinois | 50,878 | 47,375 | 55,221 | 50,664 | 41,563 | 36,378 | 41,247 | 47,407 | 54,261 | 56,784 | 64,537 | 69,626 | 615,941 |
| Indiana | 17,255 | 18,649 | 20,196 | 14,582 | 14,259 | 11,982 | 12,694 | 15,500 | 15,155 | 20,735 | 30,367 | 28,526 | 219,900 |
| Iowa | 10,386 | 8,850 | 10,569 | 8,333 | 6,253 | 5,103 | 5,437 | 6,282 | 8,426 | 11,047 | 13,188 | 14,456 | 108,330 |
| Kansas | 9,405 | 10,169 | 10,182 | 8,680 | 7,618 | 6,879 | 7,070 | 9,408 | 8,543 | 12,231 | 18,157 | 17,742 | 126,084 |
| Kentucky | 143,573 | 148,628 | 146,516 | 148,367 | 150,272 | 146,583 | 184,555 | 154,192 | 155,795 | 162,086 | 170,669 | 169,865 | 1,881,101 |
| Louisiana | 17,416 | 18,034 | 15,706 | 13,222 | 13,171 | 13,502 | 14,449 | 19,179 | 17,044 | 27,703 | 37,761 | 41,168 | 248,355 |
| Maine | 3,363 | 3,658 | 4,474 | 3,955 | 3,889 | 3,540 | 3,550 | 4,742 | 5,600 | 7,802 | 6,367 | 5,621 | 56,561 |
| Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 6,307 | 7,693 | 6,895 | 6,318 | 5,664 | 5,283 | 5,646 | 5,970 | 6,437 | 8,493 | 13,581 | 11,296 | 89,583 |
| Massachusetts | 11,466 | 11,024 | 13,113 | 11,676 | 10,247 | 9,128 | 9,068 | 8,676 | 7,857 | 8,631 | 9,777 | 9,196 | 119,859 |
| Michigan | 26,327 | 27,806 | 31,514 | 28,416 | 24,411 | 22,283 | 22,649 | 26,564 | 31,250 | 36,342 | 41,369 | 38,404 | 357,335 |
| Minnesota | 18,727 | 20,738 | 26,018 | 25,126 | 18,927 | 17,390 | 17,164 | 21,906 | 27,447 | 30,503 | 28,567 | 24,662 | 277,175 |
| Mississippi | 16,039 | 15,654 | 12,065 | 9,652 | 10,147 | 9,602 | 10,071 | 13,259 | 11,328 | 16,495 | 27,364 | 29,392 | 181,068 |
| Missouri | 24,210 | 28,424 | 28,049 | 23,721 | 20,818 | 18,806 | 19,159 | 23,671 | 21,687 | 31,440 | 40,379 | 41,123 | 321,487 |
| Montana | 5,753 | 7,419 | 8,100 | 7,544 | 8,215 | 6,928 | 6,529 | 7,785 | 8,612 | 10,749 | 9,988 | 9,977 | 97,599 |
| Nebraska | 4,304 | 4,521 | 4,526 | 3,649 | 3,088 | 2,636 | 2,809 | 3,814 | 4,364 | 5,988 | 8,129 | 8,761 | 56,589 |
| Nevada | 5,329 | 6,956 | 7,543 | 6,164 | 6,460 | 5,974 | 6,687 | 7,587 | 6,812 | 8,850 | 13,436 | 13,454 | 95,252 |
| New Hampshire | 4,969 | 4,778 | 5,862 | 6,063 | 5,268 | 4,826 | 4,796 | 5,059 | 5,030 | 6,575 | 7,913 | 6,154 | 67,293 |
| New Jersey | 3,061 | 3,004 | 3,313 | 3,044 | 2,966 | 2,692 | 2,889 | 2,867 | 3,186 | 3,928 | 4,954 | 4,621 | 40,525 |
| New Mexico | 7,594 | 9,316 | 9,001 | 7,598 | 7,554 | 7,433 | 7,193 | 7,934 | 7,691 | 9,479 | 12,078 | 13,260 | 106,131 |
| New York | 16,478 | 17,283 | 18,748 | 18,179 | 15,388 | 13,191 | 13,240 | 15,592 | 20,428 | 22,858 | 27,081 | 23,454 | 221,920 |
| North Carolina | 27,082 | 30,838 | 26,027 | 24,025 | 22,466 | 20,951 | 21,817 | 23,533 | 23,083 | 31,276 | 45,424 | 50,951 | 347,473 |
| North Dakota | 3,126 | 3,430 | 3,673 | 3,444 | 3,230 | 2,877 | 2,775 | 3,449 | 4,651 | 6,399 | 5,248 | 4,530 | 46,832 |
| Ohio | 28,065 | 29,116 | 29,199 | 25,222 | 22,604 | 19,159 | 20,652 | 22,657 | 23,361 | 31,341 | 53,256 | 45,382 | 350,014 |
| Oklahoma | 16,006 | 19,521 | 16,347 | 15,963 | 14,480 | 12,812 | 13,066 | 16,373 | 15,318 | 18,886 | 32,368 | 30,472 | 221,612 |
| Oregon | 12,399 | 14,107 | 16,867 | 14,644 | 13,174 | 12,635 | 11,154 | 12,172 | 14,576 | 14,609 | 22,636 | 20,914 | 179,887 |
| Pennsylvania | 44,755 | 46,646 | 56,009 | 45,947 | 40,630 | 36,218 | 38,271 | 41,911 | 46,220 | 55,218 | 78,828 | 67,891 | 598,544 |
| Puerto Rico | 616 | 554 | 434 | 416 | 462 | 474 | 517 | 631 | 658 | 570 | 511 | 660 | 6,503 |
| Rhode Island | 921 | 973 | 1,122 | 930 | 946 | 744 | 830 | 846 | 931 | 1,171 | 1,618 | 1,373 | 12,405 |
| South Carolina | 13,553 | 17,215 | 15,445 | 11,607 | 11,974 | 10,499 | 11,314 | 12,881 | 12,515 | 15,680 | 27,464 | 24,794 | 184,941 |
| South Dakota | 4,050 | 4,593 | 4,634 | 4,117 | 3,673 | 3,171 | 3,146 | 5,261 | 6,193 | 8,299 | 7,566 | 7,786 | 62,489 |
| Tennessee | 20,764 | 25,181 | 22,006 | 17,915 | 17,783 | 16,905 | 17,909 | 20,940 | 18,460 | 24,426 | 38,954 | 41,576 | 282,819 |
| Texas | 66,797 | 72,001 | 63,667 | 59,527 | 61,039 | 59,239 | 56,777 | 73,208 | 71,992 | 92,043 | 132,359 | 135,919 | 944,568 |
| Utah | 9,538 | 8,525 | 9,871 | 10,937 | 11,653 | 13,813 | 22,972 | 23,022 | 10,966 | 24,217 | 16,083 | 19,995 | 181,592 |
| Vermont | 1,313 | 1,941 | 2,037 | 1,897 | 1,597 | 1,245 | 1,526 | 1,553 | 2,053 | 2,367 | 2,417 | 2,045 | 21,991 |
| Virgin Islands | 134 | 139 | 76 | 158 | 171 | 159 | 114 | 112 | 126 | 99 | 120 | 128 | 1,536 |
| Virginia | 19,553 | 24,218 | 22,337 | 21,146 | 17,556 | 14,673 | 18,112 | 18,908 | 20,124 | 25,120 | 39,241 | 37,986 | 278,974 |
| Washington | 23,846 | 26,052 | 27,638 | 24,647 | 23,563 | 22,815 | 20,808 | 22,169 | 23,879 | 28,415 | 37,424 | 35,333 | 316,589 |
| West Virginia | 10,734 | 13,159 | 11,339 | 9,691 | 9,549 | 8,448 | 8,932 | 10,281 | 10,770 | 15,608 | 19,848 | 19,330 | 147,689 |
| Wisconsin | 11,426 | 15,311 | 19,440 | 16,588 | 11,354 | 9,671 | 9,292 | 13,495 | 17,435 | 20,469 | 23,927 | 18,411 | 186,819 |
| Wyoming | 2,966 | 3,748 | 4,079 | 3,695 | 3,597 | 3,550 | 3,296 | 3,601 | 3,980 | 4,017 | 6,114 | 6,612 | 49,255 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App324**

## NICS Firearm Background Checks: Month/Year by State

### Year 2007
January 1, 2007 - December 31, 2007

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 22,107 | 21,897 | 19,220 | 15,061 | 14,412 | 15,362 | 14,290 | 18,554 | 19,270 | 20,122 | 27,561 | 37,499 | 245,355 |
| Alaska | 2,904 | 3,534 | 4,048 | 4,285 | 3,939 | 3,770 | 3,825 | 4,683 | 3,770 | 4,943 | 4,149 | 5,754 | 49,604 |
| Arizona | 16,196 | 18,457 | 17,666 | 15,898 | 13,642 | 15,672 | 13,783 | 15,971 | 14,668 | 14,628 | 15,299 | 20,191 | 192,071 |
| Arkansas | 14,767 | 14,628 | 12,308 | 10,470 | 9,679 | 10,362 | 10,567 | 12,448 | 13,749 | 16,174 | 21,238 | 23,434 | 169,824 |
| California | 62,459 | 62,560 | 75,306 | 67,801 | 86,930 | 83,523 | 71,837 | 69,084 | 80,429 | 69,809 | 63,910 | 62,295 | 855,943 |
| Colorado | 17,007 | 18,301 | 20,070 | 16,769 | 17,002 | 15,466 | 15,460 | 18,573 | 17,525 | 19,661 | 20,057 | 25,846 | 221,737 |
| Connecticut | 9,512 | 8,647 | 10,704 | 9,443 | 8,611 | 8,568 | 8,092 | 9,379 | 8,539 | 11,697 | 11,433 | 11,487 | 116,112 |
| Delaware | 1,381 | 1,302 | 1,417 | 1,200 | 1,058 | 988 | 949 | 1,164 | 1,203 | 1,407 | 1,711 | 2,132 | 15,912 |
| District of Columbia | 72 | 1 | 4 | 2 | 45 | 4 | 2 | 1 | 1 | 3 | 0 | 1 | 136 |
| Florida | 35,013 | 36,440 | 37,115 | 32,101 | 32,487 | 32,629 | 29,624 | 33,844 | 32,416 | 35,495 | 38,887 | 50,129 | 426,180 |
| Georgia | 22,775 | 24,453 | 22,363 | 17,162 | 16,682 | 17,431 | 16,930 | 20,973 | 19,840 | 24,282 | 27,974 | 39,603 | 270,468 |
| Guam | 35 | 29 | 39 | 40 | 38 | 30 | 33 | 38 | 29 | 51 | 43 | 36 | 441 |
| Hawaii | 579 | 449 | 591 | 557 | 517 | 478 | 555 | 537 | 545 | 605 | 564 | 544 | 6,521 |
| Idaho | 6,575 | 8,013 | 8,474 | 7,423 | 6,860 | 6,624 | 5,947 | 7,816 | 8,633 | 8,479 | 8,189 | 10,864 | 93,897 |
| Illinois | 48,593 | 43,080 | 51,379 | 40,643 | 40,710 | 36,530 | 36,100 | 46,053 | 45,681 | 49,990 | 51,699 | 46,517 | 536,975 |
| Indiana | 15,975 | 15,211 | 17,992 | 13,262 | 11,144 | 12,081 | 11,365 | 15,086 | 13,835 | 16,123 | 21,950 | 22,840 | 186,864 |
| Iowa | 10,282 | 8,314 | 9,600 | 7,337 | 5,238 | 4,670 | 4,742 | 6,441 | 7,516 | 10,303 | 11,723 | 12,722 | 98,888 |
| Kansas | 8,995 | 9,938 | 10,918 | 7,868 | 6,411 | 6,544 | 6,167 | 9,111 | 9,027 | 10,621 | 12,434 | 13,468 | 111,502 |
| Kentucky | 125,604 | 127,538 | 127,759 | 124,816 | 125,970 | 128,745 | 121,163 | 134,729 | 134,456 | 141,264 | 144,176 | 151,630 | 1,587,850 |
| Louisiana | 16,371 | 15,442 | 14,807 | 11,666 | 11,245 | 12,485 | 13,055 | 17,062 | 17,399 | 22,007 | 23,972 | 32,690 | 208,201 |
| Maine | 3,535 | 3,333 | 4,241 | 3,809 | 3,111 | 3,058 | 3,264 | 4,143 | 5,754 | 7,652 | 4,867 | 4,512 | 51,279 |
| Mariana Islands | 0 | 9 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11 |
| Maryland | 6,505 | 7,355 | 7,439 | 6,449 | 5,346 | 5,140 | 5,093 | 6,193 | 5,907 | 7,421 | 8,603 | 8,798 | 80,249 |
| Massachusetts | 15,028 | 13,668 | 15,587 | 13,968 | 14,890 | 13,681 | 13,792 | 14,955 | 13,517 | 14,084 | 12,353 | 9,923 | 165,446 |
| Michigan | 26,569 | 26,009 | 30,605 | 25,082 | 20,746 | 18,603 | 19,681 | 23,941 | 26,740 | 30,573 | 32,264 | 31,038 | 311,851 |
| Minnesota | 20,147 | 17,475 | 23,521 | 20,894 | 16,077 | 15,117 | 15,254 | 22,098 | 27,033 | 29,453 | 19,561 | 21,456 | 248,086 |
| Mississippi | 14,657 | 15,023 | 12,448 | 9,443 | 9,182 | 9,847 | 10,305 | 13,747 | 12,883 | 16,126 | 23,488 | 28,149 | 175,298 |
| Missouri | 18,806 | 22,320 | 23,960 | 20,783 | 18,594 | 17,502 | 15,675 | 22,546 | 24,671 | 28,608 | 27,415 | 33,205 | 274,085 |
| Montana | 5,808 | 6,563 | 7,617 | 7,350 | 6,747 | 6,535 | 5,735 | 7,989 | 9,249 | 10,328 | 7,067 | 9,367 | 90,355 |
| Nebraska | 4,225 | 4,133 | 4,390 | 3,524 | 2,944 | 2,726 | 2,808 | 4,202 | 4,420 | 5,767 | 5,909 | 6,994 | 52,042 |
| Nevada | 5,517 | 5,915 | 6,704 | 5,603 | 5,583 | 5,613 | 4,783 | 5,900 | 5,308 | 5,193 | 5,943 | 8,214 | 70,276 |
| New Hampshire | 5,357 | 4,960 | 5,626 | 5,642 | 5,013 | 4,515 | 4,654 | 5,159 | 6,454 | 6,671 | 5,870 | 5,189 | 65,110 |
| New Jersey | 2,901 | 2,914 | 3,371 | 2,714 | 2,655 | 2,833 | 2,535 | 2,898 | 2,822 | 3,317 | 3,788 | 3,664 | 36,412 |
| New Mexico | 7,431 | 8,578 | 8,115 | 7,153 | 6,704 | 7,087 | 6,283 | 7,608 | 7,324 | 8,080 | 8,137 | 10,804 | 93,304 |
| New York | 17,343 | 15,750 | 18,217 | 17,377 | 14,925 | 13,268 | 14,011 | 16,020 | 20,361 | 21,928 | 21,903 | 21,071 | 212,174 |
| North Carolina | 26,262 | 26,192 | 23,536 | 18,434 | 18,741 | 18,412 | 17,804 | 23,387 | 21,688 | 25,975 | 30,995 | 37,789 | 289,215 |
| North Dakota | 3,028 | 2,871 | 3,335 | 3,190 | 2,627 | 2,304 | 2,425 | 3,360 | 4,725 | 6,112 | 4,245 | 4,089 | 42,311 |
| Ohio | 27,085 | 27,058 | 31,297 | 25,827 | 21,922 | 21,873 | 21,109 | 22,367 | 24,682 | 27,937 | 36,449 | 38,508 | 326,114 |
| Oklahoma | 14,180 | 17,968 | 17,015 | 14,058 | 12,662 | 12,576 | 11,804 | 15,754 | 14,220 | 17,206 | 18,591 | 23,047 | 189,081 |
| Oregon | 12,099 | 13,573 | 15,445 | 13,626 | 11,473 | 12,120 | 10,238 | 12,185 | 15,174 | 12,715 | 13,988 | 19,993 | 162,629 |
| Pennsylvania | 45,570 | 43,391 | 55,043 | 45,337 | 38,977 | 40,403 | 38,988 | 47,292 | 45,849 | 52,339 | 55,819 | 53,595 | 562,603 |
| Puerto Rico | 704 | 577 | 781 | 529 | 607 | 788 | 652 | 806 | 709 | 745 | 608 | 719 | 8,225 |
| Rhode Island | 885 | 896 | 1,024 | 901 | 795 | 717 | 668 | 765 | 796 | 911 | 917 | 947 | 10,222 |
| South Carolina | 12,338 | 13,575 | 12,667 | 9,983 | 9,971 | 9,537 | 9,492 | 12,145 | 11,348 | 13,199 | 14,989 | 20,889 | 150,133 |
| South Dakota | 3,628 | 3,737 | 4,246 | 3,547 | 2,942 | 2,920 | 2,901 | 4,538 | 5,961 | 7,768 | 5,738 | 6,087 | 54,013 |
| Tennessee | 20,523 | 22,518 | 19,720 | 15,480 | 14,140 | 15,879 | 15,507 | 19,077 | 17,923 | 20,691 | 25,157 | 35,126 | 241,741 |
| Texas | 59,667 | 66,035 | 62,956 | 55,648 | 54,111 | 51,525 | 54,030 | 71,566 | 66,240 | 66,672 | 72,670 | 102,476 | 783,596 |
| Utah | 8,448 | 8,982 | 10,094 | 8,845 | 8,632 | 9,135 | 6,093 | 10,260 | 13,289 | 12,726 | 14,503 | 16,044 | 127,051 |
| Vermont | 1,290 | 1,771 | 1,933 | 1,742 | 1,342 | 1,137 | 1,272 | 1,475 | 1,999 | 2,253 | 1,956 | 1,781 | 19,951 |
| Virgin Islands | 169 | 140 | 195 | 134 | 117 | 94 | 138 | 76 | 144 | 133 | 76 | 45 | 1,461 |
| Virginia | 19,338 | 18,803 | 21,075 | 16,807 | 14,956 | 14,428 | 15,949 | 21,691 | 22,282 | 20,575 | 24,828 | 30,806 | 241,538 |
| Washington | 21,114 | 23,241 | 25,271 | 23,256 | 21,372 | 20,378 | 18,898 | 22,167 | 22,670 | 25,799 | 23,766 | 28,224 | 276,156 |
| West Virginia | 10,363 | 11,339 | 11,331 | 9,170 | 7,754 | 8,040 | 8,144 | 10,169 | 10,916 | 13,245 | 16,175 | 15,750 | 132,396 |
| Wisconsin | 12,821 | 15,219 | 19,964 | 15,198 | 10,065 | 8,977 | 9,246 | 14,391 | 18,080 | 20,366 | 19,774 | 16,506 | 180,607 |
| Wyoming | 3,032 | 3,422 | 3,542 | 3,335 | 3,166 | 3,262 | 2,867 | 3,680 | 3,993 | 3,667 | 3,681 | 5,123 | 42,770 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS.  They do not represent the number of firearms sold.  Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App325**

## NICS Firearm Background Checks: Month/Year by State

### Year 2006
January 1, 2006 - December 31, 2006

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 21,531 | 21,538 | 18,991 | 13,751 | 13,586 | 14,332 | 14,059 | 17,132 | 20,195 | 20,207 | 28,357 | 39,497 | 243,176 |
| Alaska | 2,804 | 3,347 | 3,916 | 4,057 | 3,692 | 3,665 | 3,790 | 4,587 | 3,978 | 4,420 | 3,636 | 5,145 | 47,037 |
| Arizona | 15,655 | 17,942 | 17,718 | 16,031 | 13,634 | 12,970 | 15,298 | 18,238 | 18,291 | 18,283 | 16,980 | 23,138 | 204,178 |
| Arkansas | 13,651 | 14,833 | 13,114 | 10,064 | 9,489 | 9,455 | 11,239 | 13,272 | 14,705 | 16,712 | 20,465 | 23,130 | 170,129 |
| California | 56,793 | 56,086 | 65,610 | 57,810 | 46,154 | 43,634 | 43,014 | 51,245 | 45,311 | 45,861 | 48,401 | 57,901 | 617,820 |
| Colorado | 16,176 | 17,483 | 19,787 | 15,906 | 14,543 | 14,451 | 14,434 | 18,582 | 18,384 | 19,853 | 20,853 | 24,297 | 214,749 |
| Connecticut | 8,167 | 8,294 | 9,929 | 7,842 | 7,424 | 7,367 | 6,615 | 7,435 | 7,583 | 8,598 | 8,808 | 9,554 | 97,616 |
| Delaware | 1,368 | 1,330 | 1,413 | 1,091 | 1,124 | 1,013 | 887 | 1,126 | 1,357 | 1,585 | 1,997 | 2,407 | 16,698 |
| District of Columbia | 5 | 209 | 7 | 5 | 1 | 5 | 0 | 6 | 1 | 2 | 3 | 8 | 252 |
| Florida | 34,365 | 34,987 | 35,401 | 30,047 | 29,154 | 28,963 | 27,812 | 32,099 | 31,977 | 35,579 | 40,416 | 50,928 | 411,728 |
| Georgia | 31,245 | 32,217 | 30,734 | 22,267 | 21,801 | 23,212 | 16,505 | 20,404 | 21,196 | 24,715 | 26,500 | 41,105 | 311,901 |
| Guam | 25 | 29 | 25 | 19 | 25 | 25 | 30 | 29 | 26 | 28 | 42 | 45 | 348 |
| Hawaii | 696 | 750 | 858 | 679 | 653 | 706 | 622 | 632 | 552 | 499 | 464 | 477 | 7,588 |
| Idaho | 6,262 | 7,203 | 7,753 | 6,898 | 6,389 | 6,262 | 5,875 | 7,591 | 9,503 | 9,046 | 7,686 | 10,550 | 91,018 |
| Illinois | 41,000 | 50,584 | 42,644 | 42,889 | 40,427 | 35,893 | 32,176 | 47,203 | 46,972 | 49,208 | 48,006 | 50,696 | 527,698 |
| Indiana | 15,791 | 16,975 | 17,652 | 12,413 | 10,675 | 10,988 | 10,460 | 13,879 | 15,012 | 16,273 | 21,605 | 23,932 | 185,655 |
| Iowa | 10,167 | 8,725 | 10,391 | 6,654 | 5,339 | 4,817 | 4,425 | 6,020 | 8,334 | 10,576 | 11,866 | 14,116 | 101,430 |
| Kansas | 9,270 | 8,796 | 9,700 | 7,022 | 6,199 | 5,773 | 6,005 | 7,937 | 9,611 | 10,856 | 12,348 | 15,626 | 109,143 |
| Kentucky | 19,922 | 23,169 | 20,689 | 20,703 | 17,563 | 14,936 | 58,454 | 113,059 | 120,706 | 121,114 | 126,127 | 135,157 | 791,599 |
| Louisiana | 18,240 | 17,140 | 16,158 | 11,967 | 11,543 | 12,913 | 13,336 | 16,602 | 19,080 | 21,416 | 22,535 | 31,246 | 212,176 |
| Maine | 3,559 | 3,961 | 4,676 | 3,779 | 3,091 | 3,053 | 2,865 | 4,024 | 5,791 | 7,607 | 5,218 | 5,482 | 53,106 |
| Mariana Islands | 0 | 0 | 4 | 0 | 1 | 0 | 3 | 0 | 1 | 4 | 2 | 11 | 26 |
| Maryland | 6,726 | 7,199 | 7,116 | 5,596 | 4,970 | 5,279 | 4,753 | 6,209 | 6,598 | 7,946 | 9,812 | 10,003 | 82,207 |
| Massachusetts | 10,578 | 9,873 | 12,696 | 10,479 | 9,723 | 10,599 | 8,906 | 11,886 | 12,414 | 13,508 | 12,912 | 13,574 | 137,148 |
| Michigan | 27,823 | 29,614 | 34,002 | 25,756 | 22,708 | 19,382 | 18,924 | 23,703 | 30,089 | 31,582 | 33,698 | 35,147 | 332,428 |
| Minnesota | 17,117 | 19,535 | 23,372 | 19,793 | 15,366 | 14,368 | 15,253 | 21,345 | 28,160 | 27,809 | 19,741 | 22,853 | 244,712 |
| Mississippi | 15,434 | 15,159 | 12,844 | 9,356 | 8,991 | 9,223 | 9,831 | 13,709 | 14,707 | 16,285 | 24,460 | 29,088 | 179,087 |
| Missouri | 18,060 | 19,757 | 19,757 | 15,701 | 13,531 | 13,204 | 12,860 | 18,467 | 19,785 | 23,995 | 24,345 | 30,912 | 230,374 |
| Montana | 6,064 | 6,716 | 7,596 | 6,956 | 6,468 | 6,335 | 5,688 | 7,194 | 8,996 | 10,086 | 6,639 | 9,032 | 87,770 |
| Nebraska | 4,377 | 3,994 | 4,138 | 3,252 | 2,673 | 2,513 | 2,525 | 3,650 | 4,597 | 5,660 | 6,602 | 7,240 | 51,221 |
| Nevada | 6,015 | 6,277 | 7,354 | 5,903 | 5,271 | 5,175 | 5,132 | 6,331 | 5,514 | 5,839 | 6,011 | 8,141 | 72,963 |
| New Hampshire | 4,757 | 4,903 | 6,003 | 5,370 | 4,405 | 4,428 | 3,790 | 4,915 | 5,993 | 6,493 | 5,816 | 6,286 | 63,159 |
| New Jersey | 2,975 | 2,860 | 3,626 | 3,003 | 2,866 | 2,824 | 2,353 | 2,744 | 2,854 | 3,323 | 3,826 | 4,064 | 37,318 |
| New Mexico | 6,831 | 8,065 | 8,084 | 6,659 | 5,820 | 6,972 | 6,371 | 7,662 | 7,585 | 7,863 | 7,867 | 10,542 | 90,321 |
| New York | 13,605 | 13,155 | 14,763 | 13,118 | 13,227 | 12,990 | 11,791 | 14,746 | 21,106 | 23,039 | 23,232 | 24,243 | 199,015 |
| North Carolina | 26,341 | 26,722 | 25,428 | 17,609 | 17,722 | 17,828 | 17,174 | 21,914 | 22,525 | 26,424 | 30,759 | 39,578 | 290,024 |
| North Dakota | 2,664 | 2,624 | 3,179 | 2,803 | 2,178 | 2,335 | 2,366 | 3,470 | 4,414 | 5,308 | 4,208 | 3,887 | 39,436 |
| Ohio | 25,617 | 30,321 | 31,646 | 24,077 | 21,304 | 20,468 | 18,476 | 21,898 | 26,050 | 27,343 | 37,218 | 40,714 | 325,132 |
| Oklahoma | 15,734 | 17,799 | 15,640 | 13,728 | 11,746 | 12,209 | 11,421 | 15,002 | 15,855 | 17,170 | 19,018 | 25,419 | 190,741 |
| Oregon | 12,235 | 13,341 | 15,681 | 14,064 | 11,344 | 11,635 | 10,303 | 12,108 | 16,005 | 12,812 | 14,211 | 19,966 | 163,705 |
| Pennsylvania | 39,264 | 41,779 | 50,469 | 39,155 | 34,441 | 33,260 | 31,458 | 38,133 | 46,540 | 49,449 | 56,941 | 59,565 | 520,454 |
| Puerto Rico | 671 | 648 | 758 | 610 | 659 | 770 | 692 | 660 | 775 | 790 | 758 | 682 | 8,473 |
| Rhode Island | 848 | 839 | 1,017 | 772 | 783 | 659 | 632 | 703 | 836 | 860 | 933 | 1,054 | 9,936 |
| South Carolina | 12,853 | 13,668 | 12,430 | 9,208 | 8,947 | 9,886 | 9,162 | 11,399 | 12,146 | 12,703 | 15,689 | 20,513 | 148,604 |
| South Dakota | 3,838 | 4,173 | 4,217 | 3,470 | 2,727 | 2,807 | 2,875 | 3,871 | 5,783 | 7,123 | 5,777 | 6,014 | 52,675 |
| Tennessee | 22,646 | 23,568 | 22,220 | 16,863 | 18,450 | 18,561 | 16,324 | 20,437 | 18,768 | 19,969 | 25,351 | 35,319 | 258,500 |
| Texas | 64,220 | 63,683 | 56,992 | 49,767 | 49,790 | 51,519 | 52,276 | 65,069 | 71,198 | 67,245 | 73,251 | 105,226 | 770,236 |
| Utah | 7,009 | 8,535 | 8,736 | 7,450 | 6,597 | 6,865 | 7,267 | 8,103 | 9,502 | 8,973 | 10,696 | 16,920 | 106,653 |
| Vermont | 1,226 | 1,908 | 2,091 | 1,766 | 1,261 | 1,197 | 1,019 | 1,415 | 2,148 | 2,326 | 2,153 | 2,203 | 20,713 |
| Virgin Islands | 15 | 32 | 27 | 24 | 105 | 39 | 198 | 185 | 139 | 131 | 155 | 153 | 1,203 |
| Virginia | 19,217 | 20,005 | 20,222 | 21,203 | 14,838 | 16,291 | 15,635 | 16,139 | 18,200 | 20,120 | 25,763 | 31,229 | 238,862 |
| Washington | 19,862 | 21,384 | 23,090 | 20,208 | 19,819 | 19,451 | 17,023 | 21,053 | 22,308 | 24,436 | 20,995 | 25,758 | 255,387 |
| West Virginia | 10,645 | 12,131 | 11,814 | 9,084 | 7,988 | 8,047 | 7,632 | 8,732 | 12,569 | 13,915 | 17,319 | 18,049 | 137,925 |
| Wisconsin | 12,780 | 16,305 | 19,640 | 15,178 | 10,358 | 8,999 | 9,068 | 13,136 | 20,250 | 22,311 | 21,432 | 19,771 | 189,228 |
| Wyoming | 3,197 | 3,308 | 3,462 | 3,357 | 2,964 | 3,012 | 2,780 | 3,387 | 4,209 | 3,814 | 3,695 | 5,191 | 42,376 |

NOTE: These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

# NICS Firearm Background Checks:
## Month/Year by State

## Year 2005
January 1, 2005 - December 31, 2005

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 19,735 | 19,837 | 17,914 | 14,099 | 12,321 | 13,327 | 13,127 | 15,538 | 20,197 | 20,520 | 27,894 | 41,364 | 235,873 |
| Alaska | 2,373 | 2,992 | 3,562 | 3,843 | 3,353 | 3,159 | 3,645 | 4,622 | 3,912 | 4,755 | 3,510 | 4,788 | 44,514 |
| Arizona | 13,064 | 15,263 | 14,747 | 13,659 | 11,856 | 11,243 | 12,065 | 14,352 | 15,856 | 16,169 | 15,342 | 23,033 | 176,649 |
| Arkansas | 12,964 | 14,585 | 12,240 | 10,027 | 7,846 | 9,550 | 9,374 | 11,586 | 14,707 | 15,576 | 20,134 | 25,412 | 164,001 |
| California | 44,278 | 46,095 | 51,971 | 49,679 | 48,571 | 47,509 | 47,223 | 52,317 | 54,442 | 51,604 | 54,120 | 63,213 | 611,022 |
| Colorado | 17,343 | 16,624 | 18,340 | 16,405 | 13,666 | 13,691 | 13,416 | 16,287 | 17,457 | 18,924 | 19,465 | 24,669 | 206,287 |
| Connecticut | 7,314 | 8,533 | 9,892 | 9,000 | 7,579 | 7,287 | 6,770 | 7,387 | 8,148 | 8,620 | 8,546 | 8,523 | 97,599 |
| Delaware | 1,217 | 1,278 | 1,421 | 1,260 | 1,066 | 985 | 979 | 1,250 | 1,420 | 1,680 | 1,980 | 2,585 | 17,121 |
| District of Columbia | 1 | 0 | 1 | 1 | 2 | 3 | 3 | 1 | 1 | 2 | 2 | 3 | 20 |
| Florida | 28,682 | 29,067 | 28,137 | 27,626 | 24,404 | 25,239 | 23,984 | 28,295 | 31,383 | 34,047 | 37,841 | 51,940 | 370,645 |
| Georgia | 18,866 | 21,168 | 19,820 | 14,884 | 13,355 | 13,572 | 13,979 | 16,074 | 18,904 | 22,800 | 31,933 | 52,460 | 257,815 |
| Guam | 31 | 44 | 37 | 42 | 28 | 32 | 29 | 38 | 32 | 31 | 30 | 34 | 408 |
| Hawaii | 447 | 511 | 681 | 659 | 574 | 617 | 608 | 643 | 695 | 727 | 706 | 707 | 7,575 |
| Idaho | 5,174 | 6,837 | 6,635 | 6,360 | 5,431 | 5,685 | 5,034 | 6,561 | 8,182 | 8,066 | 6,660 | 9,718 | 80,343 |
| Illinois | 59,821 | 47,431 | 51,660 | 31,934 | 31,098 | 33,367 | 33,135 | 46,717 | 48,703 | 41,194 | 42,416 | 59,658 | 527,134 |
| Indiana | 13,830 | 15,683 | 16,154 | 13,110 | 9,965 | 10,172 | 9,921 | 12,306 | 12,692 | 16,567 | 19,068 | 22,781 | 172,249 |
| Iowa | 9,621 | 8,945 | 9,945 | 6,734 | 5,192 | 4,689 | 4,459 | 5,831 | 7,510 | 10,112 | 12,280 | 15,026 | 100,344 |
| Kansas | 7,838 | 8,075 | 7,858 | 6,461 | 5,070 | 5,071 | 5,229 | 7,402 | 8,410 | 10,030 | 12,536 | 14,331 | 98,311 |
| Kentucky | 19,100 | 21,806 | 19,902 | 16,961 | 12,669 | 13,457 | 14,152 | 17,018 | 18,361 | 20,809 | 25,200 | 33,154 | 232,589 |
| Louisiana | 12,968 | 13,897 | 12,256 | 10,365 | 8,895 | 9,898 | 10,106 | 13,554 | 26,526 | 25,247 | 27,168 | 37,074 | 207,954 |
| Maine | 3,100 | 3,422 | 3,857 | 3,893 | 3,186 | 2,785 | 3,005 | 3,870 | 5,697 | 7,664 | 4,721 | 5,119 | 50,319 |
| Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 5,583 | 6,788 | 7,066 | 5,953 | 4,787 | 4,795 | 4,851 | 5,970 | 6,881 | 7,843 | 10,141 | 10,289 | 80,947 |
| Massachusetts | 9,914 | 8,708 | 10,764 | 8,892 | 7,969 | 7,458 | 7,263 | 8,717 | 8,699 | 9,139 | 8,904 | 8,920 | 105,347 |
| Michigan | 24,890 | 29,158 | 33,963 | 28,321 | 22,581 | 20,251 | 19,723 | 23,858 | 29,906 | 32,181 | 37,692 | 34,511 | 337,035 |
| Minnesota | 13,002 | 15,838 | 20,694 | 17,565 | 13,083 | 14,731 | 14,509 | 19,775 | 25,004 | 28,407 | 19,891 | 21,666 | 224,165 |
| Mississippi | 12,228 | 13,610 | 10,450 | 8,709 | 7,473 | 7,523 | 8,396 | 10,134 | 15,027 | 18,258 | 24,836 | 31,069 | 167,713 |
| Missouri | 16,307 | 18,694 | 18,007 | 16,086 | 11,314 | 12,031 | 11,941 | 16,316 | 16,632 | 22,597 | 24,118 | 30,198 | 214,241 |
| Montana | 5,317 | 6,594 | 6,987 | 7,076 | 5,906 | 6,024 | 5,557 | 6,836 | 8,370 | 10,170 | 6,552 | 8,671 | 84,060 |
| Nebraska | 3,830 | 3,718 | 3,769 | 3,106 | 2,485 | 2,454 | 2,466 | 3,420 | 4,328 | 5,530 | 5,774 | 7,292 | 48,172 |
| Nevada | 4,333 | 4,961 | 5,330 | 4,491 | 4,050 | 3,937 | 3,939 | 5,064 | 4,884 | 5,806 | 6,400 | 9,532 | 62,727 |
| New Hampshire | 4,239 | 4,109 | 4,709 | 4,934 | 4,203 | 3,562 | 3,719 | 4,294 | 5,164 | 6,061 | 5,151 | 5,616 | 55,761 |
| New Jersey | 2,893 | 2,870 | 3,464 | 2,851 | 2,689 | 2,488 | 2,545 | 2,745 | 2,843 | 3,200 | 3,823 | 4,171 | 36,582 |
| New Mexico | 6,215 | 7,668 | 7,361 | 6,201 | 5,345 | 5,457 | 5,556 | 6,507 | 6,878 | 7,308 | 7,362 | 10,193 | 82,051 |
| New York | 11,478 | 11,978 | 12,567 | 12,416 | 9,606 | 8,153 | 9,342 | 11,401 | 16,273 | 19,351 | 18,353 | 17,863 | 158,781 |
| North Carolina | 21,951 | 23,501 | 21,719 | 17,206 | 15,489 | 16,331 | 16,034 | 20,772 | 22,555 | 25,490 | 29,392 | 41,087 | 271,527 |
| North Dakota | 2,164 | 2,483 | 2,863 | 2,598 | 2,277 | 2,198 | 2,143 | 2,953 | 4,012 | 5,305 | 3,359 | 3,645 | 36,000 |
| Ohio | 23,709 | 28,879 | 29,211 | 25,460 | 20,443 | 19,225 | 19,034 | 22,438 | 23,674 | 26,799 | 35,670 | 38,617 | 313,159 |
| Oklahoma | 14,224 | 16,811 | 13,650 | 13,177 | 10,812 | 10,360 | 10,887 | 13,888 | 14,354 | 17,076 | 20,091 | 26,701 | 182,031 |
| Oregon | 11,207 | 13,190 | 14,393 | 14,033 | 10,971 | 11,126 | 9,426 | 11,245 | 15,740 | 13,020 | 13,682 | 20,012 | 158,045 |
| Pennsylvania | 34,236 | 39,452 | 48,806 | 40,417 | 32,401 | 31,555 | 32,467 | 35,736 | 41,556 | 44,662 | 51,365 | 50,324 | 482,977 |
| Puerto Rico | 709 | 725 | 780 | 733 | 668 | 723 | 699 | 863 | 865 | 733 | 748 | 742 | 8,988 |
| Rhode Island | 831 | 774 | 1,018 | 831 | 693 | 567 | 620 | 661 | 835 | 902 | 945 | 972 | 9,649 |
| South Carolina | 10,893 | 12,921 | 12,183 | 9,497 | 8,057 | 8,340 | 8,464 | 10,799 | 11,749 | 12,307 | 15,166 | 21,435 | 141,811 |
| South Dakota | 3,268 | 3,970 | 3,878 | 3,678 | 2,845 | 2,693 | 2,866 | 3,804 | 5,096 | 7,305 | 5,338 | 6,027 | 50,768 |
| Tennessee | 20,278 | 22,338 | 21,708 | 17,726 | 13,941 | 15,910 | 19,116 | 21,483 | 19,482 | 19,685 | 25,073 | 36,650 | 253,450 |
| Texas | 55,465 | 57,945 | 54,254 | 47,732 | 46,125 | 46,327 | 48,647 | 62,684 | 68,955 | 70,654 | 74,176 | 105,829 | 738,793 |
| Utah | 6,148 | 6,667 | 7,436 | 6,493 | 5,013 | 5,737 | 4,982 | 6,005 | 8,543 | 8,182 | 8,872 | 14,903 | 88,981 |
| Vermont | 1,100 | 1,651 | 1,739 | 1,715 | 1,170 | 993 | 1,073 | 1,276 | 1,900 | 2,203 | 1,908 | 1,879 | 18,607 |
| Virgin Islands | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | 23 | 40 |
| Virginia | 16,412 | 18,371 | 19,384 | 17,161 | 13,528 | 12,382 | 14,752 | 15,299 | 17,952 | 20,664 | 24,818 | 31,002 | 221,725 |
| Washington | 14,780 | 17,687 | 18,507 | 16,430 | 14,773 | 15,223 | 15,110 | 17,770 | 21,271 | 23,060 | 19,780 | 25,168 | 219,559 |
| West Virginia | 9,740 | 11,980 | 11,682 | 9,691 | 7,282 | 7,172 | 7,650 | 9,286 | 11,364 | 13,536 | 17,108 | 17,176 | 133,667 |
| Wisconsin | 10,996 | 15,796 | 19,334 | 16,220 | 10,349 | 8,849 | 9,213 | 12,809 | 18,423 | 21,909 | 20,572 | 18,543 | 183,013 |
| Wyoming | 2,626 | 3,175 | 3,118 | 3,021 | 2,531 | 2,671 | 2,386 | 3,016 | 3,761 | 3,373 | 3,170 | 5,063 | 37,911 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

