No. 25-3250

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.;
BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK
FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and
BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.,

*Plaintiffs-Appellants*,

v.

JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware
Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in
his official capacity as superintendent of the Delaware State Police,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(No. 1:25-CV-01341)
THE HONORABLE MARYELLEN NOREIKA

## **DEFENDANTS-APPELLEES' ANSWERING BRIEF**

Date: May 22, 2026

*Of Counsel*:
FRESHFIELDS US LLP

Jennifer B. Loeb
Austin R. Evers
Lauren Kaplin
Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Abhinaya Swaminathan
Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
abhinaya.swaminathan@freshfields.com
rebecca.kerr@freshfields.com

DELAWARE DEPARTMENT OF JUSTICE

Ian R. Liston (DE #5507)
Jennifer K. Aaronson
(DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ian.liston@delaware.gov
jennifer.aaronson@delaware.gov

*Counsel for Defendants-Appellees*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. iii

COUNTERSTATEMENT OF JURISDICTION ....................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW .................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ...........................2

COUNTERSTATEMENT OF THE CASE ...........................................................4

    I.      THE STATUTE .................................................................................5

    II.     PLAINTIFFS' LAWSUITS .................................................................7

        A.   *Neuberger I* ...........................................................................7

        B.   *Neuberger II* (This Case) ......................................................9

    III.    DELAWARE'S PERMIT-TO-PURCHASE INFRASTRUCTURE..11

    IV.    PROCEEDINGS BELOW AND THE DISTRICT COURT'S RULING ON PLAINTIFFS' MOTION .............................................13

    V.    THIS APPEAL ..................................................................................17

SUMMARY OF ARGUMENT ...........................................................................18

ARGUMENT ......................................................................................................21

    I.      THIS COURT SHOULD NOT ENTERTAIN ARGUMENTS AND REQUESTS FOR RELIEF NOT RAISED BELOW .........................21

     A.    Plaintiffs' Motion Is Moot ................................................21

     B.    Newly Raised "Facial" Challenge Arguments Should Be Disregarded. ...................................................................22

     C.    This Court Cannot Grant the Requested Universal Injunction..........25

II.     THE DISTRICT COURT'S DISMISSAL OF THE ORIGINAL
PLAINTIFFS SHOULD BE AFFIRMED ...................................................26

     A.     Standard of Review ...............................................................26

     B.     Original Plaintiffs Were Properly Dismissed ........................27

III.     THE DISTRICT'S COURT'S DENIAL OF PRELIMINARY INJUNCTIVE
RELIEF SHOULD BE AFFIRMED ..........................................................32

     A.     Standard and Scope of Review ..............................................32

     B.     Plaintiffs Lack Standing ........................................................34

     C.     The District Court Correctly Determined That Plaintiffs Failed
to Show Likelihood of Success on the Merits ........................37

          1.     There Was Never Any 'Total Ban' .............................37

          2.     Plaintiffs Have No Claim Regarding the Guidelines ..................38

     D.     Plaintiffs Fail to Meet the Other Requirements for Injunction..........40

          1.     Plaintiffs Allege No Irreparable Harm .......................40

          2.     Equity and Public Interest Favor Defendants.............43

     E.     The Statute Does Not Violate the Second Amendment....................44

          1.     Seller Plaintiffs Have No Second Amendment Right to Sell
Handguns to Buyers Without Permits ......................44

          2.     Shall-Issue Permitting Laws Like the Statute are Presumptively
Constitutional ..........................................................45

          3.     Plaintiffs Make No Showing of Abusive Implementation..........48

          4.     Plaintiffs' Historical Tradition Arguments are Unlikely to
Succeed ..................................................................50

          5.     The Statute's Constitutional Applications Preclude A Facial
Challenge ................................................................53

CONCLUSION ............................................................................................55

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Acierno v. New Castle Cnty.*,
   40 F.3d 645 (3d Cir. 1994) ................................................................42

*Antonyuk v. James*,
   120 F.4th 941 (2d Cir. 2024) ...............................................47, 54, 55

*Beers v. Att'y Gen.*,
   927 F.3d 150 (3d Cir. 2019), *dismissed as moot*, 822 F. App'x 56
   (3d Cir. 2020).......................................................................................54

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)......................................................................35, 36

*Colo. Outfitters Ass'n v. Hickenlooper*,
   823 F.3d 537 (10th Cir. 2016) ............................................................36

*Coltec Indus. v. Hobgood*,
   280 F.3d 262 (3d Cir. 2002) ...............................................................28

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) .........................................................29, 30

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland
   Sec.*,
   108 F.4th 194 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 1049 (2025) ..........*passim*

*DeMatteis v. RiseDelaware Inc.*,
   315 A.3d 499 (Del. 2024) ...................................................................40

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)......................................................................45, 46

*ECRI v. McGraw-Hill, Inc.*,
   809 F.2d 223 (3d Cir. 1987) ...............................................................41

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
   11 F.4th 200 (3d Cir. 2021) ................................................................35

*Fabics v. City of New Brunswick*,
629 F. App'x 196 (3d Cir. 2015) ........................................................2, 26

*Ferring Pharms. v. Watson Pharms.*,
765 F.3d 205 (3d Cir. 2014) ....................................................................41

*Free Speech Coal. v. Att'y Gen.*,
974 F.3d 408 (3d Cir. 2020) ....................................................................26

*Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't
Control of State*,
861 A.2d 1233 (Del. 2004) ......................................................................39

*Frey v. City of New York*,
157 F.4th 118 (2d Cir. 2025) ...................................................................48

*Giambalvo v. Suffolk County*,
155 F.4th 163 (2d Cir. 2025) ...................................................................47

*Harris v. City of Philadelphia*,
35 F.3d 840 (3d Cir. 1994) ...........................................................1, 22, 23

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989) ..............................................................40, 41

*Hope v. Warden York Cnty. Prison*,
972 F.3d 310 (3d Cir. 2020) ....................................................................43

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) ....................................................................42

*Kamdem-Ouaffo v. Task Mgmt.*,
792 F. App'x 218 (3d Cir. 2019) ........................................................1, 33

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth
Beach*,
506 F. Supp. 3d 229 (D. Del. 2020).........................................................22

*In re Lei Ke*,
531 F. App'x 187 (3d Cir. 2013) ..............................................................34

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................35

iv

*Marinaccio v. E. Hanover Bd. Police Dep't*,
   2022 WL 964000 (3d Cir. Mar. 30, 2022).......................................................23

*Maryland v. King*,
   567 U.S. 1301 (2012).....................................................................................43

*McKenna v. City of Philadelphia*,
   304 F. App'x 89 (3d Cir. 2008) ......................................................26, 27, 28, 30

*McRorey v. Garland*,
   99 F.4th 831 (5th Cir. 2024) .........................................................................47

*Md. Shall Issue, Inc. v. Moore*,
   116 F.4th 211 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1049 (2025) ..........*passim*

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 .................................................................................................*passim*

*Nextel W. Corp. v. Unity Twp.*,
   282 F.3d 257 (3d Cir. 2002) .........................................................................39

*Off. Comm'r Baseball v. Markell*,
   579 F.3d 293 (3d Cir. 2009) (cited Br. 12).....................................................34

*Orabi v. Att'y Gen.*,
   738 F.3d 535 (3d Cir. 2014) ...........................................................................3

*Pitt News v. Pappert*,
   379 F.3d 96 (3d Cir. 2004) ...........................................................................34

*Policastro v. Kontogiannis*,
   262 F. App'x 429 (3d Cir. 2008) ...................................................................22

*Powell v. Kemp*,
   53 F. App'x 750 (6th Cir. 2002)................................................................28, 29

*Reading v. N. Hanover Twp.*,
   124 F.4th 189 (3d Cir. 2024) ....................................................................35, 36

*S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*,
   274 F.3d 771 (3d Cir. 2001) .........................................................................33

*Schneider v. United States*,
301 F. App'x 187 (3d Cir. 2008) ..............................................29, 30

*Siemens USA Holdings Inc. v. Geisenberger*,
17 F.4th 393 (3d Cir. 2021) ....................................................25, 34

*Smith v. President U.S.*,
2025 WL 3515398 (3d Cir. Dec. 8, 2025)..............................................22

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................36

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) ......................................................44

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)..............................................................1, 26

*United States v. Chafin*,
423 F. App'x 342 (4th Cir. 2011) ..................................................45

*United States v. Harris*,
144 F.4th 154 (3d Cir. 2025) ......................................................51

*United States v. Rahimi*,
602 U.S. 680 (2024)...........................................................*passim*

*United States v. Salerno*,
481 U.S. 739 (1987)................................................................43

*United States v. Scheidt*,
103 F.4th 1281 (7th Cir. 2024) ....................................................46

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d. Cir. 1977) ........................................................27

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...............................................................33, 43

**Statutes**

11 Del. C. § 1448 ............................................................*passim*

18 U.S.C. § 922(b)(1)...............................................................52

28 U.S.C. § 1292(a)(1).................................................................................1, 32

1881 Del. Laws 987, ch. 548 .................................................................................52

**Other Authorities**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* ...............................................................................31

*Concealed Deadly Weapons*, CCDW Granted and Denied Filing Statistics, Del. Sup. Ct., available at https://courts.delaware.gov/forms/download.aspx?ID=125408;........................42

## COUNTERSTATEMENT OF JURISDICTION

This interlocutory appeal arises from the District Court's denial of preliminary injunctive relief and dismissal of certain Plaintiffs for claim splitting. *See* Br. 1, 5.[1] The Court's jurisdiction here is "limited" and covers "review [of] the District Court's denial of [plaintiffs'] request for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1)." *Kamdem-Ouaffo v. Task Mgmt.*, 792 F. App'x 218, 220 (3d Cir. 2019). The Court should decline Plaintiffs' invitation to "resolve" the case, Br. 1, based on "merits" issues that Plaintiffs improperly raise on appeal and which the Court need not, and should not, reach. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994).

This Court also lacks jurisdiction to grant Plaintiffs' requested injunctive relief enjoining enforcement of the Statute, Br. 1, as Plaintiffs did not seek such relief below, instead expressly disclaiming that they were seeking relief on behalf of anyone other than themselves, App425 (Tr. 43:10-11) ("Only the named plaintiffs are [before the court] . . . [This is] not a class action."); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025) ("[U]niversal injunctions," which "assert[] the power to prohibit enforcement of a law [] against *anyone* . . . likely exceed the equitable authority that Congress has granted to federal courts.").

