# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 25-3250

---

**THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. D/B/A BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC. and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.,**

Appellants-Plaintiffs,

v.

**JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary; Delaware Department of Safety and Homeland Security and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police,**

Appellees-Defendants.

_____

United States District Court for the U.S. District Court of Delaware

Appeal from a Judgment of the United States District Court
for the District of Delaware (Noreika, J.)
(Dist. Ct. No. 1:25-cv-01341-MN)

_____

## REPLY BRIEF OF APPELLANTS

---

Francis G.X. Pileggi, Esquire
Keith A. Walter, Esquire
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
302-985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com

Dated:  June 22, 2026

OF COUNSEL:

Joseph G.S. Greenlee, Esquire
National Rifle Association
   Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA 22030
jgreenlee@nrahq.org

Alexander MacMullan, Esquire
565 E. Swedesford Road, Suite 303
Wayne, PA 19087
Alexander.MacMullan@LewisBrisbois.com

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ......................................................................................1

ARGUMENT ..............................................................................................6

I.     THE PERMIT BILL IS UNCONSTITUTIONAL...........................................6

        A. This Court Should Resolve the Constitutionality Issues.......................6

        B. The Permit Bill Violates the Second Amendment ...............................8

            1.  Second Amendment Protects the Right to Sell Arms.................8

            2.  The Permit Bill is Not Presumptively Constitutional, but
               is Subject to Full *Bruen* Analysis .............................................10

            3.  The State Fails to Demonstrate its Permit Bill is Consistent
               with Historical Tradition...........................................................13

            4.  The Permit Bill is Unconstitutional in All Cognizable
               Applications .........................................................................14

II.    THE ORIGINAL CHALLENGERS WERE IMPROPERLY
      DISMISSED ...........................................................................................16

        A. The Original Challengers did not Engage in Claim Splitting.............16

        B. The Court Erred in Dismissing the Original Challengers...................17

III.   THE COURT ERRED IN DENYING EXPEDITED RELIEF ....................18

        A. The Challengers Have Standing.........................................................18

        B. The Challengers Are Likely to Succeed on the Merits .......................21

    1.  The Record Demonstrates an Unconstitutional *De Facto* Ban ...................................................................................21

    2.  The State Failed to Follow The APA, Rendering the Implementation of the Permit Bill Unlawful ...........................23

  C.  The Challengers Have Alleged Irreparable Harm.............................26

  D.  Equity and Policy Interests Favor Injunction......................................28

CONCLUSION .........................................................................................................29

CERTIFICATE OF BAR MEMBERSHIP...............................................................31

CERTIFICATE OF COMPLIANCE.........................................................................32

CERTIFICATE OF SERVICE .................................................................................33

CERTIFICATE OF ELECTRONIC FILING...........................................................34

*Del. State Sportsmen's Assn. v. Garvin*,
    No. CV K19C-11-011 NEP, Tr. Order
    (Del. Super. Ct. Feb. 14, 2020)...........................................................Addendum

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Baker v. Delaware Dep't of Nat. Res. & Env't Control*,
C.A. No. S13C-08-026-THG,
2015 WL 5971784 (Del. Super. Ct. Oct. 7, 2015)..................................................25

*Board of Trustees of University of Alabama v. Garret*,
531 U.S. 356 (2001)..................................................................................................27

*Bridgeville Rifle & Pistol Club, Ltd. v. Small*,
176 A.3d 632 (Del. 2017) .........................................................................................18

*New York State Rifle & Pistol Assn., Inc. v. Bruen*,
597 U.S. 1 (2022)..............................................................................................*passim*

*Carney v. Adams*,
592 U.S. 53 (2022)....................................................................................................20

*Colorado Outfitters Association v. Hickenlooper*,
823 F.3d 537 (10th Cir. 2016) ..................................................................................21

*In re Consolidated Salmon Cases*,
688 F.Supp.2d 1001 (E.D. Cal. 2010) ......................................................................17

*Del. State Sportsmen's Ass'n v. Garvin*,
196 A.3d 1254 (Del. Super. Ct. 2018).......................................................................18

*Del. State Sportsmen's Ass'n v. Garvin*,
No. CV K19C-11-011 NEP, Tr. Order, (Del. Super. Ct. Feb. 14, 2020)...........18

*Del. State Sportsmen's Ass'n v. Garvin*,
No. CV K19C-11-001 NEP, 2020 WL 6813997
(Del. Super. Ct. Nov. 18, 2020).........................................................................18, 23, 25

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ............................................................................*passim*

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..........................................................................................*passim*

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ........................................................................27

*Drummond v. Robinson Twp.*,
9 F.4d 217 (3d Cir. 2021) ...........................................................9, 10

*Ellison v. American Board of Orthopaedic Surgery*,
11 F.4th 200 (3d Cir. 2021) .............................................................20

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
733 F.3d 393 (2d Cir. 2013) ............................................................28

*Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control*,
861 A.2d 1233 (Del. 2004.) ..............................................................23

*Harris v. City of Philadelphia*,
35 F.3d 840 (3d Cir. 1994) ................................................................6

*K.A. v. Pocono Mountain Sch.*,
710 F.3d 99 (3d Cir. 2013) ..............................................................28

*Lara v. Comm'r Pa. State Police*,
125 F.4th 428 (3d Cir. 2025) .......................................................3, 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).....................................................................19, 20

*Maldonado v. Houstoun*,
157 F.3d 179 (3d Cir. 1998) ..............................................................7

*Marinaccio v. E. Hanover Bd. Police Dep't*,
2022 WL 964000 (3d Cir. Mar. 30, 2022)...........................................7

*OFC Comm Baseball v. Markell*,
579 F.3d 293 (3d Cir. 2009) ..............................................................7

*Pena-Rodriguez v. Colorado*,
580 U.S. 206 (2017).........................................................................14

*Port Authority Trans-Hudson Corp. v. Feeney*,
495 U.S. 299 (1990)..........................................................................27

*Rai v. WB Imico Lexington Fee, LLC,*
 802 F.3d 353 (2d Cir. 2015) ...........................................................8

*Ramos v. Louisiana,*
 590 U.S. 83 (2020) (Kavanaugh, J., concurring)...............................14

*Range v. Att'y Gen. United States,*
 124 F.4th 218 (3d Cir. 2024) ...........................................1, 12, 13, 14