App327

## NICS Firearm Background Checks: Month/Year by State

### Year 2004
January 1, 2004 - December 31, 2004

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 20,486 | 20,266 | 17,249 | 13,947 | 12,130 | 13,032 | 14,074 | 16,287 | 17,444 | 21,176 | 26,699 | 37,207 | 229,997 |
| Alaska | 2,208 | 2,808 | 3,235 | 3,722 | 3,152 | 2,925 | 3,345 | 4,031 | 3,633 | 4,459 | 3,069 | 3,917 | 40,504 |
| Arizona | 12,922 | 14,127 | 13,258 | 12,558 | 11,245 | 10,589 | 11,040 | 11,904 | 13,086 | 13,582 | 12,565 | 18,843 | 155,719 |
| Arkansas | 13,029 | 14,016 | 11,743 | 9,213 | 8,050 | 8,813 | 9,360 | 11,751 | 13,995 | 16,814 | 19,591 | 21,991 | 158,366 |
| California | 43,460 | 40,636 | 44,793 | 43,369 | 42,434 | 46,403 | 43,563 | 46,906 | 45,463 | 45,571 | 45,685 | 60,560 | 548,843 |
| Colorado | 14,192 | 14,119 | 16,334 | 14,576 | 12,521 | 12,330 | 13,110 | 15,195 | 17,735 | 22,001 | 17,448 | 24,630 | 194,191 |
| Connecticut | 9,205 | 9,993 | 10,574 | 8,450 | 7,065 | 7,486 | 7,245 | 7,356 | 7,721 | 8,925 | 7,890 | 9,006 | 100,916 |
| Delaware | 1,218 | 1,258 | 1,233 | 1,144 | 889 | 926 | 961 | 1,210 | 1,418 | 1,675 | 2,032 | 2,460 | 16,424 |
| District of Columbia | 0 | 1 | 4 | 2 | 2 | 0 | 1 | 0 | 4 | 0 | 0 | 0 | 14 |
| Florida | 26,510 | 26,760 | 25,583 | 22,389 | 20,687 | 21,304 | 21,187 | 22,860 | 21,139 | 31,051 | 33,432 | 45,122 | 318,024 |
| Georgia | 20,161 | 21,660 | 18,605 | 14,456 | 12,840 | 13,483 | 14,770 | 16,875 | 18,190 | 23,236 | 22,750 | 35,177 | 232,203 |
| Guam | 31 | 38 | 30 | 44 | 18 | 29 | 42 | 31 | 35 | 42 | 52 | 47 | 439 |
| Hawaii | 546 | 496 | 776 | 705 | 546 | 602 | 610 | 639 | 583 | 611 | 572 | 612 | 7,298 |
| Idaho | 5,156 | 6,102 | 6,787 | 6,207 | 5,511 | 4,794 | 5,165 | 5,810 | 7,700 | 7,776 | 6,131 | 8,414 | 75,553 |
| Illinois | 56,792 | 51,698 | 51,428 | 44,701 | 35,814 | 40,789 | 35,221 | 45,720 | 42,102 | 55,301 | 65,211 | 65,640 | 590,417 |
| Indiana | 14,800 | 15,525 | 16,306 | 12,091 | 9,872 | 10,336 | 10,325 | 13,324 | 13,109 | 18,095 | 20,618 | 22,119 | 176,520 |
| Iowa | 9,542 | 8,155 | 9,574 | 6,552 | 4,809 | 4,560 | 4,688 | 5,980 | 7,925 | 10,823 | 11,336 | 14,573 | 98,517 |
| Kansas | 8,278 | 8,417 | 8,254 | 6,650 | 4,995 | 5,267 | 5,569 | 7,075 | 7,890 | 10,937 | 12,394 | 13,281 | 99,007 |
| Kentucky | 19,968 | 21,118 | 18,647 | 16,778 | 12,385 | 13,113 | 14,663 | 17,314 | 18,802 | 23,503 | 26,223 | 32,460 | 234,974 |
| Louisiana | 13,432 | 13,736 | 12,159 | 9,768 | 8,793 | 9,497 | 10,579 | 13,080 | 15,586 | 19,403 | 19,747 | 26,641 | 172,421 |
| Maine | 3,373 | 3,309 | 4,268 | 3,495 | 2,979 | 2,937 | 3,252 | 4,000 | 6,141 | 8,223 | 5,351 | 5,337 | 52,665 |
| Mariana Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 5,159 | 6,478 | 6,345 | 5,425 | 4,098 | 4,715 | 4,942 | 5,900 | 6,887 | 7,932 | 10,069 | 9,531 | 77,481 |
| Massachusetts | 9,772 | 8,699 | 10,213 | 9,429 | 7,766 | 8,088 | 8,701 | 8,845 | 9,547 | 9,922 | 9,584 | 12,430 | 112,996 |
| Michigan | 24,467 | 26,973 | 31,287 | 27,351 | 22,636 | 21,367 | 21,704 | 26,368 | 31,051 | 36,516 | 36,273 | 36,425 | 342,418 |
| Minnesota | 15,236 | 16,547 | 22,108 | 18,774 | 14,638 | 14,621 | 13,973 | 18,607 | 26,037 | 28,415 | 18,628 | 20,262 | 227,846 |
| Mississippi | 12,365 | 13,855 | 10,511 | 8,706 | 8,104 | 7,894 | 8,779 | 11,411 | 11,372 | 14,717 | 20,374 | 24,206 | 152,294 |
| Missouri | 16,074 | 17,076 | 17,844 | 15,981 | 11,436 | 11,619 | 12,484 | 15,721 | 16,876 | 23,087 | 23,241 | 27,877 | 209,316 |
| Montana | 5,428 | 6,509 | 6,886 | 6,867 | 6,249 | 6,029 | 5,726 | 6,807 | 8,286 | 10,075 | 6,277 | 8,406 | 83,545 |
| Nebraska | 3,489 | 3,257 | 3,504 | 2,832 | 2,540 | 2,528 | 2,690 | 3,676 | 4,499 | 6,106 | 6,105 | 7,210 | 48,436 |
| Nevada | 4,237 | 4,469 | 4,817 | 4,243 | 3,896 | 3,612 | 3,978 | 4,159 | 4,877 | 5,179 | 4,796 | 6,491 | 54,754 |
| New Hampshire | 4,449 | 4,314 | 5,322 | 4,894 | 3,797 | 3,647 | 4,143 | 4,340 | 5,360 | 6,204 | 5,077 | 5,244 | 56,791 |
| New Jersey | 3,180 | 2,981 | 3,433 | 3,084 | 2,482 | 2,468 | 2,373 | 2,796 | 2,983 | 3,519 | 4,103 | 3,974 | 37,376 |
| New Mexico | 6,790 | 7,893 | 6,837 | 6,401 | 5,264 | 5,284 | 5,257 | 6,411 | 6,986 | 7,931 | 6,988 | 9,504 | 81,546 |
| New York | 10,198 | 10,565 | 13,372 | 12,391 | 8,938 | 8,630 | 9,185 | 11,732 | 17,011 | 20,235 | 19,705 | 18,260 | 160,222 |
| North Carolina | 23,794 | 25,119 | 23,684 | 18,815 | 15,522 | 15,936 | 16,397 | 23,935 | 22,304 | 24,972 | 28,490 | 37,512 | 276,480 |
| North Dakota | 2,141 | 2,239 | 2,661 | 2,541 | 2,256 | 1,981 | 2,135 | 2,796 | 3,825 | 5,179 | 3,297 | 3,639 | 34,690 |
| Ohio | 26,101 | 30,551 | 31,499 | 27,076 | 20,476 | 19,919 | 19,973 | 23,272 | 24,322 | 29,188 | 37,066 | 37,597 | 327,040 |
| Oklahoma | 14,758 | 16,590 | 13,570 | 12,820 | 10,224 | 10,337 | 10,916 | 12,935 | 13,706 | 16,290 | 18,383 | 22,659 | 173,188 |
| Oregon | 10,804 | 11,998 | 13,561 | 12,187 | 10,572 | 10,109 | 9,299 | 10,501 | 15,537 | 13,010 | 12,846 | 19,264 | 149,688 |
| Pennsylvania | 38,117 | 40,847 | 50,690 | 41,282 | 32,281 | 32,506 | 34,235 | 36,989 | 41,867 | 49,783 | 54,967 | 51,249 | 504,813 |
| Puerto Rico | 548 | 610 | 630 | 547 | 515 | 560 | 639 | 615 | 584 | 743 | 729 | 992 | 7,712 |
| Rhode Island | 831 | 799 | 1,015 | 793 | 721 | 735 | 664 | 684 | 851 | 986 | 985 | 990 | 10,054 |
| South Carolina | 10,061 | 11,262 | 9,952 | 7,790 | 6,883 | 7,092 | 7,496 | 9,468 | 10,732 | 11,543 | 12,811 | 19,063 | 124,153 |
| South Dakota | 3,202 | 3,685 | 3,650 | 3,250 | 2,884 | 2,879 | 3,020 | 3,976 | 5,341 | 7,385 | 5,218 | 5,833 | 50,323 |
| Tennessee | 18,923 | 19,565 | 18,284 | 13,966 | 12,681 | 13,387 | 15,025 | 18,110 | 18,642 | 21,146 | 24,583 | 35,089 | 229,401 |
| Texas | 56,561 | 55,899 | 50,057 | 46,175 | 41,897 | 41,498 | 44,473 | 57,014 | 64,339 | 61,431 | 63,937 | 89,714 | 672,995 |
| Utah | 5,223 | 6,382 | 6,241 | 5,528 | 5,184 | 5,068 | 5,537 | 6,256 | 7,432 | 7,309 | 7,484 | 12,323 | 79,967 |
| Vermont | 1,125 | 1,515 | 1,848 | 1,703 | 1,224 | 1,037 | 1,229 | 1,290 | 1,977 | 2,588 | 2,029 | 1,925 | 19,490 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 16,254 | 17,268 | 17,099 | 13,583 | 12,719 | 11,764 | 14,873 | 16,093 | 18,574 | 22,217 | 23,367 | 29,251 | 213,062 |
| Washington | 15,605 | 17,819 | 19,088 | 15,849 | 15,218 | 14,644 | 14,383 | 15,147 | 18,092 | 19,747 | 16,530 | 21,310 | 203,432 |
| West Virginia | 10,809 | 11,403 | 10,544 | 9,383 | 6,867 | 7,174 | 7,897 | 9,503 | 10,877 | 15,018 | 17,384 | 15,987 | 132,846 |
| Wisconsin | 12,078 | 15,590 | 19,197 | 15,981 | 10,699 | 9,055 | 9,639 | 13,542 | 18,953 | 23,097 | 20,830 | 18,436 | 187,097 |
| Wyoming | 2,550 | 2,884 | 2,965 | 2,815 | 2,372 | 2,544 | 2,450 | 2,672 | 3,560 | 3,133 | 2,987 | 4,495 | 35,427 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

**App328**

## NICS Firearm Background Checks: Month/Year by State

## Year 2003
January 1, 2003 - December 31, 2003

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 19,179 | 20,440 | 17,213 | 13,240 | 13,175 | 12,709 | 13,173 | 17,035 | 17,641 | 20,526 | 25,551 | 35,597 | 225,479 |
| Alaska | 2,899 | 2,931 | 2,759 | 3,166 | 2,745 | 2,704 | 2,911 | 3,915 | 3,150 | 4,110 | 2,506 | 3,263 | 37,059 |
| Arizona | 11,548 | 13,568 | 13,234 | 11,516 | 10,819 | 9,724 | 10,256 | 12,376 | 11,845 | 12,481 | 11,731 | 16,621 | 145,719 |
| Arkansas | 12,140 | 13,811 | 11,422 | 9,170 | 8,176 | 7,882 | 8,085 | 11,464 | 12,916 | 16,301 | 17,620 | 21,262 | 150,249 |
| California | 39,285 | 41,724 | 48,429 | 45,508 | 43,667 | 42,438 | 40,846 | 45,078 | 42,763 | 43,376 | 41,693 | 49,624 | 524,431 |
| Colorado | 13,874 | 15,067 | 15,687 | 13,153 | 13,048 | 13,193 | 12,002 | 16,323 | 15,308 | 17,450 | 15,438 | 20,714 | 181,257 |
| Connecticut | 7,761 | 7,900 | 9,597 | 8,253 | 7,860 | 7,265 | 7,741 | 7,756 | 8,025 | 10,710 | 8,320 | 9,379 | 100,567 |
| Delaware | 1,245 | 1,135 | 1,360 | 1,170 | 1,093 | 1,008 | 972 | 1,236 | 1,266 | 1,671 | 1,944 | 2,261 | 16,361 |
| District of Columbia | 1 | 0 | 2 | 1 | 0 | 0 | 3 | 0 | 0 | 1 | 1 | 2 | 11 |
| Florida | 24,477 | 25,659 | 25,487 | 21,214 | 20,763 | 20,222 | 19,990 | 24,348 | 23,621 | 26,637 | 27,481 | 38,282 | 298,181 |
| Georgia | 22,827 | 27,029 | 23,288 | 16,905 | 16,809 | 16,976 | 16,995 | 22,256 | 23,349 | 30,028 | 27,622 | 38,134 | 282,218 |
| Guam | 36 | 41 | 31 | 43 | 36 | 31 | 16 | 23 | 16 | 39 | 25 | 42 | 379 |
| Hawaii | 634 | 584 | 726 | 646 | 564 | 558 | 584 | 598 | 703 | 666 | 547 | 629 | 7,439 |
| Idaho | 5,490 | 6,017 | 7,171 | 5,898 | 5,362 | 4,867 | 4,844 | 6,021 | 7,691 | 7,470 | 5,504 | 8,334 | 74,669 |
| Illinois | 40,194 | 43,597 | 46,415 | 43,935 | 33,123 | 27,243 | 30,227 | 45,035 | 47,580 | 51,128 | 51,054 | 56,386 | 515,917 |
| Indiana | 12,210 | 13,569 | 14,360 | 15,798 | 15,645 | 14,414 | 11,507 | 12,531 | 13,720 | 17,872 | 20,023 | 22,204 | 183,853 |
| Iowa | 9,469 | 7,918 | 8,589 | 6,568 | 4,743 | 4,006 | 4,438 | 5,539 | 7,735 | 10,194 | 10,925 | 15,003 | 95,127 |
| Kansas | 8,389 | 8,099 | 8,450 | 6,371 | 5,156 | 5,008 | 4,955 | 7,634 | 8,004 | 10,264 | 11,940 | 13,095 | 97,365 |
| Kentucky | 18,608 | 21,067 | 18,342 | 15,413 | 14,032 | 12,708 | 13,348 | 18,267 | 17,307 | 23,222 | 23,773 | 30,782 | 226,869 |
| Louisiana | 13,823 | 13,942 | 12,808 | 9,360 | 9,408 | 9,410 | 10,481 | 14,049 | 16,515 | 20,286 | 19,197 | 26,414 | 175,693 |
| Maine | 2,926 | 3,099 | 3,980 | 3,594 | 3,194 | 2,659 | 2,903 | 4,202 | 5,938 | 8,319 | 5,166 | 4,917 | 50,897 |
| Mariana Islands | 2 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| Maryland | 6,851 | 6,717 | 6,938 | 6,242 | 5,019 | 4,917 | 4,605 | 5,649 | 5,837 | 7,520 | 9,184 | 8,791 | 78,270 |
| Massachusetts | 11,532 | 10,285 | 13,102 | 10,364 | 12,481 | 10,576 | 10,566 | 9,915 | 12,672 | 11,515 | 8,552 | 9,835 | 131,395 |
| Michigan | 25,766 | 27,025 | 30,012 | 25,693 | 21,821 | 19,730 | 20,248 | 24,232 | 33,495 | 38,240 | 36,733 | 39,166 | 342,161 |
| Minnesota | 12,952 | 14,891 | 19,557 | 16,978 | 15,674 | 16,844 | 15,858 | 20,094 | 27,540 | 29,185 | 19,386 | 20,769 | 229,728 |
| Mississippi | 12,472 | 13,657 | 11,064 | 8,174 | 8,148 | 7,679 | 8,382 | 12,311 | 11,430 | 15,046 | 19,331 | 23,183 | 150,877 |
| Missouri | 15,396 | 17,562 | 16,987 | 14,355 | 11,468 | 10,474 | 10,987 | 15,286 | 17,426 | 23,725 | 23,531 | 25,668 | 202,865 |
| Montana | 5,354 | 5,831 | 6,752 | 6,605 | 5,954 | 5,518 | 5,269 | 6,793 | 8,208 | 10,344 | 6,006 | 8,152 | 80,786 |
| Nebraska | 3,476 | 3,320 | 3,345 | 2,821 | 2,280 | 2,099 | 2,148 | 3,372 | 4,111 | 5,625 | 5,629 | 6,532 | 44,758 |
| Nevada | 3,789 | 4,022 | 5,029 | 3,835 | 3,693 | 3,151 | 3,505 | 4,369 | 3,756 | 4,330 | 4,176 | 5,777 | 49,432 |
| New Hampshire | 3,724 | 3,728 | 4,972 | 4,711 | 4,017 | 3,441 | 3,470 | 4,517 | 5,711 | 6,144 | 5,352 | 4,937 | 54,724 |
| New Jersey | 3,673 | 3,354 | 4,025 | 3,491 | 3,373 | 3,087 | 2,780 | 3,121 | 3,074 | 3,643 | 4,071 | 4,041 | 41,733 |
| New Mexico | 6,264 | 7,344 | 7,019 | 5,889 | 5,661 | 5,137 | 5,433 | 6,957 | 6,395 | 7,665 | 6,673 | 8,703 | 79,140 |
| New York | 10,516 | 11,406 | 13,245 | 12,154 | 10,359 | 9,404 | 8,745 | 10,499 | 14,408 | 17,338 | 17,038 | 15,719 | 150,831 |
| North Carolina | 21,983 | 23,950 | 21,147 | 17,066 | 15,734 | 15,887 | 15,547 | 21,568 | 20,031 | 26,582 | 27,707 | 37,286 | 264,488 |
| North Dakota | 1,960 | 2,083 | 2,501 | 2,375 | 2,170 | 1,929 | 1,894 | 2,838 | 4,086 | 4,971 | 3,288 | 3,298 | 33,393 |
| Ohio | 21,548 | 26,525 | 28,489 | 22,394 | 19,288 | 17,488 | 16,800 | 22,423 | 23,788 | 26,800 | 35,612 | 37,477 | 298,632 |
| Oklahoma | 13,362 | 15,749 | 13,211 | 11,771 | 10,286 | 9,650 | 9,998 | 14,009 | 12,886 | 16,248 | 18,023 | 22,358 | 167,551 |
| Oregon | 10,448 | 11,277 | 13,674 | 11,687 | 10,383 | 9,172 | 8,552 | 11,410 | 14,543 | 12,698 | 11,970 | 17,146 | 142,960 |
| Pennsylvania | 39,610 | 40,231 | 52,909 | 42,563 | 37,419 | 32,905 | 32,286 | 38,578 | 43,833 | 51,311 | 55,272 | 48,979 | 515,896 |
| Puerto Rico | 641 | 587 | 648 | 773 | 744 | 559 | 572 | 672 | 673 | 714 | 554 | 769 | 7,906 |
| Rhode Island | 790 | 803 | 875 | 831 | 737 | 625 | 689 | 733 | 811 | 955 | 915 | 896 | 9,660 |
| South Carolina | 10,160 | 11,483 | 10,149 | 7,527 | 7,531 | 7,510 | 7,181 | 10,259 | 9,906 | 11,100 | 11,422 | 17,124 | 121,352 |
| South Dakota | 3,171 | 3,417 | 3,650 | 2,889 | 2,720 | 2,601 | 2,652 | 3,919 | 5,165 | 7,271 | 4,911 | 5,317 | 47,683 |
| Tennessee | 18,157 | 21,746 | 18,543 | 13,387 | 13,286 | 13,571 | 13,434 | 18,585 | 16,340 | 18,831 | 22,810 | 31,093 | 219,783 |
| Texas | 54,023 | 59,258 | 56,761 | 44,287 | 43,876 | 42,514 | 45,602 | 64,983 | 63,737 | 65,970 | 60,660 | 86,604 | 688,275 |
| Utah | 4,345 | 5,519 | 5,273 | 4,668 | 4,530 | 6,157 | 4,223 | 5,376 | 6,529 | 6,534 | 6,606 | 10,747 | 70,507 |
| Vermont | 1,047 | 1,518 | 1,854 | 1,648 | 1,263 | 1,108 | 1,138 | 1,647 | 2,215 | 2,621 | 2,158 | 1,754 | 19,971 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 15,048 | 15,983 | 17,336 | 13,215 | 13,630 | 11,395 | 12,439 | 15,365 | 14,928 | 20,115 | 22,905 | 27,911 | 200,270 |
| Washington | 18,476 | 19,550 | 20,934 | 18,172 | 16,493 | 14,947 | 14,572 | 16,303 | 18,058 | 19,743 | 16,027 | 20,641 | 213,916 |
| West Virginia | 9,733 | 11,277 | 10,598 | 9,584 | 8,467 | 7,133 | 7,573 | 9,555 | 10,656 | 15,458 | 16,434 | 15,309 | 131,777 |
| Wisconsin | 11,173 | 13,885 | 17,626 | 15,527 | 10,513 | 9,258 | 9,442 | 13,592 | 20,542 | 24,314 | 22,696 | 20,026 | 188,594 |
| Wyoming | 2,425 | 2,773 | 2,613 | 2,460 | 2,450 | 2,289 | 2,165 | 2,699 | 3,422 | 3,062 | 2,699 | 4,127 | 33,184 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS.  They do not represent the number of firearms sold.  Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

# NICS Firearm Background Checks: Month/Year by State

## Year 2002
January 1, 2002 - December 31, 2002

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 18,235 | 18,976 | 17,140 | 12,967 | 13,040 | 12,603 | 12,674 | 17,453 | 17,961 | 19,568 | 26,757 | 33,634 | 221,008 |
| Alaska | 2,212 | 2,255 | 2,924 | 3,264 | 2,895 | 2,550 | 2,760 | 3,753 | 3,027 | 4,699 | 2,801 | 3,653 | 36,793 |
| Arizona | 11,443 | 12,418 | 12,161 | 10,516 | 10,489 | 9,260 | 10,056 | 13,140 | 12,274 | 13,141 | 12,430 | 14,932 | 142,260 |
| Arkansas | 12,226 | 13,724 | 12,332 | 9,702 | 8,448 | 8,030 | 8,666 | 11,892 | 12,525 | 16,176 | 19,391 | 20,312 | 153,424 |
| California | 58,768 | 56,796 | 58,116 | 55,856 | 58,303 | 51,886 | 54,488 | 56,621 | 52,881 | 52,756 | 54,868 | 73,051 | 684,390 |
| Colorado | 15,152 | 14,328 | 17,092 | 13,722 | 12,508 | 10,878 | 11,967 | 16,702 | 16,030 | 18,322 | 17,115 | 19,938 | 183,754 |
| Connecticut | 8,873 | 7,718 | 8,731 | 8,098 | 7,652 | 6,716 | 6,262 | 7,252 | 7,020 | 9,534 | 8,167 | 7,575 | 93,598 |
| Delaware | 1,249 | 1,219 | 1,279 | 1,084 | 1,030 | 890 | 971 | 1,262 | 1,330 | 1,778 | 2,067 | 2,229 | 16,388 |
| District of Columbia | 1 | 0 | 1 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| Florida | 23,336 | 25,202 | 23,455 | 20,162 | 19,847 | 20,361 | 19,510 | 23,710 | 22,695 | 26,362 | 28,505 | 35,703 | 288,848 |
| Georgia | 23,126 | 26,624 | 24,030 | 17,898 | 17,226 | 16,684 | 17,014 | 21,831 | 22,988 | 28,409 | 28,433 | 40,938 | 285,201 |
| Guam | 26 | 26 | 35 | 20 | 24 | 20 | 18 | 33 | 18 | 30 | 40 | 14 | 304 |
| Hawaii | 549 | 586 | 539 | 931 | 868 | 536 | 676 | 652 | 599 | 693 | 554 | 624 | 7,807 |
| Idaho | 5,105 | 5,801 | 6,542 | 5,853 | 5,718 | 4,963 | 4,768 | 6,968 | 7,757 | 7,246 | 5,704 | 7,637 | 74,062 |
| Illinois | 38,829 | 34,238 | 38,538 | 38,283 | 32,981 | 27,581 | 31,426 | 37,385 | 36,661 | 41,917 | 45,317 | 42,982 | 446,138 |
| Indiana | 16,183 | 16,226 | 17,084 | 15,716 | 14,494 | 12,326 | 12,973 | 16,470 | 12,951 | 16,997 | 19,152 | 17,663 | 188,235 |
| Iowa | 9,000 | 7,644 | 7,878 | 6,366 | 4,642 | 3,783 | 4,348 | 5,558 | 7,427 | 10,199 | 10,295 | 13,218 | 90,358 |
| Kansas | 7,353 | 7,144 | 7,526 | 5,793 | 5,132 | 4,655 | 4,691 | 7,554 | 7,710 | 10,404 | 12,763 | 13,385 | 94,110 |
| Kentucky | 18,641 | 21,575 | 19,630 | 16,031 | 13,687 | 12,525 | 13,240 | 18,976 | 17,645 | 22,037 | 25,714 | 29,722 | 229,423 |
| Louisiana | 11,753 | 12,877 | 11,907 | 9,036 | 9,275 | 9,143 | 10,228 | 15,557 | 15,930 | 18,538 | 20,779 | 24,557 | 169,580 |
| Maine | 3,079 | 3,224 | 4,056 | 3,487 | 2,894 | 2,563 | 2,782 | 3,944 | 6,209 | 7,990 | 4,843 | 4,851 | 49,922 |
| Mariana Islands | 3 | 0 | 1 | 6 | 1 | 9 | 12 | 1 | 0 | 2 | 0 | 0 | 35 |
| Maryland | 5,707 | 6,328 | 5,972 | 5,551 | 4,585 | 4,565 | 4,761 | 5,869 | 6,570 | 8,863 | 10,339 | 9,654 | 78,764 |
| Massachusetts | 7,623 | 6,471 | 8,054 | 6,297 | 6,806 | 6,631 | 6,376 | 7,485 | 7,535 | 12,415 | 10,705 | 8,426 | 94,824 |
| Michigan | 29,054 | 29,161 | 31,334 | 29,443 | 23,438 | 21,044 | 21,077 | 25,209 | 32,557 | 37,430 | 37,755 | 36,038 | 353,540 |
| Minnesota | 12,887 | 13,211 | 17,144 | 17,114 | 11,362 | 9,824 | 10,721 | 17,376 | 23,195 | 24,486 | 17,579 | 17,493 | 192,392 |
| Mississippi | 11,320 | 13,916 | 11,260 | 8,257 | 7,865 | 7,560 | 8,200 | 12,576 | 11,359 | 14,169 | 20,891 | 22,575 | 149,948 |
| Missouri | 15,370 | 16,993 | 17,197 | 14,706 | 11,360 | 9,917 | 10,623 | 15,419 | 15,415 | 22,358 | 23,745 | 24,887 | 197,990 |
| Montana | 5,161 | 5,426 | 5,973 | 6,388 | 5,902 | 5,075 | 4,958 | 6,667 | 7,883 | 9,557 | 6,254 | 7,078 | 76,322 |
| Nebraska | 3,514 | 3,279 | 3,242 | 2,707 | 2,236 | 1,892 | 2,290 | 3,013 | 3,646 | 5,639 | 5,473 | 6,246 | 43,177 |
| Nevada | 3,814 | 3,835 | 4,629 | 3,598 | 3,626 | 3,084 | 3,327 | 3,971 | 3,781 | 4,310 | 3,975 | 5,205 | 47,155 |
| New Hampshire | 3,793 | 3,566 | 4,460 | 4,089 | 3,424 | 3,189 | 3,286 | 4,205 | 4,704 | 5,715 | 4,747 | 4,488 | 49,666 |
| New Jersey | 3,754 | 3,500 | 4,186 | 3,616 | 3,431 | 3,001 | 2,795 | 3,252 | 3,095 | 3,961 | 4,531 | 4,196 | 43,318 |
| New Mexico | 6,343 | 7,086 | 7,472 | 5,747 | 5,725 | 5,350 | 5,585 | 6,710 | 6,258 | 8,058 | 7,321 | 8,402 | 80,057 |
| New York | 12,450 | 11,906 | 13,709 | 15,022 | 10,896 | 9,681 | 9,230 | 10,578 | 15,457 | 18,629 | 17,417 | 15,952 | 160,927 |
| North Carolina | 22,798 | 24,556 | 21,416 | 17,383 | 15,989 | 16,030 | 16,372 | 23,077 | 21,396 | 26,629 | 29,216 | 34,054 | 268,916 |
| North Dakota | 1,913 | 1,987 | 2,499 | 2,344 | 1,962 | 1,892 | 1,782 | 2,642 | 3,642 | 4,475 | 3,168 | 3,033 | 31,339 |
| Ohio | 21,797 | 24,203 | 25,101 | 21,786 | 17,170 | 15,859 | 17,474 | 24,991 | 25,414 | 29,493 | 37,101 | 36,644 | 297,033 |
| Oklahoma | 12,728 | 14,740 | 12,774 | 11,945 | 9,892 | 8,872 | 9,486 | 13,008 | 12,384 | 15,477 | 17,983 | 20,200 | 159,489 |
| Oregon | 9,866 | 10,659 | 12,438 | 11,695 | 9,588 | 9,462 | 8,202 | 11,110 | 14,680 | 12,187 | 11,606 | 16,020 | 137,513 |
| Pennsylvania | 42,920 | 44,417 | 54,478 | 46,684 | 40,223 | 36,303 | 38,259 | 44,403 | 47,875 | 58,871 | 62,360 | 50,909 | 567,702 |
| Puerto Rico | 510 | 654 | 582 | 583 | 606 | 617 | 670 | 838 | 808 | 978 | 630 | 672 | 8,148 |
| Rhode Island | 866 | 751 | 857 | 725 | 741 | 676 | 667 | 740 | 791 | 959 | 918 | 830 | 9,521 |
| South Carolina | 9,771 | 11,629 | 10,318 | 7,629 | 7,517 | 6,884 | 7,167 | 10,757 | 10,135 | 10,848 | 12,360 | 16,961 | 121,976 |
| South Dakota | 2,843 | 3,115 | 3,466 | 3,040 | 2,547 | 2,206 | 2,267 | 3,898 | 4,579 | 6,422 | 4,888 | 5,011 | 44,282 |
| Tennessee | 17,736 | 20,354 | 19,597 | 13,784 | 13,289 | 12,056 | 13,248 | 18,777 | 16,574 | 19,767 | 26,066 | 31,800 | 223,048 |
| Texas | 50,321 | 51,634 | 49,178 | 42,304 | 42,561 | 40,367 | 42,810 | 62,213 | 63,116 | 66,213 | 69,561 | 84,467 | 664,745 |
| Utah | 4,583 | 4,699 | 4,959 | 4,404 | 4,021 | 3,596 | 3,569 | 4,662 | 5,598 | 5,922 | 6,100 | 9,597 | 61,710 |
| Vermont | 1,240 | 1,657 | 2,117 | 1,844 | 1,381 | 1,041 | 1,159 | 1,448 | 2,021 | 2,586 | 2,245 | 1,744 | 20,483 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Virginia | 14,014 | 15,358 | 15,481 | 13,285 | 11,665 | 10,760 | 11,908 | 15,177 | 15,936 | 20,438 | 22,305 | 25,462 | 191,789 |
| Washington | 13,151 | 14,857 | 15,370 | 15,924 | 15,994 | 13,910 | 14,102 | 16,150 | 17,315 | 19,637 | 17,503 | 19,526 | 193,439 |
| West Virginia | 9,397 | 11,808 | 11,248 | 9,510 | 8,140 | 6,953 | 7,825 | 9,931 | 11,584 | 15,209 | 18,015 | 15,226 | 134,846 |
| Wisconsin | 11,139 | 13,953 | 17,631 | 14,901 | 9,866 | 8,427 | 8,218 | 12,972 | 18,039 | 21,361 | 20,334 | 16,938 | 173,779 |
| Wyoming | 2,462 | 2,701 | 2,758 | 2,572 | 2,495 | 2,535 | 2,227 | 2,972 | 3,290 | 3,252 | 2,755 | 3,566 | 33,585 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