---

[1] Citations to "Br. _" are to Plaintiffs' Opening Brief, D.I. 27, and to "App_" are to the Joint Appendix, D.I. 28, 29.

**COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.　　Did the District Court abuse its discretion in dismissing certain Plaintiffs for claim splitting, where those Plaintiffs filed this duplicative action challenging the same statute and alleging the same counts against the same Defendants as their pending earlier-filed action in the same court?

2.　　Did the District Court err in finding that Plaintiffs failed to make a clear showing of their likelihood of success on the merits, as is required to obtain a preliminary injunction?

3.　　Did the District Court abuse its discretion in denying Plaintiffs' request for a preliminary injunction?

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

Defendants are not unaware of any related cases other than the earlier-filed case identified in Plaintiffs' Statement, Br. 4, *Neuberger v. Delaware Department of Safety & Homeland Security*, No. 24-cv-590 (D. Del. May 16, 2024) (***Neuberger I***), filed by five of the seven Plaintiffs here (the ***Original Plaintiffs***[2]) against the same Defendants and similarly challenging the at-issue statute under the Second and

---

[2] The Original Plaintiffs are individuals Neuberger, Martin, and Hague (referred to as the ***Buyer Plaintiffs*** because they seek to make purchases); the Delaware State Sportsmen's Association, Inc.; and the Bridgeville Rifle & Pistol Club, Ltd. The two who newly challenged the Statute in this case are Bridgeville Kenpo Karate (d/b/a ***BKK Firearms***) and its owner, Plaintiff Smith (referred to as the ***New*** or ***Seller Plaintiffs*** because they seek to make sales).

Fourth Amendments. After filing their third complaint in *Neuberger I*, the Original Plaintiffs stipulated that they would not seek to further amend in that case. Defendants disagree that "materially new facts and allegations, as well as exigent circumstances," Br. 4, necessitated (or permitted) this action (***Neuberger II***).

Defendants further note that since Plaintiffs' Opening Brief was filed, Plaintiffs' Second and Fourth Amendment claims in *Neuberger I* were dismissed for failure to plead standing, with leave to amend. *Neuberger I*, 2026 WL 851183, at *3 (D. Del. Mar. 27, 2026). The Original Plaintiffs have since sought and obtained an extension of time to file a third amended complaint in *Neuberger I* until fourteen days after this Court rules on the instant appeal. *See Neuberger I*, Apr. 16, 2026 Order.[3]

---

[3] This Court "may take judicial notice of the contents of another Court's docket." *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

**COUNTERSTATEMENT OF THE CASE**

The District Court below dismissed the case as to the Original Plaintiffs for impermissible claim splitting—all of them had previously engaged in extensive litigation to enjoin the same Statute in another case that was (and still is) pending—and denied injunctive relief because the remaining Seller Plaintiffs failed to provide any support for their allegation that the Statute would operate as a "total ban." Additionally, the Original Plaintiffs' Second and Fourth Amendment claims were dismissed for lack of standing in their earlier-filed case, and the Seller Plaintiffs have articulated no basis to support Second or Fourth Amendment claims that the Statute would infringe a right to *sell* handguns in this case. Despite these significant threshold infirmities, Plaintiffs present this matter to the Court as though it is ripe for a decision on the "merits" to enjoin the Statute not only as to them, but as to all.

As argued in their Motion, Plaintiffs sought to challenge a handgun permitting statute (the ***Statute***), which enacts a "shall-issue" permitting scheme, not on its face but on the basis that Delaware would *implement* the Statute as a *de facto* "total ban" on the sale of handguns. Although Plaintiffs' record in this case is slim, the Statute does not contemplate a "total ban," and Defendants have provided evidence plainly establishing that, in fact, it remains entirely possible to purchase a handgun in Delaware today, as hundreds of Delawareans have done since the Statute went into effect six months ago. Thus, the explicit basis of Plaintiffs' Complaint and Motion

below—a *de facto* "total ban" on handgun sales—was proven false.

Plaintiffs seek a sprawling do-over on appeal. They urge this Court to undertake plenary review of constitutional and facial challenges they never raised in support of their Motion and which the District Court had no reason to reach in denying the injunctive relief Plaintiffs requested below, including because Plaintiffs expressly told the District Court that their facial challenge claims were *not* at issue in their Motion. They admit as much, acknowledging that they would like this Court to expand the case to a facial challenge for the first time. *See* Br. 46.

The fact is, Plaintiffs have failed at every step of the way to get their litigations off the ground. Even if Plaintiffs had presented this case to the District Court on plenary footing—which they did not—this Court should not indulge their "merits" claims here given their clear litigation legerdemain and threshold infirmities below. Plaintiffs have tried and failed, across four complaints filed in two cases, to raise any viable constitutional claims for which they have standing. The Court should affirm, and direct Plaintiffs back to the District Court, where they have permission to file amended complaints (in the correct cases), so the District Court can assess whether to reach the merits of their constitutional challenges in the first instance.

## I.    THE STATUTE

The Statute implements a straightforward "shall-issue" Permit-to-Purchase scheme for the purchase of handguns. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*,

597 U.S. 1, 13 n.1, 38 n.9 (2022) (listing examples of "shall-issue" laws that are presumptively constitutional).  It was enacted May 16, 2024 and went into effect "[e]ighteen months from [that] date," on November 16, 2025.  App121 (Compl.). Under the Statute's permitting scheme, Delawareans must have a valid handgun qualified purchaser permit (**Permit**) to purchase a handgun.[4]  11 Del. C. § 1448D. Within thirty days of receiving a Permit application, the Director of the State Bureau of Identification (**SBI**), a division within the Delaware State Police (**DSP**), "shall . . . issue" a Permit to anyone not excluded by any of five non-discretionary and "limited" criteria.  *Id.* § 1448D(b), (f), (h); App020-21 (Op.).

These five criteria are narrow, objective, and definite. The applicant: (1) must be at least 21 years old; (2) may not be otherwise prohibited from purchasing, owning, possessing, or controlling a deadly weapon—for example, because the applicant was convicted of a felony, narcotics, or domestic violence offense; was involuntarily committed to a mental institution; or is subject to a protective order; (3) may not be a person who, based on probable cause, poses a danger of causing physical injury to the applicant or others; (4) must have passed a firearms training course within the five years preceding their application; and (5) may not be otherwise

---

[4] Delawareans who already possess a valid Carrying Concealed Deadly Weapon (**CCDW**) permit are exempt and may continue purchasing handguns without obtaining a new Permit under the Statute.  11 Del. C. § 1448D(c)(2); *see also* Permit to Purchase, Delaware State Police, https://dsp.delaware.gov/permit-to-purchase/ ("CCDW holders are not required to apply for a handgun purchaser permit.").

prohibited from purchasing or possessing firearms under Delaware or federal law. 11 Del. C. § 1448D(f)(1)-(5). Several categories of applicants are exempt from the training requirement, including qualified active and retired law enforcement officers. *Id.* § 1448D(c)(1) and (g).

If an applicant is excluded by any of these criteria, the SBI Director must deny the Permit application in writing, setting forth the reason why. *Id.* § 1448D(i). Denials are subject to two rounds of *de novo* judicial review. *Id.* § 1448D(m)(1)-(2).

## II.   PLAINTIFFS' LAWSUITS

### A.   *Neuberger I*

On May 16, 2024, the day the Statute was enacted, the Original Plaintiffs filed *Neuberger I*, challenging the Statute's constitutionality under the Second and Fourth Amendments and under Delaware Constitution's Article I, Section 20. *Neuberger I*, D.I. 1. Defendants moved to dismiss and Plaintiffs filed a First Amended Complaint, which abandoned the Delaware Constitution claim. *Id.*, D.I. 28. Defendants again moved to dismiss, and Plaintiffs (with Defendants' negotiated consent) requested leave to amend again. *Id.*, D.I. 34. The District Court granted leave and so-ordered the parties' stipulation that Plaintiffs will "not seek to further amend." *Id.*, D.I. 40.

The Second Amended Complaint alleged that the Statute: (i) "both on [its] face [] and as applied," constituted an impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, *id.*, D.I. 39 (the **Neuberger I Complaint**) ¶¶70-

72, 111-120; (ii) violated the Fourth Amendment's prohibition on unreasonable search and seizure, *id.* ¶¶121-145; and (iii) was unconstitutionally vague in its use of the word "danger," *id.* ¶¶146-158. Defendants moved to dismiss for the third time. *Id.*, D.I. 41. Among other things, Defendants argued Plaintiffs' Second Amendment claim should be dismissed for lack of standing and because the Statute's "shall-issue" permitting scheme was presumptively constitutional and Plaintiffs had not rebutted that presumption, rendering step two of the *Bruen* analysis unnecessary. *See generally* D.I. 42, 45. Defendants reserved the right, "[i]f necessary . . . to prove the Statute is generally consistent with the Nation's historical tradition of firearm regulation at an appropriate stage of [*Neuberger I*]." D.I. 45 at 9 n.5.

On March 27, 2026, the District Court granted Defendants' Motion to Dismiss in part, dismissing the vagueness claim with prejudice and the Second and Fourth Amendment challenges without prejudice for lack of standing. *Neuberger I*, 2026 WL 851183, at *3. The District Court held that Plaintiffs failed to allege they faced a "sufficiently imminent" threat of enforcement against them, without which they had no standing to seek the pre-enforcement review they sought. *Id.* at *1-2. It particularly noted that the Buyer Plaintiffs could have purchased handguns "without going through the permitting process" at any point since May 16, 2024, but apparently had not done so "after alleging for ten months and multiple iterations of

8

their complaint that their purchases were imminent." *Id.* at *1.[5]  Given Plaintiffs'

failure to plead standing, the District Court did not reach the substance of Plaintiffs'

Second and Fourth Amendment challenges.  Notwithstanding the prior so-ordered

stipulation prohibiting further amendment, in the interest of equity and to allow for

any changed factual circumstances, the District Court granted Plaintiffs leave to file

a Third Amended Complaint where they may attempt to plead standing for their

Second and Fourth Amendment challenges.  *Id.* at *3.  The Original Plaintiffs then

sought (without Defendants' objection) and obtained an extension of time until 14

days after this Court rules on the instant appeal to so amend.  *Neuberger I*, D.I. 52;

Apr. 16, 2026 Order.