*Roso-Lino Beverage Distributors, Inc. v. Coco-Cola Bottling Co. of New York,*
 749 F.2d 124 (2d Cir. 1984) ...........................................................27

*Schneider v. United States,*
 301 F. App'x 187 (3d Cir. 2008) ....................................................16

*Summers v. Earth Island Institute,*
 555 U.S. 488 (2009)........................................................................21

*United States v. Hemani,*
 608 U.S. ____ (June 18, 2026) .........................................................4

*United States v. Marzzarella,*
 614 F.3d 85 (3d Cir. 2010) ...........................................................9, 10

*United States v. Rahimi,*
 602 U.S. 680 (2024)..........................................................................3

**Statutes**

11 *Del. C.* § 1448(a)(2)a ......................................................................15

11 *Del. C.* § 1448(a)(6) .......................................................................15

11 *Del. C.* § 1448D ......................................................................6, 11, 23

28 U.S.C. § 1292(a)(1).........................................................................7

42 U.S.C. § 1983.................................................................................27

Delaware Administrative Procedures Act
 29 *Del. C.* § 102 .......................................................................*passim*

**Constitutional Provisions**

U.S. Const. amend. II..................................................................................*passim*

**Other Authorities**

Bob Barr & Joseph G.S. Greenlee, *When Rights Require Permission: The Discriminatory History of Licensing Laws For Firearm Possession*, 129 Dick. L. Rev. 1019 (2025) .................................................................13

**INTRODUCTION**

This case concerns a fundamental birthright that, as the United States Supreme Court and this Court have recognized, every human is endowed with.[1] That is, the natural right of self-defense remains at the core of the basic civil rights enshrined in the Second Amendment to the United States Constitution.

The government cannot grant a natural birthright that each person already has—it can only recognize it. Yet the State of Delaware trifles with this exalted entitlement in the Bill of Rights by imposing heavy-handed prerequisites before one may exercise this right, including: a discretionary permit process coupled with numerous dilatory infringements that are not consistent with the Nation's tradition of firearms regulations, and onerous regulations that also violate the Delaware Administrative Procedures Act (the "APA").

Consistent with the delay and circuitous procedural hurdles the State[2] imposes to restrict the exercise of constitutional rights at issue, the State seeks to prevent this Court from addressing the merits—despite this Court's Order that the parties brief

---

[1] *Range v. Att'y Gen. United States,* 124 F.4th 218, 224 (3d Cir. 2024) (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 20 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (recognizing that the right to keep and bear arms was a pre-existing right)). *See also id*. at 232 (Matey, J., concurring).

[2] As used herein, "State" refers to all Appellees in this Appeal, namely Joshua Bushweller, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and Col. William Crotty, in his official capacity as superintendent of the Delaware State Police.

the merits[3] by interposing unnecessary procedural entanglements that this Court need not consider before ruling on the dispositive issues in this case, and notwithstanding the trial court ordering that the State address the substantive *Bruen* issues at stake. *See* November 5, 2025 District Court Order, App 228-229.

The State and its *Amici* rely, somewhat repetitively, for the core of their argument on *dicta* from a footnote in *Bruen* that expressly declined to analyze the constitutionality of "shall-issue" permit regimes. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022). In addition to imposing on observations from a footnote more weight than they were designed to bear, their reliance suffers from two other fatal flaws.

First, in addition to shall-issue permits not being the type of statute that was the subject of the High Court's constitutional analysis *or ratio decidendi* in *Bruen*, those permit schemes referred to permits to carry a concealed firearm in public—but the permits at issue in this appeal are required even to purchase a firearm for mere possession in the home. This is a requirement unknown in the Founding Era for this natural right.

---

[3] *See* D.I. 21 (Order directing "[t]he Clerk of the Court [to] issue a briefing schedule for merit briefs. . . .")

The State disregards and disrespects this Court's precedent that does not countenance including post-Founding Era laws in an analysis of whether an infringement is consistent with this Nation's tradition of firearms regulation.[4]

Second, the High Court in *Bruen* acknowledged that the Delaware statutory permitting regime for concealed carry of a firearm was, by its terms, not a shall-issue statute—but rather a may-issue statute that only allows a permit to be issued after a discretionary decision by a government representative, although the number of permits issued in 2022 made it *appear differently*—based on statistics at that time.[5]

The State also contorts the U.S. Supreme Court's *Rahimi* decision beyond recognition by failing to acknowledge that the High Court required a judicial determination before someone could be deemed ineligible to exercise Second Amendment rights—unlike the Delaware statute at issue in this appeal that allows an unelected official discretion to withhold constitutional rights based on an application of the vague and amorphous label of "dangerousness". *United States v. Rahimi,* 602 U.S. 680, 702 (2024) ("we conclude only this: An individual found by

---

[4] *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d Cir. 2025) (quoting *Bruen*, 597 U.S. at 28; *see also id*. at 37) ("We reiterate … that the constitutional right to keep and bear arms should be understood according to its public meaning in 1791, as that 'meaning is fixed according to the understandings of those who ratified it[.]'")

[5] *Bruen*, 597 U.S. at 13 n.1 ("Three States—Connecticut, Delaware, and Rhode Island—have *discretionary criteria* but *appear to operate* like shall issue, jurisdictions.") (internal citations omitted) (emphasis added).

a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").[6]

The State also endorses the trial court's abuse of discretion in not consolidating this case with a prior related case that was in abeyance while dispositive motions were pending for about a year, when new material facts and exigent circumstances gave the Challengers[7] no practical procedural avenue, based on the circumstances in this case, to seek expedited injunctive relief other than by filing a new lawsuit with a request for immediate scheduling.

Finally, the State elevates form over substance by insisting that this Court promote additional delay and expense by limiting its review to the denial of injunctive relief—despite this Court's Order to address the merits in this appeal. But if this Court were to address the injunctive relief issue, which would be rendered moot if the Court addresses the underlying merits, we explain why the overbearing

---

[6] *See generally United States v. Hemani*, 608 U.S. ____ (Jun. 18, 2026) (finding statute infringing Second Amendment rights was not consistent with the Nation's historical tradition of firearm regulations and reasoning that allowing the government to designate any group as dangerous, thereby disqualifying them from owning a gun, "would risk allowing it to 'quickly swallow' the Second Amendment").