### Year 2001
January 1, 2001 - December 31, 2001

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 17,733 | 18,828 | 18,034 | 12,565 | 12,138 | 13,220 | 12,972 | 17,684 | 21,407 | 23,088 | 28,049 | 34,469 | 230,187 |
| Alaska | 2,409 | 2,343 | 2,912 | 3,398 | 2,965 | 2,626 | 3,198 | 3,902 | 3,784 | 5,278 | 3,478 | 3,666 | 39,959 |
| Arizona | 11,279 | 12,700 | 12,450 | 10,565 | 10,058 | 10,025 | 9,753 | 11,822 | 14,501 | 15,246 | 12,832 | 16,351 | 147,582 |
| Arkansas | 12,669 | 14,916 | 13,680 | 9,014 | 8,581 | 8,588 | 8,818 | 13,289 | 15,356 | 18,324 | 21,699 | 21,128 | 166,062 |
| California | 60,935 | 58,904 | 65,127 | 77,120 | 76,603 | 66,811 | 63,395 | 71,416 | 72,914 | 76,958 | 78,910 | 85,476 | 854,569 |
| Colorado | 23,654 | 23,686 | 29,331 | 23,024 | 21,077 | 21,850 | 21,457 | 28,926 | 36,990 | 43,020 | 35,152 | 40,529 | 348,696 |
| Connecticut | 7,118 | 6,485 | 7,482 | 6,894 | 6,879 | 6,339 | 5,753 | 6,175 | 7,855 | 10,892 | 9,119 | 8,698 | 89,689 |
| Delaware | 1,096 | 1,077 | 1,234 | 929 | 918 | 852 | 813 | 1,101 | 1,764 | 2,192 | 2,166 | 2,477 | 16,619 |
| District of Columbia | 0 | 1 | 3 | 3 | 3 | 2 | 0 | 0 | 1 | 1 | 2 | 1 | 17 |
| Florida | 23,164 | 22,384 | 23,281 | 19,361 | 18,478 | 19,021 | 19,017 | 22,195 | 29,526 | 38,217 | 32,050 | 36,702 | 303,396 |
| Georgia | 26,033 | 28,181 | 27,325 | 18,481 | 17,775 | 18,300 | 18,632 | 25,011 | 30,179 | 38,250 | 32,523 | 44,831 | 325,521 |
| Guam | 28 | 21 | 23 | 33 | 26 | 24 | 28 | 35 | 21 | 20 | 38 | 31 | 328 |
| Hawaii | 684 | 587 | 601 | 623 | 620 | 499 | 466 | 658 | 529 | 820 | 664 | 713 | 7,464 |
| Idaho | 5,395 | 5,802 | 6,379 | 5,517 | 5,392 | 4,852 | 4,874 | 6,228 | 8,312 | 8,371 | 6,666 | 7,612 | 75,400 |
| Illinois | 36,000 | 34,322 | 39,288 | 30,716 | 28,069 | 27,854 | 32,121 | 39,017 | 38,726 | 53,613 | 53,751 | 49,225 | 462,702 |
| Indiana | 12,951 | 13,402 | 14,906 | 11,399 | 10,842 | 18,746 | 14,374 | 17,113 | 16,272 | 22,702 | 21,780 | 21,293 | 195,780 |
| Iowa | 8,747 | 7,100 | 8,202 | 5,676 | 4,284 | 3,987 | 3,989 | 5,333 | 8,139 | 10,661 | 11,418 | 12,122 | 89,658 |
| Kansas | 7,760 | 7,392 | 8,141 | 5,507 | 4,860 | 4,899 | 4,842 | 7,090 | 8,493 | 11,160 | 12,580 | 12,684 | 95,408 |
| Kentucky | 17,820 | 20,955 | 20,312 | 14,259 | 12,909 | 13,848 | 13,077 | 19,612 | 20,022 | 24,942 | 28,614 | 32,626 | 238,996 |
| Louisiana | 12,131 | 12,930 | 12,527 | 8,474 | 8,720 | 10,172 | 10,495 | 15,894 | 18,421 | 21,704 | 21,112 | 25,195 | 177,775 |
| Maine | 2,587 | 2,633 | 3,363 | 3,270 | 2,570 | 2,421 | 2,886 | 3,994 | 6,996 | 9,346 | 5,010 | 4,943 | 50,019 |
| Mariana Islands | 20 | 0 | 9 | 0 | 6 | 0 | 13 | 85 | 9 | 6 | 0 | 0 | 148 |
| Maryland | 5,579 | 6,351 | 6,170 | 5,105 | 4,211 | 4,950 | 4,521 | 5,471 | 8,124 | 11,151 | 11,327 | 10,387 | 83,347 |
| Massachusetts | 5,293 | 5,064 | 5,747 | 4,747 | 4,780 | 4,307 | 4,243 | 4,528 | 5,533 | 7,727 | 6,993 | 7,673 | 66,635 |
| Michigan | 23,873 | 24,752 | 28,472 | 23,859 | 18,682 | 17,873 | 24,629 | 29,598 | 42,150 | 46,270 | 44,550 | 38,716 | 363,424 |
| Minnesota | 11,063 | 11,855 | 17,194 | 14,891 | 10,389 | 9,756 | 10,649 | 17,366 | 26,158 | 29,004 | 15,991 | 17,619 | 191,935 |
| Mississippi | 11,451 | 14,112 | 12,301 | 8,356 | 7,929 | 8,824 | 8,578 | 13,808 | 12,940 | 16,380 | 21,545 | 23,197 | 159,421 |
| Missouri | 14,123 | 15,936 | 16,461 | 12,672 | 10,300 | 10,642 | 10,427 | 15,539 | 18,019 | 24,876 | 23,866 | 26,609 | 199,470 |
| Montana | 4,342 | 5,076 | 6,185 | 5,718 | 5,300 | 5,264 | 4,779 | 6,424 | 8,365 | 9,769 | 6,244 | 7,286 | 74,752 |
| Nebraska | 3,221 | 2,906 | 3,305 | 2,370 | 2,116 | 2,111 | 2,246 | 3,158 | 4,633 | 6,270 | 5,835 | 6,230 | 44,401 |
| Nevada | 3,675 | 3,868 | 4,324 | 3,392 | 3,516 | 3,555 | 3,491 | 3,916 | 5,290 | 5,235 | 4,257 | 6,030 | 50,549 |
| New Hampshire | 2,858 | 2,740 | 3,165 | 3,236 | 2,477 | 2,480 | 2,824 | 3,402 | 5,627 | 6,886 | 5,158 | 4,874 | 45,727 |
| New Jersey | 3,187 | 2,897 | 3,413 | 2,704 | 2,691 | 2,417 | 2,139 | 2,662 | 3,350 | 4,722 | 4,829 | 4,516 | 39,527 |
| New Mexico | 6,254 | 7,537 | 7,669 | 5,731 | 5,457 | 5,531 | 5,331 | 7,009 | 7,704 | 9,292 | 8,083 | 9,276 | 84,874 |
| New York | 11,329 | 11,505 | 14,679 | 12,965 | 10,226 | 10,320 | 9,332 | 11,972 | 19,150 | 24,704 | 21,675 | 18,110 | 175,967 |
| North Carolina | 23,334 | 24,393 | 22,405 | 16,310 | 15,681 | 16,492 | 16,277 | 23,803 | 25,304 | 33,010 | 33,064 | 39,498 | 289,571 |
| North Dakota | 1,929 | 1,893 | 2,372 | 2,132 | 1,869 | 1,786 | 1,792 | 2,546 | 4,157 | 4,972 | 3,397 | 3,260 | 32,105 |
| Ohio | 19,819 | 22,710 | 24,668 | 18,712 | 15,075 | 15,312 | 13,934 | 20,725 | 29,848 | 33,599 | 40,008 | 37,749 | 292,159 |
| Oklahoma | 12,757 | 14,633 | 13,004 | 10,670 | 9,219 | 9,283 | 9,212 | 13,501 | 14,475 | 17,707 | 18,529 | 21,136 | 164,126 |
| Oregon | 9,562 | 10,541 | 12,324 | 10,977 | 9,033 | 10,431 | 8,517 | 10,936 | 16,615 | 13,958 | 12,373 | 16,028 | 141,295 |
| Pennsylvania | 34,202 | 36,228 | 44,975 | 36,360 | 30,679 | 29,275 | 28,543 | 35,334 | 49,455 | 63,468 | 63,805 | 57,465 | 509,881 |
| Puerto Rico | 402 | 439 | 493 | 404 | 524 | 537 | 590 | 868 | 736 | 738 | 719 | 645 | 7,095 |
| Rhode Island | 768 | 775 | 779 | 720 | 598 | 580 | 566 | 766 | 1,163 | 1,510 | 1,062 | 946 | 10,233 |
| South Carolina | 10,507 | 11,912 | 10,859 | 7,276 | 7,511 | 7,518 | 7,560 | 11,241 | 12,067 | 13,440 | 13,789 | 19,101 | 132,781 |
| South Dakota | 2,306 | 2,359 | 3,066 | 2,292 | 2,030 | 2,174 | 2,238 | 3,341 | 4,961 | 6,613 | 4,623 | 4,858 | 40,861 |
| Tennessee | 17,548 | 19,682 | 20,878 | 12,402 | 12,283 | 12,826 | 12,699 | 18,714 | 19,482 | 24,095 | 27,264 | 32,906 | 230,779 |
| Texas | 51,492 | 51,017 | 52,984 | 38,409 | 40,931 | 39,412 | 40,143 | 61,054 | 69,653 | 72,476 | 68,854 | 86,321 | 672,746 |
| Utah | 4,637 | 5,574 | 5,295 | 4,622 | 3,728 | 4,130 | 3,584 | 4,901 | 7,117 | 7,336 | 6,799 | 9,795 | 67,518 |
| Vermont | 1,030 | 1,460 | 1,750 | 1,615 | 1,031 | 1,059 | 1,193 | 1,416 | 2,506 | 3,054 | 2,503 | 2,040 | 20,657 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 13,793 | 15,198 | 15,645 | 11,970 | 11,315 | 11,170 | 11,535 | 13,733 | 17,970 | 23,054 | 23,635 | 27,163 | 196,181 |
| Washington | 11,703 | 11,536 | 13,278 | 11,289 | 10,471 | 11,110 | 10,940 | 12,833 | 16,619 | 20,541 | 14,250 | 16,810 | 161,380 |
| West Virginia | 9,167 | 10,844 | 11,306 | 8,399 | 7,406 | 7,652 | 7,603 | 10,176 | 12,520 | 17,649 | 19,121 | 16,578 | 138,421 |
| Wisconsin | 10,043 | 13,312 | 17,988 | 14,239 | 8,868 | 8,425 | 8,841 | 13,619 | 21,972 | 25,423 | 21,370 | 17,698 | 181,798 |
| Wyoming | 2,456 | 2,598 | 2,713 | 2,390 | 2,338 | 2,231 | 2,285 | 3,070 | 3,948 | 3,340 | 3,079 | 4,006 | 34,454 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## NICS Firearm Background Checks: Month/Year by State

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 17,860 | 19,309 | 17,001 | 13,017 | 11,832 | 12,944 | 12,451 | 16,404 | 19,885 | 19,647 | 27,199 | 34,362 | 221,911 |
| Alaska | 2,149 | 2,620 | 3,054 | 3,432 | 3,069 | 2,959 | 3,259 | 3,842 | 3,553 | 5,136 | 2,926 | 3,960 | 39,959 |

App331

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arizona | 12,192 | 13,882 | 14,125 | 11,946 | 10,782 | 10,755 | 10,557 | 12,126 | 12,278 | 12,289 | 11,402 | 15,929 | 148,263 |
| Arkansas | 12,592 | 16,075 | 13,984 | 10,908 | 9,462 | 9,758 | 9,266 | 12,734 | 15,732 | 17,174 | 22,007 | 19,936 | 169,628 |
| California | 57,800 | 58,905 | 64,895 | 65,796 | 62,909 | 64,614 | 60,311 | 63,724 | 59,837 | 62,588 | 74,834 | 98,293 | 794,506 |
| Colorado | 23,614 | 24,812 | 27,658 | 21,778 | 17,670 | 20,632 | 19,290 | 25,582 | 28,974 | 30,224 | 29,512 | 37,766 | 307,512 |
| Connecticut | 7,661 | 7,645 | 8,787 | 7,021 | 6,932 | 6,779 | 6,172 | 7,379 | 6,702 | 7,838 | 7,360 | 7,310 | 87,586 |
| Delaware | 1,057 | 1,133 | 1,251 | 1,108 | 870 | 880 | 912 | 1,042 | 1,275 | 1,612 | 2,002 | 2,205 | 15,347 |
| District of Columbia | 4 | 1 | 2 | 3 | 2 | 0 | 1 | 1 | 0 | 0 | 3 | 0 | 17 |
| Florida | 21,069 | 22,271 | 21,673 | 18,712 | 18,427 | 18,875 | 17,903 | 21,096 | 21,001 | 23,888 | 26,210 | 34,910 | 266,035 |
| Georgia | 29,933 | 34,114 | 30,832 | 21,741 | 19,557 | 20,972 | 21,094 | 26,402 | 29,985 | 33,658 | 34,476 | 49,593 | 352,357 |
| Guam | 23 | 16 | 23 | 15 | 18 | 22 | 30 | 22 | 23 | 26 | 24 | 37 | 279 |
| Hawaii | 576 | 511 | 574 | 419 | 452 | 489 | 574 | 651 | 726 | 630 | 539 | 468 | 6,609 |
| Idaho | 5,284 | 6,340 | 6,711 | 6,281 | 5,278 | 5,350 | 5,189 | 6,093 | 8,558 | 7,606 | 6,372 | 8,076 | 77,138 |
| Illinois | 39,273 | 38,528 | 44,109 | 34,673 | 30,664 | 28,722 | 27,627 | 42,307 | 37,925 | 43,841 | 42,378 | 39,724 | 449,771 |
| Indiana | 14,663 | 14,732 | 15,093 | 13,284 | 11,238 | 13,005 | 11,283 | 14,154 | 16,661 | 18,026 | 21,201 | 18,979 | 182,319 |
| Iowa | 8,619 | 7,661 | 7,994 | 5,501 | 4,179 | 4,003 | 3,875 | 5,660 | 7,692 | 10,620 | 11,298 | 10,694 | 87,796 |
| Kansas | 7,987 | 8,219 | 8,355 | 5,896 | 5,493 | 5,205 | 5,153 | 6,776 | 8,008 | 10,516 | 12,176 | 12,932 | 96,716 |
| Kentucky | 17,459 | 21,621 | 19,364 | 16,387 | 12,913 | 13,879 | 13,354 | 18,049 | 20,108 | 21,371 | 25,539 | 29,852 | 229,896 |
| Louisiana | 12,767 | 13,280 | 12,336 | 9,776 | 9,066 | 9,653 | 10,187 | 13,738 | 17,801 | 19,434 | 21,321 | 25,347 | 174,706 |
| Maine | 2,606 | 2,723 | 3,514 | 2,966 | 2,434 | 2,406 | 2,686 | 3,651 | 5,814 | 7,569 | 4,343 | 4,316 | 45,028 |
| Mariana Islands | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 7 | 0 | 4 | 0 | 13 |
| Maryland | 5,758 | 6,566 | 7,482 | 7,440 | 5,508 | 5,364 | 5,403 | 6,441 | 7,892 | 8,461 | 9,620 | 8,374 | 84,309 |
| Massachusetts | 2,578 | 2,825 | 3,547 | 3,600 | 2,673 | 5,311 | 5,133 | 6,178 | 5,253 | 6,334 | 6,017 | 5,394 | 54,843 |
| Michigan | 21,227 | 21,793 | 25,935 | 22,333 | 18,250 | 18,150 | 19,471 | 22,187 | 32,946 | 33,831 | 35,147 | 29,391 | 300,661 |
| Minnesota | 10,104 | 12,752 | 17,218 | 14,781 | 10,317 | 10,808 | 10,839 | 17,129 | 25,944 | 25,793 | 15,027 | 14,388 | 185,100 |
| Mississippi | 12,200 | 15,169 | 12,341 | 9,147 | 8,458 | 9,220 | 9,271 | 13,038 | 14,049 | 15,286 | 21,595 | 24,206 | 163,980 |
| Missouri | 14,172 | 16,933 | 16,401 | 14,225 | 10,574 | 11,085 | 10,612 | 13,907 | 16,137 | 21,208 | 22,725 | 23,599 | 191,578 |
| Montana | 4,407 | 5,301 | 6,002 | 5,744 | 5,222 | 5,328 | 4,646 | 5,561 | 7,916 | 8,972 | 5,138 | 6,878 | 71,115 |
| Nebraska | 3,196 | 3,284 | 3,531 | 2,650 | 2,202 | 2,137 | 2,329 | 3,197 | 4,234 | 6,470 | 5,671 | 5,924 | 44,825 |
| Nevada | 4,238 | 4,432 | 4,424 | 3,963 | 3,799 | 3,611 | 3,585 | 3,738 | 4,303 | 3,991 | 3,845 | 5,878 | 49,807 |
| New Hampshire | 2,753 | 2,694 | 3,362 | 3,115 | 2,498 | 2,697 | 2,775 | 3,266 | 4,217 | 4,585 | 4,180 | 3,978 | 40,120 |
| New Jersey | 2,614 | 2,778 | 3,267 | 2,986 | 2,746 | 2,934 | 2,574 | 3,049 | 3,014 | 3,278 | 4,110 | 3,756 | 37,106 |
| New Mexico | 6,299 | 7,687 | 7,724 | 6,240 | 5,759 | 6,040 | 5,401 | 6,678 | 7,268 | 8,509 | 7,173 | 9,256 | 84,034 |
| New York | 10,957 | 11,106 | 12,957 | 12,524 | 10,157 | 9,527 | 10,067 | 13,188 | 17,307 | 19,620 | 19,475 | 17,089 | 163,974 |
| North Carolina | 23,910 | 27,125 | 24,942 | 18,841 | 16,974 | 17,839 | 17,014 | 23,641 | 23,661 | 26,848 | 31,520 | 38,569 | 290,884 |
| North Dakota | 1,834 | 2,099 | 2,656 | 2,498 | 1,948 | 1,973 | 1,904 | 2,931 | 4,236 | 4,742 | 2,849 | 2,688 | 32,358 |
| Ohio | 20,200 | 24,204 | 24,696 | 21,170 | 15,379 | 15,730 | 14,878 | 20,887 | 24,115 | 25,035 | 34,890 | 32,981 | 274,165 |
| Oklahoma | 11,957 | 14,972 | 12,702 | 11,516 | 9,323 | 10,371 | 9,467 | 11,635 | 13,080 | 14,820 | 17,563 | 19,582 | 156,988 |
| Oregon | 9,658 | 11,551 | 12,475 | 10,993 | 9,236 | 9,375 | 8,159 | 10,244 | 15,228 | 11,427 | 11,332 | 15,658 | 135,336 |
| Pennsylvania | 35,120 | 37,931 | 48,600 | 39,189 | 32,796 | 31,442 | 31,171 | 34,999 | 41,872 | 48,477 | 54,089 | 45,608 | 481,294 |
| Puerto Rico | 247 | 418 | 620 | 406 | 425 | 454 | 374 | 546 | 487 | 458 | 388 | 478 | 5,301 |
| Rhode Island | 774 | 853 | 939 | 784 | 669 | 682 | 595 | 699 | 754 | 867 | 957 | 841 | 9,414 |
| South Carolina | 9,905 | 11,851 | 10,773 | 7,565 | 6,810 | 7,483 | 7,514 | 11,491 | 11,329 | 11,497 | 13,827 | 18,573 | 128,618 |
| South Dakota | 1,997 | 2,288 | 2,500 | 2,300 | 1,901 | 1,905 | 2,094 | 3,181 | 4,695 | 6,187 | 3,717 | 3,958 | 36,723 |
| Tennessee | 18,928 | 21,178 | 19,940 | 14,344 | 12,968 | 12,596 | 16,221 | 19,449 | 19,087 | 20,079 | 26,567 | 33,316 | 234,673 |
| Texas | 48,626 | 52,861 | 51,666 | 42,204 | 41,947 | 42,043 | 45,518 | 59,994 | 65,110 | 62,872 | 66,996 | 83,133 | 662,970 |
| Utah | 4,611 | 5,831 | 5,549 | 4,379 | 4,006 | 3,964 | 3,953 | 5,111 | 7,019 | 6,522 | 5,848 | 10,627 | 67,420 |
| Vermont | 1,123 | 1,590 | 1,961 | 1,708 | 1,222 | 1,130 | 1,206 | 1,544 | 2,231 | 2,688 | 2,181 | 1,716 | 20,300 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 13,636 | 15,794 | 17,908 | 13,361 | 11,352 | 11,129 | 11,886 | 13,970 | 16,397 | 17,457 | 21,270 | 24,348 | 188,508 |
| Washington | 9,171 | 10,534 | 11,763 | 9,711 | 8,880 | 8,910 | 9,156 | 11,248 | 13,685 | 14,792 | 11,741 | 14,664 | 134,255 |
| West Virginia | 8,589 | 11,546 | 10,855 | 9,255 | 7,143 | 7,397 | 7,743 | 9,060 | 12,058 | 13,650 | 16,591 | 14,371 | 128,258 |
| Wisconsin | 10,368 | 13,013 | 16,615 | 14,441 | 9,928 | 9,160 | 9,498 | 14,009 | 22,239 | 24,736 | 20,647 | 15,838 | 180,492 |
| Wyoming | 2,508 | 2,956 | 3,047 | 2,563 | 2,202 | 2,339 | 2,267 | 2,765 | 3,838 | 3,178 | 2,725 | 3,907 | 34,295 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

### NICS Firearm Background Checks: Month/Year by State

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 18,049 | 20,583 | 19,424 | 14,823 | 14,043 | 14,651 | 14,795 | 17,095 | 20,181 | 22,484 | 29,445 | 41,183 | 246,756 |
| Alaska | 2,278 | 2,413 | 3,206 | 3,931 | 3,278 | 3,201 | 3,744 | 4,243 | 3,623 | 5,723 | 3,169 | 4,264 | 43,073 |
| Arizona | 12,859 | 14,546 | 14,992 | 14,575 | 13,186 | 12,575 | 13,032 | 13,491 | 14,141 | 14,916 | 13,714 | 21,521 | 173,548 |
| Arkansas | 11,953 | 15,348 | 13,720 | 11,521 | 10,105 | 10,518 | 10,897 | 13,582 | 17,580 | 19,388 | 23,946 | 26,058 | 184,616 |
| California | 56,953 | 57,471 | 68,327 | 62,654 | 61,497 | 65,298 | 65,646 | 70,183 | 70,519 | 77,927 | 90,391 | 136,278 | 883,144 |
| Colorado | 19,503 | 22,239 | 17,287 | 11,739 | 10,605 | 10,842 | 10,758 | 20,607 | 25,084 | 32,436 | 30,811 | 45,397 | 257,308 |
| Connecticut | 6,265 | 8,069 | 7,877 | 9,111 | 8,202 | 6,931 | 4,940 | 6,899 | 6,599 | 7,326 | 6,614 | 8,376 | 87,209 |

**App332**

| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Delaware | 1,128 | 1,077 | 1,314 | 1,081 | 1,095 | 918 | 901 | 1,270 | 1,508 | 1,930 | 2,403 | 2,969 | 17,594 |
| District of Columbia | 1 | 3 | 2 | 2 | 1 | 1 | 2 | 2 | 0 | 5 | 0 | 2 | 21 |
| Florida | 18,999 | 22,252 | 23,492 | 19,219 | 18,891 | 19,383 | 20,004 | 20,093 | 20,399 | 25,667 | 28,490 | 42,811 | 279,700 |
| Georgia | 20,860 | 36,251 | 33,756 | 26,828 | 25,163 | 24,957 | 25,560 | 30,659 | 33,203 | 42,171 | 41,109 | 69,293 | 409,810 |
| Guam | 2 | 7 | 6 | 2 | 3 | 14 | 12 | 22 | 32 | 20 | 23 | 27 | 170 |
| Hawaii | 262 | 327 | 447 | 476 | 343 | 432 | 492 | 462 | 451 | 414 | 566 | 671 | 5,343 |
| Idaho | 5,080 | 5,480 | 6,357 | 6,507 | 5,677 | 5,166 | 6,015 | 6,435 | 8,510 | 8,614 | 6,794 | 9,279 | 79,914 |
| Illinois | 35,459 | 38,449 | 43,089 | 38,343 | 32,377 | 31,962 | 29,826 | 38,023 | 42,852 | 49,471 | 53,201 | 51,796 | 484,848 |
| Indiana | 15,337 | 15,961 | 16,938 | 16,525 | 15,176 | 14,030 | 12,594 | 15,226 | 15,027 | 19,328 | 22,242 | 24,798 | 203,182 |
| Iowa | 8,162 | 7,222 | 7,691 | 6,029 | 4,412 | 4,433 | 4,152 | 5,841 | 8,224 | 11,017 | 10,984 | 14,055 | 92,222 |
| Kansas | 8,023 | 7,694 | 8,992 | 6,682 | 5,975 | 6,027 | 6,148 | 7,834 | 8,454 | 11,495 | 13,783 | 15,001 | 106,108 |
| Kentucky | 17,909 | 22,311 | 20,740 | 17,439 | 13,777 | 14,373 | 15,838 | 18,205 | 19,990 | 23,993 | 28,229 | 35,408 | 248,212 |
| Louisiana | 12,849 | 14,060 | 14,239 | 10,733 | 10,248 | 11,232 | 12,224 | 14,292 | 19,591 | 21,964 | 23,991 | 30,592 | 196,015 |
| Maine | 2,319 | 2,745 | 3,379 | 2,765 | 2,490 | 2,256 | 2,758 | 4,036 | 6,213 | 8,503 | 4,744 | 4,952 | 47,160 |
| Mariana Islands | | | | | | | | 38 | 0 | 0 | 13 | 0 | 51 |
| Maryland | 6,031 | 6,602 | 10,579 | 6,116 | 5,091 | 5,438 | 5,564 | 6,157 | 7,221 | 9,070 | 11,506 | 12,006 | 91,381 |
| Massachusetts | 843 | 1,016 | 1,593 | 1,766 | 1,449 | 1,542 | 1,735 | 2,045 | 2,344 | 3,332 | 3,151 | 3,498 | 24,314 |
| Michigan | 16,046 | 20,335 | 25,251 | 21,994 | 18,959 | 17,867 | 18,442 | 23,906 | 31,658 | 35,334 | 39,395 | 38,582 | 307,769 |
| Minnesota | 6,724 | 9,473 | 13,747 | 12,274 | 9,467 | 9,734 | 10,093 | 18,249 | 25,704 | 26,815 | 17,026 | 18,623 | 177,929 |
| Mississippi | 12,436 | 15,882 | 13,857 | 10,735 | 9,395 | 9,781 | 11,045 | 13,121 | 14,959 | 18,299 | 23,713 | 28,891 | 182,114 |
| Missouri | 13,490 | 16,814 | 17,567 | 15,281 | 11,831 | 11,666 | 11,503 | 14,727 | 17,471 | 23,087 | 24,418 | 28,781 | 206,636 |
| Montana | 4,276 | 5,009 | 6,106 | 5,844 | 5,203 | 5,236 | 5,173 | 5,995 | 7,592 | 9,588 | 5,777 | 7,228 | 73,027 |
| Nebraska | 3,159 | 3,172 | 3,475 | 2,859 | 2,389 | 2,357 | 2,458 | 3,534 | 4,628 | 6,563 | 6,204 | 7,161 | 47,959 |
| Nevada | 4,724 | 4,869 | 5,363 | 4,785 | 4,667 | 4,520 | 4,521 | 4,839 | 5,328 | 5,044 | 5,350 | 8,365 | 62,375 |
| New Hampshire | 1,464 | 1,465 | 1,865 | 2,940 | 2,779 | 2,504 | 2,944 | 3,514 | 4,198 | 4,974 | 4,288 | 4,776 | 37,711 |
| New Jersey | 2,498 | 2,616 | 3,283 | 3,026 | 2,719 | 2,743 | 2,751 | 3,122 | 3,058 | 3,650 | 4,468 | 4,667 | 38,601 |
| New Mexico | 6,671 | 7,686 | 8,341 | 7,082 | 6,475 | 6,806 | 6,546 | 7,147 | 7,656 | 9,754 | 8,119 | 12,123 | 94,406 |
| New York | 10,897 | 13,144 | 17,668 | 17,394 | 14,696 | 11,237 | 9,838 | 13,126 | 17,319 | 20,254 | 20,639 | 20,415 | 186,627 |
| North Carolina | 21,771 | 25,866 | 25,738 | 19,965 | 17,945 | 18,957 | 18,917 | 23,651 | 24,381 | 29,922 | 34,673 | 47,921 | 309,707 |
| North Dakota | 1,340 | 1,600 | 2,055 | 1,748 | 1,747 | 1,621 | 1,947 | 2,710 | 4,149 | 4,745 | 2,885 | 3,317 | 29,864 |
| Ohio | 16,731 | 23,524 | 24,939 | 22,586 | 18,019 | 16,514 | 17,398 | 22,262 | 25,418 | 29,770 | 38,940 | 41,496 | 297,597 |
| Oklahoma | 12,089 | 14,651 | 13,343 | 12,221 | 10,631 | 10,679 | 10,499 | 12,145 | 13,797 | 16,106 | 19,020 | 24,255 | 169,436 |
| Oregon | 9,612 | 11,276 | 13,267 | 12,486 | 11,186 | 11,036 | 11,891 | 11,452 | 15,553 | 13,688 | 18,094 | 20,817 | 160,358 |
| Pennsylvania | 32,267 | 39,417 | 51,500 | 43,248 | 36,831 | 34,503 | 35,319 | 43,037 | 45,129 | 56,297 | 66,033 | 57,974 | 541,555 |
| Puerto Rico | 402 | 338 | 445 | 363 | 435 | 376 | 357 | 449 | 540 | 513 | 480 | 492 | 5,190 |
| Rhode Island | 834 | 786 | 925 | 806 | 762 | 719 | 749 | 837 | 860 | 1,102 | 1,072 | 1,225 | 10,677 |
| South Carolina | 9,543 | 12,565 | 12,282 | 9,358 | 8,808 | 8,670 | 9,706 | 11,834 | 12,646 | 12,889 | 15,056 | 22,136 | 145,493 |
| South Dakota | 1,389 | 1,685 | 1,852 | 1,783 | 1,491 | 1,464 | 1,773 | 2,730 | 3,959 | 5,524 | 3,713 | 3,964 | 31,327 |
| Tennessee | 18,473 | 23,304 | 23,035 | 17,000 | 15,515 | 16,197 | 17,775 | 19,662 | 19,384 | 23,761 | 28,471 | 41,637 | 264,214 |
| Texas | 50,992 | 55,148 | 54,096 | 45,727 | 44,247 | 46,105 | 50,160 | 57,184 | 65,731 | 68,080 | 70,540 | 102,015 | 710,025 |
| Utah | 5,055 | 5,933 | 6,021 | 5,987 | 5,333 | 4,393 | 4,538 | 5,330 | 7,355 | 8,016 | 7,607 | 12,150 | 77,718 |
| Vermont | 1,043 | 1,668 | 1,941 | 1,599 | 1,156 | 1,142 | 1,320 | 1,752 | 2,603 | 3,129 | 2,440 | 2,425 | 22,218 |
| Virgin Islands | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 14,009 | 16,053 | 17,193 | 13,933 | 13,730 | 13,169 | 14,252 | 15,158 | 17,429 | 20,783 | 23,033 | 29,812 | 208,554 |
| Washington | 8,695 | 9,383 | 10,551 | 9,229 | 9,134 | 9,520 | 9,308 | 10,532 | 12,125 | 15,494 | 11,957 | 17,746 | 133,674 |
| West Virginia | 8,260 | 11,206 | 10,867 | 9,908 | 7,361 | 7,481 | 8,507 | 9,226 | 11,904 | 16,359 | 17,481 | 15,911 | 134,471 |
| Wisconsin | 7,780 | 10,578 | 14,891 | 14,936 | 10,694 | 9,133 | 9,754 | 13,962 | 21,306 | 24,664 | 22,690 | 18,952 | 179,340 |
| Wyoming | 2,180 | 2,643 | 2,776 | 2,702 | 2,531 | 2,602 | 2,513 | 3,047 | 3,724 | 3,524 | 2,993 | 4,241 | 35,476 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

| NICS Firearm Background Checks: Month/Year by State | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State / Territory | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
| Alabama | | | | | | | | | | | 1,062 | 35,506 | 36,568 |
| Alaska | | | | | | | | | | | 145 | 3,840 | 3,985 |
| Arizona | | | | | | | | | | | 379 | 17,074 | 17,453 |
| Arkansas | | | | | | | | | | | 589 | 21,163 | 21,752 |
| California | | | | | | | | | | | 2,101 | 65,344 | 67,445 |
| Colorado | | | | | | | | | | | 622 | 23,176 | 23,798 |
| Connecticut | | | | | | | | | | | 80 | 6,790 | 6,870 |
| Delaware | | | | | | | | | | | 55 | 2,080 | 2,135 |
| District of Columbia | | | | | | | | | | | 0 | 0 | 0 |
| Florida | | | | | | | | | | | 812 | 31,529 | 32,341 |
| Georgia | | | | | | | | | | | 62 | 3,757 | 3,819 |
| Guam | | | | | | | | | | | 0 | 9 | 9 |
| Hawaii | | | | | | | | | | | 28 | 403 | 431 |

**App333**

App334

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Idaho | | | | | | | | | | 176 | 7,163 | 7,339 |
| Illinois | | | | | | | | | | 22 | 41,455 | 41,477 |
| Indiana | | | | | | | | | | 347 | 22,171 | 22,518 |
| Iowa | | | | | | | | | | 482 | 14,168 | 14,650 |
| Kansas | | | | | | | | | | 398 | 11,988 | 12,386 |
| Kentucky | | | | | | | | | | 840 | 31,029 | 31,869 |
| Louisiana | | | | | | | | | | 799 | 26,843 | 27,642 |
| Maine | | | | | | | | | | 100 | 4,006 | 4,106 |
| Mariana Islands | | | | | | | | | | | | 0 |
| Maryland | | | | | | | | | | 318 | 8,689 | 9,007 |
| Massachusetts | | | | | | | | | | 43 | 1,400 | 1,443 |
| Michigan | | | | | | | | | | 1,025 | 29,571 | 30,596 |
| Minnesota | | | | | | | | | | 319 | 11,797 | 12,116 |
| Mississippi | | | | | | | | | | 784 | 25,313 | 26,097 |
| Missouri | | | | | | | | | | 578 | 23,509 | 24,087 |
| Montana | | | | | | | | | | 201 | 6,205 | 6,406 |
| Nebraska | | | | | | | | | | 186 | 6,469 | 6,655 |
| Nevada | | | | | | | | | | 159 | 6,280 | 6,439 |
| New Hampshire | | | | | | | | | | 55 | 2,387 | 2,442 |
| New Jersey | | | | | | | | | | 77 | 3,718 | 3,795 |
| New Mexico | | | | | | | | | | 211 | 8,822 | 9,033 |
| New York | | | | | | | | | | 319 | 14,417 | 14,736 |
| North Carolina | | | | | | | | | | 1,310 | 37,633 | 38,943 |
| North Dakota | | | | | | | | | | 58 | 2,379 | 2,437 |
| Ohio | | | | | | | | | | 952 | 31,529 | 32,481 |
| Oklahoma | | | | | | | | | | 633 | 19,442 | 20,075 |
| Oregon | | | | | | | | | | 344 | 13,680 | 14,024 |
| Pennsylvania | | | | | | | | | | 17 | 48,300 | 48,317 |
| Puerto Rico | | | | | | | | | | 2 | 511 | 513 |
| Rhode Island | | | | | | | | | | 38 | 1,021 | 1,059 |
| South Carolina | | | | | | | | | | 6 | 9,559 | 9,565 |
| South Dakota | | | | | | | | | | 74 | 2,677 | 2,751 |
| Tennessee | | | | | | | | | | 107 | 24,666 | 24,773 |
| Texas | | | | | | | | | | 2,794 | 79,605 | 82,399 |
| Utah | | | | | | | | | | 267 | 10,415 | 10,682 |
| Vermont | | | | | | | | | | 59 | 2,057 | 2,116 |
| Virgin Islands | | | | | | | | | | 0 | 0 | 0 |
| Virginia | | | | | | | | | | 24 | 25,170 | 25,194 |
| Washington | | | | | | | | | | 361 | 11,641 | 12,002 |
| West Virginia | | | | | | | | | | 408 | 13,786 | 14,194 |
| Wisconsin | | | | | | | | | | 241 | 15,201 | 15,442 |
| Wyoming | | | | | | | | | | 107 | 3,379 | 3,486 |

**NOTE:** These statistics represent the number of firearm background checks initiated through the NICS. They do not represent the number of firearms sold. Based on varying state laws and purchase scenarios, a one-to-one correlation cannot be made between a firearm background check and a firearm sale.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L. :
MARTIN; WILLIAM R. HAGUE, JR.; :
BRUCE C. SMITH; BRIDGEVILLE :
KENPO KARATE, INC. d/b/a BKK :
FIREARMS; DELAWARE STATE :
SPORTSMEN'S ASSOCIATION, INC; :
and BRIDGEVILLE RIFLE & PISTOL :
CLUB, LTD., :
 :
   Plaintiffs. :
 :
   v. : Civil Action No. 1:25-cv-01341-MN
 :
JOSHUA BUSHWELLER, in his :
official capacity as Cabinet Secretary, :
Delaware Department of Safety and :
Homeland Security; and COL. WILLIAM :
CROTTY, in his official capacity as :
superintendent of the Delaware State Police, :
 :
   Defendants. :

## SECOND DECLARATION OF BRUCE C. SMITH,
## OWNER AND OPERATOR OF BRIDGEVILLE KENPO KARATE, INC.
## d/b/a BKK FIREARMS IN SUPPORT OF PLAINTIFFS'
## MOTION FOR EXPEDITED INJUNCTIVE RELIEF

I, Bruce C. Smith, affirm the truth of the following representations:

1. I am a Plaintiff in the above-titled action as is BKK Firearms. I am over the age of 18, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

**App335**

2.     I am the Owner and Operator of Bridgeville Kenpo Karate, Inc., d/b/a BKK Firearms ("BKK") and I am a citizen of the State of Delaware, residing in Sussex County, Delaware.