**B.**     ***Neuberger II* (This Case)**

On November 3, 2025, while Defendants' Motion to Dismiss remained

pending in *Neuberger I*, Plaintiffs filed the Complaint in *Neuberger II*.  The newest

Complaint brought *exactly* the same three counts as the *Neuberger I* Complaint,

against the same Defendants; in fact, the paragraphs asserting the counts were copied

wholesale, including the assertion that the Statute infringed Plaintiffs' Second

Amendment rights "both on [its] face [] and as applied."  *Compare* App096-109

(Compl. ¶¶142-192), *with Neuberger I* Complaint ¶¶111-158.  To these copy-pasted

---

[5] The Buyer Plaintiffs also had not purchased a handgun even as of their November 3, 2025 Complaint in *Neuberger II*.  *See* App056-59 (Compl. ¶¶11, 17, 24).

counts, the new Complaint added (i) an allegation that the State's failure to implement necessary infrastructure would result in a "handgun ban" as of the effective date, App098 (Compl. ¶149); and (ii) references to the newly-added Seller Plaintiffs, App098, 104-05 (*id.* ¶¶151, 174), who only alleged infringement of their right to sell handguns, not firearms generally, and not any intention or inability to purchase, App060-61 (*id.* ¶¶31-33).

Plaintiffs also filed their Motion for Expedited Injunctive Relief (***Motion*** or ***Mot.***), based solely on the "narrow factual theory," Br. 46, that the State's alleged failure to implement the necessary infrastructure by November 16, 2025 would have the "net result" of a "total ban" on handgun purchases. App165-67 (Mot.). As described below, and conclusively demonstrated in the District Court, nothing approaching such a "total ban" has existed or currently exists. Defendants submitted declarations to that effect. App258-72; App370-80. Indeed, Plaintiffs concede as much. *See* Br. 46 (only arguing that District Court erred by not proceeding to conduct a *Bruen* analysis after finding that there was no ban).[6]

Nonetheless, acting on that erroneous premise, Plaintiffs sought an order enjoining enforcement of the Statute until the State submitted (1) a "copy of an actual

---

[6] Plaintiffs essentially conceded there was no "total ban" in their Reply on the Motion, pivoting to complain instead that very few Permits had been issued. *See* App276. That was unsurprising, since Plaintiffs filed their Motion before the Statute's effective date, when Permits were not required to purchase handguns.

handgun qualified purchaser permit issued by the State to an eligible person," and (2) "sworn declarations by each Defendant attesting that all the necessary personnel, systems, and infrastructure have been implemented, in accordance with the Delaware Administrative Procedures Act [*APA*], to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit needed to buy or sell a handgun within the statutory thirty-day period for the State to issue such permits." D.I. 4-5 at 115-16 (Proposed Order, ¶2).

## III. DELAWARE'S PERMIT-TO-PURCHASE INFRASTRUCTURE

The "total ban" Plaintiffs forecast never materialized. Delawareans have been applying for and obtaining Permits under the Statute since at least November 1, 2025, more than two weeks in advance of the Statute's November 16 effective date and since before Plaintiffs filed their Complaint and Motion on November 3. App260 (Stevenson Decl. ¶7). Plaintiffs failed to show otherwise. App027-28 (Op.).

The evidence before the District Court showed that the DSP have published numerous updates and communications about how to obtain Permits. *See* App260, 268-69 (Stevenson Decl. ¶7 & n.1, Ex. A). The DSP's Permit-to-Purchase (*P2P*) website lays out the application process and provides all information needed to apply for a permit, including (1) a step-by-step guide, (2) the application questionnaire, (3) a link to the Statute, (4) answers to frequently asked questions, (5) a link to schedule a fingerprinting appointment, and (6) a list of nearly 100 certified firearms

11

instructors (among them, Plaintiff BKK Firearms).  App261 (*Id.* ¶14). Additionally, the application and all necessary materials can be found in hard copy at every DSP Troop Location in the state.  App260, 262 (*Id.* ¶¶8, 16).  Applicants can also call a dedicated helpline for questions or application assistance.  App261 (*Id.* ¶14).

The State has also implemented the necessary infrastructure for applicants to complete requisite training.  App263 (*Id.* ¶¶20-23).  SBI created an online tool that provides Firearms Training Course Guidelines (the ***Guidelines***), listing the subjects the Statute requires trainers to teach, which providers can use to prove they qualify. *See* App186-89 (Walter Decl. Ex. A); *see also* 11 Del. C. § 1448D(d)(f)(4)(a)–(k) (specifying training course requirements).  On October 6, 2025, DSP informed Delaware dealers with a Federal Firearms License (***FFLs***) that they could register to be approved training instructors.  App260 (Stevenson Decl. ¶7 n.1).  Indeed, Plaintiff Smith, owner of Plaintiff BKK Firearms, completed this process and became an approved instructor as of November 3, 2025, the same day the Complaint was filed. *Id*.  Qualified instructors' websites offered at least fourteen training courses between November 7 and November 16, 2025.  App263 (*Id.* ¶21).

## IV.  PROCEEDINGS BELOW AND THE DISTRICT COURT'S RULING ON PLAINTIFFS' MOTION

On November 5, 2025, "having reviewed [the Motion to Dismiss briefing in *Neuberger I*] again," the District Court directed Defendants to include in their response to the Motion, "argument as to the challenged law's consistency with the

principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*." *Neuberger II*, D.I. 16. Defendants did so in their Response filed a few days later, emphasizing that such argument was being provided solely in response to the Order and "in the context of procedural limitations," and should thus be understood only as a "brief summary," and noting Defendants' intent to address the "full breadth of the Statute's historical analogues" and provide expert testimony should either case reach full merits briefing. App251 (Defs.' Response to the Motion). In addition, Defendants submitted declarations demonstrating that the systems for determining if training courses met the Statute's requirements and for approving Permit applications were up and running since at least November 1, 2025, over 200 Permits had been issued as of November 7, 2025, and that most Permits were being granted within three business days or less. App259-61, 270-72 (Stevenson Decl. ¶¶5-13 & Ex. B).

On November 13, 2025, the District Court heard oral argument on Plaintiffs' Motion (the **Hearing**). Plaintiffs acknowledged they could have moved to amend *Neuberger I*, including to the extent they believed such amendment would be necessary to seek expedited relief based on later-arising facts. App393-94 (Tr. 11:2-12:4). The District Court cautioned that the Original Plaintiffs' choice to instead attempt a "backdoor" "end around" was likely to "procedurally bar" them from obtaining the requested "expedited treatment." *Id*. Given that the *Bruen* step-two

analysis of historical analogues was not at issue in Plaintiffs' Motion, the District Court noted it did not "have to get to that issue today," but it could "come up, perhaps, in the future, depending on what happens with the motion to dismiss [in *Neuberger I*]." App416 (Tr. 34:14–16). (This posture is critical to the instant appeal, in which Plaintiffs assert not only that the full *Bruen* two-step analysis is ripe, but that Defendants must shoulder that burden for the first time here.)

The District Court issued its Opinion the following day, dismissing the Original Plaintiffs and denying the requested preliminary injunctive relief.

*First*, since the Original Plaintiffs "allege[d] the same counts against the same Defendants" in both cases, the District Court concluded that the new Complaint was an attempt to "circumvent" the Court's prior order prohibiting further amendments in *Neuberger I*, which was entered "after a series of motions to dismiss and amendments." App021 (Op.). The District Court thus found these Plaintiffs had engaged in "exactly the sort of claim splitting the Third Circuit has long recognized is impermissible." App024 (Op.) (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d. Cir. 1977)). As Original Plaintiffs are "prohibit[ed] from prosecuting [their] case piecemeal," and the District Court was well within its discretion to dismiss such a duplicative suit, it dismissed the Original Plaintiffs from *Neuberger II*. App023 (Op.).

*Second*, taking all Plaintiffs at their word that the Complaint's "other claims"

14

beyond the *de facto* ban theory were "not the subject of [the Motion]," App165 (Mot. 1 n.2), the District Court considered only the "narrow[]" issues actually raised as the bases for requesting injunctive relief. App022 (Op.). The District Court addressed Plaintiffs' apparent assertions that (1) three sections of the Guidelines implementing parts of the Statute were improper because they should have been promulgated according to the Delaware APA, and (2) Plaintiffs had difficulty with aspects of the permitting process—namely, fingerprinting and using the helpline, and their claim that these issues resulted in a *de facto* ban on handgun purchases. *Id.*

At the Hearing, the District Court questioned whether the three at-issue sections of the Guidelines, which established protocols for SBI to pre-approve trainers and training courses, went beyond the Statute's plain language. *See* App410-11 (Tr. 28:16-29:22). And while recognizing that Plaintiffs may not have alleged any harm or confusion arising from those provisions, the District Court suggested that removing those provisions would avoid future litigation. App411, 414 (Tr. 29:7-16, 32:12-18). Thus, Defendants agreed to remove the provisions at issue and, as directed, submitted a letter and further declaration of an SBI official confirming the changes. App367 (Defs.' Letter); App370 (Stevenson Suppl. Decl.). The declaration outlined updates to the P2P website clarifying that CCDW license holders are not required to obtain a Permit, that anyone can lawfully sell a handgun to a CCDW holder, that pre-approval is not required for a course to satisfy the

15

statutory requirements, and other details. App372-74 (Stevenson Suppl. Decl. ¶¶9-10). Since the specific Guidelines at the core of Plaintiffs' APA arguments no longer exist, the District Court deemed them "moot." App027 (Op.).

As for Plaintiffs' other arguments regarding the absence of permitting "infrastructure," the District Court found that Plaintiffs failed to present any relevant declarations or other evidence to support their claim or "meaningfully dispute[] [the] showing of workability." *Id.* Indeed, Plaintiffs submitted no evidence that they actually attempted to purchase a gun and were prevented from doing so. In contrast, the State provided compelling evidence that "call[ed] into question Plaintiffs' assertions," including evidence of successful usage of the P2P website and helpline and timely application approvals within days. *Id.* As a result, Plaintiffs could not demonstrate a "clear showing" that the State's infrastructure did not allow an eligible Delaware adult to obtain the permit. *Id.* Because Plaintiffs failed to establish the first preliminary injunction factor—likelihood of success on the merits—the District Court declined to reach the others. App028 (Op.).

The District Court also directed the new Seller Plaintiffs—who were not part of *Neuberger I*—to file an amended complaint "containing only material relevant to their claims," App017 (Order), and granted them an extension until after this Court's ruling on the instant appeal to do so, *Neuberger II*, D.I. 45.