[7] "Challengers" refers to the Appellants in this appeal: Thomas S. Neuberger; Jerry L. Martin; Willliam Hague, Jr.; Bruce C. Smith; Bridgeville Kemp Karate, Inc. d/b/a BKK Firearms; Delaware State Sportsmen's Association, Inc.; and Bridgeville Rifle and Pistol Club, Ltd.

infringements on Second Amendment rights, coupled with restrictions that are in violation of the APA, satisfy the criteria for a preliminary injunction.

**ARGUMENT**

## I.   THE PERMIT BILL IS UNCONSTITUTIONAL

### A.   This Court Should Resolve the Constitutionality Issues

The State's contention that the Challengers have raised a new "facial" challenge for the first time on appeal is incorrect. Answering Brief 22-23.[8] The Challengers contest the constitutionality of the Permit Bill, including a facial challenge.[9] Opening Brief 16.

The constitutional question, whether the Permit Bill complies with the Second Amendment under *Bruen*, has been central to arguments made throughout this case and pervades the Complaint. *See, e.g.,* Complaint ¶¶ 82-119, App 078-089. The District Court ordered the State to address this issue below, giving the State a fair opportunity to address it. *See* November 5, 2025 District Court Order, App 228-229.

The State's reliance on *Harris v. City of Philadelphia* is misplaced because in that case the City raised new arguments on appeal which it had the opportunity to raise in the district court and were intertwined with a "substantial number of factual questions[.]" 35 F.3d 840, 845-46 (3d Cir. 1994). Not so in this appeal. Similarly,

---

[8] Citations to "Answering Brief ___" are to the State's Answering Brief (D.I. 36), "Opening Brief ___" are to Challengers' Opening Brief (D.I. 27), and to "App ___" are to the Joint Appendix (D.I. 28, 29).

[9] The "Permit Bill" refers to Delaware's "permit-to-purchase" handgun statute, Senate Substitute 1 for Senate Bill 2. *See* 11 *Del. C.* § 1448D.

*Marinaccio v. E. Hanover Bd. Police Dep't* is distinguishable because the appellant there appeared to make a procedural due process argument distinctive from the substantive due process claim he raised in the district court. No. 20-2677, 2022 WL 964000, at *1, n.3 (3d Cir. Mar. 30, 2022).

Moreover, this Court's jurisdiction under 28 U.S.C. § 1292(a)(1) permits resolution of the constitutional question presented. Appellate courts reviewing preliminary injunctions may consider issues that present a pure question of law. *OFC Comm Baseball v. Markell*, 579 F.3d 293, 299-300 (3d Cir. 2009) (citing *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 757 (1986)) (the "'general rule' of limited review is one of 'orderly judicial administration, not a limit on judicial power'"); *see also Maldonado v. Houstoun*, 157 F.3d 179, 189-91 (3d Cir. 1998) (exercising plenary review and deciding the constitutionality of a statute on appeal from a preliminary injunction).

The Challengers' arguments are based on the statutory text and structure, making this a facial challenge that renders the statute infirm under any set of facts. Opening Brief 16.

The applicable standard of constitutional interpretation required by *Bruen* does not depend on case-specific factual development of the sort the State and its *Amici* suggest is missing. Where the material facts are not in dispute and the issue is purely legal, appellate courts routinely resolve the merits without remand. *See*

*Markell*, 579 F.3d at 298-300 (addressing and resolving legal issues on interlocutory appeal where the record was sufficient).

This Court's decision in *Del. State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197 (3d Cir. 2024) ("DSSA Remand Case") is distinguishable on procedural and substantive grounds. That case addressed the lack of irreparable harm and remanded on that basis. By contrast, in this appeal the court should address the merits without regard to irreparable harm or other procedural issues.

Considerations of judicial economy also strongly favor resolving the constitutional issue now. By not addressing the merits of the Permit Bill, the parties and the District Court will be required to expend substantial additional resources litigating issues that will inevitably return to this Court on appeal. *See Rai v. WB Imico Lexington Fee, LLC,* 802 F.3d 353, 368-69 (2d Cir. 2015) (deciding purely legal issues unaddressed by the District Court on appeal in the interest of judicial economy).

**B.     The Permit Bill Violates the Second Amendment**

**1.     Second Amendment Protects the Right to Sell Arms**

The State argues that BKK and Smith ("Seller Challengers") "cannot claim the Permit Bill violates their Second Amendment rights" because the Second Amendment "does not provide for a right to sell arms." Answering Brief 44.

This Court has held otherwise. In *Drummond v. Robinson Twp.*, this Court addressed zoning regulations that interfered with a gun club's ability "to engage in the retail sale of firearms and to operate a shooting range." 9 F.4th 217, 223 (3d Cir. 2021) (cleaned up). Applying the approach to analogical reasoning later endorsed by *Bruen*, 597 U.S. at 30 (quoting *Drummond*, 9 F.4th at 226), this Court concluded that a zoning regulation "prevent[ing] businesses in certain areas from selling guns or range time at a profit," burdens conduct within the Second Amendment's "scope," and "suffers from a … lack of historical foundations" because it is unsupported by any "persuasive analogies" to historical regulations. *Drummond*, 9 F.4th at 227-28.

This Court rejected reliance on historical regulations that were not proper analogues because those "historical rules kept weapons out of the hands of certain *buyers*, while the [challenged] rule aims to reduce *sellers*' commercial gain." *Id.* at 228 (internal quotation omitted).

Accordingly, *Drummond* recognized that entities engaged in the lawful commercial sale of firearms may invoke the Second Amendment to challenge laws restricting their ability to sell firearms, even though the prospective purchasers are third parties.

Similarly, in *United States v. Marzzarella*, this Court recognized that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment" because otherwise "it would follow that there would be no

9

constitutional defect in prohibiting the commercial sale of firearms." 614 F.3d 85, 92 n.8 (3d Cir. 2010) (*abrogated on other grounds by Bruen*, 597 U.S. 1.) "Such a result would be untenable under *Heller*." *Id.*

Although *Bruen* rejected the second step of the two-step framework applied in *Drummond* and *Marzzarella* as "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny," 597 U.S. at 24, it explained that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," *id.* at 19. It was under step one that *Drummond* and *Marzzarella* both concluded that firearm sales are covered by the "scope" of the Second Amendment. *Drummond*, 9 F.4th at 226; *Marzzarella*, 614 F.3d at 92 n.8.

The State offers no answer to these authorities. As a result, its argument that firearm vendors categorically fall outside the Second Amendment should be rejected.