3.     I previously submitted a Declaration in support of Plaintiffs' Motion for Expedited Injunctive Relief dated October 27, 2025 ("First Declaration"). I submit this Declaration in support of Plaintiffs' Reply Brief to their Motion.

4.     As I stated in my First Declaration, BKK holds a Federal Firearms License ("FFL") and is engaged in the business of selling firearms. BKK is headquartered in the State of Delaware and is duly authorized to do business in the State.

5.     As I also stated in my First Declaration, I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2") approximately 18 months ago in May 2024,  which requires a Delaware citizen to obtain a handgun qualified purchasing permit ("Permit") prior to purchasing a handgun. SS 1 for SB 2 will be enforced beginning on November 16, 2025, which is18 months after it was enacted.

6.     I understand unless an exemption applies, persons seeking to obtain the required Permit have to submit a certificate documenting that they have completed a firearms training course as set forth in SS 1 for SB 2 ("SS 1 for SB 2 Training Course").

2

**App336**

7.      I understand that the State has created "Firearms Training Course Guidelines" relating to the firearms training course set forth in SS 1 for SB 2.

8.      I further understand that the State failed to follow the Delaware Administrative Procedures in creating the Firearms Training Course Guidelines.

9.      I also am aware there is a list of approved firearm training instructors that are authorized to provide the SS 1 for SB 2 Training Course ("Instructor List"). That list is available at https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/11/Permit-to-Purchase-List-of-Approved-Firearms-Trainers-11032025.pdf, which is a link on the State's Permit-to-Purchase website—https://dsp.delaware.gov/permit-to-purchase/.

10.     On October 6, 2025, I received an email from Christopher Popp of the Delaware State Police Popp that was sent to Delaware FFLs. The email is attached at Exhibit A. In that email, Lieutenant Popp notes that the Firearm Transaction Approval Program ("FTAP") "has been delayed for some time…[due to] critical errors that needed to be addressed" and "[w]e don't want to put out a program that is not effective and make sure it's thoroughly tested for accuracy." Lieutenant Popp also stated that "the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy."

11.     In that same email, Lieutenant Popp notes, to my knowledge and recollection, for the first time, the need to register instructors for the SS 1 for SB 2

3

**App337**

Training Course and that those wanting to register as instructors can go to the Permit-to-Purchase website www.dsp.delaware.gov and apply on the Permit-to-Purchase Instructor Portal ("Instructor Portal"), which became active as of October 6, 2025. Lieutenant Popp also was concerned with delays in issuing Permits and asked that the FFL's "spread the word" to the public about becoming certified instructors and about the Permit-to-Purchase website in general. To my knowledge, this was the first correspondence I received from the State regarding training instructors for SS 1 for SB.

12.   Given its late start in implementing the SS 1 for SB 2 process, I did not believe the State would have the necessary infrastructure in place to meet the demand for SS 1 for SB 2 trainings, and thus Permits, by the November 16th enforcement date. However, in an effort to do what I could to ensure Delawareans would have the needed Permit by the November 16, 2025 enforcement date, I decided to be proactive and went to the Permit-to-Purchase website on October 7, 2025 and followed the link to the Instructor Portal and completed the instructor application on the Portal.

13.   On October 8, 2025, I received an email from Lieutenant Popp stating my application had been accepted and I was an approved instructor for the SS 1 for SB 2 Training Course. Since that time, on my own initiative, I actively attempted to put a SS 1 for SB 2 Training Course in place, even running an advertisement at my

4

own expense in "The Guide," an online publication that provides advertising and community information for the Delmarva Peninsula.

14. To date, however, I have only been able to conduct one SS 1 for SB 2 Training Course, which was on November 9, 2025, to eleven persons. The Training Course takes over 8 hours to complete. I do not have another SS 1 for SB 2 Training Course available until November 22, 2025.

15. I stated in my First Declaration that in the course of my ownership and operation of BKK, I have sold handguns that will be subject to SS 1 for SB 2, and that in 2024 and 2025, BKK derived approximately 90% and 98% respectively of its sales from handguns.

16. I understand that there has only been a very limited number of SS 1 for SB 2 Training Courses made available as of the date of this Declaration and a very limited number available in the next two months due to the State's failure to timely and fully put in place the necessary infrastructure to meet the demand for SS 1 for SB 2 trainings, and thus Permits, by the November 16 enforcement date.

17. In addition to the State's failure over the last 18 months to fully implement all the necessary infrastructure for SS 1 for SB2, my ability to sell handguns is also restricted because I understand I am unable to sell handguns to persons holding a valid license to carry a concealed deadly weapon ("CCDW") if they do not also hold the required handgun purchasing Permit.

5

18.    This problem is a result of SS 1 for SB 2 exempting persons holding a valid CCDW from having to apply for the required permit—but not allowing FFLs like me to sell or transfer handguns to them without the Permit.  The harm caused by this restriction is made worse by my understanding that the State has issued public announcements, including on the Permit-to-Purchase website, that CCDW holders are exempt from SS 1 for SB 2's permit requirements, giving the false impression to CCDW holders that they can still buy a handgun without the required Permit.

19.    As I stated in my First Declaration, if the implementation of SS 1 for SB 2 is allowed to go forward on November 16, 2025, even if a small number of Permits have been issued, BKK and I will suffer irreparable harm in that either BKK's handgun sales will be greatly reduced for the foreseeable future or, if I keep selling handguns to persons without a permit, I willbe subject to significant criminal liability, including prosecution for a felony.

20.    Therefore, SS 1 for SB2 violates constitutional protections afforded to both myself and my business as a purchaser and seller of handguns, subjects me to criminal prosecution for the sale of handguns, and effectively bans me and my business from selling handguns, causing BKK and me immediate and irreparable harm.

**App340**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_11/11/2025_
Date

Bruce C. Smith
Owner, Bridgeville Kenpo Karate, Inc.
d/b/a BKK Firearms

7

**App341**

# EXHIBIT A

**App342**

**From:** "Popp, Christopher W (DSP)" <Christopher.Popp@delaware.gov>
**Date:** October 6, 2025 at 7:36:13 AM EDT
**Subject: FTAP/P2P Update**

Good morning,

Since my last communication, things have continued to progress, and DELJIS is developing the FTAP program. This has been delayed for some time but during our initial testing, we found some critical errors that needed to be addressed. We don't want to put out a program that is not effective and make sure it's thoroughly tested for accuracy. We've been advised by DELJIS we can begin testing the program again this week. I believe the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy. If the testing phase is successful, we're going to move into the training phase for all its users. This includes putting dates back on the schedule for you, the FFL's, to attend and show you the program as well as getting everyone registered to use the program. We encourage you to bring all your employees to the seminars so we can get everyone registered. As soon as we confirm the dates and times a follow up email will be sent out.

As we prepare for the launch of Permit to Purchase, we want to make sure we have everything in place. State law mandates that a handgun qualified purchaser permit is required to purchase handguns. To make sure we can do this we need to first register instructors for the Firearms Training Course giving them the ability to provide this required training to the citizens of Delaware. "Firearms Training Course" means a course of instruction conducted by an approved firearms instructor certified to teach course material in accordance with the requirements in the Rules and Regulations established by SBI. To obtain a handgun qualified purchaser permit, an applicant must complete a firearms training course within the 5 years prior to application or meet one of the exemptions. The website for Permit to Purchase has been developed and can be accessed utilizing www.dsp.delaware.gov. Starting today, October 6, 2025 the website can be accessed for registration and approval for those wanting to provide instruction for the required training and safety course. DSP will be releasing numerous public announcements reference this but please spread the word, anything we can do to avoid delays in issuing permits helps. Again, instructors can register by accessing the State of Delaware website at www.dsp.delaware.gov click on the Public Info tab, and then select the link to Firearms. This website provides them further information on the requirements to be an instructor for Permit to Purchase. You can advise them the course of instruction is the same as the CCDW program but legally requires a block of instruction on suicide prevention.

Permit to Purchase has the following phone number and email address assigned to it:
    Phone Number: 302-741-2800
    Email: DSP_SBIP2PMail@delaware.gov

We have a responsibility to educate Delawareans about the process. DSP is going to do some of this through public announcements and providing information brochures to law enforcement for the public to obtain. We also hope you can educate them as well and direct them to the website for more information. As important details become available, we will keep everyone informed. It's important to me that we, DSP, continue to maintain a professional working

**App343**

relationship with our FFL's effected by these changes to state law. One of the best ways to do this is keeping everyone informed as we move towards the release of these programs. Thank you.

Chris

**Lt. Christopher Popp #274 | Delaware State Police FTAP**
**Firearms Transaction Approval Program**
600 S. Bay Rd, Dover, DE 19901
Phone: Office: 302.741.2878 Cell: 302.222.4705
Email: christopher.popp@delaware.gov

**App344**

THOMAS S. NEUBERGER; JERRY L.          :
MARTIN; WILLIAM R. HAGUE, JR.;         :
BRUCE C. SMITH; BRIDGEVILLE            :
KENPO KARATE, INC. d/b/a BKK           :
FIREARMS; DELAWARE STATE               :
SPORTSMEN'S ASSOCIATION, INC;          :
and BRIDGEVILLE RIFLE & PISTOL         :
CLUB, LTD.,                            :
                                       :
          Plaintiffs.                  :
                                       :
     v.                                : Civil Action No. 1:25-cv-01341-MN
                                       :
JOSHUA BUSHWELLER, in his              :
official capacity as Cabinet Secretary,:
Delaware Department of Safety and      :
Homeland Security; and COL. WILLIAM    :
CROTTY, in his official capacity as    :
superintendent of the Delaware State Police, :
                                       :
          Defendants.                  :

I, Jerry L. Martin, affirm the truth of the following representations:

1.     I am a Plaintiff in the above-titled action.

2.     I am over 18 years old, a citizen of Delaware, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

**App345**

3. I submit this Declaration in support of Plaintiffs' Reply Brief to its Motion for Expedited Injunctive Relief.

4. I am the President of the Bridgeville Rifle and Pistol Club, Ltd. and a member of the Delaware State Sportsmen's Association.

5. I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which I understand requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun ("Permit").

6. I also understand SS 1 for SB 2 authorizes the Delaware State Police or a local law-enforcement agency to "take action to ensure surrender or removal" of any handguns possessed by any law-abiding Delawarean whose permit is revoked, regardless of the reason.

7. I further understand that SS 1 for SB 2 will begin to be enforced on November 16, 2025.

8. I believe SS 1 for SB 2's ahistorical and burdensome permitting scheme for acquisition of a handgun for self-defense and other lawful purpose deprives me of my Second, Fourth, and Fourteenth Amendment rights.

9. I compete in Cowboy Action and I regularly purchase and collect firearms and will continue to do so.

**App346**

10.    I intend to purchase a Sig Sauer on November 28 ("Black Friday"). I also intend to buy an additional handgun on November 16.

11.    However, I will be unable to make both the November 16 handgun purchase and the November 28 handgun purchase because I have not been able to obtain the required Permit.

12.    I attempted to apply for a Permit on November 9 through the Delaware State Police Permit-to-Purchase Website—https://dsp.delaware.gov/permit-to-purchase/—("the Website"). However, I did not have the necessary training certificate. I called the contact number listed on the Website for assistance with completing the application, but the automated system stated it could not help and then disconnected the call. Since I did not know how to proceed, I submitted the application through the Website without the training certificate.

13.    On November 10, 2025, I was notified by the Delaware State Police ("DSP") that my application was rejected because I did not attach the training certificate and that I would have to reapply once I have the required training course certificate. The DSP did not provide me with any information on training instructors or available courses.

14.    On November 11, 2025, I learned of and then located a link to a Training Instructor List on the Website. I clicked on the link to the list of training instructors, which took me to a document dated 11/10/25 that contained a list

approximately 100 names sorted in alphabetical order by first name. Some of the names were associated with a business name, while others simply said "N/A" or "None." There were no telephone numbers, email addresses, websites, physical addresses or links to any of the foregoing, associated with any of the "instructors" or their businesses.

15.    I searched for instructor contact information online, hoping to find a webpage with a phone number. I reached out to several instructors I could find, but was unable to get any meaningful assistance. Some did not answer the phone. One said his price was the same as for conceal carry licenses. No one I spoke with had a training class before November16.

16.    I also followed the link on the Website for fingerprinting, but received a warning that the site might be impersonating another page and attempting to steal my information. See Screenshots at Exhibit A. As a result, I did not go any farther in that process.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 11, 2025            _/s/ Jerry L. Martin_____
                                    Jerry L. Martin

# EXHIBIT A







Francis G.X. Pileggi
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Francis.Pileggi@lewisbrisbois.com
Direct: 302.655.3667

November 14, 2025

*Via CM/ECF and Hand Delivery*

Hon. Maryellen Noreika
U.S. District Judge
District of Delaware
Unit 19, Room 4324
844 N. King Street
Wilmington, DE 19801-3555

Re:   *Neuberger, et al. v. Bushweller, et al.,* Civil Action No. 1:25-cv-01341-MN

Dear Judge Noreika:

In reply to Your Honor's request at oral argument yesterday, this is a letter with citations to address the rights of a seller of firearms in connection with the Second Amendment. Although there is a lack of uniformity among the circuits, the only binding U.S. Court of Appeals in this matter has provided guidance on the issue.

In our Opening Brief in Support of our Motion for Expedited Injunctive Relief, D.I. 4, at 4, we cited to *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3rd Cir. 2010) (rev'd on other grounds, *Bruen*, 597 U.S. 1) ("Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment.")

**App352**

Hon. Maryellen Noreika
November 14, 2025
Page 2

The Third Circuit in the same case provided the following additional instruction on the issue:

> In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it follows that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.

*Id.*

Also in the Complaint we filed in the instant matter, we provided the following additional relevant citations: *McConnell v. Federal Election Comm'n,* 540 U.S. 93, 252 (2003) (Scalia, J., concurring in part, concurring in judgment in part, and dissenting in part) (The First Amendment "right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise.") Complaint, D.I. 1, at ¶ 33; *Luis v. United States*, 570 U.S. 5, 26 (2016) ("Constitutional rights . . . implicitly protect those closely-related acts necessary to their exercise."); Antonin Scalia & Bryan A. Garner, *Reading Law*: *The Interpretation of Legal Texts* 96 (2012) (When "a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate of that act.") Complaint at ¶ 94.

167075349.1

**App353**

Hon. Maryellen Noreika
November 14, 2025
Page 3

Additional Sources

A leading Second Amendment scholar has written that: "Though this question has divided the federal courts, the answer is quite clear: operating a business that provides Second Amendment services is protected by the Second Amendment." David B. Kopel, *Does the Second Amendment Protects Firearms in Commerce?*, 127 HARVARD LAW REVIEW FORUM 6 (April 2014) (copy attached). Professor Kopel discusses in the article a decision from the U.S. District Court for the Northern District of Illinois. That Court ruled that a gun store ban in the City of Chicago violated the Second Amendment, reasoning that it went too far in outlawing the sale of firearms. *Id.* (citing *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F.Supp. 2d 928, 946-947 (N.D. Ill. 2014).

The Tenth Circuit recently held that the regulation of the sale and purchase of firearms is subject to constitutional analysis. *Ortega v. Grisham* 148 F.4d 1134, 1148 (10th Cir. 2025). The Court also noted that other circuits, including the Third Circuit, do not stop at *Bruen's* first step when examining what *Heller* referred to as presumptively lawful restrictions on firearms, such as conditions on the sale of firearms. *Id.* at n.5.

167075349.1

**App354**

Hon. Maryellen Noreika
November 14, 2025
Page 4

We know what at least one of our nation's founders thought on the topic. Thomas Jefferson wrote, "Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them." Secretary of State Thomas Jefferson, letter to George Hammond, British Ambassador to the U.S., May 15, 1793 in 7 THE WRITINGS OF THOMAS JEFFERSON 325, 326 (Paul Ford ed., 1904) (rejecting British demand that U.S. forbid individuals from selling arms to the French).[1]

We are happy to provide any additional citations if the Court requests.[2]

Respectfully,

Francis G.X. Pileggi
(Bar No. 2624)

FGXP:mar
Enclosure (article)

cc:  Clerk of Court (via CM/ECF)
     Jennifer Kate Aaronson, Esquire, Deputy Attorney General (via CM/ECF)
     Austin Evers, Esquire (via CM/ECF)
     Keith A. Walter, Jr. Esquire (via CM/ECF)
     Alexander D. MacMullan, Esquire (via email)

---

[1] We understand that the State will confirm in its letter to the Court today that it will strike sections C, D, and E of the Firearms Training "Guidelines" to address the issue of not following the APA. Striking them does not solve the problem. First, striking those sections leaves open, among other things, what qualifications the training instructors are supposed to have. Second, the State's proposal does not address other regulations it will necessarily promulgate to implement the Permit Bill, including what happens if the SBI "pocket vetoes" an application for the required permit.

[2] Plaintiffs request expedited proceedings in this matter for a trial on the merits and/or briefing on dispositive motions. We will file a formal motion if needed.

167075349.1

**App355**

Harvard Law Review  >  Forum  >  Commentaries

CONSTITUTIONAL LAW    COMMENTARY                    127 HARV. L. REV. F. 230

# Does the Second Amendment Protect Firearms Commerce?

Defending the right to sell and trade arms

**DAVID B. KOPEL**

VOLUME 127    ISSUE 6    APRIL 2014    SEE FULL ISSUE



DOWNLOAD

T HE FIRST AMENDMENT PROTECTS BOTH BOOK BUYERS AND booksellers. Does the Second Amendment protect only people who buy guns, or does it also protect people who sell guns? Though this question has divided the federal courts, the answer is quite clear: operating a business that provides Second Amendment services is protected by the Second Amendment. *District of Columbia v. Heller*[1] teaches that regulation of how firearms are commercially sold enjoys a presumption of constitutionality, which does not extend to prohibitions of firearms sales.

In the lower federal courts, there is a developing split about whether firearms sellers have Second Amendment rights which the courts are bound to respect. Seventh Circuit courts view firearms sellers like booksellers — as holders of constitutional rights. While gun sellers are subject to much stricter regulation than are booksellers, they are both

protected by the Bill of Rights.  Conversely, in the courts of the Fourth Circuit, gun sellers have no Second Amendment rights.

*Brown v. Board of Education*[2] was not exactly a popular decision among some state and local governments, and among some lower court judges.  The same is true of *Heller*.  One form of resistance to *Heller* has been to read the opinion in the narrowest possible way, excluding from Second Amendment protection many normal activities involving firearms.  One such form of resistance is the claim that the Second Amendment does not apply to gun sales.

By this theory, because the Second Amendment is an individual right to have arms for self-defense, the Second Amendment does not apply to corporations that provide services to gun owners, such as selling them guns.  Likewise, since the Second Amendment is a right to have a gun for self-defense, the Second Amendment has nothing to do with anyone who sells or gives away a firearm.

The leading exponent of this theory was the Fourth Circuit panel in *United States v. Chafin*,[3] which stated there is nothing "that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm."[4]  The *Chafin* holding is not binding precedent, since the decision was unpublished.  Nevertheless, a federal district court in West Virginia adopted and followed *Chafin*'s rule.[5]

Likewise, in *Montana Shooting Sports Association v. Holder*,[6] a federal district court stated (albeit in dicta), "*Heller* said nothing about extending Second Amendment protection to firearm manufacturers or dealers.  If anything, *Heller* recognized that firearms manufacturers and dealers are properly subject to regulation . . . ."[7]

The Northern District of Illinois took the contrary position in earlier this year in *Illinois Association of Firearms Retailers v. City of Chicago*.[8]  In 2010, a few days after the Supreme Court ruled in *McDonald v. City of Chicago*[9] that Chicago could not ban handguns,[10] the Chicago City Council repealed the handgun ban and enacted a replacement ordinance that, inter alia, outlawed all gun stores within the city.

The district court ruled that the gun store ban violated the Second Amendment.[11]  The court explained that the plaintiff association of firearms retailers had standing (derivative of the standing that a member firearms retailer would have) to raise Second Amendment claims.[12]  The court determined that Chicago's ordinance went "too far in outright banning legal buyers and legal dealers from engaging in lawful acquisitions and lawful sales of firearms,"[13] and the court struck down the ban on all firearms transfers in the city.  Mayor Emanuel chose not to appeal.

Two other cases within the Seventh Circuit also have addressed the question of whether firearms corporations have Second Amendment rights.  One of these cases challenged another feature of Chicago's post-*McDonald* ordinance, the prohibition of all firing ranges within city limits.  (The ordinance also required that anyone who wanted a gun

permit had to receive live fire instruction at a firing range.) The other addressed a Chicago suburb's ordinance that required a license to sell firearms.

In the first case, *Ezell v. City of Chicago*,[14] Action Target — a corporation that designs, builds, and equips firing ranges — challenged the firing range ban.[15] The City argued that Action Target had no standing because the Second Amendment is solely an individual right.[16]

The Seventh Circuit did not agree: "Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban and is also permitted to 'act[] as [an] advocate[] of the rights of third parties who seek access to' its services."[17] So at the least, corporations in the firearms business had third-party standing on behalf of individuals who wanted to use their services. Moving beyond standing, the court sided with the corporate plaintiff, holding that it was entitled to a preliminary injunction enjoining enforcement of the firing range ban.[18]

Two years later, the Northern District of Illinois applied *Ezell* in a case involving a Chicago suburb's obstruction of the opening of a gun store. In *Kole v. Village of Norridge*,[19] the court announced that it did not need to decide whether gun stores had Second Amendment rights; *Ezell* plainly ruled that such stores could assert the Second Amendment rights of their customers.[20]

Meanwhile, the Tenth Circuit has interpreted *Ezell* broadly, favorably citing it and describing it as a case showing "that an inhibition on a person's ability to perform work constitutes an injury-in-fact."[21]

One of the most-cited post-*Heller* cases has been *United States v. Marzzarella*,[22] in which the Third Circuit upheld under intermediate scrutiny the federal statute prohibiting possession of a handgun with an obliterated serial number.[23] The Third Circuit stated:

> Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment under this reading. *Heller* endorsed "laws imposing conditions and qualifications on the commercial sale of firearms." 128 S. Ct. at 2817. In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.[24]

The final case involving the Second Amendment rights of gun stores and other gun businesses was *Teixeira v. County of Alameda*,[25] wherein the Northern District of California

upheld a zoning regulation that prohibited gun stores in a location where the plaintiffs wished to operate a gun store.[26]  The court pointed out that *Heller* had established a presumption in favor of the validity of conditions and qualifications for the commercial sale of arms.  Based on the facts of the particular case, the court declined to "decide what level of constitutional scrutiny to apply to the (as yet unarticulated) right to sell or purchase guns because as a threshold matter, there are simply no allegations sufficient to rebut the presumption of validity established in *Heller*."[27]  In other words, the gun store owners had Second Amendment rights, but they lost on the merits given *Heller*'s presumption in favor of the kind of gun controls that applied to the storeowners.

Precedents involving other constitutional rights show that businesses that provide constitutionally related services have standing in their own right to challenge statutes that injure them.  For example, in *Planned Parenthood v. Danforth*,[28] abortion providers were held to have standing to challenge a statute that criminalized some of the ways in which they provided abortion services.[29]  They did not need to invoke the third-party abortion rights of their patients.  Indeed, it has long been observed, including by Justice Harry Blackmun, that the rights of *doctors* were central to *Roe v. Wade*.[30]

Likewise, in *American Booksellers Association v. Hudnut*,[31] booksellers themselves successfully brought a First Amendment challenge to an Indianapolis ordinance that criminalized their sale of what the ordinance called "pornography."[32]  The booksellers did not need to rely on the customers' rights as book buyers, but instead asserted their own First Amendment rights.  The Supreme Court summarily affirmed the decision.[33]

On the merits, the abortion doctor plaintiffs in *Planned Parenthood* were partially successful, and the bookseller plaintiffs in *American Booksellers Association* were completely successful.  The key point is that these providers of constitutionally protected goods and services had constitutional rights, and their particular claims were entitled to be tested under the strict standards that apply to restrictions on constitutional rights.

Besides invoking their own rights, businesses can also raise the third-party constitutional rights of their customers.  For example, the beer vendor in *Craig v. Boren*[34] could raise the equal protection rights of its customers against a state law that set different drinking ages based on sex.[35]  The principle goes back to *Pierce v. Society of Sisters*[36] in 1925, where the owners of religious schools had standing to raise the constitutional rights of their students and families, successfully bringing a Fourteenth Amendment challenge against a state law that forbade all private K–12 schools.[37]

In terms of the original meaning of the Second Amendment, the right to engage in firearms commerce is clear.  It is one of the most important reasons why America's political dispute with Great Britain turned into an armed revolution.

In the fall of 1774, King George III embargoed all imports of firearms and ammunition into the thirteen colonies.[38]  The Americans treated the embargo on firearms commerce as

<div align="right">App359</div>

evidence of plain intent to enslave America, and the Americans redoubled their efforts to engage in firearms commerce. For example, the Patriots in South Carolina were led by the "General Committee," which declared: "[B]y the late prohibition of exporting arms and ammunition from England, it too clearly appears a design of disarming the people of America, in order the more speedily to dragoon and enslave them."[39] Writes one early-nineteenth-century historian, "[I]t was therefore recommended, to all persons, to provide themselves immediately, with at least twelve and a half rounds of powder, with a proportionate quantity of bullets."[40]

The British and the Americans agreed that the reimposition of London's rule in the United States required the prohibition of the firearms business. In 1777, with British victory seemingly within grasp, Colonial Undersecretary William Knox drafted a plan entitled *What Is Fit to Be Done with America?* To prevent any future rebellions, Knox planned that the Church of England be established as the official religion throughout America; that Parliament have power to tax America domestically (although there were no Americans in Parliament); and that a hereditary aristocracy be created in America. Another part of the plan was that "the Arms of all the People should be taken away . . . nor should any Foundery or manufactuary of Arms, Gunpowder, or Warlike Stores, be ever suffered in America, nor should any Gunpowder, Lead, Arms or Ordnance be imported into it without Licence."[41]

The opposite of *What Is Fit to Be Done with America?* is the Constitution of the United States of America. No national religion.[42] The tax power solely in the hands of a representative Congress.[43] No titles of nobility.[44] And a guarantee of the right to buy, sell, and manufacture arms.[45]

The Supreme Court's decision in *Heller* comported with the Constitution's original meaning. The *Heller* Court provided a list of "longstanding" laws which were said to be presumptively (not conclusively) constitutional.[46] The inclusion of each item on the list, as an exception to the right to keep and bear arms, provides guidance about the scope of the right itself.

First, the Court affirmed that "felons and the mentally ill" are exceptions to the general rule that individual Americans have a right to possess arms.[47] This exception only makes sense if the general rule is valid. After all, if no one has a right to possess arms, then there is no need for a special rule that felons and the mentally ill may be barred from possessing arms.

The second presumptively constitutional exception to the right to keep and bear arms is in favor of "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."[48] This exception proves another rule: Americans have a general right to carry firearms. If the Second Amendment only applied to the keeping of arms at home, and not to the bearing of arms in public places, then there would be no need to specify the exception for carrying arms in "sensitive places."

**App360**

The third *Heller* exception is "laws imposing conditions and qualifications on the commercial sale of arms."[49] Once again, the exception proves the rule. There is a right to the commercial sale of arms, but it is a right that may be regulated by "conditions and qualifications."[50] As to the noncommercial sale of firearms (e.g., between members of a hunting club), there is no presumption in favor of statutes that restrict this form of the exercise of Second Amendment rights. The same is true for gifts or loans of firearms, since they are not a "sale."

Also, *Heller* approvingly cited[51] the 1871 Tennessee case *Andrews v. State*,[52] which explained that "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms."[53]

The *Heller* rule — that there is a qualified right to the commercial sale of arms — does not utterly forbid statutes governing non-commercial sales, gifts, or loans; but those statutes enjoy no presumption of constitutionality. They would have to be proven constitutional under some form of heightened scrutiny.

Under the original meaning of the Second Amendment, the *Heller* Court was correct to recognize that commerce in arms is part of the Second Amendment right. The Fourth Circuit's bare assertion in *Chafin* that there is nothing in the original meaning about firearms commerce demonstrates only that the Fourth Circuit was unaware of that history.

Moreover, the text of the Second Amendment point to the necessity of commerce in arms. The Second Amendment aims to provide the conditions for "[a] well regulated Militia."[54] State and federal militia statutes of the period were unanimous in requiring all persons subject to militia service[55] to provide themselves with specified types of rifles, muskets, or handguns. In late eighteenth-century America (like at every other period in American history), firearms were not like apple pies, which a typical family could make at home. Firearms were like books or newspapers: they were items of commerce that were nearly impossible to produce without specialized equipment and skill. In order for the militia to be armed, it was necessary that there be thriving business in the commercial manufacture and sale of firearms.

The right to engage in the commercial sale of arms is subject to presumptively constitutional regulation, and even for private noncommercial sales the right is not necessarily absolute. The right to commerce in firearms was one of the rights at issue during the American Revolution, and it is a right guaranteed by the Second Amendment, as the Supreme Court described in *Heller*.

**App361**

[*] Adjunct Professor of Advanced Constitutional Law, Denver University, Sturm College of Law.  Research Director, Independence Institute, Denver, Colorado.  Associate Policy Analyst, Cato Institute, Washington, D.C.  Professor Kopel is the author of fifteen books and over eighty scholarly journal articles, including the first law school textbook on the Second Amendment: NICHOLAS J. JOHNSON, DAVID B. KOPEL, GEORGE A. MOCSARY & MICHAEL P. O'SHEA, FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (2012).  Professor Kopel's website is DAVE KOPEL, https://www.davekopel.org (last visited Apr. 3, 2014).

1. 554 U.S. 570 (2008).

2. 349 U.S. 294 (1955).

3. 423 F. App'x 342 (4th Cir. 2011).

4. *Id.* at 344.

5. United States v. Conrad, 923 F. Supp. 2d 843, 852 (W.D. Va. 2013).

6. No. CV-09-147-DWM-JCL, 2010 WL 3926029 (D. Mont. Aug. 31, 2010) (opinion of Lynch, M.J.), *adopted by* 2010 WL 3909431 (D. Mont. Sept. 29, 2010).

7. *Id.* at *21.

8. 961 F. Supp. 2d 928 (N.D. Ill. 2014).

9. 130 S. Ct. 3020 (2010).

10. *Id.* at 3026.

11. *Ill. Ass'n of Firearms Retailers*, 961 F. Supp. 2d at 946–47.

12. *Id.* at 931 n.3.

13. *Id.* at 930.

14. 651 F.3d 684 (7th Cir. 2011).

15. *Id.* at 692.

16. *Id.* at 696.

17. *Id.* (alteration in original) (quoting Craig v. Boren, 429 U.S. 190, 195 (1976)).

18. *Id.* at 711.

19. 941 F. Supp. 2d 933 (N.D. Ill. 2013).

20. *Id.* at 945 ("[E]ven if the Second Amendment does not protect the sale of firearms directly, [firearms dealers] can still pursue a claim that the Agreement and Revised Ordinance infringe their customers' personal right to keep and bear arms.").

21. Kerr v. Hickenlooper, No. 12–1445, 2014 WL 889445, at *3 (10th Cir. Mar. 7, 2014).

22. 614 F.3d 85 (3d Cir. 2010).

23. *Id.* at 87.

24. *Id.* at 92 n.8.

25. No. C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013).

26. *Id.* at *6.

27. *Id.*

App362

28. 428 U.S. 52 (1976).

29. *Id.* at 62.

30. 410 U.S. 113, 163 (1973) ("[T]he attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated."); *see also* Ronald D. Rotunda, *On Deep Background 41 Years Later:* Roe v. Wade, CHICAGO TRIBUNE, Jan. 22, 2014, https://articles.chicagotribune.com/2014-01-22/opinion/ct-perspec-blackmun-0122-20140122_1_blackmun-roe-v-chief-justice-burger, archived at https://perma.cc/Z5WE-V27A ("*Roe* 'protected the woman's right, *with the physician,* to get an abortion.' Blackmun emphasized the italicized phrase with his voice. He spoke of the case as a doctor's rights case, not a woman's right case. . . . [T]he right was the right of the physician, whom Blackmun assumed was male." (quoting a 1994 interview with Justice Blackmun)).

31. 771 F.2d 323 (7th Cir. 1985).

32. *Id.* at 325.

33. Hudnut v. Am. Booksellers Ass'n, 475 U.S. 1001 (1986).

34. 429 U.S. 190 (1976).

35. *Id.* at 195.

36. 268 U.S. 510 (1925).

37. *Id.* at 534–36.

38. 5 Acts Privy Council 401, *reprinted in* CONNECTICUT COURANT, Dec. 19, 1774, at 3.

39. 1 JOHN DRAYTON, MEMOIRS OF THE AMERICAN REVOLUTION AS RELATING TO THE STATE OF SOUTH CAROLINA 166 (Applewood Books 1969) (1821) (internal quotation mark omitted)., *available at* https://archive.org/details/memoirsofamerica12moul.

40. *Id.*

41. Leland J. Bellot ed., *William Knox Asks What is Fit to be Done with America?, in* SOURCES OF AMERICAN INDEPENDENCE 140, 176 (Howard H. Peckham ed., 1978).

42. U.S. CONST. amend. I.

43. *Id.* art. I, § 7, cl. 1; *id.* § 8, cl. 1.

44. *Id.* art. I, § 9, cl. 8; *id.* § 10, cl. 1.

45. *Id.* amend. II.

46. District of Columbia v. Heller, 554 U.S. 570, 626–27 (2008).

47. *Id.* at 626.

48. *Id.*

49. *Id.* at 626–27.

50. Federal law has long defined what constitutes being "engaged in the business" of dealing firearms. 18 U.S.C. § 921(a)(21)(C) (2012) ("[A] person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but

such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms . . . ."). A person who is "engaged in the business," but who does not have a federal firearms license, is guilty of a federal felony every time he sells a firearm. *Id.* §§ 922(a)(1), 924.

51. *See Heller*, 554 U.S. at 608, 614, 629.

52. 50 Tenn. (3 Heisk.) 165 (1871).

53. *Id.* at 178.

54. U.S. CONST. amend. II.

55. Typically, able-bodied free males at least 16 or 18 years old, and no more than 45 to 60 years old, depending on the statute.