16

## V.  THIS APPEAL

Plaintiffs filed a notice of appeal, D.I. 1, and an "Emergency Motion for Expedited Injunctive Relief," arguing again, incorrectly, that Delaware's permitting infrastructure would amount to a *de facto* handgun ban once the Statute was implemented, D.I. 4-1 at 8-9.  This Court ordered Defendants to respond by November 19.  D.I. 8.  Defendants filed their Opposition addressing Plaintiffs' request for expediting the appeal, the only relief expressly sought in the Emergency Motion.  D.I. 16.  The Court then ordered supplemental briefing that should "assum[e] that" Plaintiffs sought "injunctive relief" and "address[]" the claims of all the Plaintiffs.  D.I. 18.  Exemplifying the procedural confusion that has pervaded Plaintiffs' efforts to challenge the Statute, Plaintiffs now claim they sought "expedited injunctive relief pending appeal," Br. 10, directly contradicting their prior briefing, D.I. 20-1 at 6 n.12 ("There is no request for a stay or injunction *pending* appeal in this matter.") (emphasis in original).

Regardless, the Court denied the Emergency Motion and directed entry of a "briefing schedule for merits briefs in the ordinary course."  D.I. 21.  Contrary to Plaintiffs' suggestion that the entry of this "ordinary" schedule for "merits briefs" somehow expanded the basis or procedural posture of this appeal, Br. 17, the issue properly before this Court is a review of the District Court's denial of preliminary injunctive relief based on the "narrow" theory raised in their Motion, not the panoply

17

of issues Plaintiffs improperly raise in their Opening Brief.

## SUMMARY OF ARGUMENT

The District Court properly dismissed the Original Plaintiffs for claim splitting and did not abuse its discretion in denying the Motion for injunctive relief as to all Plaintiffs.

*First*, the Original Plaintiffs engaged in textbook claim splitting. They chose to file *Neuberger I* the day the Statute was enacted, then amended their complaint twice in that case over ten months, voluntarily stipulated not to further amend, and asked the Court to so-order that stipulation. They did so while knowing that the Statute, by its terms, would take effect in the subsequent months. Then, in a move the District Court correctly determined was an "end around" its prior order, Plaintiffs attempted to file a nearly identical complaint against the same Defendants in *Neuberger II*, purporting to raise certain "new" material facts and arguments concerning the Statute's long-scheduled implementation and claiming they needed expedited relief. In reality, Plaintiffs admitted they could have moved to amend and arguably for a preliminary injunction in *Neuberger I*. They chose not to. Instead, they duplicated their claims in a new action and now adopt the baseless position that the District Court was obligated to consolidate their two cases (notwithstanding their markedly different postures). To do so would have rewarded Plaintiffs' attempt to circumvent the District Court's prior order, and anyway, Plaintiffs now have leave

to file an amended complaint in *Neuberger I*, where they may raise changed factual circumstances arising from the Statute's implementation.

*Second*, the District Court did not abuse its discretion in denying Plaintiffs' Motion for a preliminary injunction, which Plaintiffs admittedly based solely on a "narrow" theory that the Statute's implementation would operate as a "total ban" on handgun sales. Plaintiffs already have what they requested below, rendering the injunctive relief they requested in their Motion moot, and this Court lacks jurisdiction to grant the sweeping injunction—enjoining the Statute's enforcement as against anyone—that Plaintiffs newly seek now. This Court should decline Plaintiffs' invitation to "resolve" the merits of facial challenges that they admittedly did not raise below and which they told the District Court it need not address. It was and remains Plaintiffs' burden to make a "clear showing" of entitlement to preliminary injunctive relief. They failed to do so below and cannot do so on their new arguments here. Their attempt to shift the evidentiary burden to Defendants now, based on a record where Defendants' hands were necessarily tied by the procedural posture of Plaintiffs' "narrow" Motion, should be rejected.

There are multiple independent reasons to affirm the District Court's denial of injunctive relief:

*First*, Plaintiffs' Second Amendment claim fails at the threshold for lack of

standing, which Plaintiffs glaringly omit to discuss in their Opening Brief.[7]

*Second*, the District Court correctly concluded that Plaintiffs failed to show likelihood of success on the merits because they offered no facts to support their invented "total ban" theory.

*Third*, Plaintiffs fail to meet the other requirements to obtain injunctive relief. Plaintiffs fail to show any irreparable harm that would moot this case. Equity and public interest also weigh heavily in Defendants' favor: Plaintiffs seek to enjoin a democratically enacted state law without having even tried to comply with its permitting scheme, at the cost of public safety by blocking a regulation enacted to protect Delawareans.

*Fourth*, given the above procedural and substantive infirmities, there is no need for the Court to reach Plaintiffs' improperly raised "facial" challenge arguments. Even considering these arguments, however, Plaintiffs have no likelihood of success because (1) the only Plaintiffs properly remaining in this case, the Seller Plaintiffs, claim no Second Amendment right to sell handguns that is injured by the Statute; and (2) the Statute does not violate the Second Amendment.

---

[7] While Plaintiffs' Complaint includes claims that the Statute violates the Fourth Amendment and is unconstitutionally vague, Defendants do not address those claims here given they were not raised in support of Plaintiffs' Motion below, *supra* 10, or in Plaintiffs' Opening Brief here, *see generally* Br. To be clear, as the District Court held in dismissing *Neuberger I*, Plaintiffs failed to plead standing for their Fourth Amendment challenge, and the vagueness claim fails on its merits. *See Neuberger I*, 2026 WL 851183, at *2-3.

## ARGUMENT

### I. THIS COURT SHOULD NOT ENTERTAIN ARGUMENTS AND REQUESTS FOR RELIEF NOT RAISED BELOW

This case is before the Court on a notably abbreviated posture, although Plaintiffs try repeatedly to expand it. *See, e.g.*, Br. 59 (arguing this Court need not even decide if Plaintiffs are "entitled to injunctive relief," ostensibly the basis for this appeal). Plaintiffs' Motion requested specific expedited injunctive relief below based on their "total ban" theory, which is moot now given the unrebutted evidence Defendants submitted below. The Court should decline to consider "facial" challenge arguments Plaintiffs newly raise now, let alone shift the burden to Defendants on issues where Defendants had no opportunity to develop an appropriate evidentiary record given Plaintiffs' procedural gamesmanship. This Court also lacks jurisdiction to grant Plaintiffs' newly raised request to enjoin the Statute's enforcement as against anyone.

### A. Plaintiffs' Motion Is Moot

Plaintiffs already have the injunctive relief they requested below. They sought to enjoin the Statute until the State submitted (1) a copy of a valid handgun qualified purchaser permit issued by the State, and (2) sworn declarations attesting that the permitting system was functioning. *Supra* 11. The District Court agreed that Defendants provided that. App027 (Op.). Plaintiffs also have what they previously appeared to seek in their Emergency Motion before this Court—sufficient

21

time to apply for and obtain a permit.  D.I. 4-1 at 3-4.  Plaintiffs remain free to apply for a Permit and receive one, [[most likely in three business days or less]].  App262 (Stevenson Decl. ¶19).  At a certain point, mustn't Plaintiffs' failure to even try to obtain a Permit be seen as deliberate gamesmanship, not a basis for judicial contortions?  There is no need to issue an injunction to give Plaintiffs something they already have.  *See, e.g.*, *Policastro v. Kontogiannis*, 262 F. App'x 429, 433-34 (3d Cir. 2008) (constitutional claim non-justiciable where injunctive relief request was moot); *Smith v. President U.S.*, 2025 WL 3515398, at *1 (3d Cir. Dec. 8, 2025) (finding injunctive relief moot where "there is no effectual relief . . . that [the court] can provide"); *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach*, 506 F. Supp. 3d 229, 237 (D. Del. 2020) (motion moot given conforming conduct).

### B. Newly Raised "Facial" Challenge Arguments Should Be Disregarded

This Court "has consistently held that it will not consider issues that are raised for the first time on appeal."  *Harris*, 35 F.3d at 845.  That rule goes to the bedrock of our adversarial system: it is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."  *Harris*, 35 F.3d at 845-846 (declining to reach the merits where the district court did not have "the

opportunity to address" them); *see also Marinaccio v. E. Hanover Bd. Police Dep't*, 2022 WL 964000, at *2 n.3 (3d Cir. Mar. 30, 2022) (declining to consider arguments not presented to district court). This general rule applies with added force where a party's failure to "timely rais[e]" an issue has prevented the other party from properly developing the record in its defense. *Harris*, 35 F.3d at 845-46.

Perhaps recognizing the weakness of their claims, Plaintiffs raised only a "narrow" theory on their Motion below, arguing that an impending "total ban" necessitated emergency relief. Having appealed from denial of that emergency injunctive relief, they now seek to litigate expansive facial challenge arguments on which Defendants did not have an opportunity to fully develop the record (as they expressly reserved the right to do at an appropriate stage in the litigation, *supra* 13).

Plaintiffs' Motion below did not seek an injunction on the basis that the Statute is unconstitutional "based on the statutory text" or that *any* restraint on the right to purchase a handgun is unconstitutional on its face (as they appear to newly argue now). *See* Br. 13. As they admit, they told the District Court that they sought expedited injunctive relief solely on a "narrow factual theory," Br. 46, that the Statute, as implemented with allegedly insufficient infrastructure, would operate as a *de facto* "total ban" on handgun purchases. They also told the District Court that the other claims alleged in their Complaint—*e.g.*, their facial claims—were "not the subject of [their] Motion." *Supra* 15. That is, their Motion admittedly raised only

"an *as-applied* constitutional challenge," not a "*facial*" challenge. Br. 41 (emphases in original). Indeed, the entire predicate of their Motion below was that the Statute would *not* be implemented as drafted.

Plaintiffs cannot explain or justify why this expansion is permissible. They disingenuously suggest that the District Court recognized that "it may still be required to evaluate the likelihood of success under the correct Second Amendment constitutional standard" in resolving Plaintiffs' Motion. Br. 46. That is false; indeed, the District Court said exactly the opposite—that it need not reach analysis of *Bruen* step two in resolving Plaintiffs' Motion, but that it could "come up, perhaps, in the future, depending on what happens with the motion to dismiss [in *Neuberger I*]." App416 (Tr. 34:14-16); *see also* App393 (Tr. 11:12-17) (observing that Plaintiffs' "end around" had resulted in Defendants having to address in their Response issues not relevant to the "substance" of the Motion).

Plaintiffs also attempt to convert this Court's routine order directing entry of a briefing schedule into a sweeping invitation to brief, litigate, and decide the host of issues they now submit are "appropriate" for resolution. Br. at 17. All that has occurred here is that this Court denied Plaintiffs' requests for expedite appellate treatment and an injunction pending appeal, *see* Br. 10, and ordered briefing on the "merits" of the District Court's decision below. No fair reading of the record, including Plaintiffs' representations and tactical decisions below, can contemplate

24

the wholesale expansion they urge.