### 2. The Permit Bill is Not Presumptively Constitutional, but is Subject to Full *Bruen* Analysis

The State and their *Amici* mistakenly argue that *Bruen*, based upon *dicta* in footnote nine, stands for the principle that labeling it "shall-issue," immunizes any statute from a constitutional challenge. Not true.

All that *Bruen* observed in passing was that nothing in its analysis suggested the unconstitutionality of public carry permitting schemes that "appear to contain

10

only 'narrow, objective, and definite standards' guiding licensing officials, rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,'—features that typify proper-cause standards like New York's." *Bruen*, 597 U.S. at 39.

The Permit Bill is neither a public carry statute nor a shall-issue statute. Rather, it requires a discretionary permit for mere possession of a handgun, including in the home, "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628; *id*. at 635 (The Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.")

The Permit Bill at issue also contains provisions that depend on appraising facts, making judgments and forming opinions that footnote nine disfavored when comparing "shall-issue" public carry statutes. *See* § 1448D(f)(3), App 115 (Director, at his sole discretion, may deny a permit to any person who "poses a danger of causing physical injury to self or others by owning, purchasing or possessing firearms.")

The State relies on other circuits' post-*Bruen* "shall-issue" cases—to avoid this Court's precedents—but those cases wrongly shortcut a full *Bruen* analysis, and none of them involved a purported "shall-issue" scheme that requires a permit to purchase common arms.

This Court should apply *Bruen's* step-one teaching: "when the Second Amendment's plain text covers all individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. The Permit Bill regulates such conduct.

Thus, the State has the burden to satisfy *Bruen's* second step: it "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

If this Court were to accept the State's invitation to elevate *Bruen's* footnote nine over its core holding as the true test for evaluating the Permit Bill, the result would be to repeat the error that necessitated *Bruen* in the first place. As this *en banc* Court has already recognized in *Range v. Att'y Gen. United States,* this Court and other circuits made the same mistake of elevating *dicta* in *Heller* over its core holding to create a mistaken post-*Heller* intermediate scrutiny test for Second Amendment challenges. 124 F.4th 218, 224-25 (3d Cir. 2024) (*en banc*) (internal citations omitted).

This Court in *Range* rejected the government's attempt to shortcut its *Bruen* analysis where the government relied on the Supreme Court's comment in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons", 554 U.S. at 626.

Rejecting an argument similar to the one the State makes in this case, *Range* applied step two of *Bruen* and found in favor of the challenger because the statute in question was not longstanding itself, and because the government failed to provide Founding-Era analogues for the disarmament of non-violent felons. 124 F.4th at 229-231.

### 3. The State Fails to Demonstrate its Permit Bill is Consistent with Historical Tradition

The application of step two in a *Bruen* analysis of the Permit Bill reveals why the State hopes this Court will not reach that step: the State cannot present any Founding-Era analogues but for abhorrent racist laws, which they astonishingly urge this Court to consider.[10]

First, this Court's precedent mandates that the State identify historical analogues to the Permit Bill from the Founding Era. *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d Cir. 2025). This Court resolved the issue of whether the Founding Era or Reconstruction Era apply to *Bruen's* assertion that the Second

---

[10] Permit requirements for mere possession of a firearm in Delaware's history are consistent with repugnant racism. *See, e.g.*, Bob Barr & Joseph G.S. Greenlee, *When Rights Require Permission: The Discriminatory History of Licensing Laws For Firearm Possession*, 129 Dick. L. Rev. 1019, 1030-31 & nn. 82-83 (2025) (quoting statutes that required only a "free negro or free mulatto" to obtain a permit to possess a firearm).

Amendment's "meaning is fixed according to the understandings of those who ratified it." *Id*. at 441 (quoting *Bruen*, 597 U.S. at 28) (internal citations omitted).

The State also asks this Court to consider grotesque racist permitting laws that this Court and the Supreme Court have rightly rejected. *See, e.g., Amici* Brief of Brady and Giffords at 11. Notably, the State can only rely on a partial concurrence in *Range* for support—while ignoring that the *en banc* Majority Opinion in *Range* addressed this argument head on and rejected it. *Range*, 124 F.4th at 229 (quoting *Bruen*, 597 U.S. at 31).

The *Heller* and *Rahimi* Courts refused to consider repugnant racist laws as historical analogues. Opening Brief 32-33. A member of the majority in those cases has "emphasized time and again: the 'imperative to purge racial prejudice from the administration of justice.'" *Ramos v. Louisiana*, 590 U.S. 83, 128–29 (2020) (Kavanaugh, J., concurring) (quoting *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 221 (2017)). As Justice Kavanaugh also asked rhetorically, "[w]hy stick by ... a practice that is thoroughly racist in its origins[?]" *Id*. at 129.

### 4. The Permit Bill Is Unconstitutional in All Cognizable Applications

The State also argues that this appeal should fail as a facial challenge because the Permit Bill is constitutional in at least some applications. As examples, the State cites statutes that pre-date the Permit Bill and that were incorporated into the Permit Bill. It remains irrelevant that the Permit Bill prohibits issuance of a permit to anyone

"involuntarily committed for a mental condition." *See* Answering Brief 54. Any such individual is already prohibited from owning a firearm under pre-existing Delaware law. 11 *Del. C.*§ 1448(a)(2)a. The Permit Bill also prohibits the issuance of a permit to anyone subject to a domestic violence protective order. *See* Answering Brief 54. But such an individual was already prohibited from owning a firearm under Delaware law that predates the Permit Bill. 11 *Del. C.* § 1448(a)(6). Those provisions are not at issue in this appeal.

## II. THE ORIGINAL CHALLENGERS WERE IMPROPERLY DISMISSED

### A. The Original Challengers Did Not Engage in Claim Splitting[11]

The State does not contest that the Original Challengers alleged material facts in the instant matter that occurred after filing the complaint in *Neuberger I*, including that the State did not follow the APA in hastily promulgating the regulations necessary to implement the Permit Bill. Those material new developments gave rise to Challengers' claim for expedited relief in this case, which did not exist in *Neuberger I*. Those later developments constitute new harms to the Original Challengers, as in *Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008).