### DOWNLOAD

TOPICS:

**CONSTITUTIONAL LAW**

**SECOND AMENDMENT**

APRIL 11, 2014

# MORE FROM THIS ISSUE

CONSTITUTIONAL LAW

## *Peruta*, the Home-Bound Second Amendment, and Fractal Originalism
A critique of strictly originalist Second Amendment jurisprudence

DARRELL A.H. MILLER

ELECTION LAW

## Voting Rights Law and Policy in Transition
Activists ought not settle for the valiant but modest VRAA

GUY-URIEL E. CHARLES    LUIS E. FUENTES-ROHWER

App364

**ELECTION LAW**

## Dismissing Deterrence

The VRAA's proposed preclearance regime would still be vulnerable to attack

ELLEN D. KATZ

**SEE FULL ISSUE**

| ARCHIVES | FELLOWSHIP | ABOUT |
|---|---|---|
| PRINT | ABOUT | BOARD OF EDITORS |
| FORUM | FELLOWSHIP ESSAYS | ORGANIZATION & HISTORY |
| BLOG | MEET THE FELLOWS | SUBMIT |
| SUBSCRIBE | APPLY | WRITING COMPETITION |

Copyright © 1887-2025 Harvard Law Review. All Rights Reserved. Accessibility

App365



**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX: (302) 577-6630
CRIMINAL DIVISION (302) 577-8500
FAX: (302) 577-2496
FRAUD DIVISION (302) 577-8600
FAX: (302) 577-6499

**KATHLEEN JENNINGS**
ATTORNEY GENERAL

**–Via E-File and Hand Delivery**

The Honorable Maryellen Noreika
United States District Court for the
District of Delaware
844 North King Street
Wilmington, DE 19801

*Re:*   *Neuberger, et al.* v. *Bushweller, et al.*, No. 1:25-cv-01341

Dear Judge Noreika:

On behalf of Defendants in the above-captioned case, I submit the enclosed information following the Court's November 13, 2025 motion hearing and the Court's same-dated minute entry.

**Defendants Agree to Strike Firearms Training Course Guidelines**

The Court expressed concern that even though *these* Plaintiffs had not so alleged, that some individuals could be dissuaded from applying for a permit based on the Guidelines that establish a pre-approval process for trainers and training courses. In order to extinguish any potential misunderstanding, Defendants will strike sections IV.C–E from the Delaware State Police Permit to Purchase Firearms Training Course Guidelines. *See* D.I. 5-1. Defendants commit that the language will be removed from the live webpage (https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/09/Training-Course-Guidelines.pdf) no later than 5:00 p.m. ET today, November 14, 2025. As described in the accompanying Declaration, *see infra*, online content will also be updated to clarify that pre-approval of training courses is not required for a course or an instructor to satisfy the P2P requirements. These changes are also underway, but may require one or two business days to execute.

**Supplemental Declaration Submits New Information for the Court's Benefit**

Defendants' also submit a Supplemental Declaration of Sargeant Jason L. Stevenson (the ***Supplemental Declaration***) to bring four pieces of information to the Court's attention.

First, the Supplemental Declaration clarifies that a training course taken with an instructor that is not listed on the "Approved List of Firearms Training Instructors" found on the Permit to Purchase website will be accepted for the permit application so long as the course meets the

<p align="right">**App367**</p>

Statute's requirements. Supplemental Declaration at 6. The SBI will contact the applicant and/or instructor to review the instructor's training course curriculum and ensure it comports with the requirements of the Statute. *Id.*

Second, the Supplemental Declaration explains changes that will be made to the Permit to Purchase website to improve useability. *Id.* at 8–10. These changes include, *inter alia*, providing additional information about each instructor on the "Approved List of Firearms Training Instructors" to assist with choosing and contacting an instructor, and clarifying SBI's business hours for purposes of calling the helpline. *Id.* at 9(f), (g). Defendants reiterate that Plaintiffs' declarations filed with their Reply confirm that none of these changes is necessary for Plaintiffs to locate training courses or to apply for and receive a permit, but rather are being made to respond to usability feedback and further explain the application process.

Third, the Supplemental Declaration clarifies that by statute, 11 Del C. § 1448D(h & i), SBI must and will, either grant or deny a permit to purchase within 30 days of submission of a completed application, and will notify the applicant of same, including, if the application is denied, providing the reasons for the denial.

Finally, the Supplemental Declaration provides further confirmation that the P2P system is working based on the experience of a non-exempt Delaware citizen who recently applied for, and received within one day after applying, a permit. *See id.* at 11–23. A copy of the citizen's permit and training certificate are attached to the Supplemental Declaration. *Id.* at Exs. A & B.

## Seller Plaintiffs' Second Amendment Claims Must Fail

Although Defendants reserve the right to seek the Court's leave to file a response to Plaintiffs' letter brief today regarding the Second Amendment claims by Plaintiffs Bruce C. Smith and BKK Firearms (**Seller Plaintiffs**), Defendants submit that sellers have no cognizable Second Amendment "right to sell." Vendors may have other claims under appropriate circumstances, but they have not pleaded any here. This underscores the effect of Plaintiffs' decision to bring this new action blending the buyers in *Neuberger I* with the new seller Plaintiffs here. All Plaintiffs in this action allege undifferentiated Second, Fourth, and Void for Vagueness claims despite distinct circumstances. Defendants, and the Court, are faced with the unnecessary task of parsing what are very different claims and arguments.

As this Court wrote in *Rigby v. Jennings*, in *Heller* "the Supreme Court identified a non-exhaustive list of presumptively lawful regulatory measures that included laws imposing conditions and qualifications on the commercial sale of arms. Such laws comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms. Of course, not every regulation on the commercial sale of arms is presumptively lawful . . . . [A] court necessarily must examine the nature and extent of the imposed condition." 630 F.Supp.3d. 602, 612-13 (D. Del. 2022) (internal citations and quotations omitted). But that examination focused on the impact of individuals to "keep and bear" arms.

**App368**

Here, even if the Statute created a system where no firearms could be sold (*à la Heller*)— which it does not—individuals seeking to exercise the right to "keep and bear" would have a claim, not individuals seeking to sell firearms. *See, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) ("Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons."); *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) ("[The defendant] has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm. Indeed, although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm."); *United States v. King*, 646 F.Supp.3d 603, 607 (E.D. Pa. 2022) ("Even if the Court assumed that there is an implicit right in the Second Amendment to buy and sell firearms in order to keep and bear arms, that is not the same thing as a right to buy and sell firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. In other words, the Second Amendment does not protect the commercial dealing of firearms."); *see also Gazzola v. Hochul*, 645 F.Supp.3d 37, 64-65 (S.D.N.Y. 2022) (holding that "the individual right secured by the Second Amendment [does not] appl[y] to corporations or any other business organizations").

Under the Third Circuit's holding in *Delaware State Sportsmen's Association v. Delaware Department of Safety & Homeland Security*, even *if* the Seller Plaintiffs could argue they have a cognizable Second Amendment right (and have adequately pleaded it in their Complaint and raised in their Motion, which Defendants submit they have not), this Court should be reluctant to enter a preliminary injunction absent extraordinary circumstances where Plaintiffs have made a clear showing on all elements of Rule 65. *See* 108 F.4th 194, 200, 202 (3d Cir. 2024). The foregoing shows they have not done so as a matter of law. On the facts and suggestions of irreparable harm, as noted during the hearing, even if some individuals have difficulty with the P2P process, Seller Plaintiffs retain a broad potential customer base for handguns. For example, there are more than 30,000 Carrying Concealed Deadly Weapon permits authorized in Delaware. *See* Concealed Deadly Weapons, CCDW Granted and Denied Filing Statistics, Del. Sup. Ct., *available at https://courts.delaware.gov/forms/download.aspx?ID=125408.* And the Statute only requires a permit for the purchase of handguns, not other firearms (e.g., shotguns, rifles), firearms accessories, and other weapons that the Seller Plaintiffs may sell. *See generally* Del. C. § 1448D.

Respectfully submitted,

*/s Jennifer Kate Aaronson*

Jennifer Kate Aaronson (#3478)

**App369**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.
MARTIN; WILLIAM R. HAGUE, JR.;
BRUCE C. SMITH; BRIDGEVILLE KENPO
KARATE, INC. d/b/a BKK FIREARMS;
DELAWARE STATE SPORTSMEN'S
ASSOCIATION, INC; and BRIDGEVILLE
RIFLE & PISTOL CLUB, LTD.,

        Plaintiffs.

      v.

JOSHUA BUSHWELLER, in his official
capacity as Cabinet Secretary, Delaware
Department of Safety and Homeland Security;
and COL. WILLIAM CROTTY, in his official
capacity as superintendent of the Delaware
State Police,

        Defendants.

Civil Action No. 1:25-cv-01341-MN

## SUPPLEMENTAL DECLARATION OF SERGEANT JASON L. STEVENSON

I, Jason L. Stevenson, affirm the truth of the following representations under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 and have personal knowledge of the facts and events referred to in this Declaration.

2.    I submit this Supplemental Declaration in support of Defendants' Opposition to Plaintiffs' Motion for Expedited Injunctive Relief.

3.    I am a sergeant in the Delaware State Bureau of Identification ("SBI"), a unit of the Delaware State Police. I have been assigned to SBI's Permit to Purchase ("P2P") Section since

February 2025 and have been responsible for implementing the P2P Program. The P2P Section reviews applications for, and issues, handgun purchasing permits. The P2P Section was created in connection with Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which becomes effective on November 16, 2025.

4.    I previously submitted a Declaration in support of Defendants' Opposition to Plaintiffs' Motion for Expedited Injunctive Relief dated November 10, 2025 ("First Declaration"). I submit this Supplemental Declaration in further support of Defendants' Opposition.

### List of Approved Instructors

5.    The    Delaware    State    Police's    P2P    website    (available    at https://dsp.delaware.gov/permit-to-purchase/) includes a list of approved firearms training instructors (available at https://dsp.delaware.gov/wp-content/uploads/sites/118/2025/11/Permit-to-Purchase-List-of-Approved-Firearms-Trainers-11102025.pdf), which was last updated on Monday, November 10, 2025. The purpose of providing, and regularly updating, this list of approved instructors is to make signing up for a training course more convenient to the public. In other words, the list includes *pre*-approved providers of trainings.

6.    However, an applicant may submit a certificate of completion from a training course taught by an instructor not found on the pre-approved list. In those circumstances, SBI will then contact the applicant and/or instructor to review that instructor's qualifications and/or course curriculum. If the instructor and curriculum satisfy the requirements listed in 11 Del. C. § 1448D(f)(4), the instructor and/or course will be approved. If an instructor and/or course does not satisfy the statutory requirements, the P2P Section will contact the applicant and inform them of the reason and review potential options with the applicant to satisfy the requirements.

7.    An applicant may contact the P2P helpline at (302) 741-2800 during SBI's business hours or email DSP_SBIP2PMail@delaware.gov to confirm whether a course taught by an

**App371**

instructor not on the pre-approved list qualifies before enrolling. SBI's business hours are currently Monday through Friday, 8:00 a.m. to 4:00 p.m. ET, and are expected to expand beginning November 16, 2025.

### Forthcoming Revisions to P2P Website and Guidelines

8. SBI regularly responds to applicant, FFL, and instructor feedback about the usability and clarity of its online resources and guidance.

9. SBI will make the following changes to the P2P website and Firearms Training Course Guidelines:

 a. Contact information for the helpline will be added to the homepage directing anyone with questions regarding any information found on this page to call the P2P helpline at (302) 741-2800 during business hours (currently Monday through Friday, 8:00 a.m. to 4:00 p.m.) or email DSP_SBIP2PMail@delaware.gov.

 b. "CCDW – Carrying a Concealed Deadly Weapon" Section: Language will be added to this section clarifying that, per the statute, CCDW holders are not required to obtain a P2P and transferors, including licensed dealers, licensed manufacturers, or licensed importers, and their employees, or any other person who sells, transfers or delivers a firearm, may lawfully sell or deliver a handgun to a CCDW holder who does not have a P2P.

 c. "Applicant" Section:

  i. A list of the statutory requirements for the training course will be added.

  ii. Language will be added clarifying that training courses taught by instructors not on the pre-approved list may also satisfy the statutory requirements, and providing contact information for applicants who have questions about whether a specific course qualifies.

iii. Language will be added clarifying that SBI will issue a decision—approving or denying—an applicant within 30 days of receiving a complete application; in the event an application is denied, SBI will notify the applicant of the decision; applications submitted without all required steps will not be processed; and applicants will be notified of any missing items and may resubmit once requirements are met.

iv. Language will also be added explaining that paper applications are available at all Delaware State Police Troop locations and can be submitted at the P2P office with all required documents.

d. "Certified Firearms Training Instructors" Section:

i. Language will be added explaining that instructors may use the resources provided on the P2P website to confirm that they have the required training certification and that the course(s) they offer satisfy the statutory curriculum requirements. Language will also be added explaining that, if an applicant submits a certificate from a course that is not pre-approved, the P2P Section will contact the instructor to review the course curriculum and determine if it meets the statutory requirements.

ii. Subsections C, D, and E of Section IV of the Firearms Training Course Guidelines, which described the pre-approval process, will be removed to ensure there is no misunderstanding that pre-approval is required for a course to satisfy the statutory requirements.

e. "Frequently Asked Questions" Section: A question will be added asking whether a CCDW license holder can purchase a handgun without first acquiring a permit to purchase. An answer will be provided explaining that, per the statute, CCDW

**App373**

holders are not required to obtain a P2P and transferors, including licensed dealers, licensed manufacturers, or licensed importers, and their employees, or any other person who sells, transfers or delivers a firearm, may lawfully sell or deliver a handgun to a CCDW holder who does not have a P2P.

f. "Link of Approved Firearms Instructors" Section: Language will be added to the top to clarify that training instructors are listed in alphabetical order and that all instructors on the list are equally qualified to conduct firearms trainings. SBI is evaluating ways to add additional information to facilitate locating and contacting each instructor, making it easier for applicants to choose and contact an instructor.

g. "Permit to Purchase section contact info" Section: Up-to-date business hours will be added.

h. The "Link to Permit to Purchase regulations" Section will be removed.

10. SBI will initiate implementing these revisions on November 14, 2025 and plans for the revisions to the Guidelines to be completed no later than today by 5:00 p.m., and the other web content changes to be complete within a few business days.

## Recent P2P Applicant

11. As a supplement to my First Declaration describing evidence that the resources for obtaining a P2P Permit are functioning, including for civilians who are not exempt from training or other requirements, I provide the following information about an individual who is not exempt from the P2P requirements and who recently applied for and received a permit to purchase. This individual is not one of the specific individuals with civilian permits I referenced in my First Declaration.

12. The following is based on my review of the application materials and my conversation with the individual.

13. The individual heard about the permit to purchase statute weeks ago and knew it was going to soon go into effect. After seeing a flyer about the P2P program at Best Shot, a Delaware shooting range, he decided to complete the requirements and apply for a permit before the statute took effect.

14. He therefore completed fingerprinting with IdentoGO a few weeks before completing the other requirements to obtain a permit.

15. He confirmed that he visited the P2P Website on or after October 28, 2025, and encountered no issues or problems.

16. He stated that by clicking on the link titled "Applicant," he was provided detailed information about the process and instructions on the steps to apply.

17. On November 1, 2025, he successfully completed a training course conducted by one of the approved trainers on the list I mention above.

18. On November 2, 2025, he submitted the online P2P application.

19. On November 3, 2025, he received a phone call from an SBI analyst. The analyst asked a question about one of his responses, and the applicant provided the requested additional information that same day.

20. On November 4, 2025, SBI notified him by email that his P2P application was approved. The email message also stated that the email approval was a valid permit until he received a permit to purchase identification card, which would be mailed to him.

21. The individual stated that using the website and completing the application process was not difficult at all.

22. A redacted copy of the permit is attached as Exhibit A to this declaration.

23. A redacted copy of the training certificate is attached as Exhibit B to this declaration.

**App375**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 14, 2025

Jason L. Stevenson

**App376**



# Armed and Educated

Date: 11/1/2025

Firearms Training, House Bill No 446

Reference: ███████████████████

To Whom It May Concern,

As part of the requirements for the application for a permit to carry concealed deadly weapons, the above-listed applicant has had training in the following:

- Instruction regarding knowledge and safe handling of firearms.
- Instruction regarding safe storage of firearms and child safety.
- Instruction regarding knowledge and safe handling of ammunition.
- Instruction regarding safe storage of ammunition and child safety.
- Instruction regarding safe firearms shooting fundamentals.
- Live fire shooting exercises conducted on a range, including the expenditure of a minimum of 100 rounds of ammunition.
- Identification of ways to develop and maintain firearms shooting skills.
- Instruction regarding federal and state laws pertaining to the lawful purchase, ownership, transportation, use, and possession of firearms.
- Instruction regarding the laws of this State pertaining to the use of deadly force for self-defense; and
- Instruction regarding techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution.
- Instruction regarding Suicide recognition and prevention.

As a firearms Instructor who is trained by the United States Concealed Carry Association, and who has been approved by the Delaware Attorney General's Office as a CCDW instructor, I certify the above stated applicant has satisfactorily completed all the above requirements while attending an 8-hour course.

Richard Rustin Parker Jr
Concealed Carry Instructor

TALBERT ALLEN BARNES
MY COMMISSION
EXPIRES
4/17/2027
NOTARY PUBLIC
STATE OF DELAWARE

**App377**



Permit to Purchase

600 S. Bay Rd, Suite 1, Dover, DE 19901

## Firearms Training Course Certification

**Applicant Name** ██████████     ██████████     ██████
                 (Last)                      (First)            (MI)

**Address** ██████████
                  (Street)

██████      ██████     ██████
                (City)                     (State)          (Zip)

**Date of Birth** 08/27/1962

**Date Training Course Completed** 11/1/2025

**Instructor** Richard Rustin Parker Jr
                                         (Print Name)

*(Signature)*

As the instructor, by signing this form, I verify that the above-named applicant has successfully completed an approved firearms training course that satisfies the requirements to obtain a handgun qualified purchaser permit under 11 Del C. § 1448D.

*[Notary seal: TALBERT ALLEN BARNES — MY COMMISSION EXPIRES 4/17/2027 — NOTARY PUBLIC — STATE OF DELAWARE]*

# Certificate of Completion

is hereby granted to

████████████████████████████

to certify that he/she has completed the

## Delaware Concealed Deadly Weapon Course

### Granted: November 1, 2025

Richard Rustin Parker Jr
USCCA Instructor #: 2046459

**Total Hours: 8**

*(Notary seal: TALBERT ALLEN BARNES, MY COMMISSION EXPIRES 4/17/2027, NOTARY PUBLIC, STATE OF DELAWARE)*

App379





Francis G.X. Pileggi
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Francis.Pileggi@lewisbrisbois.com
Direct: 302.655.3667

November 4, 2025

*Via CM/ECF and Hand Delivery*

Hon. Maryellen Noreika
U.S. District Judge
District of Delaware
Unit 19, Room 4324
844 N. King Street
Wilmington, DE 19801-3555

Re:    *Neuberger, et al. v. McQueen, et al.*, Civil Action No. 1:24-cv-00590-MN
      *Neuberger, et al. v. Bushweller, et al.*, Civil Action No. 1:25-cv-01341-MN

Dear Judge Noreika:

I am counsel for Plaintiffs in the two above-referenced related actions.

The pending Motion to Dismiss in the first case is now moot for the following reasons. The second case was filed on November 3, 2025. Both cases challenge the constitutionality of Delaware's Permit-to-Purchase Handgun statute ("Permit Bill"), which is scheduled to be enforced beginning November 16, 2025. As Your Honor may be aware, Plaintiffs have moved for expedited injunctive relief in the new action to enjoin that enforcement. I write briefly to explain why a new complaint was filed rather seeking injunctive relief or an amendment in the first action.

Since the first case was filed, several factual allegations in those pleadings have become obsolete, or moot, or no longer applicable. Also significant new developments have arisen—most notably, the State's failure to establish the infrastructure necessary to implement or administer the permit-to-purchase system enacted under the Permit Bill.

Given the resulting immediate and irreparable harm—and the urgency of obtaining relief before the law's effective date—the time required to seek an amendment, and to determine whether an amendment was allowable, would be incompatible with the exigent timetable for expedited injunctive relief sought in the new case. We are considering the most efficient means of addressing

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA
166545237.1

App381

Hon. Maryellen Noreika
November 4, 2025
Page 2

the overlap between the two cases, but, of course, would appreciate the Court's procedural instruction on this unusual situation.

Respectfully,

Francis G.X. Pileggi
(Bar No. 2624)

FGXP:mar

cc:     Clerk of Court (via CM/ECF)
        Jennifer Kate Aaronson, Esquire, Deputy Attorney General (via email)
        Keith A. Walter, Jr. Esquire (via email)
        Thomas Neuberger, Esquire (via email)

**App382**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


THOMAS S. NEUBERGER; JERRY L.      )
MARTIN; WILLIAM R. HAGUE, JR.;     )
BRUCE C. SMITH; BRIDGEVILLE        )
KENPO KARATE, INC., d/b/a BKK      )
FIREARMS; DELAWARE STATE           )
SPORTSMAN'S ASSOCIATION, INC.,     )
and BRIDGEVILLE RIFLE & PISTOL     )
CLUB, LTD.,                        )
                                   )
          Plaintiffs,              )
                                   ) C.A. No. 25-1341(MN)
v.                                 )
                                   )
JOSHUA BUSHWELLER, in his          )
official capacity as Cabinet       )
Secretary, Delaware Department     )
of Safety and Homeland Security;)
and COL. WILLIAM CROTTY, in        )
his official capacity as           )
Superintendent of the Delaware     )
State Police,                      )
                                   )
          Defendants.              )


                    Thursday, November 13, 2025
                    2:00 p.m.
                    Motion Hearing


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge

APPEARANCES:

                    LEWIS BRISBOIS BISGAARD & SMITH LLP
                    BY:  FRANCIS G.X. PILEGGI, ESQ.
                    BY:  ALEXANDER D. MacMULLAN, ESQ.
                    BY:  KEITH A. WALTER, JR., ESQ.


                              Counsel for the Plaintiffs



                    DELAWARE DEPARTMENT OF JUSTICE
                    BY:  IAN ROBERT LISTON, ESQ.
                    BY:  JENNIFER-KATE M. AARONSON, ESQ.

                    -and-

                    FRESHFIELDS
                    BY:  AUSTIN EVERS, ESQ.
                    BY:  JULIA WANG, ESQ.
                    BY:  DANIEL HODGKINSON, ESQ.


                              Counsel for the Defendants




                    - - - - - - - - - - - - -




                    COURTROOM DEPUTY:  All rise.  The United States
District Court for the District of Delaware is now in
session.  The Honorable Maryellen Noreika presiding.

                    THE COURT:  All right.  Good afternoon,
everyone.  Please be seated.  Let's start with some brief
introductions.

                    MR. PILEGGI:  Good afternoon, Your Honor.

Francis Pileggi from Lewis Brisbois for the plaintiffs. And with me are Alex MacMullan and Keith Walters.

THE COURT: All right. Good afternoon.

MR. LISTON: Good afternoon, Your Honor. Ian Liston from the Department of Justice on behalf of the defendants. With me from our office is Jennifer Aaronson, and from the Freshfield firm, Austin Evers, Julia Wang and Daniel Hodgkinson.

THE COURT: All right. Good afternoon to all of you as well.

So I thank you for getting your papers in on an expedited basis and being here today. We have reviewed everything and I will let you make whatever presentations you want.

Two things that I do want focused on from the plaintiffs, I need you to focus on why the non-new plaintiffs, why this isn't just an end run around the court ordered stipulation that was made in the prior case.

And for the defendants, I need you to focus on the specific provisions that are being challenged, the ones about the -- that the SBI has to approve the program, has to approve the instructor before the permit, why -- those are not regulations. I read the cases that you cited to me where the state court found that certain things were not required to be done by regulation because they were carrying

out the statute.  As I read the statute here, the statute is much broader.  And so just so you can think about it, for example, if someone took a firearms course that's given by the FBI, or if someone took a firearms course that is one of the -- from one of the courses that's currently approved, but they did it three years ago, so then it wasn't approved before, so now as I understand it that person would have to take it again.  And so I need to understand what you're relying on to say that those particular things, I think it's C, D and E, are not regulations that should be subject to the review and comment proceeding.

And it seems like at least in the cases that I read, one was about sort of implied discretion to do a regulation, but then there were two *DeMatteis*, I think, and I want to say Freshfield, but that's not it, it's another one of those, it's Free something.

MR. EVERS:  *Free-Flow*, Your Honor.

THE COURT:  *Free-Flow*, that it seemed like there was a little bit -- that the facts were different there.  So I need to understand what the government is relying on.  But anything else that you all want to talk about in addition is fine, but you must discuss those because that's where I'm having some issues.

Okay.  Let me hear from the plaintiffs first.  It's your motion.

MR. PILEGGI: May it please the Court, good afternoon, Your Honor. Francis Pileggi of Lewis Brisbois for the plaintiffs. If the Court allows it, I would like to address your question after my introduction, but if the Court prefers, I'll answer your question right now.

THE COURT: As long as your introduction is brief enough that I'm not going to forget my question, you can do it that way.

MR. PILEGGI: I wrote it down, Your Honor. Thank you.

Your Honor, thank you for scheduling this argument today. This case is about a fundamental right that the U.S. Supreme Court said is a natural right that everyone is born with, specifically the Court said at the core of the right to keep and bear arms is the right of self defense which is a natural right. And like a natural right, the U.S. Constitution could not grant something that people already have that recognized it as an existing right. And the government here, the state is treating that natural right like it were a government gift like food stamps. And eighteen months ago, they authorized the legislation that would develop obstacles to exercising that constitutional right.

And due to their lack of planning, the state waited until the last minute to develop the details of what

these obstacles would be that need to be satisfied. And almost every day since filing this motion there have been new factual developments.

And now they say that because a few permits have been issued, we should be happy and go home. But our declarants, one of whom has been an officer of this Court for about half a century, explained in detail where they just can't figure out the online -- they can't navigate the online procedures. And maybe they're just not smart enough, but I think most lawyers should have average intelligence and I think that if they can't figure it out, that might be an indication that it might be too hard for the average person.

Plus, Your Honor, the required training only became publicly available less than two weeks ago. If I understand the submissions by my friends for the state, it was only earlier this month, less than two weeks ago, that the required courses became publicly available, that the application itself became available. And the statute gives the state thirty days nominally to review these statutes. So by that timeline, they didn't even provide enough time for the thirty days. But the statute doesn't even impose a penalty to the state if they take more than thirty days. And it doesn't provide any recourse to the applicant if the state takes more than thirty days.

I want to get to Your Honor's question. I just want to make one other point if I may before I get to Your Honor's question, if that's okay.

When we submitted this motion for expedited relief, Your Honor, based on press releases by the state and other publicly available information, there were no permits issued. And there were -- there was no application, as one of our declarants say, the website says application not yet available or something to that effect. And so the first part -- so the second part of our two-part proposed form of order is now no longer current, but the first part is still current and I'll paraphrase from the form of order. We're seeking relief to ask the state to defer at least, and again, this is just interim relief, defer the enforcement of the statute to give a reasonable amount of time to eligible persons to apply and complete the prerequisites, at least thirty days, not less than two weeks.

And I think this -- the question about whether or not this is a ban -- and this is my last point before I go back to the procedural question. I think instructive of whether or not this is a ban is the reasoning in the Delaware Supreme Court decision in *Bridgeville Rifle and Pistol Club v. Small*. That case involves a ban of all firearms in state parks and forests with a small exception for hunting on certain days of the year under certain

conditions. The Supreme Court of Delaware determined that that was the same net effect, or substantially equivalent to a ban. And I think that reasoning applies at least to these plaintiffs. To the extent that they've issued a small number of permits, which based on the information we have, and we have asked for a lot of information we haven't gotten, it appears that they're mostly insiders who were exempt from a lot of the most onerous requirements such as the firearms training guide because they got their permits apparently on the first day the permits became available. And I don't know how they could have gone through the fingerprinting or the training process unless they were exempt. But anyway, the point I'm trying to make at least for these plaintiffs and similarly situated people, it's the same net effect as a ban because there is not enough time to get all the requirements satisfied before the effective date.

So let me get to Your Honor's question. I'm sorry I didn't address it directly, but I just wanted to get a few points out.

There wasn't enough time for us to seek expedited relief and to file a motion to seek to amend, but in addition to that, we have two new plaintiffs. But in addition to that, Your Honor, I think there is a simple solution and we could file a motion to consolidate the

cases. But because of the passage of time, and I'm not assigning any blame here at all, Your Honor, but when we filed our complaint initially eighteen months ago, the state said you're too early. It's premature. The issue isn't ripe. And now eighteen months later since we filed the first complaint, now their position is well, you might not be too late, but there is nothing to see here. Move along.

THE COURT: Why did you then agree? You're the ones who stipulated that this was it. You could have said we're not going to agree to that, Your Honor, and we shouldn't be forced to agree to that because based on their arguments, you know, I might have found if I had turned to the motion in the summer that there was no standing and maybe I would find differently now.

So I mean, part of this is you agreed. What am I supposed to do about it?

MR. PILEGGI: You're right, Your Honor. But I think the short answer -- I'll give you a short answer and then a long answer. My two-part short answer before I give you a longer answer is things have changed in the last eighteen months.

THE COURT: So what? I mean, so what? Right? You didn't -- no one put the proverbial gun to your head and said you had to agree to that. You didn't have to agree to it. There is lots of things that when things change, events

change, people wish they hadn't done something but they did agree to it.

So what's number two of your short answer.

MR. PILEGGI: Number two is there is no harm if we consolidate the two cases --

THE COURT: There is no harm, except that you guys are making representations to me, right, and you want me to put in effort, which I have, in looking through your complaint because there is a motion to dismiss. At some point you can either amend and say we're going to stick to it or you can, you know, seek leave to amend, or if I dismissed it, you could have sought leave to amend. I don't understand how you say well, we agreed to it, but we didn't really mean it. I mean, that to me makes no sense whatsoever.

MR. PILEGGI: Well, Your Honor, we did mean it, we did mean it when we entered into it --

THE COURT: You know what, if you didn't have the foresight to know that things may change, then that was just a dumb move. I don't understand, you're sitting here saying oh, one of the plaintiffs is a lawyer who has been in front of this Court for many years. Everyone knows that things change. And when you make a blanket promise, and it's not just a stipulation, I think you all asked me to order it. I mean, you're treating it like it was nothing.

It's a court order. It's not nothing.

MR. PILEGGI: Your Honor, with all due respect, you're a hundred percent right. Maybe it wasn't the smartest decision I ever made to agree not to amend it, but let's just say there was no stipulation and it was just a court order and the court order was you can't amend it. My understanding is that it wouldn't prevent me from then going to the court and making a motion to modify the court order.

THE COURT: Which I don't have.

MR. PILEGGI: You're right, Your Honor. And procedurally I'm not aware --

THE COURT: Instead I have this kind of end around. So not only -- so I don't have that motion in front of me. Instead I have to deal with reading pages and pages and pages of stuff and them using their pages to talk about things that really don't help me out with the substance of your motion.

MR. PILEGGI: Well, Your Honor, I'm not aware of a procedural way that we could have gotten the expedited treatment through a motion to amend.

THE COURT: Well, maybe you might not be able to get expedited treatment because you tried an end around around a court order and that's going to procedurally bar you from it. Maybe it would have been better if you were just upfront about it and you moved to amend and said we

need this and these other things to be included in the expedited proceeding. I don't know, but just kind of like doing this backdoor thing doesn't really make me feel all that warm and fuzzy about things.

MR. PILEGGI: Well, I apologize, Your Honor, if there was a better way procedurally to tee it up, but as soon as we filed it, we made the Court aware of it.

And the other point we wanted to make is I think the prevailing theme throughout all of the pending motions to dismiss in the other case was that it wasn't ripe. If nothing else, that part of the motion to dismiss argument about ripeness it seems to me would be a waste of time for the Court and the parties to address when because of the eighteen months that have gone by, I don't think they would even suggest it's no longer a ripe issue, maybe they're saying for other reasons we're not entitled to the relief we request, but if nothing else, the prevailing theme into that motion to dismiss is moot. The substantive issues aren't moot, but I don't think it would be a useful application of the Court's resources or the parties to fight about a motion to dismiss that because of the passage of time is no longer for lack of a better word ripe.

THE COURT: Okay. Anything else?

MR. PILEGGI: That's all, Your Honor. Thank you.

MR. EVERS: Good afternoon, Your Honor. My name is Austin Evers. I'm from the Freshfield firm and I'm representing the state today. I will get right to your APA question, but I did want to start with one key point. Ironically because we don't think you ever have to reach all the elements of a preliminary injunction standard here, it's possible we walk out of the courtroom today not speaking about the public issue and we want to put that up front.

This statute has two core issues. One is to create a permitting scheme to allow people to buy and sell handguns. It's not a total ban. It's not written as a total ban. It's not operating as a total ban. The second, it's designed to improve public health and address real threats to the public safety. Suicide by handgun is a real problem, nationally and in the states. The states that have statutes likes this see a dramatic fifty percent reduction in suicide by handgun. A preliminary injunction against the statute, I'll admit I'm not entirely sure what they're asking for today or applied to whom, but an injunction of this statute will result in public harm. I wanted to put that up front.

With regard to the APA, we start with there is actually not an APA claim before you. These attorneys know how to bring an APA claim in Delaware. They have done so before. There is no APA --

THE COURT: No, but they've again, backdoored an APA claim where they're saying you don't have a sufficient infrastructure in place. And part of what they're saying is you need to have regulations. And in the opening brief they were saying you need to have regulations because the statute says you have to do it in thirty days. Thirty-one days go by, they don't hear anything, no one has a clue what to do and I need you to address that.

The thirty-one days go by and the director has determined we're not going to give a permit, I don't know what happens at that point. I don't know when the person understands you're not getting a permit or do you just like pocket veto the application? So they're basically saying look, all of this, all of these sort of open questions suggest there is no infrastructure. And as I understand the state is coming back and saying look, we don't need infrastructure, the statute says at the end that we may implement regulations, but we don't have to. And I understand that.

Where I get a little confused is then when they come back and they start pointing to specific things like the SBI must pre-approve thing, that does start catching my attention that it's a little bit -- like to me if you look at the language of the statute, the statute says that the director doesn't give a permit to anyone who hasn't within

five years taken an approved course. Right? And so okay. What's weird to me is someone could have taken a clearly approved course three years ago. Within the statute that person would not be exempt from the permitting requirement, but because of this regulation, they might be. And so at least the gun sellers, who are plaintiffs, are in a position of saying look, someone is coming to me and they say I took an FBI approved course or I took a course by a person the SBI approved, and I'm not allowed -- I can't get a permit because -- I fit within the statute, I fit within the statute and these bureaucrats won't give me a permit. And I don't see how that is clearly within the statutory language that fits within any of the cases that you cited. That's my real problem with it. Not, you know, the sort of in terms of -- and I do want to talk to you about what happens if nothing happens in thirty days, what that is, but the real problem I have is for me to understand your argument that you don't have to go through notice and comment, APA doesn't apply, I read the cases as saying you need to have authority in the statute. And it doesn't come up -- it doesn't take very long for me to say this is kind of -- this authority is not in the statute because this authority is actually keeping people who under the statute could, should, in fact, must be permitted from getting a permit.

MR. EVERS: Let me see if I can --

THE COURT: And that problem also -- sorry. That problem also kind of dovetails with the complaint that the plaintiffs have which is we couldn't even get -- it's only been two weeks since they approved anyone. And so that it starts to -- that's what starts to -- when you're doing things that keep -- it's a shall issue, and I think you have a good argument on that. But when you're saying shall issue but we're doing things that take you outside of what the legislature did, I don't see why you wouldn't need some notice, or you know, review and comment.

MR. EVERS: I appreciate all of that, Your Honor. Let me see if I can unpack it. I have I think two points at the outset. I will reiterate, we think that they -- they haven't asked you to invalidate any regulation. There is no APA claim. I think that matters. You said they are backdooring it. I don't think they can. They're not even seeking relief under the regulations. But if you'll allow me --

THE COURT: But if --

MR. EVERS: I can also address the merits of the actual --

THE COURT: My problem is that -- my problem is then assume -- assume that I have a problem with that regulation.

MR. EVERS: Guideline.

THE COURT: C, D and E. Just those parts.

MR. EVERS: You mean of the firearm guidelines?

THE COURT: The guidelines. Okay. So let's assume that that one I don't have a good feel that it fits within an exemption for having to be more than just somebody says it, like you have to have the review and process.

Then you're saying well, they haven't challenged that, so then I am -- so let's say I deny a preliminary injunction because I say they haven't shown me the statute as written is unconstitutional. I might agree. But then what do I do with the fact that I know that the statute as written is not necessarily how it's being implemented and the way it's being implemented, which is a guy who got his -- let's say a guy took an instruction course on October 30th.