Plaintiffs' bait-and-switch—from telling the District Court that they only sought a ruling on a "narrow" as-applied challenge to now urging this Court to "resolve" the merits of a facial challenge—is particularly inappropriate given this Court's warning against "leapfrog[ging]" the district court and attempting to resolve a case based on an "abbreviated set of facts." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197 (3d Cir. 2024) (**DSSA**) (internal brackets omitted), *cert. denied*, 145 S. Ct. 1049 (2025). Or one can look to *Bruen*'s direction that, in our "adversarial system," "we follow the principle of party presentation," and cases are to be decided "based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6; *see generally id.* (referring throughout to historical "evidence"). Plaintiffs failed to carry even threshold burdens below to warrant reaching the *Bruen* analysis.

Accordingly, this Court should not resolve the merits absent the proper evidentiary record. *See Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 416-18 (3d Cir. 2021) ("Standards of review matter, and . . . [plaintiffs] cannot 'snatch complete victory from the jaws of defeat'"); *DSSA*, 108 F.4th at 198 (declining to resolve case on "abbreviated set of facts").

### C. This Court Cannot Grant the Requested Universal Injunction

This Court further lacks jurisdiction to grant the permanent injunction

Plaintiffs now seek for the first time—enjoining the enforcement of the Statute entirely as against anyone—because they did not ask for it below. There, Plaintiffs disclaimed seeking relief for any class and told the District Court they sought an injunction solely on behalf of the named Plaintiffs. *See* App425 (Tr. 43:10-11); *Trump*, 606 U.S. at 837 ("[I]njunctions . . . asserting the power to prohibit enforcement of a law or policy against *anyone* . . . likely exceed the equitable authority that Congress has granted to federal courts."); *Free Speech Coal. v. Att'y Gen.*, 974 F.3d 408, 430-31 (3d Cir. 2020) ("[I]njunctive relief should be no broader than necessary to provide full relief to the aggrieved party.").

## II. THE DISTRICT COURT'S DISMISSAL OF THE ORIGINAL PLAINTIFFS SHOULD BE AFFIRMED

### A. Standard of Review

A district court has the "general power to administer its docket," and its dismissal of a duplicative complaint is reviewed for abuse of discretion. *Fabics v. City of New Brunswick*, 629 F. App'x 196, 198 (3d Cir. 2015); *see also* Br. 38 (conceding standard).

Relying on *McKenna v. City of Philadelphia*, 304 F. App'x 89 (3d Cir. 2008), Plaintiffs argue *de novo* review should apply to underlying "legal determinations," such as the District Court's assessment of "later arising facts" and if dismissal was an "appropriate" remedy. Br. 38. But *McKenna* did not apply *de novo* review to such matters. 304 F. App'x at 92 (considering whether district court "correctly"

determined that *Walton* applied and whether with-prejudice dismissal was "proper"). Instead, *McKenna* confirmed that *Walton* permits a district court to address duplicative litigation through stay, consolidation, *or* dismissal without prejudice; that a district court properly rejects consolidation that would expand procedural rights otherwise available to plaintiffs; and lastly, that dismissal *with* prejudice may be affirmed "on other grounds," where, as here, it has the same "end result" as a stay or dismissal without prejudice. *Id.* at 93-94.

### B. Original Plaintiffs Were Properly Dismissed

The District Court correctly determined the Original Plaintiffs engaged "in exactly the sort of claim splitting" barred by this Court in *Walton* and properly dismissed them from *Neuberger II*. App024 (Op.). A party "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton*, 563 F.2d at 70. "Parallel complaints need not be completely identical to fall under *Walton*." *McKenna*, 304 F. App'x at 92.

Here, the Original Plaintiffs "allege[d] the same counts against the same Defendants" regarding the same subject matter (the Statute's constitutionality) in two cases pending in the same district court at the same time. App021 (Op.). Plaintiffs do not argue this case is materially different from their first. They concede the "duplicative nature" of their presence in both suits, App023 (Op.), and that the

cases "largely mirror" one another, Br. 40. The *Neuberger II* Complaint was nearly identical to that in *Neuberger I* and advanced only an additional "narrow factual theory," Br. 46—that the Statute's alleged "faulty implementation" would result in a *de facto* ban on handgun purchases—which Plaintiffs alleged would "add[]" to and "aggravate[]," App054, 059 (Compl. ¶¶5, 26), the harms they previously alleged in *Neuberger I*. That is more than enough to bring Plaintiffs' duplicative litigation within *Walton*'s purview. *McKenna*, 304 F. App'x at 92 (finding additional claimed bases for relief did not sufficiently differentiate second case).

Plaintiffs argue they could not have foreseen the "later-occurring facts" that were added to the *Neuberger II* Complaint as they only materialized after the Statute's "implementation date became imminent." Br. 39-41.

Yet, Plaintiffs always knew that the Statute, "by its terms," was "set to be implemented no later than a date-certain [in 2025]." *Neuberger I* Compl. ¶110. As the District Court observed, Plaintiffs still agreed to a stipulation earlier that same year—which the Court so-ordered at their request, *Neuberger I*, D.I. 40—that they would not seek to further amend in *Neuberger I*. App391-93 (Tr. 9:22-11:1); *see Coltec Indus. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) ("[C]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions."); *Powell v. Kemp*, 53 F. App'x 750, 751 (6th Cir. 2002) (upholding dismissal for "attempt[ing] to get around"

28

discovery order in previous case). Moreover, the new "facts" they asserted proved to be speculative, unfounded, and empirically rebutted. *See* App027 (Op.).

Plaintiffs also effectively admitted that they offered the "new" facts to address Defendants' arguments in the pending Motion to Dismiss that the *Neuberger I* claims were not "ripe." App394 (Tr. 12:8-22). Apparently recognizing (rightly) that the *Neuberger I* Complaint—their third in that case following two prior amendments in response to earlier motions to dismiss—was likely to be dismissed, Plaintiffs sought to reset the litigation and render Defendants' pending motion "moot." *See id.*

This case is unlike those cited by Plaintiffs, Br. 39-42, where the later-arising events amounted to new harms inflicted on the plaintiffs. *See, e.g.*, *Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008) (noting new claim alleging plaintiff was evicted in retaliation *because* he filed first action); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) (finding new claims concerned plaintiffs' subsequent retaliatory termination from employment and affirming dismissal of duplicative claims).

Plaintiffs even acknowledged that they could have sought relief from the prior order to amend *Neuberger I* but opted not to, apparently due to a concern that "procedurally," a "motion to amend" may not allow seeking "expedited relief.". App393 (Tr. 11:2-20). As the District Court observed, Plaintiffs could have been "upfront" that they were seeking to amend to add allegations that necessitated

expedited proceeding. App393-94 (Tr. 11:21-12:4). Instead, Plaintiffs chose a "backdoor" tactic. *Id.* By their own hand, they invited the consequences of doing so, namely, rendering their duplicative effort moribund from the start.

The District Court was well within its discretion to prevent precisely this type of procedural gamesmanship, i.e., "insure[] that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed," especially attempts such as this one to "circumvent[] the rules pertaining to the amendment." *McKenna*, 304 F. App'x at 94 (quoting *Walton*, 563 F.2d at 71).

Further, the District Court was under no obligation to consolidate the cases, as Plaintiffs' own authority confirms. *Schneider*, 301 F. App'x at 190 (affirming dismissal of duplicative claims); *Curtis*, 226 F.3d at 139 (same, and noting choice of procedural remedy is "for the exercise of the district court's discretion"). Plaintiffs did not file a motion to consolidate below. App390-91 (Tr. 8:21-9:1) (acknowledging they could have done so). They offer no argument to suggest that consolidation would be appropriate given the markedly different postures of the cases, let alone any case requiring courts to consolidate *sua sponte* or any holding that failing to consolidate constitutes an abuse of discretion.

In fact, consolidation would have been improper here. "As the many cases on the subject make clear, there are many reasons why a district judge may deny a

request for the consolidation of separate cases. For example . . . if the common issue is not central to the resolution of the cases, if consolidation will cause delay . . . waste judicial resources, or [] lead to confusion or prejudice." Wright, Miller, & Kane, *Federal Practice & Procedure* § 2383 (3d ed. 2005). Here, the District Court plainly objected to efforts to circumvent its effective management of its cases. Moreover, *Neuberger II* includes two New Plaintiffs, who are *sellers* of handguns and do not allege intention or inability to *purchase* them. Recognizing precisely this problem, the District Court has directed these New Plaintiffs to file an amended complaint in *Neuberger II* "containing only material relevant to their claims," which they may do within fourteen days after the ruling on the instant appeal. App017 (Order); *Neuberger II*, D.I. 45; *see also* App419-22 (Tr. 37:17-40:8) (discussing lack of briefing from Plaintiffs on the right to sell versus acquire).

In any case, the District Court subsequently granted the Original Plaintiffs leave to amend *Neuberger I,* so they may attempt to plead standing based on any changed "factual circumstances" arising from the Statute's implementation. *Neuberger I*, 2026 WL 851183, at *2. This Court can interpret this as the District Court exercising its discretion to dismiss these Plaintiffs from one case and address them in their earlier-filed case. As such, the Original Plaintiffs are not "effectively foreclosed" from pursuing claims based on subsequent facts. *See* Br. 43. They have been granted leave to proceed precisely as they wished—i.e., correct their prior error

in filing suit before their claims were "ripe" and attempt to file a complaint that can support standing, now their fifth attempt. They have opted to seek an extension of time to file that amended complaint, *supra* 9—another choice that has the related effect of barring them from seeking a preliminary injunction there.

The District Court's dismissal of the Original Plaintiffs should be affirmed.

## III. THE DISTRICT'S COURT'S DENIAL OF PRELIMINARY INJUNCTIVE RELIEF SHOULD BE AFFIRMED

There are multiple independent reasons to affirm the District Court's denial of injunctive relief, before this Court needs to turn to the "merits" of the arguments Plaintiffs actually raised below, let alone that of newly raised arguments: (1) Both the Original and New Plaintiffs lack standing to seek to enjoin the Statute, under either an as-applied or facial challenge; (2) the District Court correctly determined that the New Plaintiffs (who are the only ones properly remaining in this case) failed to show likelihood of success on the merits on their "total ban" theory below; (3) Plaintiffs fail to meet the other requirements to obtain injunctive relief; and (4) even if Plaintiffs' "facial" challenge could be considered, they fail to show likelihood of success on the merits.