The State argues that the Original Challengers should have anticipated the State's failures *more than a year* after *Neuberger I* was filed. Not quite. The State implies that the Original Challengers should have not only predicted that the State would fail in the future to create the necessary implementation infrastructure after having 18 months to do so, and that the State would violate the APA when implementing the statute 18 months later. The Original Challengers complied with their stipulation and did not seek to file an amended complaint. It lacks full disclosure not to recognize that there was no practical procedural avenue to seek

---

[11] "Original Challengers" refers to Challengers Thomas S. Neuberger, Jerry L. Martin, William Hague, Jr., Delaware State Sportsmen's Association, Inc. and Bridgeville Rifle & Pistol Club, Ltd.

expedited injunctive relief based on material new developments without filing a new complaint in this case.

**B.     The Court Erred in Dismissing the Original Challengers**

The doctrine against claim splitting reflects a trial court's broad discretion to control its docket, and dismissal is not the only remedy. Even if the District Court's decision on claim splitting is affirmed, the District Court abused its discretion in dismissing the Original Challengers.

A court may exercise discretion to consolidate rather than dismiss challenged complaints even where the duplicative action test was satisfied, finding that consolidation adequately preserves the parties' unique interests and conserves party and judicial resources. *See, e.g., In re Consolidated Salmon Cases*, 688 F.Supp.2d 1001, 1007 (E.D. Cal. 2010).

The trial court has ordered the Challengers to amend complaints in both *Neuberger I* and *Neuberger II* after the decision in this appeal. The two cases are now at the same procedural posture. The equities weigh in favor of consolidation as opposed to dismissal.

## III. THE COURT ERRED IN DENYING EXPEDITED RELIEF

### A. The Challengers Have Standing

The State's argument that the Organizational Challengers lack standing (Answering Brief 34-37) has been rejected several times by three Delaware Superior Court decisions that the State did not appeal, and implicitly by a Delaware Supreme Court decision that decided on the merits a challenge to a restriction on the right to keep and bear arms by the same Organizational Challengers who are parties to this appeal.[12] *See Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 642 (Del. 2017); *Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1269 (Del. Super. Ct. 2018); *Del. State Sportsmen's Ass'n v. Garvin*, No. CV K19C-11-011 NEP, Tr. Order, at 3-6 (Del. Super. Ct. Feb. 14, 2020) (Addendum) (trial court denied motion to dismiss based on standing of same organizational plaintiffs in the instant matter, based on allegations in complaint); *Del. State Sportsmen's Ass'n v. Garvin*, No. CV K19C-11-001 NEP, 2020 WL 6813997, at *3-4 (Del. Super. Ct. Nov. 18, 2020). The State did not appeal the trial court decisions, and they remain precedent that DSSA and Bridgeville possess standing to litigate Second Amendment-related claims on behalf of their members. Likewise, in litigation that has been stayed in the trial court after remand, this Court has implicitly recognized the standing of

---

[12] The "Organizational Challengers" are Delaware State Sportsmen's Association, Inc. ("DSSA") and Bridgeville Rifle & Pistol Club, Ltd. ("Bridgeville").

Organizational Challengers. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024).

The State's reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), is misplaced because the facts in the instant matter satisfy each of the three standing requirements articulated in that case. First, the Challengers have demonstrated a concrete and imminent injury. The undisputed declaratory evidence establishes that individual Challengers intend to purchase handguns and that the Seller Challengers[13] intend to continue selling them, but that both will be prevented from doing so, absent compliance with the challenged permitting regime. *See* App 216-18, App 223, App 227. (Declarations of Challengers). This constitutes the type of "actual or imminent" injury required under *Lujan*, 504 U.S. at 560-561.

Second, the injury is directly traceable to the State's conduct. The inability to purchase or sell handguns flows directly from the challenged statutory requirement that purchasers obtain a permit before any transfer may occur. There is no intervening cause; the restriction imposed by the State is itself the source of the injury. *See id.*

Third, the injury is redressable by a favorable decision. Enjoining enforcement of the permitting requirement would eliminate the barrier preventing

---

[13] "Seller Challengers" are Bruce C. Smith and Bridgeville Kenpo Karate, Inc. d/b/a BKK Firearms.

purchasers from acquiring handguns and sellers from completing lawful sales. Thus, the requested relief would directly remedy the harm alleged. *See id.* at 561.

The State's effort to analogize this case to other cases also fails. In *Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200, 206-07 (3d Cir. 2021), and *Carney v. Adams*, 592 U.S. 53, 60-63 (2022), the plaintiffs similarly failed to show that they were "able and ready" to pursue the challenged opportunities. By contrast, the Declarations in this matter establish that the Challengers are prepared and intend to engage in firearm purchases and sales within a defined timeframe, and that the Permit Bill prevents them from doing so. App 216-18, App 223, App 227 (Declarations).

The State's argument that the Seller Challengers lack standing because they do not themselves apply for permits likewise fails. Answering Brief 37. The injury to sellers is clear and immediate: if purchasers cannot obtain permits, sellers cannot lawfully complete handgun transactions. This direct economic and operational harm is sufficient to confer standing. The Seller Challengers need not independently apply for permits to demonstrate injury; their inability to transact with qualified customers is itself a concrete harm that is fairly traceable to the challenged law and redressable by the relief sought.

Finally, the State's suggestion that the Organizational Challengers have failed to identify affected members is contradicted by the record. The Declarations

20

submitted establish that members of DSSA and Bridgeville will be directly impacted by the statute's implementation. App 216-18, App 223, App 227. This satisfies associational standing requirements in that "at least one identified member had suffered or would suffer harm," refuting the State's reliance on *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009). Similarly, the State's analogy to *Colorado Outfitters Association v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016) fails. Unlike the plaintiff in *Hickenlooper*, who alleged that "'some day' a member . . . might wish to obtain or retain a firearm before or after a hunt and that he or she might then experience difficulties obtaining the requisite background check," *id.* at 553, the Challengers have demonstrated that they intend but are unable to obtain a handgun due to the State's imposition of a permit system without promulgating the proper procedure. App 216-18 (Declaration).

### B. The Challengers Are Likely to Succeed on the Merits

#### 1. The Record Demonstrates an Unconstitutional *De Facto* Ban

The State argues that nothing approaching a ban on handgun sales existed or exists in Delaware. The record evidence does not support their position.

The State claims that hundreds of permits were issued by the enforcement date, after this suit was filed, but fails to acknowledge that all but two of these permits were issued to law enforcement and other non-civilians who were exempt

from the rigors of the permitting process. Supplemental Declaration of Sargent Jason L. Stevenson ("Stevenson Decl."), App 261 ¶ 12, acknowledging only two "civilian" permits had been issued. The State also argues that Delawareans can purchase handguns without a permit if they hold a permit to publicly carry a concealed deadly weapon ("CCDW"). That argument is another ruse. Most Delawareans do not possess a CCDW—which also requires applicants to undergo a rigorous and discretionary process. *See* Answering Brief 42 (noting that there are about 30,000 CCDW permit holders).[14] *See also* Declaration of Alexander D. MacMullan, App 300-302.