MR. EVERS: And I can actually speak directly to that question, Judge. You know, it feels a little bit like we're litigating the entire case --

THE COURT: I'm sorry about that.

MR. EVERS: I'm comfortable with it. I can speak to it. We actually have and we prepared a declaration letter today if this isn't sufficient, we have evidence of civilians, not exempt individuals, not law enforcement, getting permits based on prior courses. The way courses are approved right now is using the portal online, the trainers

submit their certification and that's based both in the statute and at a preexisting state office that certifies people. And they upload an example of their curriculum showing that they meet --

THE COURT: But it has to be -- let's say like in my hypothetical the FBI puts on a training class. If the FBI doesn't know that they're supposed to come to the Delaware portal, then anyone who took the FBI course is kind of out of luck.

MR. EVERS: What would happen in that circumstance is that the SBI office would call the person who issued the certificate, the office that issued the certificate and ask them about the curriculum that they offered. And the reason they can do that is that the requirements to be certified are express in the statute. And the requirements for a course are express in the statute. And the statute is express that the office to be administering that is SBI. They can call and say hello, FBI, you offered this course --

THE COURT: They can, but the problem I have is as that document is written, like I wouldn't -- if I were applying for a permit and I read that document, I would say I can't submit my application for -- that includes my FBI class because it says -- because the FBI is not on this chart, which that's a terrible chart. You can at least put

a telephone number on there or a website. But anyway, because that's not on the chart, and so I have to -- I would have to get them approved and then apply -- and then take the course again. I mean, the way those things are written, and the reason I'm concerned about that and I completely appreciate and if you're going to give me a declaration, I'm happy to look at it, but the way those things are written, one, there is an effect, people wouldn't apply because my FBI class doesn't meet that guidance, and like if you're telling me because what it seemed to me, if I were to say look, you can't implement C, D and E, it seems to me that then what would happen is people could apply and the onus would be on the state or whoever has to do these things, the SBI to call up and say hey, send me your stuff and then decide is it okay.

And if the state didn't want to undertake that burden, because that's a lot to have to call around to every program, then maybe they could implement some regulations that say this is how it's going to work from here on out. But it seems to me that that would require the APA.

MR. EVERS: So we firmly believe that in the *Free-Flow*, the detail in the statute and the almost exact copying and pasting of the statute into these materials --

THE COURT: But *Free-Flow* is a little different because *Free-Flow* the court basically said well, the statute

was amended and before the statute was amended there was this advisory council and the advisory council went through all of this stuff and they talked about it, and then the legislature amended the statute and so, you know, they kind of like tacitly acknowledged or approved what was said and there was this advisory council. We don't have any of that.

MR. EVERS: And I do have a second point. But I think if you look at the statute which is explicit on the elements of a training course, the requirements to be certified and we can supplement by showing that it is, in fact, working to not dissuade people and that is proving the fact that that would be helpful. I also just point out none of those circumstances, even that speculation, is presented by any of the plaintiffs in this case.

THE COURT: Why do you need those provisions if you're saying look, we don't -- we don't actually enforce that, we don't say it has to be approved before you take the class, which is what's written there. If that's what you're saying, then why do you -- why do you need that? If you're saying as long as you've taken one and you can send us that in the last five years, whether it's one that we posted on November 7th or one that existed for a hundred years and you took it three years ago, like, that's really my problem is that it's like this little window where you posted these are the folks, you don't tell people how to get in touch with

them, you don't tell anything about it, but it suggest that the only way that this is not a waste of their time is if after they were approved by the state, those instructors and courses were approved by the state, someone took it, in which case the plaintiff is right, they don't have enough time to try and get a permit before they're out of luck.

MR. EVERS: Respectfully, Judge, on that, none of those -- nothing that they have presented suggest they have any plaintiff who feels that way. In fact, what they have as of yesterday is a plaintiff who was certified to provide a course on October 8th or 9th and provided one on Sunday and is providing another one --

THE COURT: Yeah, again, that's the individuals and I have other issues with individuals. I want to focus on the gun sellers. Okay? And the gun sellers are in a position where someone comes to them and says I have met every single requirement of the statute, but the state will not give me a permit because I didn't take a course, I have taken courses but I didn't take a course after -- from one of these folks who I couldn't even find, and I didn't take it after they were certified on some random day in November. You're putting -- I mean, that is the gun owner like has someone who by statute should be, shall, should have a permit, but they don't.

MR. EVERS: So again, those circumstances, even

that hypothetical isn't presented by anyone who has speculated about it in the case. And I understand that you are --

THE COURT: No, no, and the reason I say it, in reading the plaintiffs' papers, I am trying -- when you say they didn't make the argument, they did make the argument to the extent that when I'm reading what they're saying and I'm looking through it and trying to understand why they're saying this is tantamount to a regulation, I mean, right, they're complaining, they say C, D and E, I'm not just making that up, I didn't go through and look at every bit of those, that guidance or whatever it is, they are going through and complaining about that. And then I have you all saying don't need to do any of this regulation promulgating stuff because look at *Free-Flow*, look at *DeMatteis*, we don't have to, it doesn't apply.

So I take your point that maybe they didn't spell it out in a hypothetical that I just said, but I can assure you I'm not looking for reasons to, you know, to cause problems on things that aren't I don't think fairly before me.

MR. EVERS: And I appreciate that, Judge. The website said if you have questions about whether your prior certification qualifies, call the number, there is a help line. We don't have anyone suggesting that they have a

course that they took before or they're not sure whether or not they're certified. We have someone who has given a certified course in this case that they apparently didn't know about each other until yesterday.

I would also point to both a standing question and a harm question. Standing question, I'm not sure if you look at say the *California v. Texas* ACA case that the plaintiffs in this matter can trace any harm to the existence of guidelines that are helping them understand how to navigate the statutory scheme which they admit is the constructive totality of their declaration that they can figure out. And also on irreparable harm --

THE COURT: The problem I have is if they do figure them out and they take them at the words of their statute --

MR. EVERS: They can call their co-plaintiff who has offered a course on Sunday.

THE COURT: Okay. Okay. But that doesn't help me, like, it's me, I'm not going to call the plaintiff, okay, or my clerk is not going to go calling the plaintiff, he's not going to go calling you. Okay? And he reads it and he says, should I apply for a permit. Well, I read everything that they give me on what I'm supposed to do and I can't apply. I can't apply now because my course was taken in January of 2025 and these folks were not -- like,

the problem I'm having is the guidance that they're given, or whatever it is, is suggesting, and it becomes more difficult for me because there is no -- I have no idea what happens.  Like if someone applies for a permit and they get rejected.

MR. EVERS:  There is an appeal process.

THE COURT:  How do they know why they were rejected?

MR. EVERS:  I actually don't know the answer to that question.

THE COURT:  So if I am rejected, I have no idea if it's because I need some other criteria or if it was because my FBI class was taken in January.

MR. EVERS:  I'm sorry, ma'am, Your Honor, I knew the answer to that question, because we had with one of the plaintiffs in this case a denial when he submitted an application without a certified course certificate.  He received communication saying you need to get a course certificate and he was encouraged to call the help line multiple times and as far as we can tell didn't.  You are notified and the appeal rights are in the statute.

THE COURT:  So the appeal rights -- we're zagging a minute, but I do want to come back to the zigging we were doing.  The appeal rights as I understand are you can appeal a denial.  All that I understood the statute to

say is that it has to be acted on, it has to be approved within thirty days, if it's approvable. Is there something that says you have to give some notice in thirty days? Because what I wasn't sure about is as you read the statute, if nothing happens in thirty days, I don't have a rejection, I don't have anything to appeal, and then, you know, it's essentially the pocket veto, I can't appeal, I can't get a gun, I can't get a permit.

MR. EVERS: I know that if you're denied there is a process to appeal it. That's one that is in denial. We don't have an express provision in the statute for what happens if the thirty-day period passes, but, I think these plaintiffs are proving that if they think that the application process is operating such that it is effectively denying people permits --

THE COURT: That's what they have said.

MR. EVERS: But none of them have tested it and none of them have gotten to the thirty days. They brought this case without ever trying -- they tried in the last few days for the first time apparently to engage with the application process --

THE COURT: But you're focused on the individuals.

MR. EVERS: I am.

THE COURT: So help me out with the sellers.

They're the ones who are subject to criminal penalties.

MR. EVERS:  The sellers, we struggle to see how they have a Second Amendment claim here to sell.  But also there are tens of thousands of people in this state who have, for example, concealed carry permits or otherwise exempt.  They're not going to go bankrupt because some subset of individuals in this state have trouble -- have a preexisting FBI certificate this they don't know qualifies and declare futility instead of calling a help line.  We think there is a lot of speculation on speculation on speculation that none of these plaintiffs can satisfy.

You're asking why I'm talking about the plaintiffs, it's because it's their case.  Certainly after *CASA*, the Supreme Court case, I would be very loathe to seek from this Court --

THE COURT:  You can't --

MR. EVERS:  -- a broad injunction.  They tried to incorporate all similarly situated Delawareans, footnote 3 of their brief, they have associational standing issues where they haven't alleged that any member of these associations is actually facing a possibility.  And I haven't hit this point enough and I need to.  We are not dealing with a statute as written.  We are dealing with a house of cards, a statute that is not a shall issue statute as written, they're dealing with a can't issue statute that

they're claiming will come into operation on Sunday. It doesn't exist. The evidence on the record shows it doesn't exist. The evidence shows on the record that individuals who need to get training certificates are obtaining them and getting permits. The record shows that as of yesterday that one of the plaintiffs is one of those people.

THE COURT: When you say the record shows all these people are getting them, as I understood it of the 200-some folks of the people who you told me got permits, two were civilians.

MR. EVERS: Yes.

THE COURT: Okay. That's great. I don't qualify for anything, so I would need to go through the process, like, okay, you're like relying on look, we gave all these people, it was 200 people, and most of them got it within three days, which is terrific. And when I read other cases, all of that on the merits goes in your favor. But am I looking at people who are in the shoes of the plaintiffs? I don't know. Because how many have you now given to non -- I mean to civilian folks?

MR. EVERS: I don't have an updated number, at least not in front of my mind. We're being told, we believe it is three. It could be more. This is something we can supplement. There is a reason for this as well which is that as evidenced by the SBI communications that have gone

out to dealers and to the firearm community in Delaware over the past several weeks, they have been preparing for this, and one place -- one thing that they have done is they have encouraged exempt individuals, predominantly law enforcement individuals to engage with the TPT system before it's live so they can confirm it's operational. That explains the relative volume of people who are applying before it is necessary. We would expect that when the law is in effect more people will engage with it.

I also wanted to touch on something that I want to get out. We would agree I think to updating the SBI website to say that if you have a question about whether a certificate or a previous course is valid, please call this number and the -- and the answer to that question is set by statute because that --

THE COURT: And I agree, my problem was not as much with the language of the statute, it was that whatever that document is that you all attached, Exhibit A, was I'm reading that and I'm like, well, that's not what the statute says.

MR. EVERS: So let me -- and I appreciate that. Here is what I would say.

THE COURT: That's really my biggest issue here.

MR. EVERS: I got you. What you're saying is as you read the online guidelines, it may artificially narrow

the category of certificates that are available. We could easily cure that by expressing what is clearly an intent, which would be helpful and make these things happen, but on top of that, none of these plaintiffs are in that hypothetically excluded or dissuaded category, none of them have said that's why --

THE COURT: If you think I want to wait for them to amend their complaint next week who is in that so we can live this again, you're wrong. So I take your point on standing, we are looking at that issue.

MR. EVERS: I got you.

THE COURT: But again, as I think I fairly read their complaints, it is -- and I don't think it would be hard for them to find someone who it would be difficult for you to contest standing on, to say as those -- as that document -- I don't know what it is, guidelines.

MR. EVERS: Guidelines.

THE COURT: It's supposed to tell you what's going on, but then to me the problem is it tells me that something that the statute permits, as I read that, I'm not allowed to do.

MR. EVERS: So I appreciate that. And I think we could -- it may be just a level of miscommunication to the public, but none of these plaintiffs are falling in that dissuaded category. Also what you said reminded me of an

issue I really want to address.  You referenced their complaint several times.  But I really want to draw a distinction between the complaint which challenges the statute and their motion which doesn't.  We're not engaged --

THE COURT:  Their motion challenges the statute to the extent they say --

MR. EVERS:  These plaintiffs know how to apply. They have admitted now as of yesterday in declarations that they know how to apply at least constructively.  They used Google to find courses.  They have evidence from us that courses are being offered.

I want to also call attention because my friend said this, if you look at the order that they proposed that you enter, a delay in the implementation of the P2P permitting process until the following conditions are met. Every one of those conditions is met already based on what they have, except for the APA.

THE COURT:  I disagree.  I actually disagree with you on that because the language says until someone certifies that the -- essentially the APA --

MR. EVERS:  We have done that.

THE COURT:  You haven't if it's a regulation that requires notice and comment.

MR. EVERS:  And we have done that.

THE COURT: And you're saying we don't think it is. And I'm saying to the extent -- and that's really my problem is because I thought the same thing you did. I'm like okay, we got declarations that say people are able to do this, people are able to get through this, maybe they already have the -- they already have the relief that they have sought. But then when I look at your brief, and this -- I'm sure it wasn't intentional, but it kind of struck me the wrong way when you say this is what they want, and every place where it's something like the administrative procedure stuff or the regulations, you dot dot dot it. Right? And so you're saying this is all they want is a certification that permits are being issued. That's not all they wanted and you guys just ellipsized through the part that they asked for that you hadn't really provided. And that's why I have been focusing on, because I'm thinking to myself, look have they gotten the relief they want? And then I say oh, wait, they haven't because I can't just sign this order because I don't think -- then I'm going to have a dispute, did you give a declaration that you have met all these requirements and I don't know that you have because I don't know that I agree that the current versions of C, D and E, are not subject to --

MR. EVERS: Fair enough. We would say we addressed the APA separately because we think it's a bit of

a red herring and I appreciate that you're engaging with it, we're here to do it. We would also say, we point to standing and irreparable harm arguments within their PI. Even if you were to grant that they have an APA claim, they're not seeking -- they are not asking to invalidate anything. I think that's really telling. They're looking for time to comply. I guess maybe you're backdooring that what they're really requesting in that order is a six to nine-month delay while we go through the APA process but you think they would say that. They're said yesterday they're looking for a thirty extension so they can apply --

THE COURT: Because you didn't have those provisions their argument is substantially undercut, right, because if you don't have a provision that says only ones that we have approved and only ones that we have approved prior to you taking the class, which I get it, you're saying that's not really what we meant, and fine, but that's what it says.

And so if it were, you know, or another approved one and if you want to know how to get your approved one, call this number, to me that's different. Like I don't think that you actually have given them -- and I'm not saying that it's required --

MR. EVERS: And they may be not entitled to it.

THE COURT: I'm not saying it's required that

you give them what you want, but to the extent your argument is we have already done it, it's moot, I don't think I'm there.

MR. EVERS:  I mean, I know I'm taking a lot of time.  I'm happy to stay up here as long as you like.  I would like to touch on a couple of things.  One in this context, there is the Third Circuit *Koons* case where it cautions in a Second Amendment case about entering a preliminary injunction before reaching all the issues.  I think that applies here.  We're doing a lot right now, kind of filling gaps and reading words and if you look yesterday, they're asking just for a thirty-day delay so they can get a permit.  They clearly think they can.  I don't know why we're here for these plaintiffs if that's what they have changed their approach to, if that's what they're asking for.

And then I really do want to underscore since I know you asked us to brief the Second Amendment issues.  The underlying statute we think easily satisfies all of the federal courts that we know that have touched this issue have found it to be a perfectly valid statute.

THE COURT:  My real problem with that is, for example, in the Fourth Circuit case, if I'm reading that is persuasive authority, so I'm reading all of the parts, the main opinion, the concurrence, and I guess there were two

concurrences and a dissent. If I had to say what was most persuasive to me, it was I think it's Judge Rushing, her concurrence. And the difference there is she didn't just jump and say, it's presumptively constitutional, and so I'm not looking at does this apply, does it impact the Second Amendment. So the majority opinion was just like, footnote 9, we're done. I thought her's was more thoughtful and I appreciated it. And in that concurrence the judges who were on there they went through and said look, we do think it comports with historical precedent. You guys didn't give me that, you just gave me a bunch of stuff from the reconstruction era which I'm not sure under the Third Circuit law is appropriate.

I don't know that I have to get to that issue today. It's going to come up, perhaps, in the future, depending on what happens with the motion to dismiss, it may actually -- there might be something to the point that plaintiffs' counsel made where maybe if I had gotten into this sooner I would have thought it wasn't ripe. I'm not sure.

MR. EVERS: It is a fast moving area. You're taking on a lot of new case law.

THE COURT: Yes. So the whole -- that whole standing issue might come, and I just thought I would give you my thoughts on if you're just going to continue to read

presumptive footnote 9, it might not be all that successful, but I'm not saying you can or can't be successful, but you might change up the argument if you want.

MR. EVERS:  That's where I was going to go, Judge.  If you're going to reach a Second Amendment analysis we think you land there if you look at the *Koons* decision which I admit was a relatively brief treatment of the presumption, you can look at the Oregon case -- I'm sorry, I'm not able to cite it by memory -- which is a very deep dive on the Second Amendment.  We did want to say we did try to meet the request.

THE COURT:  You did.  I did not take that as you not following my order.

MR. EVERS:  And I think it's emblematic of what we were able to do in a short period of time.  It's emblematic of what a case like this is going to require, we think is not best resolved or appropriately resolved at this stage with an injunction for the plaintiffs.  Frankly it should be resolved if anywhere in Neuberger I.

And we do think that the Court has inherent authority to dismiss Neuberger I plaintiffs from this case, put them back in the original case, consider whatever needs to happen there.  And I want to put this out there, too --

THE COURT:  And you would say I have the inherent authority to do that based on the order that was

issued in that case where essentially this is --

MR. EVERS: I would point to *Walton v. Eaton Corp.* which we cited in our letter, but I also point to I think it's *Fabrics v. City of New Brunswick*, and the quote is, "As part of its general power to administer its docket, a district court may dismiss duplicative complaints."

THE COURT: But you're not saying I necessarily would use my power to dismiss because the entirety of the complaint is not duplicative in that there are other plaintiffs, you're saying it's analogous.

MR. EVERS: We wanted to point out this isn't a harmless tactic. We obviously struck an agreement with the plaintiffs' counsel here. We expect them to abide by it. You so ordered it. But also we're forced to litigate this matter in this case with sellers who are not in the original case and we think the complaint and the motion frankly really take advantage of being able to try to blend between the different -- blend between the different plaintiffs to suggest that the sellers may have a better story to tell on this permitting regime, we think they should have to refile their complaint only about them and see how their Second Amendment claim found them. They claim a Fourth Amendment injury in this case, the sellers do. I don't know how that passes muster. I don't think we should have to move to dismiss it. But that's what we would point your direction

to. If you want us to litigate this, severance, dismissal, we're happy to do that. We would just ask that at some point we should have to litigate whether they can consolidate and join, they're very different cases, sellers, buyers, they are a very different positions. One case has been pending for eighteen months, one is brand-new. We would not like to have to buy the tactic, we would like the opportunity -- the last thing I will say and I will a sit down is the state is willing to say that we would agree to strike sections C, D, and E of the guidelines and we would be happy to put that in writing.

THE COURT: That would be helpful if you could do that. Okay. Thank you for that.

Mr. Pileggi, so the provisions that you complained about were C, D and E. They have now agreed to strike those.

With respect to the gun sellers, help me out with the Second Amendment claim. The right to bear arms doesn't say the right to sell arms.

MR. PILEGGI: Right, Your Honor, we cite the cases from the Third Circuit and the cases in the U.S. Supreme Court that I am going to paraphrase. And I'm happy to provide some specific cases and cites.

THE COURT: If you tell me you have already cited them, can you give me the ones so I can go back and

look at what they said.

MR. PILEGGI: I think it's in our complaint, it's in our opening brief. And I will get you the cites within the next few minutes. But my point is as I'm paraphrasing those cases, the right and keep and bear arms would be worthless without the right to acquire arms. So there is case law recognizing the right to acquire arms that is related to and a part of the right to keep and bear arms. And I can provide those cites to Your Honor. I'm not sure why my friend is so surprised --

THE COURT: But the acquiring, that's -- the person whose right is being purportedly infringed is the buyer, not the seller, right? So it may be that it's like some kind of interference with the seller's business, I just don't see -- I'm trying to figure out how it's an infringement -- like if I were to say this one gun seller isn't allowed to have a federal permit to sell guns, that's not a Second Amendment violation. Right? I mean, it's not saying you can't get guns anywhere, it's saying you can't get guns from this particular person. I'm trying to figure out -- I'm not saying that it's not an issue, I'm just not sure it's a Second Amendment issue.

MR. PILEGGI: Well, Your Honor, I'm happy to submit to you even if I can't give you the cite right now --

THE COURT: It's always nice to have co-counsel.

Read it slowly so Mr. Hawkins doesn't --

MR. PILEGGI: Okay. I will try. Your Honor, on page 14 of our opening brief, we cited to one of our cases, Your Honor, and I'm not going to pretend to know your case better than you, but in the *Rigby v. Jennings* case, the quote that we have there from page 615 of the decision, the right to possess firearms for protection of --

THE COURT: Right. But those were people who wanted -- that's actually the case I was thinking of when I asked you that question. That was ghost guns and it's a very different thing to say I can't -- I want a gun and I can't get a gun. That's my -- I'm the one who might then have standing, not my computer that can't -- a 3D printer doesn't have those rights. I'm not understanding how it is a Second Amendment right of a gun seller. It might be some other right of a gun seller, I'm just not sure it's a second -- because the person asserting a right that was being infringed in that case was a punitive gun owner, someone who wanted to make the gun.

MR. PILEGGI: Correct. Your Honor, you're right. Your Honor, I didn't think that was an issue, at least I don't remember that issue being raised in their answering brief. But I am happy to present a supplemental submission by tomorrow with cases that address that because I have litigated that issue, and I just didn't think that

that was an issue we were going to discuss today, but I'm happy to submit something by tomorrow with cases that address the right as it relates to the Second Amendment. Certainly the core of the Second Amendment is not the right to sell firearms, but cases that address the related right to sell firearms or else it would be meaningless if nobody was able to sell firearms, the right to keep and bear arms would be meaningless.

THE COURT: Okay.

MR. PILEGGI: So, Your Honor, I was trying to keep good notes and I don't think you want me to go over everything that my friend discussed, so I'll just highlight one or two.

THE COURT: Hit me with the things that you feel like I need to understand more or that you need to respond to.

MR. PILEGGI: Okay. So the most important one, Your Honor, is he said why are we still here, why do we need to be here today. And I think Your Honor answered it at least in part that if you look at the form of order we submitted, it was two paragraphs and we agree that the second paragraph now since we filed the motion is now not current, but the first one still is. And the first one asked for a reasonable amount of time. We don't actually put a number on it. A reasonable amount of time to allow

the plaintiffs to satisfy the requirements of the permit to purchase bill before the effective date of enforcement.

And if I heard my friend correctly, my notes are correct, I'm sure the transcript will tell me if I'm correct or not, that he doesn't know why we're here, that's one thing he said. He said the plaintiffs have --

THE COURT: I think we should give him some credit that he seemed to know why we were here.

MR. PILEGGI: Okay. I was just reading from my notes. I'm sorry, Your Honor, I'm sure the transcript is much better.

THE COURT: He might have said it as part of a bigger sentence, but I think just to say it in general is not -- I think if someone said that about you, we would disagree as well. Everyone seems to know why we're here, making cogent arguments.

MR. PILEGGI: I'll move on, Your Honor. I think if my notes are correct he said that the plaintiffs are already able to comply with the requirements. But we're not. If you look at the declarations that we submitted with the reply brief, we have the plaintiffs explaining why they cannot satisfy the requirements before Sunday, the date of enforcement, because they either couldn't find a course that was available within the very small number of days when the information became public, so they couldn't schedule a

course, and one of them, even though -- even if he could schedule a course, we understand the course is eight hours long and for medical reasons he would have to break it up into two different courses.

And then there is the declarations that talk about how they tried to use the online portal to get fingerprints and they couldn't get to the right page. They kept getting an error message. And the declarants also say we heard a lot about the help line or help phone number, whatever it is. The declarations we submitted indicate they were not able to get any help from the help line. They called and they couldn't leave a message, and there was no help available.

So I just want to make the Court aware, and I'm sure Your Honor has already read the declarations, I just wanted to respond to my friend's comment that what's the problem, plaintiffs already figured out how to satisfy the requirements. Even if we could figure it out, there is not enough time between the date, the less than two weeks when all this information became available and the date of enforcement.

So to summarize, Your Honor, the relief we are still seeking today is a reasonable amount of time, even before we get to the constitutionality issue, a reasonable amount of time to satisfy the requirements --

THE COURT: What is a reasonable amount of time?

MR. PILEGGI: Well, Your Honor, if I have to give you a number, and I will, it's at least thirty days from the date that this information became public.

THE COURT: You're only doing it for the named plaintiffs?

MR. PILEGGI: I'm sorry, Your Honor?

THE COURT: That would be only for the named plaintiffs?

MR. PILEGGI: Only the named plaintiffs are in front of you, Your Honor. It's not a class action. If I had to give you a number -- but the problem as Your Honor noted, the statute doesn't really give them a deadline. They can take three years. The statute says they should do it in thirty days, but if they don't do it in thirty days, there is no recourse for the applicant. And there is no penalty for the state. So why would they limit themselves to thirty days if there is no penalty for them to take longer?

THE COURT: But that seems like more of an issue that you're raising in the initial complaint, not the -- I mean, I'm not sure that is an infrastructure issue which is what you're really complaining about in this motion as opposed to a -- I don't know. I don't know what it is, actually.

MR. PILEGGI: But getting back to your question, Your Honor, how much time do we need. It's somewhat arbitrary, but if I had to pick a number it would be at least thirty days because the statute gives them thirty days from the date of the application, but we didn't have enough time from the date that all this information became public in order to find a course. Yes, there are a couple of, handful of courses available between the time of ten days ago or whatever it was, and the 16th, there certainly wasn't enough time for enough people -- let's focus on the plaintiffs, who to schedule a course with, to get their fingerprints done. And then according to statute, once they get the fingerprints and the certificate of training, they can call the local chief of police. If you have been in a your residence for less than five years, you can call the chief of police wherever you used to live. I guess that's why the statute gives them thirty days because I understand the people who got permits, they must be insiders because they got it on the first day that all this stuff was available.

So there are only two or three civilians got it. Most of those people must not have needed to go look for a course, maybe they were at the police station already so they had their fingerprints already. But the average person is not going to get approved in one or two days.

So to summarize, Your Honor, the relief we're still requesting is a reasonable amount of time to allow at least the plaintiffs in this case to do what is required in the statute, to satisfy the requirements for the permit.

Of course, that's before Your Honor gets to the issue of whether those requirements or the permit itself was constitutional. That, of course, we'll leave for another day.

THE COURT: Okay. Thank you.

MR. PILEGGI: Unless Your Honor has any other questions, I think I'll leave it at that.

THE COURT: Thank you.

Let me just ask you a couple of things, if you could just help me with the comments that were just made about the fingerprints and the help line. And also, I don't think we ever got to the end of the discussion of what happens in thirty days if no action is taken? I mean, it just says under the statute, and I pulled up the language, it says person must submit an application for a Handgun Qualified Purchaser Permit to the SBI who shall investigate the application and unless grounds exist for the denial thereof, grant the Handgun Qualified Purchaser Permit within thirty days of the date of receipt of the application. It doesn't say that you have to tell them when it's denied or what the basis is, and if you can't appeal until you're

denied, then what happens?

MR. EVERS: So I don't believe the statute, and certainly no guidelines talk about what happens on day thirty-one, so I don't have the correct answer for you. I apologize, it's not something I studied before I came in here.

THE COURT: That might go more to the substantive issues at some future time.

MR. EVERS: It could.

THE COURT: But since he just raised it, I realized --

MR. EVERS: It is also I think really emblematic of sort of the parade of horribles that have to happen for them to hit standing or harm. I'm really a little -- I don't want to overstate it --

THE COURT: Don't say --

MR. EVERS: I know why we're here, but they're asking for thirty days to comply with the permitting requirement. They have thirty days, they can apply today and get a permit. I'm not actually sure they're asking for thirty more days to buy a gun without a permit. They're saying they want thirty days to get a permit, it's really --

THE COURT: They did want the statute to apply to them.

MR. EVERS: They're saying they're going to get

the permit.

THE COURT: I would assume, though, that it means that they would not be -- the problem that I think that that raises is let's assume I tell the individual plaintiffs you have thirty more days to get a permit, it does nothing if all the folks who are selling guns aren't allowed to sell to someone without a permit.

MR. EVERS: There we get into the class issue and they're being very clear they're only talking about their people now, they can apply for a permit.

I would also point out that the date on which the plaintiffs originally alleged they wanted to buy guns is November 28th. Yesterday two of them moved that date up to the 16th. I would point out that they can buy a gun today without a permit. They could have bought a gun yesterday without a permit. These plaintiffs, Neuberger plaintiffs --

THE COURT: Maybe this is like a Christmas special sale.

MR. EVERS: That's November 28th, Your Honor. November 28th, a year ago they said they were waiting to black Friday 2025 to buy their guns. We week ago they said they were waiting for Black Friday 2025 to buy their guns. The marginal harm is minimal whatever the price difference might be on November 25th to today. Now they've abandoned Black Friday, now it's Sunday they want to buy a gun. If

they're really concerned about being able to comply with the permitting requirements instead of trying to get a permit unsuccessfully for the last week or so, they could have bought a gun. I'm not sure what harm of them trying to do it today, tomorrow, or yesterday, or any time in the past eighteen months they could possibly allege.

I don't have the -- subsection I, but I don't know what the large letter or number is, talks about the notification requirement for denial.

THE COURT: Can you read it for me.

MR. EVERS: If the director determines that a person is not qualified under subsection B of this section for a handgun qualified purchase to permit, the director shall deny the application and notify the person in writing setting forth the specific reasons in detail.

THE COURT: Is there a time period on that?

MR. EVERS: There is not. I would just -- the only evidence we are --

THE COURT: That's the statute itself, right?

MR. EVERS: This is the statute, yes. This is the statute. And then the thirty-day requirement is a shall directive and we just don't -- that's subsection H, I know you're familiar with that one. We don't have anything in this case to suggest or even get to day ten, let alone day twenty or day thirty. And this is a preliminary injunction

hearing and they got a long way to go, they got thirty days to go before they can show the kind of harm that courts require to walk into the courtroom doors assuming you're on the right docket.

I would just point out this thirty-day request, if they qualify because they're confused, it could be a floodgate -- I'm not adopting their simple math in their declaration last night, but tens of thousands of people would suddenly want a thirty-day extension.

And then in terms of the phone, we're really confused by that. We have evidence in the record from the sergeant who runs the program that all these systems are up and running. I can say that members of the litigation team called the number during business hours and it picked up on one ring. There is no phone tree. There is nothing in the facts about when they called. But it is up and running. The business hours of SBI I believe are 8:00 to 4:00, and that's on the website. It is functioning. The website is functioning. You can upload certificates. Trainers can upload curriculum.

THE COURT: How about the fingerprints?

MR. EVERS: The fingerprints is run by a third-party program and that is functioning. I think the only allegation that we have is that one of the plaintiffs got a -- I am not an IT person, but maybe like a firewall

warning. At the law firm we have lots of those. In my experience you click details and proceed. But it's up and running. We have no calls to the state that we're aware of that the system is not functioning. It's a well-established company and has many offices in the state. So I can't explain because I didn't sit over their shoulder why they weren't able to connect with someone in person. One of the plaintiffs didn't respond to invitations to make a phone call.

THE COURT: On a preliminary injunction the plaintiffs are the ones with the burden.

MR. EVERS: I was going to go there.

I think the last point I would make on that is the two of the declarations they filed yesterday I think really strain the credibility of the other two declarations they filed yesterday. One is from the plaintiff, BKK, who for the first time admitted to the Court that it is a certified trainer has been since October or 7th or 8th and provided a course. I think we should charge the group of plaintiffs who chose to be here today with constructive knowledge.

And the second was a lawyer declaration which used Google to go through the PDF, the difficult to navigate, the difficult to use list and found multiple training courses. I don't know how that isn't dispositive.

They have lawyers in the case who can explain how to use it. There is a story behind why there are not phone numbers. I don't think we have to put the evidence in the record. I'll just represent there was a difference of opinion among different trainers about whether they wanted their information in what form on the website and concern if you put one phone number on, it would look like the state was favoring. We know from the record that at least one person of reasonable skill who I think is sitting at the table or in the back was able to use Google to locate multiple courses available before the date of this hearing.

THE COURT: All right. Anything else?

MR. EVERS: Thank you, Your Honor.

MR. PILEGGI: Your Honor, may I please be heard briefly?

THE COURT: It's your motion, you get the last word.

MR. PILEGGI: Thank you, Your Honor.

Your Honor, my friend suggested that we just start buying guns before the enforcement deadline on Sunday, and I don't think -- I'm not aware of any case that says it's a defense to an unconstitutional law to start exercising your rights before the law goes into effect.

THE COURT: I think there is probably no cases. I can take judicial notice.

MR. PILEGGI: And lastly, Your Honor, I think we'll just rest on our papers otherwise unless Your Honor has questions.

I just have one last clarification, if Your Honor wants us to make a submission regarding the rights of a seller related to the Second Amendment.

THE COURT: Why don't you do that by noon tomorrow.

MR. PILEGGI: Okay. We will.

THE COURT: And then if the defendants could tell me, you mentioned a couple of declarations, but if you could certainly put in writing something about the C, D and E sections, that would be useful. And then we'll take a look at that and we will get you something out as soon as we possibly can.

MR. PILEGGI: Thank you. Your Honor, would that be in the form of a letter?

THE COURT: A letter is fine. Just docket a letter. Thank you.

MR. PILEGGI: Thank you, Your Honor.

THE COURT: All right. Anything further that we need to discuss? All right. Again, I thank you all for getting everything done so expedited and doing it so well, and the arguments today were very helpful to me. Thank you.

COURT CLERK: All rise. Court is adjourned.

(Court adjourned at 3:16 p.m.)