### A. Standard and Scope of Review

The Court's jurisdiction here is "limited" and covers "review [of] the District Court's denial of [plaintiffs'] request for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1)." *Kamdem-Ouaffo*, 792 F. App'x at 220.

32

A preliminary injunction "is an extraordinary remedy that should be granted only in limited circumstances." *DSSA*, 108 F.4th at 200 (internal brackets omitted). The decision whether to grant or deny this extraordinary relief is within the sound discretion of the district court. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 33 (2008). The Third Circuit reviews the district court's "factual findings for clear error, its legal rulings *de novo*, and its ultimate decision for abuse of discretion." *DSSA*, 108 F.4th at 198 (citation omitted). "At this early stage, [this Court] review[s] deferentially because the denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing that is the responsibility of the district judge." *Id.* (internal quotation marks omitted).

Plaintiffs must make a "clear showing" that: (1) they have a likelihood of success on the merits; (2) there is a risk of irreparable harm absent preliminary relief; (3) the balance of the equities is in their favor; and (4) the injunction would support the public interest. *Winter*, 555 U.S. at 20, 22; *DSSA*, 108 F.4th at 202 ("[T]he movant bears the burden"). "The first two factors are the 'most critical.'" *DSSA*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Failing to show either a likelihood of success or irreparable harm "necessarily" precludes a preliminary injunction. *S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citation omitted). This Court has cautioned that it will not "leapfrog these careful considerations and just resolve the case" based

solely on arguments as to the merits. *DSSA*, 108 F.4th at 197, 204-06 (denying injunction).

"A preliminary injunction is not a shortcut to the merits." *Id.* at 197. This Court's review ordinarily does not go into "the merits any farther than is necessary to determine whether [Plaintiffs] established a likelihood of success." *In re Lei Ke*, 531 F. App'x 187, 191 (3d Cir. 2013) (quoting *Pitt News v. Pappert*, 379 F.3d 96, 105 (3d Cir. 2004)).

This Court "*may* decide the merits" under certain circumstances when the appeal raises a "pure question of law." *Pitt News*, 379 F.3d at 105 (emphasis in original). It does so only where the question of law is "intimately related to the merits of the" preliminary injunction denial i.e., where the district court's decision "rests solely on a premise as to the applicable rule of law." *Off. Comm'r Baseball v. Markell*, 579 F.3d 293, 299, 300 (3d Cir. 2009) (citations omitted) (cited Br. 12, 14, 16). Moreover, this Court will not resolve the merits "absen[t] an adequately developed evidentiary record." *Siemens*, 17 F.4th at 418.

## B.    Plaintiffs Lack Standing

At the threshold, Plaintiffs lack standing, an issue they never address in their Opening Brief. This is a glaring omission given the extent of litigation below regarding Plaintiffs' lack of standing, and given that (1) the Original Plaintiffs were dismissed from *Neuberger I* precisely for their failure to plead any "imminent injury"

34

to their Second Amendment rights, 2026 WL 851183, at *3, and (2) the New Plaintiffs can claim no Second Amendment right to sell handguns. Plaintiffs' lack of standing is reason alone to affirm denial of injunctive relief. *Reading v. N. Hanover Twp.*, 124 F.4th 189, 198-99 (3d Cir. 2024) (affirming denial of preliminary injunction on standing grounds because plaintiff "[could not] show a likelihood of future harm").

To have standing, Plaintiffs must show (1) an "injury in fact," (2) that is "fairly traceable" to the complained-of conduct, and (3) that "will likely be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Where, as here, Plaintiffs claim threatened *future* injury, they must show the injury is "certainly impending." *Id.* at 564 n.2. The standing inquiry is "especially rigorous" in constitutional challenges to statutes, like this one. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). But any inquiry, let alone an especially rigorous one, would show Plaintiffs lack standing, whether from their imagined "total ban" on handgun sales they said was imminent, or from the functioning permitting scheme with which they have eschewed engaging.

*First*, the Original Plaintiffs lack standing to challenge a permitting scheme with which they have never attempted to comply. They must show they are "able and ready" to apply for a benefit but application "would be futile." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205-06 (3d Cir. 2021) (quoting *Carney v.*

*Adams*, 592 U.S. 53, 66 (2020)).

As the District Court held in dismissing *Neuberger I*, the Original Plaintiffs failed to allege they faced a "sufficiently imminent" threat of enforcement against them, without which they have no standing to seek the pre-enforcement review they have sought. 2026 WL 851183, at *1-2. The Buyer Plaintiffs could have purchased handguns "without going through the permitting process" at any point between May 16, 2024 and the Statute's implementation, but apparently had not done so "after alleging for ten months and multiple iterations of their complaint that their purchases were imminent." *Id.* at *1. Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves." *Reading*, 124 F.4th at 198 (quoting *Clapper*, 568 U.S. at 416); *see also Clapper*, 568 U.S. at 418 ("self-inflicted" constitutional injuries do not give rise to standing).

Plaintiffs Delaware State Sportsmen's Association and the Bridgeville Rifle & Pistol Club fare no better. They lack standing on behalf of their members because the Motion failed to "make specific allegations establishing that at least one identified member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016) ("[M]ere possibility that 'some day' a member of [plaintiff organization] might wish to obtain or retain a firearm" and "might then experience difficulties" is "insufficient.").

*Second*, the Seller Plaintiffs likewise lack standing. Both on the Motion below and here, they have inserted themselves into this case without articulating an actual basis for any injury. They did not seek any relief in the Motion, as they claimed no intention or inability to purchase handguns, and they failed to raise or articulate a Second Amendment right to sell handguns, *infra* 44-45, let alone one that would be infringed by requiring would-be purchasers to obtain a Permit.

## C. The District Court Correctly Determined That Plaintiffs Failed to Show Likelihood of Success on the Merits

### 1. There Was Never Any 'Total Ban'

Again, the imminent harm Plaintiffs asserted in their Motion was premised on an alleged impending "total ban" on handgun sales. App025 (Op.). Nothing approaching such a "ban" existed or exists in Delaware.

As the District Court determined, Delawareans have been applying for and obtaining Permits under the Statute since at least November 1, 2025, before Plaintiffs filed their Motion. App260 (Stevenson Decl. ¶¶7, 9). Hundreds of Permits had been issued by November 7, most within three business days. App260, 262 (¶¶9, 19). Further, many Delawareans can purchase handguns without a Permit under the Statute, including the 33,000 holders of CCDW licenses. *See supra* n.4.

Plaintiffs offered no support for their claim that there was "a severe shortage of available training" when enforcement began. Br. 51. In fact, one Plaintiff is qualified to provide trainings and has done so. App339 (Smith Second Decl. ¶14).

37

Plaintiffs' own "google searches" showed "posted Permit to Purchase trainings" between November 8-16, 2025. App300 (MacMullan Decl. ¶¶5, 9).

Plaintiffs also suggest potential for harm if denials are not issued within 30 days. *See* Br. 50-51. But no Plaintiff has come even close to that speculative moment, and in any event, the Statute requires SBI to issue a decision within 30 days, 11 Del. C. § 1448D(h), (i), and provides an appeal process, *id.* § 1448D(m), in the event SBI does not act in that time frame.

The District Court accordingly found that the evidence below "provides substantial detail calling into question Plaintiffs' assertions" as to a total ban. App027 (Op.). The District Court did not err in not applying the governing framework under *Bruen* and correctly found the absence of a ban to be dispositive. There is no basis, let alone "clear error," warranting reversal.

### 2. Plaintiffs Have No Claim Regarding the Guidelines

Had facts existed to support one, Plaintiffs could have chosen to assert a cause of action under the Delaware APA. Yet Plaintiffs have never alleged such a claim; they have never sought an injunction against any aspect of the Guidelines, which they argue were implemented contrary to the APA; and they have never identified any specific harm based on their APA argument. Instead, Plaintiffs ask the Court simply to accept that certain Guidelines are invalid and must, *a fortiori*, harm them in some way. *See* Br. 47-51.

The District Court correctly focused on the specific Guidelines Plaintiffs actually addressed, relating to the approval of firearms training providers. Plaintiffs asserted these are regulations that should have gone through an APA process. While Defendants did not concede any violation, they committed to removing those portions of the Guidelines. App367 (Defs.' Ltr.); App419 (Tr. 37:8–11). The District Court thus found this argument "moot" because the changes to the Guidelines obviated any APA concern. App027 (Op.); *see, e.g.*, *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 262 (3d Cir. 2002) (claim mooted by repeal of challenged ordinances).

Even had Plaintiffs brought an APA claim, and even if it were not moot, Delaware law does not require every aspect of statutory implementation to go through the APA process. It provides that "when an agency . . . implements a specific and detailed statutory directive, it may operate outside the scope of the APA." *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233, 1236 (Del. 2004) (determining "level of specificity in the statute" allowed implementation without APA review). Here, the Guidelines straightforwardly implement the legislature's mandate and follow the explicit and detailed language of the Statute. *See* 11 Del. C. § 1448D(f)(4)(a)-(k); *see also* App026 (Op.) ("Plaintiffs seem to accept that the *content* of firearm training courses flow directly from the language of the statute"); *DeMatteis v. RiseDelaware Inc.*,

39

315 A.3d 499, 515 (Del. 2024) (adoption of healthcare plan authorized by statute was outside APA's scope). Plaintiffs' argument that there is now a "vacuum" in the permitting scheme regarding qualifying training courses is thus wrong. *See* Br. 50.[8]

Plaintiffs have suffered no harm here, and the District Court correctly determined that any APA-based claim is moot.

### D. Plaintiffs Fail to Meet the Other Requirements for Injunction

While the District Court correctly denied injunctive relief based on Plaintiffs' failure to show likelihood of success, its decision can and should be affirmed for the independent reasons that (1) Plaintiffs fail to show irreparable harm (however their claim is interpreted) and (2) the remaining factors—balancing of equities and the public interest—also weigh against an injunction. *See DSSA*, 108 F.4th at 197, 200.

#### 1. Plaintiffs Allege No Irreparable Harm

Plaintiffs' failure to make the requisite "clear showing of immediate irreparable injury" independently bars injunctive relief. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989); *see DSSA*, 108 F.4th at 197 (identifying likelihood of success on the merits and of irreparable harm as most important preliminary injunction factors). Mere "risk of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d

---

[8] Plaintiffs' reliance, Br. 47, on *Delaware State Sportsmen's Ass'n v. Garvin* is misplaced: the agency action there did not involve implementation of a statutory regime. 2020 WL 6813997, at *10 (Del. Super. Nov. 18, 2020).