In addition, the District Court extensively relied on the Stevenson Supplemental Declaration (App 370-374) submitted by the State *after the hearing* on Challenger's Motion for Expedited Relief—but the Challengers never had the opportunity to submit a rebuttal to this new evidence invited by the District Court to assist in the State's defense. *See, e.g.,* District Court November 13, 2025 Hearing Transcript, App 434.

There was a *de facto* handgun ban at the time of the Permit Bill's implementation—and a ban still exists—to the extent that a firearm cannot be

---

[14] This reveals a miniscule percentage compared to over one million residents in the State of Delaware.

lawfully purchased unless one complies with restrictions that violate the APA and the Second Amendment. A handgun ban is unconstitutional. *Heller*, 554 U.S. at 636.

### 2. The State Failed To Follow the APA, Rendering the Implementation of the Permit Bill Unlawful

The State does not deny that it failed to comply with the APA in implementing the Permit Bill. Rather, it argues that the APA does not apply.

The State previously lost the same argument, which it did not appeal, when the Delaware Superior Court ruled that *de facto* regulations that the State imposed to restrict the right to keep and bear arms violated the APA because their so-called "guidelines" were *sub silentio* regulations that did not comply with the APA requirements to provide notice and allow for a comment period. *Garvin*, 2020 WL 6813997, at *10.

The "general rule [is], when an agency adopts a regulation, [the State] must comply with the APA's procedures for adopting a regulation[.]" *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233, 1236 (Del. 2004).

That general rule applies here. The Delaware Legislature, in the text of the Permit Bill, recognized that regulations would need to be adopted for the Permit Bill's implementation and specifically delegated regulatory authority to the State Bureau of Identification ("SBI") to adopt regulations necessary to "administer, implement, and enforce" the permitting system. *See* § 1448D(q), App 119.

Because the State waited until the eleventh hour to complete the implementation process, it leapfrogged the months-long APA process and unlawfully created regulations to implement the Permit Bill through unpublished "guidelines" and "clarifications." For example, the Permit Bill contains no instructor-approval process; and the "Approved List" of instructors is a creature of agency regulation. *See* Stevenson Decl., App 371, referencing a list of approved providers on the Delaware State Police Permit-to-Purchase website. Similarly, the State's addition of a 30-day denial-notice requirement set forth in the Stevenson Decl. (App 373), something the State does not address in its opposition, is regulatory statutory gap filling. Likewise, the Firearms Training Course Guidelines ("Guidelines") implemented by the State are regulations subject to the APA.

The State's striking of some regulations after the trial court's hearing does not moot the Challengers' claim. After oral argument on the Challengers' motion in the District Court, in which the Court appeared to recognize the merits of Challenger's APA argument, the State implicitly acknowledged their APA failure, and submitted—at the District Court's request—a letter after oral argument, App 367-368, and the Declaration of Jason Stevenson, App 371-374, describing "modifications" to the Guidelines and the Permit-to-Purchase Website, and offering several "clarifications" of the Permit Bill.

The Challengers were not given a chance to respond to the State's post-hearing submissions and the District Court issued its decision finding that the State's submission mooted the Challengers' argument. As explained in the Challengers' prior briefing, it does not. *See* Opening Brief 47-50; Appellants' Response to Appellee's Opposition to Appellants' Motion for Expedited Relief (D.I. 20) 8-10.

In short, the State circumvented the APA procedures and instead improperly implemented key components of the permitting system through informal guidance. The State's actions here are similar to those in *Del. State Sportsmen's Ass'n v. Garvin*, 2020 WL 6813997 (Del. Super. Ct. Nov. 18, 2020). *See also Baker v. Del. Dep't of Nat. Res. & Env't Control*, C.A. No. S13C-08-026-THG, 2015 WL 5971784 (Del. Super. Ct. Oct. 7, 2015).

In *Garvin*, the State attempted to adopt new regulations restricting firearm possession. 2020 WL 6813997, at *3. The Superior Court found that the State failed to comply with the APA's procedural requirements for action meeting the definition of a regulation, and granted partial summary judgment to DSSA on their APA claim. *Id*. at *9-11. The State did not appeal.[15]

---

[15] The *Garvin* decision was discussed in the Opening Brief 47-48, which the State did not address in its Answering Brief.

As in *Garvin*, the State in this matter imposed regulations subject to the APA, but did not comply with the APA. Thus, the Challengers are likely to succeed on their claim that the State violated the APA.

### C. The Challengers Have Alleged Irreparable Harm

Enforcement of the Permit Bill has placed the Challengers, their members, and countless ordinary law-abiding Delaware citizens in immediate and unnecessary risk of death and bodily injury, based on an inability to defend themselves, as well as criminal prosecution, loss of business, and the deprivation of their Second Amendment rights. The record demonstrates that the Challengers intend to obtain a handgun for lawful self-defense but are prevented by unlawful restrictions. These harms cannot be remedied by monetary damages. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th at 201 (recognizing that harms involving the risk of death, business destruction or destruction of the property under dispute are quintessential forms of irreparable harm).

The DSSA Remand Case merely held that there is no presumption of irreparable harm. *Id.* at 203. For the following reasons, this appeal presents a different record.

Seller Challengers face irreparable harm because the Permit Bill imposes criminal liability on anyone who sells a handgun to an individual lacking a permit, so these sellers now face an impossible choice: cease all handgun sales and go out

26

of business or continue selling handguns and risk criminal prosecution. Both outcomes constitute irreparable harm. *See Dombrowski v. Pfister*, 380 U.S. 479, 481 (1965) (noting the threat of criminal prosecution constitutes irreparable harm).

This Court has also recognized that the loss of one's business, or the threat of bankruptcy, is an irreparable injury that can justify preliminary relief. DSSA Remand Case, 108 F.4th at 201. *See also Roso-Lino Beverage Distributors, Inc. v. Coco-Cola Bottling Co. of New York*, 749 F.2d 124, 125-26 (2d Cir. 1984) (closure of a family business constitutes irreparable harm).