I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


                                   /s/ Dale C. Hawkins
                                   Official Court Reporter
                                   U.S. District Court

## /

**/s** [1] - 53:5

## 1

**13** [1] - 1:17
**14** [1] - 39:3
**16th** [2] - 44:9, 47:14

## 2

**200** [1] - 27:15
**200-some** [1] - 27:9
**2025** [4] - 1:17, 23:25, 47:21, 47:22
**25-1341(MN** [1] - 1:9
**25th** [1] - 47:24
**28th** [3] - 47:13, 47:19, 47:20
**2:00** [1] - 1:18

## 3

**3** [1] - 26:19
**30th** [1] - 17:15
**3:16** [1] - 53:1
**3D** [1] - 39:13

## 4

**4:00** [1] - 49:17

## 6

**615** [1] - 39:6

## 7

**7th** [2] - 20:22, 50:18

## 8

**844** [1] - 1:20
**8:00** [1] - 49:17
**8th** [2] - 21:11, 50:18

## 9

**9** [2] - 34:7, 35:1
**9th** [1] - 21:11

## A

**AARONSON** [1] - 2:9
**Aaronson** [1] - 3:6
**abandoned** [1] - 47:24
**abide** [1] - 36:13
**able** [12] - 11:21, 31:4, 31:5, 35:9, 35:15, 36:17, 40:7, 41:19, 42:11, 48:1, 50:7, 51:10
**ACA** [1] - 23:7
**according** [1] - 44:12
**accurate** [1] - 53:3
**acknowledged** [1] - 20:5
**acquire** [2] - 38:6, 38:7
**acquiring** [1] - 38:11
**acted** [1] - 25:1
**action** [2] - 43:11, 45:17
**actual** [1] - 16:21
**addition** [3] - 4:21, 8:23, 8:24
**address** [10] - 5:4, 8:19, 12:13, 13:13, 14:8, 16:20, 30:1, 39:24, 40:3, 40:5
**addressed** [1] - 31:25
**adjourned** [2] - 52:25, 53:1
**administer** [1] - 36:5
**administering** [1] - 18:18
**administrative** [1] - 31:10
**admit** [3] - 13:18, 23:10, 35:7
**admitted** [2] - 30:9, 50:17
**adopting** [1] - 49:7
**advantage** [1] - 36:17
**advisory** [3] - 20:2, 20:6
**afternoon** [7] - 2:22, 2:25, 3:3, 3:4, 3:9, 5:2, 13:1
**ago** [10] - 4:6, 5:21, 6:15, 6:17, 9:3, 15:3, 20:23, 44:9, 47:20, 47:21
**agree** [13] - 9:8, 9:10, 9:11, 9:24, 10:2, 11:4, 17:10, 28:11, 28:16, 31:22, 37:9, 40:21
**agreed** [3] - 9:15, 10:13, 37:15
**agreement** [1] - 36:12
**Alex** [1] - 3:2
**ALEXANDER** [1] - 2:3
**allegation** [1] - 49:24
**allege** [1] - 48:6
**alleged** [2] - 26:20, 47:12
**allow** [4] - 13:10, 16:18, 40:25, 45:2
**allowed** [4] - 15:9, 29:21, 38:17, 47:7
**allows** [1] - 5:3
**almost** [2] - 6:2, 19:22
**alone** [1] - 48:24
**amend** [9] - 8:22, 10:10, 10:11, 10:12, 11:4, 11:6, 11:20, 11:25, 29:8
**amended** [3] - 20:1, 20:4
**Amendment** [15] - 26:3, 33:8, 33:18, 34:6, 35:5, 35:10, 36:22, 37:18, 38:18, 38:22, 39:15, 40:3, 40:4, 52:6
**amount** [7] - 7:15, 40:24, 40:25, 42:23, 42:25, 43:1, 45:2
**analogous** [1] - 36:10
**analysis** [1] - 35:5
**answer** [11] - 5:5, 9:18, 9:19, 9:20, 10:3, 24:9, 24:15, 28:14, 46:4
**answered** [1] - 40:19
**answering** [1] - 39:23
**anyway** [2] - 8:13, 19:1
**APA** [14] - 13:3, 13:22, 13:23, 13:24, 13:25, 14:2, 15:18, 16:15, 19:20, 30:18, 30:21, 31:25, 32:4, 32:9
**apologize** [2] - 12:5, 46:5
**appeal** [9] - 24:6, 24:21, 24:22, 24:24, 24:25, 25:6, 25:7, 25:10, 45:25
**APPEARANCES** [1] - 2:1
**applicant** [2] - 6:24, 43:16
**application** [14] - 6:19, 7:7, 7:8, 12:19, 14:13, 18:23, 24:17, 25:14, 25:21, 44:5, 45:19, 45:21, 45:23, 48:14
**applied** [1] - 13:19
**applies** [3] - 8:3, 24:4, 33:10
**apply** [16] - 7:16, 15:19, 19:3, 19:8, 19:12, 22:16, 23:22, 23:24, 30:8, 30:10, 32:11, 34:5, 46:19, 46:23, 47:10
**applying** [2] - 18:22, 28:7
**appreciate** [6] - 16:11, 19:6, 22:22, 28:21, 29:22, 32:1
**appreciated** [1] - 34:8
**approach** [1] - 33:15
**appropriate** [1] - 34:13
**appropriately** [1] - 35:17
**approvable** [1] - 25:2
**approve** [3] - 3:21, 3:22, 14:22
**approved** [19] - 4:5, 4:6, 15:1, 15:3, 15:8, 15:9, 16:4, 17:25, 19:3, 20:5, 20:17, 21:3, 21:4, 25:1, 32:15, 32:19, 32:20, 44:25
**arbitrary** [1] - 44:3
**area** [1] - 34:21
**argument** [9] - 5:12, 12:11, 15:17, 16:7, 22:6, 32:13, 33:1, 35:3
**arguments** [4] - 9:12, 32:3, 41:16, 52:24
**arms** [8] - 5:15, 37:18, 37:19, 38:5, 38:6, 38:7, 38:8, 40:7
**artificially** [1] - 28:25
**asserting** [1] - 39:17
**assigning** [1] - 9:2
**ASSOCIATION** [1] - 1:6
**associational** [1] - 26:19
**associations** [1] - 26:21
**assume** [5] - 16:23, 17:4, 47:2, 47:4
**assuming** [1] - 49:3
**assure** [1] - 22:19
**attached** [1] - 28:18
**attention** [2] - 14:23, 30:13
**attorneys** [1] - 13:23
**AUSTIN** [1] - 2:11
**Austin** [2] - 3:7, 13:2
**authority** [6] - 15:19, 15:21, 15:22, 33:24, 35:21, 35:25
**authorized** [1] - 5:21
**available** [13] - 6:15, 6:18, 6:19, 7:6, 7:9, 8:10, 29:1, 41:24, 42:13, 42:20, 44:8, 44:20, 51:11
**average** [3] - 6:10, 6:12, 44:24
**aware** [6] - 11:11, 11:18, 12:7, 42:14, 50:3, 51:21

## B

**backdoor** [1] - 12:3
**backdoored** [1] - 14:1
**backdooring** [2] - 16:16, 32:7
**ban** [8] - 7:19, 7:21, 7:23, 8:3, 8:15, 13:11, 13:12
**bankrupt** [1] - 26:6
**bar** [1] - 11:23
**based** [7] - 7:5, 8:5, 9:11, 17:24, 18:1, 30:17, 35:25
**basis** [2] - 3:12, 45:25
**bear** [5] - 5:15, 37:18, 38:5, 38:8, 40:7
**became** [8] - 6:15, 6:18, 6:19, 8:10, 41:25, 42:20, 43:4, 44:6
**becomes** [1] - 24:2
**BEFORE** [1] - 1:23
**behalf** [1] - 3:5
**behind** [1] - 51:2
**best** [1] - 35:17
**better** [6] - 11:24, 12:6, 12:22, 36:19, 39:5, 41:11
**between** [5] - 30:3, 36:17, 36:18, 42:19, 44:8
**bigger** [1] - 41:13
**biggest** [1] - 28:23
**bill** [1] - 41:2
**BISGAARD** [1] - 2:2
**bit** [5] - 4:19, 14:23, 17:17, 22:11, 31:25
**BKK** [2] - 1:5, 50:16
**black** [1] - 47:21
**Black** [2] - 47:22, 47:25
**blame** [1] - 9:2
**blanket** [1] - 10:23
**blend** [2] - 36:17, 36:18
**born** [1] - 5:14
**bought** [2] - 47:15, 48:4
**brand** [1] - 37:6
**brand-new** [1] - 37:6
**break** [1] - 42:3
**Bridgeville** [1] - 7:22
**BRIDGEVILLE** [2] - 1:5, 1:7

**brief** [11] - 2:23, 5:7, 14:4, 26:19, 31:7, 33:18, 35:7, 38:3, 39:3, 39:23, 41:21
**briefly** [1] - 51:15
**bring** [1] - 13:24
**BRISBOIS** [1] - 2:2
**Brisbois** [2] - 3:1, 5:2
**broad** [1] - 26:17
**broader** [1] - 4:2
**brought** [1] - 25:18
**BRUCE** [1] - 1:5
**Brunswick** [1] - 36:4
**bunch** [1] - 34:11
**burden** [2] - 19:17, 50:11
**bureaucrats** [1] - 15:11
**BUSHWELLER** [1] - 1:10
**business** [3] - 38:14, 49:14, 49:17
**buy** [8] - 13:10, 37:7, 46:21, 47:12, 47:14, 47:21, 47:22, 47:25
**buyer** [1] - 38:13
**buyers** [1] - 37:5
**buying** [1] - 51:20
**BY** [7] - 2:3, 2:3, 2:4, 2:8, 2:11, 2:12, 2:12

## C

**C.A** [1] - 1:9
**Cabinet** [1] - 1:11
**California** [1] - 23:7
**cannot** [1] - 41:22
**capacity** [2] - 1:11, 1:13
**cards** [1] - 26:24
**carry** [1] - 26:5
**carrying** [1] - 3:25
**CASA** [1] - 26:14
**case** [36] - 3:18, 5:12, 7:23, 12:10, 17:18, 20:14, 21:5, 22:2, 23:3, 23:7, 24:16, 25:19, 26:13, 26:14, 33:7, 33:8, 33:23, 34:22, 35:8, 35:16, 35:21, 35:22, 36:1, 36:15, 36:16, 36:23, 37:5, 38:7, 39:4, 39:5, 39:9, 39:18, 45:3, 48:24, 51:1, 51:21
**cases** [17] - 3:23, 4:12, 9:1, 10:5, 15:13, 15:19, 27:17, 37:4, 37:21, 37:23, 38:5,

39:3, 39:24, 40:2, 40:5, 51:24
**catching** [1] - 14:22
**category** [3] - 29:1, 29:5, 29:25
**cautions** [1] - 33:8
**century** [1] - 6:7
**certain** [3] - 3:24, 7:25
**certainly** [5] - 26:13, 40:4, 44:9, 46:3, 52:12
**certificate** [7] - 18:12, 18:13, 24:17, 24:19, 26:8, 28:13, 44:13
**certificates** [3] - 27:4, 29:1, 49:19
**certification** [3] - 18:1, 22:24, 31:13
**certified** [8] - 18:15, 20:10, 21:10, 21:21, 23:2, 23:3, 24:17, 50:18
**certifies** [2] - 18:2, 30:21
**certify** [1] - 53:3
**challenged** [2] - 3:20, 17:7
**challenges** [2] - 30:3, 30:6
**change** [5] - 9:25, 10:1, 10:19, 10:23, 35:3
**changed** [2] - 9:20, 33:15
**charge** [1] - 50:19
**chart** [3] - 18:25, 19:2
**chief** [2] - 44:14, 44:16
**chose** [1] - 50:20
**Christmas** [1] - 47:17
**Circuit** [4] - 33:7, 33:23, 34:13, 37:21
**circumstance** [1] - 18:11
**circumstances** [2] - 20:13, 21:25
**cite** [3] - 35:9, 37:20, 38:24
**cited** [5] - 3:23, 15:13, 36:3, 37:25, 39:3
**cites** [3] - 37:23, 38:3, 38:9
**City** [1] - 36:4
**civilian** [1] - 27:20
**civilians** [3] - 17:23, 27:10, 44:21
**claim** [9] - 13:23, 13:24, 14:2, 16:15, 26:3, 32:4, 36:22, 37:18
**claiming** [1] - 27:1

**clarification** [1] - 52:4
**class** [8] - 18:6, 18:24, 19:9, 20:18, 24:13, 32:16, 43:11, 47:8
**clear** [1] - 47:9
**clearly** [4] - 15:2, 15:12, 29:2, 33:13
**CLERK** [1] - 52:25
**clerk** [1] - 23:20
**click** [1] - 50:2
**CLUB** [1] - 1:7
**Club** [1] - 7:23
**clue** [1] - 14:7
**co** [2] - 23:16, 38:25
**co-counsel** [1] - 38:25
**co-plaintiff** [1] - 23:16
**cogent** [1] - 41:16
**COL** [1] - 1:12
**comfortable** [1] - 17:20
**coming** [2] - 14:16, 15:7
**comment** [5] - 4:11, 15:18, 16:10, 30:24, 42:16
**comments** [1] - 45:14
**communication** [1] - 24:18
**communications** [1] - 27:25
**community** [1] - 28:1
**company** [1] - 50:5
**complained** [1] - 37:15
**complaining** [3] - 22:10, 22:13, 43:23
**complaint** [12] - 9:3, 9:6, 10:9, 16:2, 29:8, 30:2, 30:3, 36:9, 36:16, 36:21, 38:2, 43:21
**complaints** [2] - 29:13, 36:6
**complete** [1] - 7:16
**completely** [1] - 19:5
**comply** [4] - 32:7, 41:19, 46:18, 48:1
**comports** [1] - 34:10
**computer** [1] - 39:13
**concealed** [1] - 26:5
**concern** [1] - 51:6
**concerned** [2] - 19:5, 48:1
**concurrence** [3] - 33:25, 34:3, 34:8
**concurrences** [1] - 34:1
**conditions** [3] - 8:1, 30:16, 30:17
**confirm** [1] - 28:6

**confused** [3] - 14:20, 49:6, 49:11
**connect** [1] - 50:7
**consider** [1] - 35:22
**consolidate** [3] - 8:25, 10:5, 37:4
**Constitution** [1] - 5:17
**constitutional** [3] - 5:22, 34:4, 45:7
**constitutionality** [1] - 42:24
**constructive** [2] - 23:11, 50:20
**constructively** [1] - 30:10
**contest** [1] - 29:15
**context** [1] - 33:7
**continue** [1] - 34:25
**copying** [1] - 19:23
**core** [3] - 5:14, 13:9, 40:4
**Corp** [1] - 36:3
**correct** [5] - 39:20, 41:4, 41:18, 46:4
**correctly** [1] - 41:3
**council** [3] - 20:2, 20:6
**Counsel** [2] - 2:5, 2:14
**counsel** [3] - 34:18, 36:13, 38:25
**couple** [4] - 33:6, 44:7, 45:13, 52:11
**course** [32] - 4:3, 4:4, 15:1, 15:3, 15:8, 17:14, 18:8, 18:16, 18:19, 19:4, 20:9, 21:11, 21:18, 21:19, 23:1, 23:3, 23:17, 23:24, 24:17, 24:18, 28:13, 41:23, 42:1, 42:2, 44:7, 44:11, 44:23, 45:5, 45:7, 50:19
**courses** [12] - 4:5, 6:18, 17:24, 21:4, 21:19, 30:11, 30:12, 42:4, 44:8, 50:25, 51:11
**COURT** [88] - 1:1, 2:22, 3:3, 3:9, 4:18, 5:6, 9:8, 9:22, 10:6, 10:18, 11:9, 11:12, 11:21, 12:23, 14:1, 16:1, 16:19, 16:22, 17:1, 17:3, 17:19, 18:5, 18:20, 19:24, 20:15, 21:13, 22:4, 23:13, 23:18, 24:7, 24:11, 24:22, 25:16, 25:22, 25:25, 26:16,

27:7, 27:12, 28:16, 28:23, 29:7, 29:12, 29:18, 30:6, 30:19, 30:23, 31:1, 32:12, 32:25, 33:22, 34:23, 35:12, 35:24, 36:7, 37:12, 37:24, 38:11, 38:25, 39:8, 40:9, 40:14, 41:7, 41:12, 43:1, 43:5, 43:8, 43:20, 45:9, 45:12, 46:7, 46:10, 46:16, 46:23, 47:2, 47:17, 48:10, 48:16, 48:19, 49:21, 50:10, 51:12, 51:16, 51:24, 52:7, 52:10, 52:18, 52:21, 52:25
**court** [11] - 3:17, 3:24, 11:1, 11:6, 11:8, 11:23, 19:25, 36:6, 52:25
**Court** [22] - 1:23, 2:20, 5:1, 5:3, 5:5, 5:13, 5:14, 6:6, 7:22, 8:1, 10:22, 12:7, 12:13, 26:14, 26:15, 35:20, 37:22, 42:14, 50:17, 53:1, 53:5, 53:6
**Court's** [1] - 12:20
**courtroom** [2] - 13:7, 49:3
**COURTROOM** [1] - 2:19
**courts** [2] - 33:20, 49:2
**create** [1] - 13:10
**credibility** [1] - 50:15
**credit** [1] - 41:8
**criminal** [1] - 26:1
**criteria** [1] - 24:12
**CROTTY** [1] - 1:12
**cure** [1] - 29:2
**current** [4] - 7:11, 7:12, 31:22, 40:23
**curriculum** [3] - 18:3, 18:13, 49:20

## D

**d/b/a** [1] - 1:5
**Dale** [1] - 53:5
**DANIEL** [1] - 2:12
**Daniel** [1] - 3:8
**date** [12] - 8:17, 41:2, 41:22, 42:19, 42:20, 43:4, 44:5, 44:6, 45:23, 47:11, 47:13, 51:11
**days** [34] - 6:20, 6:22,

6:23, 6:25, 7:17, 7:25, 14:6, 14:9, 15:16, 25:2, 25:3, 25:5, 25:18, 25:20, 27:16, 41:24, 43:3, 43:15, 43:18, 44:4, 44:8, 44:17, 44:25, 45:17, 45:23, 46:18, 46:19, 46:21, 46:22, 47:5, 49:1

**deadline** [2] - 43:13, 51:20
**deal** [1] - 11:14
**dealers** [1] - 28:1
**dealing** [3] - 26:23, 26:25
**decide** [1] - 19:15
**decision** [4] - 7:22, 11:4, 35:6, 39:6
**declarants** [3] - 6:6, 7:8, 42:8
**declaration** [6] - 17:21, 19:6, 23:11, 31:20, 49:8, 50:22
**declarations** [9] - 30:9, 31:4, 41:20, 42:5, 42:10, 42:15, 50:14, 50:15, 52:11
**declare** [1] - 26:9
**deep** [1] - 35:9
**Defendants** [2] - 1:15, 2:14
**defendants** [3] - 3:6, 3:19, 52:10
**defense** [2] - 5:15, 51:22
**defer** [2] - 7:13, 7:14
**DELAWARE** [3] - 1:2, 1:6, 2:8
**Delaware** [9] - 1:11, 1:13, 1:20, 2:20, 7:22, 8:1, 13:24, 18:8, 28:1
**Delawareans** [1] - 26:18
**delay** [3] - 30:15, 32:9, 33:12
**DeMatteis** [2] - 4:14, 22:15
**denial** [5] - 24:16, 24:25, 25:10, 45:21, 48:9
**denied** [3] - 25:9, 45:24, 46:1
**deny** [2] - 17:8, 48:14
**denying** [1] - 25:15
**Department** [2] - 1:11, 3:5
**DEPARTMENT** [1] - 2:8

**DEPUTY** [1] - 2:19
**designed** [1] - 13:13
**detail** [3] - 6:7, 19:22, 48:15
**details** [2] - 5:25, 50:2
**determined** [2] - 8:1, 14:10
**determines** [1] - 48:11
**develop** [2] - 5:22, 5:25
**developments** [1] - 6:3
**difference** [3] - 34:3, 47:23, 51:4
**different** [10] - 4:19, 19:24, 32:21, 36:18, 37:4, 37:5, 39:11, 42:4, 51:5
**differently** [1] - 9:14
**difficult** [4] - 24:3, 29:14, 50:23, 50:24
**direction** [1] - 36:25
**directive** [1] - 48:22
**directly** [2] - 8:19, 17:16
**director** [4] - 14:9, 14:25, 48:11, 48:13
**disagree** [3] - 30:19, 41:15
**discretion** [1] - 4:13
**discuss** [3] - 4:22, 40:1, 52:22
**discussed** [1] - 40:12
**discussion** [1] - 45:16
**dismiss** [10] - 10:9, 12:10, 12:11, 12:18, 12:21, 34:16, 35:21, 36:6, 36:8, 36:25
**dismissal** [1] - 37:1
**dismissed** [1] - 10:12
**dispositive** [1] - 50:25
**dispute** [1] - 31:20
**dissent** [1] - 34:1
**dissuade** [1] - 20:11
**dissuaded** [2] - 29:5, 29:25
**distinction** [1] - 30:3
**District** [4] - 1:23, 2:20, 53:6
**district** [1] - 36:6
**DISTRICT** [2] - 1:1, 1:2
**dive** [1] - 35:10
**docket** [3] - 36:5, 49:4, 52:18
**document** [4] - 18:21, 18:22, 28:18, 29:16
**done** [10] - 3:25, 10:1, 13:24, 28:3, 30:22, 30:25, 33:2, 34:7, 44:12, 52:23

**doors** [1] - 49:3
**dot** [3] - 31:11
**dovetails** [1] - 16:2
**down** [2] - 5:9, 37:9
**dramatic** [1] - 13:16
**draw** [1] - 30:2
**due** [2] - 5:24, 11:2
**dumb** [1] - 10:20
**duplicative** [2] - 36:6, 36:9
**during** [1] - 49:14

**E**

**early** [1] - 9:4
**easily** [2] - 29:2, 33:19
**Eaton** [1] - 36:2
**effect** [6] - 7:9, 8:2, 8:15, 19:8, 28:8, 51:23
**effective** [2] - 8:16, 41:2
**effectively** [1] - 25:14
**effort** [1] - 10:8
**eight** [1] - 42:2
**eighteen** [7] - 5:21, 9:3, 9:5, 9:21, 12:14, 37:6, 48:6
**either** [2] - 10:10, 41:23
**elements** [2] - 13:6, 20:9
**eligible** [1] - 7:15
**ellipsized** [1] - 31:14
**emblematic** [3] - 35:14, 35:16, 46:12
**encouraged** [2] - 24:19, 28:4
**end** [5] - 3:17, 11:12, 11:22, 14:17, 45:16
**enforce** [1] - 20:16
**enforcement** [7] - 7:14, 17:23, 28:4, 41:2, 41:23, 42:21, 51:20
**engage** [3] - 25:20, 28:5, 28:9
**engaged** [1] - 30:4
**engaging** [1] - 32:1
**enter** [1] - 30:15
**entered** [1] - 10:17
**entering** [1] - 33:8
**entire** [1] - 17:18
**entirely** [1] - 13:18
**entirety** [1] - 36:8
**entitled** [2] - 12:16, 32:24
**equivalent** [1] - 8:2
**era** [1] - 34:12
**error** [1] - 42:8

**ESQ** [8] - 2:3, 2:3, 2:4, 2:8, 2:9, 2:11, 2:12, 2:12
**essentially** [3] - 25:7, 30:21, 36:1
**established** [1] - 50:4
**events** [1] - 9:25
**EVERS** [56] - 2:11, 4:17, 13:1, 15:25, 16:11, 16:20, 16:25, 17:2, 17:16, 17:20, 18:10, 19:21, 20:7, 21:7, 21:25, 22:22, 23:16, 24:6, 24:9, 24:14, 25:9, 25:17, 25:24, 26:2, 26:17, 27:11, 27:21, 28:21, 28:24, 29:11, 29:17, 29:22, 30:8, 30:22, 30:25, 31:24, 32:24, 33:4, 34:21, 35:4, 35:14, 36:2, 36:11, 46:2, 46:9, 46:12, 46:17, 46:25, 47:8, 47:19, 48:11, 48:17, 48:20, 49:22, 50:12, 51:13
**Evers** [2] - 3:7, 13:2
**evidence** [7] - 17:22, 27:2, 27:3, 30:11, 48:18, 49:11, 51:3
**evidenced** [1] - 27:25
**exact** [1] - 19:22
**example** [4] - 4:3, 18:3, 26:5, 33:23
**except** [2] - 10:6, 30:18
**exception** [1] - 7:24
**excluded** [1] - 29:5
**exempt** [6] - 8:8, 8:13, 15:4, 17:23, 26:6, 28:4
**exemption** [1] - 17:5
**exercising** [2] - 5:22, 51:23
**Exhibit** [1] - 28:18
**exist** [3] - 27:2, 27:3, 45:21
**existed** [1] - 20:22
**existence** [1] - 23:9
**existing** [1] - 5:18
**expect** [2] - 28:8, 36:13
**expedited** [7] - 3:12, 7:4, 8:22, 11:19, 11:22, 12:2, 52:23
**experience** [1] - 50:2
**explain** [2] - 50:6, 51:1
**explained** [1] - 6:7
**explaining** [1] - 41:21

**explains** [1] - 28:6
**explicit** [1] - 20:8
**express** [4] - 18:15, 18:16, 18:17, 25:11
**expressing** [1] - 29:2
**extension** [2] - 32:11, 49:9
**extent** [5] - 8:4, 22:7, 30:7, 31:2, 33:1

**F**

**Fabrics** [1] - 36:4
**facing** [1] - 26:21
**fact** [5] - 15:23, 17:11, 20:11, 20:12, 21:9
**facts** [2] - 4:19, 49:16
**factual** [1] - 6:3
**fair** [1] - 31:24
**fairly** [2] - 22:20, 29:12
**falling** [1] - 29:24
**familiar** [1] - 48:23
**far** [1] - 24:20
**fast** [1] - 34:21
**favor** [1] - 27:17
**favoring** [1] - 51:8
**FBI** [11] - 4:4, 15:8, 18:6, 18:7, 18:8, 18:19, 18:23, 18:24, 19:9, 24:13, 26:8
**federal** [2] - 33:20, 38:17
**few** [4] - 6:4, 8:20, 25:19, 38:4
**fifty** [1] - 13:16
**fight** [1] - 12:20
**figure** [7] - 6:8, 6:11, 23:12, 23:14, 38:15, 38:20, 42:18
**figured** [1] - 42:17
**file** [2] - 8:22, 8:25
**filed** [6] - 9:3, 9:5, 12:7, 40:22, 50:14, 50:16
**filing** [1] - 6:2
**filling** [1] - 33:11
**fine** [3] - 4:22, 32:17, 52:18
**fingerprinting** [1] - 8:12
**fingerprints** [7] - 42:7, 44:12, 44:13, 44:24, 45:15, 49:21, 49:22
**firearm** [2] - 17:2, 28:1
**firearms** [8] - 4:3, 4:4, 7:24, 8:9, 39:7, 40:5, 40:6, 40:7
**FIREARMS** [1] - 1:6
**firewall** [1] - 49:25
**firm** [3] - 3:7, 13:2,

50:1
**firmly** [1] - 19:21
**first** [10] - 4:24, 7:9, 7:11, 8:10, 9:6, 25:20, 40:23, 44:19, 50:17
**fit** [2] - 15:10
**fits** [2] - 15:13, 17:4
**five** [3] - 15:1, 20:21, 44:15
**floodgate** [1] - 49:7
**Flow** [6] - 4:17, 4:18, 19:22, 19:24, 19:25, 22:15
**focus** [4] - 3:16, 3:19, 21:14, 44:10
**focused** [2] - 3:15, 25:22
**focusing** [1] - 31:16
**folks** [6] - 20:25, 21:20, 23:25, 27:9, 27:20, 47:6
**following** [2] - 30:16, 35:13
**food** [1] - 5:20
**footnote** [3] - 26:18, 34:6, 35:1
**FOR** [1] - 1:2
**forced** [2] - 9:11, 36:14
**foregoing** [1] - 53:3
**foresight** [1] - 10:19
**forests** [1] - 7:24
**forget** [1] - 5:7
**form** [5] - 7:10, 7:12, 40:20, 51:6, 52:17
**forth** [1] - 48:15
**Fourth** [2] - 33:23, 36:22
**FRANCIS** [1] - 2:3
**Francis** [2] - 3:1, 5:2
**frankly** [2] - 35:18, 36:16
**Free** [7] - 4:16, 4:17, 4:18, 19:22, 19:24, 19:25, 22:15
**Free-Flow** [6] - 4:17, 4:18, 19:22, 19:24, 19:25, 22:15
**Freshfield** [3] - 3:7, 4:15, 13:2
**FRESHFIELDS** [1] - 2:11
**Friday** [3] - 47:21, 47:22, 47:25
**friend** [5] - 30:13, 38:10, 40:12, 41:3, 51:19
**friend's** [1] - 42:16
**friends** [1] - 6:16

**front** [6] - 10:22, 11:13, 13:8, 13:21, 27:22, 43:11
**functioning** [4] - 49:18, 49:19, 49:23, 50:4
**fundamental** [1] - 5:12
**futility** [1] - 26:9
**future** [2] - 34:15, 46:8
**fuzzy** [1] - 12:4

## G

**G.X** [1] - 2:3
**gaps** [1] - 33:11
**general** [2] - 36:5, 41:13
**ghost** [1] - 39:10
**gift** [1] - 5:20
**given** [5] - 4:3, 23:2, 24:1, 27:19, 32:22
**Google** [3] - 30:11, 50:23, 51:10
**government** [3] - 4:20, 5:19, 5:20
**grant** [3] - 5:17, 32:4, 45:22
**great** [1] - 27:12
**grounds** [1] - 45:21
**group** [1] - 50:19
**guess** [3] - 32:7, 33:25, 44:16
**guidance** [3] - 19:9, 22:12, 24:1
**guide** [1] - 8:9
**guideline** [1] - 16:25
**guidelines** [8] - 17:2, 17:3, 23:9, 28:25, 29:16, 29:17, 37:10, 46:3
**gun** [19] - 9:23, 15:6, 21:15, 21:22, 25:8, 37:17, 38:16, 39:11, 39:12, 39:15, 39:16, 39:18, 39:19, 46:21, 47:14, 47:15, 47:25, 48:4
**guns** [9] - 38:17, 38:19, 38:20, 39:10, 47:6, 47:12, 47:21, 47:22, 51:20
**guy** [2] - 17:13, 17:14
**guys** [3] - 10:7, 31:14, 34:10

## H

**HAGUE** [1] - 1:4
**half** [1] - 6:7
**handful** [1] - 44:8

**handgun** [3] - 13:14, 13:17, 48:13
**Handgun** [2] - 45:19, 45:22
**handguns** [1] - 13:11
**happy** [9] - 6:5, 19:7, 33:5, 37:2, 37:11, 37:22, 38:23, 39:23, 40:2
**hard** [2] - 6:12, 29:14
**harm** [11] - 10:4, 10:6, 13:20, 23:6, 23:8, 23:12, 32:3, 46:14, 47:23, 48:4, 49:2
**harmless** [1] - 36:12
**Hawkins** [2] - 39:1, 53:5
**head** [1] - 9:23
**health** [1] - 13:13
**hear** [2] - 4:24, 14:7
**heard** [3] - 41:3, 42:9, 51:14
**hearing** [2] - 49:1, 51:11
**Hearing** [1] - 1:18
**hello** [1] - 18:18
**help** [14] - 11:16, 22:24, 23:18, 24:19, 25:25, 26:9, 37:17, 42:9, 42:11, 42:13, 45:14, 45:15
**helpful** [4] - 20:12, 29:3, 37:12, 52:24
**helping** [1] - 23:9
**her's** [1] - 34:7
**hereby** [1] - 53:3
**herring** [1] - 32:1
**highlight** [1] - 40:12
**historical** [1] - 34:10
**hit** [3] - 26:22, 40:14, 46:14
**HODGKINSON** [1] - 2:12
**Hodgkinson** [1] - 3:8
**home** [1] - 6:5
**Homeland** [1] - 1:12
**Honor** [53] - 2:25, 3:4, 4:17, 5:2, 5:9, 5:11, 6:14, 7:5, 8:24, 9:2, 9:10, 9:17, 10:16, 11:2, 11:10, 11:18, 12:5, 12:24, 13:1, 16:12, 24:14, 37:20, 38:9, 38:23, 39:2, 39:4, 39:20, 39:21, 40:10, 40:18, 40:19, 41:10, 41:17, 42:15, 42:22, 43:2, 43:7, 43:11, 43:12, 44:2, 45:1, 45:5, 45:10,

47:19, 51:13, 51:14, 51:18, 51:19, 52:1, 52:2, 52:5, 52:16, 52:20
**Honor's** [3] - 7:1, 7:3, 8:18
**HONORABLE** [1] - 1:23
**Honorable** [1] - 2:21
**horribles** [1] - 46:13
**hours** [3] - 42:2, 49:14, 49:17
**house** [1] - 26:24
**hundred** [2] - 11:3, 20:22
**hunting** [1] - 7:25
**hypothetical** [3] - 18:6, 22:1, 22:18
**hypothetically** [1] - 29:5

## I

**IAN** [1] - 2:8
**Ian** [1] - 3:4
**idea** [2] - 24:3, 24:11
**impact** [1] - 34:5
**implement** [3] - 14:18, 19:11, 19:18
**implementation** [1] - 30:15
**implemented** [2] - 17:12, 17:13
**implied** [1] - 4:13
**important** [1] - 40:17
**impose** [1] - 6:22
**improve** [1] - 13:13
**IN** [1] - 1:1
**INC** [2] - 1:5, 1:6
**included** [1] - 12:1
**includes** [1] - 18:23
**incorporate** [1] - 26:18
**indicate** [1] - 42:10
**indication** [1] - 6:12
**individual** [1] - 47:4
**individuals** [8] - 17:23, 21:13, 21:14, 25:23, 26:7, 27:3, 28:4, 28:5
**information** [8] - 7:6, 8:5, 8:6, 41:25, 42:20, 43:4, 44:6, 51:6
**infrastructure** [4] - 14:3, 14:15, 14:17, 43:22
**infringed** [2] - 38:12, 39:18
**infringement** [1] -

38:16
**inherent** [2] - 35:20, 35:25
**initial** [1] - 43:21
**injunction** [9] - 13:6, 13:17, 13:19, 17:9, 26:17, 33:9, 35:18, 48:25, 50:10
**injury** [1] - 36:23
**insiders** [2] - 8:7, 44:18
**instead** [4] - 11:12, 11:14, 26:9, 48:2
**instruction** [1] - 17:14
**instructive** [1] - 7:20
**instructor** [1] - 3:22
**instructors** [1] - 21:3
**intelligence** [1] - 6:10
**intent** [1] - 29:2
**intentional** [1] - 31:8
**interference** [1] - 38:14
**interim** [1] - 7:14
**introduction** [2] - 5:4, 5:6
**introductions** [1] - 2:24
**invalidate** [2] - 16:14, 32:5
**investigate** [1] - 45:20
**invitations** [1] - 50:8
**involves** [1] - 7:23
**ironically** [1] - 13:5
**irreparable** [2] - 23:12, 32:3
**issue** [24] - 9:4, 12:15, 13:8, 16:6, 16:7, 26:24, 26:25, 28:23, 29:10, 30:1, 33:20, 34:14, 34:24, 38:21, 38:22, 39:21, 39:22, 39:25, 40:1, 42:24, 43:20, 43:22, 45:6, 47:8
**issued** [7] - 6:5, 7:7, 8:4, 18:12, 31:13, 36:1
**issues** [8] - 4:23, 12:18, 13:9, 21:14, 26:19, 33:9, 33:18, 46:8
**IT** [1] - 49:25
**itself** [3] - 6:19, 45:6, 48:19

## J

**January** [2] - 23:25, 24:13
**Jennifer** [1] - 3:6

JENNIFER [1] - 2:9
JENNIFER-KATE [1] - 2:9
Jennings [1] - 39:5
JERRY [1] - 1:4
join [1] - 37:4
JOSHUA [1] - 1:10
JR [2] - 1:4, 2:4
Judge [6] - 1:23, 17:17, 21:7, 22:22, 34:2, 35:5
judges [1] - 34:8
judicial [1] - 51:25
Julia [1] - 3:7
JULIA [1] - 2:12
jump [1] - 34:4
JUSTICE [1] - 2:8
Justice [1] - 3:5

**K**

KARATE [1] - 1:5
KATE [1] - 2:9
keep [6] - 5:15, 16:6, 38:5, 38:8, 40:7, 40:11
keeping [1] - 15:23
KEITH [1] - 2:4
Keith [1] - 3:2
KENPO [1] - 1:5
kept [1] - 42:8
key [1] - 13:4
kind [10] - 11:12, 12:2, 15:21, 16:2, 18:8, 20:4, 31:8, 33:10, 38:14, 49:2
King [1] - 1:20
knowledge [1] - 50:21
knows [1] - 10:22
Koons [2] - 33:7, 35:6

**L**

lack [2] - 5:24, 12:22
land [1] - 35:6
language [5] - 14:24, 15:12, 28:17, 30:20, 45:18
large [1] - 48:8
last [11] - 5:25, 7:19, 9:20, 20:21, 25:19, 37:8, 48:3, 49:8, 50:13, 51:16, 52:4
lastly [1] - 52:1
late [1] - 9:7
law [9] - 17:23, 28:4, 28:8, 34:13, 34:22, 38:7, 50:1, 51:22, 51:23
lawyer [2] - 10:21,

50:22
lawyers [2] - 6:10, 51:1
least [15] - 4:12, 7:13, 7:16, 8:3, 8:13, 15:6, 18:25, 27:22, 30:10, 39:22, 40:20, 43:3, 44:4, 45:3, 51:8
leave [5] - 10:11, 10:12, 42:12, 45:7, 45:11
legislation [1] - 5:21
legislature [2] - 16:9, 20:4
less [5] - 6:15, 6:17, 7:17, 42:19, 44:15
letter [6] - 17:22, 36:3, 48:8, 52:17, 52:18, 52:19
level [1] - 29:23
LEWIS [1] - 2:2
Lewis [2] - 3:1, 5:2
limit [1] - 43:17
line [6] - 22:25, 24:19, 26:9, 42:9, 42:11, 45:15
list [1] - 50:24
Liston [1] - 3:5
LISTON [2] - 2:8, 3:4
litigate [3] - 36:14, 37:1, 37:3
litigated [1] - 39:25
litigating [1] - 17:18
litigation [1] - 49:13
live [3] - 28:5, 29:9, 44:16
LLP [1] - 2:2
loathe [1] - 26:14
local [1] - 44:14
locate [1] - 51:10
look [26] - 14:14, 14:16, 14:23, 15:7, 19:7, 19:11, 20:8, 20:16, 22:11, 22:15, 23:7, 27:14, 30:14, 31:7, 31:17, 33:11, 34:9, 35:6, 35:8, 38:1, 40:20, 41:20, 44:22, 51:7, 52:14
looking [8] - 10:8, 22:8, 22:19, 27:18, 29:10, 32:6, 32:11, 34:5
LTD [1] - 1:7
luck [2] - 18:9, 21:6