223, 226 (3d Cir. 1987) (vacating preliminary injunction). "[A]bsent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three factors are met." *Ferring Pharms. v. Watson Pharms.*, 765 F.3d 205, 219 (3d Cir. 2014).

To start, there is no presumption of irreparable harm merely because Plaintiffs allege a Second Amendment violation. "Constitutional harm is not necessarily synonymous with [] irreparable harm." *Hohe*, 868 F.2d at 72-73; *DSSA*, 108 F.4th at 203 (declining to presume irreparable harm from alleged Second Amendment violation). Plaintiffs fail to meet their burden to prove such harm.

As for the Original Plaintiffs who seek to purchase handguns, nothing prevents them from doing so. The Statute's permitting system has been, and will continue to be, operational, and hundreds of Permits have been issued. *See supra* 13. These Plaintiffs also have not alleged a "time-sensitive need" to purchase handguns. They only claim a general intent to purchase a handgun. *See, e.g.,* App217 (Neuberger Decl. ¶25); App222 (Hague Decl. ¶17); *see also* Br. 56. This "generalized claim of harm is hardly enough to call for [the] 'extraordinary and drastic remedy'" of injunctive relief. *DSSA*, 108 F.4th at 205. Further, as the District Court pointed out, the Buyer Plaintiffs had *eighteen months* of time to purchase a handgun without following the Statute's requirements, but chose not to do so, undermining any claim of imminent injury. *See Neuberger I*, 2026 WL 851183, at

41

*1-2.

As for the Seller Plaintiffs, it has long been held that "[e]conomic loss does not constitute irreparable harm," and even where that harm stems from a constitutional violation, it "can be remedied by an award of money damages." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653, 655 (3d Cir. 1994). Plaintiff BKK Firearms claimed it could face bankruptcy, App227 (Smith Decl. ¶¶17-19), but presented no supporting financial statements or projections. Even if no new Permits were issued, public data shows the Seller Plaintiffs retain a broad potential customer base for handguns. For example, there are more than 30,000 CCDW permit holders in Delaware, who may purchase handguns without obtaining a Permit. *See Concealed Deadly Weapons*, CCDW Granted and Denied Filing Statistics, Del. Sup. Ct., available at https://courts.delaware.gov/forms/download.aspx?ID=125408; *supra* n.4. And the Seller Plaintiffs remain able to sell other firearms (*e.g.*, shotguns, rifles), firearms accessories, and other lawful weapons not covered by the Statute. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (finding no irreparable injury where plaintiff's assertion of bankruptcy was "not supported by any financial statements or projections" and plaintiff "still maintain[ed] twenty percent of its business").

Because there is no presumption of irreparable harm, and Plaintiffs make no clear showing of such harm, injunctive relief cannot be granted.

## 2. Equity and Public Interest Favor Defendants

To balance the equities, the Court weighs the harm to the non-moving party from an injunction against the harm to the movant absent one. *See Winter*, 555 U.S. at 24. When a State is the opposing party, the balancing of equities merges with the Court's assessment of the public interest, because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation omitted); Br. 57. While the District Court did not need to reach these factors, both weigh against an injunction.

Defendants have a compelling interest in protecting Delawareans' safety by ensuring that those who wish to purchase handguns are properly trained and do not pose a danger to themselves or others. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020) ("[C]onsideration of risk to the public's safety before providing preliminary injunctive relief is crucial."); *United States v. Salerno*, 481 U.S. 739, 745 (1987) (government has "compelling interests in public safety").

Moreover, "'[t]here is always a public interest in prompt execution' of the laws," especially where a federal court is asked to strike down a state law. *DSSA*, 108 F.4th at 205 (quoting *Nken*, 556 U.S. at 436). "Without the clarity of a full trial on the merits . . . [federal courts] must err on the side of respecting state sovereignty." *Id.* at 206. Invalidation of the Statute now would harm the State's public safety

interests and "threaten[] federalism and the separation of powers[.]" *Id.* at 205.

By contrast, Plaintiffs offer only the same incorrect and manufactured assertions of hypothetical harms, *see* Br. 57, already rebutted above, *supra* 40-42. Given Plaintiffs have not come *close* to showing the Statute is unconstitutional or that they are being subjected to any "noncompliant" rulemaking, their assertion that the State would face no inequity or injury to the public interest from being unable to enforce an unconstitutional law, Br. at 57-58, is unavailing.

Equity and public interest thus likewise support denying an injunction.

### E. The Statute Does Not Violate the Second Amendment

As explained *supra* 22-25, this Court should disregard Plaintiffs' newly raised "facial" challenge arguments. Even had Plaintiffs requested injunctive relief based on their "facial" challenge, however, such a request would have to be denied because they cannot show likelihood of success on the merits.

#### 1. Seller Plaintiffs Have No Second Amendment Right to Sell Handguns to Buyers Without Permits

While the Second Amendment protects an individual's right to keep and bear arms, it does not provide for a right to sell arms. New Plaintiffs, a gun seller and its owner, cannot claim the Statute violates their Second Amendment rights. *See* App420 (Tr. 38:11-13) (noting "the person whose right is being purportedly infringed is the buyer, not the seller"); *see, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) ("Nothing in the text of the Amendment, as interpreted

44

authoritatively in *Heller*, suggests [it] confers an independent right to sell or trade weapons."); *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (Second Amendment "does not necessarily give rise to a . . . right to sell"). Put differently, even if the Statute prevented all handgun sales—which it *does not*—the right at issue would belong to individuals seeking to purchase them, not individuals seeking to sell. Seller Plaintiffs might identify other causes of action (none of which they raised in the Motion below or Opening Brief here), but they cannot succeed based on a right to sell handguns to buyers without Permits. Plaintiffs' Opening Brief nowhere addresses this threshold problem as to the Seller Plaintiffs.

> **2.** **Shall-Issue Permitting Laws Like the Statute are Presumptively Constitutional**

Plaintiffs are also unlikely to succeed on the merits because the Statute fits within *Bruen*'s allowance for "shall issue" regimes. *Bruen* established a two-step framework for evaluating Second Amendment challenges. Courts first determine whether "the Second Amendment's plain text covers an individual's conduct," *Bruen*, 597 U.S. at 17, such that it "'infringes' the Second Amendment right" to lawful self-defense. *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024) (*MSI*), *cert. denied*, 145 S. Ct. 1049 (2025). If the challenged law burdens the Second Amendment, then only at the second step, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17; *see also United States v. Scheidt*, 103

F.4th 1281, 1284 (7th Cir. 2024) (declining to undertake the second step of *Bruen* analysis where statute did not "infringe" Second Amendment rights).

Here, the Court need not reach step two because "shall-issue" licensing laws such as the Statute are presumptively constitutional under *Bruen*, and Plaintiffs have not rebutted, and cannot rebut, that presumption. *See MSI*, 116 F.4th at 222-23; *see also id.* at 230 (Rushing, J., concurring). In *Bruen*, the Supreme Court emphasized that "shall-issue" licensing laws do not "prevent law-abiding, responsible citizens from exercising their Second Amendment right[s]." 597 U.S. at 38 n.9. To the contrary, *Bruen* was clear that "nothing in [the Court's] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Id.*

It is thus well established that the burden of applying for a permit, as required by the Statute, is not a legally cognizable injury to Second Amendment rights. *See, e.g.*, *Bruen*, 597 U.S. at 38 n.9 ("[S]hall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." (quotation marks omitted)); *District of Columbia v. Heller*, 554 U.S. 570, 626-27, n.26 (2008) (finding "presumptively lawful regulatory measures" include "laws imposing conditions and qualifications on the commercial sale of arms"); *MSI*, 116 F.4th at 216 ("[D]espite some delay occasioned by 'shall-

issue' permit processes, this type of licensing law is presumptively constitutional.").

Plaintiffs' attempts to minimize the import of these clear statements in *Bruen* fail. *First*, the Supreme Court's pronouncements in *dicta* are binding if they are "recent and detailed" and, as the Fifth Circuit put it, "it doesn't get more recent or detailed than [the 'shall-issue' discussion in] *Bruen*." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024).

*Second*, in a concurrence joined by the Chief Justice, Justice Kavanaugh underscored in *Bruen* that "shall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring). Justice Kavanaugh then set forth defining features of shall-issue regimes, explaining that they "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* Permitting schemes with background check and firearms training requirements, like the Statute, "are not constitutionally suspect because they 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.'" *Giambalvo v. Suffolk County*, 155 F.4th 163, 181 (2d Cir. 2025) (quoting *Bruen*, 597 U.S. at 13 n.9); *see also Antonyuk v. James*, 120 F.4th 941, 980-81 (2d Cir. 2024) (vacating preliminary injunction enjoining

47

requirement that license applicant be "of good moral character").

### 3. Plaintiffs Make No Showing of Abusive Implementation

Plaintiffs' constitutional challenge "can survive step one of the *Bruen* analysis only if they demonstrate that the law 'infringes,' or effectively denies," Second Amendment rights. *MSI*, 116 F.4th at 225 (quoting *Bruen*, 597 U.S. at 38 n.9). To do so, Plaintiffs must show the law has been "put toward abusive ends," for example, by imposing "lengthy wait times" or "exorbitant fees." *Bruen*, 597 U.S. at 38 n.9.

Courts have thus consistently held that challengers of a shall-issue scheme must make "some showing" that it is "being put toward abusive ends" "to overcome [its] presumptive constitutionality." *Frey v. City of New York*, 157 F.4th 118, 140 (2d Cir. 2025) (quoting *Giambalvo*, 155 F.4th at 181).

In *Frey*, the Second Circuit affirmed the denial of a preliminary injunction where the plaintiffs challenged a "presumptively constitutional" shall-issue permitting scheme but failed to "allege, for instance, that the permit is not granted on a shall-issue basis once an applicant satisfies the necessary requirements, that the process is administered inappropriately, or that the process is too lengthy or costly." 157 F.4th at 140-41. Other circuit courts have consistently held the same.

In *United States v. Speed*, the Fourth Circuit held that registration requirements that "do not give [an agency] discretion about whether to grant or deny a permit if the applicant complies with the regulatory requirements" "create[d] a

shall-issue permitting regime" and are "presumptively constitutional." — F.4th —, 2026 WL 1217255, at *11 (4th Cir. May 5, 2026). The court rejected defendant's Second Amendment challenge because defendant "[made] no effort to" "overcom[e] that presumption by showing the regime was abusive." *Id.* at *12.