The State argues that any harm can be compensated by money damages and that Seller Challengers can sell other firearms. With respect to selling other firearms, handguns sales make up a majority of Sellers' sales. *See* Declaration of Bruce C. Smith ¶ 18, App 227 (noting that 90% of his company's sales are from handguns).

In addition, even if the Seller Challengers' economic loss does not result in business failure, that economic loss still constitutes irreparable harm. The Eleventh Amendment bars a plaintiff from recovering money damages directly from a state in federal court. *See Board of Trustees of University of Alabama v. Garret*, 531 U.S. 356 (2001). This sovereign immunity bars claims under federal statutes like 42 U.S.C. § 1983, which is at issue here, as states are not considered "persons" subject to such lawsuits. *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990). Courts have held that when sovereign immunity prevents recovery of lost

profits, goodwill, or compliance costs, those injuries are irreparable *per se*. *See, e.g., Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 423 (2d Cir. 2013). (noting the fact that Plaintiff would "be unable to recover monetary damages from Vermont because of the Eleventh Amendment" in concluding that there was an irreparable harm).

In short, the record evidence demonstrates that implementation and enforcement of the Permit Bill imposes immediate, concrete, and ongoing deprivations of the Challengers' Second Amendment rights and continues to expose Challengers to irreparable harms, warranting injunctive relief.

## D. Equity and Policy Interests Favor Injunction

The public interest and the balance of hardships strongly favor injunctive relief. This Court has recognized that the government does not have an interest in the enforcement of an unconstitutional law, and therefore the public interest is not served by such enforcement. *See, e.g.*, *K.A. v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013) (holding that the "enforcement of an unconstitutional law vindicates no public interest").

**CONCLUSION**

For the reasons explained, this Court should, consistent with its Order requiring merits briefing, address the substantive issues presented in this appeal: the State's infringements on the natural right to self-defense that the United States Supreme Court and this Court have recognized as being a birthright at the core of the rights enshrined in the Second Amendment. The State trifles with these exalted rights by imposing dilatory and costly impediments that are inconsistent with this Nation's tradition of firearm regulation—during the period of history this Court has ruled to be applicable. The infringements are also in violation of the Delaware Administrative Procedures Act.

This Court should decline the State's invitation to impose further delay and expense on the parties and the courts before addressing the merits.

We also respectfully suggest that the trial court abused its discretion when it dismissed claims by parties to this appeal instead of consolidating a related case that had been in abeyance for many months pending dispositive motions. That procedural posture necessitated expedited scheduling based on material new facts and exigent circumstances that warranted a new complaint in order to schedule an emergency hearing in light of new and urgent developments that did not exist when the dispositive motion briefing in the related case was completed many months earlier.

If this Court chooses to also address the issue of injunctive relief, which we argue is not necessary, the Challengers satisfy the applicable criteria.

In sum, the Court should find that the Permit Bill at issue violates the Second Amendment and the APA.

Respectfully submitted,

LEWIS BRISBOIS
   BISGAARD & SMITH LLP

*/s/ Francis G.X. Pileggi*

OF COUNSEL: | Francis G.X. Pileggi, Esquire (Bar No. 2624)
Joseph G.S. Greenlee, Esquire | Keith A. Walter, Jr., Esquire (Bar No. 4157)
National Rifle Association | 500 Delaware Ave., Suite 700
  Institute for Legislative Action | Wilmington, DE 19801
11250 Waples Mill Road | 302-985-6000
Fairfax, VA 22030 | Francis.Pileggi@LewisBrisbois.com
jgreenlee@nrahq.org | Keith.Walter@LewisBrisbois.com

Alexander MacMullan, Esquire
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
565 E. Swedesford Road, Suite 303
Wayne, PA 19087
Alexander.MacMullan@LewisBrisbois.com

*Counsel for Appellants*

Dated: June 22, 2026

# CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Francis G.X. Pileggi,*
Francis G.X. Pileggi, Esquire

# CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) in that it contains 6,234 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point, Times New Roman.

3.     The electronic copy of the Brief has been scanned for viruses using Sophos virus detection program and none were detected.

Dated:  June 22, 2026                  Respectfully submitted,

                                                */s/ Francis G.X. Pileggi*

                                             Francis G.X. Pileggi, Esquire

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 22, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Dated:  June 22, 2026                                Respectfully submitted,

*/s/ Francis G.X. Pileggi*

Francis G.X. Pileggi, Esquire

<u>**CERTIFICATE OF ELECTRONIC FILING**</u>

I hereby certify that the text of the electronic Brief filed through the CM/ECF system is identical to the text in the paper copies that will be dispatched for delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

Dated:  June 22, 2026             Respectfully submitted,

*/s/ Francis G.X. Pileggi*

Francis G.X. Pileggi, Esquire

# ADDENDUM

*Garvin II*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DELAWARE STATE SPORTSMEN'S ASSOCIATION; BRIDGEVILLE RIFLE & PISTOL CLUB, LTD; WILLIAM BELL; and CECIL CLEMENTS, <br> Plaintiffs, <br> v. <br><br> SHAWN M. GARVIN, in his official capacity as Secretary of the Delaware Department of Natural Resources and Environmental Control; and DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, <br> Defendants. | ) In and For Kent County <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. K19C-11-001 NEP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

\* \* \* \* \*

BEFORE:   HON. NOEL EASON PRIMOS, Judge

\* \* \* \* \*

**Decision in Motion to Dismiss**
**February 14, 2020**

APPEARANCES:

      FRANCIS G.X. PILEGGI, ESQUIRE
      JAMIE L. INFERRERA, ESQUIRE
      on behalf of the Plaintiffs

      DEVERA B. SCOTT, ESQUIRE
      on behalf of the Defendants

      Michelle D. Webb, RPR
        Court Reporter

02-14-2020
3:30 p.m.
Courtroom 4

THE COURT: The Court is ready to announce its decision on Defendant's motion to dismiss in Delaware State Sportsmen's Association, et. all, versus Shawn Garvin, et. al. I begin with the standard for a motion to dismiss. I have said several times during the oral arguments that we are not here to discuss the merits of the case. A Court's decision on a Rule 12(b)(6) motion is not often about the merits and certainly not in this case. The decision of the Court does not come down to the merits of the underlying case, and the Court is not indicating by its decision how it will ultimately rule on the merits.