**M**

ma'am [1] - 24:14
MacMullan [2] - 2:3,

3:2
main [1] - 33:25
majority [1] - 34:6
marginal [1] - 47:23
MARTIN [1] - 1:4
MARYELLEN [1] - 1:23
Maryellen [1] - 2:21
materials [1] - 19:23
math [1] - 49:7
matter [2] - 23:8, 36:15
matters [1] - 16:15
mean [16] - 9:15, 9:22, 10:14, 10:16, 10:17, 10:25, 17:2, 19:4, 21:22, 22:9, 27:20, 33:4, 38:18, 43:22, 45:17
meaningless [2] - 40:6, 40:8
means [1] - 47:3
meant [1] - 32:17
medical [1] - 42:3
meet [3] - 18:4, 19:9, 35:11
member [1] - 26:20
members [1] - 49:13
memory [1] - 35:9
mentioned [1] - 52:11
merits [2] - 16:20, 27:17
message [2] - 42:8, 42:12
met [4] - 21:16, 30:16, 30:17, 31:20
might [16] - 6:11, 6:12, 9:6, 9:12, 11:21, 15:5, 17:10, 34:17, 34:24, 35:1, 35:3, 39:12, 39:15, 41:12, 46:7, 47:24
mind [1] - 27:22
minimal [1] - 47:23
minute [2] - 5:25, 24:23
minutes [1] - 38:4
miscommunication [1] - 29:23
modify [1] - 11:8
month [2] - 6:17, 32:9
months [7] - 5:21, 9:3, 9:5, 9:21, 12:14, 37:6, 48:6
moot [3] - 12:18, 12:19, 33:2
most [6] - 6:10, 8:8, 27:15, 34:1, 40:17, 44:22
mostly [1] - 8:7

motion [21] - 4:25, 6:2, 7:4, 8:22, 8:25, 9:13, 10:9, 11:8, 11:13, 11:17, 11:20, 12:11, 12:18, 12:20, 30:4, 30:6, 34:16, 36:16, 40:22, 43:23, 51:16
Motion [1] - 1:18
motions [1] - 12:9
move [4] - 9:7, 10:20, 36:24, 41:17
moved [2] - 11:25, 47:13
moving [1] - 34:21
MR [87] - 2:25, 3:4, 4:17, 5:1, 5:9, 9:17, 10:4, 10:16, 11:2, 11:10, 11:18, 12:5, 12:24, 13:1, 15:25, 16:11, 16:20, 16:25, 17:2, 17:16, 17:20, 18:10, 19:21, 20:7, 21:7, 21:25, 22:22, 23:16, 24:6, 24:9, 24:14, 25:9, 25:17, 25:24, 26:2, 26:17, 27:11, 27:21, 28:21, 28:24, 29:11, 29:17, 29:22, 30:8, 30:22, 30:25, 31:24, 32:24, 33:4, 34:21, 35:4, 35:14, 36:2, 36:11, 37:20, 38:2, 38:23, 39:2, 39:20, 40:10, 40:17, 41:9, 41:17, 43:2, 43:7, 43:10, 44:1, 45:10, 46:2, 46:9, 46:12, 46:17, 46:25, 47:8, 47:19, 48:11, 48:17, 48:20, 49:22, 50:12, 51:13, 51:14, 51:18, 52:1, 52:9, 52:16, 52:20
multiple [3] - 24:20, 50:24, 51:10
must [6] - 4:22, 14:22, 15:24, 44:18, 44:22, 45:19
muster [1] - 36:24

**N**

name [1] - 13:1
named [3] - 43:5, 43:8, 43:10
narrow [1] - 28:25
nationally [1] - 13:15
natural [4] - 5:13, 5:16, 5:19

navigate [3] - 6:8, 23:10, 50:24
necessarily [2] - 17:12, 36:7
necessary [1] - 28:8
need [25] - 3:16, 3:19, 4:8, 4:20, 6:1, 12:1, 14:4, 14:5, 14:8, 14:16, 15:19, 16:9, 20:15, 20:19, 22:14, 24:12, 24:18, 26:22, 27:4, 27:13, 40:15, 40:18, 44:2, 52:22
needed [1] - 44:22
needs [1] - 35:22
net [2] - 8:2, 8:15
NEUBERGER [1] - 1:4
Neuberger [3] - 35:19, 35:21, 47:16
new [5] - 3:16, 6:3, 8:23, 34:22, 37:6
New [1] - 36:4
next [2] - 29:8, 38:4
nice [1] - 38:25
night [1] - 49:8
nine [1] - 32:9
nine-month [1] - 32:9
nobody [1] - 40:6
nominally [1] - 6:20
non [2] - 3:16, 27:19
non-new [1] - 3:16
none [8] - 20:12, 21:7, 25:17, 25:18, 26:11, 29:4, 29:5, 29:24
noon [1] - 52:7
NOREIKA [1] - 1:23
Noreika [1] - 2:21
noted [1] - 43:13
notes [5] - 40:11, 41:3, 41:10, 41:18, 53:3
nothing [10] - 9:7, 10:25, 11:1, 12:11, 12:17, 15:16, 21:8, 25:5, 47:6, 49:15
notice [5] - 15:18, 16:10, 25:3, 30:24, 51:25
notification [1] - 48:9
notified [1] - 24:21
notify [1] - 48:14
November [7] - 1:17, 20:22, 21:21, 47:13, 47:19, 47:20, 47:24
number [17] - 8:5, 10:3, 10:4, 19:1, 22:24, 27:21, 28:14, 32:21, 40:25, 41:24, 42:9, 43:3, 43:12, 44:3, 48:8, 49:14,

51:7
**numbers** [1] - 51:2

**O**

**obstacles** [2] - 5:22, 6:1
**obtaining** [1] - 27:4
**obviously** [1] - 36:12
**October** [3] - 17:15, 21:11, 50:18
**OF** [2] - 1:2, 2:8
**offered** [4] - 18:14, 18:19, 23:17, 30:12
**office** [5] - 3:6, 18:2, 18:11, 18:12, 18:17
**officer** [1] - 6:6
**offices** [1] - 50:5
**official** [2] - 1:11, 1:13
**Official** [1] - 53:5
**once** [1] - 44:12
**one** [53] - 4:4, 4:5, 4:13, 4:16, 6:6, 7:2, 7:7, 9:23, 10:21, 13:4, 13:9, 14:6, 14:7, 14:9, 17:4, 19:8, 20:20, 20:21, 20:22, 21:11, 21:12, 21:19, 24:15, 25:10, 27:6, 28:3, 30:17, 32:20, 33:6, 37:5, 37:6, 38:16, 39:3, 39:12, 40:13, 40:17, 40:23, 41:5, 42:1, 44:25, 46:4, 48:23, 49:15, 49:24, 50:7, 50:16, 51:7, 51:8, 52:4
**onerous** [1] - 8:8
**ones** [7] - 3:20, 9:9, 26:1, 32:14, 32:15, 37:25, 50:11
**online** [5] - 6:8, 6:9, 17:25, 28:25, 42:6
**onus** [1] - 19:12
**open** [1] - 14:14
**opening** [3] - 14:4, 38:3, 39:3
**operating** [2] - 13:12, 25:14
**operation** [1] - 27:1
**operational** [1] - 28:6
**opinion** [3] - 33:25, 34:6, 51:4
**opportunity** [1] - 37:8
**opposed** [1] - 43:24
**order** [15] - 7:11, 7:12, 10:25, 11:1, 11:6, 11:8, 11:23, 30:14, 31:19, 32:8, 35:13,

35:25, 40:20, 44:7
**ordered** [2] - 3:18, 36:14
**Oregon** [1] - 35:8
**original** [2] - 35:22, 36:15
**originally** [1] - 47:12
**otherwise** [2] - 26:5, 52:2
**outset** [1] - 16:13
**outside** [1] - 16:8
**overstate** [1] - 46:15
**owner** [2] - 21:22, 39:18

**P**

**p.m** [2] - 1:18, 53:1
**P2P** [1] - 30:15
**page** [3] - 39:3, 39:6, 42:7
**pages** [4] - 11:14, 11:15
**papers** [3] - 3:11, 22:5, 52:2
**parade** [1] - 46:13
**paragraph** [1] - 40:22
**paragraphs** [1] - 40:21
**paraphrase** [2] - 7:12, 37:22
**paraphrasing** [1] - 38:5
**parks** [1] - 7:24
**part** [13] - 7:10, 7:11, 9:15, 9:19, 12:11, 14:3, 31:14, 36:5, 38:8, 40:20, 41:12
**particular** [2] - 4:9, 38:20
**parties** [2] - 12:13, 12:20
**parts** [2] - 17:1, 33:24
**party** [1] - 49:23
**passage** [2] - 9:1, 12:21
**passes** [2] - 25:12, 36:24
**past** [2] - 28:2, 48:5
**pasting** [1] - 19:23
**PDF** [1] - 50:23
**penalties** [1] - 26:1
**penalty** [3] - 6:23, 43:17, 43:18
**pending** [2] - 12:9, 37:6
**people** [28] - 5:17, 8:14, 10:1, 13:10, 15:23, 18:3, 19:8, 19:12, 20:11, 20:25, 25:15, 26:4, 27:6,

27:8, 27:9, 27:15, 27:18, 28:7, 28:9, 31:4, 31:5, 39:8, 44:10, 44:18, 44:22, 47:10, 49:8
**percent** [2] - 11:3, 13:16
**perfectly** [1] - 33:21
**perhaps** [1] - 34:15
**period** [3] - 25:12, 35:15, 48:16
**permit** [30] - 3:22, 14:10, 14:12, 14:25, 15:9, 15:11, 15:24, 18:22, 21:6, 21:18, 21:24, 23:22, 24:4, 25:8, 33:13, 38:17, 41:1, 45:4, 45:6, 46:20, 46:21, 46:22, 47:1, 47:15, 47:16, 48:2, 48:13
**Permit** [2] - 45:20, 45:22
**permits** [13] - 6:4, 7:6, 8:5, 8:9, 8:10, 17:24, 25:15, 26:5, 27:5, 27:9, 29:20, 31:13, 44:18
**permitted** [1] - 15:24
**permitting** [6] - 13:10, 15:4, 30:16, 36:20, 46:18, 48:2
**person** [16] - 4:7, 6:13, 14:11, 15:4, 15:8, 18:11, 38:12, 38:20, 39:17, 44:24, 45:19, 48:12, 48:14, 49:25, 50:7, 51:8
**persons** [1] - 7:16
**persuasive** [2] - 33:24, 34:2
**phone** [6] - 42:9, 49:10, 49:15, 50:8, 51:2, 51:7
**PI** [1] - 32:3
**pick** [1] - 44:3
**picked** [1] - 49:14
**PILEGGI** [32] - 2:3, 2:25, 5:1, 5:9, 9:17, 10:4, 10:16, 11:2, 11:10, 11:18, 12:5, 12:24, 37:20, 38:2, 38:23, 39:2, 39:20, 40:10, 40:17, 41:9, 41:17, 43:2, 43:7, 43:10, 44:1, 45:10, 51:14, 51:18, 52:1, 52:9, 52:16, 52:20
**Pileggi** [3] - 3:1, 5:2,

37:14
**PISTOL** [1] - 1:7
**Pistol** [1] - 7:23
**place** [3] - 14:3, 28:3, 31:10
**plaintiff** [7] - 21:5, 21:9, 21:10, 23:16, 23:19, 23:20, 50:16
**plaintiffs** [45] - 3:1, 3:16, 3:17, 4:24, 5:3, 8:4, 8:14, 8:23, 10:21, 15:6, 16:3, 20:14, 23:8, 24:16, 25:13, 26:11, 26:13, 27:6, 27:18, 29:4, 29:24, 30:8, 33:14, 35:18, 35:21, 36:10, 36:18, 41:1, 41:6, 41:18, 41:21, 42:17, 43:6, 43:9, 43:10, 44:11, 45:3, 47:5, 47:12, 47:16, 49:24, 50:8, 50:11, 50:20
**Plaintiffs** [2] - 1:8, 2:5
**plaintiffs'** [3] - 22:5, 34:18, 36:13
**planning** [1] - 5:24
**plus** [1] - 6:14
**pocket** [2] - 14:13, 25:7
**point** [25] - 7:2, 7:19, 8:13, 10:10, 12:8, 13:4, 14:11, 20:7, 20:12, 22:17, 23:5, 26:22, 29:9, 32:2, 34:17, 36:2, 36:3, 36:11, 36:25, 37:3, 38:4, 47:11, 47:14, 49:5, 50:13
**pointing** [1] - 14:21
**points** [2] - 8:20, 16:13
**Police** [1] - 1:14
**police** [3] - 44:14, 44:16, 44:23
**portal** [3] - 17:25, 18:8, 42:6
**position** [3] - 9:6, 15:6, 21:16
**positions** [1] - 37:5
**possess** [1] - 39:7
**possibility** [1] - 26:21
**possible** [1] - 13:7
**possibly** [2] - 48:6, 52:15
**posted** [2] - 20:21, 20:24
**power** [2] - 36:5, 36:8
**pre** [1] - 14:22
**pre-approve** [1] -

14:22
**precedent** [1] - 34:10
**predominantly** [1] - 28:4
**preexisting** [2] - 18:2, 26:8
**prefers** [1] - 5:5
**preliminary** [6] - 13:6, 13:17, 17:8, 33:9, 48:25, 50:10
**premature** [1] - 9:4
**prepared** [1] - 17:21
**preparing** [1] - 28:2
**prerequisites** [1] - 7:16
**present** [1] - 39:23
**presentations** [1] - 3:13
**presented** [3] - 20:13, 21:8, 22:1
**presiding** [1] - 2:21
**press** [1] - 7:5
**presumption** [1] - 35:8
**presumptive** [1] - 35:1
**presumptively** [1] - 34:4
**pretend** [1] - 39:4
**prevailing** [2] - 12:9, 12:17
**prevent** [1] - 11:7
**previous** [1] - 28:13
**price** [1] - 47:23
**printer** [1] - 39:13
**problem** [19] - 13:15, 15:14, 15:17, 16:1, 16:2, 16:22, 16:23, 18:20, 20:23, 23:13, 24:1, 28:16, 29:19, 31:3, 33:22, 42:17, 43:12, 47:3
**problems** [1] - 22:20
**procedural** [2] - 7:20, 11:19
**procedurally** [3] - 11:11, 11:23, 12:6
**procedure** [1] - 31:11
**procedures** [1] - 6:9
**proceed** [1] - 50:2
**proceeding** [3] - 4:11, 12:2, 53:3
**process** [9] - 8:12, 17:6, 24:6, 25:10, 25:14, 25:21, 27:14, 30:16, 32:9
**program** [4] - 3:21, 19:18, 49:12, 49:23
**promise** [1] - 10:23
**promulgating** [1] - 22:14

**proposed** [2] - 7:10, 30:14

**protection** [1] - 39:7

**proverbial** [1] - 9:23

**provide** [5] - 6:21, 6:24, 21:11, 37:23, 38:9

**provided** [3] - 21:11, 31:15, 50:19

**providing** [1] - 21:12

**proving** [2] - 20:11, 25:13

**provision** [2] - 25:11, 32:14

**provisions** [4] - 3:20, 20:15, 32:13, 37:14

**public** [8] - 13:8, 13:13, 13:14, 13:20, 29:24, 41:25, 43:4, 44:6

**publicly** [3] - 6:15, 6:18, 7:6

**pulled** [1] - 45:18

**punitive** [1] - 39:18

**purchase** [2] - 41:2, 48:13

**Purchaser** [2] - 45:20, 45:22

**purportedly** [1] - 38:12

**put** [12] - 9:23, 10:8, 13:8, 13:20, 18:25, 35:22, 35:23, 37:11, 40:25, 51:3, 51:7, 52:12

**puts** [1] - 18:6

**putting** [1] - 21:22

### Q

**Qualified** [2] - 45:20, 45:22

**qualified** [2] - 48:12, 48:13

**qualifies** [2] - 22:24, 26:8

**qualify** [2] - 27:13, 49:6

**questions** [4] - 14:14, 22:23, 45:11, 52:3

**quote** [2] - 36:4, 39:6

### R

**raised** [2] - 39:22, 46:10

**raises** [1] - 47:4

**raising** [1] - 43:21

**random** [1] - 21:21

**reach** [2] - 13:5, 35:5

**reaching** [1] - 33:9

**read** [15] - 3:23, 4:1, 4:13, 15:19, 18:22, 23:22, 25:4, 27:16, 28:25, 29:12, 29:20, 34:25, 39:1, 42:15, 48:10

**reading** [8] - 11:14, 22:5, 22:7, 28:19, 33:11, 33:23, 33:24, 41:9

**reads** [1] - 23:21

**real** [5] - 13:13, 13:14, 15:14, 15:16, 33:22

**realized** [1] - 46:11

**really** [22] - 10:14, 11:16, 12:3, 20:23, 28:23, 30:1, 30:2, 31:2, 31:15, 32:6, 32:8, 32:17, 33:17, 36:17, 43:13, 43:23, 46:12, 46:14, 46:22, 48:1, 49:10, 50:15

**reason** [4] - 18:14, 19:5, 22:4, 27:24

**reasonable** [8] - 7:15, 40:24, 40:25, 42:23, 42:24, 43:1, 45:2, 51:9

**reasoning** [2] - 7:21, 8:3

**reasons** [4] - 12:16, 22:19, 42:3, 48:15

**receipt** [1] - 45:23

**received** [1] - 24:18

**recognized** [1] - 5:18

**recognizing** [1] - 38:7

**reconstruction** [1] - 34:12

**record** [7] - 27:2, 27:3, 27:5, 27:7, 49:11, 51:3, 51:8

**recourse** [2] - 6:24, 43:16

**red** [1] - 32:1

**reduction** [1] - 13:16

**referenced** [1] - 30:1

**refile** [1] - 36:20

**regard** [1] - 13:22

**regarding** [1] - 52:5

**regime** [1] - 36:20

**regulation** [8] - 3:25, 4:14, 15:5, 16:14, 16:24, 22:9, 22:14, 30:23

**regulations** [8] - 3:23, 4:10, 14:4, 14:5, 14:18, 16:17, 19:18, 31:11

**reiterate** [1] - 16:13

**rejected** [3] - 24:5, 24:8, 24:11

**rejection** [1] - 25:5

**related** [3] - 38:8, 40:5, 52:6

**relates** [1] - 40:3

**relative** [1] - 28:7

**relatively** [1] - 35:7

**releases** [1] - 7:5

**relief** [10] - 7:5, 7:13, 7:14, 8:22, 12:16, 16:17, 31:6, 31:17, 42:22, 45:1

**relying** [3] - 4:9, 4:20, 27:14

**remember** [1] - 39:22

**reminded** [1] - 29:25

**reply** [1] - 41:21

**Reporter** [1] - 53:5

**represent** [1] - 51:4

**representations** [1] - 10:7

**representing** [1] - 13:3

**request** [3] - 12:17, 35:11, 49:5

**requesting** [2] - 32:8, 45:2

**require** [3] - 19:20, 35:16, 49:3

**required** [6] - 3:25, 6:14, 6:18, 32:23, 32:25, 45:3

**requirement** [5] - 15:4, 21:17, 46:19, 48:9, 48:21

**requirements** [14] - 8:8, 8:16, 18:15, 18:16, 20:9, 31:21, 41:1, 41:19, 41:22, 42:18, 42:25, 45:4, 45:6, 48:2

**requires** [1] - 30:24

**residence** [1] - 44:15

**resolved** [3] - 35:17, 35:19

**resources** [1] - 12:20

**respect** [2] - 11:2, 37:17

**respectfully** [1] - 21:7

**respond** [3] - 40:15, 42:16, 50:8

**rest** [1] - 52:2

**result** [1] - 13:20

**review** [4] - 4:11, 6:20, 16:10, 17:6

**reviewed** [1] - 3:12

**RIFLE** [1] - 1:7

**Rifle** [1] - 7:22

**Rigby** [1] - 39:5

**rights** [6] - 24:21, 24:22, 24:24, 39:14, 51:23, 52:5

**ring** [1] - 49:15

**ripe** [5] - 9:5, 12:10, 12:15, 12:22, 34:19

**ripeness** [1] - 12:12

**rise** [2] - 2:19, 52:25

**ROBERT** [1] - 2:8

**run** [2] - 3:17, 49:22

**running** [3] - 49:13, 49:16, 50:3

**runs** [1] - 49:12

**Rushing** [1] - 34:2

### S

**Safety** [1] - 1:12

**safety** [1] - 13:14

**sale** [1] - 47:18

**satisfied** [2] - 6:1, 8:16

**satisfies** [1] - 33:19

**satisfy** [6] - 26:11, 41:1, 41:22, 42:17, 42:25, 45:4

**SBI** [10] - 3:21, 14:22, 15:9, 18:11, 18:18, 19:14, 27:25, 28:11, 45:20, 49:17

**schedule** [3] - 41:25, 42:2, 44:11

**scheduling** [1] - 5:11

**scheme** [2] - 13:10, 23:10

**seated** [1] - 2:23

**second** [6] - 7:10, 13:12, 20:7, 39:16, 40:22, 50:22

**Second** [14] - 26:3, 33:8, 33:18, 34:5, 35:5, 35:10, 36:21, 37:18, 38:18, 38:22, 39:15, 40:3, 40:4, 52:6

**Secretary** [1] - 1:11

**section** [1] - 48:12

**sections** [2] - 37:10, 52:13

**Security** [1] - 1:12

**see** [9] - 9:7, 13:16, 15:12, 15:25, 16:9, 16:12, 26:2, 36:21, 38:15

**seek** [4] - 8:21, 8:22, 10:11, 26:14

**seeking** [4] - 7:13, 16:17, 32:5, 42:23

**self** [1] - 5:15

**sell** [8] - 13:10, 26:3,

37:19, 38:17, 40:5, 40:6, 40:7, 47:7

**seller** [5] - 38:13, 38:16, 39:15, 39:16, 52:6

**seller's** [1] - 38:14

**sellers** [10] - 15:6, 21:15, 25:25, 26:2, 36:15, 36:19, 36:23, 37:4, 37:17

**selling** [1] - 47:6

**send** [2] - 19:14, 20:20

**sense** [1] - 10:14

**sentence** [1] - 41:13

**separately** [1] - 31:25

**sergeant** [1] - 49:12

**session** [1] - 2:21

**set** [1] - 28:14

**setting** [1] - 48:15

**several** [2] - 28:2, 30:2

**severance** [1] - 37:1

**shall** [7] - 16:6, 16:7, 21:23, 26:24, 45:20, 48:14, 48:21

**shoes** [1] - 27:18

**short** [5] - 9:18, 9:19, 10:3, 35:15

**shoulder** [1] - 50:6

**show** [1] - 49:2

**showing** [2] - 18:4, 20:10

**shown** [1] - 17:9

**shows** [4] - 27:2, 27:3, 27:5, 27:7

**sign** [1] - 31:18

**similarly** [2] - 8:14, 26:18

**simple** [2] - 8:24, 49:7

**single** [1] - 21:17

**sit** [2] - 37:8, 50:6

**sitting** [2] - 10:20, 51:9

**situated** [2] - 8:14, 26:18

**six** [1] - 32:8

**skill** [1] - 51:9

**slowly** [1] - 39:1

**small** [4] - 7:23, 7:24, 8:4, 41:24

**smart** [1] - 6:9

**smartest** [1] - 11:4

**SMITH** [2] - 1:5, 2:2

**solution** [1] - 8:25

**someone** [15] - 4:3, 4:4, 15:2, 15:7, 21:4, 21:16, 21:23, 23:2, 24:4, 29:14, 30:20, 39:18, 41:14, 47:7, 50:7

**somewhat** [1] - 44:2

**soon** [2] - 12:7, 52:14
**sooner** [1] - 34:19
**sorry** [7] - 8:19, 16:1, 17:19, 24:14, 35:8, 41:10, 43:7
**sort** [4] - 4:13, 14:14, 15:14, 46:13
**sought** [2] - 10:12, 31:7
**speaking** [1] - 13:7
**special** [1] - 47:18
**specific** [4] - 3:20, 14:21, 37:23, 48:15
**specifically** [1] - 5:14
**speculated** [1] - 22:2
**speculation** [4] - 20:13, 26:10, 26:11
**spell** [1] - 22:18
**SPORTSMAN'S** [1] - 1:6
**stage** [1] - 35:18
**stamps** [1] - 5:20
**standard** [1] - 13:6
**standing** [10] - 9:13, 23:5, 23:6, 26:19, 29:10, 29:15, 32:3, 34:24, 39:13, 46:14
**start** [7] - 2:23, 13:4, 13:22, 14:21, 14:22, 51:20, 51:22
**starts** [2] - 16:5
**state** [26] - 3:24, 5:19, 5:24, 6:16, 6:20, 6:23, 6:25, 7:5, 7:13, 7:24, 9:3, 13:3, 14:16, 18:2, 19:13, 19:16, 21:3, 21:4, 21:17, 26:4, 26:7, 37:9, 43:17, 50:3, 50:5, 51:7
**STATE** [1] - 1:6
**State** [1] - 1:14
**states** [2] - 13:15
**STATES** [1] - 1:1
**States** [2] - 1:23, 2:19
**station** [1] - 44:23
**statute** [62] - 4:1, 6:19, 6:22, 7:15, 13:9, 13:18, 13:20, 14:5, 14:17, 14:24, 15:3, 15:10, 15:11, 15:20, 15:22, 15:23, 17:9, 17:11, 18:2, 18:15, 18:17, 19:22, 19:23, 19:25, 20:1, 20:4, 20:8, 21:17, 21:23, 23:15, 24:21, 24:25, 25:4, 25:11, 26:23, 26:24, 26:25, 28:15, 28:17, 28:19, 29:20,

30:4, 30:6, 33:19, 33:21, 43:13, 43:14, 44:4, 44:12, 44:17, 45:4, 45:18, 46:2, 46:23, 48:19, 48:20, 48:21
**statutes** [2] - 6:20, 13:16
**statutory** [2] - 15:12, 23:10
**stay** [1] - 33:5
**stenographic** [1] - 53:3
**stick** [1] - 10:10
**still** [5] - 7:11, 40:18, 40:23, 42:23, 45:2
**stipulated** [1] - 9:9
**stipulation** [3] - 3:18, 10:24, 11:5
**story** [2] - 36:19, 51:2
**strain** [1] - 50:15
**Street** [1] - 1:20
**strike** [2] - 37:10, 37:16
**struck** [2] - 31:9, 36:12
**struggle** [1] - 26:2
**studied** [1] - 46:5
**stuff** [7] - 11:15, 19:14, 20:3, 22:15, 31:11, 34:11, 44:19
**subject** [3] - 4:10, 26:1, 31:23
**submission** [2] - 39:24, 52:5
**submissions** [1] - 6:16
**submit** [5] - 18:1, 18:23, 38:24, 40:2, 45:19
**submitted** [5] - 7:4, 24:16, 40:21, 41:20, 42:10
**subsection** [3] - 48:7, 48:12, 48:22
**subset** [1] - 26:7
**substance** [1] - 11:16
**substantially** [2] - 8:2, 32:13
**substantive** [2] - 12:18, 46:8
**successful** [2] - 35:1, 35:2
**suddenly** [1] - 49:9
**sufficient** [2] - 14:2, 17:22
**suggest** [6] - 12:15, 14:15, 21:1, 21:8, 36:19, 48:24
**suggested** [1] - 51:19

**suggesting** [2] - 22:25, 24:2
**suicide** [2] - 13:14, 13:17
**summarize** [2] - 42:22, 45:1
**summer** [1] - 9:13
**Sunday** [6] - 21:12, 23:17, 27:1, 41:22, 47:25, 51:20
**superintendent** [1] - 1:13
**supplement** [2] - 20:10, 27:24
**supplemental** [1] - 39:23
**supposed** [4] - 9:16, 18:7, 23:23, 29:18
**Supreme** [5] - 5:13, 7:22, 8:1, 26:14, 37:22
**surprised** [1] - 38:10
**system** [2] - 28:5, 50:4
**systems** [1] - 49:12

## T

**table** [1] - 51:9
**tacitly** [1] - 20:5
**tactic** [2] - 36:12, 37:7
**talks** [1] - 48:8
**tantamount** [1] - 22:9
**team** [1] - 49:13
**tee** [1] - 12:6
**telephone** [1] - 19:1
**ten** [2] - 44:8, 48:24
**tens** [2] - 26:4, 49:8
**terms** [2] - 15:14, 49:10
**terrible** [1] - 18:25
**terrific** [1] - 27:16
**tested** [1] - 25:17
**Texas** [1] - 23:7
**THE** [89] - 1:1, 1:2, 1:23, 2:22, 3:3, 3:9, 4:18, 5:6, 9:8, 9:22, 10:6, 10:18, 11:9, 11:12, 11:21, 12:23, 14:1, 16:1, 16:19, 16:22, 17:1, 17:3, 17:19, 18:5, 18:20, 19:24, 20:15, 21:13, 22:4, 23:13, 23:18, 24:7, 24:11, 24:22, 25:16, 25:22, 25:25, 26:16, 27:7, 27:12, 28:16, 28:23, 29:7, 29:12, 29:18, 30:6, 30:19, 30:23, 31:1, 32:12, 32:25, 33:22,

34:23, 35:12, 35:24, 36:7, 37:12, 37:24, 38:11, 38:25, 39:8, 40:9, 40:14, 41:7, 41:12, 43:1, 43:5, 43:8, 43:20, 45:9, 45:12, 46:7, 46:10, 46:16, 46:23, 47:2, 47:17, 48:10, 48:16, 48:19, 49:21, 50:10, 51:12, 51:16, 51:24, 52:7, 52:10, 52:18, 52:21
**theme** [2] - 12:9, 12:17
**themselves** [1] - 43:17
**thereof** [1] - 45:22
**they've** [3] - 8:4, 14:1, 47:24
**thinking** [2] - 31:16, 39:9
**Third** [3] - 33:7, 34:12, 37:21
**third** [1] - 49:23
**third-party** [1] - 49:23
**thirty** [36] - 6:20, 6:22, 6:23, 6:25, 7:17, 14:6, 14:9, 15:16, 25:2, 25:3, 25:5, 25:12, 25:18, 32:11, 33:12, 43:3, 43:15, 43:18, 44:4, 44:17, 45:17, 45:23, 46:4, 46:18, 46:19, 46:21, 46:22, 47:5, 48:21, 48:25, 49:1, 49:5, 49:9
**thirty-day** [5] - 25:12, 33:12, 48:21, 49:5, 49:9
**thirty-one** [3] - 14:6, 14:9, 46:4
**THOMAS** [1] - 1:4
**thoughtful** [1] - 34:7
**thoughts** [1] - 34:25
**thousands** [2] - 26:4, 49:8
**threats** [1] - 13:14
**three** [7] - 4:6, 15:3, 20:23, 27:16, 27:23, 43:14, 44:21
**throughout** [1] - 12:9
**Thursday** [1] - 1:17
**timeline** [1] - 6:21
**today** [16] - 3:12, 5:12, 13:3, 13:7, 13:19, 17:22, 34:15, 40:1, 40:19, 42:23, 46:19, 47:14, 47:24, 48:5, 50:20, 52:24

**tomorrow** [4] - 39:24, 40:2, 48:5, 52:8
**took** [9] - 4:3, 4:4, 15:7, 15:8, 17:14, 18:8, 20:23, 21:4, 23:1
**top** [1] - 29:4
**total** [3] - 13:11, 13:12
**totality** [1] - 23:11
**touch** [3] - 20:25, 28:10, 33:6
**touched** [1] - 33:20
**TPT** [1] - 28:5
**trace** [1] - 23:8
**trainer** [1] - 50:18
**trainers** [3] - 17:25, 49:19, 51:5
**training** [8] - 6:14, 8:9, 8:12, 18:6, 20:9, 27:4, 44:13, 50:25
**transcript** [3] - 41:4, 41:10, 53:3
**treating** [2] - 5:19, 10:25
**treatment** [3] - 11:20, 11:22, 35:7
**tree** [1] - 49:15
**tried** [4] - 11:22, 25:19, 26:17, 42:6
**trouble** [1] - 26:7
**true** [1] - 53:3
**try** [4] - 21:6, 35:10, 36:17, 39:2
**trying** [9] - 8:13, 22:5, 22:8, 25:19, 38:15, 38:20, 40:10, 48:2, 48:4
**turned** [1] - 9:12
**twenty** [1] - 48:25
**two** [25] - 3:15, 4:14, 6:15, 6:17, 7:10, 7:17, 8:23, 9:19, 10:3, 10:4, 10:5, 13:9, 16:4, 16:12, 27:10, 33:25, 40:13, 40:21, 42:4, 42:19, 44:21, 44:25, 47:13, 50:14, 50:15
**two-part** [2] - 7:10, 9:19

## U

**U.S** [4] - 5:13, 5:17, 37:21, 53:6
**unconstitutional** [2] - 17:10, 51:22
**under** [6] - 7:25, 15:23, 16:17, 34:12, 45:18, 48:12

**undercut** [1] - 32:13
**underlying** [1] - 33:19
**underscore** [1] - 33:17
**understood** [2] - 24:25, 27:8
**undertake** [1] - 19:16
**United** [2] - 1:23, 2:19
**UNITED** [1] - 1:1
**unless** [4] - 8:12, 45:10, 45:21, 52:2
**unpack** [1] - 16:12
**unsuccessfully** [1] - 48:3
**up** [16] - 12:6, 13:8, 13:21, 15:20, 19:14, 22:11, 33:5, 34:15, 35:3, 42:3, 45:18, 47:13, 49:12, 49:14, 49:16, 50:2
**updated** [1] - 27:21
**updating** [1] - 28:11
**upfront** [1] - 11:25
**upload** [3] - 18:3, 49:19, 49:20
**useful** [2] - 12:19, 52:13

## V

**valid** [2] - 28:13, 33:21
**versions** [1] - 31:22
**veto** [2] - 14:13, 25:7
**violation** [1] - 38:18
**volume** [1] - 28:7

## W

**wait** [2] - 29:7, 31:18
**waited** [1] - 5:25
**waiting** [2] - 47:20, 47:22
**walk** [2] - 13:7, 49:3
**WALTER** [1] - 2:4
**Walters** [1] - 3:2
**Walton** [1] - 36:2
**Wang** [1] - 3:7
**WANG** [1] - 2:12
**wants** [1] - 52:5
**warm** [1] - 12:4
**warning** [1] - 50:1
**waste** [2] - 12:12, 21:2
**website** [7] - 7:8, 19:1, 22:23, 28:12, 49:18, 51:6
**week** [3] - 29:8, 47:21, 48:3
**weeks** [6] - 6:15, 6:17, 7:17, 16:4, 28:2, 42:19
**weird** [1] - 15:2

**well-established** [1] - 50:4
**whatsoever** [1] - 10:15
**whole** [2] - 34:23
**WILLIAM** [2] - 1:4, 1:12
**willing** [1] - 37:9
**Wilmington** [1] - 1:20
**window** [1] - 20:24
**wish** [1] - 10:1
**word** [2] - 12:22, 51:17
**words** [2] - 23:14, 33:11
**worthless** [1] - 38:6
**writing** [3] - 37:11, 48:14, 52:12
**written** [9] - 13:11, 17:10, 17:12, 18:21, 19:4, 19:7, 20:18, 26:23, 26:25
**wrote** [1] - 5:9

## Y

**year** [2] - 7:25, 47:20
**years** [9] - 4:6, 10:22, 15:1, 15:3, 20:21, 20:22, 20:23, 43:14, 44:15
**yesterday** [11] - 21:10, 23:4, 27:5, 30:9, 32:10, 33:11, 47:13, 47:15, 48:5, 50:14, 50:16

## Z

**zagging** [1] - 24:23
**zigging** [1] - 24:23

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Volume II of Appendix to Opening Brief of Appellants* with the Clerk of Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on March 25, 2026.  Service on all counsel for all parties has been accomplished via ECF.

 /s/ Francis G.X. Pileggi
Francis G.X. Pileggi
*Attorney for Plaintiffs-Appellants*

Dated:  March 25, 2026.

173978431.1