In *Beckwith v. Frey*, the First Circuit vacated a preliminary injunction enjoining a waiting-period statute that resembled "shall issue" licensing laws, to which "the full [*Bruen*] two-step analysis did not apply" as such laws were "presumptively constitutional unless a challenger could show that they were abusive." 171 F.4th 560, 570 (1st Cir. 2026).

In *United States v. Vlha*, the Ninth Circuit held that where challengers did not show that a statute that required firearm manufacturers to obtain licenses under a shall-issue scheme was "put toward abusive ends[,]" "the text of the Second Amendment does not cover the conduct regulated by [the statute]." 142 F.4th 1194, 1200 (9th Cir. 2025).

Plaintiffs made no showing that the Statute was being put towards such abusive ends in the Complaint, nor could they. The Statute requires the SBI to issue a Permit within 30 days of the application date, 11 Del. C. § 1448D(h), which is shorter than many of the presumptively constitutional "shall issue" statutes cited in *Bruen*. *See MSI*, 116 F.4th at 227 (finding 30-day period is "far shorter than many of the permissible processing periods cited by the Supreme Court in *Bruen*").

49

Neither the Statute nor Plaintiffs' Complaint specify application fees or training course costs, let alone offer any support to claim such costs exorbitant. Having chosen to sue prior to the Statute's enforcement, Plaintiffs have not—and cannot—show that the Statute has been put toward abusive ends.

### 4. Plaintiffs' Historical Tradition Arguments are Unlikely to Succeed

Plaintiffs make much of the burden on the government under *Bruen*'s second step. Given the numerous threshold deficiencies detailed above and the self-imposed consequences of Plaintiffs' tactics, this Court need not even reach these arguments. Defendants never had reason or opportunity to submit appropriate expert and other evidence to support *Bruen* step two arguments below (as they expressly reserved the right to do)—and the District Court explicitly recognized that such argument would only come up "in the future," if at all. *Supra* 13-14. Accordingly, while Defendants address *Bruen* step two below, it is on an "abbreviated" record, *DSSA*, 108 F.4th at 198, and without the benefit of "nuanced" historical evidence, *Bruen*, 597 U.S. at 25.

Any Second Amendment challenge to the Statute would be unlikely to succeed because the Statute is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17; *DSSA*, 108 F.4th at 217 (Roth, J., concurring) (no likelihood of success where "Delaware's laws are consistent with the nation's historical tradition of firearm regulation").

*Bruen* requires a "nuanced approach" to historical analysis to avoid putting a

50

"regulatory straightjacket" on governments seeking to protect the public from dangerous firearms. *Bruen*, 597 U.S. at 27, 30. Indeed, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *United States v. Rahimi*, 602 U.S. 680, 691–92 (2024). A modern regulation need not be the "twin" of a historical regulation; rather, the two should be "relevantly similar." *Bruen*, 597 U.S. at 29–30. When determining if regulations are relevantly similar, the Court considers "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. "[T]he analogy turns on similarity in principle, not specific facts[.]" *United States v. Harris*, 144 F.4th 154, 158 (3d Cir. 2025). "This inquiry is necessarily an exercise in analogical reasoning." *MSI*, 116 F.4th at 230 (Rushing, J., concurring).

The Statute is consistent with the principles that underpin the Nation's regulatory tradition. The United States has a long history of requiring individuals acquire some type of permit to purchase a firearm. Permitting schemes emerged in the Reconstruction Era and became "the dominant model of firearms regulation in America" as gun violence emerged as a grave and novel societal problem. App252 (quoting Saul Cornell, *The Right to Regulate Arms in the Era of the Fourteenth Amendment: The Emergence of Good Cause Permit Schemes in Post-Civil War America*, 55 U.C. Davis L. Rev. Online 65, 89 (2021)). These "ordinances were first enacted by municipalities" and "were soon emulated by states." *Id.* By the end of

the 19th century, "[r]esidents in the ten most populous cities in America . . . all lived under some form of restrictive public carry regime" including "permit schemes." *Id.* These permitting schemes, like the Statute, sought to ensure that those possessing firearms were "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 70. Defendants provided examples of such historic permitting laws. *See* App252.

"[I]mposing similar restrictions for similar reasons" as historical firearm regulations is a "strong indicator" that a contemporary law will "fall within a permissible category of regulations." *Rahimi*, 602 U.S. at 692. Here, the Statute advances the same interests that motivated historical firearm regulations: reducing gun violence and promoting public safety. *See* App252-53 (Defs.' Resp.). In her concurring opinion in *MSI*, Judge Rushing found historical analogs that satisfied nearly identical requirements as found in the Statute. 116 F.4th at 231-36.

(i) <u>The applicant must be at least 21 years old</u>, 11 Del. C. § 1448D(f)(1): Federal law has prohibited the sale of handguns to persons under age 21 since 1968. 18 U.S.C. § 922(b)(1). Further, age restrictions were common before and during the Reconstruction Era, including in Delaware, which outlawed the sale of deadly weapons to minors. *See, e.g.*, An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, 1881 Del. Laws 987, ch. 548, § 1.

(ii) <u>The applicant must not be prohibited from purchasing, owning, possessing, or controlling a deadly weapon—e.g., because the applicant was convicted of a</u>

felony or domestic violence offense, or is subject to a protective order, 11 Del. C. § 1448D(f)(2): *Rahimi* upheld a statute prohibiting individuals subject to domestic violence restraining orders from possessing firearms. 602 U.S. at 699-700.

(iii) There must not be probable cause to believe that the applicant poses a danger to themselves or others, 11 Del. C. § 1448D(f)(3): Historical statutes "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698.

(iv) The applicant must have passed a firearms training course within five years of the application, 11 Del. C. § 1448D(f)(4): "England ha[d] an extensive tradition of training mandates" back to 1363, which continued in America from colonial times. App254 (Defs.' Resp.) (quoting Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*, 31 Wm. & Mary Bill Rts. J. 93, 99 (2022)).

(v) The applicant cannot be otherwise prohibited from purchasing or possessing firearms under Delaware or federal law, 11 Del. C. § 1448D(f)(5): In *MSI*, Judge Rushing's concurrence concluded that a nearly identical requirement fit within the "historical tradition" as outlined in *Rahimi*. 116 F.4th at 233.

## 5. The Statute's Constitutional Applications Preclude A Facial Challenge

A facial challenge can succeed only if a litigant "establish[es] that no set of circumstances exists under which the Act would be valid.'" *Rahimi*, 602 U.S. at 693

(quoting *Salerno*, 481 U.S. at 745); *see also* App100 (Compl. ¶159) (acknowledging burden). Plaintiffs have not done so here.

Plaintiffs claim the Statute is unconstitutional as written because it requires "discretionary approval" of Permits. Br. 19-20. Setting aside that the Statute's permitting scheme is *not* discretionary, *see supra* 6-7, Plaintiffs' facial challenge simply "assumes that licensing officers will act in bad faith," when in fact "facial challenges require the opposite assumption." *Antonyuk*, 120 F.4th at 987. Here, there are many circumstances in which the Statute is valid and constitutional. For example, the Director *must* deny a Permit application if the applicant is subject to a domestic violence protective order. 11 Del. C. §§ 1448D(f)(2), 1448(a)(6). That is squarely constitutional under *Rahimi*, which held the Second Amendment "allows the Government to disarm individuals who present a credible threat to the physical safety of others," and denied a facial challenge to a law prohibiting individuals subject to domestic violence protective orders from possessing firearms. 602 U.S. at 700. The Statute also requires the Director to deny a Permit to anyone "involuntarily committed for a mental condition," 11 Del. C. § 1448D(a)(2)(a), which is likewise constitutional under binding Third Circuit precedent. *Beers v. Att'y Gen.*, 927 F.3d 150, 158 (3d Cir. 2019) (upholding law prohibiting possession of a firearm by anyone who has "been committed to a mental institution."), *dismissed as moot*, 822 F. App'x 56 (3d Cir. 2020). Plaintiffs have not, and cannot, dispute

that the Statute is constitutional in "at least some applications," which precludes their facial challenge. *See Rahimi*, 602 U.S. at 693 (where one application is permissible, the court "need not decide whether [others are] also permissible"); *Antonyuk*, 120 F.4th at 987.

**<u>CONCLUSION</u>**

For the foregoing reasons, the District Court's Opinion should be affirmed and Plaintiffs' requested declaratory and injunctive relief should be denied.

Dated: May 22, 2026

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

*Of Counsel*:
FRESHFIELDS US LLP

Jennifer B. Loeb
Austin R. Evers
Lauren Kaplin
Jacob Johnston
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Abhinaya Swaminathan
Rebecca Curwin Kerr
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
abhinaya.swaminathan@freshfields.com
rebecca.kerr@freshfields.com

 */s/ Ian R. Liston*
Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ian.liston@delaware.gov
jennifer.aaronson@delaware.gov

*Counsel for Defendants-Appellees*

<h1 style="text-align:center">COMBINED CERTIFICATIONS</h1>

<h2 style="text-align:center">BAR MEMBERSHIP</h2>

I, Ian R. Liston, certify as follows:

1.      I am a member in good standing of the bar of this Court.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

<h2 style="text-align:center">WORD COUNT AND TYPEFACE</h2>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.      This Brief complies with the type-volume limitation of Rules 29(d) and 32(a)(7)(B) because it contains 12,993 words, excluding the parts of the Brief exempted by Rule 32(a)(7)(B)(iii).

2.      This Brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

<h2 style="text-align:center">IDENTICAL COMPLIANCE OF BRIEF AND VIRUS CHECK</h2>

Pursuant to Third Circuit L.A.R. 31.1(c), I certify that the foregoing electronic Brief and its hard copies have identical text.  I also certify that foregoing electronic Brief has been scanned with Windows Defender and is free of viruses.

Dated: May 22, 2026                                    */s/ Ian R. Liston*
                                                       Ian R. Liston (#5507)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 22, 2026, he caused the foregoing Defendants-Appellees' Answering Brief to be served on all counsel of record via the Court's electronic filing service. Additionally, the undersigned certifies that seven paper copies of the foregoing Defendants-Appellees' Answering Brief shall be mailed by Federal Express to the Office of the Clerk, United States Court of Appeals for the Third Circuit, within five days of the date of electronic filing of this Brief.

Dated: May 22, 2026                                      /s/ Ian R. Liston
                                                                    Ian R. Liston (#5507)