But the standard for a motion to dismiss is quite high for the moving party. And let me just read from that standard. "The Court is to accept all well-pled factual allegations as true. The Court is to accept even vague allegations as well-pleaded. The Court is to draw all reasonable inferences in favor of the nonmoving party, and the Court is not to dismiss unless the Plaintiffs would not be entitled to recover under any reasonably conceivable set of circumstances."

Now, the first two factors, and probably the third

**Add-3**

as well, really deal with factual allegations, and there does not appear to be a significant dispute about the facts between the Plaintiffs and the Defendants in this case. And it's really the fourth factor the Court is focusing on more here. "The Court is not to dismiss unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."

As the Court considers this motion and whether to grant the Defendant's motion, of course, the issue of standing is important. And the Oceanport -- we'll call it the Oceanport standard -- sets forth two factors that the Plaintiff must show in order to show standing. One, is a claim of injury and fact; and two, that the injury sought to be protected is arguably within the zone of interest to be protected or regulated by the statute or Constitutional guarantee in question. And I believe, in particular, that word "arguably" is important, "arguably within the zone of interest to be protected or regulated by the statute or Constitutional guarantee in question."

Now, Plaintiffs have made three claims in this case. One, is that the Hunting Guide is unconstitutional because it usurps the exclusive authority of the General Assembly to enact legislation; two, that the Hunting Guide

exceeds DNREC's authority under 29 Del. Code Section 8003, Subsection 7; and third, that the provisions of the Hunting Guide are a de facto regulation not properly promulgated under the procedures in APA, which is, of course, also -- and the APA, which is, of course, also a set of statutory provisions.

So with regard to the claim of injury in fact, the Court determines that just because there have not been arrests or findings of criminal violations does not mean that there have not been injuries in fact with respect to the standing requirement. And here, the Court looks to its previous decision in what we'll call the Garvin I decision in 2018. There the Court recognized that the purpose of a declaratory judgment "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and this purpose is to be liberally construed and administered." The Court also stated, "Those subject to a contested regulation benefit from pre-enforcement review because their alternative is to make the Hobson's choice from complying with the regulation they believe to be invalid or risk impossible sanctions."

The Court is persuaded that, at least, under the allegations of the complaint viewed as they are to be viewed

under the Rule 12(b)(6) standard, that the Plaintiffs face -- and in particular, the individual Plaintiffs -- face possible sanctions if they do not comply with the provisions set forth in the Hunting Guide. Again, those are only allegations and the Court is not making any determinations. But under the Rule 12(b)(6) standard, it does appear that the Plaintiffs have satisfied that aspect of standing. With regard to all three claims -- and, in addition, the other aspect of standing, of course, is that the interests sought to be protected is arguably within the zone of interest to be protected or regulated by the statute. The Court sees, perhaps, clearer claims with regard to the statutory provisions, but again, the Court is not indicating how it would ultimately rule.

Frankly, with regard to the Constitutional claim, the Court does have significant concerns, even at the outset of this case, regarding whether the Plaintiffs' Constitutional claims are valid. However, the fact that the standard is that the interest ought to be protected is arguably within the zone of interest to be protected or regulated by this Constitutional provision, the Court believes gets the Plaintiffs over the required hurdle to survive a motion to dismiss with regard to that claim as

**Add-6**

well.

And I'd like to specifically, in addition, address the claims of the organizational plaintiffs. The Oceanport Decision addressed this issue of an organization's standing to sue on behalf of its members. And there were three factors: One, if the interests to be protected by the suit are germane to the organization's purpose; two, if neither the claim asserted nor the relief requested requires the participation of individual members; and 3, if the organization's members would otherwise have standing. The Court finds that the two organizational plaintiffs here meet all three requirements under the Oceanport standard, and therefore, their claims survive the Rule 12(b)(6)) as well. So as a result, the Court will deny the motion to dismiss filed by the Defendants. The Defendants, of course, will be required to file an answer pursuant to the Court's rules.

I would just like to bring up with counsel at this time -- and you may desire further time to consider your position and that's fine -- but do counsel have a position, given that the Court has denied the motion to dismiss, with regard to whether some period of discovery will be needed in this case, or whether once the Defendants file their answer, a briefing schedule could be entered into with regard to the

declaratory judgment complaint?

MR. PILEGGI: Would you like to go first?

MS. SCOTT: Sure. Your Honor, I know that --

THE COURT: If you could stand.

MS. SCOTT: Oh, I'm sorry.

THE COURT: No, no, no, that's fine.

MS. SCOTT: Your Honor, I would certainly like to confer with my client about whether or not we would proceed as we did in the other two cases on motions for judgment on the pleadings or whether discovery would be appropriate here.

THE COURT: And that's certainly fine. I was not asking you to commit yourself if you were not ready to do so.

MS. SCOTT: But I certainly will file an answer to the complaint within the time required, and I will confer with Mr. Pileggi about next steps.

THE COURT: Yes. And, certainly, I would just say to counsel, if at some point, either in the near future or the more distant future, you believe that briefing is appropriate, you may enter into a stipulated briefing schedule and file that with the Court, and most likely, that will be approved.

MR. PILEGGI: Your Honor, may I respond to your --

THE COURT: Certainly.

MR. PILEGGI: I'm happy to commit from my client at this time that we do not need discovery, and we would respectfully suggest, after Ms. Scott talks to her client, that we follow a similar procedure that we did in the past cases, and that is perhaps stipulate on some basic facts and then tee that up for a dispositive motion. That would, at least, be the Plaintiffs' position.

THE COURT: I have seen it done, there is ways. I've seen it done with traditional discovery, I have seen it done with certain facts and discovery as to others, or just a stipulation of agreed upon facts. So whatever the parties agree to should be fine. But at this point, the Court will be in recess, and I hope everyone has a good weekend.

(Whereupon, the Court recessed.)

*/*/*

CERTIFICATION OF REPORTER

I, Michelle D. Webb, RPR, Official Reporter of the Superior Court, Kent County, State of Delaware, do hereby certify that the foregoing is an accurate transcript of the testimony adduced and proceedings had, as reported by me, in the Superior Court of the State of Delaware in and for Kent County in the case herein stated, as the same remains of record in the Office of the Prothonotary of Kent County at Dover, Delaware.

The certification shall be considered null and void if this transcript is disassembled in any manner by any party without authorization of the signatory below.

WITNESS, my hand, this 18th day of February, A.D., 2020.

/s/ Michelle D. Webb
Michelle D. Webb, RPR
Official Reporter